UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DERRICK LEE CARDELLO-SMITH, | CIVIL ACTION |
| Plaintiff, | Case No. |
| v. | |
| SEAN COMBS, | Lenawee County Circuit Ct. Case No. 24-7362-NO |
| Defendant. | Hon. Anna Marie Anzalone |

## <u>NOTICE OF REMOVAL</u>

Defendant Sean Combs, by and through his attorneys, respectfully states:

1.     Plaintiff Derrick Lee Cardello-Smith commenced this action on June 10, 2024, by filing a complaint (the "Complaint") in the Circuit Court for the County of Lenawee of the State of Michigan, Case No.: 24-7362-NO (the "State Court Action").

2.     A copy of the Summons and Complaint is annexed hereto as Exhibit 1.[1]

3.     Plaintiff did not serve a copy of the Summons and Complaint upon Defendant in accordance with the Michigan Court Rules. Though Plaintiff claims service was made, as set forth in great detail in Defendant's Emergency Motion to Set Aside Default and Default Judgment (annexed hereto as Exhibit 16), Defendant's

---

[1] All filings in the State Court Action are annexed hereto as Exhibits 1-34. Many of Plaintiff's filings in the State Court Action had extraneous documents attached to them. These documents are included to ensure that this Court is presented with the full record from the State Court Action.

Motion to Dissolve TRO and/or Preliminary Injunction (annexed hereto as Exhibit 19), and Defendant's Emergency Motion for Leave to File Supplemental Brief In Support of Emergency Motion to Set Aside Default and Default Judgment (annexed hereto as Exhibit 22), Mr. Combs was not properly served in accordance with the Michigan Court Rules. In fact, Mr. Combs did not learn about the existence of the State Court Action until September 9, 2024, when he became aware of reports in the news media that a $100 million default judgment had been entered against him. Exhibit 16-7 – Combs Affidavit, ¶¶ 3-16.

4.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between Plaintiff and Defendant and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.     At the time the State Court Action was filed, Plaintiff was (and still is) incarcerated at the Earnest C. Brooks Correctional Facility in Muskegon, Michigan. At the time the State Court Action was filed, Plaintiff was (and still is) a citizen of the State of Michigan.

6.     At the time the State Court Action was filed, Defendant was a resident of Miami, Florida and a citizen of the State of Florida. Exhibit 16-7 – Combs Affidavit, ¶ 12. Defendant is presently detained at the Metropolitan Detention Center in Brooklyn, New York.

7.     Defendant is not, and has at no time relevant to this action been, a citizen of Michigan. In the State Court Action, Plaintiff alleges (incorrectly) that Defendant resides in California. Plaintiff owns property in California, but California is not his primary residence. Plaintiff has never alleged that Defendant is a citizen of Michigan (nor could he).

8.     Thus, there always has been and still is complete diversity of citizenship between Plaintiff and Defendant.

9.     The amount in controversy exceeds $75,000 because the Complaint requests damages in "the amount of $100,000,000.00 (One-hundred Million Dollars)[.]" Exhibit 1 – Complaint.

10.    This action may be removed by Defendant under 28 U.S.C. § 1441(a) because the federal courts have original jurisdiction over suits between litigants of different states pursuant to 28 U.S.C. § 1332(a)(1) where the amount in controversy exceeds $75,000 exclusive of interests and costs.

11.    Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1441(a) because the Eastern District is the "the district court of the United States for the district and division embracing the place where [the] action is pending," *i.e.*, Lenawee County.

12.    The Notice of Removal is timely. A notice of removal is timely if filed within 30 days after receipt by the defendant of the initial pleading.  28 U.S.C. §

3

1446(b). This Notice of Removal has been filed less than 30 days after Defendant's receipt of the Complaint.  Defendant first learned that the Complaint had been filed against him on September 9, 2024. Exhibit 16-7 – Combs Affidavit, ¶ 13. Therefore, this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) and the Federal Rules of Civil Procedure.

13.     Upon the filing of this Notice of Removal, Defendant will promptly provide written notice to Plaintiff of this Removal and Defendant will promptly file a copy of same with the Clerk of the Circuit Court for the County of Lenawee, State of Michigan, as required by 28 U.S.C. § 1446(d).

14.     By filing this Notice, Defendant does not waive, and expressly reserves, all defenses and/or claims which are available, including, but not limited to jurisdictional defenses.

WHEREFORE, Defendant removes the above-captioned action now pending against him in the Circuit Court for the County of Lenawee, State of Michigan, to the United States District Court for the Eastern District of Michigan, wherein it shall proceed as an action originally commenced therein.

Respectfully submitted,

Dated:    October 8, 2024

**FINK BRESSACK**

By:    <u>/s/ David H. Fink</u>
David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
*Counsel for Defendant*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com

**SHER TREMONTE LLP**

Michael Tremonte (application for
admission to be submitted)
Erica A. Wolff (application for
admission to be submitted)
*Counsel for Defendant*
90 Broad St., 23rd Floor
New York, NY 10004
Tel.: (212) 202-2600
mtremonte@shertremonte.com
ewolff@shertremonte.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DERRICK LEE CARDELLO-SMITH,

Plaintiff,

v.

SEAN COMBS,

Defendant.

## INDEX OF EXHIBITS TO NOTICE OF REMOVAL

**Exhibit**          **Description**

**1**                **Summons and Complaint**

**2**                **Pretrial Conference Notice**

**3**                **Purported Return of Service**

**4**                **Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction**

**5**                **Order Granting Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction**

**6**                **Plaintiff's Request for Damages**

**7**                **Plaintiff's Pretrial Statement (first filing)**

**8**                **Plaintiff's Jury Demand**

**9**                **Plaintiff's Default Request and Entry of Default**

**10**               **Plaintiff's Submission of Purported Agreements for Property and 49% of All Assets Owned by Defendant**

11     **Plaintiff's Pre-Trial Statement (second filing)**

12     **Plaintiff's Submission of Purported 11-Page 1997 Agreement between Defendant and Plaintiff**

13     **Plaintiff's Motion for Default Judgment**

14     **Plaintiff's Submission of Purported Affidavit and Agreement**

15     **Default Judgment**

16     **Defendant's Emergency Motion to Set Aside Default and Default Judgment**

17     **Limited Appearance of David H. Fink on behalf of Defendant**

18     **Limited Appearances of Nathan J. Fink, David A. Bergh and Calder A.L. Burgam on behalf of Defendant**

19     **Defendant's Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction**

20     **Proof of Service for Limited Appearances on behalf of Defendant, Defendant's Emergency Motion to Set Aside Default and Default Judgment and Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction and Affidavit of Service**

21     **Motion for Admission Pro Hac Vice of Erica A. Wolff**

22     **Defendant's Emergency Motion for Leave to File Supplemental Brief in Support of Emergency Motion to Set Aside Default and Default Judgment**

23     **Defendant's Notice of Submission of Additional Exhibits in Support of Emergency Motion to Set Aside Default and Default Judgment**

24     **Proof of Service for Motion for Admission Pro Hac Vice of Erica A. Wolff and Affidavit of Service**

25                 **Transcript of Sept. 9, 2024 Hearing on Plaintiff's Motion for Default Judgment**

26                 **Transcript of Sept. 16, 2024 Hearing on Defendant's Emergency Motion to Set Aside Default and Default Judgment and Defendant's Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction**

27                 **Transcript of August 7, 2024 Hearing on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction**

28                 **Limited Appearance of Paul M. Hughes on behalf of Plaintiff**

29                 **Order Granting Defendant's Emergency Motion to Set Aside Default and Default Judgment and Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction**

30                 **Proof of Service for Defendant's Motion for Leave to File Supplemental Brief in Support of Emergency Motion to Set Aside Default and Default Judgment and Affidavit of Service**

31                 **Proof of Service for Notice of Submission of Additional Exhibits in Support of Emergency Motion to Set Aside Default and Default Judgment and Affidavit of Service**

32                 **Transcript of Sept. 18, 2024 Continued Hearing on Defendant's Emergency Motion to Set Aside Default and Default Judgment and Defendant's Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction**

33                 **Plaintiff's Emergency Motion to Reinstate Default Judgment and Affidavit**

34                 **Plaintiff's Motion for Reconsideration**

# Exhibit 1

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>39TH JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>LENAWEE COUNTY | SUMMONS | CASE NO.<br>2024- 7362 -NO<br>Hon. HONORABLE<br>ANNA MARIE ANZALONE |

**Court address** 425 N. Main Street, Adrian, MI 49221

Court telephone no.

Plaintiff's name, address, and telephone no.
Mr. Derrick Lee Cardello-Smith #267009
Probable Cause Conference Litigator
2500 S. Sheridan Drive
Muskegon, Michigan 49444

v

Defendant's name, address, and telephone no.
Sean Combs (Sean Puff Daddy Combs)
AKA--Sean P. DIDDY--AKA DIDDY
Bad Boy Records Label Owner, Founder
AKA Puffy-P-Daddy. Bad Boy (Diddy Run,
The City) Shawn Combs-Shawn Puffy Combs..

200 S. Mapleton Drive
Holmby Hills, Los Angeles,
California, 90077

Plaintiff's attorney, bar no., address, and telephone no.
In Pro Per-Self Represented Litigant
Paralegal-Legal Writer-Victim-Survivor

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

*Derrick Lee Cardello Smith*
5-30-24

Summons section completed by court clerk. | **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>JUN 1 0 2024 | Expiration date*<br>SEP - 9 2024 | Court clerk<br>Rolana Hollaway |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01  (3/23)  **SUMMONS**        (1)        MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

Summons  (3/23)

Case No. _24-7362-NO_

---

### PROOF OF SERVICE

**TO PROCESS SERVER:** You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

### CERTIFICATE OF SERVICE / NONSERVICE

☐ I served   ☐ personally   ☐ by registered or certified mail, return receipt requested, and delivery restricted to the the addressee (copy of return receipt attached)   a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| Place or address of service | |
| Attachments (if any) | |

☐ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Fee | | Signature |
|---|---|---|---|---|
| $ | | $ | | |
| Incorrect address fee | Miles traveled | Fee | TOTAL FEE | Name (type or print) |
| $ | | $ | $ | |

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of a copy of the summons and complaint, together with

_____ on _____ .
Attachments (if any)              Date and time

_____ on behalf of _____
Signature

_____
Name (type or print)

MCL 600.1910, MCR 2.104, MCR 2.105

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

MR. DERRICK LEE CARDELLO-SMITH,#267009
PROBABLE CAUSE CONFERENCE LITIGATOR
   Plaintiff,              Case No 2024- __7362__ -NO

Vs

                     Honorable:_____ **HONORABLE**
SEAN COMBS (SEAN PUFF DADDY COMBS)     ANNA MARIE ANZALONE
AKA--SEAN P. DIDDY-AKA-DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
AKA-PUFFY-P-DADDY. BAD BOY,
(DIDDY RUN THE CITY)
SHAWN COMBS-SHAWN PUFFY COMBS.
   Defendant(s),
_____/

FILED
39TH CIRCUIT COURT
JUN 1 0 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

COMPLAINT FOR PERSONAL INJURY
AND OTHER DAMAGES SEEKING MONETARY RELIEF AND JUDGMENT


    Now comes the Plaintiff, Derrick Lee Cardello-Smith Probable
Cause Conference Litigator #267009, in the above cause pursuant
to Michigan Complied Laws Governing Damages and Protections
Against Personal injury and seeking to have Judgement Entered
against the Named Defendants for Personal injury and Other
Injuries related to the facts outlined and detailed within
against the Defendant Sean Commbs and states the following
Factors citing said damages that are being detailed and lodged
against the Defendant Sean Combs.

JURISDICTIONAL STATEMENT

    This court has Jurisdiction to review this claim and subject-
matter as the Plaintiff maintained a residence in l    : County
at least six (6) months prior to incarceration and filing this
action.

MANDATORY DISCLOSURE STATEMENT

    This plaintiff has filed 3 State Lawsuits. 2 Federal Lawsuits.
Thee Civil Appeals and 3 Criminal Appeals.

DAMAGES SOUGHT

    Plaintiff seeks monetary damages in the amount of
**$100,000,000.00 (ONE HUNDRED-MILLION DOLLARS)** against the
defendant Sean Combs and seeks it in COMPENSATORY, PUNITIVE AND
MONETARY DAMAGES INDIVIDUALLY AND OFFICIALLY.

(2)

## INJURY CLAIMS AGAINST SEAN COMBS-DEFENDANT

1. Defendant Combs did on or about June 14, 1997, in the City of Detroit, Michigan while this Plaintiff was employed as a Bartender at the Restaurant "Fishbones Rhythm Kitchen & Cafe" on Monroe & Brush and Was invited to attend a Gathering at the 'Holiday Inn" located in _____ ", MI where Defendant Combs had a social gathering and multiple women and other people were in attendance.

2. Plaintiff was excited to attend this gathering and did so, because this is Sean Puff Daddy Combs" "Bad Boys"!!!

3. Plaintiff had participated in and consumed alcohol with Mr. Combs and the ladies and other security, Puffy was schockingly cool and someone who seemed like a really decent normal guy....

4. Plaintiff Was astonished and so happy to be able to attend such a thing and the afterparty, wow..just amazing.

5. Plaintiff saw that there were at least 20 women present and 2 of the women wanted to go into the main suite/room and they walked in and Sean Motioned me to come with them while 2 guards stood out front...one was C-note "Terrell" and the one was Mike! and he said, have fun, but watch yourself with him! I said him who? He said, You will see!

6. As the night went on, the women were actually drinking and I was drinking more and they smoked some weed, I do not smoke weed but I was happy to be there, I mean I am in my 20's so I was in heaven...

7. I then started to get naked with the women and the next thing I know, we are all naked and Mr. Combs was Naked too and then, we were all participating in sexual activity, then, while I was engaged in performing oral sex on one of the ladies, Tanya! I felt a Hand stroke my left butt cheek and it was not soft, it was a mans hand and I looked up and saw that it was Mr. Combs... I was frozen with fear...I stopped and then needed to calm myself...so I got up and sat on the couch...the ladies were sexually into each other and I was just frozen and could not move...

8. I then went to get another drink and Sean asked me if I needed something else? I said no, and he said here, drink this one, and I thought it was another Glass of Jim Beam, so I took it because I had sat one down in the other room, and then I drank some more, and I stayed sitting there and began getting drowsy and started to pass out and then Sean Combs said to me.. I added a little something to it for you...I will get that from you anyway, one way or another.. I then passed out.

9. Hours later, I awakened to The women moaning and Mr. combs Penetrating one of of them with his Penis into her Anal Cavity



and then he saw me and said "I did this to you too!" Did you like it? I said what? I ran into the bathroom, checked myself and saw that I was bleeding and in pain, I ran out and left and never went back..

10. I contacted the Police about it and a report was taken and made, and then, I shut down and knew that I was never going to be able to tell anyone about this...I finally have been able to realize that I did nothing wrong.

12. It took years of Therapy in Prison to help me realize that this abuse coupled with the other abuse I suffered at by priests made me see that I was not the one who was wrong, but that my attacker is wrong and That I am a survivor, and I am not responsible for what has happened to me.

14. The defendant raped me! The Defendant sexually assaulted me! The defendant paid Detroit and Monroe Police Officers to keep it hidden and they hid it very very well...and have kept it hidden for many decades...but not anymore..I am a Victim of his Physical, Sexual, Psychological, emotional assaults he placed upon me when I did not deserve this kind of act or acts to be done upon me, and it is completely wrong what has transpired and it is horrible and he must be held to account for these horrific actions he committed upon me.

15. I am asking this Court to Enter Judgement against Mr. Combs because I have been the Victim of Sexual Assault by this man and it is contrary to Michigan Complied Law 750.520 and it violated Federal Laws as well as that he has left different states to do this act...

I ask for a total of $100,000,000.00 (One Hundred Million Dollars to be entered against this Defendant for the Personal injury his crime has placed upon my life and upon me, because it is horrible and it is wrong what he has done and it is something that he must be held accountable for...

I ask for Judgement in my Favor and I ask that this is done immediately.

### RELIEF REQUESTED

Wherefore, Plaintiff Prays this court will enter judgement in favor of the Plaintiff for the amount of $100,000,000.00 (One-hundred Million Dollars) in Compensatory, Punitive, Monetary Damages and Grant any further relief this Court deems necessary and appropriate.

Respectfully Yours,                                            May 31, 2024

Mr. Derrick Lee Cardello-Smith #267009
Probable Cause Conference Litigator

(4)

Plaintiff in Pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444



**STATE OF MICHIGAN**
**IN THE 39th CIRCUIT COURT FOR LENAWEE COUNTY**
**CIVIL**

MR. DERRICK LEE CARDELLO-SMITH,#267009
PROBABLE CAUSE CONFERENCE LITIGATOR
    Plaintiff,               Case No 2024-_____-NO

Vs

                          Honorable:_____
SEAN COMBS (SEAN PUFF DADDY COMBS)
AKA--SEAN P. DIDDY-AKA-DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
AKA-PUFFY-P-DADDY. BAD BOY,
(DIDDY RUN THE CITY)
SHAWN COMBS-SHAWN PUFFY COMBS.
    Defendant(s),
_____/

**PROOF OF SERVICE**

    I swear and declare that I mailed one copy of this pleading by
Certified Mail and First class Mail to the Defendant at SEAN
COMBS 200 S. Mapleton Drive, Holmby Hills-Los Angeles, California
90077 and this was done on May 31, 2024 for Notice of Lawsuit and
The Documents contained within are in fact true and real and
accurate and done so with the best of my knowledge and ability.

                                                   May 31, 2024

Derrick Lee Cardello-Smith #267009
Probable Cause Conference Litigator
Plaintiff in Pro Per
#2500 S. Sheridan Drive
Muskegon, MI 49444

(6)

STATE OF MICHIGAN
IN THE 39th CIRCUIT COURT FOR LENAWEE COUNTY
CIVIL

MR. DERRICK LEE CARDELLO-SMITH,#267009
PROBABLE CAUSE CONFERENCE LITIGATOR
   Plaintiff,                   Case No 2024-_____-NO

Vs
                         Honorable:_____
SEAN COMBS (SEAN PUFF DADDY COMBS)
AKA--SEAN P. DIDDY-AKA-DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
AKA-PUFFY-P-DADDY. BAD BOY,
(DIDDY RUN THE CITY)
SHAWN COMBS-SHAWN PUFFY COMBS.
   Defendant(s),
_____/

## REQUEST FOR MI-FILE EXEMPTION

    I, Derrick Lee Cardello-Smith, Plaintiff in the above cause, hereby move this court to enter an order to Grant Exemption from MI-FILE Electronic Filing Requirements based on the following grounds:
    1. I am incarcerated and do not have access to electronic filing and I can only do it through the US Mail.

    The Court, having Review the Plaintiffs Request for Exemption from MI-FIle and Electronic Filing based on incarceration, and the court having considered all the facts.

    IT IS ORDERED that the Motion and Waiver is GRANTED ___
DENIED ____.

   DATED:_____       _____
Clerk-Court Officer-Judge                   Judge
Order prepared by:
Plaintiff Derrick Lee Cardello-Smith
May 31, 2024

5-31-24



| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>16th JUDICIAL CIRCUIT<br>COUNTY PROBATE | CERTIFICATION OF RECORDS<br>ATTESTATION OF EXEMPLIFIED COPIES | 2023-001466-CK |
|---|---|---|

Court address
40 North Main, Mount Clemens, MI 48043

Court telephone no.
586-469-5351

---

### DERRICK LEE CARDELLO-SMITH et al vs. CARLI DIPIOLA-CARPENTER

| Juvenile | In the matter of _____ |
|---|---|
| Probate | In the matter of _____ |

---

### ATTESTATION OF CLERK/REGISTER

I am the clerk/register of the court and I attest that:

1. I am the custodian of the records of the 16th Circuit Court.

2. I have compared the annexed copies of:

REGISTER OF ACTIONS
COMPLETE MACOMB COUNTY CIRCUIT COURT FILE

from the above case with the originals on file and of record in this court, and I find the copies to be true copies of the

whole of such originals.

June 6, 2023
_____
Date

_____
Clerk/Register

ANTHONY G. FORLINI
Name (type or print)

By: _____
Deputy Clerk/Register

---

### CERTIFICATION OF JUDGE

I,  HONORABLE RICHARD L CARETTI  , judge of the 16th Circuit Court, certify that the above

attestation is in proper form and that the signature is genuine.

June 6, 2023
_____
Date

_____
Judge

_____
Bar no.

---

### (SEAL)

NOTE: The Certification of Judge is completed only when records are being sent out of the state.

MC202 (6/93) CERTIFICATION OF RECORDS/ATTESTATION OF EXEMPLIFIED COPIES

28 USC 1738

*8*

Approved, SCAO

Original – Court
1st copy – Plaintiff
2nd copy – Defendant

| STATE OF MICHIGAN | JUDGMENT | CASE NO. |
|---|---|---|
| **JUDICIAL DISTRICT** | **Civil** | 2023-002165-CH |
| 16TH **JUDICIAL CIRCUIT** | | |

Court address
40 N. MAIN STREET, MT. CLEMENS, MI 48043

Court telephone no.
586-469-5351

Plaintiff(s)
DERRICK LEE CARDELLO-SMITH 267009

v

Defendant(s)
GEORGE THOMAS PRESTON, KATHRYN LYNN PRESTON

Plaintiff's/Plaintiff's attorney name, address, and telephone no.

1576 W. BLUEWATER HWY
IONIA, MI 48846

PLAINTIFF IN PRO PER

Defendant's/Defendant's attorney name, address, and telephone no.

7541 YALE RD.
AVOCA, MI 48006

DEFENDANTS IN PRO PER

☑ **JUDGMENT**

For: **PLAINTIFF**

Against: **DEFENDANT**

☐ Trial          ☑ Consent
☐ Summary Disposition   ☐ Default*

☑ **DISMISSAL**
☐ Without prejudice   ☑ With prejudice
☐ No cause of action

*For a defendant on active military duty, default judgment shall not be entered except as provided by the Servicemembers Civil Relief Act.

## ORDER OF JUDGMENT NOT INCLUDING STATUTORY INTEREST

Damages:                                                                                    $          47,000.00
Costs (fees): filing $ 175.00    jury $ 0.00    motion $      0.00  service $        17.34   $              192.34
statutory $ 0.00        (MCL 600.2441)                                               $                0.00
Attorney fee: ☐ statutory  ☐ other (specify)                                          
Total judgment amount (This judgment will earn interest at statutory rates, computed from the filing date of the complaint): $       47,192.34

☑ The defendant shall pay the judgment in installment payments of $_____ each _____ starting _____ until the judgment is paid in full. The plaintiff shall not issue a periodic garnishment as long as payment is made.

Other conditions, if any: JOINT STIPULATED SETTLEMENT AGREEMENT&DISMISSAL-PLAINTIFF RECEIVES 20ACRES FARM

☑ Approved as to form, notice of entry waived.
IT IS ORDERED that this judgment is granted.
This judgment resolves the last pending claim and closes the case unless checked here. ☐

9-13-23

Judgment date

_Derrick Lee Smith_
Plaintiff/Attorney                                      Defendant/Attorney   _Kathryn Preston_   Bar no.

Judgment has been entered and will be final unless a motion for new trial or an appeal is filed within 21 days after the judgment date.

## STATUTORY INTEREST

The judgment interest accrued from the filing of the complaint to judgment is $_____ and is based on:
(If additional rates apply, attach a separate sheet.)
☐ the statutory rate of        ____% from _____ to _____
☐ the statutory 6-month rate(s) of  ____% from _____ to _____ and
                                    ____% from _____ to _____

**CERTIFICATE OF MAILING**   I certify that on this date I served a copy of this judgment on the parties or their attorneys by first-class mail addressed to their last-known addresses as defined by MCR 2.107(C)(3).

Date _____

Signature _____

MCL 600.2441, MCL 600.5759, MCL 600.6013, MCL 600.8375, MCR 2.601, MCR 2.602, MCR 2.603, 50 USC App 521

MC 10  (3/16)  **JUDGMENT, CIVIL**

9.

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| **JUDICIAL DISTRICT** | **SUMMONS** | 2023- 001466 -CK |
| 16th **JUDICIAL CIRCUIT** | | |
| MACOMB **COUNTY** | | |

**Court address**

Court telephone no.

40 N. MAIN ST., MOUNT CLEMENS, MI 48043     586-469-5351

| Plaintiff's name, address, and telephone no.<br>DERRICK LEE CARDELLO-SMITH #267009<br>Ionia Maximum Correctional Facility, 1576 W. Bluewater<br>Hwy, Ionia, MI 48846 AND<br>PATRICIA LEE THOMPSON 23751 Brownstown Square<br>Dr #204, Brownstown Twp, MI 48174 | v | Defendant's name, address, and telephone no.<br>CARLI DIPIOLA-CARPENTER<br>7541 Yale Road<br>Avocca, MI 48006 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>Plaintiffs in Propria Persona | | |

Instructions: Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____

It was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk. **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.

2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside of Michigan).

3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>MAY - 2 2023 | Expiration date*<br>AUG - 1 2023 | Court clerk<br>ANTHONY G. FORLINI |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (3/23)   **SUMMONS**     MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

*10.*

STATE OF MICHIGAN
IN THE 16TH CIRCUIT COURT FOR MACOMB COUNTY
CIVIL DIVISION


DERRICK LEE CARDELLO-SMITH #267009
PATRICIA LEE THOMPSON
        Plaintiffs in Propria Persona

VS                                          Case # 2023-001466-CK
                                            Hon. _____
CARLI DIPIOLA-CARPENTER                     RICHARD L. CARETTI
        Defendant


COMPLAINT FOR BREACH OF CONTRACT
& MONETARY DAMAGES AND JUDGEMENT


        Now comes the Plaintiff, Derrick Lee Cardello-Smith #267009, and Co-Plaintiff Patricia
Lee Thompson in the above cause pursuant to MCL 600.5801-5807 seeking Judgement to be
entered against the Defendant, **CARLI DIPIOLA-CARPENTER FOR TOTAL COMPLETE
BREACH OF CONTRACT AND FAILURE TO PERFORM TERMS AGREED UPON IN
THE CONTRACTUAL AGREEMENT BETWEEN PLAINTIFF AND DEFENDANT.**


DEMAND FOR JURY TRIAL

        Plaintiff hereby demands a Jury Trial on the claims presented. This right is asserted
pursuant to the State Constitution.


JURISDICTIONAL STATEMENT

        This Court has subject matter jurisdiction as the Plaintiff maintained a residence in
Macomb County at least six (6) months prior to incarceration and filing of this action.


MANDATORY DISCLOSURE STATEMENT

        This Plaintiff has filed 124 State and Federal civil cases and appeals and over 40 Federal
appeals under civil and criminal jurisdictions.

## DAMAGES SOUGHT

Plaintiff seeks monetary damages in the amount of Thirty Thousand Dollars ($30,000.00) for Breach of Contract and completion of services and terms reached between Plaintiff and Defendant Carli Dipiola-Carpenter.

## TERMS OF CONTRACTUAL AGREEMENT

Plaintiff, Derrick Lee Cardello-Smith 267009, agreed to pay Defendant Carli Dipiola-Carpenter the sum total of $5,000.00 at a rate of $500.00 per month for ten (10) months to cover the Defendants living expenses, food, drug rehabilitation fees, family costs and transportation costs in order for Defendant to be clean, sober, lucid and clear headed to appear for the civil hearings and depositions and to provide the truth as to what really happened on October 12, 1997.

Defendant agreed to tell the truth that no assault ever took place regarding the 1997 Assault Case claims that Defendant lodged against Plaintiff.  Defendant Carpenter failed to perform her duties as detailed in the Contractual Agreement between both parties, and instead used the $5,000.00 to support her own substance abuse habits of heroin, cocaine and other illicit drugs resulting in the immediate loss of the $5,000.00 as well as other directly related costs of $20,000.00.

The $20,000.00 was paid directly to David Moffit and Associates because Defendant Carpenter failed to perform her duties to tell the truth at other hearings resulting in the direct loss by Plaintiff.

The Defendant provided testimony in open court alleging serious assaults having taken place upon her person by the Plaintiff in 1997 through 2021.  This testimony and filings were lodged in 2018, 2019, 2020 and 2021 at multiple hearings while the Defendant was under the influence of controlled substances that affected her testimony as to the truth of the matter.  The failure of the Defendant to preform her required contractual responsibilities resulted in significant financial loss that the Defendant is responsible for under MCL 600.5807 requiring this matter to be adjudicated in a Court of law.

The violation of the terms of Agreement are detailed in the supporting exhibit entitled "Plaintiffs Exhibit 1".

12.

## CONCLUSION

Defendant failed to adhere, complete, fulfill and meet the terms of the Contract, and in doing so breached said Contract, resulting in significant monetary loss sustained by the Plaintiff after the monies were received by the Defendant. The monies were paid from money left in the hands of George Preston and the money which belonged to Plaintiff Derrick Lee Cardello-Smith as George Preston oversees the Cardello-Smith estate and trust.

## RELIEF REQUESTED

Wherefore Plaintiff prays this Court will enter Judgement in favor of the Plaintiff for $30,000.00 for Breach of Contract and grant any other relief this Court deem necessary and appropriate.

Respectfully submitted,

Derrick Lee Cardello-Smith 267009
Plaintiff
Ionia Maximum Correctional Facility
1576 W. Bluewater Hwy
Ionia, MI   48846

Patricia Lee Thompson
Plaintiff
23751 Brownstown Square Dr., #204
Brownstown Twp, MI   48174

4-7-23
Date

04/21/2023
Date

13.



**KYM L. WORTHY**
PROSECUTING ATTORNEY

**DARYL CARSON**
CHIEF OF STAFF

COUNTY OF WAYNE
### OFFICE OF THE PROSECUTING ATTORNEY
DETROIT, MICHIGAN

1200 FRANK MURPHY HALL OF JUSTICE
1441 ST. ANTOINE STREET
DETROIT, MICHIGAN 48226-2302

TEL: (313) 224-5777
FAX: (313) 224-0974

November 21, 2023

Derrick Lee Smith
MDOC #267009
Ionia Correctional Facility
1576 W. Bluewater Highway
Ionia, MI 48846

Dear Mr. Smith:

I write in response to your letter received November 15. I do not disagree with your assessment. Therefore, I forwarded your prior letter and will forward this one to the Public Integrity Unit. If that unit determines to undertake an investigation, then they have the power to recommend to the Prosecutor that relief be granted if warranted.

Sincerely,

/s/ VRh

Valerie Newman
Deputy Chief and
Director of Conviction Integrity Unit

14c

State of Michigan)
                 )ss
County of Muskegon)

## AFFIDAVIT OF VINCENT SMOTHERS

My name is Vincent Smothers, In 2007, I met with David Cobb, of the Detroit Police Department about the Potential Contract to kill his wife. During subsequent meetings with Cobb, he was accompanied by Paticia Penman, Tina Bommarito and Carli Boike.

During one of the Subsequent meetings Patricia Penman was present, she informed me she was out of the Dearborn Police Department and was with Cobb. I was then informed that Smith, MDOC # 267009 was approached in October 2007 about the contract to kill Cobb's wife as well, He refused. Cobb and Penman requested that Smith be added to the contract. Cobb and Penman then gave me the addresses for Derrick Smith with a photo and his criminal record, the addresses were on Myrtle St. and Hoyt St. both in Detroit. Penman then handed over $2,000.00 for a down payment towards my $10,000.00 Fee.

Cobb and Penman explained that Derrick Smith had become a Liability when he refused the contract and later got into a physical altercation with Cobb. Penman explained that she knew him to be shady and her reasons were more personal then Cobb's.

Penman further explained that Smith had previously been set up for rape that was on the paper work I was provided on Smith. She explained that the reasons Bommarito and Boike were present at the previous meetings was an insurance policy so I would not Double Cross them. If I thought about it, then I would be looking at a potential Rape case as well.

(1)

15.

I believed these threats were credible because all of the people seemed to work for one police agency or another and it occurred as I participated in This Conspiracy against Smith. Cobb's Wife was killed by me on December 26, 2007, and before I could get to Derrick Smith, I saw he was on the News in January 2008 for Kidnapping and Rape.

## DECLARATION

I swear and declare that the events, words, and statements made in this affidavit are real, true and accurate to the best of my knowledge, information and belief. I will testify to these events if called under the Penalty of Perjury.

_____     4-18 , 2024

Mr. Vincent Smothers #295527
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

_____
Notary Public Signature

My Commission Expires on ___10-22-2025___.

C HOFFMAN
Notary Public, State of Michigan
County of Muskegon
My Commission Expires 10-22-2025
Acting in the County of Muskegon

(2)

16.



ABC Polygraph & Investigations
Howard Swabash
436 W. Eliza Street
Schoolcraft, MI 49087
(269) 679-3678
HOWARDSWABASH@aol.com

## POLYGRAPH REPORT

| Subject: | DERRICK LEE CARDELLO-SMITH | Polygraph No.: | CARDELLO-SMITH Test 1 |
|---|---|---|---|
| Nature of test: | CRIMINAL SEXUAL ASSAULT - HOMICIDE | Date of Exam: | 04-04-2022 |

TEST QUESTIONS:

1. Did you stab and cause the death of Carl Bishop in self-defense while protecting your girlfriend?

   Answer: YES.

2. In October 1997 did you have consensual sexual acts and intercourse with Carli Boike (Carpenter)?

   Answer: YES.

3. Did Detroit police officer, David Cobb frame you for the rape case involving Tina Bomanrito?

   Answer: YES.

4. Were you set up on the rape case by a Sheriff's Deputy Patricia Penman—your ex-girlfriend? *This one involved Carli Carpenter Case # 2019-000756-01-FC*

   Answer: YES.

## Report:

It is the opinion of the undersigned examiner, based on the examination given that this subject is INCONCLUSIVE to the above issue due to erratic breathing patterns.

*S. Howard Sal*

Howard Swabash
Polygraph Specialist

ACT 295, P.A. of 1972 [MCL 338.1728(3)]: Any recipient of information, report or results from a polygraph examiner, except for the person tested, shall not provide, disclose or convey such information, report or results to a third party except as may be required by law and the rules promulgated by the State Board of Forensic Polygraph Examiners.



ABC Polygraph & Investigations
Howard Swabash
436 W. Eliza Street
Schoolcraft, MI 49087
(269) 679-3678
HOWARDSWABASH@aol.com

## POLYGRAPH REPORT

| Subject: | DERRICK LEE CARDELLO-SMITH | Polygraph No.: | CARDELLO-SMITH Test 2 |
|---|---|---|---|
| Nature of test: | ALLEGED FALSE INFORMATION BY DOC/SECOND DEGREE MURDER | Date of Exam: | 04-04-2022 |

TEST QUESTIONS:

1. Were you the victim of the Department of Corrections placing false information on the OTIS Offender Tracking Information System?

   Answer: YES.

2. Did you resolve your case for a plea in May 2019 Second Degree Murder case and not the rape charge?

   Answer: YES.

3. Will you file civil lawsuits and false police report charges on Carli Carpenter for wrongful allegations against you?

   Answer: YES.

4. Did you commit a High Misdemeanor Offense while serving in the US Army between 1990-1993?

   Answer: YES.

**Report:**
It is the opinion of the undersigned examiner, based on the examination given that this subject is TRUTHFUL to the above issues.

*Howard Swabash*

Howard Swabash
Polygraph Specialist

ACT 295, P.A. of 1972 [MCL 338.1728(3)]: Any recipient of information, report or results from a polygraph examiner, except for the person tested, shall not provide, disclose or convey such information, report or results to a third party except as may be required by law and the rules promulgated by the State Board of Forensic Polygraph Examiners.

Confidential                    Page 1 of 1                    4/4/2022

*18*



State of Michigan ⎤
                  ⎬ ss
County of Tuscola ⎦

## AFFIDAVIT OF CARLI CARPENTER

I, Carli Carpenter, having appeared in the 36th District Court, 421 Madison, Detroit, MI 48226 for testimony in the criminal case of the State of Michigan verse Derrick Lee Smith, DC #201806125-01 with Judge Christopher Blount at the Preliminary Examination do hereby state that the following is in fact true and real and occurred.

a. I provided false testimony when I testified that the defendant, Derrick Smith sexually assaulted me during the night of October 12, 1997.

b. When Derrick was questioning me on the stand in the District Court, I wanted to tell him that the Assistant Prosecutor and Detective Patricia "Patti" Penman had paid me $4,000.00 in 2018 to tell a false story, but they kept looking at me and shaking their heads, no, and that meant that they would charge me with filing a false police report.

c. They had already stated that they knew I did not want to go through with the case back in 2018 and even before that when Penman first cam e to me, but they knew I needed the money too, so I took the money and I lied because they said your already in prison so what is there keeping you in there?

d. I was not raped on October 12, 1997, I did not want to file the report, I lied back then and I lied in January 2019 at the Courthouse and even on my statement at your sentencing. I thought you would go to trial and that would be the end of it, but my conscience has gotten to me and I cannot bear to have this on it, you did not rape me Derrick.

e. The testimony I gave in District Court was false and wrong of me and I know I could get charged with prison for saying you did it, but I cannot take this anymore.

Derrick Smith did not rape me. I was paid to say it and lie. I lied in 1997 and I lied in 2019, Derrick should not be in prison for a crime he did not commit and I want to tell the truth and this is the truth. Patricia Penman lied and forced me to do it because I had accepted money from her in 2018. I told the truth in the lawsuit in Macomb County and settled out of court with Derrick for my wrong testimony. I withdraw all my statements and testimony because it is false and it is wrong and it was wrong then and I will tell the truth. Please do not keep Mr. Smith in prison because he did not rape me. I was wrong and I lied, I will tell the Court the truth of what happened that night and it is that I slept with 2 people at the same time and was ashamed of it, Derrick did not assault me, hurt me, beat me, or jumped in my car. He did nothing like I was told to say by Patricia Penman, and the District Judge never asked me if I was forced by anyone to testify, had he asked me that, I would have said, yes and that it was Deyana Unis and Patricia Penman who forced me to and not Derrick. Derrick has not done anything wrong to me. Please

1

listen and believe me, I lied then and I am not lying now, I just wanted more money from Dancing and he said no, and then I did not want my dad to find out I slept with 2 men at the same time and 1 was black. So, I lied, please believe me and my truth because it is real, and it is what should be told to a good police and not the ones that paid me knowing I did heavy drugs back then, like them.

## DECLARATION

I swear and declare that the events described herein are true, real, accurate and based on my own personal knowledge, information and believe and if called to testify, I will swear to the facts outlined herein under the Penalty of Perjury that it is accurate and done freely in the State of Michigan, Tuscola County.

Date: _01-06-24_

_Carli Carpenter_
Mrs. Carli Carpenter
5615 Fairgrove Road
Fairgrove, MI 48733

JENNA RHOADES
Notary Public - State of Michigan
County of Tuscola
My Commission Expires Mar 3, 2029
Acting in the County of Tuscola

Query     Reports     Utilities     Help     Log Out

CASEREFERRED,HABEAS,PROSESCREEN

# United States District Court
## Western District of Michigan (Southern Division (1))
## CIVIL DOCKET FOR CASE #: 1:24-cv-00465-RJJ-PJG

Carpenter v. King et al

Assigned to: Judge Robert J. Jonker

Referred to: Magistrate Judge Phillip J. Green

Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 05/03/2024

Jury Demand: None

Nature of Suit: 530 Prisoner: Habeas Corpus (General)

Jurisdiction: Federal Question

**petitioner**

**Carli Carpenter**

*trial court criminal complainant on behalf of MDOC prisoner #267009 Derrick Lee Cardello-Smith*

*on behalf of*

*Derrick Lee Smith #267009*

represented by **Carli Carpenter**
7541 Yale Rd.
Avoca, MI 48006
PRO SE

V.

**respondent**

**Chris King**

*named as C. King*

**respondent**

**Kym Worthy**

*Wayne County Prosecutor,*

**respondent**

**Patricia Penman**

*Detective Wayne County*

**respondent**

**Deyana Unis**

*Asst Wayne Prosecutor*

**respondent**

**Bridget Hathaway**

*Judge*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 05/03/2024 | 1 | PETITION for writ of habeas corpus *on behalf of Derrick Lee Cardello-Smith* filed by Carli Carpenter (Attachments: # 1 Attachment Cover letter) (mg) (Entered: 05/03/2024) |

Z/.

| 05/03/2024 |   | RECEIPT: filing fee in the amount of $ 5.00, receipt number 200000068 (mg). (Entered: 05/03/2024) |
| 05/06/2024 | 2 | NOTICE to petitioner regarding assignment of case and consent; statement regarding consent due 5/28/2024 (mg) (Entered: 05/06/2024) |
| 05/06/2024 |   | Copy of Notice Regarding Assignment of Case and Consent (Prisoner Civil Rights/State Habeas) 2 sent via U.S. Mail to Carli Carpenter (mg) (Entered: 05/06/2024) |
| 05/14/2024 | 3 | STATEMENT RE CONSENT by petitioner Carli Carpenter requesting the case be assigned to a district judge (mg) (Entered: 05/14/2024) |
| 05/14/2024 | 4 | NOTICE that this case has been assigned to Judge Robert J. Jonker and Magistrate Judge Phillip J. Green for all further proceedings (mg) (Entered: 05/14/2024) |
| 05/14/2024 |   | Copy of Notice Regarding Assignment of Case to DJ (Prisoner Civil Rights/State Habeas) 4 sent via U.S. Mail to Carli Carpenter (mg) (Entered: 05/14/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 05/20/2024 12:10:53 | | | |
| PACER Login: | ilovederrick | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:24-cv-00465-RJJ-PJG |
| Billable Pages: | 2 | Cost: | 0.20 |

22.

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**FILED - MQ**
May 3. 2024 10:56 AM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:___slk_____ /MQ53-2-4/

**CARLI CARPENTER, TRIAL COURT
CRIMINAL COMPLAINANT
ON BEHALF OF MDOC PRISONER
#267009 DERRICK LEE CARDELLO-SMITH,**
Petitioner,

**CASE NO** 1:24-cv-465

Phillip J. Green - Magistrate Judge

VS

**ASSIGNED JUDGE**

**C. KING,** Warden,
**KYM WORTHY,** Wayne County Prosecutor,
**PATRICIA PENMAN,** Detective Wayne County
**DEYANA UNIS,** Ass't Wayne Prosecutor,
**BRIDGET HATHAWAY,** Judge,
Respondents,
_____/

## PETITION FOR WRIT OF
## HABEAS CORPUS UNDER
## 28 U.S.C. § 2254 SEEKING RELEASE
## OF A WRONGFULLY HELD PRISONER
## IN THE RESPONDENTS CUSTODY

My name is Carli Carpenter. This is the first time I have filed anything such as this seeking the actual release of someone, so please excuse me if I do not get this right as an expert, lawyer, but when I googled how to do it, it said to simply file this and that the Laws and Rules were on my side to do this on behalf of someone to get them out of prison and so, here I am, presenting this writ of habeas corpus to the courts seeking release of Prisoner Derrick Lee Cardello-Smith #267009 from his wrongfully imposed conviction that I helped contribute to.

I am the person who offered testimony in the criminal case that has resulted in the respondents holding Prisoner Derrick Lee Smith #267009, in custody at various Michigan Department of Corrections Facilities.

(1)

23.

The Basis for his being held is a result of the criminal prosecution done by Wayne County Prosecutor Kym Worthy's Office located at 1441 St. Antoine Street, Detroit, MI 48226.

The case was prosecuted by the Assistant Wayne County Prosecutor Deyana Unis who conducted the proceedings in the Wayne County Circuit Court with Judge Bridget Hathaway presiding over the criminal prosecution of the case against Cardello-Smith in 2019 and it was a case that was very emotionally charged I must say.

The testimony I provided in the criminal case is testimony that resulted in Cardello-Smith being convicted in the Wayne County Circuit Court, I had specifically told Prosecutor Kym Worthy that there was money that changed hands during the lead up to the Criminal Prosecution where I attended meetings with Patricia Penman and Deyana Unis, and they gave me over $4,000.00 to go through with the case, something about their record and how they are working with the people in the MDOC because of Cardello-Smith always suing people and being a nuisance... Patricia Penman seemed to have a personal history with Derrick though, it was weird. But I needed the money and they said that if I did not go through with it, then they would get me for filing a false police report back in the day, so I did it, I figured he was already in prison so, what is the difference.... That is not right though, I should not have done that and I am seeking to have this court grant this writ to get him out and have him released because he should not be in prison since he did not Do any crime against me. I was convinced by Deyana Unit and Especially Patricia Penman to Say Derrick Committed a Rape upon me and he did not do that to me.. I did not tell the truth. I am therefore seeking his release from Prison on this because I did not tell the truth and my statements is what got this going in the first place.

So, what does the court need from me and what does the court need me to do? If you need me to testify that he did not rape me then I will

(2)

29.

testify to it because he did not rape me and I was wrong for saying he did. I have contacted Kym Worthy, Deyana Unis, Patricia Penman all with no results, so I looked on Google and Bing to see how to do this right and here I am, so, can you please tell me what you need from me to get his Writ Granted and Get him out of Prison on this Case that he did not do?

I have been contacted by so many different people about this and I had to leave my main residence and stay at a safe place, I am giving you my address on here Judge. Please contact me and tell me what I have to do to get Him released from prison, I got him in there and I am wrong for this and he should be out, please let me know if you need to appear Personally, On Zoom, or anything else.. Derrick Lee Cardello-Smith did not rape me and Wayne County Officials threatened me with prosecution from a report I made when I was working as an exotic dancer back in the late 90's.. I will need some kind of legal immunity if possible,I was a younger person then, 18 years old and had alot of problems, So I filed the report and got the attention I wanted back then, and all these years later, I am told that because I filed a Fasle Police Report, I will be prosecuted, and then I get paid to go through with the case by Patricia Penman threatening me!!!, I cannot trust police, lawyers or prosecutors, but I know the federal courts have more trust and respect and do not threaten people to lie just to get someone locked up, so if you can tell me when to appear in court, I will do it.. Please grant him release because he did not Rape me..Thank you for your time.....

## RELIEF I'M ASKING FOR

I ask the Court, the Judge to Grant the Writ of Habeas Corpus and Order the Release of MDOC PRISONER #267009, Derrick Lee Cardello-Smith because he did not rape me and police forced me to go through with the Criminal Case, He should be released since he did not hurt me at all, I will testify if the court wants it. Thank you.

April 30, 2024

Carli Carpenter
7541 Yale Road
Avoca, MI 48006

(3)

25.

Mrs. Carli Carpenter
7541 Yale Road
Avoca, MI 48006

April 30, 2024

Clerk of the Court
U.S. District Court
202 West Washington Street
#229
Marquette, Michigan 49855

Subject: Carli Carpenter on behalf of Derrick
Lee Cardello-Smith (Petitioner)
Versus-
C. King, Warden, Kym Worthy, Prosecutor,
Deyana Unis, Ass't Prosecutor, Patricia
Penman, Detective, (Respondents)

Hello Clerks Office:

I am requesting your office process this
First time Writ of Habeas Corpus and Allow me
to Go In front of Any Judge you wish to assign
a Judge for me to appear in front of on this
matter, just let me know where and who.

I also know that there is a Fee for this of
$5.00 so I am including it in the form of a
Money order to cover the costs.

Can you tell me who the Judge is and What
the case number is so that I can get Derrick
Lee Cardello-Smith #267009 out of prison on
something he should not be held for and also let
me know when a court hearing will take place
so I can Testify to him not hurting me and what
the police in Detroit made me say and do?

Thank you and I can be reached at my
address above or my phone of (810) 660-0564.

Thank you and bye for now to you.

Carli Carpenter
7541 Yale Road
Avoca, MI 48006
(810) 660-0564

26-

Mr. Derrick Lee Cardello-Smith #267009
Probable Cause Conference Litigator
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

June 3, 2024

Office of the Clerk
Lenawee County Circuit Court
39th Circuit Court
425 N. Main Street
Adrian, MI 49221

Re: Derrick Lee Cardello-Smith v. Sean Combs
Case No 2024-_____NO

Dear Clerk:

Enclosed for filing in the above cause, docketing and case assignment are the following documents with a return copy for the Plaintiff upon completion.

1. SUMMONS AND COMPLAINT (26 Pages)
2. $175.00 Filing Fee
3. REQUEST FOR AND MOTION FOR MI-FILE EXEMPTION

4. EXTRA COPY FOR RETURN TO PLAINTIFF UPON SUMMONS ISSUANCE FOR SERVICE UPON DEFENDANT

If you could please process this and return one copy of this to the Plaintiff, it would be greatly appreciated.

I thank you for your time in this matter and I hope to hear from you soon.

Sincerely Yours,

Derrick Lee Cardello-Smith
Plaintiff

2 Copies of Summons & Complaint 26 Pages
Please Return 1 For Service After Summons is issued. Thank You.

Exhibit 2

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR THE COUNTY OF LENAWEE

**DERRICK LEE CARDELLO-SMITH #267009,**
                                    Plaintiff(s),

vs

**SEAN COMBS (SEAN PUFF DADDY COMBS),**
**a/k/a SEAN P. DIDDY, a/k/a DIDDY,**
**BAD BOY RECORDS LABEL OWNER, FOUNDER,**
**a/k/a PUFFY-P-DADDY, BAD BOY,**
**(DIDDY RUN THE CITY),**
**SHAWN COMBS, a/k/a SHAWN PUFFY COMBS,**
                                    Defendant(s).
_____/

**NOTICE OF PRE-TRIAL**
(1st Pre-Trial)

**Case No. 24-7362-NO**

[stamp: 39TH CIRCUIT COURT  JUN 17 2024  COUNTY CLERK]

This case is hereby set for a pre-trial conference before

\_\_  **THE HONORABLE MICHAEL R. OLSAVER, Circuit Court I**
**X**  **THE HONORABLE ANNA MARIE ANZALONE, Circuit Court II**
\_\_  **THE HONORABLE CATHERINE A. SALA, Probate Court**

on _Monday, September 9, 2024_ at _2:30_ A.M./**P.M.**

Until further notice, all hearings will be held by videoconference through an app called ZOOM, which can be downloaded to a cell phone, iPad, Android, or laptop with a camera.   Type in the Meeting ID number for your assigned Judge- Click Join - with audio. For further instruction, visit
https://support.zoom.us/hc/en-us/categories/200101697.

- **Judge Michael R. Olsaver Meeting ID # - 6923578030**
- **Judge Anna Marie Anzalone Meeting ID # - 9935583219**
- **Judge Catherine A. Sala Meeting ID # - 5374262389**

- A pre-trial statement on the attached form must be filed with the Clerk at least 7 days prior to the pre-trial.
- The purposes of the pre-trial include presentation of proofs, entry of judgment, and/or:
    - Setting calendar for future action in this case through trial, including:
        - Discovery cut-off
        - Date of exchange of witnesses and exhibits (witnesses and exhibits not disclosed on the date scheduled may not be used at trial absent order of the Court on good cause shown)
        - Case evaluation date, if to be case evaluated
        - Next pre-trial date
        - Date for filing and hearing motions.
        - Setting trial date
        - Making any stipulations that may assist in preparation of case.

Other matters may be raised during the conference.

**MICHAEL R. OLSAVER**
**ANNA MARIE ANZALONE**
**Circuit Judge**
**CATHERINE A. SALA**
**Probate Judge**

cc: Attorney for Plaintiff(s), for service on Defendant(s)

Exhibit 3

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY
CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH,#267009,
    Plaintiff,

Case No 2024-7362-NO
Hon. Anna Marie Anzalone

SEAN COMBS, P.DIDDY, et al
  Defendant(s)
_____/

### RETURN OF SERVICE EXECUTED UPON
### DEFENDANT SEAN COMBS ON JULY 7, 2024
### WITH SERVICE BEING CONDUCTED IN COMPLIANCE WITH COURT RULE

Plaintiff Derrick Lee Cardello-Smith hereby swear and declare that the Plaintiff has effected the Service of the Summons and Complaint upon Defendant Sean Combs at the address listed herein on record and and service was executed with Return of Service on 7/6/21 and that this service is supported and proven by this Plaintiffs submission of the Signature Card showing that service has been made by the rule of service.

Please place this submission on the Court docket and notify me when it has been placed.

Respectfully Yours,

July 25, 2024

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in Pro Per
2500 S. Sheridan Drive
Muskegon, MI 49444

FILED
39TH CIRCUIT COURT
AUG - 1 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

See attached Return Receipt Re Stricted Delivery To Defendant

Cardello - Smith v. Comb ECF No. 1, 24-7362 NO



SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Sean Combs
200 S. Mapleton Drive
Holmby Hills - Los Angeles
California, 90077

Summons & Complaint
24-7362 NO

9590 9402 7768 2152 1823 79

2. Article Number (Transfer from service label)
7011 2000 0001 1878 8806

PS Form 3811, July 2020 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature
☐ Agent
☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery
7/6/21

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Return Receipt Requested

Domestic Return Receipt

---

USPS TRACKING #

9590 9402 7768 2152 1823 79

United States
Postal Service

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

FILED
39TH CIRCUIT COURT
AUG - 1 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

Sender: Please print your name, address, and ZIP+4® in this box•

Derrick Lee Cardello Smith
267009 - C - 40T
E.C. Brooks Corr. Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

C40T

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Sean Combs
200 S. Mapleton Drive
Holmby Hills Los Angeles
California, 90077

Summons & Complaint

9590 9402 7768 2152 1823 79

2. Article Number (Transfer from service label)
7011 2000 000l 1878 8800

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

☐ Agent
☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery
                                       7/6/21

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

July 25, 2024

Office of the Clerk
39th Circuit Court-Lenawee County
425 N. Main Street
Adrian, MI 49221

.Re: Derrick Lee Cardello-Smith #267009 vs Sean Combs
Case No 24-7362-NO

Dear Clerk:

Enclosed for filing in the above cause are the following documents:

1. RETURN OF SERVICE EXECUTED UPON DEFENDANT SEAN COMBS ON 7-6-24.
2. VERIFICATION OF CERTIFIED-RESTRICTED-DELIVERY AS ADDRESSED MAIL

Please place this pleading on the courts docket and notify the Plaintiff of its procellsing.

Thank you again.

Derrick Lee Cardello-Smith

FILED
39TH CIRCUIT COURT

AUG - 1 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

Exhibit 4

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR THE COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH #26.7009,

    Plaintiff,

Vs

                                Case No 24-736.2-NO

                          HONORABLE ANNA MARIE ANZALONE

SEAN COMBS (SEAN PUFF DADDY COMBS)
a/k/a/SEAN P. DIDDY, a/k/a/ DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
a/k/a/ PUFF-P-DADDY, BAD BOY,
(DIDDY RUN THE CITY),
SHAWN COMBS, a/k/a/ SHAWN PUFFYCOMBS,
  Defendants,
_____/



PLAINTIFFS MOTION FOR A TEMPORARY RESTRAINING ORDER
AND/OR A PRELIMINARY INJUNCTION TO STOP ALL
SALES OF THE PROPERTY AND ASSETS ATTACHED TO
OR INVOLVED WITH SAID PROPERTY BASED ON INTEREST OF
PLAINTIFF AND PLAINTIFFS CONNECTIONS TO DEFENDANTS SEXUAL ASSAULT OF
PLAINTIFF DERRICK LEE CARDELLO-SMITH REQUIRING
A PRELIMINARY INJUNCTION AND/OR A TEMPORARY RESTRAINING ORDER

    Now comes the Plaintiff, Derrick Lee Cardello-Smith, in pro per
and in the above cause pursuant to MCR 3.310 (A)(B)(C) and hereby
moves this court to enter an order to GRANT A PRELIMINARY
INJUNCTION AND/OR TEMPORARY RESTRAINING ORDER to enjoin the
Defendants, from any further sales, transactions, deals,
negotiations of other matters involving the sales, delivery,
title, deeps or any transaction whatsoever for the MANSION,
PERSONAL PROPERTY, HOLDINGS, ASSETS, HOUSE, REAL PROPERTY, LAND
OR OTHERWISE HELD IN THE POSSESSION OF OR CURRENT NAME OF THE
DEFENDANT SEAN COMBS and the Sale or Transfer of Title and Deed
From Sean Combs or any person, party, agency, actor, or recipient
of the property, transfer of deed, titled or otherwise regarding
or pertaining to the Property, estate  or anything placed on,
connected to, near or as part of the Property that is located at
the address herein of:

               200 S. MAPLETON DRIVE
    HOLMBY HILLS, LOS ANGELES, CALIFORNIA  90077

This REquest for the restraining order is needed for the sole
purpoese of what is contained within the BRIEF IN SUPPORT.

                           1

Thank you for your time in this matter.

Respectfully Yours,                                    July 19, 2024

Mr. Derrick Lee Cardello-Smith
Plaintiff in Pro Per
#26.7009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

## BRIEF IN SUPPORT

The reasons that the Plaintiff needs and requests that this court grant Plaintiff a Preliminary Injunction and/or temporary restraining order to enjoin the Defendant from any further action on the sale and/or transfer of title for the Estate and Property listed as Defendants are Address and Residence are as follows:

1. The Property located at said defendants address is the result of multiple State and Federal Crimes that have been committed by the Defendant upon the Plaintiff and it is the result of an ongoing pattern of criminal behavior of Sexual Assaults that this Defendant Profited from.
2. The Property and Estate in question is valued at over $140,000,000,00 (One Hundred Forty-Million Dollars).
3. The Defendant has immediately placed the said property on the Market for Sale at an asking price of $70,000,000,.00 (Seventy-Million Dollars).
4. The Property, Sale, Transfer of Title or Deed should not take place because it is being done so for the sole purpose of depriving this Plaintiff of any monetary judgement that would be entered in favor of the Plaintiff in the event this matter went to a Jury Trial.
5. The Property has been placed on the market by defendant combs for the asking price the very week this Action was Served upon Defendant Combs and It is all done to hide, avoid, and deprive this Plaintiff and Rape Victim/Survivor or Any Compensation should the Court rule in favor of this Plaintiff for the Crimes Committed upon this Plaintiff by the Defendant.
6. A Preliminary Injunction/Temporary Restraining Order would ensure that the Defendants are not moving, avoiding, hiding, depriving this Plaintiff or this Court of Any compensation that the Plaintiff is or may be entitled to in this matter on the grounds that the defendant is seeking to avoid paying this plaintiff the damages sought in this action for his crimes committed upon this plaintiff as the Police have Concluded has been done in this case at bar.
7. Plaintiff believes and can support that the defendant has officers, agents, servants, employees and attorneys and those in active concert and participation in the transfer, sale and negotiations of the property at issue in this matter to which was also promised to this Plaintiff by the defendant and in front of witnesses in this matter who will verify the terms of the sale of the property and the crimes committed upon this plaintiff by the defendant and they are acting to avoid Civil Liability on behalf of Defendant Combs and this action must be stopped otherwise it will result in furtherance of crimes and other actions by the defendant in this matter upon this Plaintiff.
8. a Preliminary Injunction and/or temporary restraining order will not interfere with the activities or lifestyle of the defendant and it will only ensure that this court has all the facts and understandings of the reasons for the restraining order to be imposed against the defendant in this case and it will

ensure that civil justice has in fact been served and administered and will in no way impact or deprive the defendant of any constitutional rights under the State and Federal Level.

As Such, Plaintiff asks this Court to grant the Preliminary Injunction and/or Temporary Restraining Order to ensure that justice is not be interfered with and furtherance of a crime is not being conducted by the defendants upon the plaintiff or its agents acting on this Plaintiffs behalf.

## RELIEF SOUGHT

Wherefore, Plaintiff Prays this Court will enter an order to Grant the Plaintiff a Preliminary Injunction and/Or Temporary Restraining Order and enjoin the defendants or their agents from the sale or the property and estate at the address of 200 S. Mapleton Drive, Holmby Hills, Los Angeles California 90077 and grant any further relief this Court deem necessary and appropriate.

Respectfully Yours,

Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

July 19, 2024

4.

STATE OF MICHIGAN

IN THE 39TH CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH #267009,

    Plaintiff,

Vs

                                                  Case No 24-7362-NO

                        HONORABLE ANNA MARIE ANZALONE

SEAN COMBS (SEAN PUFF DADDY COMBS)
a/k/a/SEAN P. DIDDY, a/k/a/ DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
a/k/a/ PUFF-P-DADDY, BAD BOY,
(DIDDY RUN THE CITY),
SHAWN COMBS, a/k/a/ SHAWN PUFFYCOMBS,
  Defendants,
_____/



FILED
39TH CIRCUIT COURT

AUG - 2 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

NOTICE OF HEARING

Plaintiff Derrick Lee Cardello-Smith hereby provides notice to
the Defendant that the Plaintiff will ask this court to GRANT the
Plaintiff a Motion for Preliminary Injunction and Temporary
Restraining Order on the date of <u>AUGUST 7, 2024 at 2;30pm</u> or as
soon thereafter can be heard by this Court on the granting of
this Preliminary Injunction and/or Temporary Restraining Order.

If you would like to respond or attend said hearing, please
notify this Plaintiff and the Court of your intent, and you can
do so by way of the courts Zoom Hearing process that it has
available.

Thank you for your time in this matter and I hope to hear from
you soon.

Respectfully Yours,

                                         July 19, 2024

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

STATE OF MICHIGAN

IN THE 39TH CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH #267009,

    Plaintiff,

Vs                           Case No 24-7362-NO

                    HONORABLE ANNA MARIE ANZALONE

SEAN COMBS (SEAN PUFF DADDY COMBS)
a/k/a/SEAN P. DIDDY, a/k/a/ DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
a/k/a/ PUFF-P-DADDY, BAD BOY,
(DIDDY RUN THE CITY),
SHAWN COMBS, a/k/a/ SHAWN PUFFYCOMBS,
    Defendants,

_____/



FILED
39TH CIRCUIT COURT

AUG - 2 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

REQUEST FOR AND HEARING ON MOTION

Plaintiff, Derrick Lee Cardello-Smith hereby moves this Court to
grant this Plaintiff a Hearing on the Motion contained within
this action and on the Motion to Grant Plaintiff a Preliminary
Injunction and/or Restraining Order on the date listed within or
on a date this court finds acceptable.

I thank you for your time.

                                    July 19, 2024

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

STATE OF MICHIGAN

IN THE 39TH CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH #267009,

    Plaintiff,

Vs

                          Case No 24-7362-NO

               HONORABLE ANNA MARIE ANZALONE

SEAN COMBS (SEAN PUFF DADDY COMBS)
a/k/a/SEAN P. DIDDY, a/k/a/, DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
a/k/a/ PUFF-P-DADDY, BAD BOY,
(DIDDY RUN THE CITY),
SHAWN COMBS, a/k/a/ SHAWN PUFFYCOMBS,
  · Defendants,
_____/



FILED
39TH CIRCUIT COURT

AUG - 2 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

PROOF OF SERVICE

I swear and declare that on July 19, 2024, I mailed one copy of this pleading by First Class mail to the Defendant at his Place of Residence at by sealed envelope and all documents attached herein to 200 S. MAPLETON DRIVE, HOLMBY HILLS, LOS ANGELES, CALIFORNIA 90077 and this being done in Muskegon, MI 49444.

                                    July 19, 2024

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

July 19, 2024

Office of the Clerk
39th Judicial Circuit Court
Lenawee County Courthouse
425 N. Main Street
Adrian, MI 49221



FILED
39TH CIRCUIT COURT

AUG - 2 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

Re: Derrick Lee Cardello-Smith vs Sean Combs
Case No 24-7362-NO

Dear Clerk:

Enclosed for filing in the above cause are the following documents that Plaintiff is asking to be placed on the Court Docket in this matter for review by the Honorable Anna Marie Anzalone:

1. $20.00 Motion Fee
2. Motion for Preliminary Injunction and/or temporary Restraining Order-With Brief in Support
3. Notice of Hearing
Request for and Hearing on Motion
4. Proposed Order prepared by Plaintiff
5. Proof of Service upon defendant Sean Combs

I ask this office to place this matter for review and hearing on the honorable Courts Docket and that I am notified of said placement of this matter when it is docketed.

Thank you for your time in this matter and I hope to hear from you soon.

Respectfully Yours,

Mr. Derrick Lee Cardello-Smith
Plaintiff in pro per
#267009
2500 S. Sheridan Drive
Muskegon, MI 49444

Exhibit 5

STATE OF MICHIGAN

IN THE 39TH CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH #267009,

    Plaintiff,

Vs

                            Case No 24-7362-NO

                HONORABLE ANNA MARIE ANZALONE

SEAN COMBS (SEAN PUFF DADDY COMBS)
a/k/a/SEAN P. DIDDY, a/k/a/ DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
a/k/a/ PUFF-P-DADDY, BAD BOY,
(DIDDY RUN THE CITY),
SHAWN COMBS, a/k/a/ SHAWN PUFFYCOMBS,
    Defendants,

_____/

                                FILED
                       39TH CIRCUIT COURT

                        AUG 1 5 2024

                 LENAWEE COUNTY CLERK
                   ADRIAN, MICHIGAN

ORDER

At a session of said court, held in the County of Lenawee, State of Michigan, on August 7    , 2024 with the Honorable ANNA MARIE ANZALONE Presiding.

    The Court, having been briefed in the full record and all pleadings and arguments having been heard in this matter on the Plaintiffs Motion for a Preliminary Injunction and/or Temporary Restraining Order, the Court enters the following Ruling:

THE PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER IS **GRANTED**.

    The defendant and agents are hereby Enjoined temporarily for a period of 90 days from the Sale, Transfer or Exchange, Trade or Transaction of Title or Deed to the Property listed as the address and placed on the market by defendants for the amount of $70,000,000,000.00 (Seventy-Million Dollars) and this property and estate belonging to or connect to defendant SEAN COMBS shall cease and desist any and all trades, transactions or otherwise Stop the Process of any further actions on this property being continued and this shall have immediate effect.

IT IS SO ORDERED

Dated: ___8-7-24___



                             Clerk/Judicial Officer

Order Prepared by Plaintiff:

Derrick Lee Cardello-Smith
#267009

STATE OF MICHIGAN)
COUNTY OF LENAWEE)

I hereby certify that on the 15th day of Aug 24
I served a copy of _order_ upon the
following persons at their last known address
by mailing a copy regular mail, postage fully
prepaid. Plaintiff; Defendant
_____

Signed: _____

Exhibit 6

STATE OF MICHIGAN

IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH #267009,

    Plaintiff,

Vs

SEAN COMBS, et al,

    Defendant,

2024-7362-NO

Hon. Anna Marie Anzalone

FILED
39TH CIRCUIT COURT

AUG 1 9 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

REQUEST FOR DAMAGES TOTAL TO $400,000,000.00

(FOUR-HUNDRED MILLION DOLLARS

OUTSIDE OF DEFAULTED AMOUNT BASED ON DENIALS

OF PERSONAL INJURY TO PLAINTIFF BY THE DEFENDANT

It has been brought to this Plaintiffs attention that the Defendant, Sean Puffy Combs, has issue a Denial Through another party, person or agent or directly and publicly that "It is not him" or "Don't believe everything you hear" or "I did not do it." and as such, it has worsened this Plaintiffs Injuries and, has thus violated the terms of the previous agreements that were set for the complaint and trial, and said violations has resulted in this Plaintiff now seeking to have the amount of damages increased to the amount of FOUR HUNDRED MILLION DOLLARS and said amount is for the damages done to this plaintiff to be detailed in the Supporting Brief and Memorandum of Law.

Please place this Notice on the Courts docket and allow this Plaintiff and opportunity to have said damages detailed within said forthcoming Brief in Support.

PROOF OF SERVICE

I swear that on August 13, 2024 that I mailed one copy of this Pleading to the defendant Sean Combs at 200 S. Mapleton Drive-Holmby Hills, Los Angeles, California 90077 with all postage paid in full.

Thank you for your time.

Mr. Derrick Lee Cardello-Smith

#267009

E.C. Brooks Correctional Facility

2500 S. Sheridan Drive

Muskegon, MI 49444

Derrick Lee Cardello-Smith

#267009

E.C. Brooks Correctional Facility

2500 S. Sheridan Drive

Muskegon, MI 49444


Auyust 13, 2024

Office of the Clerk

39th Circuit Court

Lenawee County

Honorable Anna Marie Anzalone

425 M. Main Street

Adrian, MI 49221



FILED
39TH CIRCUIT COURT

AUG 1 9 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

   Re: Derrick Lee Cardello-Smith v. Sean Combs et al

      Case No 2024-7362-NO

Dear Clerk:

Enclosed for filing in the above cause, are documents I am asking are placed
on the Court record by the Plaintiff for Said case proceedings and record.

Proof of Service has been processed as well.

Thank you.

Derrick Lee Cardello-Smith

#267009

E.C. Brooks Correctional Facility

2500 S. Sheridan Drive

Muskegon, MI 49444

Exhibit 7

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH, #267009,          File No. 24-7362-NO
                        Plaintiff(s)          **HONORABLE ANNA MARIE ANZALONE**

vs

                                              FILED
                                              39TH CIRCUIT COURT
SEAN COMBS, et al                             AUG 2 2 2024
                        Defendant(s)
                                              LENAWEE COUNTY CLERK
                                              ADRIAN, MICHIGAN

PRE-TRIAL STATEMENT OF DERRICK LEE CARDELLO-SMITH

1.    BRIEF STATEMENT OF THEORY OF CASE: See attached due to length.

2.    REQUESTED ADMISSIONS OF FACT: See attached due to Length

3.    REQUESTED STIPULATIONS: See attached due to length

4.    TIME REQUESTED TO COMPLETE DISCOVERY:    20 days   Days

5.    ESTIMATED TIME REQUIRED FOR TRIAL:    10-20days   Days

          Jury   JURY              _____   NON-JURY

6.    SETTLEMENT POSSIBILITY: YES

7.    ALL CLAIMS ARISING OUT OF THE TRANSACTION OR OCCURRENCE THAT
      IS THE SUBJECT MATTER OF THE ACTION HAVE BEEN JOINED AS
      REQUIRED BY MCR 2.203:    YES   Yes   _____   No

8.    OTHER MATTERS:  See attached due to length

Dated: 8/19/24

                              Attorney for Derrick Lee Cardello Smith
                              Business Address: 2500 S Sheridan Drive
                              Muskegon, MI 49444

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY


DERRICK LEE CARDELLO-SMITH,#267009,
    Plaintiff,

                                    File No 2024-7362-NO

Vs

                         Honorable Anna Marie Anzalone

SEAN COMBS, et al,
    Defendant,

```
                                            ┌─────────────────────────┐
                                            │          FILED          │
                                            │  39TH CIRCUIT COURT     │
_____/          │                         │
                                            │      AUG 2 2 2024        │
                                            │                         │
         PRE-TRIAL STATEMENT OF DERRICK LEE │ CARDELLO-SMITH          │
                                            │  LENAWEE COUNTY CLERK   │
                                            │    ADRIAN, MICHIGAN     │
                                            └─────────────────────────┘
```

    Plaintiff hereby provides this court with the PRE-TRIAL STATEMENT OF DERRICK LEE CARDELLO-SMITH and states the following in order of the courts requirements.

---

    1. <u>BRIEF STATEMENT OF THEORY OF CASE:</u>  Plaintiff Derrick Lee Cardello-Smith was Drugged, Sexually Assaulted by the Defendant Sean Combs.. Plaintiff was also forced to not get his Money back from investments by the Plaintiff to the Defendant, Plaintiff was forced to sign an Agreement between Defendant, Plaintiff and Other Persons in Law Enforcement or Plaintiffs Family would be Killed by the Defendant and his Law Enforcement connections, and Plaintiff was forced to Wait almost 30 years to have his end of the agreement to be brought to the forefront, and the Sexual assault happened in the City of Adrian, Michigan, then forced to enter into an agreement for remaining silent and in exchange for it, the Defendant would keep the Plaintiffs Financial Investment of $150,000.00 back in 1997 for a total of 49% (Forty-Nine-Percent) of the Value of all Holdings, Property, Merchandise, Assets, finances, investments, investment returns, all recordings, titles, deeds, anything in checking accounts, savings accounts and other areas with the money given to the Defendant by Plaintiff in 1997 to not be collected until the 30 year end, or, unless others came forward with any sexual assault claims, or other crimes committed by the defendant or accused of having been committed by the defendant and any settlements made to any person, place, agency, building, entity, company, corporation or other that Defendant enters into with said persons, companies or other, then Plaintiff will have the ability to Sue for the amount or One-hundred Million Dollars to Four Hundred Million Dollars, and get returns on the investments that were all made by the Plaintiff and then upheld and entered into by other persons, including the names of persons on the Witness List to be presented by the Plaintiff....Plaintiff was violated, drugged, and raped by the defendant, and is in fact guilty of violating this Plaintiff and then keeping the money from this Plaintiffs investment and then a cover up was done by Detroit Police, Adrian, Lenawee Police, Kym Worthy, and other law enforcement officials to not only place this Plaintiff in the position of not being believed or heard, but it was actually covered up on many different levels, and it should be brought to trial and this was done so by the full knowledge of Defendant Sean Combs who sexually violated this Plaintiff and then, Defendants Allies and Friends in Office in various areas, Framed this Plaintiff and Placed this Plaintiff out of Society for

the purpose of operating their criminal enterprise, with an empire, built on Rape and then placing the Victim in Prison to cover up that Rape and Continue Making Money on the rape(s).

2. <u>REQUESTED ADMISSIONS OF FACT</u>: Plaintiff will have the requests for Admissions of Fact and shall provide it to the Court and Defendants which will be to the truth of the matter and to the Signing of the Documents for the Injury caused to this Plaintiff by the defendant and his people.

3. <u>REQUESTED STIPULATIONS</u>: Plaintiff will ask the defendants to stipulate to the agreements that will be provided to the court, based on the Plaintiffs Currently Location.

4. <u>TIME REQUESTED FOR DISCOVERY</u>: <u>Ø20 Days</u>  This is due to the Plaintiff having to wait on the US Mail and the Prison Staff always wanting to transfer the Plaintiff and interfere with the Plaintiffs incoming and outgoing mail and delaying it, and other factors that will interfere with it.

5. <u>ESTIMATED TIME REQUIRED FOR TRIAL</u>: <u>10-20 Days</u>

<u>JURY TRIAL REQUESTED</u>

6. <u>SETTLEMENT POSSIBILITY</u>: Yes, there is a possibility of settlement with the defendant.

ALL CLAIMS ARISING OUT OF THE TRANSACTION OR OCCURRENCE THAT IS THE SUBJECT-MATTER OF THE ACTION HAVE BEEN JOINED AS REQUIRED BY MCR 2.203: <u>YES</u>

8. <u>OTHER MATTERS</u>:  ORDER THE NAMES OF THE PERSONS THAT SIGNED THE AGREEMENT WITH PLAINTIFF AND DEFENDANT TO REMAIN SEALED AND PROTECTED FOR THEIR OWN SAFETY AND SECURITY, AS PLAINTIFF HAS PROTECTED THEM FOR YEARS,.I would ask that the entire record is allowed to be made public and that nothing is sealed or stopped from being reviewed in this court at any time and that it is all allowed to be seen by anyone who wants to see it, all documents, facts and statements in this case, at a time to be made by the court, and upon completion of the entire case proceedings.

August 19, 2024

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in Pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

2.

Derrick Lee Cardello-Smith

#267009

cE.CD. Brooks Correctional Facility

2500 S. Sheridan Drive

Muskegon, MI 49444

8-19-24

Office of the Clerk

39th Circuit CourtLenawee County

425 N. Main Street

Adrian, MI 49221

Re: Derrick Lee Cardello-Smith v s. Sean Combs, et al

Case 24-7362-NO



Dear Clerk:

Enclosed please find the following documents required for the Scheduled Pre-Trial of September 9, 2024.

1. PRE-TRIAL STATEMENT OF DERRICK LEE CARDELLO-SMITH

2. Actual Pre-Trial Statement of Derrick Lee Cardello-Smith due to Length.

Please place this matter on the courts record and docket and notify me that it has been mailed.

Request for Signed restraining Order Signed by Judge to be provided to the Plaintiff.

Thank you for your time.

Mr. Derrick Lee Cardello-Smith

Exhibit 8

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY
CIVIL DIVISION


DERRICK LEE CARDELLO-SMITH #267009,

    Plaintiff,


Vs

Case No 24-7362-NO


Honorable Anna Marie Nazalone


SEAN COMBS, et al,

    Defendant

                     /

FILED
39TH CIRCUIT COURT

AUG 2 3 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN


## DEMAND FOR JURY TRIAL
## AND PRESERVATION OF THE DEMAND

  Please be advised that the Plaintiff, Derrick Lee Cardello-Smith, hereby notifies this Court that the Plaintiff is DEMANDING A TRIAL BY JURY and this request is brought under MCR 2.508(A) (B) and hereby exercises and invokes this Constitutional Right to a Trial by Jury and asks that this Court allow the Trial to take place by the Court Conducting said Trial at its scheduling.

  Plaintiff hereby seeks to have the Case be tried directly with the Jury and, allow this request to be preserved in the event that it proceeds to a trial during the case proceedings, and, further Plaintiff asks this Court to Grant a hearing to determine the appropriateness of the Trial by Jury and/or Judge.

If the Court decides that it does not wish to have conduct a Trial by the Court, then the Plaintiff would ask this Court to

Preserve the issue for a Jury Trial.

I thank you for accepting my Demand for a Trial By Court and please find the fee for said Fee contained with this pleading in the amount of $85.00.

I hope to hear from you soon.

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

2.

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY
CIVIL DIVISION


DERRICK LEE CARDELLO-SMITH #267009,
    Plaintiff,


Vs
                            Case No 24-7362-NO


                        Honorable Anna Marie Nazalone

SEAN COMBS, et al,
    Defendant

                  /

```
FILED
39TH CIRCUIT COURT

AUG 2 3 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN
```

PROOF OF SERVICE

I swear and declare that I mailed one copy of the DEMAND FOR TRIAL BY COURT to the Defendant Sean Comb at 200 S. Mapleton Drive, Holmby Hills, Los Angeles, California 90077 by first class mail and certified mail and this being done on 8-19-24 in the County of Muskegon, MI 49444 and that all documents were inside a Sealed Envelope with all postage paid in full.

                                  8/19/24

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI 49444

Mr. Derrick Lee Cardello-Smith

#267009

E.C. Brooks Correctional Facility

2500 S. Sheridan Drive

Muskegon, MI 49444

8-19-24

Office of the Clerk

39th Circuit Court

Lenawee County Courthouse

425 N. Main Street

Adrian, MI 49221



FILED
39TH CIRCUIT COURT

AUG 2 3 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

Re: Derrick Lee Cardello-Smith vII. Sean CombII, et al

Case No 24-7362-NO

Dear Clerk:

Enclosed for filing in the above cause, are the following documents that I am asking are placed on the Court Docket entries:

1. Jury Trial Fee of $85.00
2. Jury Demand Fee.
3. Proof of Service

If you could place this matter on the courts docket for review and decision, it would be greatly appreciated.

Thank you for your time in this matter and I hope to hear from you soon.

Mr. Derrick Lee Cardello-Smith

Pro Se Plaintiff

Exhibit 9

| STATE OF MICHIGAN<br>**39TH** JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>LENAWEE COUNTY | **DEFAULT**<br>**REQUEST AND ENTRY** | CASE NO. and JUDGE<br>2024-7362-NO<br>Hon. Anna Marie Anzalone |
|---|---|---|

Court address 425 N. Main Street, Adrian, MI 49221                    Court telephone no.

| Plaintiff's name, address, and telephone no.<br>Derrick Lee Cardello-Smith, #267009<br>E.C. Brooks Correctional Facility<br>2500 S. Sheridan Drive<br>Muskegon, MI·49444 | v | Defendant's name, address, and telephone no.<br>~~XXXXXXXX~~   Sean Combs<br>200 S. Mapleton Drive<br>holmby Hills, Los Angeles<br>California, 49077 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>Pro Se-Self-Represented Prisoner Plaintiff | | Defendant's attorney, bar no., address, and telephone no.<br>No Appearance Filed |

FILED CIRCUIT COURT
AUG 2 3 2024
LENAWEE COUNTY
ADRIAN, MICHIGAN

Party in default: Sean Combs, a/k/a/ Sean Puff Daddy, A/k/a/ P. Diddy et al

## REQUEST

1. I request the clerk to enter the default of the party named above for failure to plead or otherwise defend as provided by law.

2. The defaulted party is not an infant or incompetent person.

3. ☐ It is unknown whether the defaulted party is in the military service. ☒ The defaulted party is not in the military service.
   ☐ The defaulted party is in the military but there has been notice of pendency of the action and adequate time and opportunity to appear and defend has been provided. Attached, as appropriate, is a waiver of rights and protections provided under the Servicemembers Civil Relief Act. Facts upon which this conclusion is based are: (specify)

4. This request is made on my personal knowledge and, if sworn as a witness, I can testify competently to the facts in this request.

I declare under the penalties of perjury that this request has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

_Derrick Lee Cardello-Smith_
Applicant/Attorney signature

Subscribed and sworn to before me on ___8-20-2024___
                                          Date

_B. Jones_
Deputy clerk/Notary public signature

My commission expires on __2-14-2026__ .          _B. Jones_
                                          Name (type or print)

Notary public, State of Michigan, County of _Muskegon_ . ☒ Acting in the County of _Muskegon_
☐ This notarial act was performed using an electronic notarization system or a remote electronic notarization platform.

Distribute form to:
Court
Applicant
All other parties

**Default Request and Entry**   (6/22)
Page 2 of 2

Case No. _____

NOTE: Default can be entered by a district court
clerk without the request of a party.

| DEFAULT ENTRY |

The default of the party named above for failure to plead or otherwise defend is entered.

AUG 2 3 2024

_Court clerk signature and date_

Use note: The party who sought the entry of the
default is responsible for serving all parties in
accordance with MCR 2.603(A)(2).

| CERTIFICATE OF MAILING |

I served a copy of this default request and entry on the parties or their attorneys by first-class mail addressed to their last-known addresses as defined by MCR 2.107(C)(3). I declare under the penalties of perjury that this certificate of mailing has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

_____
Date

_____
Signature

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

8-20-24

Office of the Clerk
Michigan Court of Appeals
Lansing Office
925 W. Ottawa Street
P.O. Box 30022
Lansing, MI 48909-7522

Re: Derrick Lee Cardello-Smith v. Michigan Board of Law Examiners, et al
    COA's No 371625

Dear Clerk:

Enclosed for filing in the above cause, find the following documents that I
am asking are signed by your office and entered on the court docket for the
procedural default that the defendant is now in based on his failure to file
any answer to the claims presented in the complaint after having been served
the Summons and Complaint on July 6, 2024.

I ask that the Default request and entry is listed and processed by your
office and see that the form you have provided me is in fact used in this
matter.

Thank you.

Derrick Lee Cardello-Smith

# Exhibit
# 10

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY
CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH #267009,

    Plaintiff,

Vs

SEAN COMBS, et al,

    Defendant,

2024-7362-NO

Hon. Anna Marie Anzalone

```
FILED
39TH CIRCUIT COURT

AUG 2 6 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN
```

## NOTICE OF INTENT TO SUBMIT AGREEMENTS
## FOR PROPERTY AND 49% OF ALL ASSETS OWNED
## BY SEAN COMBS FOR VIOLATION OF AGREEMENT FOR
## PLAINTIFF TO NOT PROCEED WITH PERSONAL INJURY DONE TO PLAINTIFF BY THE DEFENDANT
## SEAN COMBS IN 1997 ON MULTIPLE INSTANCES

Please take notice that the Plaintiff will in fact file documents verifying the agreements between all parties involved in this case verifying said agreement in 1997 and that this notice has been sent to the Defendant and to the Trial court for placement on the Record.

Thank you for your time.

*[signature]*

Derrick Lee Cardello-Smith

#267009

E.C. Brooks Correctional Facility

2500 S. Sheridan Drive

Muskegon, MI 49444

.8/13/24

STATE OF MICHIGAN

IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH #267009,

Plaintiff,                                    2024-7362-NO

Vs                                            Hon. Anna Maria Anzalone

SEAN COMBS, et al,

Defendant,

_____/

NOTICE OF INTENT TO SUBMIT AGREEMENTS

FOR PROPERTY AND 45% OF ALL ASSETS OWNED

BY SEAN COMBS FOR VIOLATION OF AGREEMENT FOR

PLAINTIFF TO NOT PROCEED WITH PERSONAL INJURY DONE TO PLAINTIFF BY THE DEFENDANT

SEAN COMBS IN 1997 ON MULTIPLE INSTANCES

Please take notice that the Plaintiff will in fact file documents verifying
the agreements between all parties involved in this case verifying said
agreement in 1997 and that this notice has been sent to the Defendant and to
the Trial court for placement on the Record.

Thank you for your time.

Derrick Lee Cardello-Smith

#267009

E.C. Brooks Correctional Facility

2500 S. Sheridan Drive

Muskegon, MI 49444

8/13/24

STATE OF MICHIGAN

IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH #267009,

    Plaintiff,

Vs

SEAN COMBS, et al,

    Defendant,

_____/

2024-7362-NO

Hon. Anna Marie Anzalone

```
             FILED
      39TH CIRCUIT COURT

        AUG 2 6 2024

   LENAWEE COUNTY CLERK
      ADRIAN, MICHIGAN
```

NOTICE OF INTENT TO SEEK

ADDITIONAL DAMAGES FOR VIOLATION OF CONTRACT

Please take notice, that the Plaintiff, Derrick Lee Cardello-Smith #267009, hereby places this defendant on notice that the Plaintiff will seek additional damages for violation of contract and agreements between all parties stemming from 1997 through 2024, and will seek the amount to be increased to an amount to be specified at a later date in time.

Please consider this notice and service of said factors in this matter.

PROOF OF SERVICE

I swear and declare that I mailed one copy of this pleading to the Defendant, Sean Combs at 200 S. Mapleton Drive, Holmby Hills, Los Angeles, California 90077 with all postage paid in full and delivery being done by First Class and by Certified Mail and by placing said pleadings in the US Mail on August 13, 2024.

Thank you for your time in this matter.

Derrick Lee Cardello-Smith

STATE OF MICHIGAN

IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH #267009,

Plaintiff,

Vs

SEAN COMBS, et al,

Defendant,

2024-7362-NO

Hon. Anna Marie Anzalone

NOTICE OF INTENT TO SEEK

ADDITIONAL DAMAGES FOR VIOLATION OF CONTRACT

Please take notice, that the Plaintiff, Derrick Lee Cardello-Smith #267009, hereby places this defendant on notice that the Plaintiff will seek additional damages for violation of contract and agreements between all parties stemming from 1997 through 2024, and will seek the amount to be increased to an amount to be specified at a later date in time.

Please consider this notice and service of said factors in this matter.

PROOF OF SERVICE

I swear and declare that I mailed one copy of this pleading to the Defendant, Sean Combs at 200 S. Mapleton Drive, Holmby Hills, Los Angeles, California 90077 with all postage paid in full and delivery being done by First Class and by Certified Mail and by placing said pleadings in the US Mail on August 13, 2024.

Thank you for your time in this matter.

Derrick Lee Cardello-Smith

#267009

E.C. Brooks Correctional Facility

2500 S. Sheridan Drive

Muskegon, MI 49444

STATE OF MICHIGAN

IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH #267009,

    Plaintiff,

Vs

SEAN COMBS, et al,

   Defendant,

_____/

2024-7362-NO

Hon. Anna Marie Anzalone

EXHIBIT #1

PLAINTIFFS SUBMISSION OF APPROVED MDOC VISITOR LIST

SHOWING SEAN COMBS VISITED THE PLAINTIFF WHILE PLAINTIFF

HAS BEEN INCARCERATED IN THE MDOC

Please find enclosed, the plaintiffs submission of the Exhibit # 1, Plaintiffs
Visitor List Showing that defendant Shawn Combs was approved to visit the
Plaintiff while Plaintiff has been in the MDOC.

Thank you for placing this matter on the Court Docket and Record.

Respectfully Yours,

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

8/13/24

*JCF  Cardello-Smith 267009 ACF*

MICHIGAN DEPARTMENT OF CORRECTIONS                                    CAJ-334
**VISITOR LIST** *G. Robert Cotton Correctional Facility*

**Instructions:** List below the names of people you would like to have considered for approval to visit you. The list may include as many immediate family members i.e. parent, grandparent, step-parent, spouse, mother-in-law, father-in-law, child, stepchild, grandchild, sibling, step-sibling, half-sibling and aunt and uncle (if verification is provided that s/he served as a surrogate parent) as you have that qualify for a visit and up to 10 non-immediate family members.

In the relationship section list the person's relationship to you, i.e., mother, father, sister, etc. All people who do not meet the definition of immediate family member will be listed as friends. Your Visitor List cannot include persons who are less than 18 years of age unless that person is an emancipated minor and can show proof of emancipation or unless the person is your child, grandchild, stepchild, sibling, step-sibling or half-sibling. *Florence Crane*

NOTE: You are permitted to add or delete names of immediate family members from your Visitor List at any time however; addition or deletion of non-family members is permitted only one time during a six month period.

**Submit this list to your RUM once it is completed.** *Prisoner at Florence Crane. Due to bedspace*

| Prisoner Number | Prisoner Name (Print) | Date |
|---|---|---|
| 267009 | Derrick Lee Cardello-Smith | 4-10-05 |

| RUM/Designee (Print Name) | Signature | Date |
|---|---|---|
| RUM Howz | Howz | 4-12-05 |

| | Last Name | First Name | Relationship | Add (A) Remove (R) | Comments STAFF USE ONLY |
|---|---|---|---|---|---|
| 1. | Smith | Rhonda | Mother | A | PSI ✓ |
| 2. | Smith | Derrick | Son | A | PSI ✓ |
| 3. | Beadle | Bryan | Army Chaplain | A | PSI ✓ |
| 4. | Combs | Sean | Friend | A | ✓ |
| 5. | Brafman | Ben | Financial Agent friend | A | ✓ |
| 6. | Penman | Patricia | Detective | A | ✓ |
| 7. | Cobb | David | Detective | A | ✓ |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| 13. | | | | | |
| 14. | | | | | |
| 15. | | | | | |
| 16. | | | | | |
| 17. | | | | | |
| 18. | | | | | |
| 19. | | | | | |
| 20. | | | | | |

*Approved By Amy Lawrence Prison Counselor IL unit "A" And "A" unit RUO Wurthington*

Distribution: ☐ Institution File   ☐ Counselor File   ☐ Prisoner



# HOMICIDE INCIDENT REPORT

REPORTING AGENCY: DETROIT POLICE DEPARTMENT
CASE REPORT NUMBER: 0801130106.1

**police**

REPORTED ON JULY 8, 1997 12:45AM OCCURRED ON JULY 4, 1997 10:00PM
AT EAST 8 & VAN DYKE ROADS-DETROIT,MI SCA/CENSUS:10:09pmSECTOR A

FILED
CATHY M. GARRETT
WAYNE COUNTY CLERK

MAY 3, 2019

OFFENSE:HOMICIDE-SPECIAL CIRCUMSTANCES-MURDER:OFFENDER IS A REGISTERED SELF-
DEFENSE EXPERT WITH TRAINING IN MARTIAL ARTS & HAND-TO-HAND COMBAT-OFFENSE
HIGHTENED--BY INTENTIONAL OVERKILL & INTENTIONAL OVERUSE OF DEFENSE TACTICS-
OFFENDER KNEW 3 ASSAILANTS WERE CIVILIANS & NOT TRAINED COMBATANTS

1. ARRESTEE: DERRICK LEE CARDELLO-SMITH:AGE:24SEXMALE:RACE:BLACK-ITALIAN-MEX-
ADDRESS:▮▮▮ ▮▮▮-DETROIT, MI 48226--Phone▮▮▮ ▮▮▮▮▮▮
2. HOMICIDE VICTIM: CARL BISHOP: AGE:47:SEX MALE RACE CAUCASIAN/WHITE -No
Relationship to Suspect/Offender
3. ASSAULT VICTIM: ROBERT GUNTER: AGE:53:SEX MALE:RACE CAUCASIAN/WHITE NO
Relationship to Suspect/Offender
4. ASSAULT VICTIM: DAVID BROCK: AGE:44: SEX:MALE:RACE CAUCASIAN/WHITE No
relationship to Suspect/Offender
OFFENSE DESCRIPTION: On July 7, 1997, Suspect DERRICK LEE CARDELLO-SMITH, Age
24, and His Girlfriend, ▮▮▮▮ ▮▮▮▮▮▮ Age 20, were leaving the AMC Movie
Theater on 8 Mile & Van Dyke Roads in Detroit, Michigan when the 2 were
approached by three Strangers known now as the above three named Victims. The
Deceased Victim CARL BISHOP and his two friends were leaving a Tavern/Bar,
when they came upon Derrick Lee Cardello-Smith & his Girlfriend were heading
to their car in the parking Lot and then passed the three Men who made
comments about the pair being an "Interracial Couple" and words were then
exchanged--an Argument ensued between all the men involved with the Leader,
Carl Bishop becoming Enraged that the Suspect was with a woman of the
Opposite Race-She is Caucasian and Needs to stay within her own race, the
three men saying. The Trio Started yelling obscenities at Cardello-Smith
and his Girlfriend. OJ KILLED HIS WOMAN so what this Nigger Here your with!
        Offender Cardello-Smith was attempting to keep the matter from
getting more aggressive, when, according to witnesses and bystanders, two of
them men started fighting with Cardello-Smith, who saw that the Third Male,
Carl Bishop was physically attacking his Girlfriend, by slapping her and
calling her a "Nigger-Lover"" and "Race Traitor'".
        Cardello-Smith was still engaged in fighting Gunter & Brock, when
his Girlfriend then yelled out, "Derrick Help!"", Derrick then saw her and
saw that the (Decedent) Carl Bishop had in fact possessed a Sharp Edged
Weapon and/or knife and was about to Stab Derrick's Girlfriend while the
other 2 Men were keeping Derrick Busy and they were laughing, and then, the
next thing, Offender Cardello-Smith broke Gunters Arm, Broke the Leg of Mr.
Brock, immobilizing both parties and Cardello-Smith then Ran and Intercepted
the knife by placing His Own Arm in between the Weapon and his Girlfriends
Upper Torse and then, the knife penetrated Mr. Cardello-Smith's Right
Forearm, and then, Cardello-Smith grabbed Carl Bishops Wrist and Pulled the
knife out of his arm and forced it into the Lungs of the Remaining Assailant,
Carl Bishop, Offender was heard saying to the now deceased Victim "You do not
like Interracial Couples! "You were going to Stab my Girl! 'Now Your Going
to Die ina Filthy Parking Lot with Your Own Knife in your chest!"And then,
Cardello-Smith Punch the Victim Car Bishop 17 times and then the pair "Fell"
to the ground... Cardello-Smith then told the Victim, "You should have let
this go and just left us alone!" Die where you are YOu Racixt Bitch!"
        Derrick then went to the other 2 pair that were immobilized and
proceeded to kick them and break other bones on their bodies until he was
subdued by Officers who arrived on Scene.-The Victim Carl Bishop was taken to
Emergency Care at St. Johns Hospital where he succumbed to his injuries 2
weeks later---Derrick Cardello-Smith was taken in to custody for Open Murder.

Arrestee Transported to 9th Precinct-Eastern District for holding and
processing pending Charges Review by Detectives Jose' Ortiz & David Cobb



# SEX CRIMES UNIT

**police**   **ARREST RECORD CORRECTION DEPARTMENT**

DPD
SEXUAL CRIMES
UNIT
Records Section
JANUARY 7, 1998

REPORTING AGENCY: DETROIT POLICE DEPARTMENT
CASE REPORTING UPDATE AND CORRECTION OF ARREST RECORD

The Detroit Police Department acting on it's own Initiative and through the Sex Crimes Unit of the Violent Crimes Task Force hereby enacts and decrees that the Current and Past Reports of Sexual Offenses, Rapes, or Sexual Assaults against any Woman or Women that have been Lodged against the Person Named as Derrick lee Smith, Derrick Lee Moore, Derrick Smith are Not the Person or Party of Detroit Resident, Or of the Following Named Person, or Civilian and are to exclude the named person of:

**DERRICK LEE CARDELLO-SMITH MDOC # 267009**
**19246 HOYT-DETROIT, MI 48226**
**DATE OF BIRTH: NOVEMBER 01, 1972 (11-01-72)**
**SSN ███-██-█████**

   In 1997 Derrick Lee Cardello-Smith, Entered the Jackson Prison System for the Charge of Second-Degree Murder, and it is reflected in Homicide Report 1997-0811306.1 and in fact Derrick Lee Cardello-Smith is NOT the SUSPECT, NOR the PERPETRATOR, NOR THE PERSON WHO COMMITTED ANY RAPES, NOR ANY SEXUAL ASSAULTS AGAINST ANY FEMALE VICTIM IDENTIFIED, INVESTIGATED OR LISTED IN THE JURISDICTION OF THE DETROIT POLICE DEPARTMENT and in fact, The persons named as John Smith and Derek Lee Smith have listed their Individual alias and AKA's as Derrick Lee Cardello-Smith and in fact, Derrick Lee Cardello-Smith did not commit any sexually offense and was and is excluded from any sexual offense or reports of sexual encounters by any persons during any time frame of any residency in the City of Detroit, or In Any County in the State of Michigan and Any Reports, Documents or Others that list, site, discuss, contain, or have the Name of Civilian DERRICK LEE CARDELLO-SMITH in it during the time frames of 1992-1998, are in fact, FALSE REPORTS, FALSE STATEMENTS and Should Exclude Mr. Derrick Lee Cardello-Smith as that the reports are from a Deliberate, Intentional Group of Men and Women Who reside or have resided in the City of Detroit, Counties of Macomb, Oakland and Wayne and have in fact Filed False Charges of Rape against Multiple Persons and Parties of Interest to Extort money from the Unsuspecting Men and in fact were part of the RICO Units Targeted by the Internal Affairs Bureau of the Detroit Police Department, and in fact, 13 Women have been arrested and convicted of Placing False Rape Allegations and Testimony against the Civilians and Citizens of the State of Michigan and have in fact, continued to cooperate in other investigations that cannot be revealed at this time...However, Mr. Derrick Lee Cardello-Smith was in fact the target of these women due to the women being instructed to and paid to do so by Detroit Police Officers that Derrick Lee Cardello-Smith has prior history and Bad Blood with based on previous encounters. Derrick Lee Cardello-Smith has in fact been the Victim of These Said False Rape Charges by various women who have signed General Templates Reports Circulated by Former Detroit Police Officers who have been convicted of extortion, abuse of power and other crimes. The named persons and parties who were paid by the Former Detectives of the Detroit Police Department and Named Females Who filed False Police Reports are in fact listed on the accompanying report attachment, as that the charges are false, the reports have to be redacted and voided from the Law Enforcement Information Network to Ensure that Derrick Lee Cardello-Smith is not listed as a Sex Offender in the MDOC or any other Public Record. Derrick Lee Cardello-Smith is not a Sex Offender and the Internal Documents Must Follow him to the MDOC and not the Incorrect Documents.

*Patrick L. Jackman* B5489
Patrick Jackman, Public Records Supervisor-DPD



**police**

06/15/97
03:30am

Writer Responded to Incident at Detroit Crime Lab where officers were stopping and incident involving several Persons identified As - Sean Combs - (artist) KLm Worthy - official A. rogers (17year old male) Derrick Smith (24year old black male) 2 fights had happend with smith and Combs - worthy had Uttered to Smith "You mess up my investment and I'll Put multiple rapes on you like i did other men - we have a warehouse filled with kits from rapes"! Smith said you just want to keep men locked up for things we did not do - she said sob try me's writer Spoke with officers from Adrian, Lenawee P.D. & determined further investication Warranted. Will do follow up!

Patrick Jackman B548
Sgt. Silent Run
Officer Lesponse

#4

State of Michigan
St. Clair County

Sworn Affavidit
of Mrs. Kathryn Lynn Preston

I have recently ended an ongoing
sexual relationship with Honorable
Brock Swartzle, Court of Claims, Judge
he stated that if I ended the
relationship he would deny the appeal
of Derrick Lee Cardello Smith 267009
in Case #369646 and use his
influence to deny other criminal
appeals and civil cases. In May
2024 he said he would preside
over Smith cases in June he would
grant the appeal if I had sex
with him to gain, if not he would
deny it in June under case
#369646. I ended it with
him, he is Married and I am married
this is wrong. He is a horrible
manipulator rapist. I will
testify to these events because
they are true, real, and happened.

06/29/2024
Austin Thornton
Notary Public

Kathryn Preston

Austin Thornton
Notary Public - State of Michigan
County of St. Clair
My Commission Expires 7/15/2030
Acting in the County of St. Clair



ABC Polygraph & Investigations
Howard Swabash
436 W. Eliza Street
Schoolcraft, MI 49087
(269) 679-3678
HOWARDSWABASH@aol.com

## POLYGRAPH REPORT

| Subject: | DERRICK LEE CARDELLO-SMITH | Polygraph No.: | CARDELLO-SMITH Test 2 |
|---|---|---|---|
| Nature of test: | ALLEGED FALSE INFORMATION BY DOC/SECOND DEGREE MURDER | Date of Exam: | 04-04-2022 |

TEST QUESTIONS:

1. Were you the victim of the Department of Corrections placing false information on the OTIS Offender Tracking Information System?

   Answer: YES.

2. Did you resolve your case for a plea in May 2019 Second Degree Murder case and not the rape charge?

   Answer: YES.

3. Will you file civil lawsuits and false police report charges on Carli Carpenter for wrongful allegations against you?

   Answer: YES.

4. Did you commit a High Misdemeanor Offense while serving in the US Army between 1990-1993?

   Answer: YES.

## Report:

It is the opinion of the undersigned examiner, based on the examination given that this subject is TRUTHFUL to the above issues.

*Howard Swabash* (signature)

Howard Swabash
Polygraph Specialist

ACT 295, P.A. of 1972 [MCL 338.1728(3)]: Any recipient of information, report or results from a polygraph examiner, except for the person tested, shall not provide, disclose or convey such information, report or results to a third party except as may be required by law and the rules promulgated by the State Board of Forensic Polygraph Examiners.

4/4/2022



ABC Polygraph & Investigations
Howard Swabash
436 W. Eliza Street
Schoolcraft, MI 49087
(269) 679-3678
HOWARDSWABASH@aol.com

## POLYGRAPH REPORT

| Subject: | DERRICK LEE CARDELLO-SMITH | Polygraph No.: | CARDELLO-SMITH Test 1 |
|---|---|---|---|
| Nature of test: | CRIMINAL SEXUAL ASSAULT - HOMICIDE | Date of Exam: | 04-04-2022 |

TEST QUESTIONS:

1. Did you stab and cause the death of Carl Bishop in self-defense while protecting your girlfriend?

   Answer: YES.

2. In October 1997 did you have consensual sexual acts and intercourse with Carli Boike (Carpenter)?

   Answer: YES.

3. Did Detroit police officer, David Cobb frame you for the rape case involving Tina Bomarrito?

   Answer: YES.

4. Were you set up on the rape case by a Sheriff's Deputy Patricia Penman—your ex-girlfriend?

   Answer: YES.

   *This one involved Carli Carpenter Case# 2019-000756-01-FC*

## Report:

It is the opinion of the undersigned examiner, based on the examination given that this subject is INCONCLUSIVE to the above issue due to erratic breathing patterns.

*[signature]*

Howard Swabash
Polygraph Specialist

ACT 295, P.A. of 1972 [MCL 338.1728(3)]: Any recipient of information, report or results from a polygraph examiner, except for the person tested, shall not provide, disclose or convey such information, report or results to a third party except as may be required by law and the rules promulgated by the State Board of Forensic Polygraph Examiners.

4/4/2022



ABC Polygraph & Investigations
Howard Swabash
436 W. Eliza Street
Schoolcraft, MI 49087
(269) 679-3678
HOWARDSWABASH@aol.com

## POLYGRAPH REPORT

| Subject: | DERRICK LEE CARDELLO-SMITH | Polygraph No.: | CARDELLO-SMITH Test 1 |
|---|---|---|---|
| Nature of test: | CRIMINAL SEXUAL ASSAULT - HOMICIDE | Date of Exam: | 04-04-2022 |

TEST QUESTIONS:

1. Did you stab and cause the death of Carl Bishop in self-defense while protecting your girlfriend?

   Answer: YES.

2. In October 1997 did you have consensual sexual acts and intercourse with Carli Boike (Carpenter)?

   Answer: YES.

3. Did Detroit police officer, David Cobb frame you for the rape case involving Tina Bomarrito?

   Answer: YES.

4. Were you set up on the rape case by a Sheriff's Deputy Patricia Penman—your ex-girlfriend?

   *This one involved Carli Carpenter Case# 2019-000756-01-FC*

   Answer: YES.

**Report:**
It is the opinion of the undersigned examiner, based on the examination given that this subject is INCONCLUSIVE to the above issue due to erratic breathing patterns.

*[signature]*

Howard Swabash
Polygraph Specialist

ACT 295, P.A. of 1972 [MCL 338.1728(3)]: Any recipient of information, report or results from a polygraph examiner, except for the person tested, shall not provide, disclose or convey such information, report or results to a third party except as may be required by law and the rules promulgated by the State Board of Forensic Polygraph Examiners.



ABC Polygraph & Investigations
Howard Swabash
436 W. Eliza Street
Schoolcraft, MI 49087
(269) 679-3678
HOWARDSWABASH@aol.com

## POLYGRAPH REPORT

| Subject: | DERRICK LEE CARDELLO-SMITH | Polygraph No.: | CARDELLO-SMITH Test 2 |
|---|---|---|---|
| Nature of test: | ALLEGED FALSE INFORMATION BY DOC/SECOND DEGREE MURDER | Date of Exam: | 04-04-2022 |

TEST QUESTIONS:

1. Were you the victim of the Department of Corrections placing false information on the OTIS Offender Tracking Information System?

   Answer: YES.

2. Did you resolve your case for a plea in May 2019 Second Degree Murder case and not the rape charge?

   Answer: YES.

3. Will you file civil lawsuits and false police report charges on Carli Carpenter for wrongful allegations against you?

   Answer: YES.

4. Did you commit a High Misdemeanor Offense while serving in the US Army between 1990-1993?

   Answer: YES.

**Report:**
It is the opinion of the undersigned examiner, based on the examination given that this subject is TRUTHFUL to the above issues.

Howard Swabash
Polygraph Specialist

ACT 295, P.A. of 1972 [MCL 338.1728(3)]: Any recipient of information, report or results from a polygraph examiner, except for the person tested, shall not provide, disclose or convey such information, report or results to a third party except as may be required by law and the rules promulgated by the State Board of Forensic Polygraph Examiners.

4/4/2022

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

_____

Plaintiff(s)

vs

File No.

**HONORABLE ANNA MARIE ANZALONE**

_____

Defendant(s)

PRE-TRIAL STATEMENT OF _____

1.  BRIEF STATEMENT OF THEORY OF CASE:

2.  REQUESTED ADMISSIONS OF FACT:

3.  REQUESTED STIPULATIONS:

4.  TIME REQUESTED TO COMPLETE DISCOVERY: _____ Days

5.  ESTIMATED TIME REQUIRED FOR TRIAL: _____ Days

     _____ JURY    _____ NON-JURY

6.  SETTLEMENT POSSIBILITY:

7.  ALL CLAIMS ARISING OUT OF THE TRANSACTION OR OCCURRENCE THAT IS THE SUBJECT MATTER OF THE ACTION HAVE BEEN JOINED AS REQUIRED BY MCR 2.203:

     _____ Yes   _____ No

8.  OTHER MATTERS:

Dated: _____

Attorney for _____
Business Address:



# HOMICIDE INCIDENT REPORT

REPORTING AGENCY: DETROIT POLICE DEPARTMENT.
CASE REPORT NUMBER: 0801130106.1

**police**   REPORTED ON JULY 8, 1997 12:45AM OCCURRED ON JULY 4,1997 10:00PM
AT EAST 8 & VAN DYKE ROADS-DETROIT,MI SCA/CENSUS:10:09pmSECTOR A

FILED
CATHY M. GARRETT
WAYNE COUNTY CLERK

MAY 3, 2019

OFFENSE:HOMICIDE-SPECIAL CIRCUMSTANCES-MURDER:OFFENDER IS A REGISTERED SELF-
DEFENSE EXPERT WITH TRAINING IN MARTIAL ARTS & HAND-TO-HAND COMBAT-OFFENSE
HIGHTENED--BY INTENTIONAL OVERKILL & INTENTIONAL OVERUSE OF DEFENSE TACTICS-
OFFENDER KNEW 3 ASSAILANTS WERE CIVILIANS & NOT TRAINED COMBATANTS

1. ARRESTEE: DERRICK LEE CARDELLO-SMITH:AGE:24SEXMALE:RACE:BLACK-ITALIAN-MEX-
ADDRESS:███ ███-DETROIT, MI 48226--Phone██████████
2. HOMICIDE VICTIM: CARL BISHOP:  AGE:47:SEX MALE RACE CAUCASIAN/WHITE -No
Relationship to Suspect/Offender
3. ASSAULT VICTIM:  ROBERT GUNTER: AGE:53:SEX MALE:RACE CAUCASIAN/WHITE NO
Relationship to Suspect/Offender
4. ASSAULT VICTIM: DAVID BROCK: AGE:44: SEX:MALE:RACE CAUCASIAN/WHITE No
relationship to Suspect/Offender
OFFENSE DESCRIPTION: On July 7, 1997, Suspect DERRICK LEE CARDELLO-SMITH, Age
24, and His Girlfriend, ████ █████████ Age 20, were leaving the AMC Movie
Theater on 8 Mile & Van Dyke Roads in Detroit, Michigan when the 2 were
approached by three Strangers known now as the above three named Victims. The
Deceased Victim CARL BISHOP and his two friends were leaving a Tavern/Bar,
when they came upon Derrick Lee Cardello-Smith & his Girlfriend were heading
to their car in the parking Lot and then passed the three Men who made
comments about the pair being an "Interracial Couple" and words were then
exchanged--an Argument ensued between all the men involved with the Leader,
Carl Bishop becoming Enraged that the Suspect was with a woman of the
Opposite Race-She is Caucasian and Needs to stay within her own race, the
three men were saying. The Trio Started yelling obscenities at Cardello-Smith
and his Girlfriend. OJ KILLED HIS WOMAN so what this Nigger Here your with!
    Offender Cardello-Smith was attempting to keep the matter from
getting more aggressive, when, according to witnesses and bystanders, two of
them men started fighting with Cardello-Smith, who saw that the Third Male,
Carl Bishop was physically attacking his Girlfriend, by slapping her and
calling her a "Nigger-Lover"" and "Race Traitor'".
    Cardello-Smith was still engaged in fighting Gunter & Brock, when
his Girlfriend then yelled out, "Derrick Help!"", Derrick then saw her and
saw that the (Decedent) Carl Bishop had in fact possessed a Sharp Edged
Weapon and/or knife and was about to Stab Derrick's Girlfriend while the
other 2 Men were keeping Derrick Busy and they were laughing, and then, the
next thing, Offender Cardello-Smith broke Gunters Arm, Broke the Leg of Mr.
Brock, immobilizing both parties and Cardello-Smith then Ran and Intercepted
the knife by placing His Own Arm in between the Weapon and his Girlfriends
Upper Torse and then, the knife penetrated Mr. Cardello-Smith's Right
Forearm, and then, Cardello-Smith grabbed Carl Bishops Wrist and Pulled the
knife out of his arm and forced it into the Lungs of the Remaining Assailant,
Carl Bishop, Offender was heard saying to the now deceased Victim "You do not
like Interracial Couples!  "You were going to Stab my Girl! 'Now Your Going
to Die ina Filthy Parking Lot with Your Own Knife in your chest!"And then,
Cardello-Smith Punch the Victim Car Bishop 17 times and then the pair "Fell"
to the ground... Cardello-Smith then told the Victim, "You should have let
this go andjust left us alone!" Die where you are YOu Racist Bitch!"
    Derrick then went to the other 2 pair that were immobolized and
proceeded to kick them and break other bones on their bodies until he was
subdued by Officers who arrived on Scene.-The Victim Carl Bishop was taken to
Emergency Care at St. Johns Hospital where he succumbed to his injuries 2
weeks later---Derrick Cardello-Smith was taken in to custody for Open Murder.

Arrestee Transported to 9th Precinct-Eastern District for holding and
processing pending Charges Review by Detectives Jose' Ortiz & David Cobb



# SEX CRIMES UNIT

**DPD**
SEXUAL CRIMES
UNIT
Records Section

## ARREST RECORD CORRECTION DEPARTMENT

**police**

JANUARY 7, 1998

REPORTING AGENCY: DETROIT POLICE DEPARTMENT
CASE REPORTING UPDATE AND CORRECTION OF ARREST RECORD

The Detroit Police Department acting on it's own initiative and through the Sex Crimes Unit of the Violent Crimes Task Force hereby enacts and decrees that the Current and Past Reports of Sexual Offenses, Rapes, or Sexual Assaults against any Woman or Women that have been Lodged against the Person Named as Derrick Lee Smith, Derrick Lee Moore, Derrick Smith are Not the Person or Party of Detroit Resident, Or of the Following Named Person, or Civilian and are to exclude the named person of:

DERRICK LEE CARDELLO-SMITH MDOC # 267009
19246 HOYT-DETROIT, MI 48226
DATE OF BIRTH: NOVEMBER 01, 1972 (11-01-72)
SSN ███ ███ ████

In 1997 Derrick Lee Cardello-Smith, Entered the Jackson Prison System for the Charge of Second-Degree Murder, and it is reflected in Homicide Report 1997-0811306.1 and in fact Derrick Lee Cardello-Smith is NOT THE SUSPECT, NOT THE PERPETRATOR, NOR THE PERSON WHO COMMITTED ANY RAPES, NOR ANY SEXUAL ASSAULTS AGAINST ANY FEMALE VICTIM IDENTIFIED, INVESTIGATED OR LISTED IN THE JURISDICTION OF THE DETROIT POLICE DEPARTMENT and in fact, The persons named as John Smith and Derek Lee Smith have listed their Individual alias and AKA's as Derrick Lee Cardello-Smith and in fact, Derrick Lee Cardello-Smith did not commit any sexually offense and was and is excluded from any sexual offense or reports of sexual encounters by any persons during any time frame of any residency in the City of Detroit, or In Any County in the State of Michigan and Any Reports, Documents or Others that list, site, discuss, contain, or have the Name of Civilian DERRICK LEE CARDELLO-SMITH in it during the time frames of 1992-1998, are in fact, FALSE REPORTS, FALSE STATEMENTS and Should Exclude Mr. Derrick Lee Cardello-Smith as that the reports are from a Deliberate, Intentional Group of Men and Women Who reside or have resided in the City of Detroit, Counties of Macomb, Oakland and Wayne and have in fact Filed False Charges of Rape against Multiple Persons and Parties of Interest to Extort money from the Unsuspecting Men and in fact were part of the RICO Units Targeted by the Internal Affairs Bureau of the Detroit Police Department, and in fact, 13 Women have been arrested and convicted of Placing False Rape Allegations and Testimony against the Civilians and Citizens of the State of Michigan and have in fact, continued to cooperate in other investigations that cannot be revealed at this time. However, Mr. Derrick Lee Cardello-Smith was in fact the target of these women due to the women being instructed to and paid to do so by Detroit Police Officers that Derrick Lee Cardello-Smith has prior history and Bad Blood with based on previous encounters. Derrick Lee Cardello-Smith has in fact been the Victim of These Said False Rape Charges by various women who have signed General Templates Reports Circulated by Former Detroit Police Officers who have been convicted of extortion, abuse of power and other crimes. The named persons and parties who were paid by the Former Detectives of the Detroit Police Department and Named Females Who filed False Police Reports are in fact listed on the accompanying report attachment, as that the charges are false, the reports have to be redacted and voided from the Law Enforcement Information Network to Ensure that Derrick Lee Cardello-Smith is not listed as a Sex Offender in the MDOC or any other Public Record. Derrick Lee Cardello-Smith is not a Sex Offender and the Internal Documents Must Follow him to the MDOC and not the Incorrect Documents.

*Patrick L. Jackman* B5489
Patrick Jackman, Public Records Supervisor-DPD

State of Michigan
St. Clair County

Sworn Affavidit
of Mrs. Kathryn Lynn Preston

I have recently ended an ongoing
sexual relationship with Honorable
Brock Swertzle, Court of Claims, Judge
he stated that if I ended the
relationship he would deny the appeal
of Derrick Lee Cardello Smith 267609
in Case #369646 and use his
influence to deny other criminal
appeals and civil cases. In May
2024 he said he would preside
over Smith cases in June he would
grant the appeal. If I had sex
with him again, if not he would
deny it in June under Case
#369646. I ended it with
him, he is Married and I am married
this is wrong. He is a horrible
manipulator rapist. I will
testify to these events because
they are true, real, and happened.

06/29/2024

Austin Thornton
Notary Public

Austin Thornton
Notary Public - State of Michigan
County of St. Clair
My Commission Expires 7/15/2030
Acting in the County of St. Clair

Kathryn Preston

STATE OF MICHIGAN

IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH #267009,

    Plaintiff,

Vs

SEAN COMBS, et al,

   Defendant,

————————————————————/

~~PROOF OF SERVICE~~     PROOF OF SERVICE

2024-7362-NO

Hon. Anna Marie Anzalone



FILED
39TH CIRCUIT COURT

AUG 2 6 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

I swear and declare that I mailed one copy of this pleading to the Defendant-Sean Combs at 200 S. Mapleton Drive, Holmby HIlls, Los Angeles California 49007 by first class mail and Certified Mail on 8-13-24 in Muskegon, MI 49444.

Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444


August 13, 2024


Office of the Clerk
39th Circuit Court
Lenawee County Courthouse
425 N. Main Street
Adrian, MI 49221



Re: Derrick Lee Cardello-Smith vs. Combs
    Case No 2024-7362-NO


Dear Clerk:


Enclosed for filing in the above cause, the following documents
which I am asking are placed on the Courts Docket for the pending
case at issue.


1. NOTICE OF INTENT TO SUBMIT AGREEMENTS FOR PROPERTY AND 49% OF
ALL ASSETS OWNED BY SEAN COMBS FOR VIOLATION OF AGREEMENT FOR
PLAINTIFF TO NOT PROCEED WITH PERSONAL INJURY DONE TO PLAINTIFF
BY THE DEFENDANT SEAN COMBS IN 1997 ON MULTIPLE INCIDENTS
 2. NOTICE OF INTENT TO SEEK ADDITIONAL DAMAGES FOR VIOLATION OF
CONTRACT.
 3. EXHIBIT # 1  PLAINTIFFS SUBMISSION OF APPROVED MDOC VISITOR
LIST SHOWING SEAN COMBS VISITED THE PLAINTIFF WHILE PLAINTIFF HAS
BEEN INCARCERATED IN THE MDOC.
 4. OFFERS OF PROOF--
#1 HOMICIDE INCIDENT REPORT--
#2 DETROIT POLICE REPORT CLEARING PLAINTIFF OF ANY SEX CRIMES AND
SHOWING PLAINTIFF WENT TO PRISON FOR SECOND-DEGREE MURDER IN HAND



TO HAND COMBAT.

#3 POLICE REPORT SHOWING WAYNE COUNTY PROSSECUTOR KYM WORTHY, SEAN COMBS, PLAINTIFF AT THE DETROIT POLICE CRIME LAB IN 1997 ARGUING ABOUT THE RAPE KITS AND HOW KYM WORTHY WOULD SET THE PLAINTIFF UP ON MULTIPLE RAPES AS SHE HAS OTHER MEN INCARCERATED WHILE SHE MAKES MONEY OFF HER INVESTMENT WITH SEAN COMBS.

#4 AFFIDAVIT OF MARRIED WOMAN ADMITTING TO HAVING SEXUAL AFFAIR WITH SITTING CHIEF JUDGE OF THE COURT BROCK SWARTZLE IN EXCHANGE FOR DENYING THE PLAINTIFFS CRIMINAL APPEALS CONTINUOUSLY WHEN SHE ENDED THE AFFAIR.

#5 2 POLY GRAPH TESTS SHOWING PLAINTIFF PARTICIPATED IN A TEST AND IT SHOWED PLAINTIFF WAS AND IS TRUTHFUL.

#6 POLYGRAPH WHERE PLAINTIFF WAS DEEMED INCONCLUSIVE DUE TO COVID BREATHING PATTERNS---YET ANSWERED YES TO EVERY QUESTION ASKED.

PROOF OF SERVICE UPON DEFENDANTS.

Please place these matters on the court docket and notify this Plaintiff that the Court has received the documents.

Thank you for your time in this matter.

Respectfully Yours,

Derrick Lee Cardello-Smith

2

Exhibit 11

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH, #267009
Plaintiff(s)

File No. 24-7362-NO

HONORABLE ANNA MARIE ANZALONE

VS

SEAN COMBS,
Defendant(s)

FILED
39TH CIRCUIT COURT
AUG 2 6 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

PRE-TRIAL STATEMENT OF DERRICK LEE CARDELLO-SMITH

1. BRIEF STATEMENT OF THEORY OF CASE: See Attached Due to length

2. REQUESTED ADMISSIONS OF FACT: See attached due to length

3. REQUESTED STIPULATIONS: See attached due to length

4. TIME REQUESTED TO COMPLETE DISCOVERY:  20 days  Days

5. ESTIMATED TIME REQUIRED FOR TRIAL:  10-20  Days

_____ JURY          _____ NON-JURY

6. SETTLEMENT POSSIBILITY:  Settlement is possible

7. ALL CLAIMS ARISING OUT OF THE TRANSACTION OR OCCURRENCE THAT IS THE SUBJECT MATTER OF THE ACTION HAVE BEEN JOINED AS REQUIRED BY MCR 2.203:

_____ Yes  _____ No

8. OTHER MATTERS:  See attached due to length

Dated:  8-19-24

Attorney for Derrick Lee Cardello-Smith
Business Address: 2500 S. Sheridan Drive
Muskegon, MI 49444

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

DERRICK LEE CARDELLO-SMITH,#267009,
    Plaintiff,

                              File No 2024-7362-NO

Vs

                              Honorable Anna Marie Anzalone

SEAN COMBS, et al,
    Defendant,
_____/

FILED
39TH CIRCUIT COURT

AUG 2 6 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

PRE-TRIAL STATEMENT OF DERRICK LEE CARDELLO-SMITH

    Plaintiff hereby provides this court with the PRE-TRIAL STATEMENT OF DERRICK LEE CARDELLO-SMITH and states the following in order of the courts requirements.

    1. BRIEF STATEMENT OF THEORY OF CASE:  Plaintiff Derrick Lee Cardello-Smith was Drugged, Sexually Assaulted by the Defendant Sean Combs.. Plaintiff was also forced to not get his Money back from investments by the Plaintiff to the Defendant, Plaintiff was forced to sign an Agreement between Defendant, Plaintiff and Other Persons in Law Enforcement or Plaintiffs Family would be Killed by the Defendant and his Law Enforcement connections, and Plaintiff was forced to Wait almost 30 years to have his end of the agreement to be brought to the forefront, and the Sexual assault happened in the City of Adrian, Michigan, then forced to enter into an agreement for remaining silent and in exchange for it, the Defendant would keep the Plaintiffs Financial Investment of $150,000.00 back in 1997 for a total of 49% (Forty-Nine-Percent) of the Value of all Holdings, Property, Merchandise, Assets, finances, investments, investment returns, all recordings, titles, deeds, anything in checking accounts, savings accounts and other areas with the money given to the Defendant by Plaintiff in 1997 to not be collected until the 30 year end, or, unless others came forward with any sexual assault claims, or other crimes committed by the defendant or accused of having been committed by the defendant and any settlements made to any person, place, agency, building, entity, company, corporation or other that Defendant enters into with said persons, companies or other, then Plaintiff will have the ability to Sue for the amount or One-hundred Million Dollars to Four Hundred Million Dollars, and get returns on the investments that were all made by the Plaintiff and then upheld and entered into by other persons, including the names of persons on the Witness List to be presented by the Plaintiff....Plaintiff was violated, drugged, and raped by the defendant, and is in fact guilty of violating this Plaintiff and then keeping the money from this Plaintiffs investment and then a cover up was done by Detroit Police, Adrian, Lenawee Police, Kym Worthy, and other law enforcement officials to not only place this Plaintiff in the position of not being believed or heard, but it was actually covered up on many different levels, and it should be brought to trial and this was done so by the full knowledge of Defendant Sean Combs who sexually violated this Plaintiff and then, Defendants Allies and Friends in Office in various areas, Framed this Plaintiff and Placed this Plaintiff out of Society for

\

the purpose of operating their criminal enterprise, with an empire, built on Rape and then placing the Victim in Prison to cover up that Rape and Continue Making Money on the rape(s).

2. REQUESTED ADMISSIONS OF FACT: Plaintiff will have the requests for Admissions of Fact and shall provide it to the Court and Defendants which will be to the truth of the matter and to the Signing of the Documents for the Injury caused to this Plaintiff by the defendant and his people.

3. REQUESTED STIPULATIONS: Plaintiff will ask the defendants to stipulate to the agreements that will be provided to the court, based on the Plaintiffs Currently Location.

4. TIME REQUESTED FOR DISCOVERY:   20 Days   This is due to the Plaintiff having to wait on the US Mail and the Prison Staff always wanting to transfer the Plaintiff and interfere with the Plaintiffs incoming and outgoing mail and delaying it, and other factors that will interfere with it.

5. ESTIMATED TIME REQUIRED FOR TRIAL:   10-20 Days

   JURY TRIAL REQUESTED

6. SETTLEMENT POSSIBILITY: Yes, there is a possibility of settlement with the defendant.

ALL CLAIMS ARISING OUT OF THE TRANSACTION OR OCCURRENCE THAT IS THE SUBJECT-MATTER OF THE ACTION HAVE BEEN JOINED AS REQUIRED BY MCR 2.203: YES

8. OTHER MATTERS:   ORDER THE NAMES OF THE PERSONS THAT SIGNED THE AGREEMENT WITH PLAINTIFF AND DEFENDANT TO REMAIN SEALED AND PROTECTED FOR THEIR OWN SAFETY AND SECURITY, AS PLAINTIFF HAS PROTECTED THEM FOR YEARS,.I would ask that the entire record is allowed to be made public and that nothing is sealed or stopped from being reviewed in this court at any time and that it is all allowed to be seen by anyone who wants to see it, all documents, facts and statements in this case, at a time to be made by the court, and upon completion of the entire case proceedings.

August 19, 2024

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in Pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

2.

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

DERRICK LEE CARDELLO-SMITH,#267009,
    Plaintiff,

                            File No 2024-7362-NO

Vs

                        Honorable Anna Marie Anzalone

SEAN COMBS, et al,
    Defendant,
                    /

PLAINTIFFS SUBMISSION OF SEVEN (7) OFFERS OF PROOF

    Plaintiff, Derrick Lee Cardello-Smith, hereby presents this Court with the SEVEN (7) OFFERS OF PROOF in the case at bar, and identifies the Offers of Proof in numerical order---
    1. POLICE REPORT CONFIRMING ALTERCATION WITH PLAINTIFF AND DEFENDANT AND KYM WORTHY IN ATTENDANCE AT THE DETROIT CRIME LAB
    2. APPROVED VISITOR LIST SHOWING DEFENDANT COMBS AND FINANCIAL AGENT BEN BRAFMAN ON PLAINTIFFS PRISON VISITING LIST IN 2005
    3. SEX CRIMES UNIT REPORT SHOWING DETROIT POLICE DEPARTMENT CLEARED PLAINTIFF OF ANY SEXUAL ASSAULT IN 1998 AND LIED ABOUT CURRENT OFFENSES THAT HAVE PLAINTIFF IN PRISON.
    4. POLYGRAPH REPORT FOR HOMICIDE VERIFYING PLAINTIFF ANSWERED YES TO THE SELF-DEFENSE AND CONSENSUAL SEX ACTS WITH CARLI CARPENTER AND VERIFICATION THAT PLAINTIFF WAS FRAMED BY DETECTIVE DETECTIVE PATRICIA PENMAN, FOR FALSE RAPE CHARGES. INCONCLUSIVE DUE TO ERRATIC BREATHING PATTERNS (COVID RELATED) BUT ANSWERED YES TO EVERY QUESTION.
    5. POLYGRAPH REPORT VERIFYING PLAINTIFF PASSED TEST #2
    6. HOMICIDE REPORT SHOWING PLAINTIFF PROTECTED A WOMAN.
    7. AFFIDAVIT OF WOMAN SWEARING TO HAVING AN AFFAIR WITH A COURT OF APPEALS JUDGE BROCK SWARTZLE AND HIM KEEPING PLAINTIFF IN PRISON BY DENYING PLAINTIFFS APPEALS WHEN SHE BROKE OFF THE RELATIONSHIP IN COURT OF APPEALS NO 369646 IN JUNE 2024.

These offers of proof are documents that this Plaintiff is seeking to be placed on the Court docket as that they are critical to this Plaintiffs Case.

Thank you for confirming that it has been sent to this Plaintiff and Notify this Plaintiff of its filing.

Respectfully Yours,

Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

proof #1


**detroit**

**police**

06/15/97
03:30am

Writer Responded to Incident at Detroit Crime Lab where officers were stopping and incident involving several Persons identified As-Sean Combs-(artist) Kim Worthy-official A.rogers (17year old male) Derrick Smith (24year old black male) 2fights had happend with Smith and Combs-Worthy had Uttered to Smith "You mess up my investment and I'll Put multiple rapes on you like i did other men-we have a warehouse felled with Kits from rapes". Smith said you just want to keep men locked up for things we did not do- she said sob try me's writer Spoke with officers from Adrian, Lenawee P.D. & determined further investigation Warranted. Will do follow up's

Patrick Jackman B548
Sat. Silent Run
Officer Response

*JCF #1 Cardello-Smith 267009 ACF #2*

*Proof #2*

MICHIGAN DEPARTMENT OF CORRECTIONS
**VISITOR LIST** *G- Robert Cotton Correctional Facility*

CAJ-334

**Instructions:** List below the names of people you would like to have considered for approval to visit you. The list may include as many immediate family members i.e. parent, grandparent, step-parent, spouse, mother-in-law, father-in-law, child, stepchild, grandchild, sibling, step-sibling, half-sibling and aunt and uncle (if verification is provided that s/he served as a surrogate parent) as you have that qualify for a visit and up to 10 non-immediate family members.

In the relationship section list the person's relationship to you, i.e., mother, father, sister, etc. All people who do not meet the definition of immediate family member will be listed as friends. Your Visitor List cannot include persons who are less than 18 years of age unless that person is an emancipated minor and can show proof of emancipation or unless the person is your child, grandchild, stepchild, sibling, step-sibling or half-sibling. *Florence Crane*

NOTE: You are permitted to add or delete names of immediate family members from your Visitor List at any time however; addition or deletion of non-family members is permitted only one time during a six month period. *Prisoner at Florence Crane Due to Bedspace*

Submit this list to your RUM once it is completed.

| Prisoner Number | Prisoner Name (Print) | Date |
|---|---|---|
| 267009 | Derrick Lee Cardello-Smith | 4-10-05 |

| RUM/Designee (Print Name) | Signature | Date |
|---|---|---|
| RUM Howz | Howz | 4-12-05 |

| | Last Name | First Name | Relationship | Add (A) Remove (R) | Comments STAFF USE ONLY |
|---|---|---|---|---|---|
| 1. | Smith | Rhonda | Mother | A | PSI ✓ |
| 2. | Smith | Derrick | Son | A | PSI ✓ |
| 3. | Beadle | Bryan | Army Chaplain | A | PSI ✓ |
| 4. | Combs | Sean | Friend | A | ✓ |
| 5. | Brafman | Ben | Financial Agent friend | A | ✓ |
| 6. | Penman | Patricia | Detective | A | ✓ |
| 7. | Cobb | David | Detective | A | ✓ |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| 13. | | | | | |
| 14. | | | | | |
| 15. | | | | | |
| 16. | | | | | |
| 17. | | | | | |
| 18. | | | | | |
| 19. | | | | | |
| 20. | | | | | |

*Approved By Lawrence Amy Grison counselor K-unit A and T unit RUO Wurthington*

Distribution: ☑ Institution File   ☑ Counselor File   ☑ Prisoner



# SEX CRIMES UNIT

**police**    **ARREST RECORD CORRECTION DEPARTMENT** JANUARY 7, 1998

REPORTING AGENCY: DETROIT POLICE DEPARTMENT
CASE REPORTING UPDATE AND CORRECTION OF ARREST RECORD

The Detroit Police Department acting on it's own initiative and through the Sex Crimes Unit of the Violent Crimes Task Force hereby enacts and decrees that the Current and Past Reports of Sexual Offenses, Rapes, or Sexual Assaults against any Woman or Women that have been Lodged against the Person Named as Derrick lee Smith, Derrick Lee Moore, Derrick Smith are Not the Person or Party of Detroit Resident, Or of the Following Named Person, or Civilian and are to exclude the named person of:

DERRICK LEE CARDELLO-SMITH MDOC # 267009
19246 HOYT-DETROIT, MI 48226
DATE OF BIRTH: NOVEMBER 01, 1972 (11-01-72)
SSN ███-██-████

In 1997 Derrick Lee Cardello-Smith, Entered the Jackson Prison System for the Charge of Second-Degree Murder, and it is reflected in Homicide Report 1997-0811306.1 and in fact Derrick Lee Cardello-Smith is NOT THE SUSPECT, NOR THE PERPETRATOR, NOR THE PERSON WHO COMMITTED ANY RAPES, NOR ANY SEXUAL ASSAULTS AGAINST ANY FEMALE VICTIM IDENTIFIED, INVESTIGATED OR LISTED IN THE JURISDICTION OF THE DETROIT POLICE DEPARTMENT and in fact, The persons named as John Smith and Derek Lee Smith have listed their individual alias and AKA's as Derrick Lee Cardello-Smith and in fact, Derrick Lee Cardello-Smith did not commit any sexually offense and was and is excluded from any sexual offense or reports of sexual encounters by any persons during any time frame of any residency in the City of Detroit, or In Any County In the State of Michigan and Any Reports, Documents or Others that list, site, discuss, contain, or have the Name of Civilian DERRICK LEE CARDELLO-SMITH in it during the time frames of 1992-1998, are in fact, FALSE REPORTS, FALSE STATEMENTS and Should Exclude Mr. Derrick Lee Cardello-Smith as that the reports are from a Deliberate, Intentional Group of Men and Women Who reside or have resided in the City of Detroit, Counties of Macomb, Oakland and Wayne and have in fact Filed False Charges of Rape against Multiple Persons and Parties of Interest to Extort money from the Unsuspecting Men and in fact were part of the RICO Units Targeted by the Internal Affairs Bureau of the Detroit Police Department, and in fact, 13 Women have been arrested and convicted of Placing False Rape Allegations and Testimony against the Civilians and Citizens of the State of Michigan and have in fact, continued to cooperate in other investigations that cannot be revealed at this time. However, Mr. Derrick Lee Cardello-Smith was in fact the target of these women due to the women being instructed to and paid to do so by Detroit Police Officers that Derrick Lee Cardello-Smith has prior history and Bad Blood with based on previous encounters. Derrick Lee Cardello-Smith has in fact been the Victim of These Said False Rape Charges by various women who have signed General Templates Reports Circulated by Former Detroit Police Officers who have been convicted of extortion, abuse of power and other crimes. The named persons and parties who were paid by the Former Detectives of the Detroit Police Department and Named Females Who filed False Police Reports are in fact listed on the accompanying report attachment, as that the charges are false, the reports have to be redacted and voided from the Law Enforcement Information Network to Ensure that Derrick Lee Cardello-Smith is not listed as a Sex Offender in the MDOC or any other Public Record. Derrick Lee Cardello-Smith is not a Sex Offender and the Internal Documents Must Follow him to the MDOC and not the Incorrect Documents.

*Patrick L. Jackman* B5489
Patrick Jackman, Public Records Supervisor-DPD

Proof



ABC Polygraph & Investigations
Howard Swabash
436 W. Eliza Street
Schoolcraft, MI  49087
(269) 679-3678
HOWARDSWABASH@aol.com

## POLYGRAPH REPORT

| Subject: | DERRICK LEE CARDELLO-SMITH | Polygraph No.: | CARDELLO-SMITH Test 1 |
|---|---|---|---|
| Nature of test: | CRIMINAL SEXUAL ASSAULT - HOMICIDE | Date of Exam: | 04-04-2022 |

TEST QUESTIONS:

1. Did you stab and cause the death of Carl Bishop in self-defense while protecting your girlfriend?

    Answer: YES.

2. In October 1997 did you have consensual sexual acts and intercourse with Carli Boike (Carpenter)?

    Answer: YES.

3. Did Detroit police officer, David Cobb frame you for the rape case involving Tina Bomarrito?

    Answer: YES.

4. Were you set up on the rape case by a Sheriff's Deputy Patricia Penman—your Carpenter ex-girlfriend?

    _This one involved Carli Carpenter_
    _Case # 2019-000756-01-FC_

    Answer: YES.

### Report:
It is the opinion of the undersigned examiner, based on the examination given that this subject is INCONCLUSIVE to the above issue due to erratic breathing patterns.

_[signature]_

Howard Swabash
Polygraph Specialist

ACT 295, P.A. of 1972 [MCL 338.1728(3)]: Any recipient of information, report or results from a polygraph examiner, except for the person tested, shall not provide, disclose or convey such information, report or results to a third party except as may be required by law and the rules promulgated by the State Board of Forensic Polygraph Examiners.

4/4/2022



ABC Polygraph & Investigations
Howard Swabash
436 W. Eliza Street
Schoolcraft, MI 49087
(269) 679-3678
HOWARDSWABASH@aol.com

## POLYGRAPH REPORT

| Subject: | DERRICK LEE CARDELLO-SMITH | Polygraph No.: | CARDELLO-SMITH Test 2 |
|---|---|---|---|
| Nature of test: | ALLEGED FALSE INFORMATION BY DOC/SECOND DEGREE MURDER | Date of Exam: | 04-04-2022 |

**TEST QUESTIONS:**

1. Were you the victim of the Department of Corrections placing false information on the OTIS Offender Tracking Information System?

    Answer: YES.

2. Did you resolve your case for a plea in May 2019 Second Degree Murder case and not the rape charge?

    Answer: YES.

3. Will you file civil lawsuits and false police report charges on Carli Carpenter for wrongful allegations against you?

    Answer: YES.

4. Did you commit a High Misdemeanor Offense while serving in the US Army between 1990-1993?

    Answer: YES.

**Report:**
It is the opinion of the undersigned examiner, based on the examination given that this subject is TRUTHFUL to the above issues.

_(signature)_

Howard Swabash
Polygraph Specialist

ACT 295, P.A. of 1972 [MCL 338.1728(3)]: Any recipient of information, report or results from a polygraph examiner, except for the person tested, shall not provide, disclose or convey such information, report or results to a third party except as may be required by law and the rules promulgated by the State Board of Forensic Polygraph Examiners.

4/4/2022



# HOMICIDE INCIDENT REPORT

**police**

REPORTING AGENCY: DETROIT POLICE DEPARTMENT
CASE REPORT NUMBER: 0801130106.1

FILED
CATHY M. GARRETT
WAYNE COUNTY CLERK

MAY 3, 2019

REPORTED ON JULY 8, 1997 12:45AM OCCURRED ON JULY., 4,1997,10:09PM
AT EAST 8 & VAN DYKE ROADS-DETROIT,MI SCA/CENSUS:10:09pmSECTOR A

OFFENSE:HOMICIDE-SPECIAL CIRCUMSTANCES-MURDER:OFFENDER IS A REGISTERED SELF-DEFENSE EXPERT WITH TRAINING IN MARTIAL ARTS & HAND-TO-HAND COMBAT-OFFENSE HIGHTENED--BY INTENTIONAL OVERKILL & INTENTIONAL OVERUSE OF DEFENSE TACTICS-OFFENDER KNEW 3 ASSAILANTS WERE CIVILIANS & NOT TRAINED COMBATANTS

1. ARRESTEE: DERRICK LEE CARDELLO-SMITH:AGE:24SEXMALE:RACE:BLACK-ITALIAN-MEX-ADDRESS:▮▮▮ ▮▮▮-DETROIT, MI 48226--Phone▮▮▮▮▮▮▮▮
2. HOMICIDE VICTIM: CARL BISHOP: AGE:47:SEX MALE RACE CAUCASIAN/WHITE -No Relationship to Suspect/Offender
3. ASSAULT VICTIM: ROBERT GUNTER: AGE:53:SEX MALE:RACE CAUCASIAN/WHITE NO Relationship to Suspect/Offender
4. ASSAULT VICTIM: DAVID BROCK: AGE:44: SEX:MALE:RACE CAUCASIAN/WHITE No relationship to Suspect/Offender

OFFENSE DESCRIPTION: On July 7, 1997, Suspect DERRICK LEE CARDELLO-SMITH, Age 24, and His Girlfriend, ▮▮▮▮ ▮▮▮▮▮ Age 20, were leaving the AMC Movie Theater on 8 Mile & Van Dyke Roads in Detroit, Michigan when the 2 were approached by three Strangers known now as the above three named Victims. The Deceased Victim CARL BISHOP and his two friends were leaving a Tavern/Bar, when they came upon Derrick Lee Cardello-Smith & his Girlfriend were heading to their car in the parking Lot and then passed the three Men who made comments about the pair being an "Interracial Couple" and words were then exchanged--an Argument ensued between all the men involved with the Leader, Carl Bishop becoming Enraged that the Suspect was with a woman of the Opposite Race-She is Caucasian and Needs to stay within her own race, the three men were saying. The Trio Started yelling obscenities at Cardello-Smith and his Girlfriend. OJ KILLED HIS WOMAN so what this Nigger Here your with!
Offender Cardello-Smith was attempting to keep the matter from getting more aggressive, when, according to witnesses and bystanders, two of them men started fighting with Cardello-Smith, who saw that the Third Male, Carl Bishop was physically attacking his Girlfriend, by slapping her and calling her a "Nigger-Lover"" and "Race Traitor'".
Cardello-Smith was still engaged in fighting Gunter & Brock, when his Girlfriend then yelled out, "Derrick Help!"", Derrick then saw her and saw that the (Decedent) Carl Bishop had in fact possessed a Sharp Edged Weapon and/or knife and was about to Stab Derrick's Girlfriend while the other 2 Men were keeping Derrick Busy and they were laughing, and then, the next thing, Offender Cardello-Smith broke Gunters Arm, Broke the Leg of Mr. Brock, immobilizing both parties and Cardello-Smith then Ran and Intercepted the knife by placing His Own Arm in between the Weapon and his Girlfriends Upper Torse and then, the knife penetrated Mr. Cardello-Smith's Right Forearm, and then, Cardello-Smith grabbed Carl Bishops Wrist and Pulled the knife out of his arm and forced it into the Lungs of the Remaining Assailant, Carl Bishop, Offender was heard saying to the now deceased Victim "You do not like Interracial Couples! "You were going to Stab my Girl! 'Now Your Going to Die ina Filthy Parking Lot with Your Own Knife in your chest!"And then, Cardello-Smith Punch the Victim Car Bishop 17 times and then the pair "Fell" to the ground... Cardello-Smith then told the Victim, "You should have let this go andjust left us alone!" Die where you are YOu Racist Bitch!"
Derrick then went to the other 2 pair that were immobolized and proceeded to kick them and break other bones on their bodies until he was subdued by Officers who arrived on Scene.-The Victim Carl Bishop was taken to Emergency Care at St. Johns Hospital where he succumbed to his injuries 2 weeks later---Derrick Cardello-Smith was taken in to custody for Open Murder.

Arrestee Transported to 9th Precinct-Eastern District for holding and processing pending Charges Review by Detectives Jose' Ortiz & David Cobb

Proof #7

State of Michigan
St. Clair County

Sworn Affidavit
of Mrs. Kathryn Lynn Preston

I have recently ended an ongoing
sexual relationship with Honorable
Brock Swartzle, Court of Claims Judge
he stated that if I ended the
relationship he would deny the appeal
of Derrick Lee Cardello Smith 267009
in Case #369646 and use his
influence to deny other criminal
appeals and civil cases. In May
2024 he said he would preside
over Smith cases in June he would
grant the appeal. If I had sex
with him again, if not he would
deny it in June, under Case
#369646. I ended it with
him, he is Married and I am married
this is wrong. He is a horrible
manipulator rapist. I will
testify to these events because
they are true, real, and happened.

06/29/2024
Austin Thornton
Notary Public

Austin Thornton
Notary Public, State of Michigan
County of St. Clair
My Commission Expires 7/15/2030
Acting in the County of St. Clair

Kathryn Preston

Mr. Derrick Lee Cardello-Smith
#267009
cE.C. Brooks Correctional Faciility
2500 S. Sheridan Drive
Muskegon, MI 49444

August 19, 2024

Office of the Clerk
39th Circuit Court
Lenawee County
425 N. Main Street
Adrian, MI 49221

```
                                    FILED
                              39TH CIRCUIT COURT

                                 AUG 2 6 2024

                              LENAWEE COUNTY CLERK
                                ADRIAN, MICHIGAN
```

Re: Derrick Lee Cardello-Smith v<sup>ll</sup>. Sean Combs.
Case No 24-7362-NO

Dear Clerk:

Enclosed for filing in the above cause, are the following documents that I
am asking are placed on the Docket and Record:

1. PRE-TRIAL STATEMENT OF DERRICK LEE CARDELLO-SMITH
2. ATTACHMENTS OF PRE-TRIAL STATEMENT DUE TO LENGTH.
3. EXHIBITS FOR CASE FILING
4. PROOF OF SERVICE UPON DEFENDANT COMBS

If you could please process these documents, and notify me that it has been
done, it would be greatly appreciated.

I thank you for your time in thlls matter and I hope to hear from you soon.

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

Exhibit 12

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

DERRICK LEE CARDELLO-SMITH,#267009,
    Plaintiff,

Vs

                                 File No 2024-7362-NO

SEAN COMBS, et al,           Honorable Anna Marie Anzalone
    Defendant,
_____/

PLAINTIFFS SUBMISSION OF 11 PAGE 1997 AGREEMENT
BETWEEN DEFENDANT SEAN COMBS AND PLAINTIFF DERRICK LEE CARDELLO-SMITH
AUTHORIZED BY KYM WORTHY, ROBERT FICANO, WARREN EVANS, PATRICK JACKMAN,
GEORGE PRESTON, JERRY REDLIN, AND DORTHY DUNN FOR RECORD PLACEMENT AT PRE-TRIAL

Now comes the Plaintiff, Derrick Lee Cardello-Smith, and hereby provides this Court with the Signed 1997 Agreement of Silence and Confidentillity between Plaintiff and Defendant Sean Combs and Signed by Multiple Persons confirming the agreement and grounds detailed within said agreement between all persons all to the Cover-up of the Sexual Assault of this Plaintiff by the Defendant and Other Police Departments and Persons.

Plaintiff is Submitting this document in accordance with Michigan Rules of Court 2.401 (C)(1)(d) lind the submission of the agreement of silence and confidentiality that is signed by all persons involved and Plaintiff further submits an Affidavllt Attesting to the Authenticity of the Signed 1997 Agreement for this Court record Verification.

PROOF OF SERVICE

I hereby swear that I mailed one copy of this agreement to the Defendant at his address of record and that I did so on August 26, 2024 by US Mail and Certified Mail in Muskegon, MI 49444.



Mr. Derrick Lee Cardello-Smith                August 26, 2024
#267009
Plaintiff in Pro Se
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

FILED
39TH CIRCUIT COURT

AUG 2 9 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

# MULTIPLE PERSONS AGREEMENT TO SILENCE And ConFiDENTiALiTY

06/16/97

Present:

1. DERRICK LEE ZARDELLO-SMITH — PERSON
2. SEAN JOHN COMBS — PERSON
3. KYM WOrTHY — OFFiCiaL - PERSON
4. GEORGE PrESTON - PERSON-WiTNESS
5. PATRICK JACKMAN- Police OFFiCERS DETROIT
6. DorOTHY DUNN - Bar OWNER-DUNN-INN

## CONFIDENTIALITY
## - AGREEMENT -

THE PARTIES OF DERRICK LEE ZARDELLO SMITH AND SEAN COMBS HEREBY Aggree TO THE Following TERMS AND RULES - 1-To NOT HAVE SEAN COMBS PROSECUTED FOR THE DRUGGING - RApe - PhysiKaL ASSAUT and THE

1 ——>

MANY OTHER FACTS OF VIOLENCE SAID
PERSON OF SEAN COMBS- ARTIST-Recorder
And Investor UPON SMITH Committed in
JUNE 1997- UPON DERRICK Cardello SMITH
11-01-72 - City of Adrian and Detroit-MI,
 2- Cardello-Smith Agrees to Not Press
Criminal Charges Against SEAN Combs,
3 Kym WORTHY-OFFICIAL in Detroit-Agrees
To keep THE Cases Quiet And Will Order
HER Connections To Not Prosecute-
4- Cardello-Smith Agrees to keep His
$150,000.00 CASH INVESTMENT in THE Hands
OF SEAN Combs For 10-20-30 YEAR Times
AND To only SEEK 49% OF SEAN COMBS
ENTIRE Capital- WORTH- Holdings-Property-
ASSETS- FINANCIAL Holdings-Cash-Liquid-
FUTURE EARNINGS iF SEAN COMB Continues,
SETtles- HAS FURTHER SEXUAL ABUSE-
SEXUAL ASSAULTS- OR BEHAVIORS BY Any
OTHER MAN - Woman -TEENAGE GIRL-
TEENAGER Boy- TEENAGE GIRL- OR ANY
STATE OR FEDERAL SETTLEMENTS-
OR VIOLENT SEXUAL BEHAVIR BY ARTIST
SEAN COMBS IN ANY STATE OF THE U.S,

2,

OR HYSTERECTOMY — LARDELLO-SMITH AGREES
To Live WITH THE EFFECTS OF it — AND NOT SEEK
ANY Actions Legally until 2023-2024-
2025-2026-2027 — All Rights To SAID Acts
Committed upon LARdello-Smith SHALL BE IN
His OWN Control — HE SHALL NOT SEEK Civil
Relief until THE EXPIRATION OF 25 YEARS AND
BEFORE 30 YEAR EXPIRES — 2027 END OF
YEAR — For Civil Action — 4 — ANY VIOLATION
OF THE Agreement BY SEAN Combs Will
Allow LARdello-Smith THE Rights To Legal
Control OF up to 49% oF All SEAN Combs
INTERESTS — Holdings — FINANCES — Royalties,
Value — Capital — Third Contracts — Properties —
Homes — Vehicles — EVERY Thing Connected
To SEAN Combs — Artist — New York & Recording
Studio se Etcetera — 49% Company (s) And
INvestments Associated To SEAN Combs —
5 — SEAN COMBS — Lardello-Smith MAKE THE
Agreement FREELY — And No HARM Shall come
To Lardello-Smith's FAMILY — 5 — Kym
Worthy Agrees To CHarge Smith WITH
FALSE RAPES And Smith Will go to
Prison in 1997-1998 — To Protect His Mom

3

Brothers, Sisters, Family, Friends, Smith
And His Murder Charge of Self Defense is
Held up "Pending Investigation" And Put
To Bed By DPD Officer PATRICK JACKMAN
Gratiot Division - To Protect Financials of
KYM Worthy And other officers that
INUEST in SEAN Combs - For THE Sole
Purpose of Keeping All Parties Interest
Whole - 6 - KYM Worthy Agrees to
HA HAll Rape Kits Stored in Warehouse
And to Not HAVE THEM TESTED BECAUSE
IT Will Require Testimony of 14 Joint
INTEREST WOMEN on PayRoll And An
Audit of DPD PayRoll Will EXPOSE other
ENTITIES AND INDIVIDUALS To FINES, Job
Loss - CRIMINAL AND Civil Litigation -
AND Agrees To Not Put Smith or Combs
on Criminal Charges For Assault - 7 -
MR REDLIN FROM ADRIAN P.D. Agrees to
"Hold off" on SEXUAL ASSAULT of
Subject Smith By Mr. Combs in Exchange
For Agreement of PayRoll From THE
Agreed Monthly TOTALS To REDLIN

4.

Lenawee Sherriff Connections- 8-
Smith Agrees To Go To Prison For
His Family Safety And His Investments
For 10-20-30 year Rights Return-
9- PATRICK JACKMAN- FURTHER
Agrees To Have His employees-File
Reports of Sexual Assaults on
128 Men - 14 Women Will Say That 128
Men Raped THEM on Different Times
And Investments From City, Smith,
Combs- Worthy-Jackman-Preston-
Redlin-Clive Davis- Robin Kramer-
Mary Travis - M.Bommarito-J Souleard
14 Women unnamed Here But on Police Report
For Sexual Assault Cash Payroll- A. Knia
-A. McNeal- W. Evans- J. Duggan WCPO-
Mr Thrasher- D. Cripps- H. Weinstien- All
While Derrick Smith is In County Any
Prison The Investment will Accrue in
Sean Sean Combs LLC- Recordings-
All Studios- Affilintes- Companies
Financial Accounts- Banking- Checking

5

SAVINGS - CASH VALUE OF SEAN COMBS ENTERPRISES-VENTURES-OTHER LLC-or INVESTMENTS OF DERRICK LEE CARDELL SMITH AKA- DERRICK LEE CARDELLO-SMITH D.O.B. 11-01-72- S.S.N-368-80-74-78-DETROIT, MICHIGAN - 9 - Smith Agrees TO NOT Prosecute SEAN COMBS FOR THE RAPE UPON HIS PERSON AT Holiday INN AT City OF Adrian - FOR 30 YEARS And agrees To County And Prison PLACEMENT To Protect His Family-in Exchange- P. JACKMAN - K. Worthy Agree To Drop THE INVESTIGATION OF Murder And SELF DEFENSE against Smith And Will Place Multiple RAPES on Smith OF Which He is Not Guilty - or His Family Will Be Removed By 2 osigners And Permanently Silenced - 10 - George Preston Will Hold CERTAIN Land For Combs And Smith With Partial Pay Going to Mortgage of Preston Farm and To THE ESTATE OF John Preston And

6

Farm and ESTATE LAND INTITIES And
DEEDS OF Future Holdings OF THE
JAMES Leslie Preston ESTATE And
John Preston ESTATE WITHIN Nueca, MD
GEORGE Preston And John Preston
And JAMES Leslie Prestons Financial
Investment To SEAN Combs Will
Accrue upon End oF 30 YEARS WITH
AN Agreement To Keep Silent about
SEXUAL ASSAULt By Combs upon the
Person oF Smith — OR iF Combs involves
Himself in Another Sexual Assault or iF
He is Arrested — GEORGE Preston WillBE
Entitled To 8% oF SEAN Combs ESTATE
Property oR Holdings — 11 — AllParties,
PERSONS Agree To HAVE Smith go
Down For Crimes RELATED TO DETROIT
Police — Kym Worthy — SEAN Combs And
RobertT FILANO — WARREN EVANS — All
Agree To REMAIN Silent on SEX CRIMES
Prostitution - Rings — Weapons Trafficking

7

- DRUGS - LAND DEALS etc - FROM SMITH

KEEP QUIET About THE SEX ASSAULT upon Him and DONE To Him. By Combs - SMITH Will BE Charged WITH MANY Rapes By Women on Kym Worthy, SEAN Combs, DPD, PATRICK Jack Man. Payroll To Continue THE FALSE Rape - EXTORTION Money Ring - And All LAND IN Michigan Shall BE Held By DERRICK SMITH AND OTHER INVESTORS OF SMITH Tied - To SMITH For 30 years or 2025 - 2027 FROM 1997 - 12 - SMITH Will Not go To Trial Because His Family Will BE EXTERMINATED - His SISTERS TINA And Jacqueline Will Be For SEX Trade WITH Combs - Worthy - JACKMAN - Dunn - iF DERRICK SMITH - DERRICK LEE Cardelle SMITH BREAKS His Word - SMITH Will BE RELEASED in 2007 For Signing OF LAND - Title - DEEDS WITH George Preston John Preston - OTHER ENTITIES And SEAN COMBS Will Not Be Charged Criminally For SEXUAL ASSAUT Because -

8 -

Smith Will Be charged for Rapes By our Women Who Get Paid to Lie and They Will not Recant As Patricia Penman At Dearborn P.D. Will charge Them Each for Solicitation of Prostitution And Perjury and True Human Smuggling Each Did - Mr. Combs Will Be Free To Continue Paying Worthy Evans - Ficano - Jackman - Duggan - L. Brooks Patterson - Dunn - Preston - Richard Tipton - Richer Bach - Tom Jenny and The 31 Detroit Police officers in 9th Precints Gang Squad - Mgraw Station - Adrian P.D. Lenawee S.D. - or Smith's Family Will Be Hurt - Especially His Mom - Smith Will Hold 49% of All And, Property in Sean Combs Name in New York - Harlem - Michigan And Los-Angeles future Holdings For All LLC - Limited organizations in The

9.

NAME OF SEAN John Combs-Sean
Combs- Music -Property or others-
Derrick Lee Cardello-Smith Will Have
Rights To 49% of every Thing to
Be Developed -Discovered-Handled
or Achieved in or By SEAN Combs For
10-20-30 years upon Any Criminal
Involvement Made Public-Smith Will
Do Time For Rapes Committed By
Sean Combs upon 14 Women in Michigan
And in Return THE Artistic Genius
OF Sean Combs Will Not Be Tainted, or
Destroyed- Smith's Family Will Live-
DPD Will Stop Harassing His Mom-
Smith Will Be given 49% oFAll
Assets To Be Held By SEAN Combs
iF Any Violations of This Agreement
iS Committed By Combs- B-Smith
Will Be Freed By DPD And issued
A Report Clearing Him in Time-
THE Persons -Witnesses All Do
Agree in This Matter As Proven
By Signatures Here at THE

10

DETROIT Police Crime LAB - AgrEES All PERSONS in DETROIT, MICHIGAN
Wayne County
June 20, 1997

Patrick Jackman D.P.D.

Dwight Lee C Smith
11/01/72 6-20-1997
D.O.B.

Sean Combs
6-20-97

George Preston

Dorothy Dunn
6-20-97

Warren Evans
6/20/97

Jerry Redd
A.P.D.
6-20-97

11 Robert Ficano
June 20, 1997

State of Michigan )
                   )ss
County of Muskegon )

## AFFIDAVIT OF DERRICK LEE CARDELLO-SMITH #267009

I hereby state that the item marked as "MULTIPLE PERSONS AGREEMENT TO SILENCE AND CONFIDENTIALITY" was signed and effected by this Plaintiff and the Signed Persons of KYM WORTHY, current Wayne County Prosecutor, Robert Ficano, Warren Evans, current Wayne County Executive, George Preston, Land Owner, Jerry Redlin, Adrian Police Officer, Dorothy Dunn, Land Owner, Patrick Jackman, Detroit Police Officer, Sean Combs, Artist, Plaintiff,the Victim of Sexual Assault by Sean Combs. This 11 Plge document was signed by Plaintiff and all named participants on June 20, 1997 and it is a true, authentic document and its contents are valid and true and real and it is detailed for the items and acts within that this Plaintiff will attest to, as that they are true and real.

### DECLARATION

I swear and declare under the penalty of perjury that the events described within are true to the best of my knowledge, information, Belief and experience and that if called to testify, I will swear to these events under the penalty of perjury as that these events happened and are real and true and occurred.

Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

B. Jones
8-21-2024

**B JONES**
Notary Public, State of Michigan
County of Muskegon
My Commission Expires 2-14-2026
Acting in the County of _____

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Faciility
2500 S. Sheridan Drive
Muskegon, MI 49444

August 26, 2024

Office of the Clerk
ROXANN HOLLOWAY
39th Circuit Court
Lenawee County
425 N. Main Street
Adrian, MI 49221

Re: Derrick Lee Cardello-Smith vs. Sean Combs.
Case No 24-7362-NO

Dear Clerk:

FILED
39TH CIRCUIT COURT

AUG 2 9 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

Enclosed for filing in the above cause, are the following documents;
   1. PLAINTIFFS SUBMISSION OF 11 PAGE 1997 AGREEMENT BETWEEN DEFENDANT SEAN
COMBS AND PLAINTIFF DERRICK LEE CARDELLO-SMITH AUTHORIZED BY KYM WORTHY,
ROBERT FICANO, WARREN EVANS, PATRICK JACKMAN, GEORGE PRESTON, JERRY REDLIN,
AND DOROTHY DUNN FOR RECORD PLACEMENT AT PRE-TRIAL

   2. PROOF OF SERVICE

If you could please place this matter on the Courts Record and Docket, it
would be greatly appreciated.

Thank you.:

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

Exhibit 13

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

DERRICK LEE CARDELLO-SMITH,#267009,
    Plaintiff,

Vs

File No 2024-7362-NO

Honorable Anna Marie Anzalone

SEAN COMBS, et al,
    Defendant,
                /

MOTION FOR DEFAULT JUDGMENT

Now comes the Plaintiff, Derrick Lee Cardello-Smith #267009, in the ablive cause and hereby moves this Court to enter an order to GRANT DEFAULT JUDGMENT in favor of the Plaintiff and against the Defendant Sean Combs based on the grounds contained within the BRIEF IN SUPPORT.

PROOF OF SERVICE

I swear and declare that on 8-6-24, I mailed one copy of this Pleading to the Defendants address of record by way of first class mail with all postage paid in full, and this being done in Muskegon, MI 49444.

Respectfully Yours,

8-26-24

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in Pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

FILED
39TH CIRCUIT COURT
AUG 3 0 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

BRIEF IN SUPPORT

Plaintiff, states to this court that the court should enter a Default Judgment in this matter based on the following factors:.

1. The Claims raised by the Plaintiff are not in dispute.
2. The defendant Sean Combs has failed to File any Lawful Answer, or take any action whatsoever in this case as required by Michigan Law.
3. The Defendant had a total of 28 days beginning on July 6, 2024 to Answer the Lawsuit. It is now a total of 51 days of the date of this motion, and the defendant still has filed no appearance, and is in stark violation of the laws of the State of Michigan and Service.
4. Plaintiff seeks justice the sexual assault of the Plaintiff at the hands of the defendant and asks this Court to Grant said Motion for Default Judgment.
5. Defendant is entitled to Judgment in his favor.

These are the grounds for the Judgment being sought and why it should be granted.

RELIEF SOUGHT

Wherefore, Plaintiff prays this Court will enter an order to Grant the Default Judgment in favor of the Plaintiff in the amount of $100,000,000,340.10 (One-Hundred Million Three Hundred Forty Dollars-Ten Cents.) and Any other relief this Court Deem necessary and appropriate.

Respectfully Yours,

8-26-24

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI 49444

2.

| STATE OF MICHIGAN 39th JUDICIAL CIRCUIT JUDICIAL DISTRICT LENAWEE COUNTY | NOTICE OF HEARING AND MOTION | 24-7362-NO Hon. Anna Marie Anzalone |
|---|---|---|

Court address  425 N. Main Street-Adrian, MI 48 49221        Court telephone no.

| Plaintiff name(s)  - Derrick Lee Cardello-Smith, #267009 | | Defendant name(s) Sean Combs, A?K?A? P. Diddy |
| Plaintiff's attorney, bar no., address, and telephone no. Derrick Lee Cardello-Smith #267009 E.C. Brooks Correctional Facility 2500 S. Sheridan Drive Muskegon, MI 49444 Self-Represented-In Pro Se-In Pro Per | v | Defendant's attorney, bar no., address, and telephone no. 200 S.Mapleton Drive Holmby Hills, Los Angeles, California 90077 No Attorney of Rek Record |

## NOTICE OF HEARING

1. Motion title:  MOTION FOR DEFAULT JUDGMENT

2. Moving party:  PLAINTIFF

3. This matter has been placed on the motion calendar for:  9-9-24 Or When the Court Wants it heard

| Judge  Hon. Anna Marie Anzalone | Bar no. | Date 9-9-24 | Time 10:00am |
|---|---|---|---|
| Hearing location ☒ Court address above     ☐ | | | |

4. If you require special accommodations to use the court because of disabilities, please contact the court immediately to make arrangements.

MOTION

FILED 39TH CIRCUIT COURT

AUG 30 2024

LENAWEE COUNTY CLERK ADRIAN, MICHIGAN

GUILLERMO A. SANTIAGO-DAVIS NOTARY PUBLIC, STATE OF MI COUNTY OF EATON MY COMMISSION EXPIRES Feb 27, 2028 ACTING IN COUNTY OF

8-26-24
Date

Signature

## CERTIFICATE OF MAILING

I certify that on this date I served a copy of this notice of hearing and motion on the parties or their attorneys by first-class mail addressed to their last-known addresses as defined by MCR 2.107(C)(3).

8-26-24
Date

Signature

MC 326   (3/10)   NOTICE OF HEARING AND MOTION

State of Michigan)
             )ss
County of Muskegon)

## AFFIDAVIT OF DERRICK LEE CARDELLO-SMITH

    I Derrick Lee Cardello-Smith, #267009 hereby declare that the amount of damages I am asking for are the Sum-Certain for the Original complaint in the amount of One Hundred Million Dollars and that the balance of $340.10 is for other costs and that this is the Sum Certain amount for the original complaint and is outside of the remaining amount of the increased damages. I am seeking that I have sought and noticed for in the denials of Mr. Combs and his violations of the Agreement of Silence and Confidentiality signed in 1997 and expiring after 30 years.

The amount of One Hundred Million Dollars is the Sum Certain I am seeking in this matter for the Sexual Assault by this Defendant Upon me, the Plaintiff..

## DECLARATION

    I swear and declare that this amount sought is the amount of damages and made known by this Plaintiff to the court and I will swear under the penalty of perjury to this amount sought in court truthfully.

August 8, 2024

Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

Notary Public

Subscribed and sworn to before in   Muskegon   County,
My commission expires on   2-14-2026  .

AUGUST 8, 2024

B JONES
Notary Public, State of Michigan
County of Muskegon
My Commission Expires 2-14-2026
Acting in the County of Muskegon

Approved, SCAO

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>39TH   JUDICIAL CIRCUIT | JUDGMENT<br>Civil | CASE NO.<br>Case No 24-7362-NO<br>Hon. Anna Marie Anzalone |
|---|---|---|

Court address 425 N. Main Street-Adrian, MI 49221                      Court telephone no.

| Plaintiff(s)<br>Derrick Lee Cardello-Smith #267009 | v | Defendant(s)<br>Sean John Combs, A/K/A/ P. Diddy |
|---|---|---|

Plaintiff's/Plaintiff's attorney name, address, and telephone no.
Derrick Lee Cardello-Smith #267009
Self-Represented Litigant-In Pro Se-Pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

Defendant's/Defendant's attorney name, address, and telephone no.
Sean Combs-No Appearance Filed
No Attorney of record filed
No Answer or defense filed

**XX JUDGMENT**

For: **Plaintiff**
Defendant
Against: **Defendant**

☐ Trial                   ☐ Consent
☐ Summary Disposition   ☒ Default*

☐ **DISMISSAL**
☐ Without prejudice      ☒ With prejudice
☐ No cause of action

*For a defendant on active military duty, default
judgment shall not be entered except as provided by
the Servicemembers Civil Relief Act.

**ORDER OF JUDGMENT NOT INCLUDING STATUTORY INTEREST**

Damages:                                                                          $ 340.10
Costs (fees): filing $ 175.00   jury $ 85.00   motion $ 40.00   service $10.40
statutory $ _____ (MCL 600.2441)                                             $ 100,000,000.00
Attorney fee: ☐ statutory  ☐ other (specify) _____                           $ _____
Total judgment amount (This judgment will earn interest at statutory rates, computed from the filing date of the complaint.): $ 100,000,000,340.10

☐ The defendant shall pay the judgment in installment payments of $ _____ each _____ starting
_____ until the judgment is paid in full. The plaintiff shall not issue a periodic garnishment as
long as payment is made.
Other conditions, if any:

☐ Approved as to form, notice of entry waived.
**IT IS ORDERED** that this judgment is granted.
This judgment resolves the last pending claim and closes the case unless checked here.☐

Judgment date _Derrick Lee Cardello-Smith_          Judge/Court clerk                          Bar no.
Plaintiff/Attorney                                  Defendant/Attorney
Judgment has been entered and will be final unless a motion for new trial or an appeal is filed within 21 days after the judgment date.

**STATUTORY INTEREST**

The judgment interest accrued from the filing of the complaint to judgment is $ _____ and is based on:
(If additional rates apply, attach a separate sheet.)
☐ the statutory rate of _____% from _____ to _____ .
☐ the statutory 6-month rate(s) of _____% from _____ to _____ and
_____% from _____ to _____ .

**CERTIFICATE OF MAILING**   I certify that on this date I served a copy of this judgment on the parties or their attorneys by
first-class mail addressed to their last-known addresses as defined by MCR 2.107(C)(3).

Date _____                          Signature _____

MC 10   (3/16)  JUDGMENT, CIVIL              MCL 600.2441, MCL 600.5759, MCL 600.6013, MCL 600.8375, MCR 2.601,
                                            MCR 2.602, MCR 2.603, 50 USC App 521

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Faciility
2500 S. Sheridan Drive
Muskegon, MI 49444

August 26, 2024

Office of the Clerk
39th Circuit Court
Lenawee County
425 N. Main Street
Adrian, MI 49221

   Re: Derrick Lee Cardello-Smith vs. Sean Combs.
   Case No 24-7362-NO

Dear Clerk:

Enclosed for filing in the above cause,  the following documents:
1. MOTION FOR DEFAULT JUDGMENT
2. $20.00 Motion Fee
3. Notice of Hearing and Motion
3. PROPOSED ORDER FOR JUDGMENT-CIVIL
4. AFFIDAVIT OF DERRICK LEE CARDELLO-SMITH
5. Proof of Service

Please place this matter for hearing on the Courts docket for 9-9-24.

Thank you very much.

Derrick Lee Cardello-Smith

FILED
39TH CIRCUIT COURT

AUG 30 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

Exhibit 14

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

9-2-24

Office of the Clerk
39th Circuit Court
Lenawee County
425 N. Main Street
Adrian, MI 49221

```
FILED
39TH CIRCUIT COURT

SEP - 5 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN
```

Re: Derrick Lee Cardello-Smith vs Sean Combs,
Case No. 24-7362-NO

Dear Clerk:

Enclosed are documents I am asking are placed on the Court Record pertaining to this case at bar.

1. AGREEMENT OF KYM WORTHY AND DERRICK LEE CARDELLO-SMITH FROM 1997 AS TO SEAN COMBS
2. AFFIDAVIT OF DERRICK LEE CARDELLO-SMITH
If you could place (these) documents on the Court record, it would be greatly appreciated.

Derrick Lee Cardello-Smith

Agreement of 2 Persons
To Confidentiality And
Silence To Not Prosecute
Sean Lombs For Rape
And agreement To all Claims
Being Temporarily Halted 06/17/97

THE PERSONS OF Kym Worthy and
Derrick Smith HERE and say That We
Will Not PROCEED WITH THE CRIMINAL
REPORT OF DENRICK Smith Being THE
Victim of SEXUAL ASSAULT and Drugging
By SEAN Lombs (NEW York ARTIST)
Stemming From THE Holiday Inn Rape and
Drugging of Smith — Smith Agrees to
Not Prosecute and HE WILL RECEIVE Money
From Lombs or 49% of Future Earnings—
I Kym Worthy Agree To use My People
At THE Prosecutor's office and my Position
As Recorders Judge To Put SmithA Away
For Multiple Rapes WITH Harvey Tennen
As Judge For Sentence in 1997 or 1998

And Smith agrees to Do Time and as He
is Locked Away His $150,000.00 's
Given to Sean Combs Will in Fact Remain
in Sean Combs company name, Likeness or
Any Ventures From 1997-2027, I agree to
Keep Smiths Money and Rape Kit Secured.
As Sean Combs Blood and Semen is in
The Rape Kit — My Cash Investments will
grow For Years and We Will Collect Later
Smith Will Be Prosecuted by My and Combs
Stable of Women For Rapes — I agree To Keep
Kits At Warehouse — smith will get Money
upon End of 30 years — Combs Stays Clean of
Federal or State Charges — Investigation. My
14 women Will Say Smith and other Men
Raped them, We all Make Money and collect
Later — Smiths Family Stays safe Per
Sean Combs orders — we all Sign on 06/17/97

Derrick Lee Cardello Smith
19246 Hoyt
Detroit, MI 48205
D.O.B 11-1-72

Kim Worthy
1441 St. Antoine
Detroit, MI 48226
D.O.B Dec. 5, 1967

Z

State of Michigan)
                 )ss
County of Muskegon )

### AFFIDAVIT OF DERRICK LEE CARDELLO-SMITH #267009

I swear and declare that in 1997, I entered into an agreement of silence, confidentiality, investment and other measures with the named people of KYM LOREN WORTHY, SEAN COMBS, PATRICK JACKMAN, DOROTHY DUNN, JERRY REDLIN, ROBERT FICANO, WARREN EVANS where Kym Loren Worthy would Keep the Rape Kit Evidence containing Semen and Pubic Hairs from Sean combs taken out of my Anal Cavity, Mouth and Body, and The details in the agreement show that Kym Loren Worthy will keep it in here possession and I state that the agreement was that I would be given 49% of all investments in the future from Sean Combs holdings and company the recording artist, and man who raped me. I went to prison to stop my family from being killed by Combs, & Detroit Police. I state that this information is true to my knowledge, information and belief and I state the agreements are true and real and it happened. My families life was threatened and If I did not go to prison for Rape, then they would be killed and I would be given life for the Self-Defense Case. KYM WORTHY IS THE CURRENT WAYNE COUNTY PROSECUTOR and She operates a criminal enterprise that is built upon False Rapes against this Plaintiff and 128 other men where she has used the same 14 different women to lie and say that Men raped them when in fact, they are victims of Sean Combs Sex Slavery Stable with ties and reach from Florida, to New York, to California, to Washington State to Alaska, to Michigan, and Kym Worthy is the commander and Michigan connector of these Crimes and Fraud and Money Laundering and other activities designed to make money and keep innocent men locked up and hide the crimes committed upon then by the Men and Woman who make profits from the crimes committed upon this plaintiff and other people to this date.

### DECLARATION

I swear and declare under the Penalty of Perjury that these statements are true and accurate and real and happened based on my own knowledge, information and belief and if called to testify, I will attest to them in a Court of Law because it is based on real events that happened and are true.

I have been framed for Rape Cases and it was to protect their Financial Interest and ensure my family was safe and I came to prison for crimes I did not do or commit and the woman who put me here, has even tried to get me out this year, See CARLI CARPENTER V. CHRIS KING, KIM WORTHY, Case 2:24-11176 Eastern District of Michigan and Same Names, 1:24-00465 WESTERN DISTRICT OF MICHIGAN, THIS IS THE PERSON FROM THE 2019-000756-01-FC CRIMINAL CASE IN PEOPLE OF THE STATE OF MICHIGAN V. DERRICK LEE CARDELLO-SMITH Done upon me by Kym worthy herself. She admits to being paid by Kym Worthy's Office.

Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

B. Jones
8-21-2024

B JONES
Notary Public, State of Michigan
County of Muskegon
My Commission Expires 2-14-206
Acting in the County of _____

Exhibit 15

Approved, SCAO

Original - Court
1st copy - Plaintiff
2nd copy - Defendant

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>39th JUDICIAL CIRCUIT | JUDGMENT<br>Civil | CASE NO.<br>2024-7362-NO<br>HON: ANNA M. ANZALONE |
|---|---|---|

Court address  425 N. Main Street-Adrian, MI 49221                     Court telephone no.

Plaintiff(s)  DERRICK LEE CARDELLO-SMITH, 267009

v

Defendant(s)  SEAN COMBS, a/k/a/ P.DIDDY

Plaintiff's/Plaintiff's attorney name, address, and telephone no.
Plaintiff in Pro Se-Self-Represented
#267009 -E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

☒ JUDGMENT

For: PLAINTIFF

Against: DEFENDANT

☐ Trial          ☐ Consent
☐ Summary Disposition   ☒ Default*

Defendant's/Defendant's attorney name, address, and telephone no.

*No Appearance Filed*
*No Answer Filed*

FILED
39TH CIRCUIT COURT
SEP - 9 2024
LENAWEE COUNTY CLERK
ADRIAN, MICH.

☐ DISMISSAL
☐ Without prejudice    ☐ With prejudice
☐ No cause of action

*For a defendant on active military duty, default judgment shall not be entered except as provided by the Servicemembers Civil Relief Act.

**ORDER OF JUDGMENT NOT INCLUDING STATUTORY INTEREST**

Damages:                                                                          $100,000,000.00
Costs (fees): filing $ 175.00  jury $ 85.00  motion $ 40.00  service $ 10.40
statutory $ _____ (MCL 600.2441)                                              $ 310.40
Attorney fee: ☐ statutory  ☒ other (specify) Pro Per                              $ _____
Total judgment amount (This judgment will earn interest at statutory rates, computed from the filing date of the complaint.):  $ 100,000,000,310.40

☒ The defendant shall pay the judgment in installment payments of $ 10,000,000.00  each  Month  starting
October 1, 2024  until the judgment is paid in full.  The plaintiff shall not issue a periodic garnishment as
long as payment is made. Cash Transactions from Defendant or someone on defendants behalf to pay the Plaintiff Cash,
Other conditions, if any:  Through the Sale of Property, agents, Directly to the Plaintiff or an Agent(s), Accounting
Firm, Person or Persons named By the Plaintiff or Cash Total done to a Financial Institution, or Plaintiffs Agent
☐ Approved as to form, notice of entry waived.
IT IS ORDERED that this judgment is granted.
This judgment resolves the last pending claim and closes the case unless checked here. ☐

9/9/24
Judgment date

Derrick Lee Cardello-Smith  8-27-24
Plaintiff/Attorney

Anna Marie Anzalone
Judge/Court clerk                                         Bar no.

Defendant/Attorney

Judgment has been entered and will be final unless a motion for new trial or an appeal is filed within 21 days after the judgment date.

**STATUTORY INTEREST**
The judgment interest accrued from the filing of the complaint to judgment is $ _____ and is based on:
(If additional rates apply, attach a separate sheet.)
☐ the statutory rate of _____% from _____ to _____ .
☐ the statutory 6-month rate(s) of _____% from _____ to _____ and
_____% from _____ to _____ .

**CERTIFICATE OF MAILING**    I certify that on this date I served a copy of this judgment on the parties or their attorneys by
first-class mail addressed to their last-known addresses as defined by MCR 2.107(C)(3).

Date

Signature

MC 10  (3/16)  JUDGMENT, CIVIL
MCL 600.2441, MCL 600.5759, MCL 600.6013, MCL 600.8375, MCR 2.601,
MCR 2.602, MCR 2.603, 50 USC App 521

Exhibit 16

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE**

DERRICK LEE CARDELLO-SMITH,

        Plaintiff,

v.

SEAN COMBS,

        Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone



SEP . 2 2024

                      /

Derrick Lee Cardello-Smith
MDOC # 267009
*Plaintiff, In Pro Per*
Earnest C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
FINK BRESSACK
*Counsel for Defendant*
38500 Woodward Ave.; Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com

                      /

## DEFENDANT SEAN COMBS' EMERGENCY MOTION TO SET ASIDE DEFAULT AND DEFAULT JUDGMENT [1]

NOW COMES Defendant Sean Combs, by and through his attorneys, and for his

Emergency Motion, pursuant to MCR 2.603, to Set Aside Default and Default Judgment, relies

upon Sean Combs' Affidavit of Meritorious Defense, the Brief in Support of this Motion and the

authorities cited therein. [2]

---

[1] Mr. Combs seeks an expedited hearing on this emergency motion due to the potentially-serious impact of the improperly-entered $100 million Default Judgment. That Default Judgment has been the subject of international media attention, and, if it is not promptly set aside, it could have adverse financial implications for Mr. Combs.

[2] This Court lacks personal jurisdiction over Mr. Combs. In filing this Motion and the

1

WHEREFORE, Mr. Combs asks this Court to set aside the Default and Default Judgment entered against him on September 9, 2024, for failure to effect service. Because Mr. Combs was not served with the Summons and Complaint in this action, he has no (and never has had any) obligation to respond to the Complaint. Should the Court find any such obligation, then for the reasons set forth herein, Mr. Combs further asks this Court to grant Mr. Combs twenty-one (21) days from the date of any such finding to file a response to the Complaint.

Dated: September 12, 2024          Respectfully submitted,

                                  FINK BRESSACK

                                  By: _____
                                  David H. Fink (P28235)
                                  Nathan J. Fink (P75185)
                                  David A. Bergh (P83696)
                                  Calder A.L. Burgam (P87203)
                                  38500 Woodward Avenue, Suite 350
                                  Bloomfield Hills, Michigan 48304
                                  (248) 971-2500
                                  dfink@finkbressack.com
                                  nfink@finkbressack.com
                                  dbergh@finkbressack.com
                                  cburgam@finkbressack.com
                                  *Counsel for Defendant*

---

accompanying Motion to Dissolve the Temporary Restraining Order, Mr. Combs does not waive, and to the contrary expressly preserve all defenses, including the defense of insufficient service of process, insufficient process, and lack of personal jurisdiction which defense shall be raised at the appropriate time pursuant to MCR 2.116(C)(1)-(3); *See* MCR 2.116(D)(1) (the time for raising a (C)(1) / (C)(3) defense is in a party's first dispositive motion filed in lieu of an answer or in the party's responsive pleading, whichever is filed first).

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE**

DERRICK LEE CARDELLO-SMITH,

          Plaintiff,

v.

SEAN COMBS,

          Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

_____/

| | |
|---|---|
| Derrick Lee Cardello-Smith<br>MDOC # 267009<br>*Plaintiff, In Pro Per*<br>Earnest C. Brooks Correctional Facility<br>2500 S. Sheridan Drive<br>Muskegon, MI 49444 | David H. Fink (P28235)<br>Nathan J. Fink (P75185)<br>David A. Bergh (P83696)<br>Calder A.L. Burgam (P87203)<br>FINK BRESSACK<br>*Counsel for Defendant*<br>38500 Woodward Ave.; Ste. 350<br>Bloomfield Hills, MI 48304<br>Tel.: (248) 971-2500<br>dfink@finkbressack.com<br>nfink@finkbressack.com<br>dbergh@finkbressack.com<br>cburgam@finkbressack.com |

_____/

**DEFENDANT SEAN COMBS' BRIEF IN SUPPORT OF EMERGENCY MOTION TO**
**SET ASIDE DEFAULT AND DEFAULT JUDGMENT**

**INTRODUCTION**

Defendant Sean Combs, who was never served with this lawsuit, learned about this action

for the first time three days ago, when media outlets reported that this Court had entered a $100

million Default Judgment against the prominent entertainer and businessman.

Plaintiff, a convicted felon who is currently serving time in prison for kidnapping and

sexual assault, commenced this litigation on June 10, 2024. Exhibit 1 – Complaint. Plaintiff has a

long history of filing frivolous *pro se* lawsuits. See *Cardello-Smith v Google LLC*, 2021 WL

3

4894700 at *2 (ED Mich, 2022) (dismissing complaint and noting that "plaintiff has at least four prior civil rights complaints that were dismissed by federal courts for being frivolous, malicious, or for failing to state a claim on which relief could be granted.") But no lawsuit could be more frivolous than this one.

Plaintiff's allegations are objectively unbelievable. Plaintiff alleges that he was sexually assaulted in 1997, but he cannot keep his story straight as to where this supposedly occurred. In his Complaint, Plaintiff alleges that the assault occurred after he met Mr. Combs at a restaurant in Detroit. Exhibit 1 – Complaint ¶ 1. In his Pretrial Statement, however, Plaintiff alleges that the assault occurred in Adrian, Michigan. Exhibit 2 – Pretrial Statement ¶ 1. Aside from the purported assault, Plaintiff alleges a fantastical conspiracy between Mr. Combs, a prominent music artist and executive, and numerous high-ranking Wayne County judicial and law enforcement officials to force Plaintiff to sign an "agreement" to keep him from reporting the supposed assault. *Id.* In a narrative that is impossible to follow, Plaintiff claims that, in exchange for signing this "agreement," "the Defendant would keep the Plaintiffs Financial Investment of $150,000.00 back in 1997 for a total of 49% of the Value of all Holdings, Property, Merchandise, Assets, finances, investments, investment returns, all recordings, titles, deeds, anything in checking accounts, savings accounts and other areas with the money given to Defendant by Plaintiff in 1997 to not be collected until the 30 year end[.]" *Id.*

Plaintiff does not (and cannot) explain why he would "give" Mr. Combs $150,000.00. Nor does Plaintiff explain why Mr. Combs, who had risen to international fame by 1997, would trade 49% of his net worth for an "investment" of $150,000.00. Plaintiff likewise offers no explanation as to where he obtained the $150,000.00 he supposedly "invested" with Mr. Combs in 1997, at which time Plaintiff was employed as a bartender. Exhibit 1 – Complaint ¶ 1. Plaintiff also

contends that then-Recorders Court Judge and now Wayne County Prosecutor Kym Worthy threatened that if Plaintiff reported the purported assault, then she would "put multiple rapes on [Plaintiff] like [she] did other men[.]" Exhibit 8 – "Police Report."

As ridiculous as these allegations are, if every word in the Complaint were true, the action would *still* be completely nonviable because the statute of limitations on the claims asserted expired almost 17 years before the case was filed.

Had Mr. Combs been notified in a timely manner of these outrageous claims, he would have defended himself, as he is prepared to do now.  But he did not have that opportunity, because Plaintiff failed to serve Mr. Combs. For service made through certified mail to be proper, the defendant himself must acknowledge receipt of the mail and a copy of the return receipt must be signed *by the defendant*. MCR 2.105(A)(2). Neither requirement was satisfied here. While Plaintiff filed a purported "verification of certified-restricted-delivery as addressed mail," the listed address was not Mr. Combs' primary residence, and *on its face, it is clear that the return receipt was not signed by Mr. Combs*. Exhibit 7 – Combs Aff. ¶¶ 3-16; Exhibit 4 – Return of Service.[3] Because of Plaintiff's failure to adequately complete service of process, Mr. Combs did not receive notice of this lawsuit until September 9, 2024 when this Court's order of Default Judgment for $100,000,310.40—premised on Plaintiff's misrepresentations regarding service—made national news. Exhibit 7 – Combs Aff. ¶ 4 Because Plaintiff never perfected service on Mr. Combs, the Default and Default Judgment must be set aside.

*Even if* Mr. Combs had been served (which he was not), the Default should be set aside pursuant to MCR 2.603(D) because Mr. Combs can show good cause for any perceived delay in

---

[3] Further undermining the sufficiency of service, Plaintiff's filing confusingly references two different dates, three years apart—July 6, 2021 (years before the Complaint was filed) and July 6, 2024—on which the Summons and Complaint were allegedly received by someone at 200 S. Mapleton Drive, Los Angeles, California.

answering and because he has meritorious defenses. Mr. Combs learned about this case only after the media reported the astronomically high Default Judgment on September 9, 2024. He promptly engaged counsel in Michigan and diligently moved to set aside the Default and Default Judgment in this action just three days later. And he has multiple dispositive defenses, including that Plaintiff's facially implausible and incoherent allegations are totally made up, and that the decades-old claims are absolutely barred by the statute of limitation. The Default and Default Judgment must be set aside.

## STATEMENT OF FACTS

On or around June 10, 2024, Plaintiff filed his Complaint alleging that Mr. Combs assaulted him *twenty-seven* years ago (in 1997). Exhibit 1 – Complaint. Plaintiff filed his Complaint from the Earnest C. Brooks Correctional Facility in Muskegon, MI where he is currently incarcerated for kidnapping and criminal sexual conduct offenses. Plaintiff appears to have attempted—and failed—to serve Mr. Combs by registered certified mail, pursuant to MCR 2.105(A)(2). Using certified mail, Plaintiff apparently sent a copy of the Summons and Complaint to 200 S. Mapleton Drive, Los Angeles, California. On August 1, 2024, Plaintiff filed on the docket a copy of the proof of receipt of the mailing (the "Green Card"). Not only was the Green Card *not* signed by Mr. Combs, it also appears to show that the Summons and Complaint were sent on July 6, 2021, three years before Plaintiff filed the Complaint. Exhibit 4 – Return of Service. In any event, Mr. Combs was not made aware of the Summons and Complaint at that time, or any other time prior to the September 9, 2024 media coverage reporting the Default Judgment on that date.

On or about August 2, 2024, Plaintiff filed a motion seeking a temporary restraining order or preliminary injunction, restraining Mr. Combs from selling certain property in California. The Court granted this motion on August 7, 2024, without discussing whether the requirements for

injunctive relief had been met and adopting Plaintiff's ambiguously-worded proposed order without modification.[4] Mr. Combs was not aware of the motion or the Court's order granting that motion until earlier this week.

Then, on August 23, 2024, Plaintiff requested that Default be entered against Mr. Combs. The Court entered its Default that same day. On September 9, 2024, the Court entered Default Judgment against Mr. Combs. The news media picked up the Court's ruling and reported that a $100,000,000 Default Judgment had been entered against Mr. Combs, an internationally-known recording artist and businessman. Exhibit 7 – Combs Aff. at ¶ 13. Prior to the news coverage, Mr. Combs was entirely unaware of Plaintiff's lawsuit. Indeed he had never even heard of the Plaintiff. *Id.* at ¶¶ 3-19. Upon learning about the lawsuit, Mr. Combs immediately retained counsel in Michigan to request that the Court set aside the entry of Default and the Default Judgment.

In addition to Plaintiff's procedural errors, the incoherent allegations in Plaintiff's Complaint are facially unbelievable. The Complaint alleges that Mr. Combs sexually assaulted Plaintiff on June 14, 1997, and then bribed officers from the Detroit Police Department and Monroe Police Department to cover up the alleged crime. Exhibit 1 – Compl. ¶ 14. In support of his claim, Plaintiff included what purports to be an affidavit and two sloppily hand-written agreements that Plaintiff claimed were signed by Wayne County public officials Kym Worthy, Warren Evans, and Robert Ficano, among others. The purported agreements are nonsensical. Exhibit 5 – Affidavit and Agreement; Exhibit 6 – Multiple Persons Agreement to Silence and Confidentiality. They outline a wholly implausible conspiracy among a sitting Recorders Court Judge, high-ranking officials from the Wayne County Sheriff's Office, the Detroit Police Department, and a prominent music executive (Mr. Combs) to commit countless felonies. *Id.* As

---

[4] The Injunction Order is the subject of a separate Motion to Dissolve the Temporary Restraining Order and/or Preliminary Injunction that is being filed concurrently with this Motion.

part of this elaborate scheme, Plaintiff claims he would be given "49% of all investments in the future from Sean Combs holdings and company" and he would agree to go to prison to "stop my family from being killed by Combs, & Detroit Police." Exhibit 5 – Affidavit and Agreement. Nothing about this alleged cover-up makes any sense. The Plaintiff even wants this Court to believe that in 1997 then-Judge Kym Worthy, then-Wayne County Sheriff Robert Ficano, then-Director of the Wayne County Department of Community Justice Warren Evans and Patrick Jackman, a City of Detroit Police Officer, each signed handwritten documents confessing to the commission of multiple felonies. If the allegations were not absurd enough, Plaintiff also claims that several weeks ago Mr. Combs personally visited Plaintiff in prison and offered him $2.3 million dollars, which Plaintiff purportedly declined. *See* Hearing Regarding Plaintiff's Motion for TRO <https://www.youtube.com/watch?v=_rsV-w6_bKE> (accessed September 12, 2024).

## **ARGUMENT**

A default or default judgment should be set aside under MCR 2.603(D) if the court lacks jurisdiction or on a showing of "good cause" and after the filing of a statement of facts showing a meritorious defense. Mr. Combs meets both standards

### A. **The Default Should be Set Aside Because Plaintiff Failed to Properly Serve Process and Therefore the Court Lacks Personal Jurisdiction.**

Without proper service, the court lacks personal jurisdiction over a defendant.  A court "cannot adjudicate [an *in personam*] controversy without first having obtained jurisdiction [over the] defendant by service of process . . . ." *Eisner v Williams*, 298 Mich 215, 220, 298 NW 507 (1941). Personal jurisdiction over a defendant is necessary to "satisfy the due process requirement that a defendant be informed of an action by the best means available under the circumstances." MCR 2.105(J)(1). "The fundamental requisite of due process of law is the opportunity to be heard," yet, "[t]his right to be heard has little reality or worth unless one is informed that the matter is

8

pending . . . ." *Mullane v Cent Hanover Bank & Trust Co.*, 339 US 306, 314 (1950) (citation and internal quotation marks omitted).

MCR 2.105(A) describes the requirements to perfect service on a nonresident individual:

> Individuals. Process may be served on a resident or nonresident by (1) delivering a summons and a copy of the complaint to the defendant personally; or (2) sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the *defendant acknowledges receipt* of the mail. A copy of the return receipt *signed by the defendant* must be attached to proof showing service under subrule (A)(2).

MCR 2.105(A) (emphasis added). Plaintiff did not serve Mr. Combs in compliance with MCR 2.105(A).

On the face of the return receipt Plaintiff filed with the Court, it is clear that the document was not signed by Mr. Combs as required by 2.105(A)(2). *See* Ex. 4 – Return of Service. Nor did Mr. Combs authorize anyone to sign a document acknowledging receipt on his behalf. Exhibit 4 – Return of Service; Exhibit 7 – Combs Aff. ¶¶ 8-9. In fact, Mr. Combs did not learn of Plaintiff's lawsuit until the media reported this Court's Default Judgment order on September 9, 2024. Exhibit 7 – Combs Aff. ¶ 13. As explained in the Affidavit of Mr. Combs, appended hereto as Exhibit 7, the address identified on the Proof of Service is not Mr. Combs' current primary address; Mr. Combs did not receive the Summons and Complaint; and the signature on the return receipt is not his signature. Exhibit 7 – Combs Aff. Accordingly, the default judgment must be set aside. *See Jacobs v George*, unpublished per curiam opinion of the Court of Appeals, issued Oct. 9, 2008 (Docket No. 276256), 2008 WL 4605915 ("Because defendant did not acknowledge receipt of the registered mail containing the summons and complaint" and "[t]he registered mail receipt filed with the circuit court reflected the signature of someone other than the defendant," "he was not properly served" and the court "abused its discretion by denying defendant's motion for relief" from default judgment). *See also White v Allstate Ins. Co*, unpublished per curiam opinion of the

Court of Appeals, issued Oct. 4, 1996, Docket No. 185862, at *1 (service pursuant to MCR 2.105(A)(2) was deficient where signed return receipt was signed by a person other than the defendant). *Richard v Bouchard,* No. 12-12516, 2013 WL 4417440, at *2 (ED Mich, Aug. 15, 2013) (same).

The fact that Plaintiff never completed service of process is further supported by inconsistent dates on which Plaintiff reported serving Mr. Combs. A signed "Proof of Service" filed by Plaintiff and appended to his Complaint states that Plaintiff "mailed one copy of this pleading" on May 31, 2024—ten days before Plaintiff filed his Complaint and was issued a Summons by this Court. Exhibit 1 – Complaint. By itself, this fact proves that Plaintiff did not perfect service of process, since process requires that Plaintiff serve both a court-issued summons and a copy of the complaint. MCR 2.105(A). Both of which would have been impossible to obtain prior to filing the Complaint.

While Plaintiff stated in his Proof of Service that he mailed the Summons and Complaint on May 31, 2024, in a separate "Return of Service" filing made by Plaintiff on August 1, 2024, he claimed that service was completed on July 6, 2021. Exhibit 4 – Return of Service. Plaintiff does not explain how or why he allegedly attempted to serve Mr. Combs with process three years before filing his Complaint with the Court. Elsewhere he represents that service was made on July 6, 2024. In any event, whether Plaintiff allegedly mailed papers in July 2021, May 2024, or July 2024 is irrelevant because it is abundantly clear that Mr. Combs never received them. In light of Plaintiff's failure to perfect service, this Court does not have jurisdiction over Mr. Combs and the Default entry and the Default Judgment must be set aside. *See Bullington v Corbell*, 293 Mich App 549; 809 NW2d 657 (2011) (vacating default judgment where service of summons and complaint was not perfected and defendants demonstrated meritorious defenses).

**B. Even if Plaintiff Could Establish Proper Service, the Totality of the Circumstances, including Mr. Combs' "Good Cause" and "Meritorious Defense" Require that Default Be Set Aside**

Michigan state "policy . . . generally favors the meritorious determination of issues and, therefore, encourages the setting aside of defaults." *Huggins v Bohman*, 228 Mich App 84, 86, 578 NW2d 326 (1998). Accordingly, Michigan law requires that if a defendant can demonstrate good cause for setting aside a default and a meritorious defense to the claims asserted against him, default must be set aside. MCR 2.603(D)(1) sets forth the conditions for granting a motion to set aside a default or default judgment: "except when grounded on lack of jurisdiction over the defendant," a default and/or default judgment shall be set aside "if good cause is shown" and defendant submits "a statement of facts showing a meritorious defense." MCR 2.603(D)(1).[5] The moving party must show both "good cause" and a "meritorious defense." MCR 2.603(D)(1); *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227, 600 NW2d 638 (1999). Mr. Combs satisfies both requirements.

**1. The Default Should be Set Aside Because Mr. Combs Has Demonstrated Good Cause.**

The good cause requirement of MCR 2.603(D)(1) may be satisfied by demonstrating "a . . . reasonable excuse for failure to comply with the requirements that created the default, or some other reason why a manifest injustice would result if the default were not set aside." *Alken-Ziegler*,

---

[5] A court may also set aside a default and a default judgment under the following circumstances: "A defendant over whom personal jurisdiction was necessary and acquired, but who did not in fact have knowledge of the pendency of the action, may enter an appearance within 1 year after final judgment, and if the defendant shows reason justifying relief from the judgment innocent third persons will not be prejudiced . . . ." MCR 2.612; *see also* MCR 2.603(D)(3). Because Mr. Combs was not served, this rule does not apply. Even if the Court could find that Mr. Combs was properly served (which he was not), the requirements of MCR 2.612 would be satisfied. As explained *infra*, Mr. Combs had no actual knowledge of this lawsuit until after the entry of judgment, counsel has appeared within days of the entry of judgment, and no "innocent third parties" will be prejudiced by setting aside default. Exhibit 7 – Combs Aff. ¶ 3.

461 Mich at 230 (emphasis added). Here, Mr. Combs has both a reasonable excuse and can demonstrate that manifest injustice would result if the Default stands.

First, Mr. Combs has a reasonable excuse for his failure to respond to the Complaint—Plaintiff failed to serve him with the Summons and Complaint and Mr. Combs did not learn about this lawsuit until September 9, 2024 when media outlets began reporting that this Court had entered a $100 million Default Judgment against him. "Provisions for service of process . . . are intended to satisfy the due process requirement that a defendant be informed of an action by the best means available under the circumstances." MCR 2.105(K)(1). Because Plaintiff failed to comply with those mandatory provisions, Mr. Combs has unequivocally satisfied the "reasonable excuse" requirement of MCR 2.603(D)(1). *See Tindle v Legend Health, PLLC*, -- Mich App --; -- NW3d – (2023), 2023 WL 3027645, at *4-5 (MCR 2.603(D)(1) "good cause" requirement satisfied where service of summons and complaint was improper).

Second, manifest injustice would result if the Default Judgment is not set aside. When considering whether manifest injustice would result from entry of default, the Court must consider the requirements of both "good cause" and a "meritorious defense." *Alken-Ziegler*, 461 Mich at 233 ("Manifest injustice is the result that would occur if a default were to be allowed to stand where a party has satisfied the 'meritorious defense' and 'good cause' requirements of the court rule."). Here, Mr. Combs has both good cause and, as explained *infra*, iron-clad meritorious defenses. Accordingly, manifest injustice will result if the Default is not set aside.

Mr. Combs satisfies both elements of the "good cause" prong—reasonable excuse and manifest injustice. The Court should set aside the Default.

12

## 2. Mr. Combs Has Meritorious Defenses.

Mr. Combs has indisputable meritorious defenses, which he has verified through an affidavit as required by MCR 2.603(D)(1) and MCR 1.109(D)(3). *See* Exhibit 7 –Combs Aff. To determine whether a defendant has a meritorious defense, the court should consider whether the affidavit contains evidence that:

(1) the plaintiff cannot prove or defendant can disprove an element of the claim or a statutory requirement;

(2) a ground for summary disposition exists under MCR 2.116(C)(2), (3), (5), (6), (7) or (8); or

(3) the plaintiff's claim rests on evidence that is inadmissible.

*Shawl v Spence Bros., Inc.*, 280 Mich App 213, 238; 760 NW2d 674 (2008). If it were not clear enough from the face of the incoherent pleadings, Mr. Combs' Affidavit confirms that the allegations in the Complaint are entirely fabricated; thus, Plaintiff cannot prove the elements of his claim. But even accepting the incredible allegations of the Complaint as true, factors one and two are still satisfied here because Plaintiff's claim is indisputably time-barred.[6]

Plaintiff clearly cannot prevail on the merits. Mr. Combs denies all of the factual allegations of the Complaint in his Affidavit of Meritorious Defenses; but, even if every word of the Complaint were true, Plaintiff's claims would be subject to dismissal because they are time-barred. The gravamen of the Complaint is that the Plaintiff was sexually assaulted by Defendant on June 14, 1997—twenty-seven years ago. Exhibit 1 – Complaint at ¶ 1. The statute of limitations for an action to recover damages sustained because of criminal sexual conduct is 10 years. MCL 600.5805(6). Accordingly, the statute of limitations for Plaintiff's claim ran on June 14, 2007.

---

[6] Factor three very likely may be satisfied as well. Because Mr. Combs does not know what evidence Plaintiff could possibly put forth to support his fantastical allegations, he cannot assess whether that "evidence" would be admissible pursuant to the rules of evidence.

Thus, even if Plaintiff's allegations were true, the statute of limitations expired seventeen years ago. This alone establishes indisputable grounds for summary disposition under MCR 2.116(C)(7).[7] *Kincaid v Cardwell*, 300 Mich App 513, 522; 84 NW2d 122 (2013) ("Summary disposition under MCR 2.116(C)(7) is appropriate when the undisputed facts establish that the plaintiff's claim is barred under the applicable statute of limitations.").

### 3. The Totality of the Circumstances Require that Default Be Set Aside.

Considering the course of events that led to the Court's entry of Default Judgment against Mr. Combs, it is clear that Default should be set aside. In *Shawl v Spence Brothers, Inc*, the Michigan Supreme Court set forth "additional factors for [trial courts] to use in their evaluations of 'good case' and 'meritorious defense' under MCR 2.603(D)(1)," and "emphasize[d] that trial courts should base the final result on the totality of the circumstances." 280 Mich App 236-37. Those factors are as follows:

(1)     whether the party completely failed to respond or simply missed the deadline to file

(2)     if the party simply missed the deadline to file, how long after the deadline the filing occurred

(3)     the duration between entry of the default judgment and the filing of the motion to set aside the judgment

(4)     whether there was defective process or notice

(5)     the circumstances behind the failure to file or file timely

(6)     whether the failure was knowing or intentional

---

[7] This is not the first time Plaintiff has sought to pursue time-barred claims for sexual assault. In *Cardello-Smith v Archdiocese of Detroit*, unpublished per curiam opinion of the Court of Appeals, issued August 1, 2024 (Docket No. 368376), p *1 (Exhibit 8), Plaintiff alleged he was sexually abused by Archdiocese employees between 1979 and 1993. The trial court ruled that Plaintiff's claims were barred as a matter of law by the same statute of limitations implicated in the present case. *Id.* The Court of Appeals affirmed the trial court's dismissal on August 1, 2024. *Id.*

(7)      the size of the judgment and the amount of costs

*Id.* at 238.  Applying these factors here, the Court must set aside the entry of Default.

Five of the seven factors (factors three through seven) weigh heavily in favor of setting aside the Default here. The duration between entry of the Default Judgment and the filing of this motion to set aside the Judgment was just three days; there was defective service of process; Mr. Combs did not respond to the Complaint because he had no knowledge of the Complaint; the failure to file a response was unintentional; and the size of the judgment—$100,000,000—is extraordinary and incompatible with any possible measure of actual damages even if every (facially implausible) allegation in the Complaint were true. Because of Plaintiff's improper service, Mr. Combs did not receive notice of the lawsuit until September 9, 2024. Mr. Combs immediately retained counsel and now files this Motion.

Under the *Shawl* factors, the totality of the circumstances demonstrate that the Default Judgment should be set aside.

### CONCLUSION

For all of the above reasons, Mr. Combs asks this Court to set aside the Default entry and the Default Judgment, award sanctions, including costs and attorney fees, and should the Court find that Mr. Combs has an obligation to respond to the Complaint (which it should not), grant Mr. Combs twenty-one (21) days to so respond.

Dated: September 12, 2024              Respectfully submitted,

                                       FINK BRESSACK

                                       By: _____
                                       David H. Fink (P28235)
                                       Nathan J. Fink (P75185)
                                       David A. Bergh (P83696)
                                       Calder A.L. Burgam (P87203)
                                       38500 Woodward Avenue, Suite 350

Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com
*Counsel for Defendant*

16

## <u>TABLE OF EXHIBITS</u>

Exhibit 1 – Complaint

Exhibit 2 – Default Request and Entry

Exhibit 3 – Civil Judgment Order

Exhibit 4 – Return of Service

Exhibit 5 – Plaintiff Affidavit and Agreement

Exhibit 6 – Multiple Persons Agreement to Silence and Confidentiality

Exhibit 7 – Sean Combs Affidavit

Exhibit 8 – Unpublished Cases

- *Cardello-Smith v. Archdiocese of Detroit*, unpublished per curiam opinion of the Court of Appeals, issued Aug. 1, 2024 (Docket No. 368376), 2024 WL 3633645.

- *Cardello-Smith v Google LLC*, 2021 WL 4894700 (ED Mich, 2022).

- *Jacobs v George*, unpublished per curiam opinion of the Court of Appeals, issued Oct. 9, 2009 (Docket No. 276256), 2008 WL 4605915.

- *Richard v Bouchard*, No 12-12516, 2013 WL 4417440 (ED Mich, 2013).

- *White v Allstate Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued Oct. 4, 1996 (Docket No. 185862), 1996 WL 33356909.

# EXHIBIT 1

Approved, SCAO

| | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |

| STATE OF MICHIGAN | | | | CASE NO. |
| 39TH JUDICIAL DISTRICT<br>LENAWEE JUDICIAL CIRCUIT<br>COUNTY | SUMMONS | 2024- 7362 -NO |
| | | Hon. | HONORABLE ANNA MARIE ANZALONE |

Court address: 425 N. Main Street, Adrian, MI 49221     Court telephone no.

| Plaintiff's name, address, and telephone no. | | Defendant's name, address, and telephone no. |
| Mr. Derrick Lee Cardello-Smith #267009<br>Probable Cause Conference Litigator<br>2500 S. Sheridan Drive<br>Muskegon, Michigan 49444 | v | Sean Combs (Sean Puff Daddy Combs)<br>AKA--Sean P. DIDDY--AKA DIDDY<br>Bad Boy Records Label Owner, Founder<br>AKA Puffy-P-Daddy. Bad Boy (Diddy Run,<br>The City) Shawn Combs-Shawn Puffy Combs.<br>200 S. Mapleton Drive<br>Holmby Hills, Los Angeles,<br>California, 90077 |

| Plaintiff's attorney, bar no., address, and telephone no. |
| In Pro Per-Self Represented Litigant<br>Paralegal-Legal Writer-Victim-Survivor |

Instructions: Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.          | SUMMONS |

*Derrick Lee Cardello Smith*
5-30-24

NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to file a written answer with the court and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>JUN 10 2024 | Expiration date*<br>SEP - 9 2024 | Court clerk<br>Roxann |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01  (3/23) SUMMONS          (1)          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**Summons**   (3/23)

Case No. _2Y- 73L,2-N0_

## PROOF OF SERVICE

**TO PROCESS SERVER:** You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

### CERTIFICATE OF SERVICE / NONSERVICE

☐ I served    ☐ personally    ☐ by registered or certified mail, return receipt requested, and delivery restricted to the the addressee (copy of return receipt attached)    a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| | |
| Place or address of service | |
| Attachments (if any) | |

☐ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of a copy of the summons and complaint, together with

_____ on _____ .
Attachments (if any)                                                      Date and time

_____ on behalf of _____
Signature

_____
Name (type or print)

MCL 600.1910, MCR 2.104, MCR 2.105

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY


MR. DERRICK LEE CARDELLO-SMITH,#267009
PROBABLE CAUSE CONFERENCE LITIGATOR
    Plaintiff,              Case No 2024- **7362** -NO

Vs

                         Honorable:   **HONORABLE**
SEAN COMBS (SEAN PUFF DADDY COMBS)
AKA--SEAN P. DIDDY-AKA-DIDDY,      **ANNA MARIE ANZALONE**
BAD BOY RECORDS LABEL OWNER, FOUNDER,
AKA-PUFFY-P-DADDY. BAD BOY,
(DIDDY RUN THE CITY)
SHAWN COMBS-SHAWN PUFFY COMBS.
    Defendant(s),

FILED
39TH CIRCUIT COURT
JUN 1 0 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

COMPLAINT FOR PERSONAL INJURY
AND OTHER DAMAGES SEEKING MONETARY RELIEF AND JUDGMENT


    Now comes the Plaintiff, Derrick Lee Cardello-Smith Probable Cause Conference Litigator #267009, in the above cause pursuant to Michigan Complied Laws Governing Damages and Protections Against Personal injury and seeking to have Judgement Entered against the Named Defendants for Personal injury and Other Injuries related to the facts outlined and detailed within against the Defendant Sean Commbs and states the following Factors citing said damages that are being detailed and lodged against the Defendant Sean Combs.

### JURISDICTIONAL STATEMENT

    This court has Jurisdiction to review this claim and subject-matter as the Plaintiff maintained a residence in l     County at least six (6) months prior to incarceration and filing this action.

### MANDATORY DISCLOSURE STATEMENT

    This plaintiff has filed 3 State Lawsuits. 2 Federal Lawsuits. Thee Civil Appeals and 3 Criminal Appeals.

### DAMAGES SOUGHT

    Plaintiff seeks monetary damages in the amount of **$100,000,000.00 (ONE HUNDRED-MILLION DOLLARS)** against the defendant Sean Combs and seeks it in COMPENSATORY, PUNITIVE AND MONETARY DAMAGES INDIVIDUALLY AND OFFICIALLY.

(2)

## INJURY CLAIMS AGAINST SEAN COMBS-DEFENDANT

1. Defendant Combs did on or about June 14, 1997, in the City of Detroit, Michigan while this Plaintiff was employed as a Bartender at the Restaurant "Fishbones Rhythm Kitchen & Cafe" on Monroe & Brush and Was invited to attend a Gathering at the 'Holiday Inn" located in ____ ", MI where Defendant Combs had a social gathering and multiple women and other people were in attendance.

2. Plaintiff was excited to attend this gathering and did so, because this is Sean Puff Daddy Combs' "Bad Boys"!!!

3. Plaintiff had participated in and consumed alcohol with Mr. Combs and the ladies and other security, Puffy was schockingly cool and someone who seemed like a really decent normal guy....

4. Plaintiff Was astonished and so happy to be able to attend such a thing and the afterparty, wow..just amazing.

5. Plaintiff saw that there were at least 20 women present and 2 of the women wanted to go into the main suite/room and they walked in and Sean Motioned me to come with them while 2 guards stood out front...one was C-note "Terrell" and the one was Mike! and he said, have fun, but watch yourself with him! I said him who? He said, You will see!

6. As the night went on, the women were actually drinking and I was drinking more and they smoked some weed, I do not smoke weed but I was happy to be there, I mean I am in my 20's so I was in heaven...

7. I then started to get naked with the women and the next thing I know, we are all naked and Mr. Combs was Naked too and then, we were all participating in sexual activity, then, while I was engaged in performing oral sex on one of the ladies, Tanya! I felt a Hand stroke my left butt cheek and it was not soft, it was a mans hand and I looked up and saw that it was Mr. Combs... I was frozen with fear...I stopped and then needed to calm myself...so I got up and sat on the couch...the ladies were sexually into each other and I was just frozen and could not move...

8. I then went to get another drink and Sean asked me if I needed something else? I said no, and he said here, drink this one, and I thought it was another Glass of Jim Beam, so I took it because I had sat one down in the other room, and then I drank some more, and I stayed sitting there and began getting drowsy and started to pass out and then Sean Combs said to me.. I added a little something to it for you...I will get that from you anyway, one way or another.. I then passed out.

9. Hours later, I awakened to The women moaning and Mr. combs Penetrating one of of them with his Penis into her Anal Cavity



and then he saw me and said "I did this to you too!" Did you like it? I said what? I ran into the bathroom, checked myself and saw that I was bleeding and in pain, I ran out and left and never went back..

10. I contacted the Police about it and a report was taken and made, and then, I shut down and knew that I was never going to be able to tell anyone about this...I finally have been able to realize that I did nothing wrong.

12. It took years of Therapy in Prison to help me realize that this abuse coupled with the other abuse I suffered at by priests made me see that I was not the one who was wrong, but that my attacker is wrong and That I am a survivor, and I am not responsible for what has happened to me.

14. The defendant raped me! The Defendant sexually assaulted me! The defendant paid Detroit and Monroe Police Officers to keep it hidden and they hid it very very well...and have kept it hidden for many decades...but not anymore..I am a Victim of his Physical, Sexual, Psychological, emotional assaults he placed upon me when I did not deserve this kind of act or acts to be done upon me, and it is completely wrong what has transpired and it is horrible and he must be held to account for these horrific actions he committed upon me.

15. I am asking this Court to Enter Judgement against Mr. Combs because I have been the Victim of Sexual Assault by this man and it is contrary to Michigan Complied Law 750.520 and it violated Federal Laws as well as that he has left different states to do this act...

I ask for a total of $100,000,000.00 (One Hundred Million Dollars to be entered against this Defendant for the Personal injury his crime has placed upon my life and upon me, because it is horrible and it is wrong what he has done and it is something that he must be held accountable for...

I ask for Judgement in my Favor and I ask that this is done immediately.

### RELIEF REQUESTED

Wherefore, Plaintiff Prays this court will enter judgement in favor of the Plaintiff for the amount of $100,000,000.00 (One-hundred Million Dollars) in Compensatory, Punitive, Monetary Damages and Grant any further relief this Court deems necessary and appropriate.

Respectfully Yours,                                          May 31, 2024

Mr. Derrick Lee Cardello-Smith #267009
Probable Cause Conference Litigator

(4)

Plaintiff in Pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444



STATE OF MICHIGAN
IN THE 39th CIRCUIT COURT FOR LENAWEE COUNTY
CIVIL

MR. DERRICK LEE CARDELLO-SMITH,#267009
PROBABLE CAUSE CONFERENCE LITIGATOR
    Plaintiff,             Case No 2024-_____-NO

Vs
                      Honorable:_____

SEAN COMBS (SEAN PUFF DADDY COMBS)
AKA--SEAN P. DIDDY-AKA-DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
AKA-PUFFY-P-DADDY. BAD BOY,
(DIDDY RUN THE CITY)
SHAWN COMBS-SHAWN PUFFY COMBS.
    Defendant(s),
_____/

PROOF OF SERVICE

    I swear and declare that I mailed one copy of this pleading by
Certified Mail and First class Mail to the Defendant at SEAN
COMBS 200 S. Mapleton Drive, Holmby Hills-Los Angeles, California
90077 and this was done on May 31, 2024 for Notice of Lawsuit and
The Documents contained within are in fact true and real and
accurate and done so with the best of my knowledge and ability.

                                         May 31, 2024

Derrick Lee Cardello-Smith #267009
Probable Cause Conference Litigator
Plaintiff in Pro Per
#2500 S. Sheridan Drive
Muskegon, MI 49444

(6)

STATE OF MICHIGAN
IN THE 39th CIRCUIT COURT FOR LENAWEE COUNTY
CIVIL

MR. DERRICK LEE CARDELLO-SMITH,#267009
PROBABLE CAUSE CONFERENCE LITIGATOR
    Plaintiff,                 Case No 2024-_____-NO

Vs
                      Honorable:_____
SEAN COMBS (SEAN PUFF DADDY COMBS)
AKA--SEAN P. DIDDY-AKA-DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
AKA-PUFFY-P-DADDY. BAD BOY,
(DIDDY RUN THE CITY)
SHAWN COMBS-SHAWN PUFFY COMBS.
    Defendant(s),
_____/

### REQUEST FOR MI-FILE EXEMPTION

    I, Derrick Lee Cardello-Smith, Plaintiff in the above cause, hereby move this court to enter an order to Grant Exemption from MI-FILE Electronic Filing Requirements based on the following grounds:
    1. I am incarcerated and do not have access to electronic filing and I can only do it through the US Mail.

    The Court, having Review the Plaintiffs Request for Exemption from MI-FIle and Electronic Filing based on incarceration, and the court having considered all the facts.

    IT IS ORDERED that the Motion and Waiver is GRANTED ___ DENIED ____.

    DATED:_____
Clerk-Court Officer-Judge     _____
Order prepared by:
Plaintiff Derrick Lee Cardello-Smith
May 31, 2024

*Derrick Lee C Smith*
    5-31-24

(7)

# EXHIBIT 2

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>39TH JUDICIAL CIRCUIT<br>LENAWEE COUNTY | DEFAULT<br>REQUEST AND ENTRY | CASE NO. and JUDGE<br>2024-7362-NO<br>Hon. Anna Marie Anzalone |
|---|---|---|

Court address 425 N. Main Street, Adrian, MI 49221          Court telephone no.

| Plaintiff's name, address, and telephone no.<br>Derrick Lee Cardello-Smith, #267009<br>E.C. Brooks Correctional Facility<br>2500 S. Sheridan Drive<br>Muskegon, MI 49444 | v | Defendant's name, address, and telephone no.<br>~~SEAN X COMBS~~ Sean Combs<br>200 S. Mapleton Drive<br>holmby Hills, Los Angeles<br>California, 49077 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>Pro Se-Self-Represented Prisoner Plaintiff | | Defendant's attorney, bar no., address, and telephone no.<br>No Appearance Filed |

FILED
CIRCUIT COURT
AUG 2 3 2024
LENAWEE COUNTY
ADRIAN, MICHIGAN

Party in default: Sean Combs, a/k/a/ Sean Puff Daddy, A/k/a/ P. Diddy et al

## REQUEST

1. I request the clerk to enter the default of the party named above for failure to plead or otherwise defend as provided by law.

2. The defaulted party is not an infant or incompetent person.

3. ☐ It is unknown whether the defaulted party is in the military service. ☒ The defaulted party is not in the military service. ☐ The defaulted party is in the military but there has been notice of pendency of the action and adequate time and opportunity to appear and defend has been provided. Attached, as appropriate, is a waiver of rights and protections provided under the Servicemembers Civil Relief Act. Facts upon which this conclusion is based are: (specify)

4. This request is made on my personal knowledge and, if sworn as a witness, I can testify competently to the facts in this request.

I declare under the penalties of perjury that this request has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

_Derrick Lee Cardello-Smith_
Applicant/Attorney signature

Subscribed and sworn to before me on  8-20-2024
                                        Date

My commission expires on  2-14-2026

_B. Jones_
Deputy clerk/Notary public signature
_B. Jones_
Name (type or print)

Notary public, State of Michigan, County of Muskegon . ☒ Acting in the County of Muskegon
☐ This notarial act was performed using an electronic notarization system or a remote electronic notarization platform.

Distribute form to:
Court
Applicant
All other parties

**Default Request and Entry**   (6/22)
Page 2 of 2

Case No. _____

NOTE: Default can be entered by a district court
clerk without the request of a party.

**DEFAULT ENTRY**

The default of the party named above for failure to plead or otherwise defend is entered.

AUG 2 3 2024

Court clerk signature and date

Use note: The party who sought the entry of the
default is responsible for serving all parties in
accordance with MCR 2.603(A)(2).

**CERTIFICATE OF MAILING**

I served a copy of this default request and entry on the parties or their attorneys by first-class mail addressed to their last-known addresses as defined by MCR 2.107(C)(3). I declare under the penalties of perjury that this certificate of mailing has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

Date _____

Signature _____

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

8-20-24

Office of the Clerk
Michigan Court of Appeals
Lansing Office
925 W. Ottawa Street
P.O. Box 30022
Lansing, MI 48909-7522

Re: Derrick Lee Cardello-Smith v. Michigan Board of Law Examiners, et al
    COA's No 371625

Dear Clerk:

Enclosed for filing in the above cause, find the following documents that I am asking are signed by your office and entered on the court docket for the procedural default that the defendant is now in based on his failure to file any answer to the claims presented in the complaint after having been served the Summons and Complaint on July 6, 2024.

I ask that the Default request and entry is listed and processed by your office and see that the form you have provided me is in fact used in this matter.

Thank you.

Derrick Lee Cardello-Smith

# EXHIBIT 3

Approved, SCAO

Original - Court
1st copy - Plaintiff
2nd copy - Defendant

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>39th JUDICIAL CIRCUIT | JUDGMENT<br>Civil | CASE NO.<br>2024-7362-NO<br>HON: ANNA M. ANZALONE |
|---|---|---|

Court address 425 N. Main Street-Adrian, MI 49221                    Court telephone no.

| Plaintiff(s)<br>DERRICK LEE CARDELLO-SMITH, 267009 | v | Defendant(s)<br>SEAN COMBS, a/k/a/ P.DIDDY |
|---|---|---|

Plaintiff's/Plaintiff's attorney name, address, and telephone no.
Plaintiff in Pro Se-Self-Represented
#267009 -E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

☒ JUDGMENT

For: __PLAINTIFF__

Against: __DEFENDANT__

☐ Trial            ☐ Consent
☐ Summary Disposition   ☒ Default*

Defendant's/Defendant's attorney name, address, and telephone no.

*No Appearance Filed*
*No Answer Filed*

FILED
39TH CIRCUIT COURT
SEP - 9 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

☐ DISMISSAL
☐ Without prejudice        ☐ With prejudice
☐ No cause of action

For a defendant on active military duty, default
judgment shall not be entered except as provided by
the Servicemembers Civil Relief Act.

## ORDER OF JUDGMENT NOT INCLUDING STATUTORY INTEREST

Damages:                                                           $100,000,000.00
Costs (fees): filing $ 175.00   jury $ 85.00   motion $ 40.00   service $ 10.40
statutory $ _____ (MCL 600.2441)                                $ 310.40
Attorney fee: ☐ statutory  ☒ other (specify) Pro Per              $ _____
Total judgment amount (This judgment will earn interest at statutory rates, computed from the filing date of the complaint.): $ 100,000,000,310.40

☒ The defendant shall pay the judgment in installment payments of $ 10,000,000.00 each _Month_ starting October 1, 2024 until the judgment is paid in full. The plaintiff shall not issue a periodic garnishment as long as payment is made. Cash Transactions from Defendant or someone on defendants behalf to pay the Plaintiff Cash. Other conditions, if any: Through the Sale of Property, agents, Directly to the Plaintiff or an Agent(s), Accounting Firm, Person or Persons named By the Plaintiff or Cash Total done to a Financial Institution, or Plaintiffs Agent

☐ Approved as to form, notice of entry waived.
**IT IS ORDERED** that this judgment is granted.
This judgment resolves the last pending claim and closes the case unless checked here. ☐

9/9/24
Judgment date

_Derrick Lee Cardello-Smith_ 8-27-24
Plaintiff/Attorney

_Anna Marie Anzalone_
Judge/Court clerk                                    Bar no.

Defendant/Attorney

Judgment has been entered and will be final unless a motion for new trial or an appeal is filed within 21 days after the judgment date.

## STATUTORY INTEREST

The judgment interest accrued from the filing of the complaint to judgment is $ _____ and is based on:
(If additional rates apply, attach a separate sheet.)
☐ the statutory rate of _____ % from _____ to _____ .
☐ the statutory 6-month rate(s) of _____ % from _____ to _____ and
_____ % from _____ to _____ .

## CERTIFICATE OF MAILING

I certify that on this date I served a copy of this judgment on the parties or their attorneys by first-class mail addressed to their last-known addresses as defined by MCR 2.107(C)(3).

Date

Signature

MC 10   (3/16)   JUDGMENT, CIVIL

MCL 600.2441, MCL 600.5759, MCL 600.6013, MCL 600.8375, MCR 2.601,
MCR 2.602, MCR 2.603, 50 USC App 521

# EXHIBIT 4

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY
CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH,#267009,
    Plaintiff,

                                     Case No 2024-7362-NO
                                 Hon. Anna Marie Anzalone

SEAN COMBS, P.DIDDY, et al
  Defendant(s)
                        /

### RETURN OF SERVICE EXECUTED UPON
### DEFENDANT SEAN COMBS ON JULY 7, 2024
### WITH SERVICE BEING CONDUCTED IN COMPLIANCE WITH COURT RULE

Plaintiff Derrick Lee Cardello-Smith hereby swear and declare that
the Plaintiff has effected the Service of the Summons and
Complaint upon Defendant Sean Combs at the address listed herein
on record and and service was executed with Return of Service on
7/6/21 and that this service is supported and proven by this
Plaintiffs submission of the Signature Card showing that service
has been made by the rule of service.

Please place this submission on the Court docket and notify me
when it has been placed.

Respectfully Yours,
                                      July 25, 2024

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in Pro Per
2500 S. Sheridan Drive
Muskegon, MI 49444

FILED
39TH CIRCUIT COURT
AUG - 1 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

See attached
Return Receipt
Re Stricted Delivery
To Defendant

Cardello - Smith-V. Combs   24-7362-NO



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Sean Combs
200 S. Mapleton Drive
Holmby Hills-Los Angeles
California, 90077
Summons & Complaint
24-7362 NO

9590 9402 7768 2152 1823 79

2. Article Number (Transfer from service label)
7011 2000 0001 1878 8800

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ □ Agent
☑ Addressee

B. Received by (Printed Name)    C. Date of Delivery
7/6/21

D. Is delivery address different from item 1?   □ Yes
If YES, enter delivery address below:   □ No

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
☑ Certified Mail®
☑ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ Insured Mail
□ Insured Mail Restricted Delivery (over $500)
□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted Delivery
☑ Signature Confirmation™
☑ Signature Confirmation Restricted Delivery

Return Receipt Requested

Domestic Return Receipt

---

USPS TRACKING #

9590 9402 7768 2152 1823 79

United States
Postal Service

C40T

FILED
39TH CIRCUIT COURT

AUG - 1 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Derrickhee Cardello Smith
267009-C-40T0P
E.C. Brooks Corr. Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Sean Combs
200 S. Mapleton Drive
Holmby Hills-Los Angeles
California, 90077

Summons & Complaint

9590 9402 7768 2152 1823 79

2. Article Number (Transfer from service label)
7011 2000 0004 1978 8800

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery
7/6/21

D. Is delivery address different from Item 1?  ☐ Yes
If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Return Receipt Requested

Domestic Return Receipt

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

July 25, 2024

Office of the Clerk
39th Circuit Court-Lenawee County
425 N. Main Street
Adrian, MI 49221

Re: Derrick Lee Cardello-Smith #267009 vs Sean Combs
Case No 24-7362-NO

Dear Clerk:

Enclosed for filing in the above cause are the following documents:

1. RETURN OF SERVICE EXECUTED UPON DEFENDANT SEAN COMBS ON 7-6-24.
2. VERIFICATION OF CERTIFIED-RESTRICTED-DELIVERY AS ADDRESSED MAIL

Please place this pleading on the courts docket and notify the Plaintiff of its processing.

Thank you again.

Derrick Lee Cardello-Smith

FILED
39TH CIRCUIT COURT

AUG - 1 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

# EXHIBIT 5

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

9-2-24

Office of the Clerk
39th Circuit Court
Lenawee County
425 N. Main Street
Adrian, MI 49221

Re: Derrick Lee Cardello-Smith vs Sean Combs,
Case No. 24-7362-NO

FILED
39TH CIRCUIT COURT

SEP - 5 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

Dear Clerk:

Enclosed are documents I am asking are placed on the Court Record pertaining to this case at bar.

1. AGREEMENT OF KYM WORTHY AND DERRICK LEE CARDELLO-SMITH FROM 1997 AS TO SEAN COMBS
2. AFFIDAVIT OF DERRICK LEE CARDELLO-SMITH

If you could place these documents on the Court record, it would be greatly appreciated.

Derrick Lee Cardello-Smith

Agreement of 2 Persons
To Confidentiality And
Silence To Not Prosecute
Sean Combs For Rape
And agreement To all Claims
Being Temporarily Halted Oct 17 97

THE Persons of Kym Worthy and
Derrick Smith here and Say that we
will Not Proceed with the criminal
Report of Derricks Smith Being the
Victim of Sexual Assault and Drugging
By Sean Combs (New York Artist)

Stemming from THE Holiday Inn Rape and
Not Prosecute and He will Receive Money
Drugging of Smith - Smith Agrees to
from Combs or 49% of Future Earnings -

I Kym Worthy Agree to use my People
At the Prosecutors office and my Position
As Recorders Judge to put Smith Away
for Multiple Rapes with Harvey Jenner
As a Judge For Sentence in 1997 or 1998

And Smith agrees to Do Time and as He
is Locked Away His $150,000.00's
Given to Sean Combs Will in Fact Remain
in Sean Combs company name, Likeness or
Any Ventures From 1997-2027, I agree to
keep Smiths Money and Rape Kit secured
As Sean Combs Blood and Semen is in
The Rape Kit — My Cash Investment will
grow For Years and We Will Collect Later
Smith Will Be Prosecuted By My and Combs
stable of women For Rapes — I agree to keep
Kits At Warehouse — smith will get Money
upon End of 30 years - Combs Stays Clean of
Federal or State Charges - Investigation. My
14 women will say Smith and other Men
Raped them. We all Make Money and collect
Later — Smiths Family stays safe Per
Sean Combs orders - We all sign on 06/17/97

Derrick Lee Cardello Smith
19246 Hoyt
Detroit, MI 48205
D.O.B 11-1-72

Kim Worthy
1441 St Antoine
Detroit, MI 48226
D.O.B. Dec 5, 1967

2

State of Michigan)
             )ss
County of Muskegon )

## AFFIDAVIT OF DERRICK LEE CARDELLO-SMITH #267009

I swear and declare that in 1997, I entered into an agreement of silence, confidentiality, investment and other measures with the named people of KYM LOREN WORTHY, SEAN COMBS, PATRICK JACKMAN, DOROTHY DUNN, JERRY REDLIN, ROBERT FICANO, WARREN EVANS where Kym Loren Worthy would Keep the Rape Kit Evidence containing Semen and Pubic Hairs from Sean Combs taken out of my Anal Cavity, Mouth and Body, and The details in the agreement show that Kym Loren Worthy will keep it in here possession and I state that the agreement was that I would be given 49% of all investments in the future from Sean Combs holdings and company the recording artist, and man who raped me. I went to prison to stop my family from being killed by Combs, & Detroit Police. I state that this information is true to my knowledge, information and belief and I state the agreements are true and real and it happened. My families life was threatened and If I did not go to prison for Rape, then they would be killed and I would be given life for the Self-Defense Case. KYM WORTHY IS THE CURRENT WAYNE COUNTY PROSEUCTOR and She operates a criminal enterprise that is built upon False Rapes against this Plaintiff and 128 other men where she has used the same 14 different women to lie and say that Men raped them when in fact, they are victims of Sean Combs Sex Slavery Stable with ties and reach from Florida, to New York, to California, to Washington State to Alaska, to Michigan, and Kym Worthy is the commander and Michigan connector of these Crimes and Fraud and Money Laundering and other activities designed to make money and keep innocent men locked up and hide the crimes committed upon then by the Men and Woman who make profits from the crimes committed upon this plaintiff and other people to this date.

### DECLARATION

I swear and declare under the Penalty of Perjury that these statements are true and accurate and real and happened based on my own knowledge, information and belief and if called to testify, I will attest to them in a Court of Law because it is based on real events that happened and are true.

I have been framed for Rape Cases and it was to protect their Financial Interest and ensure my family was safe and I came to prison for crimes I did not do or commit and the woman who put me here, has even tried to get me out this year, See CARLI CARPENTER V. CHRIS KING, KIM WORTHY, Case 2:24-11176 Eastern District of Michigan and Same Names, 1:24-00465 WESTERN DISTRICT OF MICHIGAN, THIS IS THE PERSON FROM THE 2019-000756-01-FC CRIMINAL CASE IN PEOPLE OF THE STATE OF MICHIGAN V. DERRICK LEE CARDELLO-SMITH Done upon me by Kym Worthy herself. She admits to being paid by Kym Worthy's Office.

Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

B. Jones
8-21-2024

B JONES
Notary Public, State of Michigan
County of Muskegon
My Commission Expires 2-14-206
Acting in the County of _____

# EXHIBIT 6

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

DERRICK LEE CARDELLO‖SMITH, #267009,
    Plaintiff,

                                       File No 2024-7362-NO

Vs

                                Honorable Anna Marie Anzalone

SEAN COMBS, et al,
    Defendant,
_____/

PLAINTIFFS SUBMISSION OF 11 PAGE 1997 AGREEMENT
BETWEEN DEFENDANT SEAN COMBS AND PLAINTIFF DERRICK LEE CARDELLO-SMITH
AUTHORIZED BY KYM WORTHY, ROBERT FICANO, WARREN EVANS, PATRICK JACKMAN,
GEORGE PRESTON, JERRY REDLIN, AND DORTHY DUNN FOR RECORD PLACEMENT AT PRE-TRIAL

    Now comes the Plaintiff, Derrick Lee Cardello-Smith, and hereby provides
this Court with the Signed 1997 Agreement of Silence and Confidentiality
between Plaintiff and Defendant Sean Combs and Signed by Multiple Persons
confirming the agreement and grounds detailed within said agreement between
all persons as to the Cover-up of the Sexual Assault of this Plaintiff by
the Defendant and Other Police Departments and Persons.

    Plaintiff is Submitting this document in accordance with Michigan Rules of
Court 2.401 (C)(1)(d) and the submission of the agreement of silence and
confidentiality that is signed by all persons involved and Plaintiff further
submits an Affidavit Attesting to the Authenticity of the Signed 1997
Agreement for this Court record Verification.

PROOF OF SERVICE

I hereby swear that I mailed one copy of this agreement to the Defendant at
his address of record and that I did so on August 26, 2024 by US Mail and
Certified Mail in Muskegon, MI 49444.

                                                August 26, 2024

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in Pro Se
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

FILED
39TH CIRCUIT COURT
AUG 3 0 2024
LENAWEE
ADRIAN,

# MULTIPLE PERSONS AGREEMENT TO SILENCE And Confidentiality

06/16/97

Present:

1. DERRICK LEE ZardELLO-SmiTH — PERSON
2. SEAN JOHN COMBS — PERSON
3. KYM WorTHY — OFFICial - PERSON.
4. GEORGE PrESTON — PERSON-WiTNESS
5. PATRICK JACKMAN - Police OFFICER - DETROIT
6. DOROTHY DUNN - Bar OWNER-DUNN-INN

## CONFIDENTIALITY - AGREEMENT -

THE PARTIES OF DERRICK LEE ZardELLo Smith AND SEAN COMBS HEREBY Agree TO THE Following TERMS AND RULES — 1-To NOT HAVE SEAN COMBS PROSECUTED For THE DRUGGING - RAPE - Physical ASSAUT and THE

1 —

MANY OTHER ACTS OF VIOLENCE SAID PERSON OF SEAN COMBS- ARTIST-Recorder And Investor UPON SMITH Committed in JUNE 1997 - UPON DERRICK Cardello SMITH 11-01-72 - City of Adrian and Detroit-MI,

2- Cardello-Smith Agrees to Not PRESS CRIMINAL Charges Against SEAN Combs,

3 KYM WORTHY-OFFICIAL in Detroit-Agrees To Keep THE CASES QuieT AND Will ORDER HER Connections To Not Prosecute—

4- Cardello-Smith Agrees to Keep His $150,000.00 CASH INVESTMENT IN THE HANDS OF SEAN Combs For 10-20-30 YEAR Times AND TO ONLY SEEK 49% OF SEAN COMBS ENTIRE CapiTAL- WORTH-Holdings-Property- ASSETS- Financial Holdings-CASH-Liquid- FUTURE EARNings iF SEAN COMB Continues, SETTLES- HAS FURTHER SEXUAL ABUSE— SEXUAL ASSAULTS- OR BEHAVIORS BY ANY OTHER MAN - Woman -TEENAGE GIRL- TEENAGER Boy- TEENAGE Girl - or ANY STATE OR FEDERAL SETTLEMENTS— OR VIOLENT SEXUAL BEHAVIOR BY ARTIST SEAN COMBS iN ANY STATE OF THE U.S,

2,

OR US TERRITORY— Lardello-Smith Agrees To Live WITH THE EFFECTS OF it— AND NOT SEEK ANy Actions Legally until 2023-2024-2025-2026-2027— All Rights To SAID Acts Committed upon Lardello-Smith SHALL BE IN His own Control— He shall NOT SEEK Civil Relief until THE EXPIRATION OF 25 YEARS AND BEFORE 30 YEAR EXPIRES— 2027 END OF YEAR— For Civil Action—4—ANy ViolAtion OF THE Agreement By SEAN Combs Will Allow Lardello-Smith THE Rights To LegaL Control OF up to 49% 0OF All SEAN Combs INTERESTS— Holdings— FINANCES— Royalties, Value— CApital— Hard Contracts— Properties Homes— Vehicles— EVERY Thing Connected To SEAN Combs— Artist— New York LRecording Studi ose Etcetera— 49% Company(es) And INvestments Associated To SEAN Combs— 5— SEAN COMBS— Lardello-Smith MAKE THE Agreement FREELY— And No Harm Shall come To Lardello-Smith's FAMily— 5— Kym Worthy Agrees To Charge Smith With FALSE RApes And Smith Will go to Prison in 1997— 1998— To Protect His Mom

3

Brothers, Sisters, Family, Friends, Smith And His Murder Charge of Self Defense is Held up "Pending Investigation" And Put To Bed By DPD Officer Patrick Jackman Gratiot Division - To Protect Financials of KYM Worthy And Other officers that Invest in Sean Coms - For The Sole Purpose of Keeping All Parties Interest Whole - Lo - KYM Worthy Agrees to Hahall Rape Kits Stored in Warehouse And to Not Have Them Tested Because It Will Require Testimony of 14 Joint Interest Women on Payroll And An Audit of DPD Payroll Will Expose other Entities And Individuals To Fines, Job Loss - Criminal And Civil Litigation - And Agrees To Not Put Smith or Combs on Criminal Charges For Assault - 7 - Mr Redlin From Adrian P.D. Agrees to "Hold off" on Sexual Assault of Subject Smith By Mr. Combs in Exchang For Agreement of Payroll From The Agreed Monthly Totals To Redlin

4.

LENAWEE Sherriff Connections - 8 -
Smith Agrees To Go To Prison For
His Family Safety And His Investments
For 10-20-30 year Rights Return -
9 - PATRIZK JACKMAN - FURTHER
Agrees To Have His employees - File
Reports of SEXUAL ASSAULTS on
128 MEN - 14 Women Will Say THAT 128
MEN Raped THEM on Different Times
AND INVESTMENTS FROM City, SMITH,
Combs - WORTHY - JACKMAN - PRESTON -
REDLIN - Clive Davis - Robin KRAMER -
MARY TRAVIS - M. Bommarito - J Soulleard
11 - Women unnamed Here But on Police Report
For Sexual Assault Cash PAYROLL - Attend
- A. McNEAL - W. EVANS - J. DUGGAN WCPO -
Mr Thrasher - D. Cripps - H. Weinstien - All
While DERRICK SMITH is In County And
Prison THE INVESTMENT will Accrue in
SEAN SEAN Combs LLC - Recordings -
All Studios - Affilliates - Companies -
Financial Accounts - Banking - Checking

5

SAVINGS- CASH VALUE OF SEAN COMBS
ENTERPRISES-VENTURES-OTHER LLC-or
INVESTMENTS OF DERRICK LEE CARDELL SMITH.
AKA-DERRICK LEE CARDELLO-SMITH D.O.B.
11-01-72- S.S.N-368-80-74-78-DETROIT,
MICHIGAN- 9- SMITH Agrees TO NOT
Prosecute SEAN COMBS FOR THE RAPE
UPON HIS PERSON AT HolidAY INN AT
City OF AdriAN- FOR 30 years And
Agrees To County And PRison PlAcement
To Protect His Family-in exchAnge-
P. JACKMAN- K. Worthy Agree To
Drop THE INVESTIGATION OF Murder And
SELF DEFENSE agAinst SMiTH And Will
PLACE Multiple RApes on SMiTH oF
Which He is Not Guilty-or His
FAmily Will Be Removed By Cosigners
And -PermAnently Silenced - 10-
George Preston Will Hold CertAin LAnd
For Combs And SMiTH WITH PArtiAl PAy
Going to Mortgage of Preston Farm and
To THE ESTATE OF John Preston And

6

Farm and ESTATE LAND Intithes And
DEEDS OF Future Holdings OF THE
JAMES Leslie Preston ESTATE And
John Preston ESTATE Within Nuoca, MD
GEORGE Preston And John Preston
And JAMES Leslie Prestons Financial
Investment To SEAN Combs Will
Accrue upon End OF 30 Years With
AN Agreement To Keep Silent about
SEXUAL ASSAULT By Combs upon The
Person of SMITH — OR IF Combs involves
Himself In Another SEXUAL Assault or if
HE is Arrested — GEORGE Preston Will BE
Entitled to 8% or SEAN Combs Estate
Property or Holdings — 11 — All parties,
Persons Agree To HAVE Smith go
Down For Crimes (RELATED) To DETROIT
Police — Kym Worthy — SEAN Combs And
Robert Filano — WARREN EVANS — All
Agree To REMAIN Silent on SEX CRIMES
Prostitution Rings — Weapons Trafficking

7

- Drugs Land DEALS - ETC LE 16nA - SMITH
KEEP Quiet About THE SEX ASSAUT UPON
Him and DoneTo Him By Combs - Smith
Will BE Charged WiTH Many Rapes By
Women on Kym Worthy, SEAN Combs, DPD,
PATRICK Jack Man. Payroll To Continue THE
FALSE RAPE - EXTORTion Money Ring - And
All Land IN Michigan Shall BE Held By
DERRICK SMITH AND OTHER INvestors OF
SMITH Tied - To SMITH For 30 years or
2025 - 2027 FROM 1997 - 12 - SMITH WILL
NoT go To Trial Because His Family
Will Be EXTERMiNATed - His SisTERs TiNA
And Jacqueline WillBeFoR SEXTrade
WiTH Combs - Worthy - JACKMan - Dunn -
iF DERRiCK SMiTH - Derrick Lee Cardell
SMiTH BREAKS His Word - SMiTH Will BE
RELEASED in 2007 For Signing OF
LAND - TiTle - DEEDS WiTH George Preston
John Preston - OTHER ENTiTiES And
SEAN COMBS Will NotBe Charged
Criminally For SEXUAL ASSAUT Because -

8 -

Smith Will Be Charged For Rapes
By our Women Who Get Paid to
Lie and They Will not Recant AS
Patricia Penman AT Dearborn P.D.
Will Charge Them each For Solicitation
OF Prostitution And Perjury and True
Human Smuggling each Did — Mr Combs
Will Be FREE to Continue Paying WorThy
Evans — Ficano — JACKMAN — Duggan —
L. Brooks PatterSon Dunn — Preston —
— Richard Tipton — RicherBach — ToM Jenny
and The 31 Detroit Police officers in
9th Precints Gang Squad — Mgraw Station —
Adrian P.D. Lenawee S.D. — or Smith's
Family Will Be Hurt — especially His
Mom — Smith Will Hold 49% of All
L And, Property in Sean Combs name
in New York — Harlem — Michigan —
And Los-Angeles Future Holdings For
All LLC — Limited organizations in The

9.

NAME OF SEAN John Combs-Sean
Combs- Music -PROPERTY OR OTHERS-
Derrick Lee Cardello-Smith Will Have
Rights To 49% OF EVERYThing to
BE DEVELOPED -Discovered-HANdLed
OR ACHIEVED in OR By SEAN Combs For
10-20-30 YEARS upon ANY CRIMINAL
Involvement Made Public-Smith Will
Do Time For RAPES Committed By
SEAN Combs upon 14 Women in Michigan
And in RETURN THE ARTISTIC Genius
OF SEAN Combs Will Not Be Tainted, or
Destroyed- Smith's Family Will Live-
DPD Will Stop Harassing His MoM-
Smith Will BE given 49% OF All
ASSETS TO BE Held By SEAN Combs
iF Any Violations OF This Agreement
is Committed By Combs— B-Smith
Will BE FREED By DPD And issued
A Report CleaRing Him in Time-
THE Persons -Witnesses All Do
Agree in This Matter AS Proven
By Signatures Here at THE
10

DETROIT Police Crime LAB - AgrEES AlL
PERSONS in DETROIT, MICHIGAN
Wayne County
June 20, 1997

Patrick Jackman D.P.D,

Dimirih Lee C. Smith
11/01/72    6-20-1997
D.O.B.

6-20-97

Geage Preston

Dorthy Dunn
6-20-97

warren Evans
6/20/97

Jerry Radler
A.P.D.
6-20-97

11    Robert Ficano
June 20, 1997

Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

B. Jones
8-21-2024

B JONES
Notary Public, State of Michigan
County of Muskegon
My Commission Expires 2-14-2026
Acting in the County of _____

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Faciility
2500 S. Sheridan Drive
Muskegon, MI 49444

August 26, 2024

Office of the Clerk
39th Circuit Court
Lenawee County
425 N. Main Street
Adrian, MI 49221

```
                                    FILED
                              39TH CIRCUIT COURT

                                AUG 30 2024

                              LENAWEE COUNTY CLERK
                                ADRIAN, MICHIGAN
```

Re: Derrick Lee Cardello-Smith vs. Sean Combs.
Case No 24-7362-NO

Dear Clerk:

Enclosed   for filing in the above cause, are the following
documents:
 1. PLAINTIFFS SUBMISSION OF 11 PAGE 1997 AGREEMENT BETWEEN
DEFENDANT SEAN COMBS AND PLAINTIFF DERRICK LEE CARDELLO-SMITH
AUTHORIZED BY KYM WORTHY, ROBERT FICANO, WARREN EVANS, PATRICK
JACKMAN, GEORGE PRESTON, JERRY REDLIN, AND DOROTHY DUNN FOR
RECORD PLACEMENT AT PRE-TRIAL

 2. PROOF OF SERVICE

If you could please place this matter on the Courts Record and
Docket, it would be greatly appreciated.

Thank you..

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

# EXHIBIT 7

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH,

        Plaintiff,

v.

SEAN COMBS,

        Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

_____/

| | |
|---|---|
| Derrick Lee Cardello-Smith<br>MDOC # 267009<br>*Plaintiff, In Pro Per*<br>Earnest C. Brooks Correctional Facility<br>2500 S. Sheridan Drive<br>Muskegon, MI 49444 | David H. Fink (P28235)<br>Nathan J. Fink (P75185)<br>FINK BRESSACK<br>*Counsel for Defendant*<br>38500 Woodward Ave.; Ste. 350<br>Bloomfield Hills, MI 48304<br>Tel.: (248) 971-2500<br>dfink@finkbressack.com<br>nfink@finkbressack.com |

_____/

### SEAN COMBS' AFFIDAVIT OF MERITORIOUS DEFENSE

STATE OF NEW YORK    )
                        )
COUNTY OF NEW YORK   )

I, Sean Combs, being first duly sworn, depose and state as follows:

1.     I am over the age of 18 and capable of testifying to the facts set forth in this Affidavit.

2.     I make this Affidavit upon my own personal knowledge.

3.     I was not personally aware of the above-captioned case (the "Case") until September 9, 2024, when I saw news coverage that a default judgment had been entered against me in the Case (the "Default Judgment").

1

4.      I never received the Summons and Complaint in this Case by certified mail.

5.      I never signed a copy of a return receipt acknowledging receipt of the Summons and Complaint in this Case.

6.      After learning about this lawsuit on September 9, 2024, I was informed that on the docket, there is a copy of a return of service for the certified mail through which the Summons and Complaint was purportedly mailed (the "Return of Service"). A copy of that document pulled from this Court's docket is attached as Exhibit A.

7.      The signature on the Return of Service (Exhibit A) is not my signature.

8.      I never signed a document acknowledging receipt of the Summons and Complaint in this Case.

9.      I never authorized anyone to sign a document acknowledging receipt of the Summons and Complaint in this Case.

10.     I never authorized anyone to accept service of the Summons and Complaint in this Case on my behalf.

11.     The address listed on the Return of Service (Exhibit A), 200 S. Mapleton Drive, Holmby Hills, Los Angeles, CA 90077 (the "Mapleton Drive Address"), is not my primary residence.

12.     I reside in Miami, Florida.

13.     I first learned about this Case on September 9, 2024, through news coverage reporting that the Court had entered a Default Judgment against me.

14.     Prior to September 9, 2024, I was not aware of the Case.

15.     Shortly after learning about this Case and about the Default Judgment on September 9, 2024, I also became aware for the first time on or about September 9, 2024 of the Motion for a

2

Temporary Restraining Order and Preliminary Injunction in the Case (the "Motion") and the subsequent Order granting that Motion (the "TRO").  Prior to September 9, 2024, I was not aware of the Motion or the TRO.

16.     I never personally received a copy of the Motion or the TRO.

17.     Immediately upon learning about the Case, the Motion and the TRO, my attorneys obtained a copy of the docket filings in this Case on September 10, 2024.  I saw copies of the Summons and Complaint, Motion, Order, and Default Judgment only after my attorneys obtained copies on September 10, 2024.

18.     I have since reviewed the allegations in the Complaint in this Case.

19.     I do not know the plaintiff, Derrick Lee Cardello-Smith.

20.     I never assaulted the plaintiff, Derrick Lee Cardello-Smith.

21.     I never paid Detroit Police Officers or Monroe Police Officers (or anyone else) to keep any assault "hidden."

22.     I never visited the plaintiff, Derrick Lee Cardello-Smith, in prison.

23.     I deny all of the allegations set forth in the Complaint in this Case insofar as they pertain to me.

**FURTHER AFFIANT SAYETH NOT.**

SEAN COMBS

Subscribed and sworn before me on
this 12th day of September 2024.

_____ 02AG6430932 Notary Public
New York County, _____
acting in New York County,
My commission expires on: 03 / 28 / 2026

3

# EXHIBIT A

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY
CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH,#267009,
    Plaintiff,

                                        Case No 2024-7362-NO
                                        Hon. Anna Marie Anzalone

SEAN COMBS, P.DIDDY, et al
    Defendant(s)
_____/

RETURN OF SERVICE EXECUTED UPON
DEFENDANT SEAN COMBS ON JULY 7, 2024
WITH SERVICE BEING CONDUCTED IN COMPLIANCE WITH COURT RULE

Plaintiff Derrick Lee Cardello-Smith hereby swear and declare that
the Plaintiff has effected the Service of the Summons and
Complaint upon Defendant Sean Combs at the address listed herein
on record and and service was executed with Return of Service on
7/6/21 and that this service is supported and proven by this
Plaintiffs submission of the Signature Card showing that service
has been made by the rule of service.

Please place this submission on the Court docket and notify me
when it has been placed.

Respectfully Yours,                          July 25, 2024

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in Pro Per
2500 S. Sheridan Drive
Muskegon, MI 49444

FILED
39TH CIRCUIT COURT
AUG - 1 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

See attached
Return Receipt
Restricted Delivery
To Defendant

Cardello-Smith-v-Combs 24-7362 NO



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Sean Combs
200 S. Mapleton Drive
Holmby Hills-Los Angeles
California, 90077

Summons & Complaint
24-7362 NO

9590 9402 7768 2152 1823 79

2. Article Number (Transfer from service label)
7011 2000 0001 1878 8800

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery
Payton | 7/6/2?

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Return Receipt Requested

Domestic Return Receipt

**USPS TRACKING #**

9590 9402 7768 2152 1823 79

C40T

United States Postal Service

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

FILED
39TH CIRCUIT COURT
AUG - 1 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

• Sender: Please print your name, address, and ZIP+4® in this box•

Derrickhee Cardello-Smith
267009-C-40T or
E.C. Brooks Corr. Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Sean Combs
200 S. Mapleton Drive
Holmby Hills-Los Angeles
California, 90077

Summons & Complaint

9590 9402 7768 2152 1823 79

2. Article Number (Transfer from service label)
7011 2000 0001 1978 8806

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
7/6/21

D. Is delivery address different from Item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Return Receipt Requested

Domestic Return Receipt

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

July 25, 2024

Office of the Clerk
39th Circuit Court-Lenawee County
425 N. Main Street
Adrian, MI 49221

Re: Derrick Lee Cardello-Smith #267009 vs Sean Combs
Case No 24-7362-NO

Dear Clerk:

Enclosed for filing in the above cause are the following documents:

1. RETURN OF SERVICE EXECUTED UPON DEFENDANT SEAN COMBS ON 7-6-24.
2. VERIFICATION OF CERTIFIED-RESTRICTED-DELIVERY AS ADDRESSED MAIL

Please place this pleading on the courts docket and notify the Plaintiff of its procelising.

Thank you again.

Derrick Lee Cardello-Smith

FILED
39TH CIRCUIT COURT

AUG - 1 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

# EXHIBIT 8

2024 WL 3633645
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

Derrick Lee CARDELLO-SMITH, Plaintiff-Appellant,
v.
ARCHDIOCESE OF DETROIT, Assumption Grotto
Church/School, Assumption Grotto Parish, Clifford
Sawher, Estate of Father Resma, Estate of Clifford
Sawher, Father Resma, St. Jude Parish, St. Jude
Rectory, and St. Jude School, Defendants-Appellees,
and
Mr. Chopp, and Estate of Mr. Chopp, Defendants.

No. 368376
|
August 1, 2024

Wayne Circuit Court, LC No. 23-006285-NZ

Before: Gadola, C.J., and Patel and Young, JJ.

**Opinion**

Per Curiam.

*1 In this sexual abuse action involving acts that occurred
more than 29 years before plaintiff filed his complaint,
plaintiff appeals as of right the trial court's opinion and order
granting summary disposition to defendants under MCR
2.116(C)(7) and MCR 2.116(C)(8). We affirm.

I. BACKGROUND

On May 16, 2023, plaintiff filed a complaint in the Wayne
Circuit Court contending that between 1979 and 1993 he was
sexually abused by defendant Clifford Sawher, a monsignor
employed by defendant Assumption Grotto Church/School,
defendant Father Resma, a priest at a different educational
facility, and defendant Mr. Chopp, an employee of defendant
St. Jude School. Plaintiff further advanced that defendants
conspired to silence plaintiff regarding the sexual abuse
allegations, despite plaintiff reporting the matter to defendant

Archdiocese of Detroit, the Wayne County Youth Home,
and the Aurora Treatment Facility. Plaintiff contended that
defendants' conduct resulted in severe psychological injury
to plaintiff, which was "repressed until this year when
the Plaintiff had psychological treatment for the injuries
committed upon the plaintiff by the defendants in their
Individual and Official Capacities."

In lieu of filing an answer to plaintiff's complaint, defendants
moved for summary disposition under MCR 2.116(C)(7)
and MCR 2.116(C)(8), on the grounds plaintiff's sexual
abuse claims were barred as a matter of law by the
applicable statutes of limitation. Defendants maintained that
the pertinent statutes of limitation in effect at the time
plaintiff's claims accrued had long since lapsed. In response,
plaintiff argued that the statutes of limitation should be tolled
in light of defendants' fraudulent concealment of the sexual
abuse and under the insanity exception iterated in MCL
600.5851 because plaintiff's memories of the sexual abuse
were repressed until two years before the initiation of the
complaint.

The trial court dispensed with oral argument and issued an
opinion and order granting defendants' motion for summary
disposition under MCR 2.116(C)(7) and MCR 2.116(C)
(8). The court concluded that plaintiff's claims were barred
by MCL 600.5805(6) and MCL 600.5851b(1). The court
rejected plaintiff's argument that it was less than three
years since he discovered the causal relationship between
defendants' conduct and his injuries and thus he could bring
his claims under MCL 600.5851b(1). The court noted that
plaintiff alleged in his complaint that he divulged the sexual
abuse to several persons, and a supplemental police report
demonstrated that the alleged conduct was reported to the
Detroit Police Department in 1987. The court further stated
that plaintiff failed to establish that the tolling of the statutes of
limitation was warranted on fraudulent concealment grounds
under MCL 600.5855. The trial court granted defendants'
motion for summary disposition, and it dismissed defendant
Chopp and the estate of defendant Chopp with prejudice
due to plaintiff's failure to serve those defendants before the
expiration of the summons. This appeal ensued.

II. STATUTE OF LIMITATIONS

*2 Plaintiff argues that the trial court erred when it
granted defendants' motion for summary disposition because

plaintiff's sexual abuse claims were tolled by MCL 600.5851 and MCL 600.5855. We disagree.

"This Court reviews de novo both the applicability of a statute of limitations ... and the trial court's ruling on a motion for summary disposition." *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 21, 896 N.W.2d 39 (2016) (citations omitted). Summary disposition is appropriate under MCR 2.116(C)(7) when a claim is barred by a statute of limitations. As this Court has explained:

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429, 789 N.W.2d 211 (2010) (citations omitted).]

Matters pertaining to statutory interpretation and the retroactive application of a statute are also reviewed de novo. *Buhl v Oak Park*, 507 Mich. 236, 242, 968 N.W.2d 348 (2021). "MCR 2.116(C)(8) mandates summary disposition if 'the opposing party has failed to state a claim on which relief can be granted.' " *Veritas Auto Machinery, LLC v FCA Int'l Operations, LLC*, 335 Mich App 602, 607, 968 N.W.2d 1 (2021).

> The purposes of statutes of limitation are manifold .... Statutes of limitation are designed to encourage the rapid recovery of damages, to penalize plaintiffs who have not been assiduous in pursuing their claims, to afford security against stale demands when the circumstances would be unfavorable to a just examination and decision, to relieve defendants of the prolonged threat of litigation, to prevent plaintiffs from asserting fraudulent claims, and to remedy the general inconvenience resulting from delay in asserting a legal right that is practicable to assert. [*Doe v Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich App 632, 641-642, 692 N.W.2d 398 (2004) (cleaned up).]

"[A] plaintiff's cause of action for tortious injury accrues when all the elements of a cause of action have occurred and can be alleged in a proper complaint." *Id.* at 639-640, 692 N.W.2d 398. The general accrual statute, MCL 600.5827, provides that "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5869 further states, "All actions and rights shall be governed and determined according to the law under which the right accrued, in respect to the limitations of such actions or right of entry." Generally, the burden rests on the party asserting a statute of limitations defense to prove that the statute of limitations applies. *Gomez*, 318 Mich App at 21, 896 N.W.2d 39. But when it appears that the cause of action is prima facie barred, the burden of proof is upon the party seeking to enforce the cause of action to establish facts taking the matter out of the operation of the statute of limitations. *Doe*, 264 Mich App at 639, 692 N.W.2d 398.

**\*3** Plaintiff contends the sexual abuse transpired between 1979 and 1993. During that time period, the statute of limitations for claims of battery, assault, and false imprisonment was two years. MCL 600.5805(2), as amended by 1986 PA 178. For all other actions for injuries to persons or property, the period of limitations was three years. MCL 600.5805(8), as amended by 1986 PA 178. The trial court and the parties cite MCL 600.5805(6) to establish the period of limitations for claims seeking to recover damages sustained due to criminal sexual conduct is 10 years, and advance plaintiff was permitted to initiate an action until 2003. MCL 600.5805 was amended by 2018 PA 183, effective June 12,

2018, which is after this cause of action accrued and thus inapplicable to plaintiff's claims. Regardless, it is undisputed that all relevant statutory periods of limitations governing the instant case had expired when plaintiff filed the underlying complaint in 2023. Accordingly, plaintiff's claims were prima facie barred, and the burden rests on plaintiff to demonstrate that the statutes of limitation were tolled, or otherwise inapplicable.

### A. MCL 600.5851

Plaintiff first argues that the statute of limitations was tolled by the insanity disability grace period because his memories regarding the alleged sexual abuse were repressed until recent psychiatric therapy. MCL 600.5851(1) provides:

> ... [I]f the person first entitled to make an entry or bring an action under this act is under 18 years of age or insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run.

The term "insane" is defined as "a condition of mental derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know and is not dependent on whether or not the person has been judicially declared to be insane." MCL 600.5851(2). Critical to the instant matter is that "[t]o be considered a disability, the infancy or insanity must exist at the time the claim accrues. If the disability comes into existence after the claim has accrued, a court shall not recognize the disability under this section for the purpose of modifying the period of limitations." MCL 600.5851(3). A party may "not tack successive disabilities. A court shall recognize only those disabilities that exist at the time the claim first accrues and that disable the person to whom the claim first accrues for the purpose of modifying the period of limitations." MCL 600.5851(4).

Plaintiff failed to present sufficient evidence to create a factual issue that he suffered from insanity at the time the

claim accrued such as to toll the statutes of limitation. See *Lemmerman v Fealk*, 449 Mich. 56, 76-77, 534 N.W.2d 695 (1995) (holding that "neither the discovery rule nor the statutory grace period for persons suffering from insanity extends the limitation period for tort actions allegedly delayed because of repression of memory of the [sexual] assaults underlying the claims"). Plaintiff alleged in his complaint that he suffered from dissociative amnesia, a condition that affected his memory of the sexual abuse *after* it transpired. Plaintiff did not allege that a mental health condition qualified him as "insane" at the time his claims accrued. Moreover, plaintiff asserted in his complaint and in his response to defendants' motion for summary disposition that he previously reported defendants' conduct to three different entities, defendant Archdiocese, the Wayne County Youth Home, and the Aurora Treatment Facility, indicating that he knew the sexual abuse violated his rights. Furthermore, plaintiff provided a supplemental incident report, which was authored by the Detroit Police Department on January 1, 2022, detailing plaintiff's allegations regarding the underlying sexual violence by defendants Sawher, Resma, and Chopp, and noting plaintiff originally reported the abuse on January 23, 1987. Because plaintiff failed to establish that he was insane at the time the sexual abuse claims accrued, he cannot invoke the insanity tolling provision.

### B. MCL 600.5851b

**\*4** Plaintiff's claims are also not saved by MCL 600.5851b, which was enacted in June 2018 and provides:

> (1) Notwithstanding sections 5805 and 5851, an individual who, while a minor, is the victim of criminal sexual conduct may commence an action to recover damages sustained because of the criminal sexual conduct at any time before whichever of the following is later:

> (a) The individual reaches the age of 28 years.

> (b) Three years after the date the individual discovers, or through the exercise of reasonable diligence should have discovered, both the individual's injury and the causal relationship between the injury and the criminal sexual conduct.

> (2) For purposes of subsection (1), it is not necessary that a criminal prosecution or other proceeding have been brought as a result of the conduct or, if a criminal prosecution or other proceeding was brought, that the

Case 5:24-cv-12647-JEL-KGA   ECF No. 1, PageID.211   Filed 10/07/24   Page 211 of 570

Cardello-Smith v. Archdiocese of Detroit, Not Reported in N.W. Rptr. (2024)

prosecution or proceeding resulted in a conviction or adjudication.

(3) Regardless of any period of limitation under subsection (1) or sections 5805 or 5851, an individual who, while a minor, was the victim of criminal sexual conduct after December 31, 1996 but before 2 years before the effective date of the amendatory act that added this section may commence an action to recover damages sustained because of the criminal sexual conduct within 90 days after the effective date of the amendatory act that added this section if the person alleged to have committed the criminal sexual conduct was convicted of criminal sexual conduct against any person under section 520b of the Michigan penal code, 1931 PA 328, MCL 750.520b, and the defendant admitted either of the following:

(a) That the defendant was in a position of authority over the victim as the victim's physician and used that authority to coerce the victim to submit.

(b) That the defendant engaged in purported medical treatment or examination of the victim in a manner that is, or for purposes that are, medically recognized as unethical or unacceptable.

(4) This section does not limit an individual's right to bring an action under section 5851.

(5) As used in this section: (a) "Adjudication" means that term as defined in section 5805. (b) "Criminal sexual conduct" means that term as defined in section 5805.

Our Supreme Court recently held that MCL 600.5851b(1)(b) "creates a discovery rule for tolling the accrual date of *future* claims," but "it does not apply retroactively to resuscitate lapsed claims premised on past acts of criminal sexual conduct." *McLain v Roman Catholic Diocese of Lansing,* —— Mich ——, ——; —— NW3d —— (2023) (Docket No. 165741); slip op. at 2 (emphasis added). In *McLain*, the plaintiff alleged that he was sexually abused, as a minor, by a priest employed by the defendants in 1999, and he was subsequently diagnosed with adjustment disorder, anxiety, bipolar disorder, and required " 'medication through his lifetime.' " *Id.* at ——; slip op. at 2-3. The plaintiff advanced that he did not discover the connection between his mental health issues and the priest's sexual abuse until he disclosed the abuse to his therapist in November 2020. *Id.* at ——; slip op. at 2-3. The plaintiff filed a complaint alleging negligence against the defendants in 2021. *Id.* at ——; slip op. at 3. The defendants filed motions for summary disposition

under MCR 2.116(C)(7) on the grounds that the plaintiff's claims were time-barred under the applicable statutes of limitation, and while the plaintiff's claims were permissible under the tolling exception iterated in MCL 600.5851b(1)(b), the Legislature did not intend for the statutory provision to apply retroactively. *Id.* at ——; slip op. at 3. The trial court denied the defendants' motions for summary disposition, opining the retroactivity of the statute was irrelevant. *Id.* at ——; slip op. at 3-4. The trial court adopted the plaintiff's argument that MCL 600.5851b(1)(b) "changed the accrual date for an individual who, while a minor, later discovers the causal connection between previous criminal sexual conduct and their injuries" and concluded that the plaintiff's complaint was timely filed. *Id.* at ——; slip op. at 3-4.

**\*5** This Court reversed the trial court's conclusion that the plaintiff timely filed his complaint, holding that MCL 600.5851b(1)(b) did not change the date of accrual, the three-year limitations period had long expired, and MCL 600.5851b did not apply retroactively. *McLain v Roman Catholic Diocese of Lansing,* —— Mich App ——, ——; —— NW3d —— (2023) (Docket Nos. 360163 and 360173); slip op. at 5, 9. Our Supreme Court affirmed on different grounds. First, the *McLain* Court concluded that MCL 600.5851b(1)(b) is a "statutory codification of a discovery rule" that tolls the accrual date for a claim to recover damages sustained by a person who, while a minor, was the victim of criminal sexual conduct. *McLain,* —— Mich at ——; slip op. at 11-12. Reading the statute in its entirety, our Supreme Court concluded "that the Legislature intended to allow minor victims of criminal sexual conduct to bring a cause of action *either* by the time they turn 28 (an extension of the otherwise applicable statute of limitations) *or* within three years of when they discovered, or through the exercise of reasonable diligence should have discovered, their injuries and the causal relationship between their injuries and the criminal sexual conduct (discovery rule-based accrual), whichever is later." *Id.* at ——; slip op. at 13.

But the *McLain* Court agreed with this Court that the plaintiff's claim was untimely, holding "that the discovery rule in MCL 600.5851b(1)(b) does not apply retroactively to revive limitations periods that have already expired." *Id.* at ——; slip op. at 23-24. The plaintiff alleged that he was sexually assaulted by the individual defendant in 1999. *Id.* at ——; slip op. at 16. The *McLain* Court determined that the plaintiff's claims accrued in 1999 and were subject to a three-year limitations period under former MCL 600.5805(8) that could be extended until one year after the plaintiff's

18th birthday under MCL 600.5851. *Id.* at ——; slip op. at 16-17. Because the statute of limitations had expired and MCL 600.5851b(1)(b) does not apply retroactively, the Court concluded that the plaintiff's claim was untimely. *Id.* at ——, ——; slip op. at 17, 23-24.

Plaintiff's claims are likewise time-barred under MCL 600.5851b(1)(b). For purposes of MCR 2.116(C)(7) review, we accept as true plaintiff's allegations that he was sexually assaulted by defendants Sawher, Resma, and Chopp between 1979 and 1993. Plaintiff's claims were all subject to a three-year limitations period. For the claims that occurred while plaintiff was a minor, the three-year statute of limitations period could be extended under MCL 600.5851 until 1991, which was one year after the plaintiff's 18th birthday. *Id.* at ——; slip op. at 16-17. Nonetheless, the statute of limitations has long since passed and thus plaintiff's claims are barred. Although plaintiff claims he did not discover the causal connection between defendants' conduct and his injuries until June 1, 2022, MCL 600.5851b(1)(b) does not apply retroactively to resurrect plaintiff's claims that were already time-barred. See *McLain*, —— Mich at ——; slip op. at 2.

## C. MCL 600.5855

Plaintiff further argues that the statutes of limitation should be tolled under MCL 600.5855 because defendants fraudulently concealed the underlying sexual abuse claims. MCL 600.5855 provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

"Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent." *Doe*, 264 Mich App at 642, 692 N.W.2d 398 (cleaned up). Furthermore,

> **\*6** the plaintiff must show that the defendant engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery. There must be concealment by the defendant of the existence of a claim or the identity of a potential defendant, and the plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment. If there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of the statute, and in this behalf a party will be held to know what he ought to know. [*Doe*, 264 Mich App at 642-643, 692 N.W.2d 398 (cleaned up).]

Plaintiff's causes of action were not concealed from him. He knew, or should have known, all the essential elements of potential causes of action against defendants at the time of his injury. In his complaint, plaintiff asserted that he reported the sexual abuse to at least three different persons or entities during the time period the abuse occurred, and the supplemental police report indicated that plaintiff disclosed the alleged harm to the Detroit Police Department on January 23, 1987. Plaintiff cannot maintain that defendants failed to adequately investigate plaintiff's claims after he reported the sexual abuse while simultaneously arguing that he was unable to recognize any known cause of action. Plaintiff additionally failed to plead a single affirmative act or misrepresentation by any defendant in his complaint, rather, plaintiff broadly advanced defendants "encouraged" the sexual abuse and "defendants all conspired to keep these acts quiet and they did a great job of it and they acted as the authority figures while I was in their schools and they did everything they were supposed to do to keep these memories repressed ...."

Viewing the record in the light most favorable to plaintiff, the trial court did not err by granting summary disposition to defendants under MCR 2.116(C)(7) and (8). Plaintiff's sexual abuse claims were time-barred by the applicable statutes of limitation, and plaintiff is unable to demonstrate that he is entitled to any tolling exception iterated in MCL 600.5851, MCL 600.5851b, or MCL 600.5855.

Affirmed.

**All Citations**

Not Reported in N.W. Rptr., 2024 WL 3633645

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Cardello-Smith v. Google LLC, Not Reported in Fed. Supp. (2021)
2021 WL 4894700

2021 WL 4894700
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Derrick Lee CARDELLO-SMITH, Plaintiff,

v.

GOOGLE LLC, Google Inc., Microsoft LLC, Joanne
Theakston, Juliette Bird, Kim Worthy, Prosecutor,
Deyana Unis, Ass't Prosecutor, Suzette Samuels, Ass't
Prosecutor, Carli Carpenter (Boike), Heather Lynn
Nielson, MDOC/MCF/LRF Corrections Officers,
Heidi Washington, Mr. Plachta, Mr. Chauvez, J.B.
(Corrections Officer M.D.O.C.), Customer Privacy
Inc.-Corporation, LiarsCheatersandBastards.com,
Contactprivacy.com., ns1.aftermic.com,
ns2.aftermic.com, CheatersAndBastards.com,
Contactprivacy.com., LiarsCheatersandBastards, Inc.,
Corporation, Entity, Company, CheatersAndBastards
Inc., Entity, Corporation, Cheaters and Bastards Inc.,
Corporation, Company, CheatersAndBastards.com-
tech-customers.whoisprivacy.corp.com,
Brad.ns.cloudfare.com, Mona.ns.cloudfare.com, Liars,
Cheaters and Bastards as a Company, Corporation,
Entity, Staff, Cheaters, and Bastards as a Company,
Corporation, Entity, Whole, Owners of Cheaters and
Bastards, Owners of Liars Cheaters and Bastards,
Employees and Contractors of the Domain Known as
Cheaters and Bastards Used by Domain Administration
and Whoisprivacy.corporation.com, All Affiliates,
Contractors, Lawyers, Owners of Internet Domain
Service BS Corp., Tucows Inc., Corporation, Company
Entity, All Employees and Officials of Said Sites,
Company, Organization, Entities, Defendants.

Case Number 21-11595
|
Signed 10/20/2021

**Attorneys and Law Firms**

Derrick Smith, Muskegon, MI, Pro Se.

**OPINION AND ORDER DENYING APPLICATION
TO PROCEED WITHOUT PREPAYMENT OF FEES
AND COSTS AND DISMISSING COMPLAINT**

DAVID M. LAWSON, United States District Judge

**\*1** This matter is before the Court on the plaintiff's *pro
se* civil rights complaint filed under 42 U.S.C. § 1983.
The plaintiff is an inmate confined at Michigan's Muskegon
Correctional Facility in Muskegon, Michigan. He also has
filed an application for leave to proceed without prepayment
of costs. The plaintiff cannot proceed *in forma pauperis*
because at least three of the plaintiff's prior civil rights
complaints have been dismissed as frivolous, malicious, or
for failing to state a claim upon which relief could be granted
in violation of 28 U.S.C. § 1915(g). His case, therefore, will
be dismissed without prejudice, but he may revive his lawsuit
by payment of the appropriate filing fees.

Indigent litigants may apply to the Court to waive filing fees
required to commence a lawsuit. 28 U.S.C. § 1915(a)(1).
Otherwise, the "[t]he clerk of each district court shall require
the parties instituting any civil action, suit or proceeding in
such court, whether by original process, removal or otherwise,
to pay a filing fee...." *See also* Owens v. Keeling, 461 F.3d
763, 773 (6th Cir. 2006).

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub.
L. No. 104–134, 110 Stat. 1321 (April 26, 1996), prevents
a prisoner from bringing a civil action *in forma pauperis*
if a court previously dismissed three or more complaints
as frivolous, malicious, or for failing to state a claim upon
which relief may be granted unless the prisoner is in imminent
danger of serious physical injury. 28 U.S.C. § 1915(g) (1996);
*Thaddeus–X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999);
*Witzke v. Hiller*, 966 F. Supp. 538, 540 (E.D. Mich. 1997). A
federal district court may raise the three strikes provision on
its own, *Witzke*, 966 F. Supp. at 539, and may take judicial
notice of a plaintiff's prior dismissals, *Green v. Nottingham*,
90 F.3d 415, 418 (10th Cir. 1996); *Anderson v. Sundquist*, 1
F. Supp. 2d 828, 830 (W.D. Tenn. 1998).

A review of federal court records indicates that the plaintiff
has at least four prior civil rights complaints that were
dismissed by federal courts for being frivolous, malicious, or
for failing to state a claim upon which relief could be granted.
*See Smith v. Penman, et al.*, No. 20-12052 (E.D. Mich. Feb.
18, 2021); *Smith, et al. v. Unis, et al.* No. 19-12219 (E.D.

Cardello-Smith v. Google LLC, Not Reported in Fed. Supp. (2021)

2021 WL 4894700

Mich. Aug. 22, 2019); *Smith v. Hall et al.*, No. 18-277 (W.D. Mich. Apr. 3, 2018); *Smith v. Wayne Cnty. Prosecutor's Office, et al.,* No. 09-12287 (E.D. Mich. June 25, 2009).

In addition, the plaintiff has been denied leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(g), the "three-strikes" rule, because of these frivolity dismissals. *See Smith v. Washington,* No. 20-1211, 2021 WL 302614 (W.D. Mich. Jan. 29, 2021); *Smith v. Writeaprisoner.com, Inc.,* No. 20-1201, 2021 WL 210716 (W.D. Mich. Jan. 21, 2021); *Smith v. Penman,* No. 18-1212, 2018 WL 6697270 (W.D. Mich. Dec. 20, 2018).

**\*2** The plaintiff has not alleged any facts in this case that would establish that he is in imminent danger of serious physical injury, and thus, he does not come within the exception to the mandate of 28 U.S.C.§ 1915(g), which prohibits him from proceeding *in forma pauperis* in light of his four prior frivolity dismissals. *Mulazim v. Michigan Dept. of Corrections,* 28 F. App'x. 470, 472 (6th Cir. 2002).

The plaintiff's civil rights complaint is therefore subject to dismissal under section 1915(g). However, the plaintiff may revive any of the claims dismissed under 28 U.S.C. § 1915(g) if he decides to pay the $350 filing fee. *See* 28 U.S.C. § 1914; *Witzke,* 966 F. Supp. at 540. If the plaintiff is unable to pay the full amount, he may submit a partial filing fee and pay the remainder in installments. *See* 28 U.S.C. § 1915(a); *Miller v. Campbell,* 108 F. Supp. 2d 960, 962 (W.D. Tenn. 2000).

Accordingly, it is **ORDERED** that the complaint is **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. § 1915(g).

It is further **ORDERED** that the plaintiff's application to proceed without prepaying fees or costs (ECF No. 2) is **DENIED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4894700

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Jacobs v. George, Not Reported in N.W.2d (2008)

2008 WL 4605915
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

Jacqueline JACOBS, Plaintiff–Appellee,
v.
Robert GEORGE, Defendant–Appellant.

Docket No. 276256.
|
Oct. 9, 2008.

Lake Circuit Court; LC No. 96–004112–DP.

Before: GLEICHER, P.J., and FITZGERALD and
HOEKSTRA, JJ.

**Opinion**

PER CURIAM.

*\*1* In this paternity action, defendant appeals by leave granted a circuit court order denying his motion for relief from judgment under MCR 2.612(C)(1). We reverse and remand.

On June 25, 1996, plaintiff filed a paternity complaint alleging that defendant had fathered her son, Christopher. The friend of the court attempted to serve defendant by registered mail pursuant to MCR 2.105(A)(2), which provides that process may be served on an individual by

> sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail. A copy of the return receipt signed by the defendant must be attached to proof showing service under subrule (A)(2).

On July 2, 1996, Katrina Shepherd signed the registered mail receipt. Shepherd is defendant's daughter, and was a minor when she acknowledged receipt of the summons and complaint. The record does not conclusively establish whether defendant lived with Katrina in July 1996. On July 8, 1996, the friend of the court filed a certificate of service, and attached the registered mail receipt bearing Shepherd's signature.

On July 31, 1996, the circuit court entered a "Default Judgment Establishing Paternity," and ordered defendant to pay child support. One week later, the prosecuting attorney filed with the court an "Affidavit of Default and Nonmilitary Service." The affidavit averred that defendant had been personally served.

On August 19, 1996, the circuit court received and filed a letter handwritten by defendant, which stated verbatim the following:

> I Robert George had know aware of a summon, I never receive it, because the address is incorrect. And also I request a blood test, because I Robert George is not claiming parent.

The circuit court thereafter entered an income withholding order governing defendant's child support payments.

The court record reflects that the next action in this matter occurred in November 1998, when defendant wrote to the court and again requested a blood test. On November 3, 1998, the circuit court ordered a blood test, which ultimately excluded defendant as Christopher's biological father. [1]

Despite the blood test results, defendant continued to pay child support as required by the income withholding order. In March 2006, defendant stipulated to a revised child support order requiring payment for Christopher and a second child born in 1998, whose paternity defendant has not challenged.

In October 2006, defendant filed a "Petition For Relief from Judgment Pursuant to MCR 2.612." In the petition, defendant alleged that he had never received personal service of the paternity action, and that "it is inequitable to the parties in this cause and the child for this court to allow this Order of Paternity to exit when in fact the Defendant is not the

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                                    1

biological father." The circuit court denied defendant's motion for relief from judgment, reasoning in its bench opinion that although "service may have been improper," defendant "certainly had knowledge of this file. He had knowledge of the judgment.... He's been paying his support. There's been, actually, additional stipulations and agreements between the parties regarding his paying of support, even after this paternity test was done."

**\*2** Defendant contends on appeal that because he was never personally served, he lacked the opportunity to obtain appointed counsel. According to defendant, the absence of counsel denied him due process of law. However, defendant failed to raise this argument in the circuit court, and the circuit court did not address it. Because defendant has failed to preserve his due process claim, this Court reviews the unpreserved constitutional claim for plain error affecting defendant's substantial rights. *People v. Carines,* 460 Mich. 750, 763–764, 774, 597 N.W.2d 130 (1999). To avoid forfeiture under the plain error rule, defendant must establish that (1) error occurred; (2) the error was plain (clear or obvious); and (3) the plain error affected his substantial rights. *Id.* at 763, 597 N.W.2d 130.

The court rule governing the appointment of counsel in paternity actions provides, in relevant part,

> If the alleged father appears in court following the issuance of a summons under MCL 722.714, the court must personally advise him that he is entitled to the assistance of an attorney, and that the court will appoint an attorney at public expense, at his request, if he is financially unable to retain an attorney of his choice. [MCR 3.217(C)(2) ].

Defendant did not "appear in court," and therefore, the circuit court had no obligation to sua sponte appoint counsel for him. Counsel must be appointed only after a paternity defendant appears in the action and establishes indigency. *Artibee v. Cheboygan Circuit Judge,* 397 Mich. 54, 56, 243 N.W.2d 248 (1976). We thus find no plain error arising from the circuit court's failure to appoint counsel for defendant before entering the default judgment.

Nevertheless, we agree with defendant that the circuit court erred by denying his motion for relief from judgment. We review for an abuse of discretion a circuit court's decision whether to set aside a judgment. *Heugel v. Heugel,* 237 Mich.App. 471, 478, 603 N.W.2d 121 (1999). A circuit court abuses its discretion when it makes a decision that falls beyond the range of reasonable and principled outcomes. *Maldonado v. Ford Motor Co.,* 476 Mich. 372, 388, 719 N.W.2d 809 (2006). However, we review de novo a circuit court's interpretation and application of the court rules. *Estes v. Titus,* 481 Mich. 573, 578–579, 751 N.W.2d 493 (2008).

Pursuant to MCR 2.612(C)(1)(d), a circuit court may relieve a party from a "final judgment, order, or proceeding" if "[t]he judgment is void." "A judgment which is void may be attacked at any time." *DAIE v. Maurizio,* 129 Mich.App. 166, 171, 341 N.W.2d 262 (1983). A motion for relief from judgment brought under MCR 2.612(C)(1)(d) "differs from a motion on other grounds in that there is no discretion on the part of the court." Longhofer, Courtroom Handbook on Michigan Civil Procedure, § 2612.13, p 1076 (2006 ed). "A judgment is 'void' only if it is beyond the power of the court to render. In general, that will be the case only if the court lacked jurisdiction over the person or over the subject matter of the action." 3 Dean & Longhofer, Michigan Court Rules Practice (4th ed), § 2612.13, p 479. A court usually obtains personal jurisdiction over a defendant "by service of process." *Isack v. Isack,* 274 Mich.App. 259, 266, 733 N.W.2d 85 (2007). "[S]ervice of the summons is a necessary part of service of process," and if the plaintiff completely fails to ensure service of the summons, the court does not obtain personal jurisdiction over the defendant. *Holliday v. Townley,* 189 Mich.App. 424, 426, 473 N.W.2d 733 (1991).

**\*3** Because defendant did not acknowledge receipt of the registered mail containing the summons and complaint, he was not properly served as contemplated by MCR 2.105(A)(2). Further, no record evidence supports that defendant actually ever received a copy of the summons and complaint. In light of the complete failure of service in this case, the circuit court abused its discretion by denying defendant's motion for relief from the consequently void judgment against him.

We additionally find that defendant is entitled to equitable relief pursuant to MCR 2.612(C)(1)(e) and (f), which authorize relief from a judgment or order in the following circumstances:

Jacobs v. George, Not Reported in N.W.2d (2008)

(e) ... [I]t is no longer equitable that the judgment should have prospective application.

(f) Any other reason justifying relief from the operation of the judgment.

The registered mail receipt filed with the circuit court clearly reflected the signature of someone other than defendant, who was a minor. The circuit court improperly entered defendant's default based on the filing of the certified mail receipt that obviously failed to establish personal jurisdiction over defendant. The circuit court records contain no evidence that plaintiff, the court, or the prosecuting attorney ever served defendant with notice of the entry of the default judgment,

as required by MCR 2.603(B)(4). Moreover, defendant is not Christopher's biological father. Under the totality of the circumstances presented here, we conclude that the circuit court also abused its discretion by denying defendant relief because it is no longer equitable that the default judgment have prospective application.

Reversed and remanded for entry of an order granting defendant relief from the July 31, 1996 default judgment. We do not retain jurisdiction.

**All Citations**

Not Reported in N.W.2d, 2008 WL 4605915

---

## Footnotes

1       According to the circuit court's docketing entries, the blood test results were not filed with the court until 2006.

---

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 4417440
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Michael RICHARD, Plaintiff,
v.
Michael BOUCHARD, et al., Defendants.

No. 12–12516.
|
Aug. 15, 2013.

**Attorneys and Law Firms**

Michael Richard, Ionia, MI, pro se.

Mary M. Mara, Oakland County Corporation Counsel, Pontiac, MI, for Defendants.

*ORDER ADOPTING REPORT AND RECOMMENDATION (Doc. 23) AND DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (Doc. 11)*

AVERN COHN, District Judge.

I.

**\*1** This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff, proceeding *pro se* and without payment of fees, claims that several defendants violated his constitutional rights due to deliberate indifference to his medical needs while a pretrial detainee in the Oakland County Jail. The matter has been referred to a magistrate judge for all pretrial proceedings. Plaintiff filed a motion for default judgment, contending that certain defendants were in default for failing to respond to the complaint.

On July 23, 2013, the magistrate judge issued a report and recommendation (MJRR) that plaintiff's motion be denied because (1) plaintiff did not first obtain a clerk's entry of default as required, (2) plaintiff failed to show that the defendants were properly served, and (3) the defendants have filed a dispositive motion in lieu of an answer and therefore have appeared in the case. Neither party has objected to the MJRR and the time for objections has passed. [1]

II.

The failure to file objections to the MJRR waives any further right to appeal. *Smith v. Detroit Federation of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Likewise, the failure to object to the MJRR releases the Court from its duty to independently review the motions. *Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). However, the Court has reviewed the MJRR and agrees with the magistrate judge.

III.

Accordingly, the findings and conclusions of the magistrate judge are ADOPTED as the findings and conclusions of the Court. Plaintiff's motion for a default judgment is DENIED.

SO ORDERED.

**REPORT AND RECOMMENDATION**

R. STEVEN WHALEN, United States Magistrate Judge.

Before the Court is Plaintiff Michael Richard's Motion for Judgment by Default [Doc. # 11], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the Motion be DENIED.

**I. FACTS**

Plaintiff, a prison inmate in the custody of the Michigan Department of Corrections, filed a *pro se* civil rights complaint against Oakland County Sheriff Michael Bouchard, Sheriff's Deputies Brian Spiker, Donald Sheltrown, Gregory Sako and Craig Hanselman, and Jail Nurse Greg A. Smith, arising out of incidents alleged to have occurred while Plaintiff was a pretrial detainee in the Oakland County Jail. He alleges that he served all of these Defendants by certified mail, and has attached return receipts to the Motion. The return receipt for Sheriff Bouchard is not signed. The return receipts for Sheltrown, Hanselman, Sako and Smith are not signed by these Defendants, but are stamped with the name "Jim Middleton." Attached to a separate letter

2013 WL 4417440

to the Court [Doc. # 9] is a return receipt for Defendant Spiker, again bearing only the stamped name "Jim Middleton." The dates of receipt on the return receipts range from September 24, 2012 to October 9, 2012.

On October 30, 2012, counsel for Defendants filed a Notice of Appearance [Doc. # 12]. On November 9, 2012, Defendants filed a Motion for Summary Judgment [Doc. # 13]. [1]

**\*2** Plaintiff alleges that because these Defendants did not file an answer or otherwise respond to his Complaint within 21 days of service, he is entitled to a default judgment.

### II. DISCUSSION

There are three reasons why a default judgment should not be entered.

First, in order for a plaintiff to obtain a judgment by default, he must first obtain a Clerk's entry of default pursuant to Fed.R.Civ.P. 55(a). A default *judgment* is governed by Rule 55(b)(2). "An entry of default and a default judgment are distinct concepts which must be treated separately." *Northland Ins. Co. v. Cailu Title Corp.,* 204 F.R.D. 327, 330 (W.D.Mich.2000) (quoting *United States v. Topeka Livestock Auction, Inc.,* 392 F.Supp. 944, 950 (N.D.Ind.1975)). In *Vongrabe v. Sprint PCS,* 312 F.Supp.2d 1313, 1318 (S.D.Cal.2004), the court explained:

> "The section of the rule regarding default is dealt with in Rule 55(a), and the section of the rule regarding judgment is dealt with in Rule 55(b). These sections have separate headings and procedures that are distinct from one another. Thus, a plain reading of Rule 55 demonstrates that entry of default by the clerk is a prerequisite to an entry of default judgment."

See also *Ramada Franchise Sys., Inc.,* 220 F.R.D. 303, 305 (N.D.Ohio 2004) (quoting *Sys. Indus., Inc. v. Han,* 105 F.R.D. 72, 74 (E.D.Penn.1985)) ("Entry of a default ... is a prerequisite to entry of a default judgment under Rule 55(b)."); *DeTore v. Local # 245 of the Jersey City*

*Public Employees Union,* 511 F.Supp. 171, 176 (D.N.J.1981) ("However, no default judgment may be entered under either F.R.Civ.P. 55(b)(1) or (b)(2) unless a default has previously been entered by the clerk under 55(a). Thus, the entry of default is an essential predicate to any default judgment.").

In this case, the Clerk has not entered a default under Rule 55(a). Therefore, Plaintiff is not entitled to a default judgment under Rule 55(b).

Secondly, Plaintiff has not shown that the Defendants were properly served. Fed.R.Civ.P. 4(e)(1) provides that service of process may be made "pursuant to the law of the state in which the district court is located, or in which service is effected." Under Michigan law, specifically M.C.R. 2.105(A)(2), service may be effected as follows:

> "(2) sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail. A copy of the return receipt *signed by the defendant* must be attached to proof showing service under subrule (A)(2)." (Emphasis added).

None of the Defendants signed the return receipts; rather, each bore the stamp of non-party Jim Middleton. Sheriff Bouchard's receipt was not signed at all. A default judgment may not be entered against a party who has not been properly served.

Finally, notwithstanding defective service, the Defendants have filed a dispositive motion in lieu of an answer. That motion will be decided on the merits.

### III. CONCLUSION

**\*3** For these reasons, I recommend that Plaintiff's Motion for Judgment by Default [Doc. # 11] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of

Richard v. Bouchard, Not Reported in F.Supp.2d (2013)

2013 WL 4417440

objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987).* Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 4417440

---

### Footnotes

1    The MJRR stated that objections were to be filed within 14 days of service. Accounting for service, objections were due at least by August 9, 2013.

1    Although titled "Motion for Summary Judgment," Defendants' pleading seeks dismissal under Fed.R.Civ.P. 12(b)(6).

---

End of Document                                           © 2024 Thomson Reuters. No claim to original U.S. Government Works.

White v. Allstate Ins. Co., Not Reported in N.W.2d (1996)

1996 WL 33356909

1996 WL 33356909
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

Joyce N. WHITE and William Bert
Johnson, Plaintiffs-Appellants,
v.
ALLSTATE INSURANCE COMPANY, Dorothy J.
Peoples, and Renildo Greene, Defendants-Appellees.

No. 185862.
|
Oct. 4, 1996.

Before: SAAD, P.J., and CORRIGAN and R.A. BENSON, *
JJ.

UNPUBLISHED

PER CURIAM.

*1 In this automobile negligence action, plaintiffs appeal
by right the order granting defendant Allstate Insurance
Company's motion for summary disposition under MCR
2.116(C)(8), and defendants Peoples' and Greene's motion
to quash service of process under MCR 2.105(J)(3). We
affirm in part and reverse in part, and remand for proceedings
consistent with this opinion.

Plaintiffs Joyce White and William Johnson first contend that
the circuit court erred in granting defendants Dorothy Peoples
and Renildo Greene's motion to quash service of process
under MCR 2.105(J)(3). We agree. This Court reviews de
novo a lower court's interpretation of a court rule as a question
of law. Frank v William A. Kibbe & Associates, Inc, 208
Mich.App 346, 350-351; 527 NW2d 82 (1995).

Service of process rules are intended to satisfy the due process
requirement that a plaintiff must give a defendant adequate
notice of the pendency of an action. Vincencio v. Ramirez,
211 Mich.App 501, 504; 536 NW2d 280 (1995); Hill v.
Frawley, 155 Mich.App 611, 613; 400 NW2d 328 (1986).
Under MCR 2.105(A)(2), an individual properly may serve a

defendant by sending a summons and a copy of the complaint
by registered or certified mail; however, the signed return
receipt from the mailing must be attached to a proof of
service made in compliance with MCR 2.104(A)(2). In this
case, defendants Peoples and Greene contend that they never
received a copy of the summons. We find no evidence to
demonstrate adequate proof of service.

On appeal, plaintiffs first attempt to establish adequate service
by presenting the return receipts from their certified mailing
of process to defendants. Although defendant Peoples signed
her return receipt, defendant Greene's receipt was signed
by a "T. Jackson." MCR 2.105(2) specifically states that
delivery by registered or certified mail must be restricted to
the addressee. Additionally, defendant Greene's receipt, as
stamped by the post office, is dated one year before plaintiffs
filed their complaint, leaving no doubt that service on Greene
was inadequate.

Plaintiffs next offer an affidavit in support of their proof of
service, following the methods outlined in MCR 2.104(A)
(2). Plaintiff Johnson, however, acted as the notary public
certifying his own affidavit and thus violated the principle
that a notary cannot certify an act in which he has a personal
interest. La Fromboise v. Porter, 261 Mich. 483, 485-486; 246
NW 193 (1933). Further, in the affidavit itself, plaintiffs state
that they sent defendants a copy of only the complaint. They
do not state that they sent a summons; therefore, service of
process was deficient.

Although service of process was not adequate under MCR
2.105(A)(2), under MCR 2.105(J)(3), an action should not
be dismissed due to improper service of process unless
the service failed to inform the defendant of the action. A
defendant acknowledges proper notice and waives service
of process objections by entering a general appearance
and contesting the cause of action on the merits. Penny
v ABA Pharmaceutical Co (On Remand), 203 Mich.App
178, 181; 511 NW2d 896 (1993). In this case, defendants
Peoples and Greene filed an appearance on December 1,
1994, and contested the cause of action on the merits in
their answer to plaintiffs' complaint by asserting affirmative
defenses. Therefore, defendants Peoples and Greene waived
any objections to proper service, and the circuit court erred
in granting defendants' motion to quash service of process.
We thus remand this case to the circuit court for further
proceedings.

White v. Allstate Ins. Co., Not Reported in N.W.2d (1996)

1996 WL 33356909

**\*2** Plaintiffs also contend that the circuit court erred in granting defendant Allstate's motion for summary disposition under MCR 2.116(C)(8). This Court reviews de novo a lower court's ruling on a motion for summary disposition. *Patsy Johnson v. Wayne Co,* 213 Mich.App 143, 148-149; 540 NW2d 66 (1995).

MCL 500.3030; MSA 24.13030 provides that in an original action brought by an injured person, an insurer shall not be made, or joined as, a party defendant. Here, plaintiffs named Allstate Insurance Company, and later attempted to name Allstate's claims representative, Mark Wegener, as defendants. Because the statute clearly precludes any mention of insurance in an original action brought by the injured party, the circuit court correctly held that plaintiffs had no cause of action against these defendants.

Reversed in part and affirmed in part. Remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

**All Citations**

Not Reported in N.W.2d, 1996 WL 33356909

---

**Footnotes**

\*      Circuit judge, sitting on the Court of Appeals by assignment.

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 17

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH,

        Plaintiff,

v.

SEAN COMBS,

        Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

                                    /

| | |
|---|---|
| Derrick Lee Cardello-Smith | David H. Fink (P28235) |
| MDOC # 267009 | Nathan J. Fink (P75185) |
| *Plaintiff, In Pro Per* | David A. Bergh (P83696) |
| Earnest C. Brooks Correctional Facility | Calder A.L. Burgam (P87203) |
| 2500 S. Sheridan Drive | FINK BRESSACK |
| Muskegon, MI 49444 | *Counsel for Defendant* |
| | 38500 Woodward Ave.; Ste. 350 |
| | Bloomfield Hills, MI 48304 |
| | Tel.: (248) 971-2500 |
| | dfink@finkbressack.com |
| | nfink@finkbressack.com |
| | dbergh@finkbressack.com |
| | cburgam@finkbressack.com |



                                                           /

## NOTICE OF LIMITED APPEARANCE

PLEASE TAKE NOTICE that, without waiving objection to personal jurisdiction, David H. Fink of Fink Bressack, pursuant to MCR 2.117(B)(2)(c), files this Notice of Limited Appearance on behalf of Defendant Sean Combs. The scope of this appearance is for the limited purpose of filing an Emergency Motion to Set Aside Default Judgment, an Emergency Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction and to seek dismissal of Plaintiff's claims.

Defendant Combs challenges personal jurisdiction and does not waive objection to personal jurisdiction by this limited appearance.

Respectfully submitted,

September 12, 2024

FINK BRESSACK

By: *Dann Fenn / by NJF*

David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com
*Attorneys for Defendant*

2

Exhibit 18

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH,

      Plaintiff,

v.

SEAN COMBS,

      Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

_____/

| | |
|---|---|
| Derrick Lee Cardello-Smith<br>MDOC # 267009<br>*Plaintiff, In Pro Per*<br>Earnest C. Brooks Correctional Facility<br>2500 S. Sheridan Drive<br>Muskegon, MI 49444 | David H. Fink (P28235)<br>Nathan J. Fink (P75185)<br>David A. Bergh (P83696)<br>Calder A.L. Burgam (P87203)<br>FINK BRESSACK<br>*Counsel for Defendant*<br>38500 Woodward Ave.; Ste. 350<br>Bloomfield Hills, MI 48304<br>Tel.: (248) 971-2500<br>dfink@finkbressack.com<br>nfink@finkbressack.com<br>dbergh@finkbressack.com<br>cburgam@finkbressack.com |



_____/

## NOTICE OF LIMITED APPEARANCE

      PLEASE TAKE NOTICE that, without waiving objection to personal jurisdiction, Nathan

J. Fink of Fink Bressack, pursuant to MCR 2.117(B)(2)(c), files this Notice of Limited Appearance

on behalf of Defendant Sean Combs. The scope of this appearance is for the limited purpose of

filing an Emergency Motion to Set Aside Default Judgment, an Emergency Motion to Dissolve

Temporary Restraining Order and/or Preliminary Injunction and to seek dismissal of Plaintiff's

claims.

Defendant Combs challenges personal jurisdiction and does not waive objection to personal jurisdiction by this limited appearance.

Respectfully submitted,

September 12, 2024

FINK BRESSACK

By:

David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com
*Attorneys for Defendant*

2

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE**

DERRICK LEE CARDELLO-SMITH,

        Plaintiff,

v.

SEAN COMBS,

        Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

---

| | |
|---|---|
| Derrick Lee Cardello-Smith<br>MDOC # 267009<br>*Plaintiff, In Pro Per*<br>Earnest C. Brooks Correctional Facility<br>2500 S. Sheridan Drive<br>Muskegon, MI 49444 | David H. Fink (P28235)<br>Nathan J. Fink (P75185)<br>David A. Bergh (P83696)<br>Calder A.L. Burgam (P87203)<br>FINK BRESSACK<br>*Counsel for Defendant*<br>38500 Woodward Ave.; Ste. 350<br>Bloomfield Hills, MI 48304<br>Tel.: (248) 971-2500<br>dfink@finkbressack.com<br>nfink@finkbressack.com<br>dbergh@finkbressack.com<br>cburgam@finkbressack.com |



**NOTICE OF LIMITED APPEARANCE**

    PLEASE TAKE NOTICE that, without waiving objection to personal jurisdiction, David

A. Bergh of Fink Bressack, pursuant to MCR 2.117(B)(2)(c), files this Notice of Limited

Appearance on behalf of Defendant Sean Combs. The scope of this appearance is for the limited

purpose of filing an Emergency Motion to Set Aside Default Judgment, an Emergency Motion to

Dissolve Temporary Restraining Order and/or Preliminary Injunction and to seek dismissal of

Plaintiff's claims.

Defendant Combs challenges personal jurisdiction and does not waive objection to personal jurisdiction by this limited appearance.

Respectfully submitted,

September 12, 2024

FINK BRESSACK

By:
David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com
*Attorneys for Defendant*

2

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE**

DERRICK LEE CARDELLO-SMITH,

        Plaintiff,

v.

SEAN COMBS,

        Defendant.

Case No. 2024-7362-NO

Hon. Anna Marie Anzalone



SEP . 2 2024

---

Derrick Lee Cardello-Smith
MDOC # 267009
*Plaintiff, In Pro Per*
Earnest C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
FINK BRESSACK
*Counsel for Defendant*
38500 Woodward Ave.; Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com

---

**NOTICE OF LIMITED APPEARANCE**

PLEASE TAKE NOTICE that, without waiving objection to personal jurisdiction, Calder A.L. Burgam of Fink Bressack, pursuant to MCR 2.117(B)(2)(c), files this Notice of Limited Appearance on behalf of Defendant Sean Combs. The scope of this appearance is for the limited purpose of filing an Emergency Motion to Set Aside Default Judgment, an Emergency Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction and to seek dismissal of Plaintiff's claims.

Defendant Combs challenges personal jurisdiction and does not waive objection to personal jurisdiction by this limited appearance.

Respectfully submitted,

September 12, 2024

FINK BRESSACK

By: _____
David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com
*Attorneys for Defendant*

2

Exhibit 19

## STATE OF MICHIGAN

# IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH,

Plaintiff,

v.

SEAN COMBS,

Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

FILED
39TH CIRCUIT COURT

SEP 12 2024

LENAWEE COUNTY CLERK

/

Derrick Lee Cardello-Smith
MDOC # 267009
*Plaintiff, In Pro Per*
Earnest C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
FINK BRESSACK
*Counsel for Defendant*
38500 Woodward Ave.; Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com

/

## DEFENDANT SEAN COMBS' MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

This is a frivolous lawsuit against a prominent businessman, based on obvious fabrications, filed by a convicted rapist and serial litigant with an overactive imagination and a thirst for fame. Defendant, who was never served with this lawsuit, learned about Plaintiff and this action for the first time three days ago, when media outlets reported that this Court had entered a $100 million default judgment against him. Had the Complaint been served (and it was not), it would nonetheless be subject to swift dismissal on the merits: If every (wholly implausible and obviously fabricated) allegation in the Complaint were true, the action would *still* be completely nonviable

because the statute of limitations on the claims asserted expired almost 17 years before the case was filed.

NOW COMES unserved Defendant, Sean Combs ("Mr. Combs" or "Defendant"), by and through his attorneys, and for his Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction under MCR 3.310(B)(5), states as follows:[1]

## INTRODUCTION

1. On or around June 10, 2024, Plaintiff filed a complaint alleging that Mr. Combs assaulted him more than twenty-five years ago (in 1997). Exhibit 1 – Complaint. Plaintiff has also filed a Pretrial Statement in which he describes a fantastical conspiracy between Mr. Combs and high-ranking Wayne County officials to cover up the supposed assault. Exhibit 2 – Pretrial Statement.

2. The Summons and Complaint in this Case has never been served on Mr. Combs. Exhibit 3 – Affidavit of Sean Combs dated September 11, 2024 ("Combs Aff.") ¶¶ 3-5.

3. Plaintiff is presently incarcerated at the Earnest C. Brooks Correctional Facility in Muskegon Michigan for kidnapping and criminal sexual conduct offenses.[2]

4. Defendant is an internationally-known recording artist and businessman, frequently known as Diddy. He resides in Miami, Florida. Exhibit 3 - Combs Aff. ¶ 12.

---

[1] This Court lacks personal jurisdiction over Mr. Combs. In filing this Motion and the accompanying Motion to Dissolve the Temporary Restraining Order, Mr. Combs does not waive, and to the contrary expressly preserve all defenses, including the defense of insufficient service of process, insufficient process, and lack of personal jurisdiction which defense shall be raised at the appropriate time pursuant to MCR 2.116(C)(1)-(3); See MCR 2.116(D)(1) (the time for raising a (C)(1) / (C)(3) defense is in a party's first dispositive motion filed in lieu of an answer or in the party's responsive pleading, whichever is filed first).

[2] <https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=267009> (accessed Sept. 12, 2024).

2

5. As explained in detail in the attached Brief and concurrently filed Motion to Set Aside Default, Plaintiff failed to effect service of the Complaint or the Injunction Motion upon Mr. Combs.

6. As explained in detail in the attached Brief, Defendant was never served with the Complaint, the Injunction Motion, or the Injunction Order.

## PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF

7. There are numerous reasons why the Injunctive Order was improper and must be dissolved.

8. **First**, as confirmed in the Affidavit of Sean Combs and as reflected on the face of the docket filings in this action, Mr. Combs was never served with a copy of the Complaint, the Injunction Motion, or the Injunction Order. Exhibit 3 – Combs Aff. ¶¶ 3-16.

9. **Second**, Plaintiff did not satisfy the procedural requirements for issuance of a temporary restraining order.

10. MCR 3.310(B)(1) mandates that

[a] temporary restraining order may be granted without written or oral notice to the adverse party or the adverse party's attorney **only if**

(a) it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued;

(b) the applicant's attorney certifies to the court in writing the efforts, if any, that have been made to give the notice and the reasons supporting the claim that notice should not be required; and

(c) a permanent record or memorandum is made of any nonwritten evidence, argument, or other representations made in support of the application.

3

11.     Plaintiff did not satisfy any of these requirements.

12.     Plaintiff did not attempt to argue that he would suffer "immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to, let alone set forth "specific facts . . . by affidavit or . . . verified complaint that immediate and irreparable injury, loss, or damage" would result from the delay required to effect notice upon Mr. Combs. Indeed, as set forth in detail *infra*, Plaintiff has failed to identify any injury, loss, or damage that could possibly be construed as "immediate" or "irreparably injury, loss, or damage" under Michigan law.

13.     **Third**, Plaintiff has not come close to establishing entitlement to injunctive relief as a matter of law.  In order to demonstrate entitlement to the extraordinary remedy of a preliminary injunction a plaintiff has the burden of showing (a) the plaintiff is likely to prevail on the merits; (b) the plaintiff will suffer irreparable harm in the absence of an injunction; (c) the harm to Plaintiffs absent an injunction outweighs the harm an injunction would cause to Defendant, and (d) that issuance of an injunction is in the public interest. *Detroit Fire Fighters Ass'n v Detroit*, 482 Mich 18, 34; 753 NW2d 579 (2008). Plaintiff has failed to make any of these showings.

14.     **(a) Plaintiff cannot prevail on the merits.** Plaintiff alleges that he was sexually assaulted by Mr. Combs on June 14, 1997. Exhibit 1 – Complaint ¶ 1. Plaintiff has claimed in other filings that Mr. Combs and high-ranking Wayne County officials conspired to cover up the alleged assault. Exhibit 2 – Pretrial Statement. The facially implausible allegations are completely fabricated. But even if Plaintiff's allegations were true (and they are not) the statute of limitations has run. Under MCL 600.5805(6), the statute of limitations for an action to recover damages sustained because of criminal sexual conduct is 10 years. Accordingly, the statute of limitations for Plaintiff's claim ran no later than June 14, 2007.

4

15. **(b) Plaintiff cannot demonstrate irreparable injury.** Plaintiff cannot demonstrate irreparable injury because he has an adequate remedy at law—he seeks money damages. It is well-settled that "economic injuries are not irreparable, as they can be remedied at law." *Acorn Bldg Components Inc v Local Union No 2194 of the Int'l Union*, 164 Mich App 358, 366; 416 NW2d 442 (1987). Plaintiff has not identified any threatened non-economic harms which might justify pre-judgment injunctive relief.

16. **(c) Plaintiff has failed to demonstrate that the harm to Plaintiff outweighs the harm an injunction would cause Mr. Combs.** The harm Plaintiff claims in his Injunction Motion is that an injunction is necessary to prevent Mr. Combs from "moving, avoiding, hiding, depriving this Plaintiff or this Court of Any compensation that the Plaintiff is or may be entitled to in this matter[.]" Exhibit 4 – Injunction Motion at 3. This conclusory allegation amounts to nothing more than a claim for money damages. Plaintiff has absolutely no interest in the Property subject to the Injunction Order. Moreover, Plaintiff does not (and cannot) demonstrate that Mr. Combs is insolvent, nor has he provided any other basis for pre-judgment injunctive relief. There is, quite simply, *no* harm at all that Plaintiff will suffer absent the requested injunctive relief, let alone harm that could conceivably outweigh the harm Mr. Combs would suffer from the wrongful restraint on his absolute right to transfer, sell, or otherwise dispose of his own valuable Property.

17. **(d) Plaintiff has failed to demonstrate that an injunction is in the public interest.** Plaintiff makes no argument *at all* in the Injunction Motion that an injunction is in the public interest (nor could he). See *Zastrow v City of Wyoming*, unpublished per curiam opinion of the Court of Appeals, issued Sept. 5, 2017 (Docket No. 331791), at *5 (attached as Exhibit 7) (upholding trial court determination the public interest factor weighed against issuing a preliminary injunction where "[t]he interests at stake in this case are largely personal to plaintiff").

5

## THE INJUNCTION ORDER IS DEFECTIVE

18.     As explained in the attached Brief, the Injunction Order must also be dissolved because it does not comply with the requirements of the Michigan Court Rules.

## THE ORDER VIOLATES MR. COMBS' CONSTITUTIONAL RIGHTS

19.     Because Plaintiff was not served with the Summons, Complaint, and the Injunction Motion before the Injunction Order was entered, the Injunction Order acts as an *ex parte* pre-judgment attachment of Defendant's real property.

20.     An *ex parte* pre-judgment attachment of real property to secure the payment of a potential judgment is unconstitutional, as it violates the Due Process rights of the party subject to attachment. See *Connecticut v Doehr*, 501 US 1, 11-18 (1991) (holding that statute that authorized pre-judgment attachment of tort defendant's property, without notice or hearing, was unconstitutional).

## THE ORDER IS IMPROPER BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT

21.     As explained in the attached Brief, the Injunction Order was not properly issued because this Court lacks personal jurisdiction over Defendant.

## THE ORDER IS IMPROPER BECAUSE PLAINTIFF HAS NO EQUITABLE INTEREST IN THE SUBJECT PROPERTY

22.     Plaintiff does not (and could not) allege that he has a legal or equitable interest in the property that is the subject of the Injunction Order; he merely argues he may obtain an enforceable money judgment against Defendant, which may be satisfied by execution against the property.

23.     The U.S. Supreme Court has held that equity does not authorize pre-judgment injunctive relief to prevent a defendant from selling or transferring assets in which the plaintiff

6

holds no lien or equitable interest. *Grupo Mexicano de Desarrollo SA v Alliance Bond Fund Inc*, 527 US 308, 318-33 (1999) (holding that district court erred in issuing a preliminary injunction barring defendants from selling assets pending adjudication of plaintiff's claim for money damages).

 WHEREFORE, for the reasons set forth above, and in the attached Brief in Support, Defendant requests that the Court enter an Order dissolving the Injunction Order and awarding any other relief that the Court finds equitable and just.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>September 12, 2024</td><td>FINK BRESSACK</td></tr>
</table>

By: _____
David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com
*Counsel for Defendant*

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE**

DERRICK LEE CARDELLO-SMITH,

        Plaintiff,

v.

SEAN COMBS,

        Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

_____/

Derrick Lee Cardello-Smith
MDOC # 267009
*Plaintiff, In Pro Per*
Earnest C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
FINK BRESSACK
*Counsel for Defendant*
38500 Woodward Ave.; Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com

_____/

**DEFENDANT'S BRIEF IN SUPPORT OF HIS MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER**

**INTRODUCTION AND STATEMENT OF FACTS**

      This is a frivolous lawsuit, based on obvious fabrications, filed by a convicted rapist with an overactive imagination against a prominent entertainer and businessman. Plaintiff is serving decades in prison after being convicted on numerous kidnapping and criminal sexual conduct charges and has a long history of filing frivolous *pro se* lawsuits. See *Cardello-Smith v Google LLC*, 2021 WL 4894700 at *2 (ED Mich 2022) (dismissing complaint and noting that "plaintiff

8

has at least four prior civil rights complaints that were dismissed by federal courts for being frivolous, malicious, or for failing to state a claim on which relief could be granted.") (attached as Exhibit 7). But no lawsuit could be more frivolous than this one. If every word in the Complaint were true the action would *still* be completely nonviable: the statute of limitations on the claims asserted expired almost 17 years before the case was filed.

It is not surprising that this serial litigant has targeted Defendant. Mr. Combs is an internationally-famous, Grammy-award-winning musician and record producer. Mr. Combs is also a highly-successful entrepreneur and businessman, with a publicly-reported net worth of approximately $1 billion. Plaintiff apparently hopes to use the frivolous claims asserted against Defendant to extract a settlement from Mr. Combs and trade upon Mr. Combs' fame to draw attention to himself.

Aside from being barred by the statute of limitations, Plaintiff's allegations could not be less believable. Plaintiff alleges that he was sexually assaulted in 1997, but he cannot keep his story straight as to where this occurred. In his Complaint, Plaintiff alleges that the assault occurred after he met Mr. Combs at a restaurant in Detroit. Exhibit 1 – Complaint ¶ 1. In his Pretrial Statement, Plaintiff alleges that the assault occurred in Adrian, Michigan. Exhibit 2 – Pretrial Statement ¶ 1. Aside from the alleged assault, Plaintiff alleges a fantastical conspiracy between Mr. Combs and numerous high-ranking Wayne County officials to force Plaintiff to sign an "agreement" to keep him from reporting the supposed assault. *Id.* In a narrative that is nearly impossible to follow, Plaintiff claims that, in exchange for signing this "agreement," "the Defendant would keep the Plaintiffs Financial Investment of $150,000.00 back in 1997 for a total of 49% of the Value of all Holdings, Property, Merchandise, Assets, finances, investments, investment returns, all recordings, titles, deeds, anything in checking accounts, savings accounts

and other areas with the money given to Defendant by Plaintiff in 1997 to not be collected until the 30 year end[.]" *Id.* Plaintiff does not (and cannot) explain why he would "give" Mr. Combs $150,000.00. Nor does Plaintiff explain why Mr. Combs, who had risen to international fame by 1997, would trade 49% of his net worth for an "investment" of $150,000.00. Plaintiff likewise offers no explanation as to where he obtained the $150,000.00 he supposedly "invested" with Mr. Combs in 1997, at which time Plaintiff was employed as a bartender. Exhibit 1 – Complaint ¶ 1. Plaintiff has also contends that then-Recorders Court Judge Kym Worthy threatened that if Plaintiff reported the purported assault by Defendant, then she would to "put multiple rapes on [Plaintiff] like [she] did other men[.]" Exhibit 9 – "Police Report."[3]

Plaintiff filed the Complaint on or around June 10, 2024 and never effected service on the Defendant.[4] On or around August 2, 2024, Plaintiff filed a document titled "Motion for Temporary Restraining Order and/or a Preliminary Injunction to Stop all Sales of Property and Assets Attached to or Involved with Said Property Based on Interest of Plaintiff and Plaintiffs Connections to Defendants Sexual Assault of Plaintiff Derrick Lee Cardello-Smith Requiring a Preliminary Injunction and/or a Temporary Restraining Order" (the "Injunction Motion"). Exhibit

---

[3] This supposed "police report" and other documents submitted to the Court by Plaintiff appear to be blatant forgeries.

[4] Plaintiff was required to serve Defendant process under MCR 2.105. Service of process may be made on a nonresident individual by personally serving the defendant or "sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail." MCR 2.105. Plaintiff did neither. While Plaintiff filed a purported "verification of certified-restricted-delivery as addressed mail," the listed address was not Defendant's primary residence, and the return receipt was not signed by Defendant. Because of Plaintiff's failure to adequately complete service of process, Defendant did not receive notice of this lawsuit until September 9, 2024 when this Court's order of Default Judgment made national news. Exhibit 3 – Combs Aff. ¶¶ 3-16.

10

4 – Injunction Motion. The Injunction Motion was filed with a Proof of Service indicating that Plaintiff served Defendant "by First Class mail to the Defendant at his Place of Residence[.]" Exhibit 5 – Proof of Service. However, no Certified Mail return receipt was attached to the Proof of Service. *Id.* Moreover, the address to which Plaintiff claimed to have sent the Injunction Motion is *not* Mr. Combs' primary residence. Exhibit 3 – Combs Aff. ¶¶ 11-12 (confirming Mr. Combs resides in Miami, Florida). Neither the Complaint, nor the Injunction Motion, were served upon Defendant prior to the August 7, 2024 hearing on the Injunction Motion. *Id.* ¶¶ 3-16.

On August 7, 2024, the Court entered an Order granting Plaintiff's Injunction Motion and enjoining Defendant:

> for a period of 90 days from the Sale, Transfer or Exchange, Trade or Transaction of Title or Deed to the Property listed as the address and placed on the market by defendants for the amount of $70,000,000,000.00 (Seventy-Million Dollars) and this property and estate belonging to or connect to defendant SEAN COMBS shall cease and desist any and all trades, transactions or otherwise Stop the Process of any further actions on this property being continued and shall have immediate effect.

Exhibit 6 – Injunction Order. The Injunction Order states that "THE PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER IS **GRANTED**." *Id.* (emphasis in original). [5] Accordingly, it is not clear whether the Injunction Order was entered as a temporary restraining order, or as a preliminary injunction. Whether entered as a temporary restraining order or as a preliminary injunction, Plaintiff was not entitled to injunctive relief because he failed to make the requisite showings under either standard. Additionally, regardless of the standard under

---

[5] That ambiguity in and of itself renders the Injunction Order deficient. See MCR 3.310(C)(2) (providing that an order granting a temporary restraining order or preliminary injunction "must be specific in its terms.").

which it was entered, the Injunction Order is facially defective. The Injunction Order should be immediately dissolved.

## LAW AND ARGUMENT

### I.    Legal Standard

Under MCR 3.310(B), this Court may grant a temporary restraining order when "it clearly appears from specific facts shown . . . by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice . . . ."

In order to demonstrate entitlement to a preliminary injunction, Plaintiff must show (i) that he is likely to prevail on the merits of his claim; (ii) that he will, in the absence of an injunction, suffer irreparable harm; (iii) that he will be harmed more in the absence of an injunction than Defendant will be harmed if the injunction issues (*i.e.*, the balance of harm weighs in favor of Plaintiff); and (iv) that it is in the public interest to issue an injunction. *Michigan Coal of State Emp Unions v Michigan Civil Serv Comm'n*, 465 Mich 212, 225; 634 NW2d 692 (2001).

### II.    Plaintiff is Not Entitled to a Temporary Restraining Order

Under MCR 3.310(B), Plaintiff was required to support his request for a temporary restraining order with an affidavit or a verified complaint. Plaintiff did not do so. Instead, he supported his request with an unverified Complaint which was frivolous on its face—seeking relief for a cause of action which expired 17 years ago.

Plaintiff was also required to demonstrate that he was at risk of "immediate and irreparable injury, loss, or damage" absent entry of a temporary restraining order. Plaintiff made no such showing. To the extent that Plaintiff's Injunction Motion is intelligible, he asks the Court to grant a temporary restraining order to prevent Defendant from selling one of his residences "because it

12

is being done so for the sole purpose of depriving this Plaintiff of any monetary judgement that would be entered in [his] favor[.]" Exhibit 4 – Injunction Motion. In essence, Plaintiff asks this Court to enjoin the sale of Mr. Combs' property because Plaintiff is concerned that he will not be able to collect on a theoretical future money judgment. Setting aside the fact that Plaintiff is absolutely not entitled to judgment on his frivolous claims, his purported basis for relief does not, as a matter of law, demonstrate a risk of irreparable harm. "[T]o establish irreparable injury, the moving party must demonstrate a noncompensable injury for which there is no legal measurement of damages or for which damages cannot be determined with a sufficient degree of certainty." *Thermatool Corp v Borzym*, 227 Mich App 366, 377; 575 NW2d 334 (1998). Moreover, the "injury must be both certain and great, and it must be actual rather than theoretical." *Id*. In this lawsuit, Plaintiff seeks money damages. Because his alleged injuries can be redressed with money damages, Plaintiff has failed to demonstrate a risk of irreparable injury. *Alliance for Mentally Ill of Mich v Dep't of Community Health*, 231 Mich App 647, 664; 588 NW2d 133 (1998).

The harm that Plaintiff claims is also entirely speculative. Plaintiff asks the Court to assume that he will one day obtain a substantial monetary award on a facially-implausible claim which is barred by the statute of limitations, and, based on that assumption, he asks the Court to enjoin Mr. Combs from selling a significant piece of real estate because Plaintiff fears that the sale of that property could somehow impair his ability to collect on this theoretical future judgment. Plaintiff provides no evidence to support his speculation that Mr. Combs would be insolvent in the extremely unlikely event that Plaintiff is able to obtain a judgment on his frivolous claims.

13

**III.   Plaintiff is Not Entitled to a Preliminary Injunction**

   a.   <u>Plaintiff is Not Likely to Prevail on the Merits</u>

Plaintiff fails to make any argument that he is likely to prevail on the merits in his Injunction Motion and he has produced no credible evidence to corroborate his fanciful claims. He has therefore failed to carry his burden. From the face of the Complaint, it is clear that Plaintiff cannot prevail on the merits because his claim is barred by the statute of limitations. Plaintiff alleges that he was sexually assaulted by Mr. Combs on June 14, 1997. Exhibit 1 – Complaint ¶ 1. Even if Plaintiff's inconsistent, incoherent, and implausible allegations were true (and they are not) the statute of limitations has run. The statute of limitations for an action to recover damages sustained because of criminal sexual conduct is 10 years. MCL 600.5805(6). The statute of limitations for the claim alleged ran no later than June 14, 2007, nearly 17 years before this case was filed.

   b.   <u>Plaintiff has Not Demonstrated Irreparable Injury</u>

As discussed above, Plaintiff cannot demonstrate a risk of irreparable injury because his alleged injuries can be redressed by money damages. "[T]o establish irreparable injury, the moving party must demonstrate a noncompensable injury for which there is no legal measurement of damages or for which damages cannot be determined with a sufficient degree of certainty." *Thermatool Corp*, 227 Mich App at 377. Plaintiff has not identified any threatened non-economic harms which might justify pre-judgment injunctive relief.

   c.   <u>The Balance of the Harms Does Not Favor Plaintiff</u>

The harm caused by the entry of the Injunction Order falls only on Mr. Combs. While the Injunction Order is incomprehensible, it purports to restrict Mr. Combs' disposition of property that he owns and in which Plaintiff has no equitable interest or lien. Plaintiff does not even allege

14

(nor could he) that the sale of that property would render Mr. Combs insolvent. As such, there is literally *no harm* that Plaintiff could suffer from dissolution of the Injunction Order.

       d.   The Public Interest Militates Against Injunctive Relief

Plaintiff offers no argument that the public interest favors entry of the Injunction Order. It is plain that the public interest does not support the entry of an onerous injunction supported only by the allegations of a convicted felon, known to be a serial litigant who has brought multiple frivolous lawsuits and seeking to recover damages for personal injury. *See Zastrow v City of Wyoming*, unpublished per curiam opinion of the Court of Appeals, issued Sept. 5, 2017 (Docket No. 331791), 2017 WL 3878983, at *5 (attached as Exhibit 7) (public interest factor weighed against issuing a preliminary injunction where "[t]he interests at stake in this case are largely personal to plaintiff").

## IV.   The Injunction Order is Facially Defective

The Injunction Order must also be dissolved because, whether it was entered as a temporary restraining order or as a preliminary injunction, it does not comply with the Michigan Court Rules. MCR 3.310(C)(1) requires that an order granting a temporary restraining order or preliminary injunction "set forth the reasons for its issuance[.]" MCR 3.310(C)(2) requires that an order granting a temporary restraining order or preliminary injunction "must be specific in its terms." MCR 3.310(C)(3) requires that an order granting a temporary restraining order or preliminary injunction "must describe in reasonable detail, and not by reference to the complaint or other document, the acts restrained."

The Injunction Order does not comply with any of these requirements. The Injunction Order does not set forth the reasons for its issuance. The Injunction Order purports to enjoin Mr. Combs from "Sale, Transfer or Exchange, Trade or Transaction of Title or Deed the Property

15

listed as the address and placed on the market by defendants for the amount of $70,000,000,000.00 (Seventy-Million Dollars)[.]" Exhibit 6 – Injunction Order. The Injunction Order does not specifically identify the property to which it applies. Instead, the Injunction Order vaguely describes a property "placed on the market" for either $70 billion (70 followed by 9 zeros before the decimal point) or $70 million (as it is described in text). *Id.*

The Injunction Order also enjoins not Mr. Combs, but "this property and estate," ordering "**this property and estate** belonging to or connect to defendant SEAN COMBS" to "cease and desist any and all trades, transactions or otherwise Stop the Process of  any further actions on this property being continued[.]" *Id.* (emphasis added). This incoherent language (which the Plaintiff drafted, and the Court apparently adopted without modification) clearly does not "describe in reasonable detail . . . the acts restrained[.]" Instead, Mr. Combs, and the public, is left to guess what the Injunction Order requires and to whom it applies. *See Walters v Norlin*, 123 Mich App 435, 440; 332 NW2d 569 (1983) (interpreting identical provision of GCR 1963 718.9 as requiring that "injunctions are to be specific and narrowly construed.").

Finally, to the extent that the Injunction Order was entered as a temporary restraining order, it is defective because it states that it shall remain in effect for 90 days. The duration of a temporary restraining order may not exceed 14 days absent circumstances not present here. MCR 3.310(B)(3).

## V.     The Injunction Order Violates Mr. Combs' Constitutional Rights

The Injunction Order was entered without proper notice and before any judgment was entered against Mr. Combs. The Injunction Motion is therefore an *ex parte* pre-judgment attachment of Mr. Combs' property. The U.S. Supreme Court has held that *ex parte* pre-judgment attachment of real property to secure the payment of a potential judgment is unconstitutional, as it

16

violates the Due Process rights of the party subject to attachment. See *Connecticut v Doehr*, 501 US 1, 11-18 (1991) (holding that statute that authorized pre-judgment attachment of tort defendant's property, without notice or hearing, was unconstitutional).

## VI.   The Injunction Order is Improper Because Plaintiff has No Equitable Interest in the Property

Additionally, equity does not authorize the relief granted in the Injunction Order. Plaintiff does not (and could not) allege that he has any legal or equitable interest in the property subject to the Injunction Order; rather, he claims entitlement to injunctive relief on the theory that he may someday obtain an enforceable judgment for money damages against Mr. Combs, which might be satisfied by execution against the property. The U.S. Supreme Court has held that equity does not authorize pre-judgment injunctive relief to prevent a defendant from selling or transferring assets in which the plaintiff holds no lien or equitable interest. *Grupo Mexicano de Desarrollo SA v Alliance Bond Fund Inc*, 527 US 308, 318-33 (1999) (holding that district court erred in issuing a preliminary injunction barring defendants from selling assets pending adjudication of plaintiff's claim for money damages).

## VII.   The Injunction Order is Improper Because the Court Lacks Personal Jurisdiction Over Mr. Combs

Without proper service, the court lacks personal jurisdiction over a defendant.  A court "cannot adjudicate [an *in personam*] controversy without first having obtained jurisdiction [over the] defendant by service of process . . . ." *Eisner v Williams*, 298 Mich 215, 220; 298 NW 507 (1941). Personal jurisdiction over a defendant is necessary to "satisfy the due process requirement that a defendant be informed of an action by the best means available under the circumstances." MCR 2.105(J)(1). "The fundamental requisite of due process of law is the opportunity to be heard," yet, "[t]his right to be heard has little reality or worth unless one is informed that the matter is

pending . . . ." *Mullane v Cent Hanover Bank & Trust Co*, 339 US 306, 314 (1950) (citation and internal quotation marks omitted).

MCR 2.105(A) describes the requirements to perfect service on a nonresident individual:

Individuals. Process may be served on a resident or nonresident by (1) delivering a summons and a copy of the complaint to the defendant personally; or (2) sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the *defendant acknowledges receipt* of the mail. A copy of the return receipt *signed by the defendant* must be attached to proof showing service under subrule (A)(2).

MCR 2.105(A) (emphasis added). Plaintiff did not serve Mr. Combs in compliance with MCR 2.105(A).

On the face of the return receipt Plaintiff filed with the Court, it is clear that the document was not signed by Mr. Combs as required by 2.105(A)(2). Ex 8 – Return of Service. Nor did Mr. Combs authorize anyone to sign a document acknowledging receipt on his behalf. Exhibit 8 – Return of Service; Exhibit 3 – Combs Aff. ¶¶ 8-9. In fact, Mr. Combs did not learn of Plaintiff's lawsuit until the media reported this Court's Default Judgment order on September 9, 2024. Exhibit 3 – Combs Aff. ¶ 13. As explained in the Affidavit of Mr. Combs, the address identified on the Proof of Service is not Mr. Combs' current primary address; Mr. Combs did not receive the Summons and Complaint; and the signature on the return receipt is not his signature. *Id.* ¶¶ 3-11. *White v Allstate Ins. Co*, unpublished per curiam opinion of the Court of Appeals, issued Oct. 4, 1996, Docket No. 185862, at *1 (service pursuant to MCR 2.105(A)(2) was deficient where signed return receipt was signed by a person other than the defendant). *See also Richard v Bouchard,* No. 12-12516, 2013 WL 4417440, at *2 (ED Mich, Aug. 15, 2013) (same) (both cases attached as Exhibit 7).

18

The fact that Plaintiff never completed service of process is further supported by inconsistent dates on which Plaintiff reported serving Mr. Combs. A signed "Proof of Service" filed by Plaintiff and appended to his Complaint states that Plaintiff "mailed one copy of this pleading" on May 31, 2024—ten days before Plaintiff filed his Complaint and was issued a Summons by this Court. Exhibit 5 – Proof of Service; Exhibit 1 – Complaint. By itself, this fact proves that Plaintiff did not perfect service of process, since process requires that Plaintiff serve both a court-issued summons and a copy of the as-filed complaint. MCR 2.105(A). Both documents would have been impossible to obtain prior to filing the Complaint.

While Plaintiff stated in his Proof of Service that he mailed the Summons and Complaint on May 31, 2024, in a separate "Return of Service" filing Plaintiff on August 1, 2024, he claimed that service was completed on July 6, 2021. Exhibit 8 – Return of Service. Plaintiff does not explain how or why he allegedly attempted to serve Mr. Combs with process three years before filing his Complaint with the Court. Elsewhere he represents that service was made on July 6, 2024. In any event, whether Plaintiff allegedly mailed papers in July 2021, May 2024, or July 2024 is irrelevant because what is abundantly clear is that Mr. Combs never received them. As this Court did not have personal jurisdiction over Defendant, the Injunction Order was improperly entered. See *Niemeeta v Teakle*, 210 Mich 590, 593; 178 NW 37 (1920) (noting that a court may "by its judgment or decree, compel [a party] to do equity in relation to lands located without its jurisdiction" only "where it has jurisdiction of the proper parties[.]").

## CONCLUSION

For the foregoing reasons, Mr. Combs asks that the Court enter an Order dissolving the

Injunction Order and awarding any other relief that the Court finds equitable and just.

Respectfully submitted,

September 12, 2024

FINK BRESSACK

By: _____
David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com
*Counsel for Defendant*

20

## TABLE OF EXHIBITS

Exhibit 1 – Complaint

Exhibit 2 – Pretrial Statement

Exhibit 3 – Affidavit of Sean Combs

Exhibit 4 – Injunction Motion

Exhibit 5 – Injunction Motion Proof of Service

Exhibit 6 – Injunction Order

Exhibit 7 – Unpublished Cases

- *Zastrow v City of Wyoming*, unpublished per curiam opinion of the Court of Appeals, issued Sept. 5, 2017 (Docket No. 331791), 2017 WL 3878983.

- *Cardello-Smith v Google LLC*, 2021 WL 4894700 (ED Mich, 2022).

- *Richard v Bouchard*, 2013 WL 4417440 (ED Mich, 2013).

- *White v Allstate Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued Oct. 4, 1996 (Docket No. 185862), 1996 WL 33356909.

Exhibit 8 – Return of Service

Exhibit 9 – Police Report

Exhibit 1

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

MR. DERRICK LEE CARDELLO-SMITH,#267009
PROBABLE CAUSE CONFERENCE LITIGATOR
    Plaintiff,                   Case No 2024-__7362__ -NO

Vs

                      Honorable:_____ **HONORABLE**
SEAN COMBS (SEAN PUFF DADDY COMBS)
AKA--SEAN P. DIDDY-AKA-DIDDY,   **ANNA MARIE ANZALONE**
BAD BOY RECORDS LABEL OWNER, FOUNDER,
AKA-PUFFY-P-DADDY. BAD BOY,
(DIDDY RUN THE CITY)
SHAWN COMBS-SHAWN PUFFY COMBS.
    Defendant(s),

_____/

FILED
39TH CIRCUIT COURT
JUN 1 0 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

COMPLAINT FOR PERSONAL INJURY
AND OTHER DAMAGES SEEKING MONETARY RELIEF AND JUDGMENT

    Now comes the Plaintiff, Derrick Lee Cardello-Smith Probable Cause Conference Litigator #267009, in the above cause pursuant to Michigan Complied Laws Governing Damages and Protections Against Personal injury and seeking to have Judgement Entered against the Named Defendants for Personal injury and Other Injuries related to the facts outlined and detailed within against the Defendant Sean Commbs and states the following Factors citing said damages that are being detailed and lodged against the Defendant Sean Combs.

JURISDICTIONAL STATEMENT

    This court has Jurisdiction to review this claim and subject-matter as the Plaintiff maintained a residence in L      : County at least six (6) months prior to incarceration and filing this action.

MANDATORY DISCLOSURE STATEMENT

    This plaintiff has filed 3 State Lawsuits. 2 Federal Lawsuits. Thee Civil Appeals and 3 Criminal Appeals.

DAMAGES SOUGHT

    Plaintiff seeks monetary damages in the amount of **$100,000,000.00 (ONE HUNDRED-MILLION DOLLARS)** against the defendant Sean Combs and seeks it in COMPENSATORY, PUNITIVE AND MONETARY DAMAGES INDIVIDUALLY AND OFFICIALLY.

(2)

## INJURY CLAIMS AGAINST SEAN COMBS-DEFENDANT

1. Defendant Combs did on or about June 14, 1997, in the City of Detroit, Michigan while this Plaintiff was employed as a Bartender at the Restaurant "Fishbones Rhythm Kitchen & Cafe" on Monroe & Brush and Was invited to attend a Gathering at the 'Holiday Inn" located in ____ ", MI where Defendant Combs had a social gathering and multiple women and other people were in attendance.

2. Plaintiff was excited to attend this gathering and did so, because this is Sean Puff Daddy Combs' "Bad Boys"!!!

3. Plaintiff had participated in and consumed alcohol with Mr. Combs and the ladies and other security, Puffy was schockingly cool and someone who seemed like a really decent normal guy....

4. Plaintiff Was astonished and so happy to be able to attend such a thing and the afterparty, wow..just amazing.

5. Plaintiff saw that there were at least 20 women present and 2 of the women wanted to go into the main suite/room and they walked in and Sean Motioned me to come with them while 2 guards stood out front...one was C-note "Terrell" and the one was Mike! and he said, have fun, but watch yourself with him! I said him who? He said, You will see!

6. As the night went on, the women were actually drinking and I was drinking more and they smoked some weed, I do not smoke weed but I was happy to be there, I mean I am in my 20's so I was in heaven...

7. I then started to get naked with the women and the next thing I know, we are all naked and Mr. Combs was Naked too and then, we were all participating in sexual activity, then, while I was engaged in performing oral sex on one of the ladies, Tanya! I felt a Hand stroke my left butt cheek and it was not soft, it was a mans hand and I looked up and saw that it was Mr. Combs... I was frozen with fear...I stopped and then needed to calm myself...so I got up and sat on the couch...the ladies were sexually into each other and I was just frozen and could not move...

8. I then went to get another drink and Sean asked me if I needed something else? I said no, and he said here, drink this one, and I thought it was another Glass of Jim Beam, so I took it because I had sat one down in the other room, and then I drank some more, and I stayed sitting there and began getting drowsy and started to pass out and then Sean Combs said to me.. I added a little something to it for you...I will get that from you anyway, one way or another.. I then passed out.

9. Hours later, I awakened to The women moaning and Mr. combs Penetrating one of of them with his Penis into her Anal Cavity



(3)

and then he saw me and said "I did this to you too!" Did you like it? I said what? I ran into the bathroom, checked myself and saw that I was bleeding and in pain, I ran out and left and never went back..

10. I contacted the Police about it and a report was taken and made, and then, I shut down and knew that I was never going to be able to tell anyone about this...I finally have been able to realize that I did nothing wrong.

12. It took years of Therapy in Prison to help me realize that this abuse coupled with the other abuse I suffered at by priests made me see that I was not the one who was wrong, but that my attacker is wrong and That I am a survivor, and I am not responsible for what has happened to me.

14. The defendant raped me! The Defendant sexually assaulted me! The defendant paid Detroit and Monroe Police Officers to keep it hidden and they hid it very very well...and have kept it hidden for many decades...but not anymore..I am a Victim of his Physical, Sexual, Psychological, emotional assaults he placed upon me when I did not deserve this kind of act or acts to be done upon me, and it is completely wrong what has transpired and it is horrible and he must be held to account for these horrific actions he committed upon me.

15. I am asking this Court to Enter Judgement against Mr. Combs because I have been the Victim of Sexual Assault by this man and it is contrary to Michigan Complied Law 750.520 and it violated Federal Laws as well as that he has left different states to do this act...

I ask for a total of $100,000,000.00 (One Hundred Million Dollars to be entered against this Defendant for the Personal injury his crime has placed upon my life and upon me, because it is horrible and it is wrong what he has done and it is something that he must be held accountable for...

I ask for Judgement in my Favor and I ask that this is done immediately.

### RELIEF REQUESTED

Wherefore, Plaintiff Prays this court will enter judgement in favor of the Plaintiff for the amount of $100,000,000.00 (One-hundred Million Dollars) in Compensatory, Punitive, Monetary Damages and Grant any further relief this Court deems necessary and appropriate.

Respectfully Yours,                                          May 31, 2024



Mr. Derrick Lee Cardello-Smith #267009
Probable Cause Conference Litigator

(4)

Plaintiff in Pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444



Exhibit 2

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

DERRICK LEE CARDELLO-SMITH,#267009,
    Plaintiff,

                                            File No 2024-7362-NO
Vs

                                    Honorable Anna Marie Anzalone
SEAN COMBS, et al,
    Defendant,
_____/

        PRE-TRIAL STATEMENT OF DERRICK LEE CARDELLO-SMITH

```
           FILED
} 39TH CIRCUIT COURT
      AUG 2 2 2024
LENAWEE COUNTY CLERK
    ADRIAN, MICHIGAN
```

    Plaintiff hereby provides this court with the PRE-TRIAL STATEMENT OF
DERRICK LEE CARDELLO-SMITH and states the following in order of the courts
requirements.

    1. BRIEF STATEMENT OF THEORY OF CASE:   Plaintiff Derrick Lee Cardello-
Smith was Drugged, Sexually Assaulted by the Defendant Sean Combs..
Plaintiff was also forced to not get his Money back from investments by the
Plaintiff to the Defendant, Plaintiff was forced to sign an Agreement
between Defendant, Plaintiff and Other Persons in Law Enforcement or
Plaintiffs Family would be Killed by the Defendant and his Law Enforcement
connections, and Plaintiff was forced to Wait almost 30 years to have his
end of the agreement to be brought to the forefront, and the Sexual assault
happened in the City of Adrian, Michigan, then forced to enter into an
agreement for remaining silent and in exchange for it, the Defendant would
keep the Plaintiffs Financial Investment of $150,000.00 back in 1997 for a
total of 49% (Forty-Nine-Percent) of the Value of all Holdings, Property,
Merchandise, Assets, finances, investments, investment returns, all
recordings, titles, deeds, anything in checking accounts, savings accounts
and other areas with the money given to the Defendant by Plaintiff in 1997
to not be collected until the 30 year end, or, unless others came forward
with any sexual assault claims, or other crimes committed by the defendant
or accused of having been committed by the defendant and any settlements
made to any person, place, agency, building, entity, company, corporation
or other that Defendant enters into with said persons, companies or other,
then Plaintiff will have the ability to Sue for the amount or One-hundred
Million Dollars to Four Hundred Million Dollars, and get returns on the
investments that were all made by the Plaintiff and then upheld and entered
into by other persons, including the names of persons on the Witness List
to be presented by the Plaintiff....Plaintiff was violated, drugged, and
raped by the defendant, and is in fact guilty of violating this Plaintiff
and then keeping the money from this Plaintiffs investment and then a cover
up was done by Detroit Police, Adrian, Lenawee Police, Kym Worthy, and
other law enforcement officials to not only place this Plaintiff in the
position of not being believed or heard, but it was actually covered up on
many different levels, and it should be brought to trial and this was done
so by the full knowledge of Defendant Sean Combs who sexually violated this
Plaintiff and then, Defendants Allies and Friends in Office in various
areas, Framed this Plaintiff and Placed this Plaintiff out of Society for

1.

the purpose of operating their criminal enterprise, with an empire, built on Rape and then placing the Victim in Prison to cover up that Rape and Continue Making Money on the rape(s).

2. <u>REQUESTED ADMISSIONS OF FACT</u>: Plaintiff will have the requests for Admissions of Fact and shall provide it to the Court and Defendants which will be to the truth of the matter and to the Signing of the Documents for the Injury caused to this Plaintiff by the defendant and his people.

3. <u>REQUESTED STIPULATIONS</u>: Plaintiff will ask the defendants to stipulate to the agreements that will be provided to the court, based on the Plaintiffs Currently Location.

4. <u>TIME REQUESTED FOR DISCOVERY</u>:  <u>20 Days</u>   This is due to the Plaintiff having to wait on the US Mail and the Prison Staff always wanting to transfer the Plaintiff and interfere with the Plaintiffs incoming and outgoing mail and delaying it, and other factors that will interfere with it.

5. <u>ESTIMATED TIME REQUIRED FOR TRIAL</u>:  <u>10-20 Days</u>

<u>JURY TRIAL REQUESTED</u>

6. <u>SETTLEMENT POSSIBILITY</u>: Yes, there is a possibility of settlement with the defendant.

ALL CLAIMS ARISING OUT OF THE TRANSACTION OR OCCURRENCE THAT IS THE SUBJECT-MATTER OF THE ACTION HAVE BEEN JOINED AS REQUIRED BY MCR 2.203: <u>YES</u>

8. <u>OTHER MATTERS</u>:   ORDER THE NAMES OF THE PERSONS THAT SIGNED THE AGREEMENT WITH PLAINTIFF AND DEFENDANT TO REMAIN SEALED AND PROTECTED FOR THEIR OWN SAFETY AND SECURITY, AS PLAINTIFF HAS PROTECTED THEM FOR YEARS,.I would ask that the entire record is allowed to be made public and that nothing is sealed or stopped from being reviewed in this court at any time and that it is all allowed to be seen by anyone who wants to see it, all documents, facts and statements in this case, at a time to be made by the court, and upon completion of the entire case proceedings.

August 19, 2024

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in Pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

Exhibit 3

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE**

DERRICK LEE CARDELLO-SMITH,

        Plaintiff,

v.

SEAN COMBS,

        Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

_____/

| | |
|---|---|
| Derrick Lee Cardello-Smith<br>MDOC # 267009<br>*Plaintiff, In Pro Per*<br>Earnest C. Brooks Correctional Facility<br>2500 S. Sheridan Drive<br>Muskegon, MI 49444 | David H. Fink (P28235)<br>Nathan J. Fink (P75185)<br>FINK BRESSACK<br>*Counsel for Defendant*<br>38500 Woodward Ave.; Ste. 350<br>Bloomfield Hills, MI 48304<br>Tel.: (248) 971-2500<br>dfink@finkbressack.com<br>nfink@finkbressack.com |

_____/

**SEAN COMBS' AFFIDAVIT OF MERITORIOUS DEFENSE**

STATE OF NEW YORK     )
                             )
COUNTY OF NEW YORK    )

I, Sean Combs, being first duly sworn, depose and state as follows:

    1.     I am over the age of 18 and capable of testifying to the facts set forth in this Affidavit.

    2.     I make this Affidavit upon my own personal knowledge.

    3.     I was not personally aware of the above-captioned case (the "Case") until September 9, 2024, when I saw news coverage that a default judgment had been entered against me in the Case (the "Default Judgment").

1

4.      I never received the Summons and Complaint in this Case by certified mail.

5.      I never signed a copy of a return receipt acknowledging receipt of the Summons and Complaint in this Case.

6.      After learning about this lawsuit on September 9, 2024, I was informed that on the docket, there is a copy of a return of service for the certified mail through which the Summons and Complaint was purportedly mailed (the "Return of Service").  A copy of that document pulled from this Court's docket is attached as Exhibit A.

7.      The signature on the Return of Service (Exhibit A) is not my signature.

8.      I never signed a document acknowledging receipt of the Summons and Complaint in this Case.

9.      I never authorized anyone to sign a document acknowledging receipt of the Summons and Complaint in this Case.

10.     I never authorized anyone to accept service of the Summons and Complaint in this Case on my behalf.

11.     The address listed on the Return of Service (Exhibit A), 200 S. Mapleton Drive, Holmby Hills, Los Angeles, CA 90077 (the "Mapleton Drive Address"), is not my primary residence.

12.     I reside in Miami, Florida.

13.     I first learned about this Case on September 9, 2024, through news coverage reporting that the Court had entered a Default Judgment against me.

14.     Prior to September 9, 2024, I was not aware of the Case.

15.     Shortly after learning about this Case and about the Default Judgment on September 9, 2024, I also became aware for the first time on or about September 9, 2024 of the Motion for a

Temporary Restraining Order and Preliminary Injunction in the Case (the "Motion") and the subsequent Order granting that Motion (the "TRO"). Prior to September 9, 2024, I was not aware of the Motion or the TRO.

16.     I never personally received a copy of the Motion or the TRO.

17.     Immediately upon learning about the Case, the Motion and the TRO, my attorneys obtained a copy of the docket filings in this Case on September 10, 2024. I saw copies of the Summons and Complaint, Motion, Order, and Default Judgment only after my attorneys obtained copies on September 10, 2024.

18.     I have since reviewed the allegations in the Complaint in this Case.

19.     I do not know the plaintiff, Derrick Lee Cardello-Smith.

20.     I never assaulted the plaintiff, Derrick Lee Cardello-Smith.

21.     I never paid Detroit Police Officers or Monroe Police Officers (or anyone else) to keep any assault "hidden."

22.     I never visited the plaintiff, Derrick Lee Cardello-Smith, in prison.

23.     I deny all of the allegations set forth in the Complaint in this Case insofar as they pertain to me.

**FURTHER AFFIANT SAYETH NOT.**

SEAN COMBS

Subscribed and sworn before me on
this 12th day of September 2024.

_____
02AG6430932 Notary Public
New York County, _____
acting in New York County, _____
My commission expires on: 03 / 28 / 2026

3

# EXHIBIT A

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY
CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH,#267009,
    Plaintiff,

                                          Case No 2024-7362-NO
                                        Hon. Anna Marie Anzalone

SEAN COMBS, P.DIDDY, et al
  Defendant(s)
_____/

RETURN OF SERVICE EXECUTED UPON
DEFENDANT SEAN COMBS ON JULY 7, 2024
WITH SERVICE BEING CONDUCTED IN COMPLIANCE WITH COURT RULE

Plaintiff Derrick Lee Cardello-Smith hereby swear and declare that
the Plaintiff has effected the Service of the Summons and
Complaint upon Defendant Sean Combs at the address listed herein
on record and and service was executed with Return of Service on
7/6/21 and that this service is supported and proven by this
Plaintiffs submission of the Signature Card showing that service
has been made by the rule of service.

Please place this submission on the Court docket and notify me
when it has been placed.

Respectfully Yours,                            July 25, 2024

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in Pro Per
2500 S. Sheridan Drive
Muskegon, MI 49444

FILED
39TH CIRCUIT COURT
AUG - 1 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

See attached
Return Receipt
Restricted Delivery
to Defendant

Cardello-Smith-v-Combs 24-7362 NO



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Sean Combs
   200 S. Mapleton Drive
   Holmby Hills-Los Angeles
   California, 90077
   Summons & Complaint
   24-7362 NO

9590 9402 7768 2152 1823 79

2. Article Number (Transfer from service label)
7011 2000 0001 1878 8806

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                          □ Agent
                                           □ Addressee
B. Received by (Printed Name)        C. Date of Delivery
                                           7/6/24

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
□ Adult Signature                  □ Priority Mail Express®
□ Adult Signature Restricted Delivery  □ Registered Mail™
☑ Certified Mail®                  □ Registered Mail Restricted
□ Certified Mail Restricted Delivery    Delivery
□ Collect on Delivery              ☑ Signature Confirmation™
□ Collect on Delivery Restricted Delivery  ☑ Signature Confirmation
□ Insured Mail                        Restricted Delivery
□ Insured Mail Restricted Delivery
  (over $500)                      Return Receipt Requested

Domestic Return Receipt

---

USPS TRACKING #

9590 9402 7768 2152 1823 79

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

FILED
39TH CIRCUIT COURT
AUG - 1 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

United States
Postal Service

C40T

• Sender: Please print your name, address, and ZIP+4® in this box•

Derrick Lee Cardello-Smith
267009-C-40T0P
E.C. Brooks Corr. Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Sean Combs
200 S. Mapleton Drive
Holmby Hills-Los Angeles
California, 90077

Summons & Complaint

9590 9402 7768 2152 1823 79

2. Article Number (Transfer from service label)
7011 2000 0001 5978 8880

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
7/6/21

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Return Receipt Requested

Domestic Return Receipt

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

July 25, 2024

Office of the Clerk
39th Circuit Court-Lenawee County
425 N. Main Street
Adrian, MI 49221

Re: Derrick Lee Cardello-Smith #267009 vs Sean Combs
Case No 24-7362-NO

Dear Clerk:

Enclosed for filing in the above cause are the following documents:

1. RETURN OF SERVICE EXECUTED UPON DEFENDANT SEAN COMBS ON 7-6-24.
2. VERIFICATION OF CERTIFIED-RESTRICTED-DELIVERY AS ADDRESSED MAIL

Please place this pleading on the courts docket and notify the Plaintiff of its processing.

Thank you again.

Derrick Lee Cardello-Smith

FILED
39TH CIRCUIT COURT

AUG - 1 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

Exhibit 4

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR THE COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH #26.7009,

    Plaintiff,

Vs                         Case No 24-736.2-NO

                    HONORABLE ANNA MARIE ANZALONE

SEAN COMBS (SEAN PUFF DADDY COMBS)
a/k/a/SEAN P. DIDDY, a/k/a/ DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
a/k/a/ PUFF-P-DADDY, BAD BOY,
(DIDDY RUN THE CITY),
SHAWN COMBS, a/k/a/ SHAWN PUFFYCOMBS,
  Defendants,

_____/



FILED
39TH CIRCUIT COURT
AUG - 2 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

PLAINTIFFS MOTION FOR A TEMPORARY RESTRAINING ORDER
AND/OR A PRELIMINARY INJUNCTION TO STOP ALL
SALES OF THE PROPERTY AND ASSETS ATTACHED TO
OR INVOLVED WITH SAID PROPERTY BASED ON INTEREST OF
PLAINTIFF AND PLAINTIFFS CONNECTIONS TO DEFENDANTS SEXUAL ASSAULT OF
PLAINTIFF DERRICK LEE CARDELLO-SMITH REQUIRING
A PRELIMINARY INJUNCTION AND/OR A TEMPORARY RESTRAINING ORDER

    Now comes the Plaintiff, Derrick Lee Cardello-Smith, in pro per and in the above cause pursuant to MCR 3.310 (A)(B)(C) and hereby moves this court to enter an order to GRANT A PRELIMINARY INJUNCTION AND/OR TEMPORARY RESTRAINING ORDER to enjoin the Defendants, from any further sales, transactions, deals, negotiations of other matters involving the sales, delivery, title, deeps or any transaction whatsoever for the MANSION, PERSONAL PROPERTY, HOLDINGS, ASSETS, HOUSE, REAL PROPERTY, LAND OR OTHERWISE HELD IN THE POSSESSION OF OR CURRENT NAME OF THE DEFENDANT SEAN COMBS and the Sale or Transfer of Title and Deed From Sean Combs or any person, party, agency, actor, or recipient of the property, transfer of deed, titled or otherwise regarding or pertaining to the Property, estate or anything placed on, connected to, near or as part of the Property that is located at the address herein of:

                200 S. MAPLETON DRIVE
      HOLMBY HILLS, LOS ANGELES, CALIFORNIA  90077

This REquest for the restraining order is needed for the sole purpoese of what is contained within the BRIEF IN SUPPORT.

Thank you for your time in this matter.

Respectfully Yours,                                        July 19, 2024

Mr. Derrick Lee Cardello-Smith
Plaintiff in Pro Per
#26.7009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

## BRIEF IN SUPPORT

The reasons that the Plaintiff needs and requests that this court grant Plaintiff a Preliminary Injunction and/or temporary restraining order to enjoin the Defendant from any further action on the sale and/or transfer of title for the Estate and Property listed as Defendants are Address and Residence are as follows:

1. The Property located at said defendants address is the result of multiple State and Federal Crimes that have been committed by the Defendant upon the Plaintiff and it is the result of an ongoing pattern of criminal behavior of Sexual Assaults that this Defendant Profited from.

2. The Property and Estate in question is valued at over $140,000,000,00 (One Hundred Forty-Million Dollars).

3. The Defendant has immediately placed the said property on the Market for Sale at an asking price of $70,000,000,.00 (Seventy-Million Dollars).

4. The Property, Sale, Transfer of Title or Deed should not take place because it is being done so for the sole purpose of depriving this Plaintiff of any monetary judgement that would be entered in favor of the Plaintiff in the event this matter went to a Jury Trial.

5. The Property has been placed on the market by defendant combs for the asking price the very week this Action was Served upon Defendant Combs and It is all done to hide, avoid, and deprive this Plaintiff and Rape Victim/Survivor or Any Compensation should the Court rule in favor of this Plaintiff for the Crimes Committed upon this Plaintiff by the Defendant.

6. A Preliminary Injunction/Temporary Restraining Order would ensure that the Defendants are not moving, avoiding, hiding, depriving this Plaintiff or this Court of Any compensation that the Plaintiff is or may be entitled to in this matter on the grounds that the defendant is seeking to avoid paying this plaintiff the damages sought in this action for his crimes committed upon this plaintiff as the Police have Concluded has been done in this case at bar.

7. Plaintiff believes and can support that the defendant has officers, agents, servants, employees and attorneys and those in active concert and participation in the transfer, sale and negotiations of the property at issue in this matter to which was also promised to this Plaintiff by the defendant and in front of witnesses in this matter who will verify the terms of the sale of the property and the crimes committed upon this plaintiff by the defendant and they are acting to avoid Civil Liability on behalf of Defendant Combs and this action must be stopped otherwise it will result in furtherance of crimes and other actions by the defendant in this matter upon this Plaintiff.

8. a Preliminary Injunction and/or temporary restraining order will not interfere with the activities or lifestyle of the defendant and it will only ensure that this court has all the facts and understandings of the reasons for the restraining order to be imposed against the defendant in this case and it will

ensure that civil justice has in fact been served and administered and will in no way impact or deprive the defendant of any constitutional rights under the State and Federal Level.

As Such, Plaintiff asks this Court to grant the Preliminary Injunction and/or Temporary Restraining Order to ensure that justice is not be interfered with and furtherance of a crime is not being conducted by the defendants upon the plaintiff or its agents acting on this Plaintiffs behalf.

RELIEF SOUGHT

Wherefore, Plaintiff Prays this Court will enter an order to Grant the Plaintiff a Preliminary Injunction and/Or Temporary Restraining Order and enjoin the defendants or their agents from the sale or the property and estate at the address of 200 S. Mapleton Drive, Holmby Hills, Los Angeles California 90077 and grant any further relief this Court deem necessary and appropriate.

Respectfully Yours,

Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

July 19, 2024

4.

Exhibit 5

STATE OF MICHIGAN

IN THE 39TH CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH #267009,

    Plaintiff,

Vs

                                Case No 24-7362-NO

                        HONORABLE ANNA MARIE ANZALONE

SEAN COMBS (SEAN PUFF DADDY COMBS)
a/k/a/SEAN P. DIDDY, a/k/a/ DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
a/k/a/ PUFF-P-DADDY, BAD BOY,
(DIDDY RUN THE CITY),
SHAWN COMBS, a/k/a/ SHAWN PUFFYCOMBS,
   Defendants,



_____/

PROOF OF SERVICE

I swear and declare that on July 19, 2024, I mailed one copy of
this pleading by First Class mail to the Defendant at his Place
of Residence at by sealed envelope and all documents attached
herein to 200 S. MAPLETON DRIVE, HOLMBY HILLS, LOS ANGELES,
CALIFORNIA 90077 and this being done in Muskegon, MI 49444.

                                      July 19, 2024

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

Exhibit 6

STATE OF MICHIGAN

IN THE 39TH CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH #267009,

    Plaintiff,

Vs

                               Case No 24-7362-NO

                 HONORABLE ANNA MARIE ANZALONE

SEAN COMBS (SEAN PUFF DADDY COMBS)
a/k/a/SEAN P. DIDDY, a/k/a/ DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
a/k/a/ PUFF-P-DADDY, BAD BOY,
(DIDDY RUN THE CITY),
SHAWN COMBS, a/k/a/ SHAWN PUFFYCOMBS,
    Defendants,

_____/



ORDER

At a session of said court, held in the County of Lenawee, State of Michigan,
on ___August 7___, 2024 with the Honorable ANNA MARIE ANZALONE Presiding.

    The Court, having been briefed in the full record and all
pleadings and arguments having been heard in this matter on the
Plaintiffs Motion for a Preliminary Injunction and/or Temporary
Restraining Order, the Court enters the following Ruling:

THE PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER IS
**GRANTED.**

    The defendant and agents are hereby Enjoined temporarily for a
period of 90 days from the Sale, Transfer or Exchange, Trade or
Transaction of Title or Deed to the Property listed as the
address and placed on the market by defendants for the amount of
$70,000,000,000.00 (Seventy-Million Dollars) and this property
and estate belonging to or connect to defendant SEAN COMBS shall
cease and desist any and all trades, transactions or otherwise
Stop the Process of any further actions on this property being
continued and this shall have immediate effect.

IT IS SO ORDERED

Dated: ___8-7-24___

                            Clerk/Judicial Officer

Order Prepared by Plaintiff:

Derrick Lee Cardello-Smith
#267009

STATE OF MICHIGAN)
COUNTY OF LENAWEE)

I hereby certify that on the 15th day of Aug 24
I served a copy of _order_ upon the
following persons at their last known address
by mailing a copy regular mail, postage fully
prepaid. Plaintiff; Defendant

Signed: _____

Exhibit 7

Case 5:24-cv-12647-JEL-KGA ECF No. 1, PageID.283 Filed 10/07/24 Page 283 of 570

Zastrow v. City of Wyoming, Not Reported in N.W. Rptr. (2017)
2017 WL 3878983

2017 WL 3878983
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

William Scott ZASTROW, Plaintiff–Appellant,
v.
CITY OF WYOMING and City of Wyoming
Administrative and Supervisory Employees
Association, Defendants–Appellees.

No. 331791
|
September 5, 2017

Kent Circuit Court, LC No. 15–006824–CK

Before: Stephens, P.J., and Shapiro and Gadola, JJ.

**Opinion**

Per Curiam.

**\*1** This action arose after the city of Wyoming (the City), terminated plaintiff's employment following an incident that occurred on or about January 26, 2015. Plaintiff appeals as of right an order granting the motions for summary disposition filed by the City and plaintiff's union, the City of Wyoming Administrative and Supervisory Employees Association (the Association), regarding plaintiff's claims for breach of the duty of fair representation and breach of the collective bargaining agreement (CBA). On appeal, plaintiff also challenges an earlier order, in which the trial court denied his motion for a preliminary injunction. We affirm.

## I. BACKGROUND FACTS

In 2002, the City hired plaintiff as the Assistant Director of its Public Works Department. Plaintiff became a member of the Association at that time. Plaintiff's employment with the City was governed by various CBAs, the latest of which became effective on July 1, 2014, lasting through June 30, 2019. This CBA provided that "[n]o employee shall be discharged ... without just cause," and in the event of a wrongful discharge, an employee could grieve such action pursuant to Article

II, Section 2 of the CBA. Article II, Section 2 provides the following:

*Step 1.* The Association shall submit a "Notice of Intent" to file a grievance, in writing, to the City Manager within fifteen (15) days after the occurrence of the matter which gave rise to the grievance.

*Step 2.* Within thirty (30) days of the submission of the "Notice of Intent" to file a grievance, the Grievance Committee of the Association shall make its decision on the grievance and shall recommend to the City Manager; dismissal of the grievance, submittal of a compromise or submittal of a formal grievance to proceed to the next step. In the event the Grievance Committee recommends dismissal, no further proceedings may be had on said grievance. In the event the Grievance Committee recommends a compromise, the City Manager shall have fifteen (15) days in which to accept or reject the compromise. If the City Manager accepts the compromise, the grievance shall be terminated. If the City Manager rejects the compromise or if the Grievance Committee has recommended processing the grievance, Step 3 shall be followed.

*Step 3.* If the grievance is not settled in Step 2, the Grievance Committee shall meet with the City Manager and the employee, and such other persons as the City Manager desires present, in an attempt to resolve the grievance. ... [T]hereafter the Grievance Committee shall render an opinion in the same manner and within the same time limits as in Step 2. In the event of the dismissal of the grievance by the Grievance Committee, no further steps shall be taken. In the event the Grievance Committee recommends a compromise, the City Manager shall have fifteen (15) days in which to accept or reject the compromise. If the City Manager accepts the compromise, the grievance shall be terminated. If the City Manager rejects the compromise or the Grievance Committee has recommended processing the grievance, Step 4 shall be followed.

**\*2** *Step 4.* The Arbitrator shall be chosen by the Association and the Employer alternately striking names from a list of five (5) arbitrators agreed to by the Association and Employer. ... The decision of the arbitrator shall be final and binding. ... Notice of intent to follow this step shall be filed by the Grievance Committee with the City Manager within fifteen (15) working days of the Manager's decision in the former step.

2017 WL 3878983

On January 26, 2015, plaintiff returned to work after taking several weeks off to care for his terminally ill father, who died on January 21, 2015. On or about this day, while working in the maintenance garage, plaintiff saw fellow employee Randy Colvin remove an M–4 semi-automatic rifle from a police cruiser that had come in for maintenance. According to plaintiff, City policy prohibited the police from sending in vehicles for maintenance with weapons still inside. When plaintiff saw Colvin removing the M–4, he approached, inquired about the condition of the firearm, and then took the rifle from Colvin, removed the magazine, checked to see if there was a round in the chamber, and made several comments before handing the rifle back to Colvin. The parties dispute what plaintiff said to Colvin while plaintiff was holding the M–4, and there were no other witnesses to the interaction, but Colvin later discussed the incident with two other employees, Dan Gard and Neal Schoen, who complained to City management.

The City investigated the incident and obtained written statements from both Colvin and Gard. Gard explained in his statement that, on the day in question, "[Colvin] met me on my side of [the] shop [and] he was very excited [and] said [plaintiff] wigged out[,] took the gun from me and said I bet I can get respect with this[,] ... then said how [plaintiff] didn't like guns in shop and went on to say how P[ublic] W[orks] guys are disrespectful[.]" Colvin stated that plaintiff approached him and "proceeded to take the gun and check[ed] to see if it was loaded and it was not. Then he said, Randy, I wish you did not have them here (that is his pet peeve) and he said a few things about P[ublic] W[orks] that I can't totally recall everything he said. I took the gun back and we talked for a few more minutes and he mellowed."

Public Works Director Bill Dooley and Human Resources Director Kim Oostindie interviewed Colvin about the incident. According to the meeting notes, "[Colvin] said [plaintiff] was saying some things about respect in P[ublic] W[orks], but that [Colvin] couldn't recall everything [plaintiff] said nor could he recall the specific statement [plaintiff] made." When asked about plaintiff's demeanor during the incident, Colvin said plaintiff "was emotional—not angry—but tearful and he seemed 'bummed out.' He seemed worried." Dooley asked Colvin if he felt threatened by plaintiff, to which Colvin responded, "No." During a second interview, Colvin explained that during the incident, plaintiff was upset with Public Works and said, "[T]his may solve his problems," referencing the gun. Colvin did not want to make a

statement regarding what plaintiff exactly said "because I may have one word off." However, Oostindie then gave Colvin different variations of what plaintiff allegedly said during the encounter, one version being that plaintiff said to Colvin while holding the gun, "[M]aybe now I will get some respect." When asked if plaintiff had said that, Colvin replied, "Yes, something like that."

**\*3** According to the City, management spoke with plaintiff about the incident on January 28, 2015, and February 19, 2015. The City claimed that during the first meeting, plaintiff "acknowledged that [he] had said something that [he] should not have said." However, on February 19, 2015, plaintiff claimed that he "ha[d] not nor will I ever threaten a coworker." Plaintiff stated that he "d[id] not recall the specific day in question," but then described the incident, explaining that he saw Colvin removing an M–4 from a police cruiser, so he approached, "took the M–4, removed the magazine, and insured the chamber was clear of a round." According to plaintiff, he expressed disappointment and concern that a police vehicle had come in for maintenance with weapons still inside, but he did not threaten his coworkers in the Public Works Department.

Following its investigation, the City suspended plaintiff's employment. The City explained that it found plaintiff's comments "escalated emotionally" during the incident and he "expressed ... frustration about what [he] perceived as a lack of respect among Public Works employees." Then, "[w]hile holding the gun across [his] body, [plaintiff] made a remark to the effect of, 'Maybe now I will get some respect.' " The City concluded that plaintiff's conduct violated City Rule 3(e), which prohibits "abusive, intimidating, threatening or coercive treatment, physical and/or mental, of another employee or the public on City time or premises." The City also concluded that plaintiff violated City Rule 2(a) during the investigation, which prohibits "dishonesty of any kind, including lying, falsification of official City records or reports, and withholding information in a City investigation."

Plaintiff disagreed with the City's conclusions, stating that he did "not recall making the statement that the City attributed to me about getting respect." Plaintiff argued that "[i]f I did make such a statement (which I doubt), making a statement about respect does not violate any City rules or regulations, even if by happenstance I was holding (not pointing) an unloaded firearm at the time." After reviewing plaintiff's response, the City terminated plaintiff's employment on March 12, 2015.

Thereafter, plaintiff asked the Association to pursue a grievance on his behalf. The Association filed a Notice of Intent and formed a Grievance Committee to investigate the matter. During its investigation, the Committee interviewed Dooley, Oostindie, plaintiff, Colvin, and City employee Milt Zaagman about the specifics of the incident. Following its investigation, the Committee recommended against pursuing a formal grievance. On May 6, 2015, the Association Board met with the Grievance Committee and asked questions about the Committee's recommendation and obtained more details about the Committee's interviews with Colvin and Dooley. The Board then voted not to pursue a grievance on plaintiff's behalf. Association President Traci Shaffer informed plaintiff of the Board's decision, but explained that the Association was willing to try to reach a compromise with the City. Shaffer explained, however, that the Association would "not pursue the available remedies past that step in the process if a compromise cannot be reached." Plaintiff agreed to allow the Association to pursue a compromise, and the Association submitted its first offer to the City on May 19, 2015.

The City rejected the first offer and proposed a counteroffer in which it would convert plaintiff's termination to a resignation. Shaffer relayed the City's counteroffer to plaintiff, explaining, "At this point, you may choose to accept the terms proposed by the City, or schedule a meeting. ... If an acceptable compromise is not reached at this meeting, the Association will submit their decision to dismiss the grievance as approved by majority vote of the Executive Board." Plaintiff rejected the City's counteroffer, and the Association then held a meeting with the City and plaintiff before submitting a second offer. The City also rejected the second offer, reasserting its initial counteroffer of allowing plaintiff to change his termination to a resignation. On July 27, 2015, the Association informed the City that it had sent the counteroffer to plaintiff, but it did not hear back from him and would not be pursuing a formal grievance on his behalf.

*4 That same day, plaintiff filed the instant action, claiming that the Association breached its duty of fair representation because it failed to follow the grievance procedure in the CBA and the City breached the CBA because it fired plaintiff without just cause. Plaintiff also filed a motion for a preliminary injunction, asking the court to compel defendants to arbitrate his grievance. The trial court denied plaintiff's motion, concluding that the City was not contractually obligated to arbitrate the dispute, plaintiff had not demonstrated irreparable harm, and there were no significant public interests at stake because the case involved a private dispute.

Thereafter, the Association filed a motion for summary disposition, arguing that plaintiff failed to present sufficient evidence demonstrating that the Association acted arbitrarily or in bad faith by choosing not to pursue plaintiff's grievance to arbitration. The City concurred in the motion and further asked the court to dismiss plaintiff's breach of contract claim, arguing that an employee whose employment is governed by a CBA cannot pursue a breach of contract claim against an employer unless the employee first establishes a breach of the duty of fair representation by the representative union. Following a hearing, the trial court granted defendants' motions under MCR 2.116(C)(10).

## II. PRELIMINARY INJUNCTION

On appeal, plaintiff first argues that the trial court erred by denying his motion for a preliminary injunction compelling defendants to arbitrate his grievance. We review for an abuse of discretion a trial court's decision to grant or deny a motion for mandatory injunctive relief. *Dep't of Environmental Quality v. Gomez*, 318 Mich. App. 1, 32; 896 N.W.2d 39 (2016). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes." *Id.* at 33–34 (quotation marks and citation omitted).

"Injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there is a real and imminent danger of irreparable injury." *Janet Travis, Inc. v. Preka Holdings, LLC*, 306 Mich. App. 266, 274; 856 N.W.2d 206 (2014). In deciding whether to issue a preliminary injunction, courts consider

> (1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public

interest if the injunction is issued. [*Alliance for Mentally Ill of Mich. v. Dep't of Community Health*, 231 Mich. App. 647, 660–661; 588 N.W.2d 133 (1998).]

A particularized showing of irreparable harm is an indispensable requirement to obtain injunctive relief. *Pontiac Fire Fighters Union Local 376 v. City of Pontiac*, 482 Mich. 1, 9; 753 N.W.2d 595 (2008). "Equally important is that a preliminary injunction should not issue where an adequate legal remedy is available." *Id.*

In this case, plaintiff failed to demonstrate that he was entitled to arbitration under the CBA. Plaintiff argues that the Association was required to pursue his grievance to arbitration under Step 3 of the CBA once it submitted the second offer because Step 3 states, "If the City Manager rejects the compromise ... *Step 4 shall be followed*." (Emphasis added.) However, as the trial court noted, Step 4 of the grievance procedure required the Association to file "[n]otice of intent to follow this step ... within fifteen (15) working days of the Manger's decision in the former step," which the Association did not do. Therefore, at the time plaintiff filed his complaint, the City was no longer contractually obligated to arbitrate his grievance.

**\*5** Further, plaintiff failed to make a showing of irreparable harm because he could obtain an adequate remedy at law in the form of money damages if he prevailed on his claims against the City and the Association. See *Pontiac Fire Fighters*, 482 Mich. at 10. Plaintiff argues that the irreparable harm in this case was the denial of his choice of forum to resolve his grievance against the City because the outcome of the case could depend on who was chosen to resolve the dispute. However, the mere inability to present his case before an arbitrator does not constitute a particularized harm, considering that plaintiff cannot prove that an arbitrator would necessarily return a decision in his favor. Moreover, the fact that plaintiff's claims *might* be more successful before an arbitrator is not proper grounds to obtain a preliminary injunction because an injunction will not issue upon speculative injury. *Pontiac Fire Fighters*, 482 Mich. at 8–9.

Finally, the balance of harms and the public interest factors favor the trial court's decision. The interests at stake in this case are largely personal to plaintiff, and even in the absence

of an injunction, plaintiff could pursue his claims against the City and the Association before the trial court where a determination could be made regarding whether he was entitled to damages. In contrast, requiring the City to arbitrate plaintiff's grievance would have granted plaintiff relief that he was no longer entitled to under the CBA. Therefore, the trial court did not abuse its discretion by denying plaintiff's motion for a preliminary injunction.

### III. SUMMARY DISPOSITION

Plaintiff next argues that the trial court erred by summarily dismissing his claims against the Association and the City. We review de novo a trial court's decision to grant or deny a motion for summary disposition. *Spiek v. Dep't of Transp.*, 456 Mich. 331, 337; 572 N.W.2d 201 (1998). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Murad v. Prof & Admin Union Local 1979*, 239 Mich. App. 538, 541; 609 N.W.2d 588 (2000). "This Court considers the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party to determine whether a genuine issue of any material fact exists to warrant a trial." *Id.*

The duty of fair representation is an implied duty that requires a labor union to fairly and impartially represent all members within its bargaining unit. *Martin v. East Lansing Sch. Dist.*, 193 Mich. App. 166, 180; 483 N.W.2d 656 (1992). The duty encompasses three responsibilities: (1) serving a member's interests without hostility or discrimination, (2) exercising discretion in good faith and honesty, and (3) avoiding arbitrary conduct. *Goolsby v. Detroit*, 419 Mich. 651, 664; 358 N.W.2d 856 (1984), citing *Vaca v. Sipes*, 386 U.S. 171, 177; 87 S. Ct. 903; 17 L.Ed. 2d 842 (1967). In processing or refusing to process a grievance, a union must act

without fraud, bad faith, hostility, discrimination, arbitrariness, caprice, gross nonfeasance, collusion, bias, prejudice, willful, wanton, wrongful and malicious refusal, personal spite, ill will, bad feelings, improper motive, misconduct, overreaching, unreasonable action, or gross abuse of its discretion in processing or refusing or failing to process a member's

Zastrow v. City of Wyoming, Not Reported in N.W. Rptr. (2017)

2017 WL 3878983

grievance. [*Knoke v. East Jackson Pub Sch. Dist.*, 201 Mich. App. 480, 487; 506 N.W.2d 878 (1993).]

The duty of fair representation further prohibits a union from acting with "(a) impulsive, irrational or unreasoned conduct, (b) inept conduct undertaken with little care or with indifference to the interests of those affected, (c) the failure to exercise discretion, and (d) extreme recklessness or gross negligence." *Goolsby*, 419 Mich. at 682. Negligence alone does not constitute a breach of the duty of fair representation. *Id.* at 680.

**\*6** A union has broad discretion to decide what grievances to pursue to arbitration and must be given the latitude to assess each grievance according to its individual merit. *Knoke*, 201 Mich. App. at 486. "An individual employee does not have the absolute right to have a grievance taken to arbitration, even where, in some instances, the employee's grievance against the employer may have merit under the terms of the applicable collective bargaining agreement." *Silbert v. Lakeview Ed Ass'n.*, 187 Mich. App. 21, 25–26; 466 N.W.2d 333 (1991). A plaintiff "cannot pursue his breach of contract claim against [an employer] unless he is successful in his claim of breach of the duty of fair representation." *Knoke*, 201 Mich. App. at 485.

Plaintiff first argues that the Association failed to follow the grievance procedure in the CBA. On this point, we agree. To begin, the Grievance Committee did not make a decision on the grievance within 30 days after the Association submitted the Notice of Intent in Step 1. Then, the Grievance Committee recommended against pursing a grievance on plaintiff's behalf, and the Association Board likewise voted not to pursue a grievance. The language of the CBA does not require the Board to vote on the Committee's decision before the Committee submits its recommendation to the City,[1] and the record does not show when or if the Grievance Committee decided to submit a compromise offer on plaintiff's behalf. Yet, on May 12, 2015, Association President Shaffer informed plaintiff that the Association was willing to pursue a compromise on his behalf. Two compromise offers were submitted to, and rejected by, the City under Steps 2 and 3. Under Step 3 of the grievance procedure, "[i]f the City Manager rejects the compromise ... *Step 4 shall be followed.*" (Emphasis added.) Therefore, under the plain language of the CBA, once the Association submitted the compromise offer under Step 3 and the City

Manager rejected that offer, the Association was required to follow Step 4 of the grievance procedure. The Association argues that it was not required to follow Step 4 because it decided from the beginning not to pursue plaintiff's grievance to arbitration. However, the language of the CBA does not support that the Association had this option. Rather, if the Association did not intend to pursue plaintiff's grievance to arbitration in Step 4, it should have dismissed the grievance before submitting a second compromise offer in Step 3.

Nonetheless, the mere fact that the Association did not strictly follow the grievance procedure does not mean that it breached its duty of fair representation. In *Pearl v. Detroit*, 126 Mich. App. 228, 238 n 4; 336 N.W.2d 899 (1983), this Court explained that "[a]n incorrect interpretation by the union of a collective bargaining clause, in the absence of bad faith, does not impose liability upon the union." In *Goolsby*, 419 Mich. at 680, our Supreme Court explained that, "[a]bsent a reasoned, good-faith, non-discriminatory decision not to process a grievance," if a union fails to comply with the grievance procedure in a collective bargaining agreement, "the union has acted arbitrarily and breached its duty of fair representation." However, a reasoned, good-faith, non-discriminatory decision includes "[f]or example, because the grievance has no merit, or, even if it has merit, because it is not in the best interests of the majority of the union membership." *Id.* at 680 n 13.

**\*7** Plaintiff has not shown that the Association decided not to pursue his grievance to arbitration as the result of bad faith. Indeed, the Association made its decision only after concluding that the grievance lacked merit and that pursing the grievance would not be in the best interests of the majority of the union membership. See *Goolsby*, 419 Mich. at 680 n 13. Before reaching this conclusion, the Grievance Committee conducted an investigation that included interviews of Dooley, Oostindie, Colvin, plaintiff, and Zaagman. From the information obtained during the interviews, the Committee determined that plaintiff had not been forthcoming and completely truthful and that, during the incident in question, plaintiff was emotional while holding a weapon and made a statement "referencing how the weapon could be used," the implication of which "was to the effect of gaining respect or as a solution to a problem." Under the circumstances, the mere fact that the Association did not strictly follow the grievance procedure would not sustain a breach of the duty of fair representation claim.

Zastrow v. City of Wyoming, Not Reported in N.W. Rptr. (2017)
2017 WL 3878983

Plaintiff argues that the Association breached its duty of fair representation because it decided not to pursue his grievance to arbitration before investigating the matter. Specifically, plaintiff cites the deposition testimony of Jaime Petrovich, a member of the Grievance Committee, in which she stated that the Association decided not to pursue plaintiff's grievance "[f]rom the very beginning when we filed the Notice of Intent and after we made our decision it was communicated all along that there was no intent to file the formal grievance." Read in context, however, Petrovich's testimony does not suggest that the Association decided not to pursue plaintiff's grievance before the investigation occurred. Rather, Petrovich was explaining that the Association's first decision was against pursuing a formal grievance on plaintiff's behalf, and that this remained the Association's position throughout the parties' negotiations.

Plaintiff argues that the Association breached its duty of fair representation by refusing to evaluate whether City policy prohibited the police from bringing in vehicles for maintenance with weapons still inside. Whether City policy prohibits this conduct, however, is irrelevant to whether plaintiff made threatening statements while holding a weapon or was dishonest about his statements during the City's investigation. Plaintiff argues that the Association distorted the record regarding whether he violated any City rules because Colvin stated that he did not feel threatened by plaintiff. However, the fact that Colvin did not personally feel threatened does not suggest that plaintiff's statements could not be construed as threatening to other employees.

Plaintiff also argues that the Association failed to consider his long and favorable employment history and to explain what steps it took to determine that he would not prevail at arbitration. Again, however, plaintiff's employment history is irrelevant to whether he breached a City rule during the incident in question or during the City's subsequent investigation. Further, the Association explained its conclusion that there was insufficient evidence to successfully arbitrate plaintiff's grievance by pointing to the fact that plaintiff was unable to provide details or an explanation of the incident to refute the statements of other employees and because plaintiff's purported lack of memory regarding his statements was inconsistent with his memory of other details of the incident and his conversations with employees after the fact.

Citing the testimony of Petrovich and Shaffer, plaintiff argues that the Association breached its duty of fair representation because it has never pursued a grievance to arbitration. However, Petrovich testified that she "d[id] not know if [a grievance] has gone all the way to arbitration," and Shaffer testified only that the Association had not pursued a grievance to arbitration for "as long as I've been involved with the Association .... I don't know about prior to that." Moreover, plaintiff offered no evidence to suggest that the Association systematically refuses to pursue grievances to arbitration, as opposed to merely lacking a reason to do so. In any event, the manner in which the Association has historically processed grievances has no bearing on whether it properly processed plaintiff's request that it pursue a grievance on his behalf.

**\*8** Finally, plaintiff argues that the trial court erred by dismissing his claims because his case is substantially similar to *Lowe v. Hotel & Restaurant Employees Union, Local 705*, 389 Mich. 123; 205 N.W.2d 167 (1973). In *Lowe*, a union decided not to pursue a plaintiff's grievance to arbitration after he was involved in an altercation with another employee. *Id.* at 133–134. The union representative who performed the investigation "had known plaintiff for many years ... [and] felt that the plaintiff did not deserve to be reinstated in his job." *Id.* at 134. Despite the fact that the union representative "was unable to determine where the fault lay for instigating the altercation[,] [h]e nonetheless concluded that plaintiff had attacked [the other employee], that plaintiff had choked her, [and] that plaintiff was 'in the wrong[.]' " *Id.* The Supreme Court concluded that the union breached its duty of fair representation to the plaintiff by "making no effort whatsoever to settle his grievance, by ignoring his grievance, [and] by processing it in a perfunctory manner[.]" *Id.* at 152.

In contrast to *Lowe*, plaintiff cannot show that any member of the Grievance Committee was predisposed against him, and the record demonstrates that the Association only decided not to pursue plaintiff's grievance to arbitration after a thorough investigation by the Grievance Committee and additional inquiry by the Association Board. Unlike the union in *Lowe*, which ignored the plaintiff's grievance and made no effort whatsoever to settle the grievance, the Association in this case conducted extensive investigation and settlement negotiations between the City and plaintiff. Therefore, *Lowe* does not mandate a contrary result.

Considering the facts outlined above, plaintiff has not shown that the trial court erred by dismissing his breach of the duty of fair representation claim against the Association. Likewise, the court did not err by dismissing plaintiff's breach of contract claim against the City. [2]

Case 5:24-cv-12647-JEL-KGA    ECF No. 1, PageID.289    Filed 10/07/24    Page 289 of 570

Zastrow v. City of Wyoming, Not Reported in N.W. Rptr. (2017)

2017 WL 3878983

Affirmed.

Shapiro, J. (dissenting).

Plaintiff William Scott Zastrow claims that defendant City of Wyoming Administrative and Supervisory Employees Association (the union) violated its obligation to provide him with fair representation in response to his termination by defendant City of Wyoming (the city), his employer. As there was ample evidence to support this claim, we should reverse the trial court and remand for trial as to the union. Accordingly, I respectfully dissent in part. [1]

Plaintiff was a supervisor in the municipal garage that repaired and maintained City of Wyoming vehicles. On January 26, 2015, another worker in the garage discovered a loaded rifle in a police car that had been left for repairs. The gun had been left there by a police officer in violation of department policy. Plaintiff took the gun from the other employee, made it safe and had the employee place it in a secured locker. Plaintiff had complained several times previously about officers leaving loaded weapons in vehicles. While holding the weapon plaintiff made a statement that the city interpreted as a violation of workplace rules. It then terminated plaintiff's employment.

The city's termination letter indicated that plaintiff was fired because he violated two workplace rules: one barring threatening behavior and the other prohibiting theft or dishonesty including the withholding of information relevant to a city investigation. The city's letter does not state why lesser sanctions were inadequate. Plaintiff asked the union to file a grievance on his behalf. They refused to do so, and this suit followed.

## A UNION'S DUTY TO REPRESENT ITS MEMBERS

*9 When an employee is represented by a union, he may not file a grievance or lawsuit on his own behalf against the employer unless the collective bargaining agreement provides for that right. [2] Where such a provision is absent, as here, an employee is wholly dependent upon the union to file the grievance and act as his or her advocate.

The scope of this duty is defined in two Michigan cases: *Lowe v. Hotel & Restaurant Employees Union, Local 705*, 389

Mich. 123; 205 N.W.2d 167 (1973), and *Goolsby v. Detroit*, 419 Mich. 651; 358 N.W.2d 856 (1984). In my view, the majority fails to afford these cases sufficient consideration. *Lowe*, following the United States' Supreme Court's opinion in *Vaca v. Sipes*, 386 U.S. 171; 87 S. Ct. 903; 17 L.Ed. 2d 842 (1967), eloquently set forth the fundamental legal principles:

A labor union has a duty fairly to represent its members.

This duty arises from the nature of the relationship between the union and its members. The union and its members do not deal at arms [sic] length.

The union speaks for the member. It makes a contract of employment on his behalf. The union offers its member solidarity with co-workers, expertise in negotiation, and faithful representation. In exchange, the member pays his union dues, and gives his support and loyalty to the union.

In many ways, the relationship between a union and its member is a fiduciary one. Certainly, it is a relationship of fidelity, of faith, of trust, and of confidence.

If the courts have stopped short of declaring the union and member relationship a fully fiduciary one, it is because the union, by its nature, has a divided loyalty.

It must be faithful to each member, to be sure, but it must be faithful to all the members at one and the same time.

The union must be concerned for the common good of the entire membership. This is its first duty.

That duty of concern for the good of the total membership may sometimes conflict with the needs, desires, even the rights of an individual member.

When the general good conflicts with the needs or desires of an individual member, the discretion of the union to choose the former is paramount.

When the general good conflicts with the legal or civil rights of an individual member, the courts will recognize those rights and enforce them as against the will of the majority of the union membership.

In the area of grievances, the courts have held that the union has considerable discretion to decide which grievances shall be pressed and which shall be settled. It has been said that the union has latitude to investigate claimed grievances by members against their employers, and has the power to

Case 5:24-cv-12647-JEL-KGA   ECF No. 1, PageID.290   Filed 10/07/24   Page 290 of 570

Zastrow v. City of Wyoming, Not Reported in N.W. Rptr. (2017)

2017 WL 3878983

abandon frivolous claims. *Vaca v. Sipes*, 386 U.S. 171; 87 S. Ct. 903; 17 L.Ed. 2d 842 (1967).

It has been held that an individual member does not have the right to demand that his grievance be pressed to arbitration, and the union "obviously" is not required to carry every grievance to the highest level, but must be permitted to assess each with a view to individual merit. *Gunkel v. Garvey*, 45 Misc 2d 435; 256 NYS2d 953 (1964).

Having regard for the good of the general membership, the union is vested with discretion which permits it to weigh the burden upon contractual grievance machinery, the amount at stake, the likelihood of success, the cost, even the desirability of winning the award, against those considerations which affect the membership as a whole. [*Lowe*, 389 Mich. at 145–146.]

**\*10**  Ten years after *Lowe* was decided, the Supreme Court in *Goolsby* refined these principles into a three part test:

A union's duty of fair representation is comprised of three distinct responsibilities: (1) "to serve the interests of all members without hostility or discrimination[,"] (2) "to exercise its discretion with completed good faith and honesty[,"] and (3) "to avoid arbitrary conduct." [*Goolsby*, 419 Mich. at 664 quoting *Vaca*, 386 U.S. at 177.]

A violation of any of these three responsibilities constitutes a breach of the duty of fair representation. *Id.* at 667. In reviewing the actions of the union, we must view its duty broadly given its special relationship with its members. As noted in *Goolsby*, "for purposes of PERA, we do not interpret a union's responsibility to avoid arbitrary conduct narrowly.[ ] In addition to prohibiting impulsive, irrational, or unreasoned conduct, the duty of fair representation also proscribes inept conduct undertaken with little care or with indifference to the interests of those affected." *Id.* at 679.


FACTS

Plaintiff had an excellent work record. During his previous 16 years of employment with the city, he had never been subject to any employee discipline, and he was given a 100% rating in the performance review conducted immediately before his termination. On the date in question he had just returned to work after several days of bereavement leave following the death of his father.

The city's workplace rules required that when a police car is left at the garage, the officers must remove all firearms from the vehicle and the garage and store them properly in the police department. [3]  As noted above, this rule was not always followed, and Zastrow had several times brought it to the attention of management. [4]  The initiating incident began when Randy Colvin, a garage worker, started to work on a police car and discovered that the officers had left a loaded rifle in the front seat. Colvin removed the rifle as plaintiff walked over. One of them immediately made the gun safe though it is not clear whether it was Colvin before plaintiff took the gun or plaintiff after he took possession of the rifle. Plaintiff held the rifle with two hands across his torso, he and Colvin had a conversation, the contents of which is in dispute, and he then directed Colvin to place the rifle in a secure locker until it could be returned to the police department.

Certain facts are not in dispute, though they remain obscured by the misplaced, but powerful image of workplace violence raised by defendants. First and foremost, plaintiff did not bring a weapon to work, and he never did so in the long course of his employment. He was wholly un-responsible for the presence of the weapon in the garage. In fact, he had on several occasions complained about these occurrences on the grounds of workplace safety. Second, plaintiff did not remove the gun from the police car. It is undisputed that the other employee at the scene, Colvin, removed the gun and openly held it before plaintiff approached. Third, plaintiff did not undertake any dangerous actions with the rifle; he did not point it at anyone or even in anyone's direction. He held it across his body, not directed outwards. Fourth, he saw to it that it was unloaded and placed in a safe location. Fifth, he made no threats despite the defendants' attempt to imply the contrary. There was one and only one person who heard what plaintiff said, Randy Colvin. When interviewed by the employer and by the union Colvin repeatedly confirmed that plaintiff did not threaten him, that he did not feel threatened, that plaintiff made no threats directed at others, and that he would feel completely comfortable continuing to work with plaintiff. He reported that plaintiff had, while holding the rifle, said something along the lines of, "maybe I could get some respect with this," and Colvin stated that he did not view this as a threat at the time of the incident or later when interviewed.


ANALYSIS

**\*11**  The union asserts that it did not pursue the grievance on behalf of plaintiff for two reasons.

Case 5:24-cv-12647-JEL-KGA   ECF No. 1, PageID.291   Filed 10/07/24   Page 291 of 570

Zastrow v. City of Wyoming, Not Reported in N.W. Rptr. (2017)

2017 WL 3878983

First it asserts that it did not do so because it did not want to set a precedent for the membership regarding what they might expect to be arbitrated in the future. This claim is at best devoid of content, and, at worst, it is clear evidence of arbitrariness. The union's brief wholly fails to articulate how pursuing plaintiff's grievance to arbitration would leave it subject to seeking arbitration for grievances that were without merit. The union's proffered concern about being overwhelmed by the burden of conducting arbitrations on behalf of its members should be viewed with substantial skepticism in light of the fact that it has not pursued a single employee grievance to arbitration in its entire history at this workplace. If the union refused to represent plaintiff in this grievance because it had a policy never to do so then the denial of representation is clearly "arbitrary conduct."

Second, the union states that after considering plaintiff's request, it concluded that the likelihood of prevailing at arbitration was low. The union is entitled to consider this factor, but it must do so fairly and in good faith. The mere fact that the union conducts an investigation does not settle the issue of good faith. [5] If the union, despite substantial evidence to the contrary, merely adopts the employer's view of the facts, then its good faith should not be assumed. Here, the record readily supports a conclusion that the union was exclusively concerned with whether it could convince the employer to unilaterally reverse its decision to fire plaintiff rather than whether it could convince a neutral arbitrator to reverse it. As I read the record, the union's assertion that plaintiff's situation could not be improved at arbitration has little basis. Indeed, a review of the record leads to the conclusion that any attorney moderately skilled at litigation who reviewed the evidence and contractual standards relevant to this grievance would conclude that there was a strong likelihood of success, either of prevailing outright or at least in reducing the sanction.

*12 The likelihood that a grievance would be successful turns largely on whether an arbitrator would agree with the employer's claim that plaintiff violated the two cited workplace rules, i.e. one barring dishonesty and the other barring threatening conduct. The record demonstrates that these claims rested on suspect interpretations of weak evidence. First, the termination letter stated that plaintiff violated City Rule 2(a) the rule against dishonesty because he was not fully truthful during the investigation. [6] It asserted that plaintiff had violated this rule by initially admitting on January 28, 2015 that he "had said something that [he] should not have said" during the incident but later submitted

a written statement about the incident in which he stated that he, " 'did not recall' making any comments about disrespect among Public Works employees and also did not recall saying anything about getting respect while [he was] holding the gun." However, there is no documentary evidence that plaintiff ever stated that he "said something he shouldn't have." Nor did any employee state that they heard defendant make such a remark. The only evidence of this initial statement by plaintiff was the recollections of two managers, which were not documented. Thus, the premise of plaintiff's "dishonesty" rested on a "he said-he said" claim by management. Moreover, assuming plaintiff had made this admission, it contains no specific statements that plaintiff indicated he recalled saying during the incident. It appears that his lack of recollection of what he said to Colvin was consistent throughout. The union does not state why it believes the undocumented assertions of the managers. Nor does the union state why plaintiff's written statement that he "did not recall" making the comments that the managers recollected he made evidences a deliberate lie as opposed to a mere failure of memory. Given these facts, a strong case could be made that even if defendant violated this rule, a lesser sanction was in order.

The termination letter also cited City Rule # 3(e), which according to the letter, "prohibit[s] abusive, intimidating, threatening or coercive treatment, physical and/or mental, of another employee." The letter did not refer specifically to any statement or conduct by plaintiff as the basis for its finding that he had violated this rule. However, the letter described the incident as follows:

[Y]ou were in the Fleet Services area of the Public Works building and observed a staff member removing a gun from the trunk of a police vehicle. You asked the employee if the gun was loaded and he said it was not. You then took the gun to check if it was loaded and it was not. You made comments expressing your frustration about guns being in police vehicles when the vehicles are brought to Fleet Services for maintenance. During the conversation, your comments escalated emotionally and you expressed your frustration about what you perceived as a lack of respect among Public Works employees. While holding the gun across your body, you made a remark to the effect of, "Maybe now I will get some respect."

Although the letter of termination ends its description of the incident at that point, it is undisputed that following his remark, plaintiff handed the gun back to the other employee and directed him to place it in the locker used for such

Case 5:24-cv-12647-JEL-KGA   ECF No. 1, PageID.292   Filed 10/07/24   Page 292 of 570

Zastrow v. City of Wyoming, Not Reported in N.W. Rptr. (2017)
2017 WL 3878983

purposes. Moreover, there is no dispute that at the time the gun was held by the plaintiff it had already been made safe.[7] And, as already noted, plaintiff was not responsible for the gun's presence. Under these circumstances, it would be quite reasonable for an arbitrator to conclude that plaintiff did not engage in threatening or intimidating behavior and that his conduct, even if unwise, did not rise to the level of good cause for termination.

CONCLUSION

Lowe instructs that "a union has the power to abandon frivolous [grievance] claims." 389 Mich. at 146. Plaintiff's claim was by no means frivolous. He was fired after 16 years of excellent performance based upon an incident that occurred because someone else left a gun where it did not belong. After the gun was discovered, plaintiff handled it in a manner to protect his fellow workers. There is evidence that during the incident he made a statement that was ill-advised, but there is no evidence that he ever threatened any or presented a danger to anyone.

*Lowe* also states that "[w]hen the general good conflicts with the needs or desires of an individual member, the discretion of the union to choose the former is paramount." *Id.* However, defendant has abjectly failed to demonstrate beyond a question of fact that the "general good" of the union's membership conflicted with filing a grievance on behalf of plaintiff. To the contrary, by failing to file a grievance on plaintiff's behalf, the union sent a clear message to the membership and the employer that even where an employee has a long unblemished work record, the union will not come to the assistance of a member who makes a single mistake that results in no harm. Because the evidence clearly establishes a question of fact whether the union met its duty of fair representation I would reverse the grant of summary disposition and remand for trial.

**All Citations**

Not Reported in N.W. Rptr., 2017 WL 3878983

---

## Footnotes

1     Although the CBA grievance procedure does not require a vote by the Board, the Association's Bylaws are seemingly inconsistent with this procedure and provide the following:

       Within (10) working days of filing of the notice of intent with the City, the Committee shall submit its written recommendation to the Board. Whereupon, the Board shall, within fifteen (15) days of receipt of the recommendation of the Ad Hoc Grievance Committee, shall make its decision on whether to file a formal grievance with the City.

2     See *Knoke*, 201 Mich. App. at 485 ("[A plaintiff] cannot pursue his breach of contract claim against [an employer] unless he is successful in his claim of breach of the duty of fair representation.").

1     I agree with the majority in affirming the trial court's dismissal of the claim for injunctive relief.

2     See *Saginaw v. Chwala*, 170 Mich. App. 459, 463–464; 428 N.W.2d 695 (1988).

3     Since 1986, the Wyoming Police Department manual has stated that long guns "shall be removed any time the vehicle is going out for repair" and that the weapons are to be secured in the police station armory.

4     Plaintiff was not alone in this concern. In 2012 a police lieutenant made a written complaint about police cruisers being left in maintenance with long guns still inside. However, it appears that no offending officers, including the officer who left the gun in this case, were ever sanctioned for this dangerous conduct.

Zastrow v. City of Wyoming, Not Reported in N.W. Rptr. (2017)

2017 WL 3878983

5    There is also evidence that the decision to deny plaintiff's request for representation was made before the union's investigation was fully concluded. Jaimie Petrovich, a member of the Grievance Committee testified that "*[f]rom the very beginning* when we filed the Notice of Intent [March 16, 2015, 5 weeks before the Grievance Committee issued its report] and after we made our decision *it was communicated all along that there was no intent to file a formal grievance*." (Emphasis added). The majority states that "in context" Petrovich's statement did not suggest a premature decision. I disagree with this characterization. As I read the deposition and the rest of the record, it seems to me that the decision not to pursue a formal grievance was made and communicated to plaintiff early in the process. The union made clear that it filed the Notice of Intent to pursue a grievance in order to maintain pressure on the city to compromise, but in fact it had determined from the outset that it would not file a grievance.

6    The rule "prohibit[s] theft or dishonesty of any kind including lying, falsification of City records or reports, and withholding information in a City investigation."

7    In addition, Colvin stated that plaintiff was "not angry," but instead seemed "tearful" and "bummed out," unsurprising feelings given that plaintiff had just returned from burying his father.

---

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Cardello-Smith v. Google LLC, Not Reported in Fed. Supp. (2021)

2021 WL 4894700

2021 WL 4894700
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Derrick Lee CARDELLO-SMITH, Plaintiff,

v.

GOOGLE LLC, Google Inc., Microsoft LLC, Joanne
Theakston, Juliette Bird, Kim Worthy, Prosecutor,
Deyana Unis, Ass't Prosecutor, Suzette Samuels, Ass't
Prosecutor, Carli Carpenter (Boike), Heather Lynn
Nielson, MDOC/MCF/LRF Corrections Officers,
Heidi Washington, Mr. Plachta, Mr. Chauvez, J.B.
(Corrections Officer M.D.O.C.), Customer Privacy
Inc.-Corporation, LiarsCheatersandBastards.com,
Contactprivacy.com., ns1.aftermic.com,
ns2.aftermic.com, CheatersAndBastards.com,
Contactprivacy.com., LiarsCheatersandBastards, Inc.,
Corporation, Entity, Company, CheatersAndBastards
Inc., Entity, Corporation, Cheaters and Bastards Inc.,
Corporation, Company, CheatersAndBastards.com-
tech-customers.whoisprivacy.corp.com,
Brad.ns.cloudfare.com, Mona.ns.cloudfare.com, Liars,
Cheaters and Bastards as a Company, Corporation,
Entity, Staff, Cheaters, and Bastards as a Company,
Corporation, Entity, Whole, Owners of Cheaters and
Bastards, Owners of Liars Cheaters and Bastards,
Employees and Contractors of the Domain Known as
Cheaters and Bastards Used by Domain Administration
and Whoisprivacy.corporation.com, All Affiliates,
Contractors, Lawyers, Owners of Internet Domain
Service BS Corp., Tucows Inc., Corporation, Company
Entity, All Employees and Officials of Said Sites,
Company, Organization, Entities, Defendants.

Case Number 21-11595
|
Signed 10/20/2021

**Attorneys and Law Firms**

Derrick Smith, Muskegon, MI, Pro Se.

**OPINION AND ORDER DENYING APPLICATION
TO PROCEED WITHOUT PREPAYMENT OF FEES
AND COSTS AND DISMISSING COMPLAINT**

DAVID M. LAWSON, United States District Judge

*1  This matter is before the Court on the plaintiff's *pro
se* civil rights complaint filed under 42 U.S.C. § 1983.
The plaintiff is an inmate confined at Michigan's Muskegon
Correctional Facility in Muskegon, Michigan. He also has
filed an application for leave to proceed without prepayment
of costs. The plaintiff cannot proceed *in forma pauperis*
because at least three of the plaintiff's prior civil rights
complaints have been dismissed as frivolous, malicious, or
for failing to state a claim upon which relief could be granted
in violation of 28 U.S.C. § 1915(g). His case, therefore, will
be dismissed without prejudice, but he may revive his lawsuit
by payment of the appropriate filing fees.

Indigent litigants may apply to the Court to waive filing fees
required to commence a lawsuit. 28 U.S.C. § 1915(a)(1).
Otherwise, the "[t]he clerk of each district court shall require
the parties instituting any civil action, suit or proceeding in
such court, whether by original process, removal or otherwise,
to pay a filing fee...." *See also Owens v. Keeling*, 461 F.3d
763, 773 (6th Cir. 2006).

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub.
L. No. 104–134, 110 Stat. 1321 (April 26, 1996), prevents
a prisoner from bringing a civil action *in forma pauperis*
if a court previously dismissed three or more complaints
as frivolous, malicious, or for failing to state a claim upon
which relief may be granted unless the prisoner is in imminent
danger of serious physical injury. 28 U.S.C. § 1915(g) (1996);
*Thaddeus–X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999);
*Witzke v. Hiller*, 966 F. Supp. 538, 540 (E.D. Mich. 1997). A
federal district court may raise the three strikes provision on
its own, *Witzke*, 966 F. Supp. at 539, and may take judicial
notice of a plaintiff's prior dismissals, *Green v. Nottingham*,
90 F.3d 415, 418 (10th Cir. 1996); *Anderson v. Sundquist*, 1
F. Supp. 2d 828, 830 (W.D. Tenn. 1998).

A review of federal court records indicates that the plaintiff
has at least four prior civil rights complaints that were
dismissed by federal courts for being frivolous, malicious, or
for failing to state a claim upon which relief could be granted.
*See Smith v. Penman, et al.,* No. 20-12052 (E.D. Mich. Feb.
18, 2021); *Smith, et al. v. Unis, et al.* No. 19-12219 (E.D.

Cardello-Smith v. Google LLC, Not Reported in Fed. Supp. (2021)

2021 WL 4894700

Mich. Aug. 22, 2019); *Smith v. Hall et al.*, No. 18-277 (W.D. Mich. Apr. 3, 2018); *Smith v. Wayne Cnty. Prosecutor's Office, et al.*, No. 09-12287 (E.D. Mich. June 25, 2009).

In addition, the plaintiff has been denied leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(g), the "three-strikes" rule, because of these frivolity dismissals. *See Smith v. Washington*, No. 20-1211, 2021 WL 302614 (W.D. Mich. Jan. 29, 2021); *Smith v. Writeaprisoner.com, Inc.*, No. 20-1201, 2021 WL 210716 (W.D. Mich. Jan. 21, 2021); *Smith v. Penman*, No. 18-1212, 2018 WL 6697270 (W.D. Mich. Dec. 20, 2018).

**\*2** The plaintiff has not alleged any facts in this case that would establish that he is in imminent danger of serious physical injury, and thus, he does not come within the exception to the mandate of 28 U.S.C.§ 1915(g), which prohibits him from proceeding *in forma pauperis* in light of his four prior frivolity dismissals. *Mulazim v. Michigan Dept. of Corrections*, 28 F. App'x. 470, 472 (6th Cir. 2002).

The plaintiff's civil rights complaint is therefore subject to dismissal under section 1915(g). However, the plaintiff may revive any of the claims dismissed under 28 U.S.C. § 1915(g) if he decides to pay the $350 filing fee. *See* 28 U.S.C. § 1914; *Witzke*, 966 F. Supp. at 540. If the plaintiff is unable to pay the full amount, he may submit a partial filing fee and pay the remainder in installments. *See* 28 U.S.C. § 1915(a); *Miller v. Campbell*, 108 F. Supp. 2d 960, 962 (W.D. Tenn. 2000).

Accordingly, it is **ORDERED** that the complaint is **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. § 1915(g).

It is further **ORDERED** that the plaintiff's application to proceed without prepaying fees or costs (ECF No. 2) is **DENIED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4894700

---

End of Document | © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Richard v. Bouchard, Not Reported in F.Supp.2d (2013)

2013 WL 4417440

2013 WL 4417440
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Michael RICHARD, Plaintiff,
v.
Michael BOUCHARD, et al., Defendants.

No. 12–12516.
|
Aug. 15, 2013.

**Attorneys and Law Firms**

Michael Richard, Ionia, MI, pro se.

Mary M. Mara, Oakland County Corporation Counsel, Pontiac, MI, for Defendants.

*ORDER ADOPTING REPORT AND RECOMMENDATION (Doc. 23) AND DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (Doc. 11)*

AVERN COHN, District Judge.

**I.**

**\*1** This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff, proceeding *pro se* and without payment of fees, claims that several defendants violated his constitutional rights due to deliberate indifference to his medical needs while a pretrial detainee in the Oakland County Jail. The matter has been referred to a magistrate judge for all pretrial proceedings. Plaintiff filed a motion for default judgment, contending that certain defendants were in default for failing to respond to the complaint.

On July 23, 2013, the magistrate judge issued a report and recommendation (MJRR) that plaintiff's motion be denied because (1) plaintiff did not first obtain a clerk's entry of default as required, (2) plaintiff failed to show that the defendants were properly served, and (3) the defendants have filed a dispositive motion in lieu of an answer and therefore have appeared in the case. Neither party has objected to the MJRR and the time for objections has passed. [1]

**II.**

The failure to file objections to the MJRR waives any further right to appeal. *Smith v. Detroit Federation of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Likewise, the failure to object to the MJRR releases the Court from its duty to independently review the motions. *Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). However, the Court has reviewed the MJRR and agrees with the magistrate judge.

**III.**

Accordingly, the findings and conclusions of the magistrate judge are ADOPTED as the findings and conclusions of the Court. Plaintiff's motion for a default judgment is DENIED.

SO ORDERED.

**REPORT AND RECOMMENDATION**

R. STEVEN WHALEN, United States Magistrate Judge.

Before the Court is Plaintiff Michael Richard's Motion for Judgment by Default [Doc. # 11], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the Motion be DENIED.

**I. FACTS**

Plaintiff, a prison inmate in the custody of the Michigan Department of Corrections, filed a *pro se* civil rights complaint against Oakland County Sheriff Michael Bouchard, Sheriff's Deputies Brian Spiker, Donald Sheltrown, Gregory Sako and Craig Hanselman, and Jail Nurse Greg A. Smith, arising out of incidents alleged to have occurred while Plaintiff was a pretrial detainee in the Oakland County Jail. He alleges that he served all of these Defendants by certified mail, and has attached return receipts to the Motion. The return receipt for Sheriff Bouchard is not signed. The return receipts for Sheltrown, Hanselman, Sako and Smith are not signed by these Defendants, but are stamped with the name "Jim Middleton." Attached to a separate letter

Richard v. Bouchard, Not Reported in F.Supp.2d (2013)

2013 WL 4417440

to the Court [Doc. # 9] is a return receipt for Defendant Spiker, again bearing only the stamped name "Jim Middleton." The dates of receipt on the return receipts range from September 24, 2012 to October 9, 2012.

On October 30, 2012, counsel for Defendants filed a Notice of Appearance [Doc. # 12]. On November 9, 2012, Defendants filed a Motion for Summary Judgment [Doc. # 13]. [1]

 **\*2** Plaintiff alleges that because these Defendants did not file an answer or otherwise respond to his Complaint within 21 days of service, he is entitled to a default judgment.

## II. DISCUSSION

There are three reasons why a default judgment should not be entered.

First, in order for a plaintiff to obtain a judgment by default, he must first obtain a Clerk's entry of default pursuant to Fed.R.Civ.P. 55(a). A default *judgment* is governed by Rule 55(b)(2). "An entry of default and a default judgment are distinct concepts which must be treated separately." *Northland Ins. Co. v. Cailu Title Corp.,* 204 F.R.D. 327, 330 (W.D.Mich.2000) (quoting *United States v. Topeka Livestock Auction, Inc.,* 392 F.Supp. 944, 950 (N.D.Ind.1975)). In *Vongrabe v. Sprint PCS,* 312 F.Supp.2d 1313, 1318 (S.D.Cal.2004), the court explained:

> "The section of the rule regarding default is dealt with in Rule 55(a), and the section of the rule regarding judgment is dealt with in Rule 55(b). These sections have separate headings and procedures that are distinct from one another. Thus, a plain reading of Rule 55 demonstrates that entry of default by the clerk is a prerequisite to an entry of default judgment."

*See also Ramada Franchise Sys., Inc.,* 220 F.R.D. 303, 305 (N.D.Ohio 2004) (quoting *Sys. Indus., Inc. v. Han,* 105 F.R.D. 72, 74 (E.D.Penn.1985)) ("Entry of a default ... is a prerequisite to entry of a default judgment under Rule 55(b)."); *DeTore v. Local # 245 of the Jersey City*

*Public Employees Union,* 511 F.Supp. 171, 176 (D.N.J.1981) ("However, no default judgment may be entered under either F.R.Civ.P. 55(b)(1) or (b)(2) unless a default has previously been entered by the clerk under 55(a). Thus, the entry of default is an essential predicate to any default judgment.").

In this case, the Clerk has not entered a default under Rule 55(a). Therefore, Plaintiff is not entitled to a default judgment under Rule 55(b).

Secondly, Plaintiff has not shown that the Defendants were properly served. Fed.R.Civ.P. 4(e)(1) provides that service of process may be made "pursuant to the law of the state in which the district court is located, or in which service is effected." Under Michigan law, specifically M.C.R. 2.105(A) (2), service may be effected as follows:

> "(2) sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail. A copy of the return receipt *signed by the defendant* must be attached to proof showing service under subrule (A)(2)." (Emphasis added).

None of the Defendants signed the return receipts; rather, each bore the stamp of non-party Jim Middleton. Sheriff Bouchard's receipt was not signed at all. A default judgment may not be entered against a party who has not been properly served.

Finally, notwithstanding defective service, the Defendants have filed a dispositive motion in lieu of an answer. That motion will be decided on the merits.

## III. CONCLUSION

 **\*3** For these reasons, I recommend that Plaintiff's Motion for Judgment by Default [Doc. # 11] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of

Richard v. Bouchard, Not Reported in F.Supp.2d (2013)

2013 WL 4417440

objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 4417440

## Footnotes

1   The MJRR stated that objections were to be filed within 14 days of service. Accounting for service, objections were due at least by August 9, 2013.

1   Although titled "Motion for Summary Judgment," Defendants' pleading seeks dismissal under Fed.R.Civ.P. 12(b)(6).

---

End of Document                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

White v. Allstate Ins. Co., Not Reported in N.W.2d (1996)

1996 WL 33356909

1996 WL 33356909
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

Joyce N. WHITE and William Bert
Johnson, Plaintiffs-Appellants,

v.

ALLSTATE INSURANCE COMPANY, Dorothy J.
Peoples, and Renildo Greene, Defendants-Appellees.

No. 185862.
|
Oct. 4, 1996.

Before: SAAD, P.J., and CORRIGAN and R.A. BENSON, *
JJ.

UNPUBLISHED

PER CURIAM.

**\*1** In this automobile negligence action, plaintiffs appeal
by right the order granting defendant Allstate Insurance
Company's motion for summary disposition under MCR
2.116(C)(8), and defendants Peoples' and Greene's motion
to quash service of process under MCR 2.105(J)(3). We
affirm in part and reverse in part, and remand for proceedings
consistent with this opinion.

Plaintiffs Joyce White and William Johnson first contend that
the circuit court erred in granting defendants Dorothy Peoples
and Renildo Greene's motion to quash service of process
under MCR 2.105(J)(3). We agree. This Court reviews de
novo a lower court's interpretation of a court rule as a question
of law. *Frank v William A. Kibbe & Associates, Inc,* 208
Mich.App 346, 350-351; 527 NW2d 82 (1995).

Service of process rules are intended to satisfy the due process
requirement that a plaintiff must give a defendant adequate
notice of the pendency of an action. *Vincencio v. Ramirez,*
211 Mich.App 501, 504; 536 NW2d 280 (1995); *Hill v.
Frawley,* 155 Mich.App 611, 613; 400 NW2d 328 (1986).
Under MCR 2.105(A)(2), an individual properly may serve a

defendant by sending a summons and a copy of the complaint
by registered or certified mail; however, the signed return
receipt from the mailing must be attached to a proof of
service made in compliance with MCR 2.104(A)(2). In this
case, defendants Peoples and Greene contend that they never
received a copy of the summons. We find no evidence to
demonstrate adequate proof of service.

On appeal, plaintiffs first attempt to establish adequate service
by presenting the return receipts from their certified mailing
of process to defendants. Although defendant Peoples signed
her return receipt, defendant Greene's receipt was signed
by a "T. Jackson." MCR 2.105(2) specifically states that
delivery by registered or certified mail must be restricted to
the addressee. Additionally, defendant Greene's receipt, as
stamped by the post office, is dated one year before plaintiffs
filed their complaint, leaving no doubt that service on Greene
was inadequate.

Plaintiffs next offer an affidavit in support of their proof of
service, following the methods outlined in MCR 2.104(A)
(2). Plaintiff Johnson, however, acted as the notary public
certifying his own affidavit and thus violated the principle
that a notary cannot certify an act in which he has a personal
interest. *La Fromboise v. Porter,* 261 Mich. 483, 485-486; 246
NW 193 (1933). Further, in the affidavit itself, plaintiffs state
that they sent defendants a copy of only the complaint. They
do not state that they sent a summons; therefore, service of
process was deficient.

Although service of process was not adequate under MCR
2.105(A)(2), under MCR 2.105(J)(3), an action should not
be dismissed due to improper service of process unless
the service failed to inform the defendant of the action. A
defendant acknowledges proper notice and waives service
of process objections by entering a general appearance
and contesting the cause of action on the merits. *Penny
v ABA Pharmaceutical Co (On Remand),* 203 Mich.App
178, 181; 511 NW2d 896 (1993). In this case, defendants
Peoples and Greene filed an appearance on December 1,
1994, and contested the cause of action on the merits in
their answer to plaintiffs' complaint by asserting affirmative
defenses. Therefore, defendants Peoples and Greene waived
any objections to proper service, and the circuit court erred
in granting defendants' motion to quash service of process.
We thus remand this case to the circuit court for further
proceedings.

White v. Allstate Ins. Co., Not Reported in N.W.2d (1996)
1996 WL 33356909

**\*2** Plaintiffs also contend that the circuit court erred in granting defendant Allstate's motion for summary disposition under MCR 2.116(C)(8). This Court reviews de novo a lower court's ruling on a motion for summary disposition. *Patsy Johnson v. Wayne Co,* 213 Mich.App 143, 148-149; 540 NW2d 66 (1995).

MCL 500.3030; MSA 24.13030 provides that in an original action brought by an injured person, an insurer shall not be made, or joined as, a party defendant. Here, plaintiffs named Allstate Insurance Company, and later attempted to name Allstate's claims representative, Mark Wegener, as defendants. Because the statute clearly precludes any mention of insurance in an original action brought by the injured party, the circuit court correctly held that plaintiffs had no cause of action against these defendants.

Reversed in part and affirmed in part. Remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

**All Citations**

Not Reported in N.W.2d, 1996 WL 33356909

---

### Footnotes

\*      Circuit judge, sitting on the Court of Appeals by assignment.

---

End of Document      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 8

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY
CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH,#267009,
    Plaintiff,

                                    Case No 2024-7362-NO
                              Hon. Anna Marie Anzalone

SEAN COMBS, P.DIDDY, et al
  Defendant(s)
                          /

### RETURN OF SERVICE EXECUTED UPON
### DEFENDANT SEAN COMBS ON JULY 7, 2024
### WITH SERVICE BEING CONDUCTED IN COMPLIANCE WITH COURT RULE

Plaintiff Derrick Lee Cardello-Smith hereby swear and declare that the Plaintiff has effected the Service of the Summons and Complaint upon Defendant Sean Combs at the address listed herein on record and and service was executed with Return of Service on 7/6/21 and that this service is supported and proven by this Plaintiffs submission of the Signature Card showing that service has been made by the rule of service.

Please place this submission on the Court docket and notify me when it has been placed.

Respectfully Yours,                         July 25, 2024

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in Pro Per
2500 S. Sheridan Drive
Muskegon, MI 49444

FILED
39TH CIRCUIT COURT
AUG - 1 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

See attached
Return Receipt
Restricted Delivery
to Defendant

Cardello - Smith-V. Combs 24-7362-ND



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Sean Combs
200 S. Mapleton Drive
Holmby Hills - Los Angeles
California, 90077

Summons & Complaint
24-7362-ND

9590 9402 7768 2152 1823 79

2. Article Number (Transfer from service label)
7011 2000 0001 1878 8804

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery
7/6/21

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Return Receipt Requested

Domestic Return Receipt

---

**USPS TRACKING #**

9590 9402 7768 2152 1823 79

**United States Postal Service**

C40T

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

FILED
39TH CIRCUIT COURT
AUG - 1 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

• Sender: Please print your name, address, and ZIP+4® in this box•

Derrick Lee Cardello Smith
267009 - C - 40TOP
E.C. Brooks Corr. Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: Sean Combs
   200 S. Mapleton Drive
   Holmby Hills-Los Angeles
   California, 90077

   Summons & Complaint

   9590 9402 7768 2152 1823 79

2. Article Number (Transfer from service label)
   7011 2000 0004 1878 8800

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   ☐ Agent
   ☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery
                                        7/6/21

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Adult Signature
   ☐ Adult Signature Restricted Delivery
   ☒ Certified Mail®
   ☐ Certified Mail Restricted Delivery
   ☐ Collect on Delivery
   ☐ Collect on Delivery Restricted Delivery
   ☐ Insured Mail
   ☐ Insured Mail Restricted Delivery (over $500)

   ☐ Priority Mail Express®
   ☐ Registered Mail™
   ☐ Registered Mail Restricted Delivery
   ☐ Signature Confirmation™
   ☐ Signature Confirmation Restricted Delivery

   Return Receipt Requested

Domestic Return Receipt

Exhibit 9

Proof #1

 **detroit**

06/15/97
03:30am

**police**

Writer Responded to Incident at Detroit
Crime Lab where officers were stopping and incident
involving Several Persons identified As-Sean Combs-(artist)
KLm Worthy-official A.rogers (17year oldmale)
Derrick Smith (24year old black male) 2 fights
had happend with Smith and combs-worthy had
Uttered to Smith "you mess up my investment and I'll Put
multiple rapes on you like i did other men-we have
a warehouse filled with kits from rapes"! Smith said you
just want to keep men locked up for things we did
not do~she said sob try me'd writer Spoke with
officers from Adrian, Lenawee P.D. & determined further
investigation Warranted. Will do follow up'd

Patrick Jackman B5480
Sot. Silent Run
Officer Response

Exhibit 20

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH,

      Plaintiff,

v.

SEAN COMBS,

      Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone



FILED
38TH CIRCUIT COURT
SEP 12 2024
LENAWEE COUNTY CLERK

Derrick Lee Cardello-Smith
MDOC # 267009
*Plaintiff, In Pro Per*
Earnest C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
FINK BRESSACK
*Counsel for Defendant*
38500 Woodward Ave.; Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com

## PROOF OF SERVICE

STATE OF MICHIGAN  )
               ) SS:
COUNTY OF OAKLAND)

     The undersigned hereby certifies that on September 12, 2024, she caused to be served

copies of the following: *Limited Appearance of David H. Fink, Limited Appearance of Nathan J.*

*Fink, Limited Appearance of David A. Bergh, Limited Appearance of Calder A.L. Burgam, Notice*

*of Hearing of Defendant Sean Combs' Emergency Motion to Set Aside Default and Default*

*Judgment, Notice of Hearing of Defendant Sean Combs' Emergency Motion to Dissolve*

*Temporary Restraining Order and/or Preliminary Injunction, Defendant Sean Combs' Emergency Motion to Set Aside Default and Default Judgment with Brief in Support of Emergency Motion, and Defendant Sean Combs' Emergency Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction with Brief in Support of Emergency Motion*, upon Plaintiff Derrick Lee Cardello-Smith #267009 by placing said documents in an envelope and sent via FedEx addressed to John M. Fager, Warden's Administrative Assistant, Earnest C. Brooks Correctional Facility, 2500 S. Sheridan Dr., Muskegon Heights, MI 49444, for service upon Plaintiff.

I declare under the penalties of perjury that the statement above is true to the best of my knowledge, information, and belief.

KIMBERLY S. HUNT

Original - Court
1st copy - Prisoner
2nd copy - Department of Corrections
3rd copy - Return to court

Approved, SCAO

| STATE OF MICHIGAN JUDICIAL DISTRICT 39th-Lenawee JUDICIAL CIRCUIT COUNTY PROBATE | PERSONAL SERVICE ON PRISONER AND AFFIDAVIT | CASE NO. 2024-7362-NO |
|---|---|---|

Court address
425 N. Main St., Judicial Building, 3rd Floor, Adrian, MI 49221

Court telephone no.
(517) 264-4597

| Plaintiff(s) DERRICK LEE CARDELLO-SMITH #267009 | v | Defendant(s) SEAN COMBS (SEAN PUFF DADDY COMBS), a/k/a SEAN P. DIDDY, a/k/a DIDDY, BAD BOY RECORDS LABEL OWNER, FOUNDER, a/k/a PUFFY-P-DADDY, BAD BOY, (DIDDY RUN THE CITY), et al, |
|---|---|---|

☐ Probate   ☐ Juvenile   In the matter of _____

**REQUEST**

To the Warden/Administrator of Earnest C. Brooks Correctional Facility
　　　　　　　　　　　　　Name of correctional institution

You are requested to serve Limited Appearances of David H. Fink, Nathan J. Fink, David A. Bergh, and Calder A.A. Burgam, Notice of Hearing of Def.'s Emergency Motion to Set Aside Default and Default Judgment, Notice of Hearing of Def.'s Emergency Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction,
　　　　　　　　　　Title or description of papers   Def.'s Emergency Motion to Set Aside Default and Default Judgment with Brief in Support, Def.'s Emergency Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction With Brief in Support, and

together with _____ Proof of Service
　　　　　　List of attachments

on Derrick Lee Cardello-Smith #267009 _____ on or before Friday, September 13, 2024
　　Name of prisoner and prisoner identification number (if known)

Upon service, you must either complete the affidavit of service below or have the prisoner complete the acknowledgment of service below. If you are unable to complete service for some reason, you must return the original papers and all copies to the court clerk.

09/12/24
Date

Signature
Nathan J. Fink　P 75785
Name (type or print)

SEP 1 3 2024

NOTE: This affidavit is prepared only when the prisoner does not acknowledge service.

**AFFIDAVIT OF SERVICE**

I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that I personally served the papers described above and attachments, if any, on Smith 267009
　　　　　　　　　　　　Name of prisoner and prisoner identification number (if known)

on Friday September 13, 2024 @ 0716 .
　　Day, date, and time

JENNIFER L. UNGER
Notary Public - State of Michigan
County of Muskegon
My Commission Expires 5-18-28
Acting in the County of Muskegon

Subscribed and sworn to before me on 5-18-28

My commission expires: 9-13-32

Notary public, State of Michigan, County of Muskegon

Signature
John M. Fager
Name (type or print)

_____ County, Michigan.

Signature: _____
Deputy court clerk/Notary public

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received the papers described above on _____
　　　　　　　　　　　　　　　　　　　　　Day, date, time

Prisoner signature

MC 273 (3/13)  PERSONAL SERVICE ON PRISONER AND AFFIDAVIT

MCR 2.103(C), MCR 2.105, MCR 5.103(B)

Exhibit 21

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE**

DERRICK LEE CARDELLO-SMITH,

          Plaintiff,

v.

SEAN COMBS,

          Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

SEP 1 3 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

**MOTION FOR TEMPORARY ADMISSION TO PRACTICE**

Pursuant to Rule 8.126 of the Michigan Court Rules (MCR), Attorney David H. Fink,

P28235, moves for permission for the temporary admission of Erica A. Wolff to represent

Defendant Sean Combs in this action. In support of the motion, David H. Fink states as follows:

1.      I am a member of good standing of the Bar of the State of Michigan and am

admitted to practice before the Circuit Court for the County of Lenawee.

2.      Ms. Wolff is licensed to practice and is a member in good standing of the Bar of

the State of New York.

3.      Ms. Wolff's contact information is as follows:

      Sher Tremonte LLP
      90 Broad Street, 23rd Floor
      212-202-2600
      EWolff@shertremonte.com

4.      I have reviewed Ms. Wolff's accompanying affidavit and have made a reasonable

inquiry as to the statements therein.

5.      I believe that the statements made in the affidavit are true and agree to ensure that

the procedures of MCR 8.126 are followed.

1

Based upon the foregoing, and as set forth in Ms. Wolff's affidavit and accompanying

exhibits, I move for permission for the temporary admission of Erica A. Wolff before this Court.

DATED: September 13, 2024

_David Fink_  / NJF
David H. Fink (P28235)
Fink Bressack
38500 Woodward Ave.; Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
dfink@finkbressack.com

# STATE OF MICHIGAN
# IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH,

<div>
       Plaintiff,
</div>

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

v.

SEAN COMBS,

<div>
       Defendant.
</div>

_____/

## AFFIDAVIT OF ERICA A. WOLFF

I, ERICA A. WOLFF, hereby certify pursuant to Rule 8.126 of the Michigan Court Rules (MCR) as follows:

1.      I am an attorney at the law firm of Sher Tremonte LLP, 90 Broad Street, 23rd Floor, New York, New York 10004, attorneys for Defendant Sean Combs in the above-captioned matter.

2.      I submit this affidavit in support of my admission *pro hac vice* to this Court pursuant to Rule 8.126 of the MCR.

3.      As evidenced by the Certificate of Good Standing annexed hereto as **Exhibit A,** I am a member in good standing of the Bar of the State of New York and was admitted to practice in 2010 (Reg No. 4846424). The office maintaining the roll of my admission is the Appellate Division of the Supreme Court of the State of New York, First Judicial Department. Its address is 27 Madison Avenue, New York, New York, 10010.

4.      I am also licensed to practice in the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007 (admitted 2012), the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn,

New York 11201 (admitted 2013), the United States District Court for the Western District of

New York, 2 Niagara Square, Buffalo, NY 14202 (admitted 2023), and the United States Court

of Appeals for the Second Circuit, 40 Foley Square, New York, NY 10007 (admitted 2018).

5.      I am not disbarred or suspended in any jurisdiction.

6.      I am not subject to any pending disciplinary action.

7.      I have no disciplinary dispositions.

8.      I have been requested to represent Defendant Sean Combs in the above-captioned

matter. I am familiar with the facts of this case.

9.      I have associated with David H. Fink (P28235), an attorney admitted in Michigan,

in this action.

10.     Should the Court grant this application, I agree to:

    a.      Be bound by all Michigan disciplinary rules;

    b.      Submit to the disciplinary jurisdiction of this Court;

11.     I have made a payment of $155.00 to the State Bar of Michigan, pursuant to Rule

8.126 of the MCR. The receipt confirming this payment is attached as **Exhibit B.**

12.     I am familiar with the Michigan Rules of Professional Conduct, Michigan Court

Rules, and Michigan Rules of Evidence.

13.     I have not appeared or practiced in any cases in Michigan within the past 365

days.

Erica A. Wolff
Sher Tremonte LLP
90 Broad Street, 23rd Floor
212-202-2600
EWolff@shertremonte.com

STATE OF NEW YORK )
NEW YORK COUNTY )

Signed and sworn before me in New York County, New York, by Erica A. Wolff on September 13, 2024.

Notary Public
State of New York, County of New York
My commission expires December 3 2027

EMILY A. MCDANIELS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02MC0017548
Qualified in King County
Commission Expires December 3, 2027

# EXHIBIT A



*Appellate Division of the Supreme Court*
*of the State of New York*
*First Judicial Department*

---

*I, Susanna M. Rojas, Clerk of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, do hereby certify that*

### Erica Ashley Wolff

*was duly licensed and admitted to practice as an Attorney and Counselor at Law in all the courts of this State on **June 28, 2010**, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors at Law on file in this office, is duly registered with the Office of Court Administration, and according to the records of this Court is currently in good standing as an Attorney and Counselor-at-Law.*



*In Witness Whereof, I have hereunto set my hand in the City of New York on September 13, 2024.*

*Clerk of the Court*

*CertID-00190964*



# Supreme Court of the State of New York
## Appellate Division, First Department

DIANNE T. RENWICK
PRESIDING JUSTICE

SUSANNA MOLINA ROJAS
CLERK OF THE COURT

MARGARET SOWAH
DEPUTY CLERK OF THE COURT

DOUGLAS C. SULLIVAN
DEPUTY CLERK OF THE COURT

To Whom It May Concern

An attorney admitted to practice by this Court may request a certificate of good standing, which is the only official document this Court issues certifying to an attorney's admission and good standing.

An attorney's registration status, date of admission and disciplinary history may be viewed through the attorney search feature on the website of the Unified Court System.

New York State does not register attorneys as active or inactive.

An attorney may request a disciplinary history letter from the Attorney Grievance Committee of the First Judicial Department.

Bar examination history is available from the New York State Board of Law Examiners.

Instructions, forms and links are available on this Court's website.

Susanna Rojas
Clerk of the Court

Revised October 2020

# EXHIBIT B

**SBM** STATE BAR OF MICHIGAN

State Bar of Michigan
306 Townsend St
Lansing, MI 48933-2012
(517) 346-6377

# Pro Hac Vice Application Receipt

Erica Ashley Wolff
90 Broad St Floor 23
New York, NY 10004
United States
EWolff@shertremonte.com

Thank you for your payment. Please note: This payment does NOT constitute your temporary admittance to the State Bar of Michigan. A copy of this receipt must be attached to your motion filed in the court, administrative tribunal or agency, or in the arbitration in which you are seeking temporary admission as required by MCR 8.126.

Only the court, administrative tribunal or agency, or arbitrator may enter an order allowing temporary admission. Once the order is entered, the Michigan attorney must email a copy of the order to ProHacVice@michbar.org (mailto:ProHacVice@michbar.org) as soon as practical.

Credit card: ************1030

Payment Date: 09/13/2024

|  | **Amount** |
|---|---|
| Credit Card Transaction Fee | $3.88 |
| CPF-Pro Hac Vice | $15.00 |
| Pro Hac Vice | $140.00 |
| Total | $158.88 |

This payment may be reversed if your bank or financial institution rejects the payment. If payment is rejected by your bank due to insufficient funds, you will be assessed a $25 fee.

If you require additional assistance, contact ProHacVice@michbar.org (mailto:ProHacVice@michbar.org).

Exhibit 22

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE**

DERRICK LEE CARDELLO-SMITH,

|  |  |
|---|---|
| Plaintiff, | Case No. 2024-7362-NO |
|  | Hon. Anna Marie Anzalone |
| v. | |
| | FILED |
| SEAN COMBS, | 30TH CIRCUIT COURT |
| | SEP 1 7 2024 |
| Defendant. | LENAWEE COUNTY CLERK |
| | ADRIAN, MICHIGAN |

Derrick Lee Cardello-Smith
MDOC # 267009
*Plaintiff, In Pro Per*
Earnest C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
FINK BRESSACK
*Counsel for Defendant*
38500 Woodward Ave.; Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com

Erica A. Wolff (*pro hac vice* motion pending)
SHER TREMONTE
*Counsel for Defendant*
90 Broad St., 23rd Floor
New York, NY 10004
Tel.: (212) 202-2600
ewolff@shertremonte.com

**DEFENDANT SEAN COMBS' EMERGENCY MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN SUPPORT OF HIS EMERGENCY MOTION TO SET ASIDE DEFAULT AND DEFAULT JUDGMENT AND HIS MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

NOW COMES Defendant Sean Combs, by and through his attorneys, and for his Emergency Motion for Leave to File Supplemental Brief brought under MCR 2.119(A)(2)(b), hereby states as follows:

1.      This Complaint was filed on June 10, 2024.

2.      As set forth in an affidavit previously filed with the Court, Mr. Combs was never served with the Summons and Complaint or with Plaintiff's Motion for a Temporary Restraining Order and/or a Preliminary Injunction. Mr. Combs did not learn about this litigation until the entry of the default judgment was reported in the news media on September 9, 2024.

3.      The undersigned counsel were retained to represent Mr. Combs on September 10, 2024 and filed an Emergency Motion to Set Aside Default and Default Judgment and a Motion to Dissolve Temporary Restraining Order on September 12, 2024.

4.      While Mr. Combs moved with all practicable speed to set aside the Default, Default Judgment and the Temporary Restraining Order, his counsel continue to investigate the facts underlying Plaintiff's claims and, after the filing of the Emergency Motion to Set Aside Default and Default Judgment and the Motion to Dissolve Temporary Restraining Order, have discovered additional facts that are relevant to this Court's evaluation of those Motions.

5.      The Supplemental Brief attached hereto as Exhibit 1 will assist the Court in its evaluation of the Emergency Motion to Set Aside Default and Default Judgment and the Motion to Dissolve Temporary Restraining Order because it provides additional evidence of the scheme through which the Plaintiff has been perpetrating a fraud upon this Court, including, among other things, the following:

2

a.   Evidence that the Plaintiff lied to the Court about the alleged events occurring in Adrian, Michigan, while telling another court that the alleged events occurred in Monroe, Michigan;

b.   Evidence that the Plaintiff lied to the Court about Mr. Combs visiting him in prison;

c.   Evidence that the Plaintiff lied to the Court, when he claimed that Mr. Combs was aware of the Complaint and that Mr. Combs had told him: "You can find me in default or whatever.";

d.   Confirmation that, in addition to findings by the Eastern District of Michigan that the Plaintiff is a serial litigant who has filed multiple frivolous lawsuits, a similar determination has been made in the Western District of Michigan;

e.   Evidence that the Plaintiff participated in the fabrication of the false affidavit of Kathryn Lynn Preston, submitted to this Court;

f.   Evidence that the Plaintiff dictated the false allegations in a Petition for Writ of Habeas Corpus, purportedly submitted by Carli Carpenter, and which Plaintiff filed with this Court.

6.   Defendant moves for leave to file the attached Supplemental Brief in Support of the Emergency Motion to Set Aside Default and Default Judgment and a Motion to Dissolve Temporary Restraining Order.

7.   MCR 2.119(A)(2)(b) states that, "Except as permitted by the court or as otherwise provided in these rules, no reply briefs, additional briefs, or supplemental briefs may be filed."

3

8.      MCR 2.119(A)(2)(b) grants a trial court discretion to permit a party to file a supplemental brief. *Northeast Comanche Tribe Inc v Int'l Comanche Society*, unpublished per curiam opinion of the Court of Appeals, issued May 13, 2021 (Docket No. 352490), 2021 WL 1940876 at *5 (noting that "under MCR 2.119(A)(2)(b), the trial court had discretion to permit the [defendant] to file a supplemental brief in support of its motion.") (attached as Exhibit 2).

WHEREFORE, Mr. Combs respectfully asks that the Court grant this Motion for Leave to File a Supplemental Brief in support of his Emergency Motion to Set Aside Default and Default Judgment and the Motion to Dissolve Temporary Restraining Order.

September 17, 2024

Respectfully submitted,

FINK BRESSACK

By: _____
David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com
*Counsel for Defendant*

4

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH,

               Plaintiff,                    Case No. 2024-7362-NO
                                             Hon. Anna Marie Anzalone

v.

SEAN COMBS,

               Defendant.

_____/

| | |
|---|---|
| Derrick Lee Cardello-Smith | David H. Fink (P28235) |
| MDOC # 267009 | Nathan J. Fink (P75185) |
| *Plaintiff, In Pro Per* | David A. Bergh (P83696) |
| Earnest C. Brooks Correctional Facility | Calder A.L. Burgam (P87203) |
| 2500 S. Sheridan Drive | FINK BRESSACK |
| Muskegon, MI 49444 | *Counsel for Defendant* |
| | 38500 Woodward Ave.; Ste. 350 |
| | Bloomfield Hills, MI 48304 |
| | Tel.: (248) 971-2500 |
| | dfink@finkbressack.com |
| | nfink@finkbressack.com |
| | dbergh@finkbressack.com |
| | cburgam@finkbressack.com |

_____/

## DEFENDANT SEAN COMBS' BRIEF IN SUPPORT OF HIS EMERGENCY MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF

NOW COMES Defendant, Mr. Combs, by and through his counsel, and for his Brief in Support of His Emergency Motion for Leave to File Supplemental Brief relies upon the facts, law and court rules set forth in the attached Motion.

WHEREFORE, Mr. Combs respectfully asks the Court to grant this Emergency Motion for Leave to File a Supplemental Brief in support of his Emergency Motion to Set Aside Default and Default Judgment and the Motion to Dissolve Temporary Restraining Order.

5

Respectfully submitted,

September 17, 2024

FINK BRESSACK

By: _____

David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com
*Counsel for Defendant*

6

Exhibit 1

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH,

              Plaintiff,

v.

SEAN COMBS,

              Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

_____/

Derrick Lee Cardello-Smith
MDOC # 267009
*Plaintiff, In Pro Per*
Earnest C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
FINK BRESSACK
*Counsel for Defendant*
38500 Woodward Ave.; Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com

Erica A. Wolff (*pro hac vice* motion pending)
SHER TREMONTE
*Counsel for Defendant*
90 Broad St., 23rd Floor
New York, NY 10004
Tel.: (212) 202-2600
ewolff@shertremonte.com

_____/

**DEFENDANT SEAN COMBS' SUPPLEMENTAL BRIEF IN SUPPORT OF HIS
EMERGENCY MOTION TO SET ASIDE DEFAULT AND DEFAULT JUDGMENT
AND HIS MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND/OR
PRELIMINARY INJUNCTION**

## INTRODUCTION

Defendant Sean Combs submits this Supplemental Brief in support of his Emergency Motion to Set Aside Default and Default Judgment and his Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction (the "Motions"). Since filing his Motions, Mr. Combs has obtained additional information and received additional documents that further demonstrate that Mr. Combs was not served, that Mr. Combs has meritorious defenses, that Plaintiff is unlikely to succeed on the merits, and that Plaintiff has committed a fraud on this Court in obtaining the Injunction Order, the Entry of Default, and the Default Judgment.

### I. Plaintiff Filed Another Complaint in which He Alleges that the Assault Occurred in Monroe, Michigan.

In his Complaint, Plaintiff alleges that he met Mr. Combs at a restaurant in Detroit and that he was then invited to attend a gathering at a Holiday Inn, where the assault allegedly occurred. Complaint ¶ 1. Plaintiff's Complaint states that the Holiday Inn was "located in [text whited-out], MI[.]" *Id.* In the Pre-Trial Statement he filed in this Court, Plaintiff states that "the Sexual Assault happened in the City of Adrian, Michigan[.]" Pre-Trial Statement ¶ 1.

After filing his Motions, Counsel for Mr. Combs learned that Plaintiff had filed another lawsuit against Mr. Combs in the Monroe County Circuit Court. The complaint filed in the Monroe County case (the "Monroe Complaint") was filed on the same day as the Complaint filed in this action.[1] The Monroe Complaint is nearly identical to the Complaint filed in this Court, with one critical exception: The location of the Holiday Inn where the assault allegedly occurred is not whited-out on the Monroe Complaint:

---

[1] The Monroe Complaint was also not served on Mr. Combs. There is nothing on the Monroe County court docket reflecting purported service (or attempted service) of that summons and complaint.

2

**Complaint filed in this action**

1. Defendant Combs did on or about June 14, 1997, in the City of Detroit, Michigan while this Plaintiff was employed as a Bartender at the Restaurant "Fishbones Rhythm Kitchen & Cafe" on Monroe & Brush and Was invited to attend a Gathering at the 'Holiday Inn" located in _____ ", MI  where Defendant Combs had a social gathering and multiple women and other people were in attendance.

**Monroe Complaint**

1. Defendant Combs did on or about June 14, 1997, in the City of Detroit, Michigan while this Plaintiff was employed as a Bartender at the Restaurant "Fishbones Rhythm Kitchen & Cafe" on Monroe & Brush and Was invited to attend a Gathering at the 'Holiday Inn" located in Monroe, MI  where Defendant Combs had a social gathering and multiple women and other people were in attendance.

Exhibit 1 – Monroe Complaint. Plaintiff filed nearly identical complaints in two different counties, without disclosing that fact to either Court and thereafter alleged inconsistent facts about his claim. Plaintiff understood that if his Compliant in this Lenawee County case alleged that the assault occurred in Monroe County, this case would be dismissed. So, he redacted the word "Monroe" from the first paragraph of his Complaint to attempt to conceal his fraud upon this Court. In subsequent filings in this case, he alleged the at-issue conduct occurred in "Adrian, Michigan" (i.e., in Lenawee County), Pre-Trial Statement ¶ 1, even while asserting to another court, in contradiction, that the alleged assault occurred in Monroe. Exhibit 1 – Monroe Complaint.

## II.    Plaintiff Lied to the Court about Mr. Combs Visiting Plaintiff in Prison.

During the August 7, 2024 hearing on his Motion for Temporary Restraining Order and/or Preliminary Injunction, Plaintiff lied to this Court. He claimed that he had two "live, one-on-one

visits in our prison visiting room" in the "past two weeks."[2] One of these alleged meetings was with Mr. Combs, and the other was with a "financial advisor…on Mr. Combs['] behalf." Plaintiff told the Court that Mr. Combs "was selling everything off" because of "other things…going on in his life." Plaintiff also claimed that Mr. Combs made him a settlement offer of $2.3 million. Plaintiff told this Court that "[Mr. Combs] said that he would not be filing an answer to the complaint. He said, 'You can find me in default or whatever.'" All of these statements were false. Mr. Combs' counsel subpoenaed Plaintiff's visitor records from the correctional facility where he is incarcerated. Those records demonstrate that Plaintiff has received only three in-person visitors in 2024—one from Paul Hughes, his attorney, and two from William Proctor, a journalist who has apparently been working with Mr. Cardello-Smith.[3]

| DATE: 09/13/2024 | | MICHIGAN DEPARTMENT OF CORRECTIONS | | PAGE: 1 of 1 |
| | | VISITOR TRACKING - PRISONER VISIT HISTORY | | |
| | | REPORT NUMBER VT-380 | | |
| | | PERIOD: 01/01/2024 TO 09/13/2024 | | |

Prisoner:   267009   Smith Derrick Lee

| Visit ID | Loc | Reg Date/Time | Visitor Name | Time In | Time Out | Term Code |
|---|---|---|---|---|---|---|
| 7228316 | LRF | 07/30/2024 08:21 | Proctor, WILLIAM | 00/00/0000 00:00 | 00/00/0000 00:00 | |
| 7240423 | LRF | 09/05/2024 08:29 | HUGHES, PAUL M | 00/00/0000 00:00 | 00/00/0000 00:00 | |
| | LRF | 09/05/2024 08:29 | Proctor, WILLIAM | 00/00/0000 00:00 | 00/00/0000 00:00 | |

---

[2] As of this writing, the transcript of the August 7, 2024, Injunction Hearing has not yet been prepared. These "quotations" from Mr. Combs are based upon an informal transcription of the video of those proceedings. The transcript has been ordered, but not yet received. A video recording of the August 7, 2024 hearing is available at https://www.youtube.com/watch?v=_rsV-w6_bKE (Last accessed Sept. 17, 2024).

[3] See Exhibit 2, an email message from Plaintiff to William Proctor thanking him for the "Article that you and Mr. Allen Placed out there for me about the Win!" See also an article written by Eddie B. Allen and William Proctor for the Detroit Metrotimes regarding the entry of the Default Judgment. https://www.metrotimes.com/news/michigan-inmate-wins-100-million-judgment-against-sean-diddy-combs-for-sexual-assault-37301149 (last accessed September 17, 2024).

4

Exhibit 3 – Visitor Logs. It could not be more clear that the Plaintiff lied to this Court when he claimed he was visited by Mr. Combs and his financial adviser. That false representation goes to the heart of Plaintiff's claim against Mr. Combs and critically undermines Plaintiff's likelihood of prevailing on the merits (and bolsters Mr. Combs' meritorious defenses) because the lie was intended to persuade the court that Mr. Combs knew about Plaintiff's existence, knew about the lawsuit, chose to default and was willing to pay a large settlement to resolve the claims. None of these things is true.

### III. Two Federal Judges Have Ordered Plaintiff Be Placed on Restricted Filer Status.

Plaintiff has filed dozens of frivolous lawsuits in both state and federal courts. Under 28 USC § 1915(g), an incarcerated plaintiff may not appeal the dismissal of a lawsuit if the plaintiff has, "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" As reported in Defendant's Brief in Support of His Motion to Dissolve Temporary Restraining Order, on October 20, 2021, Judge David M. Lawson of the Federal District Court for the Eastern District of Michigan noted that Mr. Cardello-Smith had filed multiple frivolous lawsuits and had been placed on restricted filing status. *Cardello-Smith v Google LLC*, 2021 WL 4894700 at *2 (ED Mich 2022) (dismissing complaint and noting that "plaintiff has at least four prior civil rights complaints that were dismissed by federal courts for being frivolous, malicious, or for failing to state a claim on which relief could be granted.")

Since becoming aware of this case, Mr. Combs has learned that on February 21, 2023, the Honorable Paul L. Maloney of the Federal District Court for the Western District of Michigan entered an Order dismissing claims asserted by Plaintiff against several corrections officers as

5

meritless and ordering that Plaintiff be placed on restricted filer status under 28 USC § 1915(g).

Exhibit 4 – Judge Maloney Order.

### IV.    In An Attempt to Support His Meritless Claim, Plaintiff Appears to Have Submitted other Forged Documents to the Court.

Plaintiff alleges in this case that Mr. Combs, then-Recorders Court Judge Kym Worthy, then-Sheriff Robert Ficano, and then-Director of the Wayne County Department of Community Justice Warren Evans, along with police officers from multiple jurisdictions, conspired to silence Plaintiff and to frame him for rapes he did not commit. In support of this fantastical narrative, Plaintiff submitted a collection of questionable documents to the Court. One of the documents submitted by Plaintiff is the "Sworn Affidavit of Mrs. Kathryn Lynn Preston," in which Ms. Preston[4] alleges that she was engaged in an extramarital affair with Court of Appeals Judge Brock Swartzle and that Judge Swartzle threatened to rule against Plaintiff in a pending case if she discontinued the affair. Exhibit 6 – Preston Affidavit. The Preston Affidavit is dated June 29, 2024. A couple of weeks before that purported affidavit was filed, on June 11, 2024, Plaintiff sent the following email to Patricia Thompson[5], which shows that the Plaintiff was directly involved in fabricating the Preston Affidavit:

---

[4] Kathryn Preston is an intimate associate of Mr. Cardello-Smith. See Exhibit 5, in which Plaintiff refers to Ms. Preston as "my wife!"

[5] Patricia Thompson is also an intimate associate of Mr. Cardello-Smith. See Exhibit 7, in which Plaintiff refers to her as "my wife!"

From   : DERRICK SMITH, ID: 267009
To : Holy Mother, CustomerID: 31569031
Date : 6/11/2024 12:11:01 PM EST,   Letter ID: 2044777185
Location : LRF
Housing : C UNIT040TOPB

Patricia,
 Pull up what you can on Brock Swartle and see if he is married, how long, and get me anything you can on him,
when you get up, okay.
 Love, Derrick

Exhibit 8 – Email to Patricia Thompson.

Plaintiff also filed in this Court what purports to be a Petition for a Writ of Habeas Corpus filed by Carli Carpenter, in which Ms. Carpenter states that she was not raped by Plaintiff in 1997 and that she was threatened by Detroit Police Officers when she attempted to recant her story (the "Carpenter Petition"). Exhibit 9 – Carpenter Petition. Plaintiff apparently submitted the Carpenter Petition in this case in an attempt to persuade this Court that his claim in this case about being framed for rape had merit. That claim has absolutely no merit and Plaintiff's communications, recently obtained by Mr. Combs' counsel, further corroborate this:  Plaintiff sent emails to Kathryn Preston in which he appears to be dictating the contents of the Petition for a Writ of Habeas Corpus supposedly filed by Carli Carpenter. Exhibit 10 – Carpenter Petition Emails. Additionally, the signature line on the Carpenter Petition bears the address "7541 Yale Road, Avoca, MI 48006." Exhibit 9 – Carpenter Petition. This is Kathryn Preston's address. See Exhibit 11, a civil judgment filed by Plaintiff in this case identifying Kathryn Preston's address as 7541 Yale Road, Avoca, MI 48006.  These records demonstrate that the Carpenter Petition is a forgery orchestrated by Plaintiff.

Respectfully submitted,

September 17, 2024

FINK BRESSACK

By: _____
David H. Fink (P28235)

7

Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com
*Counsel for Defendant*

8

Exhibit 1

STATE OF MICHIGAN
IN THE 38TH CIRCUIT COURT FOR THE COUNTY OF MONROE
CIVIL DIVISION

MR. DERRICK LEE CARDELLO-SMITH,#267009
PROBABLE CAUSE CONFERENCE LITIGATOR
    Plaintiff,                     Case No 2024- 147784     -NO

Vs
                                   Honorable: Judge White

SEAN COMBS (SEAN PUFF DADDY COMBS)
AKA--SEAN P. DIDDY-AKA-DIDDY,
BAD BOY RECORDS LABEL OWNER, FOUNDER,
AKA-PUFFY-P-DADDY. BAD BOY,
(DIDDY RUN THE CITY)
SHAWN COMBS-SHAWN PUFFY COMBS.
    Defendant(s),
_____/

COMPLAINT FOR PERSONAL INJURY
AND OTHER DAMAGES SEEKING MONETARY RELIEF AND JUDGMENT


    Now comes the Plaintiff, Derrick Lee Cardello-Smith Probable
Cause Conference Litigator #267009, in the above cause pursuant
to Michigan Complied Laws Governing Damages and Protections
Against Personal injury and seeking to have Judgement Entered
against the Named Defendants for Personal injury and Other
Injuries related to the facts outlined and detailed within
against the Defendant Sean Commbs and states the following
Factors citing said damages that are being detailed and lodged
against the Defendant Sean Combs.

JURISDICTIONAL STATEMENT

    This court has Jurisdiction to review this claim and subject-
matter as the Plaintiff maintained a residence in Monroe County
at least six (6) months prior to incarceration and filing this
action.

MANDATORY DISCLOSURE STATEMENT

    This plaintiff has filed 3 State Lawsuits. 2 Federal Lawsuits.
Thee Civil Appeals and 3 Criminal Appeals.

DAMAGES SOUGHT

    Plaintiff   seeks   monetary   damages   in   the   amount   of
$100,000,000.00  (ONE  HUNDRED-MILLION  DOLLARS)  against   the
defendant Sean Combs and seeks it in COMPENSATORY, PUNITIVE AND
MONETARY DAMAGES INDIVIDUALLY AND OFFICIALLY.

2.

INJURY CLAIMS AGAINST SEAN COMBS-DEFENDANT

1. Defendant Combs did on or about June 14, 1997, in the City of Detroit, Michigan while this Plaintiff was employed as a Bartender at the Restaurant "Fishbones Rhythm Kitchen & Cafe" on Monroe & Brush and Was invited to attend a Gathering at the 'Holiday Inn" located in Monroe, MI where Defendant Combs had a social gathering and multiple women and other people were in attendance.

2. Plaintiff was excited to attend this gathering and did so, because this is Sean Puff Daddy Combs" "Bad Boys"!!!

3. Plaintiff had participated in and consumed alcohol with Mr. Combs and the ladies and other security, Puffy was schockingly cool and someone who seemed like a really decent normal guy....

4. Plaintiff Was astonished and so happy to be able to attend such a thing and the afterparty, wow..just amazing.

5. Plaintiff saw that there were at least 20 women present and 2 of the women wanted to go into the main suite/room and they walked in and Sean Motioned me to come with them while 2 guards stood out front...one was C-note "Terrell" and the one was Mike! and he said, have fun, but watch yourself with him! I said him who? He said, You will see!

6. As the night went on, the women were actually drinking and I was drinking more and they smoked some weed, I do not smoke weed but I was happy to be there, I mean I am in my 20's so I was in heaven...

7. I then started to get naked with the women and the next thing I know, we are all naked and Mr. Combs was Naked too and then, we were all participating in sexual activity, then, while I was engaged in performing oral sex on one of the ladies, Tanya! I felt a Hand stroke my left butt cheek and it was not soft, it was a mans hand and I looked up and saw that it was Mr. Combs... I was frozen with fear...I stopped and then needed to calm myself...so I got up and sat on the couch...the ladies were sexually into each other and I was just frozen and could not move...

8. I then went to get another drink and Sean asked me if I needed something else? I said no, and he said here, drink this one, and I thought it was another Glass of Jim Beam, so I took it because I had sat one down in the other room, and then I drank some more, and I stayed sitting there and began getting drowsy and started to pass out and then Sean Combs said to me.. I added a little something to it for you...I will get that from you anyway, one way or another.. I then passed out.

9. Hours later, I awakened to The women moaning and Mr. combs Penetrating one of of them with his Penis into her Anal Cavity

and then he saw me and said "I did this to you too!" Did you like it? I said what? I ran into the bathroom, checked myself and saw that I was bleeding and in pain, I ran out and left and never went back..

10. I contacted the Police about it and a report was taken and made, and then, I shut down and knew that I was never going to be able to tell anyone about this...I finally have been able to realize that I did nothing wrong.

12. It took years of Therapy in Prison to help me realize that this abuse coupled with the other abuse I suffered at by priests made me see that I was not the one who was wrong, but that my attacker is wrong and That I am a survivor, and I am not responsible for what has happened to me.

14. The defendant raped me! The Defendant sexually assaulted me! The defendant paid Detroit and Monroe Police Officers to keep it hidden and they hid it very very well...and have kept it hidden for many decades...but not anymore..I am a Victim of his Physical, Sexual, Psychological, emotional assaults he placed upon me when I did not deserve this kind of act or acts to be done upon me, and it is completely wrong what has transpired and it is horrible and he must be held to account for these horrific actions he committed upon me.

15. I am asking this Court to Enter Judgement against Mr. Combs because I have been the Victim of Sexual Assault by this man and it is contrary to Michigan Complied Law 750.520 and it violated Federal Laws as well as that he has left different states to do this act...

I ask for a total of $100,000,000.00 (One Hundred Million Dollars to be entered against this Defendant for the Personal injury his crime has placed upon my life and upon me, because it is horrible and it is wrong what he has done and it is something that he must be held accountable for...

I ask for Judgement in my Favor and I ask that this is done immediately.

## RELIEF REQUESTED

Wherefore, Plaintiff Prays this court will enter judgement in favor of the Plaintiff for the amount of $100,000,000.00 (One-hundred Million Dollars) in Compensatory, Punitive, Monetary Damages and Grant any further relief this Court deems necessary and appropriate.

Respectfully Yours,                                    May 31, 2024

Mr. Derrick Lee Cardello-Smith #267009
Probable Cause Conference Litigator

4.

Plaintiff in Pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

Exhibit 2

DERRICK SMITH 267009 LRF Lock:C UNIT040TOPB  ID:2105899206  [P 1/1]

*You have received a* **jpay** *letter, the fastest way to get mail*

From   : DERRICK SMITH, ID: 267009
To :  William N Proctor,  CustomerID: 18414073
Date :  9/10/2024 9:24:54 AM EST,    Letter ID: 2105899206
Location :  LRF
Housing :  C UNIT040TOPB


Mr. Proctor,
  I was just able to talk to Patricia this morning  and I found out about the Article that you and Mr. Allen Placed out
there for me about the Win!
  WOW!!!!
  That is amazing!
  I could not get the phone at all for a few days because of Prison Stuff, but that is amazing!
  YOU SLY DOG!
  I had no idea you 2 were working on that!
  You are amazing!
  I see I have some messages from you too!
  I will read them and get back to you!
  I cannot wait to talk to you today!
  Derrick

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

Exhibit 3

DATE:  09/13/2024                   MICHIGAN DEPARTMENT OF CORRECTIONS                   PAGE: 1 of 1
                                    VISITOR TRACKING - PRISONER VISIT HISTORY
                                          REPORT NUMBER VT-380
                                     PERIOD: 01/01/2024 TO 09/13/2024

Prisoner:    267009   Smith Derrick Lee

| Visit ID | Loc | Reg Date/Time | Visitor Name | Time In | Time Out | Term Code |
|----------|-----|---------------|--------------|---------|----------|-----------|
| 7228316 | LRF | 07/30/2024 08:21 | Proctor, WILLIAM | 00/00/0000 00:00 | 00/00/0000 00:00 | |
| 7240423 | LRF | 09/05/2024 08:29 | HUGHES, PAUL M | 00/00/0000 00:00 | 00/00/0000 00:00 | |
| | LRF | 09/05/2024 08:29 | Proctor, WILLIAM | 00/00/0000 00:00 | 00/00/0000 00:00 | |

Exhibit 4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
————

DERRICK LEE SMITH,

                Plaintiff,

v.

JASON BROCK et al.,

                Defendants.

_____/

Case No. 1:22-cv-634

Honorable Paul L. Maloney

## **OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint[1] indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] The Court has denied Plaintiff's motion to supplement his complaint (ECF No. 7). Accordingly, the complaint under review is Plaintiff's initial complaint (ECF No. 1).

## Discussion

### I.        Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, apparently occurred at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan, the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan, the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan, and the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. (Compl., ECF No. 1, PageID.11.)

Plaintiff sued MDOC Director Heidi Washington, LRF Inspector Mr. Plichta, Sergeant Chauvez, MCF Corrections Officer J.B., Customer Privacy Inc., a long list of websites (".COM.s"), Liars Cheaters and Bastards, Inc., Cheaters and Bastards, Inc., the staff and owners of Liars Cheaters and Bastards, the owners of Cheaters and Bastards, all affiliates, contractors, lawyers, and owners of BS Corp, Tucows Inc., and all employees and officials of the ".COM's" and other entities, Google LLC, Google Inc., Microsoft LLC, Joanne Theakston, Juliette Bird, Prosecutor Kim Worthy, Assistant Prosecutors Deyana Unis and Suzette Samuels, Carli "Carpernter (Boike)," and Heather Lynn Nielsen. (*Id.*, PageID.1–4.)

Plaintiff alleges no facts in the complaint. He simply lists constitutional rights violated and causes of action. (*Id.*, PageID.6, 8, 10.) He indicates that a brief with the details will follow, but he never filed such a brief. Instead, he filed, without leave, an entirely new complaint based on events occurring months after he filed the initial complaint. The Court denied Plaintiff leave to proceed under that complaint.

Plaintiff seeks $2,000,000.00 in damages.

2

## II.     Plaintiff's Pending Motions

Plaintiff has filed several motions: a motion asking the Court to conduct a preliminary screening (ECF No. 9); a motion asking the Court to consider the interests of justice in reviewing Plaintiff's complaint (ECF No. 13); another motion asking the Court to conduct a preliminary screening (ECF No. 15); and a motion asking the Court to direct the MDOC to approve prisoner-to-prisoner correspondence between Plaintiff and a list of eighteen prisoners that he contends are witnesses in pending cases (ECF No. 20).

The Court will grant Plaintiff's motions to conduct a preliminary screening and to consider the interests of justice in that process. (ECF Nos. 9, 13, 15.) Plaintiff's motion to compel the MDOC to approve prisoner-to-prisoner correspondence (ECF No. 20), on the other hand, will be denied as moot because Plaintiff's claims are properly dismissed for failure to state a claim.

## III.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must

make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has

consistently held that damage claims against government officials arising from alleged violations

of constitutional rights must allege, with particularity, facts that demonstrate what each defendant

did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir.

2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where

a person is named as a defendant without an allegation of specific conduct, the complaint is subject

to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v.*

*Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the

complaint did not allege with any degree of specificity which of the named defendants were

personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*,

No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*,

159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each

defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990)

("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally

devoid of allegations as to them which would suggest their involvement in the events leading to

his injuries."). In this action, Plaintiff fails to allege any facts in his complaint. Plaintiff's

allegations therefore fall far short of the minimal pleading standards under Fed. R. Civ. P. 8

(requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Accordingly, his complaint is properly dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court

determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C.

§ 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action

would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v.*

*Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that

Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might

raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

Accordingly, the Court certifies that an appeal would not be taken in good faith. Moreover,

Plaintiff is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated:   February 21, 2023               /s/ Paul L. Maloney
                                         Paul L. Maloney
                                         United States District Judge

Exhibit 5

*You have received a* **jpay** *letter, the fastest way to get mail*

From    : DERRICK SMITH, ID: 267009
To :  Kathy  Preston,  CustomerID: 28208189
Date :  7/6/2024 8:23:51 AM EST,    Letter ID: 2061759525
Location :  LRF
Housing :  C UNIT040TOPB


Hello to you my wife!
 Good Morning to the hottest woman on the planet!
 I love you and I cannot wait to speak to you this morning!
Just waiting on the phone!
 Love, Derrick

Exhibit 6

#1

State of Michigan
St. Clair County

Sworn Affayidit
of Mrs. Kathryn Lynn Preston

I have recently ended an ongoing
sexual relationship with Honorable
Brock Swartzle, Court of Claims, Judge
he stated that if I ended the
relationship he would deny the appeal
of Derrick lee Cardello Smith 267609
in Case # 369646 and use his
influence to deny other criminal
appeals and civil cases. In May
2024 he said he would preside
over Smith cases in June he would
grant the appeal If I had sex
with him again if not he would
deny it in June under Case
# 369646. I ended it with
him, he is married and I am married
this is wrong. He is a horrible
manipulator rapist. I will
testify to these events because
they are true, real, and happened.

06/29/2024
Austin Thornton
Notary Public

Austin Thornton
Notary Public, State of Michigan
County of St. Clair
My Commission Expires 7/15/2030
Acting in the County of St. Clair

Kathryn Preston

Exhibit 7

*You have received a* **jpay** *letter, the fastest way to get mail*

From   : DERRICK SMITH, ID: 267009
To :  Holy  Mother,  CustomerID: 31569031
Date :  7/4/2024 11:22:08 PM EST,    Letter ID: 2061029003
Location :  LRF
Housing :  C UNIT040TOPB


Patricia,
   Sweetheart my love, I just got off the phone with you and wanted to say Good Night To you my wife!
   I will be holding you when you come into bed, you smell like ice Cream and Chili Pepper:)
   I love you sweetheart, very much!
   Good Night myBlack Bra wearing Woman!
   Love, Derrick

Exhibit 8

**DERRICK SMITH 267009 LRF Lock:C UNIT040TOPB  ID:2044777185  [P 1/1]**

*You have received a JPay letter, the fastest way to get mail*

From    : DERRICK SMITH, ID: 267009
To :  Holy  Mother,  CustomerID: 31569031
Date :  6/11/2024 12:11:01 PM EST,     Letter ID: 2044777185
Location : LRF
Housing :  C UNIT040TOPB


Patricia,
  Pull up what you can on Brock Swartle and see if he is married, how long, and get me anything you can on him, when you get up, okay.
  Love, Derrick

*JPay Tell your friends and family to visit www.jpay.com to write letters and send money!*

Exhibit 9

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIG
### SOUTHERN DIVISION

**FILED - MQ**

May 3, 2024 10:56 AM

U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ___slk___ / NC 534

**CARLI CARPENTER, TRIAL COURT
CRIMINAL COMPLAINANT
ON BEHALF OF MDOC PRISONER
#267009 DERRICK LEE CARDELLO-SMITH,**
   Petitioner,

CASE NC **1:24-cv-465**

Phillip J. Green - Magistrate Judge

VS

ASSIGNED JUDGE

C. KING, Warden,
KYM WORTHY, Wayne County Prosecutor,
PATRICIA PENMAN, Detective Wayne County
DEYANA UNIS, Ass't Wayne Prosecutor,
BRIDGET HATHAWAY, Judge,
   Respondents,

_____/

## PETITION FOR WRIT OF
## HABEAS CORPUS UNDER
## 28 U.S.C. § 2254 SEEKING RELEASE
## OF A WRONGFULLY HELD PRISONER
## IN THE RESPONDENTS CUSTODY

   My name is Carli Carpenter, This is the first time I have filed anything such as this seeking the actual release of someone, so please excuse me if I do not get this right as an expert, lawyer, but when I googled how to do it, it said to simply file this and that the Laws and Rules were on my side to do this on behalf of someone to get them out of prison and so, here I am, presenting this writ of habeas corpus to the courts seeking release of Prisoner Derrick Lee Cardello-Smith #267009 from his wrongfully imposed conviction that I helped contribute to.

   I am the person who offered testimony in the criminal case that has resulted in the respondents holding Prisoner Derrick Lee Smith #267009, in custody at various Michigan Department of Corrections Facilities.

**(1)**

23.

The Basis for his being held is a result of the criminal prosecution done by Wayne County Prosecutor Kym Worthy's Office located at 1441 St. Antoine Street, Detroit, MI 48226.

The case was prosecuted by the Assistant Wayne County Prosecutor Deyana Unis who conducted the proceedings in the Wayne County Circuit Court with Judge Bridget Hathaway presiding over the criminal prosecution of the case against Cardello-Smith in 2019 and it was a case that was very emotionally charged I must say.

The testimony I provided in the criminal case is testimony that resulted in Cardello-Smith being convicted in the Wayne County Circuit Court, I had specifically told Prosecutor Kym Worthy that there was money that changed hands during the lead up to the Criminal Prosecution where I attended meetings with Patricia Penman and Deyana Unis, and they gave me over $4,000.00 to go through with the case, something about, their record and how they are working with the people in the MDOC because of Cardello-Smith always suing people and being a nuisance... Patricia Penman seemed to have a personal history with Derrick though, it was weird. But I needed the money and they said that if I did not go through with it, then they would get me for filing a false police report back in the day, so I did it, I figured he was already in prison so; what is the difference... That is not right though. I should not have done that and I am seeking to have this court grant this writ to get him out and have him released because he should not be in prison since he did not Do any crime against me. I was convinced by Deyana Unit and Especially Patricia Penman to Say Derrick Committed a Rape upon me and he did not do that to me... I did not tell the truth. I am therefore seeking his release from Prison on this because I did not tell the truth and my statements is what got this going in the first place.

So, what does the court need from me and what does the court need me to do? If you need me to testify that he did not rape me then I will

24.

testify to it because he did not rape me and I was wrong for saying he did. I have contacted Kym Worthy, Deyana Unis, Patricia Penman all with no results, so I looked on Google and Bing to see how to do this right and here I am, so, can you please tell me what you need from me to get his Writ Granted and Get him out of Prison on this Case that he did not do?

I have been contacted by so many different people about this and I had to leave my main residence and stay at a safe place. I am giving you my address on here Judge. Please contact me and tell me what I have to do to get Him released from prison, I got him in there and I am wrong for this and he should be out, please let me know if you need to appear Personally, On Zoom, or anything else.. Derrick Lee Cardello-Smith did not rape me and Wayne County Officials threatened me with prosecution from a report I made when I was working as an exotic dancer back in the late 90's.. I will need some kind of legal immunity if possible, I was a younger person then, 18 years old and had alot of problems. So I filed the report and got the attention I wanted back then, and all these years later, I am told that because I filed a Fasle Police Report, I will be prosecuted, and then I get paid to go through with the case by Patricia Penman threatening me!!!, I cannot trust police, lawyers or prosecutors, but I know the federal courts have more trust and respect and do not threaten people to lie just to get someone locked up, so if you can tell me when to appear in court, I will do it.. Please grant him release because he did not Rape me.. Thank you for your time.....

### RELIEF I'M ASKING FOR

I ask the Court, the Judge to Grant the Writ of Habeas Corpus and Order the Release of MDOC PRISONER #267009, Derrick Lee Cardello-Smith because he did not rape me and police forced me to go through with the Criminal Case, He should be released since he did not hurt me at all, I will testify if the court wants it. Thank you.

April 30, 2024

*Carli Carpenter*

Carli Carpenter
7541 Yale Road
Avoca, MI 48006

(3)

25.

Exhibit
10

*You have received a* **jpay** *letter, the fastest way to get mail*

From   : DERRICK SMITH, ID: 267009
To :  Kathy  Preston,  CustomerID: 28208189
Date :  5/24/2024 3:20:29 PM EST,    Letter ID: 2032671193
Location :  LRF
Housing :  C UNIT040TOPB


I am the Complainant in the Criminal case.
The Case is 2019-000756-01-FC
Wayne County Circuit Court-
The report was made by me on 10-12-97.
I was 18 and young, I had sex with 2 men, and 1 was black.
  I did not want my Dad to know I worked as an exotic Dancer. So I made up the Report.

*You have received a jpay letter, the fastest way to get mail*

From : DERRICK SMITH, ID: 267009
To : Kathy Preston, CustomerID: 28208189
Date : 5/24/2024 3:22:09 PM EST, Letter ID: 2032672199
Location : LRF
Housing : C UNIT040TOPB

After I made the report in 97, I left the issue alone.
Patricia Penman, a detective contacted me in 2018 and asked me to go through with it.
I said no...She said that she would prosecute me for filing a false police report.
So, I went through with it.
She also paid me $4,000.00 to go through with it....
I needed the money, so I did.

jpay Tell your friends and family to visit www.jpay.com to write letters and send money!

**DERRICK SMITH 267009 LRF Lock:C UNIT040TOPB ID:2032679959 [P 1/1]**

*You have received a* **jpay** *letter, the fastest way to get mail*

From   : DERRICK SMITH, ID: 267009
To :  Kathy  Preston,  CustomerID: 28208189
Date :  5/24/2024 3:35:06 PM EST,    Letter ID: 2032679959
Location :  LRF
Housing :  C UNIT040TOPB


I am the Petitioner, Carli Carpenter, and I am asking you to reconsider your May 23,2024 decision in which you denied the Writ I filed to have a man put in prison that I lied on and I said committed a crime against me in1997.
 Patricia Penman Paid Me to say that Derrck raped me...He did not...
 Your Job is to effect Justice and your honor, you denied my writ I filed to get him out...

DERRICK SMITH 267009 LRF Lock:C UNIT040TOPB  ID:2032673924  [P 1/1]

*You have received a* **jpay** *letter, the fastest way to get mail*

From   : DERRICK SMITH, ID: 267009
To :  Kathy  Preston,  CustomerID: 28208189
Date :  5/24/2024 3:24:55 PM EST,    Letter ID: 2032673924
Location : LRF
Housing :  C UNIT040TOPB

I am filed the Writ of Habeas Corpus to get Derrick out of prison because He did not hurt me...
I contacted the prosecutor Kym Worthy in Wayne County, She did not care.
She only wants to keep her winning streak.
She knows that the CSC Charges Derrick is serving for are all false.

DERRICK SMITH 267009 LRF Lock:C UNIT040TOPB  ID:2032677918  [P 1/1]

---

You have received a **jpay** letter, the fastest way to get mail

---

From   : DERRICK SMITH, ID: 267009
To :  Kathy  Preston, CustomerID: 28208189
Date :  5/24/2024 3:31:34 PM EST,    Letter ID: 2032677918
Location :  LRF
Housing :  C UNIT040TOPB


I am asking for reconsideraton because Derrick Did not Commit any Crime upon me or anyone he is in prison for.
 I am Asking this court to reconsider this because It is wrong and I should not have lied to get him in prison.
 I am one of 3 women who were paid to lie in 1997 and in 2008 that Derrick raped us and he did not...So he should not be in prison and This court is going to allow him to remain in prison because I am not his Next Friend.
 This is a Travesty and Your Honor, I was under the Impression that you and the courts do not like to keep innocent me locked away, but you did not grant it, and you should because Derrick is not guilty.

---

DERRICK SMITH 267009 LRF Lock:C UNIT040TOPB  ID:2032682330  [P 1/1]

*You have received a* **jpay** *letter, the fastest way to get mail*

From    : DERRICK SMITH, ID: 267009
To :  Kathy  Preston, CustomerID: 28208189
Date :  5/24/2024 3:39:14 PM EST,    Letter ID: 2032682330
Location :  LRF
Housing :  C UNIT040TOPB

I am a citizen of the State of Michigan.
  My Police Report I made in 1997 has a Man locked up for a crime he never did against me.
  Can you tell me why You Judge Jonker will not  let me, the person who put him in prison, to get him out?
  It makes no sense for you to have the power you have to let an innocent man out and you will not...
  I cannot be a Next friend.. I am just trying to get a man out because some dirty police officers, Named Penman, Cobb, Mcneal, Diaz and Archer have paid me in 2018 to go through with it and told me that if I do not, then, They would place me prison for a false police report.

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

*You have received a* **jpay** *letter, the fastest way to get mail*

From   : DERRICK SMITH, ID: 267009
To :  Kathy  Preston,  CustomerID: 28208189
Date :  5/24/2024 3:42:26 PM EST,    Letter ID: 2032684084
Location : LRF
Housing :  C UNIT040TOPB

I am 1 of a group of women that were paid to lie against not only Derrick, But other Men over many years, out of
Detroit... I wanted money and the cops paid us money..
 My Conscience has gotten to me, and not only myself, But Tina, Mary, Robin, Joanne, Andrea, a lot of us were paid
to lie on so many people.
 I am consulting with a Lawyer...So I can have my interests protected..But I know this.
 You should grant this Your Honor.
 Thank you..

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

Exhibit 11

Approved, SCAO

|  | | Original – Court<br>1st copy – Plaintiff<br>2nd copy – Defendant |
|---|---|---|
| **STATE OF MICHIGAN**<br>**JUDICIAL DISTRICT**<br>**16TH   JUDICIAL CIRCUIT** | **JUDGMENT**<br>Civil | **CASE NO.**<br>2023-002165-CH |

| Court address | Court telephone no. |
|---|---|
| 40 N. MAIN STREET, MT. CLEMENS, MI 48043 | 586-469-5351 |

| Plaintiff(s) | | Defendant(s) |
|---|---|---|
| DERRICK LEE CARDELLO-SMITH 267009 | v | GEORGE THOMAS PRESTON, KATHRYN LYNN PRESTON |

Plaintiff's/Plaintiff's attorney name, address, and telephone no.

1576 W. BLUEWATER HWY
IONIA, MI 48846

PLAINTIFF IN PRO PER

Defendant's/Defendant's attorney name, address, and telephone no.

7541 YALE RD.
AVOCA, MI 48006

DEFENDANTS IN PRO PER

☑ **JUDGMENT**

For: __PLAINTIFF__

Against: __DEFENDANT__

☐ Trial          ☑ Consent
☐ Summary Disposition   ☐ Default*

☑ **DISMISSAL**
☐ Without prejudice    ☑ With prejudice
☐ No cause of action

*For a defendant on active military duty, default
judgment shall not be entered except as provided by
the Servicemembers Civil Relief Act.

| ORDER OF JUDGMENT NOT INCLUDING STATUTORY INTEREST | |
|---|---|
| Damages: | $ 47,000.00 |
| Costs (fees): filing $ 175.00  jury $ 0.00  motion $ 0.00  service $ 17.34<br>statutory $ 0.00  (MCL 600.2441) | $ 192.34 |
| Attorney fee: ☐ statutory  ☐ other (specify) | $ 0.00 |
| Total judgment amount (This judgment will earn interest at statutory rates, computed from the filing date of the complaint.): | $ 47,192.34 |

☑ The defendant shall pay the judgment in installment payments of $_____ each _____ starting
_____ until the judgment is paid in full. The plaintiff shall not issue a periodic garnishment as
long as payment is made.
Other conditions, if any: JOINT STIPULATED SETTLEMENT AGREEMENT & DISMISSAL-PLAINTIFF RECEIVES 20 ACRES FARM

☑ Approved as to form, notice of entry waived.
**IT IS ORDERED** that this judgment is granted.
This judgment resolves the last pending claim and closes the case unless checked here. ☐

| 9-12-23 | |
|---|---|
| Judgment date | Judge   Bar no. |
| _Derrick Lee Smith_ | _Kathryn Preston_ |
| Plaintiff/Attorney | Defendant/Attorney |

Judgment has been entered and will be final unless a motion for new trial or an appeal is filed within 21 days after the judgment date.

| STATUTORY INTEREST | |

The judgment interest accrued from the filing of the complaint to judgment is $_____ and is based on:
(If additional rates apply, attach a separate sheet.)
☐ the statutory rate of _____% from _____ to _____
☐ the statutory 6-month rate(s) of _____% from _____ to _____ and
_____% from _____ to _____

| CERTIFICATE OF MAILING |   I certify that on this date I served a copy of this judgment on the parties or their attorneys by
first-class mail addressed to their last-known addresses as defined by MCR 2.107(C)(3).

| Date | |
|---|---|
| | Signature |

MC 10  (3/16)  **JUDGMENT, CIVIL**
MCL 600.2441, MCL 600.5759, MCL 600.6013, MCL 600.8376, MCR 2.601,
MCR 2.602, MCR 2.603, 50 USC App 521

9-

Exhibit 2

Northeast Comanche Tribe, Inc. v. International Comanche..., Not Reported in N.W....

2021 WL 1940876

2021 WL 1940876
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

NORTHEAST COMANCHE
TRIBE, INC., Plaintiff-Appellant,
v.
INTERNATIONAL COMANCHE
SOCIETY, Defendant-Appellee.

No. 352490
|
May 13, 2021

Grand Traverse Circuit Court, LC No. 2019-034836-CZ

Before: Sawyer, P.J., and Stephens and Rick, JJ.

**Opinion**

Per Curiam.

**\*1** In this action for declaratory and injunctive relief,
plaintiff appeals the circuit court's order dismissing its
complaint with prejudice for failing to comply with a
stipulated order. We affirm.

I. UNDERLYING FACTS

This case involves a dispute over who is the legitimate
governing board of plaintiff, the Northeast Comanche Tribe,
Inc. (NE Tribe), an organization whose members own
and fly Comanche airplanes.[1] The NE Tribe is affiliated
with defendant, the International Comanche Society, whose
purposes, according to its articles of incorporation, include
to "enable Comanche pilots to meet and become better
acquainted." The NE Tribe is a regional branch of the ICS
membership.

In 2014, the NE Tribe members elected C.J. Stumpf its
Tribe Chief, and, from 2014 to 2018, Stumpf and the other
elected officers served as the Tribe's governing board. In
2018, NE Tribe member Av Shiloh began questioning the

Tribe's election process. Shiloh maintained that the NE Tribe
had not held proper annual member voting elections since
2015, and that its officers, including Stumpf, had held their
offices for more than two consecutive years in violation of the
NE Tribe's bylaws. Shiloh referred to provisions of a set of
bylaws that had been posted on the NE Tribe's website, but
were removed in or near October 2017.[2]

However, Stumpf maintained that she and her fellow officers
had been reelected in duly conducted annual elections held
from 2015 through 2018, and that an election was set to
be held in August 2019. She further denied that the bylaws
put forward by Shiloh were those of the NE Tribe. Stumpf
maintained that the NE Tribe never adopted bylaws and was
governed under the corporate law of its state of incorporation,
Kansas. According to Stumpf, none of the NE Tribe members
she surveyed, whose membership dated back to the Tribe's
1992 incorporation, had any recollection of the NE Tribe's
ever adopting any bylaws, and her "thorough review" of the
Tribe's meeting minutes and other records reflected that the
Tribe had never done so.

Shiloh raised the issue with ICS leadership, whose
investigation found no evidence of any NE Tribe elections
since 2015. This placed the legitimacy of the Tribe's officers,
including Chief Stumpf, in question.

On February 2, 2019, the ICS Board revoked Stumpf's
membership, citing her involvement in disseminating
misleading and false information on a website, social media
posts, and in e-mails, along with the lack of elections for the
NE Tribe's officers in recent years, and Stumpf's insistence
that the Tribe did not have bylaws. According to the ICS, the
revocation of Stumpf's membership left the NE Tribe without
a Tribe Chief. On February 18, 2019, the ICS Board contacted
the NE Tribe's membership and called for nominees for an
election of the Tribe's governing board to be conducted on the
ICS's voting platform.

**\*2** On March 8, 2019, plaintiff's counsel sent the ICS a
written demand to cease and desist from interfering with
the NE Tribe's internal affairs and governance. Stating that
the ICS was proceeding under the mistaken premise that the
NE Tribe was governed by bylaws, plaintiff demanded an
immediate retraction of its call for the Tribe's election. The
ICS ignored plaintiff's demand and proceeded with the NE
Tribe's election, commencing member voting on March 11,
2019.

Case 5:24-cv-12647-JEL-KGA ECF No. 1, PageID.377 Filed 10/07/24 Page 377 of 570

Northeast Comanche Tribe, Inc. v. International Comanche..., Not Reported in N.W....

2021 WL 1940876

On March 22, 2019, plaintiff initiated this lawsuit seeking injunctive relief, "including enjoining and restraining the ICS from counting the subject election process," and a declaratory judgment that the results of the election commenced by the ICS "are null and void." Plaintiff also sought a temporary restraining order to stop the election on the grounds that the NE Tribe already had a duly elected governing board, including Tribe Chief Stumpf, that the ICS had no authority to conduct an election for the Tribe, and that the election was conducted on the basis of purported bylaws that the NE Tribe never adopted.

Meanwhile, on March 25, 2019, the voting of the NE Tribe's membership under the ICS's auspices ended. The votes were tallied, and the resulting slate of officers included Shiloh as Tribe Chief.

On April 8, 2019, the trial court heard and denied plaintiff's motion for a temporary restraining order. There, plaintiff again maintained that the purported bylaws were "bogus," and that no members of the NE Tribe recalled ever adopting any bylaws, nor did any meeting minutes exist indicating that the Tribe ever did so, while the ICS asserted otherwise and put forward the purported bylaws as applicable to the NE Tribe. The litigation proceeded to discovery.

In July 2019, Malcolm Dickinson, the putative incumbent Treasurer of the NE Tribe, discovered some bylaws-related documents in an envelope in a box that suggested that the NE Tribe had in fact adopted bylaws. Specifically, Dickinson found an April 1992 NE Tribe newsletter that stated, "A major item of business is the tribe's decision on incorporation as a membership non-profit corporation and the adoption of a set of bylaws," and that the business of the NE Tribe's 1992 annual meeting would include incorporation and bylaws. Embedded in the newsletter was a set of bylaws. Dickinson also found a July 28, 1992 report from the then Tribe Chief of the NE Tribe indicating that the Tribe voted to incorporate as a membership, nonprofit corporation in the State of Kansas, and adopted its first set of bylaws "which are patterned after that suggested by ICS." Dickinson also found a letter from a past NE Tribe treasurer, dated November 5, 1998, stating that a copy of the NE Tribe bylaws, as well as the ICS bylaws, had been forwarded to him. The 1998 letter questioned whether the current officers had been elected in compliance with the NE Tribe's bylaws, and referred to a requirement that there be an annual meeting of the Tribe membership for the purpose of electing officers. The purported bylaws the former treasurer quoted in his letter contain very similar language to that of

the bylaws that the ICS put forward as those of NE Tribe. After discovering these documents, Dickinson sent an email to Stumpf and the other putative officers of the NE Tribe, and to plaintiff's counsel, explaining that he had "opened a box" and found the historical records, and forwarding the documents to them. The putative officers, including Stumpf, were not persuaded that bylaws had actually been adopted.

*3 Meanwhile, issues with discovery compliance arose, including plaintiff's failure to provide answers to the ICS's discovery requests and to cooperate with scheduling depositions, culminating in the ICS's July 23, 2019 motion to dismiss plaintiff's complaint for discovery violations, or, alternatively, to compel discovery. The parties resolved the issues by negotiating an agreement in the form of a stipulated order, which the trial court entered on August 13, 2019. The order included the following provisions:

> IT IS FURTHER STIPULATED, AGREED AND ORDERED that, on or before August 26, 2019, Plaintiff shall provide Defendant full and complete answers to discovery requests served on it by Defendant;

> IT IS FURTHER STIPULATED, AGREED AND ORDERED that persons Plaintiff claims to be its governing body, including CJ Stumpf, Pete Morse, Malcom Dickerson [sic], and Ron Ward, shall not hereafter access information from the ICS member directory (ie. email list, addresses ect. [sic]) or cause anyone to access the ICS member directory (ie. email list, addresses ect. [sic]), or use information hereafter obtained from the ICS membership directory, directly or indirectly;

> IT IS FURTHER STIPULATED, AGREED AND ORDERED that, in the event Plaintiff fails to strictly comply with any aspect of this Stipulated Order, then Plaintiff's Complaint, including all claims asserted against Defendant therein, shall be dismissed with prejudice[.]

According to the ICS, the purpose of the provision prohibiting Stumpf and the other putative officers from accessing and using information from the ICS's member directory was to prevent "Stumpf and other rogue members of the shadow Northeast Tribe from continuing to meddle in International Comanche Society (ICS) affairs by improperly accessing ICS membership directory/contact information and email blasting the ICS to badmouth the organization or any of it[s] members ...."

Case 5:24-cv-12647-JEL-KGA   ECF No. 1, PageID.378   Filed 10/07/24   Page 378 of 570

Northeast Comanche Tribe, Inc. v. International Comanche..., Not Reported in N.W....

2021 WL 1940876

On August 28 and 29, 2019, a few days past the stipulated order's discovery deadline, plaintiff served, via mail, its answers to the ICS's interrogatories and requests for production. In its answers, plaintiff asserted that "[a]ll Nor'easters and records reviewed are totally silent on Northeast bylaws," and then detailed how several former officers, covering the past 25 years, variously did not recall ever adopting bylaws, asserted that there were no bylaws, or indicated that they had discussed creating bylaws but never took any official action. Plaintiff's answers never mentioned, and apparently did not produce, the documents Dickinson had discovered a month earlier suggesting that the NE Tribe had in fact adopted bylaws.

On October 29, 2019, Stumpf sent an e-mail to ICS members voicing her concerns with the current ICS leadership, and promoting the opposing candidates running for ICS offices. [3] The ICS maintained that Stumpf's e-mail directly violated the stipulated order prohibiting her from accessing or using information from the ICS member directory.

On November 18, 2019, the ICS, citing plaintiff's failure to provide timely or complete discovery responses, and also Stumpf's e-mail to ICS members, filed a motion to dismiss the complaint for violating the stipulated order. At Dickenson's November 21, 2019 deposition, plaintiff's counsel provided the ICS's counsel with the bylaws-related documents that Dickinson found, and Dickinson apparently confirmed that he found the documents in July 2019 and informed the other putative officers of them. The day after learning of these documents, the ICS filed a supplemental brief in support of its motion to dismiss, now asserting that plaintiff intentionally withheld the bylaws-related discovery in violation of the stipulated order requiring plaintiff to provide full and complete answers by August 26, 2019.

*4 The trial court conducted a hearing and found that plaintiff's allegedly late disclosure of the bylaws-related discovery, as well as Stumpf's e-mail to ICS members, had violated the stipulated order. Pursuant to the parties' stipulation, the court entered an order dismissing plaintiff's complaint with prejudice. Following the court's denial of its motion for rehearing, plaintiff appealed.

## II. TIMELINESS OF MOTION TO DISMISS

Plaintiff first claims that the trial court erred in considering the ICS's motion to dismiss because it was not brought at least

21 days before the hearing as required for dispositive motions under MCR 2.116. We disagree.

We review de novo the application of court rules. *Kaeb v. Kaeb*, 309 Mich. App. 556, 564, 873 N.W.2d 319 (2015). However, because plaintiff raised this issue for the first time on appeal, it is not preserved for our review. See *Glasker-Davis v. Auvenshine*, —— Mich. App. ——, ——, ——; —— N.W.2d —— (Docket No. 345238, issued August 13, 2020); slip op. at 3 (generally, an issue raised before the trial court and pursued on appeal is preserved, even if the trial court did not decide it). "Review of an unpreserved error is limited to determining whether a plain error occurred that affected substantial rights." *Rivette v. Rose-Molina*, 278 Mich. App. 327, 328, 750 N.W.2d 603 (2008).

The ICS filed its motion to dismiss on November 18, 2019, seven days before the November 25, 2019 hearing, and thus the motion would have been untimely if brought under MCR 2.116, whose subrule (G)(1)(a)(i) states that a motion brought pursuant to that rule "must be filed and served at least 21 days before the time set for the hearing." But the ICS did not bring its motion under MCR 2.116. [4] Instead, the ICS invoked MCR 2.504(B)(1), which permits dismissal for failure to comply with a court order, and MCR 2.313(B)(2)(c), which permits dismissal as a sanction for failure to comply with a discovery order. Neither MCR 2.504 nor MCR 2.313 sets forth a specific time for filing and serving motions, and so MCR 2.119, which governs general motion practice, applies.

According to MCR 2.119(A)(1), "An application to the court for an order in a pending action must be done by motion." MCR 2.119(C) provides that, unless a different period is set by the court rules or by the court for good cause, a written motion must be filed and served at least seven days before the time set for the hearing. Because the ICS served and filed its motion to dismiss on November 18, 2019, seven days before the scheduled hearing on November 25, 2019, it complied with the applicable time requirements.

## III. CONSIDERATION OF SUPPLEMENTAL BRIEF

Plaintiff next claims that the ICS's supplemental brief was improperly filed, and thus, that the trial court erred in considering the novel argument raised therein—that plaintiff violated the stipulated order by failing to timely disclose the bylaws-related discovery. We disagree.

Case 5:24-cv-12647-JEL-KGA    ECF No. 1, PageID.379    Filed 10/07/24    Page 379 of 570

Northeast Comanche Tribe, Inc. v. International Comanche..., Not Reported in N.W....

2021 WL 1940876

Because plaintiff raised this issue for the first time in its motion for rehearing, it is not preserved for our review.[5] See *George v. Allstate Ins. Co.*, 329 Mich. App. 448, 454, 942 N.W.2d 628 (2019). We thus review for plain error affecting substantial rights. *Rivette*, 278 Mich. App. at 328, 750 N.W.2d 603. "Plain error occurs at the trial court level if (1) an error occurred (2) that was clear or obvious and (3) prejudiced the party, meaning it affected the outcome of the lower court proceedings." *Duray Dev., LLC v. Perrin*, 288 Mich. App. 143, 150, 792 N.W.2d 749 (2010).

*5 MCR 2.119(C)(1)(b) provides the time for service of motions and responses, and generally requires a written motion and "any supporting brief" to be served at least seven days before the attendant motion hearing. Further, according to MCR 2.119(A)(2)(b), "Except as permitted by the court or as otherwise provided in these rules, no reply briefs, additional briefs, or supplemental briefs may be filed." Thus, under MCR 2.119(A)(2)(b), the trial court had discretion to permit the ICS to file a supplemental brief in support of its motion.

There is no indication in the record, nor does the ICS assert, that the ICS ever sought or received the trial court's permission to file its supplemental brief.[6] Nonetheless, it is apparent that the trial court accepted plaintiff's supplemental brief because the court inquired about, considered, and ultimately relied on the grounds asserted therein, as reason to dismiss the case.

We conclude that the trial court did not abuse its discretion in considering the supplemental brief. See *Kemerko Clawson, LLC v. RXIV, Inc.*, 269 Mich. App. 347, 350, 711 N.W.2d 801 (2005) (recognizing that a trial court has discretion to decline to entertain motions filed after a deadline set forth in a scheduling order). Significantly, the record reflects that the ICS could not have raised the issue regarding plaintiff's failure to disclose the bylaws-related discovery in its original motion to dismiss, filed on November 18, 2019, because the ICS first learned of such documents on November 21, 2019, when plaintiff's counsel provided them to ICS's counsel at Dickinson's deposition. The ICS then acted diligently by filing its supplemental brief the next day. Although the ICS apparently skirted its duty to obtain permission from the trial court to file its supplemental brief, there was no evidence of surprise tactics, or even dilatory or negligent conduct, on the part of the ICS in that regard. And, because the court was already considering the other alleged violations of the stipulated order raised in the motion to dismiss, its

consideration of the newly discovered violation alleged in the supplemental brief promoted the efficient administration of justice. Further, plaintiff never requested a continuance. Moreover, the trial court afforded plaintiff's counsel, who was clearly knowledgeable on the issue, the opportunity to argue and respond to the issue at the hearing. On this record, we hold that the trial court's decision to consider the supplemental brief was not plain error. See *Duray Dev.*, 288 Mich. App. at 150, 792 N.W.2d 749.

Further, plaintiff has not explained how the trial court's consideration of the supplemental brief, in the absence of a written response by plaintiff, resulted in outcome-determinative prejudice. See *id.* At the hearing, plaintiff's counsel explained that he had provided the documents to ICS's counsel at Dickinson's November 2019 deposition, months after the stipulated order's August 26, 2019 deadline for providing discovery answers, and that counsel, and the putative officers of the NE Tribe, learned of the bylaws-related documents months earlier, when Dickinson found them in July 2019.[7] Given this knowledge, plaintiff clearly was not unfairly surprised by the ICS's argument, and thus had the opportunity to consider and respond to the evidence at the hearing. See *Traxler v. Ford Motor Co.*, 227 Mich. App. 276, 288, 576 N.W.2d 398 (1998) (due process requires "notice of the nature of the proceedings" and "an opportunity to be heard in a meaningful time and manner," and the latter generally requires a hearing "to allow a party the chance to know and respond to the evidence") (quotation marks and citation omitted). Further, given plaintiff's confirmation of the factual circumstances attendant to the alleged discovery violation, it is not apparent, nor did plaintiff attempt to explain, how it could have responded any differently had the court adjourned the hearing to permit plaintiff additional time to file a written response. Moreover, it is evident that the trial court was keenly aware of the potential relevance of the discovery, because the central premise of plaintiff's case, as plaintiff had earlier argued, was its claim that the NE Tribe had never adopted any bylaws.

*6 For these reasons, we reject this claim of error.

## IV. STRIKING PLAINTIFF'S UNTIMELY RESPONSE

Plaintiff next claims that the trial court erred in striking its response as untimely, while considering defendant's supplemental brief. We disagree.

As an initial matter, we note that, plaintiff has cited no caselaw to support this argument. " 'It is not sufficient for a party simply to announce a position ... and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.' " *Clay v. Doe*, 311 Mich. App. 359, 365 n. 3, 876 N.W.2d 248 (2015), quoting *Wilson v. Taylor*, 457 Mich. 232, 243, 577 N.W.2d 100 (1998). Regardless, we find no error.

"[T]rial courts possess the inherent authority to sanction litigants and their counsel ...." *Maldonado v. Ford Motor Co.*, 476 Mich. 372, 389, 719 N.W.2d 809 (2006). " 'An exercise of the court's 'inherent power' may be disturbed only upon a finding that there has been a clear abuse of discretion.' " *Id.*, quoting *Brenner v. Kolk*, 226 Mich. App. 149, 160, 573 N.W.2d 65 (1997).

Plaintiff filed its response to the ICS's motion to dismiss on the morning of the hearing. This response was clearly untimely because a response must be served and filed at least three days before the attendant hearing. MCR 2.119(C)(2)(b) and (4). And, plaintiff did not request any grace in the matter. The trial court effectively sanctioned plaintiff by striking its response.

Plaintiff complains that this was arbitrary because the trial court did not similarly sanction the ICS for its late-arriving supplemental brief. However, the parties were not in the same position. As the court stated, it had seen, and thus presumably had a chance to review, the ICS's supplemental brief, filed three days before the November 25, 2019 hearing, but had no such chance to review plaintiff's response filed on the morning of the hearing. Again, the ICS was not dilatory or negligent in filing its supplemental brief, but could not have filed it any earlier, having learned of the new potential violation of the stipulated order the day before. Conversely, plaintiff only provided excuses for its tardiness.

We conclude that the trial court chose a reasonable option in sanctioning plaintiff by striking its untimely written response. Moreover, as earlier discussed, the trial court afforded plaintiff the opportunity to respond orally at the hearing to the issues raised in the motion to dismiss, and also the supplemental brief. There was no abuse of discretion here.

## V. REFUSAL TO CONDUCT A FULL EVIDENTIARY HEARING

Plaintiff next claims that the trial court's refusal to conduct a full evidentiary hearing deprived it of its due process right to present evidence to rebut the ICS's assertions that plaintiff violated the stipulated order. We disagree.

We review a trial court's decision whether to hold an evidentiary hearing for an abuse of discretion. *Brown v. Loveman*, 260 Mich. App. 576, 599, 680 N.W.2d 432 (2004). To the extent this issue invokes due process concerns, constitutional issues present questions of law subject to review de novo. *Elba Twp. v. Gratiot Co. Drain Comm'r*, 493 Mich. 265, 277, 831 N.W.2d 204 (2013). However, plaintiff did not request a full evidentiary hearing until its motion for rehearing, and thus, this issue is not properly preserved for our review. See *George*, 329 Mich. App. at 454, 942 N.W.2d 628. Accordingly, we review this issue for plain error affecting substantial rights. See *Rivette*, 278 Mich. App. at 328, 750 N.W.2d 603.

**\*7** "In general, trial courts in our state possess reasonable discretion regarding whether to hold hearings concerning the range of motions that typically come before them." *People v. Franklin*, 500 Mich. 92, 109, 894 N.W.2d 561 (2017). A full evidentiary hearing is unnecessary where "there was no dispute with respect to the facts, and it became a question of law to be decided by the court." *In re Skotzke Estate*, 216 Mich. App. 247, 252, 548 N.W.2d 695 (1996). But the court should hold an evidentiary hearing if the motion requires resolution of credibility issues. *Williams v. Williams*, 214 Mich. App. 391, 399, 542 N.W.2d 892 (1995). Further, a litigant has a due process right to the opportunity to be heard in a meaningful time and manner; although that " 'does not [necessarily] mean a full trial-like proceeding, ... it does require a hearing to allow a party a chance to know and respond to the evidence.' " *Traxler*, 227 Mich. App. at 288, 576 N.W.2d 398, quoting *Cummings v. Wayne Co.*, 210 Mich. App. 249, 253, 533 N.W.2d 13 (1995).

Regarding plaintiff's late disclosure of the bylaws-related discovery, at the hearing, plaintiff's counsel did not dispute, but in fact confirmed, that plaintiff was aware of the documents in July 2019, but did not reveal them until Dickinson's November 2019 deposition, well after the stipulated order's August 26, 2019 deadline. In light of these concessions, it could not be reasonably argued that these

Case 5:24-cv-12647-JEL-KGA   ECF No. 1, PageID.381   Filed 10/07/24   Page 381 of 570

Northeast Comanche Tribe, Inc. v. International Comanche..., Not Reported in N.W....

2021 WL 1940876

underlying facts were contested. Further, the court was able to assess whether the bylaws-related discovery fell within the scope of the ICS's discovery request without recourse to a further hearing. [8] We again note the court's clear awareness of the relevance of the existence of bylaws to the case. Moreover, plaintiff did not elaborate, in either its motion for rehearing, or on appeal, concerning what additional evidence it might have presented to rebut the ICS's position. On this record, plaintiff has not shown that a full evidentiary hearing with respect to the bylaws-related discovery was necessary.

Regarding Stumpf's e-mail and whether it violated the stipulated order, the trial court considered documentary evidence, notably the face of the e-mail and the affidavit of Scott Meyers, an ICS member and a Constant Contact [9] administrator, which suggested, as the court found, that the e-mail was sent to ICS members via the ICS's Constant Contact account. At the hearing, plaintiff was afforded the opportunity to respond to this evidence and did so. Plaintiff admitted that the e-mail was "genuine," and that Stumpf had sent it to ICS members who were not members of the NE Tribe, but denied that Stumpf had accessed or used the current ICS member directory to send it, instead asserting that she had used e-mails from a preexisting membership list. Plaintiff reiterated that argument in its motion for rehearing, and on appeal, stating that it was an "incontrovertible fact" that Stumpf did not access the ICS's current member directory to send the e-mail and elaborated that Stumpf sent the e-mail using Les Thomas's Constant Contact account and Thomas's preexisting list of contacts, which contained many contacts from the ICS, who had provided a membership list to Thomas in 2018. But plaintiff did not offer any evidence to support its assertions contesting the ICS's evidence, and thus failed to establish that a different outcome would have resulted had the trial court held a full evidentiary hearing.

**\*8** On this record, we conclude that plaintiff has not shown that a full evidentiary hearing was necessary to resolve credibility contests, see *Skotzke Estate*, 216 Mich. App. at 252, 548 N.W.2d 695, or that the outcome would have been different had an evidentiary hearing taken place, see *Duray Dev.*, 288 Mich. App. at 150, 792 N.W.2d 749. Accordingly, plaintiff has not established that the court's refusal to conduct a full evidentiary hearing amounted to plain error that affected its substantial rights. See *Rivette*, 278 Mich. App. at 328, 750 N.W.2d 603.

## VI. VIOLATIONS OF STIPULATED ORDER

Plaintiff next claims that the trial court erred in finding that plaintiff violated the stipulated order. We disagree.

We review the trial court's factual findings in support of its decision for clear error. MCR 2.613(C); *Walters v. Snyder*, 239 Mich. App. 453, 456, 608 N.W.2d 97 (2000). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Id.*

We are not definitely and firmly convinced that the trial court erred in finding that plaintiff violated the stipulated order's requirement that it provide full and complete discovery responses by August 26, 2019 by failing to timely disclose the bylaws-related discovery Dickinson found in July 2019. [10] Again, central to plaintiff's position that Stumpf and the other putative officers have been the duly elected governing board of the NE Tribe since 2014 is plaintiff's insistence that the NE Tribe governed itself and never adopted any bylaws. Plaintiff did not reveal in its discovery responses that Dickinson had found documents in July 2019 suggesting that the NE Tribe had in fact adopted bylaws. These documents were clearly contrary to plaintiff's repeated assertions that no bylaws existed or that there was no evidence that any bylaws had been adopted, and thus should have been disclosed. But plaintiff first revealed those documents only months after discovering them.

We disagree with plaintiff's assertion that it could not have violated the stipulated order because the ICS never sought the specific bylaws-related documents as part of its discovery requests. However, we think it obvious that those documents fell within the scope of the ICS's discovery request for production, and that plaintiff's answers to the ICS's interrogatories were incomplete for omitting any reference to the bylaws-related documents.

We thus agree with the trial court that plaintiff should have disclosed the bylaws-related documents earlier.

Likewise, we are not left with a definite and firm conviction that the trial court made a mistake in finding that Stumpf's e-mail violated the stipulated order's provision prohibiting plaintiff from thereafter assessing or using information from the ICS's member directory. There is no dispute that Stumpf

Case 5:24-cv-12647-JEL-KGA ECF No. 1, PageID.382 Filed 10/07/24 Page 382 of 570

Northeast Comanche Tribe, Inc. v. International Comanche..., Not Reported in N.W....

2021 WL 1940876

sent an e-mail to ICS members voicing concern about the current ICS leadership and promoting the opposing candidates running for ICS leadership positions. Plaintiff maintained that the NE Tribe had its own member list, and that Stumpf did not access the ICS's member directory, and that her use of the Constant Contact platform did not necessarily mean that she ever accessed or used the ICS's current member list in violation of the court order. But, the face of the e-mail presents the identifying information of the ICS, not the NE Tribe, and the subject matter of the e-mail concerned the leadership of the ICS, not the NE Tribe. [11] Further, Scott Meyers attested that Stumpf "continue[s] to misuse the private contact information of the ICS members and use[s] Constant Contact to impersonate the ICS," that he "used the ICS member directory ... to transmit emails to the active ICS membership," that he "continue[s] to utilize the ICS Member Directory and send emails through Constant Contact to the ICS membership as if [she is an] authorized member[ ] of ICS."

**\*9** A reasonable inference from this uncontradicted evidence is that Stumpf accessed or used the current ICS membership directory, through its Constant Contact platform, when she sent her e-mail to ICS members, in direct violation of the stipulated order, as the trial court found. While plaintiff attempts to rebut this evidence by asserting that it is an "incontrovertible fact" that Stumpf actually used Les Thomas's Constant Contact account, and a preexisting membership list Thomas had obtained from the ICS in 2018, plaintiff did not offer any evidentiary support for these assertions. [12] We are not left with a definite and firm conviction that the trial court made a mistake in determining that plaintiff violated the stipulated order prohibiting Stumpf from accessing information from the ICS membership directory.

For these reasons, we conclude that the trial court did not clearly err in finding that plaintiff failed to comply with the terms of the stipulated order.

## VII. ENFORCEMENT OF STIPULATED ORDER

Plaintiff next claims that the stipulated penalty of dismissal with prejudice was unenforceable as unreasonable, unjust, and contrary to Michigan law, and that the trial court thus erred by imposing it without applying the multifactor test applied by Michigan courts to determine appropriate sanctions for discovery violations. We disagree.

Plaintiff did not challenge the enforceability of the stipulated order until its motion for rehearing, and then offered only brief argument to that effect. [13] Thus, this issue is not preserved for this Court's review, *George*, 329 Mich. App. at 454, 942 N.W.2d 628, and so our review is for plain error that affected substantial rights, *Rivette*, 278 Mich. App. at 328, 750 N.W.2d 603.

Moreover, this Court has recognized that "[a] party cannot stipulate a matter and then argue on appeal that the resultant action was error." *Chapdelaine v. Sochocki*, 247 Mich. App. 167, 177, 635 N.W.2d 339 (2001) (quotation marks and citation omitted). Accordingly, plaintiff waived appellate objections in connection with its own stipulation to entry of an order of dismissal for failure to strictly comply with the specified discovery deadline. Accordingly, the trial court properly enforced the stipulated order.

## VIII. DISPOSITION OF NE TRIBE'S FUNDS

Plaintiff lastly claims that the trial court erred by directing the NE Tribe to turn its funds over to the ICS during the lawsuit. We disagree.

**\*10** At the hearing on plaintiff's motion for a temporary restraining order and preliminary injunction, plaintiff's counsel asked the trial court for guidance with respect to the funds of the NE Tribe given that there were two governing boards competing for legitimacy. After argument on the matter, the court, recognizing that the funds originated from dues that members paid to the ICS, a portion of which were then designated for, and distributed to, the various tribes, directed that "all funds in possession and/or control of the Plaintiff, as of April 8, 2019, shall be paid to the order of" the ICS. ICS's counsel assured the court that the funds would be used for the benefit of the NE Tribe.

We review a trial court's order providing for injunctive relief for an abuse of discretion. *Hammel v. Speaker of the House of Representatives*, 297 Mich. App. 641, 647, 825 N.W.2d 616 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Frankenmuth Ins. Co. v. Poll*, 311 Mich. App. 442, 445, 875 N.W.2d 250 (2015). A court's factual findings in support of its decision to grant injunctive relief are reviewed for clear error. *Cipri v. Bellingham Frozen Foods, Inc.*, 235

Case 5:24-cv-12647-JEL-KGA   ECF No. 1, PageID.383   Filed 10/07/24   Page 383 of 570

Northeast Comanche Tribe, Inc. v. International Comanche..., Not Reported in N.W....

2021 WL 1940876

Mich. App. 1, 9, 596 N.W.2d 620 (1999). See also MCR 2.613(C).

As plaintiff asserts, injunctive relief "may not be arbitrary, but rather must be in accordance with the fixed principles of equity jurisdiction and the evidence in the case." *Davis v. Detroit Fin. Review Team*, 296 Mich. App. 568, 612, 821 N.W.2d 896 (2012). However, we do not agree that the trial court's decision to transfer the NE Tribe's funds to the ICS during the litigation was arbitrary or otherwise unreasonable. The ICS and the NE Tribe are related, given that the regional tribes are branches of the ICS, and the NE Tribe members are ICS members who pay dues to the ICS. Because the NE Tribe's funds derived are from membership dues that ICS members paid to the ICS, a portion of which was then designated for, and transferred to, the NE Tribe, it was reasonable for the trial court to order that the ICS retain the funds until the underlying dispute was resolved.[14] This maintained the status quo while protecting the Tribe's funds. See *Psychological Services of Bloomfield, Inc. v. Blue Cross and Blue Shield of Mich.*, 144 Mich. App. 182, 185, 375 N.W.2d 382 (1985) ("The object of a preliminary injunction is to preserve the status quo, so that upon the final hearing the rights of the parties may be determined without injury to either."). While plaintiff asserts that the trial court's order "deprived Plaintiff of all of its existing funding sources and materially impaired its ability to conduct its business and affairs," plaintiff offers no evidence to support this assertion.[15] On this record, we cannot say that the trial court's decision directing the NE Tribe to surrender its funds to the ICS fell outside the range of reasonable or principled outcomes. See *Frankenmuth Ins.*, 311 Mich. App. at 445, 875 N.W.2d 250.

Plaintiff asks this Court to remand the matter for a determination of the rightful ownership of the NE Tribe's funds. We disagree that such a judicial determination is required. Although the order does not specify whether preliminary or permanent relief was intended, it is apparent from what was said at the hearing on plaintiff's motion for a temporary restraining order that the court's directive transferring the NE Tribe's funds to the ICS was meant to be a temporary resolution pending determination of which of two competing Tribe treasurers was the legitimate officeholder. See *Int'l Union v. Michigan*, 211 Mich. App. 20, 26, 535 N.W.2d 210 (1995) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.") (quotation marks and citation omitted). Remand is not necessary for a determination of rightful ownership of the subject funds now that the case has been finally resolved in defendant's favor.[16] There is no indication that the NE Tribe's now-recognized officers have since challenged the disposition or ownership of the Tribe's funds, and the ICS argued that the issue was moot given the dismissal of plaintiff's complaint. In the absence of any current controversy between the NE Tribe and the ICS regarding the control and possession of the funds, such a determination would be premature. See *Huntington Woods v. Detroit*, 279 Mich. App. 603, 616, 761 N.W.2d 127 (2008) ("The existence of an actual controversy is a condition precedent to invocation of declaratory relief and this requirement prevents a court from deciding hypothetical issues.") (quotation marks and citation omitted).

**\*11** Affirmed.

**All Citations**

Not Reported in N.W. Rptr., 2021 WL 1940876

## Footnotes

1    The Comanche is a popular line of light aircraft that Piper Aircraft Corporation manufactured from 1958 to 1972.

2    Those provisions included, among others, Article IV, § G, providing that the NE Tribe is required to hold annual elections; Article IV, § A, providing that the term of office of an officer "shall be one (1) year and not more than two (2) consecutive years ...."

Northeast Comanche Tribe, Inc. v. International Comanche..., Not Reported in N.W....

2021 WL 1940876

3    Les Thomas, allegedly Stumpf's boyfriend who had also had his ICS membership revoked, sent a similar e-mail to ICS members.

4    MCR 2.116(B)(1) provides that "[a] party may move for dismissal of or judgment on all or part of a claim in accordance with this rule." MCR 2.116(C) provides the specific grounds on which such a motion may be based, none of which applies here.

5    We note that, in response to the trial court's concern that it had not seen plaintiff's response to the motion to dismiss, which was filed on the day of the hearing, plaintiff's counsel pointed out that the ICS filed its supplemental brief only three days before that hearing, providing counsel little opportunity to review it. But counsel did not argue, as plaintiff now does on appeal, that the trial court should not have considered the ICS's supplemental brief as untimely filed.

6    Plaintiff also argues that the supplemental brief was untimely under MCR 2.119(C)(1)(b). But the latter generally governs the timing and service of motions and supporting briefs, and thus does not obviously apply to a supplemental brief that may be filed only with the court's permission under MCR 2.119(A)(2)(b).

7    At the time of the hearing, Dickinson's deposition has not yet been transcribed, but plaintiff's counsel admitted that Dickinson had sent an e-mail in July 2019, notifying counsel and the other putative officers that he had found the documents, that they "looked at" the documents, and that counsel provided the documents to defense counsel at the beginning of Dickinson's deposition.

8    In its ruling, the court emphasized that plaintiff repeatedly asserted in its discovery responses that no bylaws were adopted, and that various witnesses were expected to testify thus.

9    Constant Contact was identified as a program ICS used in order to access a database of names and addresses and to generate e-mail to the members of that list.

10   We note that the ICS also argued in its motion to dismiss, as on appeal, that plaintiff violated the stipulated order by providing its discovery responses on August 28 and 29, 2019, a few days after the August 26, 2019 deadline, and by failing to provide full and complete answers as indicated by the deposition testimony of Pete Morse, a putative officer, who allegedly testified that he did not read the complaint, was never provided with discovery requests, and was never asked to gather evidence in response to discovery requests. While the trial court entertained these arguments, it is apparent from the court's ruling that it ultimately relied on plaintiff's conduct in failing to timely disclose the bylaws-related documents as the ground for dismissal.

11   Specifically, the face of the e-mail indicates that it was sent to Kate Burrows, who was the ICS president but not a member of the NE Tribe, from "International Comanche Society-CJ Stumpf." The bottom of the e-mail listed "International Comanche Society" and its address, and stated that it was sent "by cjstumpf@gmail.com In collaboration with Constant Contact." There was also an unsubscribe feature.

12   As the ICS argues, even if plaintiff had provided evidentiary support for these assertions, Stumpf's conduct arguably fell within the intended scope of the stipulation prohibiting her from thereafter accessing information from the ICS's member directory. To the extent there was ambiguity regarding whether the stipulation prohibited access to, and use of, information from only the current ICS membership list, it is apparent that the purpose of the stipulation was to prohibit Stumpf and the putative officers from accessing information from the ICS's member directory to communicate with the ICS membership. See *Whitley v. Chrysler Corp.*, 373 Mich. 469, 474, 130 N.W.2d 26 (1964) (A stipulation must "be read and construed in the light of the surrounding circumstances and the whole record ...").

13   Likewise, on appeal, plaintiff's challenge to the enforceability of the stipulated order is brief and largely undeveloped, and plaintiff does not cite any on-point caselaw supporting its argument that the parties could

Northeast Comanche Tribe, Inc. v. International Comanche..., Not Reported in N.W....
2021 WL 1940876

not legally stipulate to dismissal as a remedy for a discovery violation. Again, " 'It is not sufficient for a party simply to announce a position ... and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.' " *Clay*, 311 Mich. App. at 365 n. 3, 876 N.W.2d 248; quoting *Wilson*, 457 Mich. at 243, 577 N.W.2d 100.

14    The record supported the trial court's findings regarding the origin of the NE Tribe's funds. Specifically, the ICS's bylaws state that Tribes are branches of the ICS formed with approval of the ICS Board, and "members" of the ICS are "persons who have been received into membership upon making application therefore and who have paid dues for the current year." Plaintiff admitted that the NE Tribe dues are paid to the ICS and the ICS forwards the funds to the Tribe.

15    Plaintiff did not make any allegations that the ICS, in exercising its control over the NE Tribe's funds, misspent or otherwise mismanaged the funds.

16    "A dismissal *with* prejudice amounts to an adjudication on the merits." *Grimmer v. Lee*, 310 Mich. App. 95, 102, 872 N.W.2d 725 (2015).

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 23

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH,

        Plaintiff,

v.

SEAN COMBS,

        Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

_____/

Derrick Lee Cardello-Smith
MDOC # 267009
*Plaintiff, In Pro Per*
Earnest C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
FINK BRESSACK
*Counsel for Defendant*
38500 Woodward Ave.; Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com

Erica A. Wolff (*pro hac vice* motion pending)
SHER TREMONTE
*Counsel for Defendant*
90 Broad St., 23rd Floor
New York, NY 10004
Tel.: (212) 202-2600
ewolff@shertremonte.com



_____/

## <u>DEFENDANT SEAN COMBS' NOTICE OF SUBMISSION OF ADDITIONAL EXHIBITS IN SUPPORT OF HIS EMERGENCY MOTION TO SET ASIDE DEFAULT AND DEFAULT JUDGMENT AND HIS MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION</u>

NOW COMES Defendant Sean Combs, by and through his attorneys, and submits the attached five additional exhibits, which are offered in support of his Emergency Motion to Set Aside Default and Default Judgment and his Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction. The following exhibits are attached hereto:

Exhibit 1 – The Affidavit of Wayne County Prosecutor Kym Worthy

Exhibit 2 – The Motion for Reconsideration filed on June 3, 2024 regarding the Petition for a Writ of Habeas Corpus purportedly filed by Carli Carpenter, Western District of Michigan Case No. 1:24-cv-00465

Exhibit 3 – The Complaint filed by Mr. Cardello-Smith on May 2, 2023 in the matter *Derrick Lee Cardello-Smith v Carli Dipiola-Carpenter*, Macomb County Circuit Court Case No. 23-001466-CK

Exhibit 4 – The Complaint filed by Mr. Cardello-Smith on June 3, 2023 in the matter *Derrick Lee Cardello-Smith v George Thomas Preston*, Macomb County Circuit Court Case No. 23-002165-CH

Exhibit 5 – The First Amended Complaint filed by Mr. Cardello-Smith on June 7, 2024 in the matter *Derrick Lee Cardello-Smith v J. Fager*, Macomb County Circuit Case No. 24-003085-NZ

Respectfully submitted,

September 18, 2024

FINK BRESSACK

By: _David H. Fink_

David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com
*Counsel for Defendant*

2

Exhibit 1

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE**

DERRICK LEE CARDELLO-SMITH,                    **Case No. 2024-7362-NO**

        Plaintiff,                                        **Hon. Anna Marie Anzalone**

v.

SEAN COMBS,

        Defendant.

_____

| | |
|---|---|
| Derrick Lee Cardello-Smith | David H. Fink (P28235) |
| MDOC # 267009 | Nathan J. Fink (P75185) |
| *Plaintiff In Pro Per* | David A. Bergh (P83696) |
| Earnest C. Brooks Correctional Facility | Calder A.L. Burgam (P87203) |
| 2500 S. Sheridan Drive | FINK BRESSACK |
| Muskegon, MI 49444 | *Counsel for Defendant* |
| | 38500 Woodward Ave., Suite 350 |
| | Bloomfield Hills, MI 48034 |
| | Tel.: (248) 971-2500 |
| | dfink@finkbressack.com |
| | nfink@finkbressack.com |
| | dbergh@finkbressack.com |
| | cburgam@finkbressack.com |

_____

**AFFIDAVIT OF KYM L. WORTHY**

STATE OF MICHIGAN    )
                       ) ss
COUNTY OF WAYNE     )

      I, Kym L. Worthy, being first duly sworn, depose and state that I am the current Wayne

County Prosecutor. I make this affidavit based upon my own personal knowledge.

1

1. I affirm that I have never seen these documents proposed by Plaintiff before being shown by counsel. (**Exhibit A**).

2. I further affirm that I did not sign these documents.

3. I further affirm that I did not generate these documents.

4. I further affirm that the signature on these documents is not my signature.

5. I further affirm that I have never met Mr. Sean Combs.

6. I further affirm I have never entered into any agreement with Mr. Sean Combs.

7. I further affirm I have never entered into any agreement with Mr. Cardello-Smith.

If called as a witness, I am competent to testify as to the facts and circumstances averred to herein. Further, the affiant sayeth not.

Kym L. Worthy

Dated: 9/17/2024

Subscribed before me on
Signature: _Iwana Session_
Printed Name: _Iwana K. Session_
Notary Public, State of Michigan, County of _Wayne_.
My commission expires _07/15/30_.

IWANA K. SESSION
Notary Public, State of Michigan
County of Wayne
My Commission Expires Jul. 15, 2030
Acting in the County of _Wayne_

2

Exhibit A

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

DERRICK LEE CARDELLO-SMITH,#267009,
    Plaintiff,

Vs

SEAN COMBS, et al,
    Defendant,
_____/

File No 2024-7362-NO

Honorable Anna Mrie Anzalone

PLAINTIFFS SUBMISSION OF 11 PAGE 1997 AGREEMENT
BETWEEN DEFENDANT SEAN COMBS AND PLAINTIFF DERRICK LEE CARDELLO-SMITH
AUTHORIZED BY KYM WORTHY, ROBERT FICANO, WARREN EVANS, PATRICK JACKMAN,
GEORGE PRESTON, JERRY REDLIN, AND DORTHY DUNN FOR RECORD PLACEMENT AT PRE-TRIAL

Now comes the Plaintiff, Derrick Lee Cardello-Smith, and hereby provides this Court with the Signed 1997 Agreement of Silence and Confidentillity between Plaintiff and Defendant Sean Combs and Signed by Multiple Persons confirming the agreement and grounds detailed within said agreement between all persons all to the Cover-up of the Sexual Assault of this Plaintiff by the Defendant and Other Police Departments and Persons.

Plaintiff is Submitting this document in accordance with Michigan Rules of Court 2.401 (C)(1)(d) lind the submission of the agreement of silence and confidentiality that is signed by all persons involved and Plaintiff further submits an Affidavllt Attesting to the Authenticity of the Signed 1997 Agreement for this Court record Verification.

PROOF OF SERVICE

I hereby swear that I mailed one copy of this agreement to the Defendant at his address of record and that I did so on August 26, 2024 by US Mail and Certified Mail in Muskegon, MI 49444.

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in Pro Se
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

August 26, 2024



FILED
39TH CIRCUIT COURT
AUG 2 9 2024
LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN

# MULTIPLE PERSONS AGREEMENT TO SILENCE And ConfiDENTIALITY

06/16/97

## PresenT:

1. DERRICK LEE ZARDELLO-SMITH — PERSON
2. SEAN JOHN COMBS — PERSON
3. KYM WorTHY — OFFiciaL-PERSON-
4. GEORGE PresTON — PERSON-WiTNESS
5. PaTrick JACKMAN- Police OFFicer-DeTroiT
6. DoroTHY DUNN-Bar OWNER-Dunn-Inn

## CONFIDENTIALITY
## — AGREEMENT-

THE PARTIES OF DERRICK LEE ZarDello-Smith AND SEAN COMBS HEREBY Aggree TO THE Following TERMS AND RuleS — 1-To NOT HAVE SEAN COMBS PROSECUTED For THE DRuGGing- RApe- PhysikaL ASSAuT and THE

1 ——>

MANY OTHER ACTS OF Violence said

PERSON OF SEAN COMBS- ARTIST-Recorder

And Investor UPON SMITH Committed in

JUNE 1997 - UPON DERRICK CArdello SMITH

11-01-72 - City of Adrian and Detroit-MI,

2- CARdello-SMITH Agrees to NotPress

CRIMINAL Charges Against SEAN Combs,

3 Kym WorTHY-OFFICIAL in Detroit-Agrees

To Keep THE CASES QuieT And Will order

HER Connections To Not Prosecute—

4- CArdello-SMITH Agrees to Keep His

$150,000.00 CASH INVESTMENT in THE HAnds

OF SEAN Combs For 10-20-30 YEAR Times

AND To only SEEK 49% OF SEANCombs

ENTIRE CapitAL- WorTH-Holdings-Property-

ASSETS- FinAnciaL Holdings-CAsh-Liquid-

Future EArnings iF SEAN COMB Continues,

SETtles- HAS FURTHER SEXUAL ABUSE-

SEXUAL ASSAuHS-OR BEHAviors By Any

OTHER MAn - Woman -TEENAGE GIERC

TEENAGER Boy- TEENAGE GiRL - OF ANY

STATE OR FEDERAL SETTIEMENTS-

OR VIOLENT SEXUALBEHAVIR By ARTIST

SEAN COMBS IN Any STATE OF THE U.S,

2,

OR HYSTERICTORY - LARDELLO-SMITH Agrees
To Live WITH THE EFFECTS OF it - AND NOT SEEK
ANY Actions Legally until 2023-2024-
2025-2026-2027- All Rights To SAID Acts
Committed upON Lardello-Smith SHALL BE IN
His own Control - HE SHALL NOT SEEK Civil
Relief until THE EXPIRATION OF 25 YEARS AND
BEFORE 30 YEAR EXPIRES - 2027 END OF
YEAR - For Civil Action - 4 - ANY VIOLATION
OF THE Agreement By SEAN Combs Will
Allow LARDELLO-SMITH THE Rights To Legal
Control OF up to 49% OF ALL SEAN Combs
INTERESTS - Holdings - FINANCES - Royalties,
Value - Capital - HHird Contracts - Properties -
Homes - Vehicles - EVERYThing Connected
To SEAN Combs - Artist - New York & Recording
Studio se Etcetera - 49% Company (es) And
INVESTMENTS Associated To SEAN Combs -
5 - SEAN COMBS - Lardello-Smith MAKE THE
Agreement FREELY - And No HARM Shall come
To Lardello-Smith's FAMILY - 5 - Kym
WORTHY Agrees To CHARGE Smith WITH
FALSE RAPES And SMITH - Will go to
Prison in 1997 - 1998 - To Protect His Mom

3

Brothers, Sisters, Family, Friends, Smith
And His Murder Charge of Self Defense is
Held up "Pending Investigation" And Put
To Bed By DPD officer PATRICK JACKMAN
Gratiot Division — To Protect FINANCIALS of
KIM WORTHY And other officers that
INVEST in SEAN Combs — For THE Sole
Purpose of Keeping All Parties interest
Whole — 6 — KYM Worthy Agrees to
HAHAll Rape Kits Stored in Warehouse
And to Not HAVE THEM TESTED BECAUSE
IT Will Require Testimony of 14 Joint
INTEREST WOMEN on PAYRoll And An
Audit of DPD PayRoll Will EXPOSE other
ENTITIES AND INDIVIDUALS To FINES, JOB
Loss — Criminal AND Civil Litigation —
AND Agrees To Not Put Smith or Combs
on Criminal Charges For Assault — 7-
MR REDLIN FROM ADRIAN P.D. Agrees to
"Hold off" on SEXUAL ASSAULT of
Subject SMITH By Mr. Combs in Exchange
For Agreement of PAYRoll From THE
Agreed Monthly TOTALS To REDLIN

4.

Lenawee Sherriff Connections- 8-
Smith Agrees To Go To Prison For
His Family Safety And His Investments
For 10-20-30 year Rights Return-
9- PATRIZK JACKMAN- FURTHER
Agrees To Have His Employees- File
Reports of SEXUAL ASSAULTS on
128 MEN - 14 Women Will Say THAT 128
MEN Raped THEM on Different Times
And Investments From City, Smith,
Combs- Worthy- JACKMAN- Preston-
RedLin- Cline Davis- Robin KRAMER-
MARY + TRAVIS - M. BOMMARITO- J Soulleard
14 Women unnamed Here But on Police Report
For Sexual Assault Cash Payroll- A McNeal
-A. McNeal- W. EVANS- J. DUGGAN WCPO-
Mr Thrasher- D. Cripps- H. WEINStien- All
While DERRICK Smith is In County Any
Prison THE INVESTMENT Will ACCRUE In
SEAN SEAN Combs LLC- Recordings-
All Studios- Affilintes- Companies
Financial Accounts- Banking- Checking

5

SAVINGS- CASH VALUE OF SEAN COMBS
ENTERPRISES-VENTURES-OTHER LLC-or
INVESTMENTS OF DERRICK LEE CardellSmith.
AKA- DERRICK LEE CARDEllO-Smith D.O.B.
11-01-72- S.S.N-368-80-74-78-DETROIT,
MICHIGAN- 9- Smith Agrees TO NOT
Prosecute SEAN COMBS FOR THE RAPE
UPON HIS PERSON AT HolidayINN AT
City OF Adrian- FOR 30 YEARS And
agrees To County And Prison PLACEMENT
To Protect His Family in EXCHANGE-
P. JACKMAN- K. Worthy Agree To
Drop THE INVESTIGATION OF Murder And
SELF-DEFENSE against SMITH And Will
Place Multiple RAPES on SMITH OF
Which He is Not Guitty- or His
Family Will Be REMOVED By Cosigners
And PERMANENTLY Silenced- 10-
GEORGE Preston Will Hold CERTAIN Land
For Combs And Smith With Partial Pay
Croing to Mortgage of Preston Farm and
To THE ESTATE OF John Preston And

6

Farm and ESTATE LAND inTiTies And
DEEDS OF Future Holdings oF THE
JAMES Leslie Preston ESTATE And
John Preston ESTATE WiTHin Nuca, MD
GEORGE Preston And John Preston
And JAMES Leslie Prestons Financial
Investment To SEAN Combs Will
Accrue upon End oF 30 Years WiTH
AN Agreement To Keep Silent about
SEXUAL ASSAULT By Combs upon THE
Person oF SmiTH - OR iF Combs involves
HimselF in AnoTher sExual Assault or iF
He is Arrested - GEORGE Preston WillBE
EnTiTled To 8% oF SEAN Combs ESTATE
Property or Holdings - 11 - All parties,
Persons Agree To HAVE Smith go
Down For Crimes RELATED To DETROIT
Police - Kym Worthy - SEAN Combs And
RoberT FILANO - WARREN EVANS - All
Agree To REMAin Silent on SEX Crimes
Prostitution - Rings - Weapons Trafficking

7

- DRUGS - LAND DEALS et - DERRICK SMITH

KEEP QUIET ABOUT THE SEX ASSAULT UPON Him and DONE To HIM. By Combs - SMITH WILL BE CHARGED WITH MANY Rapes By Women on Kym Worthy, SEAN Combs, DPD, PATRICK Jack Man. Payroll To Continue THE FALSE RAPE - EXTORTION Money Ring - And ALL LAND IN Michigan SHALL BE HELD By DERRICK SMITH AND OTHER INVESTORS OF SMITH Tied - To SMITH FOR 30 years or 2025 - 2027 FROM 1997 - 12 - SMITH Will Not go To TRial Because His Family WILL BE EXTERMINATED - His SISTERS TINA And Jacqueline WILL BE FOR SEX Trade WITH Combs - Worthy - JACKMan - DUNN - iF DERRICK SMITH - DERRICK LEE CARdelle SMITH BREAKS His Word - SMITH WILL BE RELEASED in 2007 FOR Signing OF LAND - Title - DEEDS WITH George Preston John Preston - OTHER ENTITIES And SEAN COMBS Will Not Be Charged CRiminally FOR SEXUAL ASSAULT Because -

8 -

Smith Will Be Charged for Rapes By our Women Who Get Paid to Lie and They Will not Recant as Patricia Penman at Dearborn P.D. Will Charge them Each for Solicitation of Prostitution And Perjury and The Human Smuggling Each Did - Mr Combs Will Be Free to Continue Paying Worthy Evans - Ficano - Jackman - Duggan - L. Brooks Patterson - Dunn - Preston - Richard Tipton - Richerbach - Tom Jenny and The 31 Detroit Police officers in 9th Pecincts Gang Squad - Mgraw Station - Adrian P.D. Lenawee S.D. - or Smith's Family Will Be Hurt - Especially His Mom - Smith Will Hold 49% of All And, Property in Sean Combs name in New York - Harlem - Michigan And Los - Angeles Future Holdings for All LLC - Limited organizations in The

9.

NAME OF SEAN John Combs-Sean
Combs- Music -Property or others-
Derrick Lee Cardello-Smith Will Have
Rights To 49% of Every Thing to
BE Developed -Discovered-HandLed
or Achieved in or By SEAN Combs For
10-20-30 Years upon Any Criminal
Involvement Made Public-Smith Will
Do Time For Rapes Committed By
SEAN Combs upon 14 Women in Michigan
And in RETurn THE Artistic Genius
of SEAN Combs Will not BE Tainted, or
Destroyed- Smith's Family Will Live-
DPD Will Stop Harassing His MoM-
Smith Will Be given 49% of All
Assets To BE Held By SEAN Combs
iF Any Violations of THis Agreement
iS Committed By Combs— B-Smith
Will BE FREED By DPD And issued
A Report Clearing Him in Time-
THE Persons -Witnesses All Do
Agree in THis Matter As Proven
By Signatures HERE at THE

10

DETROIT POLICE CRIME LAB HURT & KILLED
PERSONS in DETROIT, MICHIGAN
Wayne County
June 20, 1997

Patrick Jackman D.P.D,

Dwight Lee C. Smith
11/01/72   6-20-1997
D.O.B.

Sean Combs
6-20-97

Geage Preston

Dorthy Dunn
6-20-97

Warren Evans
6/20/97

Jerry Badder
A.P.D.
6-20-97

11   Robert Ficano
June 20, 1997

State of Michigan )
                  )ss
County of Muskegon )

## AFFIDAVIT OF DERRICK LEE CARDELLO-SMITH #267009

I hereby state that the item marked as 'MULTIPLE PERSONS AGREEMENT TO SILENCE AND CONFIDENTIALITY" was signed and effected by this Plaintiff and the Signed Persons of KYM WORTHY, current Wayne County Prosecutor, Robert Ficano, Warren Evans, current Wayne County Executive, George Preston, Land Owner, Jerry Redlin, Adrian Police Officer, Dorothy Dunn, Land Owner, Patrick Jackman, Detroit Police Officer, Sean Combs, Artist, Plaintiff,the Victim of Sexual Assault by Sean Combs. This 11 Page document was signed by Plaintiff and all named participants on June 20, 1997 and it is a true, authentic document and its contents are valid and true and real and it is detailed for the items and acts within that this Plaintiff will attest to, as that they are true and real.

### DECLARATION

I swear and declare under the penalty of perjury that the events described within are true to the best of my knowledge, information, Belief and experience and that if called to testify, I will swear to these events under the penalty of perjury as that these events happened and are real and true and occurred.

Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

B. Jones
8-21-2024

**B JONES**
Notary Public, State of Michigan
County of Muskegon
My Commission Expires 2-14-206
Acting in the County of _____

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Faciility
2500 S. Sheridan Drive
Muskegon, MI 49444

August 26, 2024

Office of the Clerk
ROXANN HOLLOWAY
39th Circuit Court
Lenawee County
425 N. Main Street
Adrian, MI 49221

Re: Derrick Lee Cardello-Smith vs. Sean Combs.
Case No 24-7362-NO

```
                                    FILED
                              39TH CIRCUIT COURT

                               AUG 2 9 2024

                              LENAWEE COUNTY CLERK
                                ADRIAN, MICHIGAN
```

Dear Clerk:

Enclosed for filing in the above cause, are the following documents
 1. PLAINTIFFS SUBMISSION OF 11 PAGE 1997 AGREEMENT BETWEEN DEFENDANT SEAN
COMBS AND PLAINTIFF DERRICK LEE CARDELLO-SMITH AUTHORIZED BY KYM WORTHY,
ROBERT FICANO, WARREN EVANS, PATRICK JACKMAN, GEORGE PRESTON, JERRY REDLIN,
AND DOROTHY DUNN FOR RECORD PLACEMENT AT PRE-TRIAL

 2. PROOF OF SERVICE

If you could please place this matter on the Courts Record and Docket, it
would be greatly appreciated.

Thank you.!

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

9-2-24

Office of the Clerk
39th Circuit Court
Lenawee County
425 N. Main Street
Adrian, MI 49221

```
FILED
39TH CIRCUIT COURT

SEP - 5 2024

LENAWEE COUNTY CLERK
ADRIAN, MICHIGAN
```

Re: Derrick Lee Cardello-Smith vs Sean Combs,
Case No. 24-7362-NO

Dear Clerk:

Enclosed are documents I am asking are placed on the Court Record pertaining to this case at bar.

1. AGREEMENT OF KYM WORTHY AND DERRICK LEE CARDELLO-SMITH FROM 1997 AS TO SEAN COMBS
2. AFFIDAVIT OF DERRICK LEE CARDELLO-SMITH
If you could place (these) documents on the Court record, it would be greatly appreciated.

Derrick Lee Cardello-Smith

Agreement of 2 Persons
To Confidentiality And
Silence To Not Prosecute
Sean Combs For Rape
And agreement To all Claims
Being Temporarily Halted 06/17/97

THE Persons of Kym Worthy and
Derrick Smith HERE and say That We
Will Not PROCEED WITH THE Criminal
REPORT OF DERRICK Smith Being THE
Victim of SEXUAL ASSAULT and Drugging
By Sean Combs (NEW York ARTIST)
Stemming From THE Holiday Inn Rape and
Drugging of Smith — Smith Agrees to
Not Prosecute and HE WILL RECEIVE Money
From Combs or 49% of Future EARnings —
I Kym Worthy Agree To use my people
At THE Prosecutor's office and my Position
As Recorders Judge To Put Smith Away
For Multiple Rapes WITH Harvey Tennen
As Judge For Sentence in 1997 or 1998

And Smith agrees to Do Time and as He
is Locked Away His $150,000.00 's
Given to Sean Combs Will in Fact Remain
in Sean Combs company name, Likeness or
Any Ventures From 1997-2027, I agree to
keep Smiths Money and Rape kit secured
As Sean Combs Blood and Semen is in
The Rape kit - My Cash Investments will
grow For Years and We Will Collect Later
Smith Will Be Prosecuted by My and Combs
Stable of Women For Rapes - I agree to keep
kits At Warehouse - smith will get Money
upon End of 30 years - Combs Stays Clean of
Federal or State Charges - Investigation. My
14 women Will say Smith and other men
Raped them, We all Make Money and collect
Later - Smiths Family Stays safe Per
Sean Combs orders - we all Sign on 06/17/97

Derrick Lee Cardello Smith          Kym Worthy
19246 Hoyt                          1441 St Antoine
Detroit, MI 48205                   Detroit, MI 48226
D.O.B 11-1-72                        D.O.B Dec. 5, 1967

2

State of Michigan)
                 )ss
County of Muskegon )

## AFFIDAVIT OF DERRICK LEE CARDELLO-SMITH #267009

I swear and declare that in 1997, I entered into an agreement of silence, confidentiality, investment and other measures with the named people of KYM LOREN WORTHY, SEAN COMBS, PATRICK JACKMAN, DOROTHY DUNN, JERRY REDLIN, ROBERT FICANO, WARREN EVANS where Kym Loren Worthy would Keep the Rape Kit Evidence containing Semen and Pubic Hairs from Sean combs taken out of my Anal Cavity, Mouth and Body, and The details in the agreement show that Kym Loren Worthy will keep it in here possession and I state that the agreement was that I would be given 49% of all investments in the future from Sean Combs holdings and company the recording artist, and man who raped me. I went to prison to stop my family from being killed by Combs, & Detroit Police. I state that this information is true to my knowledge, information and belief and I state the agreements are true and real and it happened. My families life was threatened and If I did not go to prison for Rape, then they would be killed and I would be given life for the Self-Defense Case.
— KYM WORTHY IS THE CURRENT WAYNE COUNTY PROSEUCTOR and She operates a criminal enterprise that is built upon False Rapes against this Plaintiff and 128 other men where she has used the same 14 different women to lie and say that Men raped them when in fact, they are victims of Sean Combs Sex Slavery Stable with ties and reach from Florida, to New York, to California, to Washington State to Alaska, to Michigan, and Kym Worthy is the commander and Michigan connector of these Crimes and Fraud and Money Laundering and other activities designed to make money and keep innocent men locked up and hide the crimes committed upon then by the Men and Woman who make profits from the crimes committed upon this plaintiff and other people to this date.

### DECLARATION

I swear and declare under the Penalty of Perjury that these statements are true and accurate and real and happened based on my own knowledge, information and belief and if called to testify, I will attest to them in a Court of Law because it is based on real events that happened and are true.

I have been framed for Rape Cases and it was to protect their Financial Interest and ensure my family was safe and I came to prison for crimes I did not do or commit and the woman who put me here, has even tried to get me out this year, See CARLI CARPENTER V. CHRIS KING, KIM WORTHY, Case 2:24-11176 Eastern District of Michigan and Same Names, 1:24-00465 WESTERN DISTRICT OF MICHIGAN, THIS IS THE PERSON FROM THE 2019-000756-01-FC CRIMINAL CASE IN PEOPLE OF THE STATE OF MICHIGAN V. DERRICK LEE CARDELLO-SMITH Done upon me by Kym worthy herself. She admits to being paid by Kym Worthy's Office.

Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

B. Jones
8-21-2024

B JONES
Notary Public, State of Michigan
County of Muskegon
My Commission Expires 2-14-206
Acting in the County of _____

Exhibit 2

**FILED - MQ**
June 3, 2024 12:11 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: mic SCANNED BY:

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLI CARPENTER

V

CASE # 1:24-cv-00465
HON. ROBERT JONKER

C. KING, Warden
KYM WORTHY, Wayne County Prosecutor
PATRICIA PENMAN, Detective Wayne County
DEYANA UNIS, Ass't Wayne Prosecutor
DRIDGET HATHAWAY, Judge

_____/

## MOTION FOR RECONSIDERATION OF THE COURTS
## MAY 22, 2024 ORDER OF DISMISSAL WITHOUT PREJUDICE BASED ON
## NEW INFORMATION THE COURT FAILED TO CONSIDER
## WHEN DISMISSING THE PETITION WITHOUT PREJUDICE

Hello Your Honor,

This is Carli Carpenter reporting Complainant wanting the release of state prisoner Derrick Lee Cardello-Smith 267009 and I have your order where you dismissed the Writ.

Upon viewing law tips on google I can do a reconsideration. You should reconsider your decision based on the following reasons:

1. I, Carli Boike-Carpenter, filed the original rape report in 1997.
2. In 2007 I met with Detective Patricia Penman and she asked me to follow thru on the rape charge and I said No, and she said she would see me again another time.
3. In 2018 Patricia Penman told me to follow through with criminal charges, I said no again. She threatened me with filing a false police report.
4. Then she gave me $4,000.00 to do it. I needed the money and so I did it. The case is State of Michigan vs Derrick Lee Cardello-Smith case #2019-000756-01-FC, Wayne County Circuit Court.
5. I am a citizen of Michigan. The detective and I lied on Derrick and this was wrong. Even worse Robin, Mary, Joann and Tina B. lied as well. We were all getting money from these cops in Detroit and some of the cops went to prison but the people we told on like Derrick stayed locked up.
6. Judge, in your decision I gotta be a Next Friend for you to have jurisdiction but I can't be a Next Friend of the guy, Derrick Lee Cardello-Smith, 267009, because I accused him of rape falsely but I'm telling you that I lied because the Detroit police and Detective Penman forced me to.

7. Judge your decision also said when Derrick filed for himself they were all denied, but he didn't do it and you won't let him out.
8. I am including the Complaint Felony so you know what it's for.
9. I am telling you Derrick Lee Cardello-Smith is being held for something he did not do. I know this because I was paid to lie to say he did. Wayne County Prosecutors office does not care and only wants him convicted to keep their winning streak and that is not justice.
10. Here's my Affidavit as well.

Here's the Relief I Want:

Relief looking for, Approve Reconsideration, Release Derrick Lee Cardello-Smith 267009 or let me come testify in your Court.

Carli Boike-Carpenter                    5-28-2024

Carli Boike-Carpenter                    Date

Exhibit 3

FILED by Macomb County Circuit Court
5/2/2023

2023-001466-CK
CARDELLO-SMITH

STATE OF MICHIGAN
IN THE 16ᵀᴴ CIRCUIT COURT FOR MACOMB COUNTY
CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH #267009
PATRICIA LEE THOMPSON
Plaintiffs in Propria Persona

VS

Case # 2023- OD1466-CK
Hon. _____

RICHARD L. CARETTI

CARLI DIPIOLA-CARPENTER
Defendant

## COMPLAINT FOR BREACH OF CONTRACT
## & MONETARY DAMAGES AND JUDGEMENT

Now comes the Plaintiff, Derrick Lee Cardello-Smith #267009, and Co-Plaintiff Patricia Lee Thompson in the above cause pursuant to MCL 600.5801-5807 seeking Judgement to be entered against the Defendant **CARLI DIPIOLA-CARPENTER FOR TOTAL COMPLETE BREACH OF CONTRACT AND FAILURE TO PERFORM TERMS AGREED UPON IN THE CONTRACTUAL AGREEMENT BETWEEN PLAINTIFF AND DEFENDANT.**

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a Jury Trial on the claims presented. This right is asserted pursuant to the State Constitution.

### JURISDICTIONAL STATEMENT

This Court has subject matter jurisdiction as the Plaintiff maintained a residence in Macomb County at least six (6) months prior to incarceration and filing of this action.

### MANDATORY DISCLOSURE STATEMENT

This Plaintiff has filed 124 State and Federal civil cases and appeals and over 40 Federal appeals under civil and criminal jurisdictions.

## DAMAGES SOUGHT

Plaintiff seeks monetary damages in the amount of Thirty Thousand Dollars ($30,000.00) for Breach of Contract and completion of services and terms reached between Plaintiff and Defendant Carli Dipiola-Carpenter.

## TERMS OF CONTRACTUAL AGREEMENT

Plaintiff, Derrick Lee Cardello-Smith 267009, agreed to pay Defendant Carli Dipiola-Carpenter the sum total of $5,000.00 at a rate of $500.00 per month for ten (10) months to cover the Defendants living expenses, food, drug rehabilitation fees, family costs and transportation costs in order for Defendant to be clean, sober, lucid and clear headed to appear for the civil hearings and depositions and to provide the truth as to what really happened on October 12, 1997.

Defendant agreed to tell the truth that no assault ever took place regarding the 1997 Assault Case claims that Defendant lodged against Plaintiff. Defendant Carpenter failed to perform her duties as detailed in the Contractual Agreement between both parties, and instead used the $5,000.00 to support her own substance abuse habits of heroin, cocaine and other illicit drugs resulting in the immediate loss of the $5,000.00 as well as other directly related costs of $20,000.00.

The $20,000.00 was paid directly to David Moffit and Associates because Defendant Carpenter failed to perform her duties to tell the truth at other hearings resulting in the direct loss by Plaintiff.

The Defendant provided testimony in open court alleging serious assaults having taken place upon her person by the Plaintiff in 1997 through 2021. This testimony and filings were lodged in 2018, 2019, 2020 and 2021 at multiple hearings while the Defendant was under the influence of controlled substances that affected her testimony as to the truth of the matter. The failure of the Defendant to preform her required contractual responsibilities resulted in significant financial loss that the Defendant is responsible for under MCL 600.5807 requiring this matter to be adjudicated in a Court of law.

The violation of the terms of Agreement are detailed in the supporting exhibit entitled "Plaintiffs Exhibit 1".

## CONCLUSION

Defendant failed to adhere, complete, fulfill and meet the terms of the Contract, and in doing so breached said Contract, resulting in significant monetary loss sustained by the Plaintiff after the monies were received by the Defendant. The monies were paid from money left in the hands of George Preston and the money which belonged to Plaintiff Derrick Lee Cardello-Smith as George Preston oversees the Cardello-Smith estate and trust.

## RELIEF REQUESTED

Wherefore Plaintiff prays this Court will enter Judgement in favor of the Plaintiff for $30,000.00 for Breach of Contract and grant any other relief this Court deem necessary and appropriate.

Respectfully submitted,

Derrick Lee Cardello-Smith 267009
Plaintiff
Ionia Maximum Correctional Facility
1576 W. Bluewater Hwy
Ionia, MI   48846

Patricia Lee Thompson
Plaintiff
23751 Brownstown Square Dr., #204
Brownstown Twp, MI   48174

4-7-23
Date

04/21/2023
Date

Exhibit 4

STATE OF MICHIGAN
IN THE 16TH CIRCUIT COURT FOR THE COUNTY OF MACOMB
CIVIL DIVISION

DERRICK LEE CARDELLO-SMITH,#267009,
      Plaintiff,

Case No 2023-002165-CH

-vs-

Honorable:   EDWARD A. SERVITTO

GEORGE THOMAS PRESTON,
KATHRYN LYNN PRESTON,
      Defendants,
_____/

COMPLAINT

      Plaintiff Complaint is attached as follows on this matter and is being attached to the Summons with the Case Caption, as this Court requires.

SEE NEXT PAGES

**RECEIVED**

JUL 03 2023

ANTHONY G. FORLINI
Macomb County Clerk

1.

<u>COMPLAINT</u>

Plaintiff, Derrick Lee Cardello-Smith, 267009, In the above cause hereby Brings this Complaint under the HOUSING AND REAL ESTATE, LAND-CONTRACT Rules of Michigan Rules of Court and under MCL 600.8501, MCL 600.5501-08 and alleges, claims, asserts taht Defendants Combined to Violate this Plaintiffs and Defendants Agreement reached in the original deal and Land Contract Agreement for the Sale of Property that the Plaintiff was Guaranteed by the Defendants, and primarly, the defendant, George Thomas Preston of 7541 Yale Road, Avoca, MI 48006 was done by the party of Defendants Jointly and Severally and the claim was very simple....

PLAINTIFF PROVIDED OVER A PERIOD OF 2 YEARS, JANUARY 2021 THROUGH JANUARY 2023, A TOTAL OF $47,000.00 WHICH WAS HELD BY DEFENDANT FOR THE PLAINTIFF AND IN EXCHANGE OF THE $47,000.00 PAID TO THE DEFENDANTS, A TOTAL OF 20 ACRES OF LAND, PARCELS, PROPERTY OWNED BY GEORGE THOMAS PRESTON AND KATHRYN PRESTON, AND THE DECEDENT, JAMES THOMAS PRESTON, ALL OF 7541 YALE ROAD, AVOCA, MI 48006.

THE PLAINTIFF WAS GIVEN AN AGREEMENT BETWEEN ALL PARTIES AND IT WAS SIGNED BY ALL PARTIES INVOLVED IN THE CASE AND WILL BE SUBMITTED ON THE COURT DOCKET AND RECORD SHOWING THAT THE PLAINTIFF AND THE DEFENDANTS AGREED TO THE SALE AND TRANSFER OF THE TOTAL OF 20 ACRES OF LAWN FORM THE RESIDENCE OF 7541 YALE ROAD, AVOCA, MI 48006.

THIS MONEY AND LAND WAS DONE THROUGH THE TRANFER OF FUNDS FORM PLAINTIFF DERRICK LEE CARDELLO-SMITH AND GEORGE THOMAS PRESTON THROUGH THE "PRESTON TRUST/ESTATE OF JAMES THOMAS PRESTON AND GEORGE THOMAS PRESTON."
Plaintiff was assured that he would be provided with the $47,000.00 or the 20 Acres of Land at the residence of 7541 Yale Road, Avoca, MI 48006.

Plaintiff has not been provided the agreed upon total, and, as such, the defendants have in fact violated the terms of the agreement and the sale of the land to this Plaintiff by the owners of the land, Derrick Lee Cardello-Smith, and it effects the interested parties of Derrick Lee Cardello-Smith and Sarah Brozo, Krystle Preston, and James Leslie Preston as well.

Plaintiff alleges and claims that the defendant has broken the terms of the agreed upon terms, and has failed to provide the Plaintiff with the Agreed upon $47,000.00 or the 20 Acres of Land on site, and this was promised to be done by the dates of JUNE 1, 2023, and it has not been done yet and, as such, it has resulted in the Plaintiffs $47,000.00 being kept form Plaintiff and no other arrangments being made by the parties involved in this matter at the time of this filing.

Plaintiff has suffered a result of this Loss and it must be corrected and plaintiff now asks this court to grant said relif as well.

JURISDICTIONAL STATEMENT

This Court has Subject-Matter Jurisdiction as the Plaintiff maintained a residence in Macomb County at least six (6) months prior to the filing of this action.

(2)

## MANDATORY DISCLOSURE STATEMENT

This plaintiff has filed 4 State and Federal Civil cases and appeals under civil jurisdictions.

## DAMAGES SOUGHT

Plaintiff seeks to be provided with the 20 Acres of Land, or to be provided iwth the $47,000.00 back form George Thomas Preston, and Kathryn Lynn Preston.

## CONCLUSION

Plaintiff and defendants had a Legal Sale based on Money provided over a 2 year period where the Plaintiff gave the money to the Defendants and Trused Defendants, and then, in exhange for said monies, the defendants agreed to provide the Plaintiff with 20 Acres of Land on the Preston Farm, or to be given his money back, with Interest. The defendants broek said promise and sale and deal on the Land and themoney given to them, and, Plaintiff has sustained and suffered form this breaking of said deal, and,as a result, the Plaintiff seeks Court Action and Involvment to bring this matter to a complete resolve and resolution on this matter and, where this matter has been raised timely and in good faith on this matter.

This is the result of this matter.

## RELIEF REQUESTED

Wherefore, Plaintiff prays this Court will enter Judgment in favor of the Plaintiff for either thr 20 Acres of Land or the return of the $47,000.00 and any other relief this court deems necessary and appropriate.

Respectfully Yours,                                             June 15, 2023

Mr. Derrick Lee Cardello-Smith
(267009)
1576 W. Bluewater Highway
Ionia, MI 48846

3.

Exhibit 5

STATE OF MICHIGAN
IN THE 16TH CIRCUIT COURT FOR MACOMB COUNTY

MR. DERRICK LEE CARDELLO-SMITH #267009,
PROBABLE CAUSE CONFERENCE LITIGATOR,

    Plaintiff,

Vs

Case no 2024-_____     | 2024-003085-NZ |

Honorable: Hon. Kathryn A. Viviano

MR. J. FAGER, Administrative Assistant at
E.C. Correctional Facility, and Employee,
of the Michigan Department of Corrections,
MR. CRAWFORD, Property Room Officer at the
E.C. Brooks Correctional Facility and
Employee of the Michigan Department of Corrections,
D. Miller, Assistant Deputy Warden at the
E.C. Brooks Correctional Facility and
Employee of the Michigan Department of Corrections,
DAWN BOISVERT, General Office Administrator at the
E.C. Brooks Correctional Facility and
Employee of the Michigan Department of Corrections,
Mr. DALE BONN, Deputy Warden at the Ionia Correctional Facility
and Employee of the Michigan Department of Coprrections,
H. STEVEN LANGSCHWAGER, Assistant Attorney General-State of
Michigan,
THE MICHIGAN DEPARTMENT OF CORRECTIONS
KRISTIN VAN-HAFTEN GALLAHAN, Signer of Settlement Agreement and
Employee of the Michigan Department of Corrections,
K. MILLER, Grievance Coordinator at the Ionnia
Correctional Facility,
MICHIGAN STATE POLICE, Michigan State Police,
Department Agency and Employees,
KYM WORTHY, Wayne County Prosecutor,
DEYANA UNIS, Assistant U.S. Attorney,
PATRICIA PENMAN, Detective, Wayne County Prosecutor's Office,
Mr. Fiero, Employee of the E.C. Brooks
Correctional Facility and MDOC Employee
ACTING ON ORDERS OF MR. CRAWFORD AND J. FAGER,
JANSEN, PUBLIC INTEGRITY UNIT,
    Defendants,

_____

First Amended / COMPLAINT

    This is a Complaint being brought by the Plaintiff, Derrick
Lee Cardello-Smith, #267009, in the case above directly naming
the defendants in this matter and the violations of this
Plaintiffs rights and claims against the employees against the
Employees of the State of Michigan and brings this Claim against
all defendants named in this matter as listed here and in the

3.

BRIEF IN SUPPORT of the Complaint detailing the grounds and violations of this Plaintiffs rights by the Defendants and the acts committed upon this Plaintiff by the defendants in this matter, and hereby moves this Court to enter judgement in favor of the Plaintiff and submits said complaint to the defendants in this matter upon case assignment by this Court.

## STATEMENT OF JURISDICTION

The Court of Claims has jurisdiction over this Case under MCL 600.6400 through MCL 600.6455 as that the Court of Claims has Jurisdiction against employees of the State of Michigan and Employees of the Michigan Department of Corrections and Individual Citizens of the State of Michigan and this complaint involves claims against individual defendants of the State of Michigan and it is within the Court of Claims authority to review this matter under the Subject-Matter and Personal-Matter jurisdictions granted to it by Michigan law and the Revised Judicature act.

Any acts or authority not named by this Plaintiff in this case, Plaintiff understands and asks this Court to invoke it and apply it as that the Plaintiff is a Pro Se Litigant in this matter and the defendants will be represented by the Michigan Department of Attorney General under MCL 600.6416 and Plaintiff asks this court for understanding that while Plaintiff is an experienced litigant, this is the biggest claim I have ever presented directly to the Court of Claims on such a grand scale and I am asking you to please allow me any time to make any corrections to anything deficient that you may have if this is not sufficient for court filings.

## DAMAGES SOUGHT AGAINST DEFENDANTS

Plaintiff is seeking a total of $1,000,000.00 (One-Million Dollars) in damages against Each Named Defendant in the Combined amount of $15,000,000.00 (Fifteen Million Dollars) individually and jointly for the actions of the defendants named and detailed within this Complaint and the Brief in support.

## MANDATORY DISCLOSURE

Plaintiff has filed a total of 131 Civil lawsuits at the State Level.
141 Criminal Appeals at the State Level.

64 Civil Appeals at the Federal level
63 Appeals of Criminal cases at the Federal Level.

This resolves the defendants mandatory disclosure duty per Michigan Compiled Law.

## SERVICE UPON THE DEFENDANTS

4.

I hereby provide notice that this Plaintiff has effected service upon the defendants at their individual addresses of record and that this is done on June 7, 2024 in Muskegon, MI 49444.

Respectfully Yours,                                          June 7, 2024

Mr. Derrick Lee Cardello-Smith #267009
Probable Cause Conference Litigator
Plaintiff in pro per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

5

Exhibit 24

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH,

               Plaintiff,

v.

SEAN COMBS,

               Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

/

| | |
|---|---|
| Derrick Lee Cardello-Smith<br>MDOC # 267009<br>*Plaintiff, In Pro Per*<br>Earnest C. Brooks Correctional Facility<br>2500 S. Sheridan Drive<br>Muskegon, MI 49444 | David H. Fink (P28235)<br>Nathan J. Fink (P75185)<br>David A. Bergh (P83696)<br>Calder A.L. Burgam (P87203)<br>FINK BRESSACK<br>*Counsel for Defendant*<br>38500 Woodward Ave.; Ste. 350<br>Bloomfield Hills, MI 48304<br>Tel.: (248) 971-2500<br>dfink@finkbressack.com<br>nfink@finkbressack.com<br>dbergh@finkbressack.com<br>cburgam@finkbressack.com |

## **PROOF OF SERVICE**

STATE OF MICHIGAN  )
                     ) SS:
COUNTY OF OAKLAND)

     The undersigned hereby certifies that on September 13, 2024, he caused to be served copies

of the following: *Notice of Hearing of Motion for Temporary Admission to Practice (Erica Wolff),*

*Motion for Temporary Admission to Practice (Erica Wolff), and proposed Order Admitting Erica*

*A. Wolff Pro Hac Vice Pursuant to MCR 8.126,* upon Plaintiff Derrick Lee Cardello-Smith

#267009 by emailing said documents to John M. Fager, Warden's Administrative Assistant,

Earnest C. Brooks Correctional Facility, 2500 S. Sheridan Dr., Muskegon Heights, MI 49444, for service upon Plaintiff.

I declare under the penalties of perjury that the statement above is true to the best of my knowledge, information, and belief.

_____
NATHAN J. FINK

2

Approved, SCAO

Original - Court
1st copy - Prisoner
2nd copy - Department of Corrections
3rd copy - Return to court

| STATE OF MICHIGAN JUDICIAL DISTRICT 39th-Lenawee JUDICIAL CIRCUIT COUNTY PROBATE | PERSONAL SERVICE ON PRISONER AND AFFIDAVIT | CASE NO. 2024-7362-NO |
|---|---|---|

Court address | Court telephone no.
425 N. Main St., Judicial Building, 3rd Floor, Adrian, MI 49221 | (517) 264-4597

| Plaintiff(s) DERRICK LEE CARDELLO-SMITH  #267009 | v | Defendant(s) SEAN COMBS (SEAN PUFF DADDY COMBS), a/k/a SEAN P. DIDDY, a/k/a DIDDY, BAD BOY RECORDS LABEL OWNER, FOUNDER, a/k/a PUFFY-P-DADDY, BAD BOY, (DIDDY RUN THE CITY), et al, |
|---|---|---|

☐ Probate   ☐ Juvenile   In the matter of _____

## REQUEST

To the Warden/Administrator of _Earnest C. Brooks Correctional Facility_
                                  Name of correctional institution

You are requested to serve _Notice of Hearing of Motion for Temporary Admission to Practice, Motion for Temporary Admission to Practice,_
                            Title or description of papers        _proposed Order for Temporary Admission of Erica A. Wolff, and Proof of Service_

together with _____
              List of attachments

on _Derrick Lee Cardello-Smith #267009_ _____ on or before _Friday, September 13, 2024_
   Name of prisoner and prisoner identification number (if known)

Upon service, you must either complete the affidavit of service below or have the prisoner complete the acknowledgment of service below. If you are unable to complete service for some reason, you must return the original papers and all copies to the court clerk.

09/13/24
Date

Signature
Nathan J. Fink
Name (type or print)

NOTE: This affidavit is prepared only when the prisoner does not acknowledge service.

## AFFIDAVIT OF SERVICE

I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that I personally served the papers described above and attachments, if any, on _SMITH 267009_
                                                            Name of prisoner and prisoner identification number (if known)

on _Friday September 13, 2024 @ 1427_.
   Day, date, and time

Signature
_John M Fager_
Name (type or print)

JENNIFER L. UNGER
Notary Public, State of Michigan
County of Muskegon
Subscribed and sworn to before me on _____, _____ County, Michigan.
                                        Date
My commission expires _5-18-28_,  Signature: _J. Unger_
Acting in the County of _Muskegon_          Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received the papers described above on _____
                                                                 Day, date, time

Prisoner signature

MC 273  (3/13)  PERSONAL SERVICE ON PRISONER AND AFFIDAVIT          MCR 2.103(C), MCR 2.105, MCR 5.103(B)

Exhibit 25

STATE OF MICHIGAN


39TH JUDICIAL CIRCUIT COURT, LENAWEE COUNTY


DERRICK LEE CARDELLO-SMITH
                    Plaintiff,


v                                        Circuit Court No. 24-7362 NO



SEAN COMBS, a/k/a SEAN PUFF DADDY COMBS,
a/k/a SEAN P. DIDDY, a/k/a DIDDY, a/k/a
BAD BOY RECORDS LABEL OWNER, a/k/a PUFFY-
P-DADDY, a/k/a BAD BOY, a/k/a DIDDY RUN
THE CITY, a/k/a SHAWN COMBS, a/k/a SHAWN
PUFFY COMBS,
                    Defendant          /
_____

               MOTION FOR DEFAULT JUDGMENT
                (Via Zoom Videoconference)

          BEFORE THE HONORABLE ANNA MARIE ANZALONE

           Adrian, Michigan – September 9, 2023


APPEARANCES:

For the Plaintiff:        MR. DERRICK L. CARDELLO-SMITH #267009
                          Pro Per
                          Ernest C. Brooks Correctional Facility
                          2500 South Sheridan Drive
                          Muskegon, Michigan  49444

For the Defendant:        NONE


RECORDED BY:              JoAnn N. Spade, CER-5709
                          Certified Electronic Recorder
                          (517) 264-4578


1

TABLE OF CONTENTS

<u>WITNESSES:  PLAINTIFF</u>                                    <u>PAGE</u>

        NONE


<u>WITNESSES:  DEFENDANT</u>                                   <u>PAGE</u>

        NONE



<u>EXHIBITS:</u>                                    <u>MARKED</u>    <u>RECEIVED</u>

        NONE

```
 1              Adrian, Michigan
 2              Monday, September 9, 2024 – 10:04 a.m.
 3              (Any indiscernible, unintelligible or inaudible
 4              portions in this transcript are due to the lack of
 5              party/parties being in close proximity of microphone
 6              to be heard or due to internet connections.)
 7              THE COURT:  So, Mr. Cardello-Smith, good morning,
 8      hold on just a minute, I have someone else in the waiting
 9      room, too.  So, let me verify their identity.
10              All right, I'm gonna guess that's somebody else.
11              Okay, this is in the matter of Derrick Lee Cardello-
12      Smith, Plaintiff, versus Sean Combs, File Number 24-7362 NO.
13      I do have Mr. Cardello-Smith joining me via Zoom from the
14      Michigan Correctional.
15              This is the date and time set for his Motion for
16      Default Judgment.  A procedural default was entered on August
17      23rd of 2024 for failure to answer or otherwise defend this
18      matter.  Plaintiff now requests entry of a Default Judgment in
19      the amount of $100,000,000 plus $310.40 in costs.
20              All right, is there anything you'd like to add on
21      that Mr. Cardello-Smith or do you wish me to proceed?
22              THE PLAINTIFF:  Your Honor, I'd like you to proceed
23      as you wish.
24              THE COURT:  Okay.
25              THE PLAINTIFF:  On your (indiscernible).
```

1          THE COURT:  All right, very good.  Well, under **MCR**

2     **2.105(A)**, it's specified that service of the Summons and

3     Complaint may be made by sending the Defendant the Summons and

4     Complaint via certified mail, return receipt requested,

5     delivery restricted to the Addressee.

6          In this case, Plaintiff mailed the Summons and

7     Complaint to Sean Combs at 200 South Mapleton Drive, Los

8     Angeles, California, zip code 90077.  The Court has in its

9     file the return receipt which indicates that it was sent

10    certified mail, delivery restricted to the Addressee.

11         Therefore, there's been full compliance and I will

12    grant the entry of Default Judgment in the amount of

13    $100,000,000.00 and the $310.40 in court costs -- and let me

14    double check it.  I think that he did provide an Order, so let

15    me check.

16         THE PLAINTIFF:  I -- it should have two Orders in

17    there because I miscalculated and I didn't wanna provide any

18    false information to the Court.  So, I think I put on one was

19    $340.00 and it should've been $310. and 40 cents.

20         THE COURT:  Okay, well the one I have, says $310.40,

21    so I think we're good on that.  So, I will --

22         THE PLAINTIFF:  Okay.

23         THE COURT:  -- and date and enter this and you know,

24    you must mail it to the opposing Party.

25         THE PLAINTIFF:  Yes, ma'am.

4

```
 1                   THE COURT:  And, then we will send the copies back
 2         to you, all right?
 3                   THE PLAINTIFF:  Your Honor?
 4                   THE COURT:  Yes, sir.
 5                   THE PLAINTIFF:  Is it possible -- is it possible
 6         that your Judicial Clerk, Ms. McGrane, could send one to Mr.
 7         Jay Fager (sic), here electronically?  Because, there's
 8         certain employees of the Facility that I've sued over the
 9         years for violation of my rights and other prisoner's rights
10         and sometimes things get lost in the mail or delayed or
11         intercepted.
12                   THE COURT:  What is your JPay?
13                   THE PLAINTIFF:  And, as (indiscernible).
14                   THE COURT:  How would we send it JPay?  Do you have
15         your address?
16                   THE PLAINTIFF:  You know how you send the -- you
17         know how you send your Writ to Mr. Jay Fager, the
18         Administrative Assistant or the Records Office here, it just
19         comes right to the Facility electronically, copy of the Order
20         and then I get it.  That way it's not altered or forged or
21         anything of that nature, it's a true document, true
22         (indiscernible).
23                   THE COURT:  So, Ms. McGrane, is that something you
24         do or Ms. Adams does?  I don't --
25                   MS. ADAMS:  Judge, I just send a email request to
```

1    MDOC for the Zoom Hearing.

2              THE COURT:  So, we don't send Writs.

3              THE PLAINTIFF:  Okay.  Then, regular mail should

4    suffice, then.  I just wanted -- it was just an option that I

5    thought was available.

6              THE COURT:  Okay.  Yeah, we do Writs on criminal

7    cases, but in your case, we just do an email and to have them

8    make you available.

9              THE PLAINTIFF:  Okay.

10             THE COURT:  All right, so we will send those copies

11   out to you, sir, and I've signed it.

12             So, good luck to you.

13             THE PLAINTIFF:  Okay.  Is there -- so there's no

14   need for the Pre-Trial hearing?  This case is actually, done?

15             THE COURT:  It's done, yeah.

16             THE PLAINTIFF:  Okay.  The Order, the amount, the

17   agreements on the Order that you have, can you read that so I

18   know that it's the right one, ma'am?

19             THE COURT:  Okay, so I have an Order of Judgment,

20   not including statutory interest, Filing Fee of $175.00, Jury

21   Fee of $85.00, Motion Fee of $40. and Service $10.40.  I have

22   damages in the amount of $100,000,000., so then that other

23   total would be $310.40.  So, the total Judgment amount is

24   $100,000,310.40 and you're requesting that the Defendant shall

25   pay the Judgment in installment fees of $10,000,000 a month,

6

1    cash transactions from Defendant or someone on Defendant's

2    behalf to pay the Plaintiff's cash through the sale of

3    property, agents directing the Plaintiff or/and agent or

4    agents, accounting firm, person or persons named by the

5    Plaintiff for cash total done to a financial institution or

6    Plaintiff's agent.  And, then it is ordered that this Judgment

7    is Granted and dated today and signed by me.

8              THE PLAINTIFF:  Okay, all right, that's the right

9    one.

10             Did you also, 'cause I don't have the ability to

11   check things, that's why I have to ask.  Did you also receive

12   my request for the Court to order a release of all the court

13   documents in the interest of truth and honesty?

14             THE COURT:  I am not -- Ms. McGrane --

15             THE PLAINTIFF:  I believe it was --

16             THE COURT:  Hold on.  Oh, on the court record,

17   you're talking about enclosed -- the September 5 filing of

18   enclosed, are documents I'm asking to be placed on the court

19   record pertaining to this case at bar.  Is that what you're

20   talking about?

21             THE PLAINTIFF:  Yes, Your Honor.  And, there

22   should've been an agreement between Mr. Combs and the current

23   lead official in the Wayne County Prosecutor's Office, Kym

24   Worthy, an agreement signed between the three of us back in

25   1997 regarding this.  To -- I wanted all those documents

```
 1      released and nothing hidden, at all.

 2                  THE COURT:  Okay.

 3                  THE PLAINTIFF:  It's -- because --

 4                  THE COURT:  So, those are not notarized.

 5                  THE PLAINTIFF:  Okay.

 6                  THE COURT:  So --

 7                  THE PLAINTIFF:  Was there an Affidavit with it?

 8                  THE COURT:  Your Affidavit, but not --

 9                  THE PLAINTIFF:  Okay.

10                  THE COURT:  -- not a Notary of their signature --

11                  THE PLAINTIFF:  Okay.

12                  THE COURT:  -- so, I don't --

13                  THE PLAINTIFF:  The Witness, there would've been a

14      Notary at the -- are you talking about the Agreement?

15                  THE COURT:  So, you have an Agreement that is signed

16      by you and, allegedly, Ms. Worthy, but that's not notarized.

17      I have --

18                  THE PLAINTIFF:  Yeah.

19                  THE COURT:  I have your Affidavit, but it's not an

20      Affidavit of that.

21                  THE PLAINTIFF:  Okay.  There should've been an 11-

22      page Agreement that was witnessed, because this was a spur of

23      the moment deal at the Detroit Crime Lab in '97.  So, there

24      would've been a Notary available.  But, those witnesses would

25      attest to it.
```

```
 1                    THE COURT:  That's fine, but I don't have any --
 2                    THE PLAINTIFF:  Okay.
 3                    THE COURT:  -- Affidavit or I don't show --
 4                    THE PLAINTIFF:  Okay.
 5                    THE COURT:  -- that that Agreement was notarized,
 6          so.
 7                    THE PLAINTIFF:  No, ma'am -- Yes, ma'am, I gotcha',
 8          I understand, no problem.
 9                    THE COURT:  Okay, all right.
10                    THE PLAINTIFF:  Okay.
11                    THE COURT:  We're all set.
12                    THE PLAINTIFF:  Thank you, Your Honor.
13                    THE COURT:  Thank you.
14                    THE PLAINTIFF:  Thank you.
15                    THE COURT:  Bye.
16                    THE PLAINTIFF:  Thank you, bye-bye.
17                    (At 10:14 a.m., Proceedings concluded)
18
19
20
21
22
23
24
25
```

9

1            I certify that this transcript, consisting of 10 pages,

2    is a complete, true and correct transcript of the proceedings and

3    testimony taken in this case on September 9, 2024 before the

4    Honorable Anna Marie Anzalone.

5

6    Dated:  September 13, 2024

7                              *JoAnn N. Spade*

8                              JoAnn N. Spade, CER 5709

9                              425 N. Main Street

10                             Adrian, MI 49221
11                             (517) 264-4578

Exhibit 26

STATE OF MICHIGAN

39TH JUDICIAL CIRCUIT COURT, LENAWEE COUNTY

DERRICK LEE CARDELLO-SMITH
                    Plaintiff,


v                                    Circuit Court No. 24-7362 NO



SEAN COMBS, a/k/a SEAN PUFF DADDY COMBS,
a/k/a SEAN P. DIDDY, a/k/a DIDDY, a/k/a
BAD BOY RECORDS LABEL OWNER, a/k/a PUFFY-
P-DADDY, a/k/a BAD BOY, a/k/a DIDDY RUN
THE CITY, a/k/a SHAWN COMBS, a/k/a SHAWN
PUFFY COMBS,
                    Defendant          /

EMERGENCY MOTION TO SET ASIDE DEFAULT JUDGMENT and
MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND/OR
PRELIMINARY INJUNCTION

(Via Zoom Videoconference)

BEFORE THE HONORABLE ANNA MARIE ANZALONE

Adrian, Michigan - September 16, 2024


APPEARANCES:

For the Plaintiff:        MR. PAUL HUGHES (P36421)
                          Attorney At Law
                          13215 Woodward Avenue
                          Post Office Box 3185
                          Highland Park, Michigan  48203

                          MR. DERRICK L. CARDELLO-SMITH #267009
                          Pro Per
                          Ernest C. Brooks Correctional Facility




1

```
                              2500 South Sheridan Drive
                              Muskegon, Michigan  49444

For the Defendant:            MR. DAVID H. FINK (P28235
                              Attorney At Law
                              38500 Woodward Avenue
                              Suite 350
                              Bloomfield Hills, Michigan  48304
                              (248) 971-2500

                              MR. NATHAN J. FINK (P75185)
                              Attorney At Law
                              38500 Woodward Avenue
                              Suite 350
                              Bloomfield Hills, Michigan  48304
                              (248) 971-2500

                              MR. DAVID A. BERGH (P83696)
                              Attorney At Law
                              38500 Woodward Avenue
                              Suite 350
                              Bloomfield Hills, Michigan  48304
                              (248) 971-2500

                              MR. CALDER A.L. BURGAM (P87203)
                              Attorney At Law
                              38500 Woodward Avenue
                              Suite 350
                              Bloomfield Hills, Michigan  48304
                              (248) 971-2500




RECORDED BY:                  JoAnn N. Spade, CER-5709
                              Certified Electronic Recorder
                              (517) 264-4578
```

TABLE OF CONTENTS

WITNESSES:  PLAINTIFF                                    PAGE

        NONE


WITNESSES:  DEFENDANT                                    PAGE

        NONE



EXHIBITS:                                      MARKED    RECEIVED

        NONE

3

```
1                    Adrian, Michigan
2                    Monday, September 16, 2024 - 11:03 a.m.
3                    (Any indiscernible, unintelligible or inaudible
4                    portions in this transcript are due to the lack of
5                    party/parties being in close proximity of microphone
6                    to be heard or due to internet connections.)
7               THE COURT:  All right, here we go.
8               MR. HUGHES:  Good Morning.
9               THE COURT:  Hi, be right with you in a moment,
10      letting everybody connect, one moment.
11              MR. DAVID FINK: Sorry, Your Honor.
12              THE COURT:  All right.
13              MR. DAVID FINK:  We have -- I apologize, Your Honor.
14              THE COURT:  So, Mr. Fink and Mr. Fink, if you're in
15      the same room, your audio's gonna be pretty bad.  I'm getting
16      feedback.
17              MR. DAVID FINK:  Yes, we're trying to turn off the
18      audio on everybody's computers, other than mine.  I think it's
19      okay, now.
20              THE COURT:  No, I'm still getting a little bit of
21      feedback, so.
22              MR. DAVID FINK:  I don't think it's coming from here
23      because as you can see --
24              THE COURT:  Okay.
25              MR. DAVID FINK:  -- the other Mr. Fink --
```

4

```
1                    THE COURT:  All right, no, your's is better now.
2         All right.  This is in the matter -- This is -- it's from Mr.
3         Cardello, all right.
4                    So, all right, now I just ask if anybody's -- is not
5         an attorney on the case or a party, that they remain muted
6         with their camera off.
7                    So, Mr. Cardello-Smith, we're getting a lot of
8         feedback from the room that you're in, okay.  So, what I'm
9         gonna probably do is have -- mute you until you need to speak,
10        okay?
11                   THE PLAINTIFF:  Yes, Your Honor.
12                   THE COURT:  Okay.
13                   THE PLAINTIFF:  Can I say --
14                   THE COURT:  Oh, hold on.  Go ahead and unmute, can
15        you unmute?  Click unmute.  No --
16                   MR. HUGHES:  Your Honor, let me add something, if
17        you don't mind.
18                   THE COURT:  Let me call the case first, hold on.
19                   MR. HUGHES:  All right.
20                   THE COURT:  All right, so Mr. Cardello-Smith, I
21        muted you, so now it won't let you un -- no, there you go, got
22        it.
23                   This is in the matter of Derrick Lee Cardello-Smith
24        versus Sean Combs, File Number 2024-7362 NO.
25                   So, I have Mr. Hughes, is it my understanding you
```

5

```
1    filed an appearance on behalf of Mr. Cardello-Smith today?

2              MR. HUGHES:  I filed it last Friday, Your Honor.

3    It's a Limited Scope of Appearance only, to supplement any

4    oral argument and other matters.  I would add that Mr. Smith

5    is coming in to you through protective custody at CL Brooks

6    Correctional and I think that is why we're getting back -- I

7    don't know, actually, --

8              THE COURT:  It's his feedback because he's in a

9    cement block room, so I understand that.  What is your P

10   number, Mr. Hughes?

11             THE PLAINTIFF:  Let me try opening the door and try

12   to let some of it up.

13             THE COURT:  That might help.

14             THE PLAINTIFF:  Does that help?

15             THE COURT:  Yeah, quite a bit, actually.  All right

16   --

17             THE PLAINTIFF:  Okay.

18             THE COURT:  Mr. Hughes, what is your P number?

19             MR. HUGHES:  36421.

20             THE COURT:  All right.  So, now I have a host of

21   other people.  I know that I do have David H. Fink and Nathan

22   J. Fink, appearing -- and do I have, yes, David Bergh, as well

23   and Calder Burgam, appearing on behalf of the Defendant.

24             So, David H. Fink, your P number is 28235; Nathan J.

25   Fink P number is P75185; David A. Bergh is P83696 and Calder
```

```
 1      A.L. Burgam is P87203 --

 2                MR. BURGAM:  720 --

 3                THE COURT:  And, Erica Wolff, I did get a notice but

 4      you have not yet been admitted to the Michigan bar, so I will

 5      not call you as Counsel, all right.

 6                MS. WOLFF:  Yes, Your Honor, I have a Pro Hac Vice

 7      (indiscernible) pending.

 8                THE COURT:  Yes, thank you.

 9                THE PLAINTIFF:  And, I'm Derrick Lee Cardello-Smith

10      on behalf of myself as the Plaintiff on the matter, for the

11      record.

12                THE COURT:  Yes, and Mr. Cardello-Smith, obviously

13      Mr. Hughes has filed an appearance with a Limited Scope, is

14      that filed --

15                THE PLAINTIFF:  Yes.

16                THE COURT:  -- with your permission?

17                THE PLAINTIFF:  Yes.

18                THE COURT:  All right, excellent.  All right, so we

19      have --

20                THE PLAINTIFF:  Your Honor.

21                THE COURT:  Yes, sir.

22                THE PLAINTIFF:  Your Honor, I don't mean to

23      interrupt, it's just there's been some circumstances that have

24      taken place since last week and I want to make sure that

25      you're aware of it as soon as I discovered it.
```

```
 1              Monday we had the Judgment and then, Tuesday, Warden

 2     Chris King, Inspector Jensen and several other staff members

 3     pretty much stated to me that they were going to remove me

 4     from general population, no legit reason, no misconducts,

 5     nothing about that I broke (indiscernible) of the case.

 6     Simply, because they want to get some green out of me, for

 7     potential green.  They said, if I agree to that, they'll put

 8     me back in general population or otherwise, they're going to

 9     take me, a Level Two prisoner with no misconducts and no

10     reason to be out of jail population.  As you can see, I'm in

11     shackles.  They're gonna take me and place me and I wasn't in

12     shackles for any of our last four appearances.  They gonna

13     place me in Ionia Bellamy Creek, Alger or Oaks Correctional

14     Facility and these are Level Four prisons, to make things

15     harder for me to not only prosecute this case but also, to

16     prosecute my other cases.

17              I'm locked in a room on a floor with a whole bunch

18     of other prisoners that are there for their sanctions, their

19     citations, their misconducts.  There's literally no reason for

20     me to be in it and their reasons are complete lies.  I've been

21     here since Tuesday night at 6:30.  Haven't used a phone, none

22     of the privileges that I earned (indiscernible).

23              I just wanted that preserved on the record and

24     today, also, just sayin' it to me an hour ago, that they're

25     gonna be taking my visitor logs, my phone records and --
```

1    visitor logs, phone records and some other documents and

2    presenting those to Attorneys Fink and Bergh and also that

3    that they have the ability to alter things and alter

4    documents.  And, that is something that will greatly interfere

5    and impact this case, should this case go to trial or should

6    this case --

7           THE COURT:  Please don't shut that door.

8           THE PLAINTIFF:  Oh, they have it -- they have it

9    open because -- she said don't shut the door --

10          THE COURT:  If you shut that door, I get really bad

11    feedback and no audio.

12          THE PLAINTIFF:  -- 'cause of feedback.

13          CORRECTIONS OFFICER:  Okay.

14          THE PLAINTIFF:  Yeah.

15          THE COURT:  So, go ahead, finish up, Mr. Cardello-

16    Smith.

17          THE PLAINTIFF:  They want to alter the visitor logs,

18    they want to alter the phone records, they want to alter all

19    sorts of documents to change the outcome of this case in Mr.

20    Combs' favor.  And, all of these things are completely

21    unethical, they're not legal.  I'm a prisoner that was raped

22    by this man's client, sexually assaulted by him, had my money

23    taken from me and now, they're doing -- there's a lot of dirty

24    moves that are taking place here at the prison

25    (indiscernible).  I just wanted that on the record, Your

```
 1      Honor.
 2              THE COURT:  Thank you.  So, Mr. Cardello-Smith,
 3      obviously I have no jurisdiction, authority or control over
 4      the Michigan Department of Corrections and their policies and
 5      procedures, so I appreciate that.  So, let's move on to the
 6      Motion.
 7              THE PLAINTIFF:  Okay.
 8              THE COURT:  So, we have several Motions that were
 9      filed.  We have, get my notes, Defendant Sean Combs' Motion to
10      Dissolve Temporary Restraining Order and/or Preliminary
11      Injunction.  And then, Defendant Sean Combs' Emergency Motion
12      to Set Aside Default and Default Judgment and then we have --
13      those two Motions.
14              So, Mr. Fink, Mr. Fink, Mr. Fink, Mr. Bergh and Mr.
15      Burgam, who is going to argue that Motion, please?
16              MR. DAVID FINK:  Your Honor, I'll be arguing the
17      Motion --
18              THE COURT:  Okay.
19              MR. DAVID FINK:  David Fink.
20              THE COURT:  So, at this point, Mr. Cardello-Smith,
21      just to make sure we get a recording, I'm going to mute you,
22      okay.  All right, so David Fink, you may proceed.
23              MR. DAVID FINK:  Thank you, very much, Your Honor.
24      Thank you for hearing this --
25              THE COURT:  Oh, and I also will add, Counsel --
```

1          MR. DAVID RINK:  -- on short notice.

2          THE COURT:  -- that we have about 20 minutes, so.  I

3     will give Mr. -- I read everything, never fear.  So, you have

4     about 10 minutes and then I'll allow 10 minutes to Mr. Hughes,

5     okay, and then I'll give you about five minutes follow-up.

6     Thank you.

7          MR. DAVID FINK:  Your Honor, I will say the

8     magnitude of this matter is such that we may need more than 10

9     minutes.  I will --

10          THE COURT:  Well --

11          MR. DAVID FINK:  -- move as quickly as --

12          THE COURT:  -- that's fine.

13          MR. DAVID FINK:  -- and as clearly as --

14          THE COURT:  And I can schedule this for another day.

15     My Motion dock on Mondays -- docket is 15 minutes per motion

16     and you had asked for an emergency addition and so I am

17     limited on the time I can give you so that I don't

18     inconvenience my other clients that come in front of me.  If

19     you wish it to be set where you know, you have a period of

20     time to argue it, we can do that.  But, rest assured, I really

21     only need you to reiterate what's not in your pleadings or you

22     know, 'cause I have read them and taken notes.

23          MR. DAVID FINK:  We'll move as quickly as we can,

24     Your Honor and we'll be able to determine whether we need more

25     time afterwards.  And, I will try to speak as clearly as I

11

1   can.  If I'm speaking too fast, I apologize to the court

2   reporter and to the Court, and please let me know.

3          First, Your Honor, to be clear, we have filed a

4   Limited Appearance in this case.  And, its limited appearance

5   for the most important issue which drives everything that

6   we're dealing with here, which is that this Court does not

7   have personal jurisdiction over Sean Combs.  And, the reason

8   is because there has been no proper service in this case.

9          There's no question about -- now clear -- we have

10  two different Motions.  Both Motions, though, are controlled

11  by and can be disposed of simply based on one issue which is

12  the lack of service.  The lack of personal service is

13  everything here.

14         Now, Your Honor, the Court -- we know that the Court

15  is well aware of the rule because, in fact, we have obtained

16  the transcript of the proceeding last Monday.  And, on that

17  transcript, this Court correctly stated the requirement that

18  there must be -- that when you're dealing with mail service,

19  which you're dealing with here under **2.105(A)**, it must be

20  served -- it must be return receipt requested and delivery

21  restricted to the addressee.  This Court recited that

22  appropriately.

23         There's no mystery here what happened.  Mr. Combs

24  made a misrepresentation to this Court and we're gonna be able

25  to show it --

1            THE COURT:  Are you saying Mr. Cardello-Smith?

2            MR. DAVID FINK:  I apologize.  I am so sorry, Mr.

3       Cardello-Smith. If I make that mistake, please, correct me.  I

4       apologize.  Mr. Cardello-Smith made a fundamental

5       misrepresentation to this Court and I'm literally going to be

6       able to show it to you right now.

7            Now, in the pleadings you may recall that first he

8       claims that he served by mail on May 31st.  Then, later he

9       claims that he served on July 6th.  But the way the that he

10      proved service on July 6th, was to show the Court a return

11      receipt.  Can we share the screen, we can put the return

12      receipt up on, the Court would allow us to share the screen.

13            THE COURT:  Sure.

14            MR. DAVID FINK:  So, the first doc -- if I were --

15      if I could do this myself.  The first document the Court is

16      seeing is exactly the Proof of Service that the Court required

17      -- relied upon, the Plaintiff's green card.  And, I'd like the

18      Court to look at this card for just a moment.  But, we don't

19      have much time so I'm going to jump ahead and show the Court

20      the other card that was filed with the Court.

21            This one, as you can see, but let me take just one

22      moment, yeah, okay we've still got it.  You can put it back

23      up, yeah.  We've got the two cards, if you look on the left,

24      you see the card that the Court understandably relied upon.

25      Now, looking at that card, I would point out that the printed

1    name there is -- I don't know what it is, but it certainly is

2    not Sean Combs.  The signature, I don't know what it is, but

3    it's certainly not Sean Combs.

4              But, the card on the left, which was one of the

5    cards the Court had in its file that was provided by Mr.

6    Smith, that card has checked off Addressee at the top.  It

7    says on the left side, under Summons and Complaint, it has the

8    number of the case and then on the bottom it's checked off,

9    deferred -- I'm sorry, certified mail, certified mail

10   restricted delivery.  Then, on the right, you see where it

11   says, signature confirmation and signature confirmation

12   restricted delivery, does the Court see that?

13             THE COURT:  Yes.

14             MR. DAVID FINK:  Okay.  But, the card on the right

15   was also filed with the Court by Mr. Smith, on the same day.

16   It's in the court file and that card is absolutely identical,

17   you can see -- it's clearly the same card because you see,

18   like in the lower right-hand corner where somebody has

19   scribbled, return receipt requested, look at the odd way that

20   the date says, July 6th, 2021 but it's got a little funny mark

21   on the top of the one.  Who knows, maybe somebody was trying

22   to write four, I don't know.  But, clearly these are the same

23   documents.  But the one on the left has been doctored.  After

24   this was signed -- after the card on the right was signed,

25   somebody went through and checked, Addressee, certified mail

14

1   restricted delivery, signature confirmation, signature

2   confirmation, restricted delivery.  Looking at these cards,

3   there's no way this could've been done in the other Order.

4   First of all, there'd be no reason to have taken it and then

5   erase those markings.  But, if you had erased or white-out --

6   whited-out those markings, there'd be some showing on the card

7   on the right and there isn't.

8          The card on the right is the actual return receipt

9   and apparently, Mr. Smith, who did plenty of other things

10  which we can talk about that show his lack of credibility.

11  But apparently, Mr. Smith realized it was supposed to be

12  restricted and so after he got the card, he checked those

13  boxes and then re-submitted it to the Court.  That, alone,

14  establishes he did not serve properly.  The Court Rule

15  couldn't be more clear and it's very, very clear that he

16  didn't do that here.

17         Now, let's be clear about who we're dealing with,

18  okay.  Mr. Smith --

19         THE COURT:  Are you done screen sharing, 'cause you

20  can remove that.

21         MR. DAVID FINK:  We're done with this particular --

22  we can take this document off, yes.

23         THE COURT:  Thank you.

24         MR. DAVID FINK:  Okay.  Mr. Smith resides at the

25  E.C. Brooks Correctional Facility.  He's there for a reason,

1     the Court knows he's convicted of multiple felonies.  He's

2     there for a long, long time.  He's also a serial litigant who

3     has been found by the Federal Court, by Judge Lawson in the

4     Eastern District and we've got this in the record.  He has

5     been found to have filed at least four frivolous lawsuits,

6     that's before this one.

7            Now, Your Honor, I wanna be clear about something.

8     Mr. Combs has denied service in his Affidavit, very explicitly

9     and very clearly. He's also denied signing the card.  But, if

10    you look at the card and I'm sorry, I guess we don't need to

11    pull it up again.  But, if you look at the card and look at

12    the signature, that is not the signature of Sean Combs.  Now,

13    I'm not expecting the Court to have memorized Sean Combs

14    signature, but that signature doesn't say anything like Sean

15    Combs.

16           Now, in this case -- in this case, Mr. Smith has

17    presented another signature that he claims to be the signature

18    of Sean Combs as the Court may recall.  That signature is

19    found on this 11-page document we'll be showing it to the

20    Court in a little while.  And, that signature's 100% different

21    than this signature.  Now, neither one of them are the

22    signatures of Sean Combs.  But, these are both signatures that

23    Mr. Smith wants the Court to believe are Sean Combs' signature

24    and they are not.

25           Now, Your Honor, with the limited time that we have,

1    I want to be as clear as possible.  In his Affidavit, Mr.

2    Combs has told the Court he didn't get the Summons and

3    Complaint, he didn't sign a return receipt.  He looked at the

4    return receipt filed in this case, it's not his signature.

5    The address on the return receipt is not his primary address.

6    He does not primarily live in Los Angeles, he lives in Miami,

7    Florida, now.

8         But Your Honor, and this alone should resolve both

9    cases without -- with both Motions without a proper service,

10   documented to the Court.  He had the burden of proving it.

11   Without proper service documented to the Court, the Court

12   cannot exercise jurisdiction over Mr. Combs, just cannot.

13        Now, I'm gonna go very quickly through a couple of

14   things here, but I think I need to jump ahead to something

15   else.  Because, the Court has heard many lies from Mr. Smith

16   and only this morning did we confirm that one of them was a

17   lie.  And, that is at the Temporary Restraining Order hearing,

18   which we were able to observe on YouTube, at that hearing, you

19   may recall that Mr. Smith told you that he was visited at the

20   prison by Sean Combs.  He told you, he told the Court that he

21   gave the Court a visitor list, apparently thinking that

22   showing the people he was willing to visit would mean that he

23   had -— they had visit -- willing to have visit him, would mean

24   that they had visited him, which they don't.

25        We subpoenaed the Prison and that's what Mr. Smith

17

1    was talking about.  We subpoenaed the Prison and just this

2    morning, just minutes ago, actually, we received something

3    which I want to show you on the screen.  This is the document

4    that we got from the Prison when we said we wanted a list of

5    every visitor that visited Mr. Cardello-Smith at the Prison

6    between January 1st and today.

7            Now, as you will recall, when he testified, he told

8    you in the TRO Hearing, he told you that two weeks before that

9    and that was some date in August, that two weeks before that,

10   not only had Sean Combs visited him, but Sean Combs had

11   offered him 2.3 million dollars.  Sean Combs had told him some

12   other things and supposedly, Sean Combs had even said to him

13   that he would not be answering the Complaint, as though that's

14   something that somebody tells an opposing party.

15           Your Honor, this is the Visitor Log that we received

16   this morning from the Prison.  And, as you can see, he has had

17   three recorded visits since January 1st, William Proctor, Paul

18   Hughes and William Proctor.  Paul Hughes, as you understand is

19   his lawyer.  And, by the way, I point out this was on

20   September 5th.  So, while the Court has been indulging Mr.

21   Smith's, shall we say, creative filings.  He has actually been

22   being advised by Counsel who's now on this -- on the Zoom

23   today with -- on this proceeding with us today.

24           Your Honor, in order to have entered an Order, and

25   so -- the reason I'm showing this particular thing to you is,

18

1       that his credibility is relevant.  He lied to this Court

2       repeatedly and we have evidence of it and we've only been on

3       this case for a couple of days.

4               Mr. Smith did not know about this case -- I mean --

5       I'm sorry.  Mr. Combs did not know about this case until he

6       saw it in the public media when the Default Judgment was

7       entered on September 9.  The very next day we were retained,

8       we filed our pleadings as fast as we possibly could.  We got

9       here as quickly as we possibly could, once we could put the

10      facts together.  And, we're getting more facts every minute.

11              Now, Your Honor, the Temporary Restraining Order,

12      the Temporary Restraining Order could not be more improper for

13      so many different reasons, but I'm gonna cut to the chase.

14      The most important reason is, if you acc -- none of these

15      allegations are true.  Mr. Combs denies every single

16      allegation.  This is pure fiction.  But, we don't expect the

17      Court to rely on that.  What the Court can rely on is, every

18      -- if every word in this Complaint were true, and they're not,

19      but if every word were true, the Statute of Limitations ran

20      years ago.  He couldn't possibly prevail on likelihood of

21      prevailing on the merits.  This Court couldn't determine that

22      he's likely to prevail on the merits.  It's impossible for him

23      to prevail on the merits.  He claims all of this occurred in

24      1997.  The most generous interpretation of the Statute would

25      be the 10-year Statute which was adopted by the Legislature in

1    2018. The actual Statute of Limitations in place in 1997 was

2    a three-year Statute for allegations like this arising out of

3    Criminal Sexual Conduct.

4         This claim has been barred by the Statute of

5    Limitations for years. This occurred 27 years ago. The

6    Statute ran, at least, 17 years ago and probably 24 years ago

7    and that should be the end of any inquiry regarding likelihood

8    of prevailing on the merits.

9         But, if the Court wants to go further, the Court can

10    look at the completely implausible allegations that this man

11    makes. Here's a man who's been convicted of Criminal Sexual

12    Conduct and Kidnapping and who's filed at least four frivolous

13    lawsuits in Federal Court.

14         But, look at what he says in this case, and we're

15    gonna show the Court something very interesting here. He

16    claims in this case that this occurred in Adrian, Michigan.

17    In his Pre-Trial Statement, which is filed in this Court, he

18    states that the assault occurred in the City of Adrian. Now,

19    the Complaint doesn't say that. In the Complaint in the first

20    paragraph when he refers to the Holiday Inn, he says it's

21    located in and then the next spot is whited-out.

22         Well, as the Court might know, there was no Holiday

23    Inn in Adrian in 1997. That building was turned into a

24    Holiday Inn in 1999, two years later. It was not a Holiday

25    Inn. And, it might've been convenient -- might've been

1    convenient for Mr. Combs -- or Mr. Smith to make that claim,

2    might've been convenient.  But, I want to show you something

3    that's a lot more interesting and a lot more troubling and

4    should again be decisive.  Nick, can you share the screen.

5          Your Honor, we learned late Friday through a little

6    bit of investigation that Mr. Smith filed an almost identical

7    Complaint in Monroe County and we're showing it right now.

8    It's Case Number 2024-147784-NO, that was filed -- and by the

9    way, we checked the court docket, there's been no action in it

10   after it was filed.  Note that it was filed on June 10th, the

11   exact same date that this case was filed in this Court.  And,

12   if you look side by side at the two documents, you can see the

13   way that he has been trying to manipulate this Court with his

14   cunning frauds.  It's shocking what he's done here.

15         On the left side, where you see the Complaint filed

16   in Monroe County, if you look at the jurisdictional statement,

17   I'm not sure why he put that in, he must've thought -- that's

18   really something when you're doing a divorce, but he put it

19   in.  And, he says, he maintained a residence in Monroe County

20   at least six months prior to incarceration.

21         On the jurisdictional statement in this case, on the

22   right, you see that he said that he maintained a residence in

23   -- you see how he whited-out County?  Which -- whited-out

24   Monroe, but that's not all.  Next page.

25         His Count One -- Count One, I mean paragraph one in

21

1      the Complaint, in the Monroe County Complaint, he says he was

2      invited to attend a gathering at the Holiday Inn -- this is

3      what Mr. Smith wrote, located in Monroe, Michigan, where he

4      says these things occurred.

5              Then, lets look down at the Lenawee County

6      Complaint, absolutely identical with one difference.  Invited

7      to attend a gathering at the Holiday Inn located in, blank,

8      Michigan.  And, then of course, in this case he lies flat out

9      in a Pre-Trial Statement and says it was in Adrian, Michigan,

10     never tells anybody about the Monroe Complaint.  Never tells

11     that lie, again.  He picks his lies to manipulate the Court he

12     wants to manipulate.

13             By the way, there's more in common in these cases.

14     Nick, can you show the next thing.  In both cases he files a

15     Proof of Service and the Proof of Service says, as the Court

16     will recall this odd Proof of Service says, that he served the

17     pleadings on May 31st, obviously impossible.  The pleadings

18     didn't exist, at least hadn't been filed in any court by May

19     31st.

20             But, in Monroe County you can see the Proof of

21     Service.  Here, in Lenawee County, check out the top of that

22     document.  You see how he cuts and pastes.  How he puts in the

23     Lenawee County court, rather than the Monroe County court.

24     Otherwise, it's --

25             THE COURT:  So, Mr. Fink, Mr. Fink, as I said, my

22

```
 1          Monday morning docket is pretty tight.  I have hearings set
 2          every 15 minutes.  You guys, we appreciate your request
 3          Emergency Hearing, we tried to fit you in but I am out of
 4          time.  So, I am going to set this right away, expeditiously,
 5          for another time.  But --
 6                    MR. DAVID FINK:  Your Honor, I have to beg -- I have
 7          to beg the Court to set aside the TRO --
 8                    THE COURT:  I have to say that I have a docket --
 9                    MR. DAVID FINK:  The TRO is invalid.
10                    THE COURT:  Mr. Fink, I have a docket that I'm
11          running.  I'm gonna get you in right away, but I'm not gonna
12          inconvenience the other people that are in front of me for you
13          on an Emergency Hearing.  I understand that.
14                    So, I can, let me see.  So, we can do -- I can do
15          8:00 a.m. -- I can do -- I can do one hour tomorrow, that's a
16          post-judgment hearing I have at 1:30.  So, I can set this for
17          one hour tomorrow.  Do we think we're gonna need more than an
18          hour?
19                    MR. DAVID FINK:  Your Honor, this is so critical,
20          but we'll take whatever time the Court can give us -- we'll
21          try to get it --
22                    THE COURT:  Well, my question, do you need more than
23          an hour?
24                    MR. DAVID FINK:  If we can, at least, address the
25          Temporary Restraining Order --
```

23

```
 1                    THE COURT:  Mr. Hughes?

 2                    MR. DAVID FINK: We can do it in one hour.

 3                    MR. HUGHES:  Your Honor, I have an important

 4          doctor's appointment tomorrow, I cannot do it.

 5                    THE COURT:  What time -- do you have the morning

 6          available?

 7                    MR. HUGHES:  The morning appointment is at 11:00

 8          a.m.

 9                    THE COURT:  Okay, how about Wednesday, at -- what

10          about Wednesday --

11                    MR. DAVID FINK:  Your Honor, Temporary Restraining

12          Order cannot --

13                    THE COURT:  Mr. Fink, Mr. Fink --

14                    MR. DAVID FINK:  -- exist for more than 14 days.

15                    THE COURT:  -- stop, stop, Mr. Fink.

16                    MR. DAVID FINK:  Your Honor, this Restraining Order

17          is in violation of the Court Rule.

18                    THE COURT:  Mr. Fink, stop before I hold you in

19          contempt.  I am trying --

20                    MR. DAVID FINK:  I'm sorry.  I apologize.

21                    THE COURT:  -- to accommodate you as quickly as

22          possible.  I am not going to inconvenience the other 30 people

23          that are on my docket this morning.  So, I am trying to

24          accommodate you.

25                    So, I can do 11:00 on Wednesday, I can do 1:30 on
```

```
 1     Wednesday.
 2               MR. HUGHES:  Your Honor --
 3               THE COURT:  I will bump other Evidentiary Hearings
 4     but I cannot bump my Motion docket.  So --
 5               MR. HUGHES:  11:00 a.m.
 6               THE COURT:  Eleven o'clock --
 7               MR. DAVID FINK:  What time, Your Honor?  What time?
 8               THE COURT:  Eleven or one-thirty.
 9               MR. DAVID FINK:  Well, we want it as soon as
10     possible, so --
11               THE COURT:  Well, it's two days away, 11:00 or 1:30,
12     what works best for you?
13               MR. DAVID FINK:  I said 11:00.
14               THE COURT:  Okay.  Mr. Hughes?
15               MR. HUGHES:  That's fine, Your Honor.
16               THE COURT:  All right, so we will see you --
17               MR. DAVID FINK:  Your Honor, may I -- may I
18     respectfully ask the Court to re-visit just the issue of the
19     TRO.  The TRO is not supposed to last --
20               THE COURT:  I have to leave now and go to --
21               MR. DAVID FINK:  -- for more than 14 days.
22               THE COURT:  -- my other hearings.  Thank you, very
23     much.  So, we will see you back the 18th at 11:00.  Thank you.
24               MR. HUGHES:  Thank you, Your Honor.
25               THE COURT:  Thank you.  So, we will continue this to
```

1    9-18.

2              All right, now I would ask anybody from the media to

3    log-off.  Thank you.

4              (At 11:36 a.m., Proceedings concluded)

5

6

7

8

9

10

11

12

13

14

15        I certify that this transcript, consisting of 26 pages,

16   is a complete, true and correct transcript of the proceedings and

17   testimony taken in this case on September 16, 2024 before the

18   Honorable Anna Marie Anzalone.

19

20   Dated:  September 18, 2024

21              ___*JoAnn N. Spade*_____

22              JoAnn N. Spade, CER 5709

23              425 N. Main Street

24              Adrian, MI 49221
25              (517) 264-4578

Exhibit 27

STATE OF MICHIGAN


39TH JUDICIAL CIRCUIT COURT, LENAWEE COUNTY


DERRICK LEE CARDELLO-SMITH
                    Plaintiff,


v                                         Circuit Court No. 24-7362 NO



SEAN COMBS, a/k/a SEAN PUFF DADDY COMBS,
a/k/a SEAN P. DIDDY, a/k/a DIDDY, a/k/a
BAD BOY RECORDS LABEL OWNER, a/k/a PUFFY-
P-DADDY, a/k/a BAD BOY, a/k/a DIDDY RUN
THE CITY, a/k/a SHAWN COMBS, a/k/a SHAWN
PUFFY COMBS,
                    Defendant            /
_____

                MOTION FOR DEFAULT JUDGMENT
                 (Via Zoom Videoconference)

            BEFORE THE HONORABLE ANNA MARIE ANZALONE

                Adrian, Michigan – August 7, 2024


APPEARANCES:

For the Plaintiff:      MR. DERRICK L. CARDELLO-SMITH #267009
                        Pro Per
                        Ernest C. Brooks Correctional Facility
                        2500 South Sheridan Drive
                        Muskegon, Michigan  49444

For the Defendant:      NONE


RECORDED BY:            Mary Swartz, CER-
                        Certified Electronic Recorder
                        (517) 264-4578




                            1

TABLE OF CONTENTS

WITNESSES:  PLAINTIFF                                    PAGE

        NONE


WITNESSES:  DEFENDANT                                    PAGE

        NONE



EXHIBITS:                                    MARKED    RECEIVED

        NONE

2

```
 1                    Adrian, Michigan
 2                    Wednesday, August 7, 2024 - 2:30 p.m.
 3                    (Any indiscernible, unintelligible or inaudible
 4                    portions in this transcript are due to the lack of
 5                    party/parties being in close proximity of microphone
 6                    to be heard or due to internet connections.)
 7                    THE COURT:  Okay, are you Derrick Lee Cardello-
 8           Smith, sir?
 9                    THE PLAINTIFF:  Yes, I am, Your Honor.
10                    THE COURT:  All right, thank you.  This is in the
11           matter of Derrick Lee Cardello-Smith, MDOC Number 267009
12           versus Sean Combs, Sean Puff Daddy Combs, also known as Sean P
13           Diddy, also known as Diddy, Bad Boy Records Label Owner,
14           Founder, also known as Puff P. Daddy, Bad Boy, Diddy Run the
15           City, Sean Combs, also known as Sean Puffy Combs, and this is
16           File Number 24-7362 NO.  Grab your paperwork here, real quick,
17           this other paperwork.  We do have Mr. Cardello-Smith appearing
18           from the Michigan Department of Corrections.  Sir, where are
19           you currently located?
20                    THE PLAINTIFF:  I'm located at the Ernest C. Brooks
21           Correctional Facility, 2500 South Sheridan Drive, Muskegon,
22           Michigan 49444, ma'am.
23                    THE COURT:  All right, thank you, sir.
24                    THE PLAINTIFF:  Oh, Your Honor, excuse me.
25                    THE COURT:  Thank you.  So, I do see that we do have
```

3

1      a Proof of Service on Mr. Combs.  But, for purposes of this

2      hearing you filed a Motion for a Temporary Restraining Order

3      and/or a Preliminary Injunction to stop all sales of the

4      property and assets attached to or involved with said property

5      based on interest of Plaintiff and Plaintiff's connections to

6      Defendant's sexual assaults of Plaintiff Derrick Lee Cardello-

7      Smith requiring a Preliminary Injunction and/or a Temporary

8      Restraining Order.

9            We did set that for hearing today and luckily the

10     Brooks Correctional Facility was able to make you available,

11     actually, they had to drive someone up today on another case.

12     So, sir, I have received your Motion and a Proposed Order.  Do

13     you wish to argue the Motion today, sir?

14            THE PLAINTIFF:  Yes, yes, Your Honor.

15            THE COURT:  All right, you may proceed, then.

16            THE PLAINTIFF:  Okay, the purpose of it is, based on

17     two actions taken by Mr. Combs himself, directly, with me

18     here.  We did a live, one-on-one visit in our prison visiting

19     room.  There's, two meetings within the past two weeks with

20     Mr. Combs on one meeting and then, a financial advisor on the

21     other meeting on Mr. Combs' behalf.  And, he stated that he

22     would make me an offer to end the case and what happened to me

23     because of other things that he stated he has going on in his

24     life that require his money right now and he wants to sell

25     everything off.  And, he made me a financial offer of 2.3

```
 1    million dollars to allow what happened to me to go away and he
 2    stated that he's gonna be selling his property.  And, under
 3    the 2005 California Civil Code 2881-2885, the creation of
 4    lanes, which allows out-of-state justices and orders to cause
 5    a stop of any title transfer, property transfers in Los
 6    Angeles or any other place that he has property.  He stated
 7    that he wouldn't be able to proceed with that sale.  And, he
 8    did it the day after I served him, the suit and he also said,
 9    that he won't be filing an Answer to the Complaint.  He said,
10    you can find me in default or whatever.  He has a better
11    chance with default than he would with having a Restraining
12    Order stopped.  And, I said, so you wanna hide what you -- you
13    wanna hide your money and (indiscernible) me same -- quite
14    possibly pay to me if I'm given the benefit of a judgment in
15    my favor for what you've done to me.  And, he pretty much
16    said, yeah, you know how we get down.  And, I said, okay well,
17    I disagree with how you get down.  Your sale shouldn't go
18    through.
19              THE COURT:  So, I'm gonna --
20              THE PLAINTIFF:  If you --
21              THE COURT:  Hold on, Mr. --
22              THE PLAINTIFF:  I'm sorry, I'm sorry.
23              THE COURT:  -- Cardello-Smith, okay.  So, you went
24    in a different direction than I thought you were going into.
25    I thought we were just gonna --
```

5

```
1              THE PLAINTIFF:  I'm sorry.
2              THE COURT:  -- no, no, no.  You can --
3              THE PLAINTIFF:  We are.
4              THE COURT:  -- went off in a different direction
5       than what your actual --
6              THE PLAINTIFF:  Yeah.
7              THE COURT:  -- Motion was.  So --
8              THE PLAINTIFF:  Yeah.
9              THE COURT:  -- what I just want to say is,
10      settlement negotiations --
11             THE PLAINTIFF:  Yeah.
12             THE COURT:  -- and these are probably --
13             THE PLAINTIFF:  Separate hearings.
14             THE COURT:  -- but are not, yeah, they're not for --
15             THE PLAINTIFF:  Yes.
16             THE COURT:  -- to be placed on the record today.
17             THE PLAINTIFF:  I'm sorry.
18             THE COURT:  Okay.
19             THE PLAINTIFF:  I apologize.
20             THE COURT:  No, no, no, it's okay.  You're not an
21      attorney, I understand that.  So, if we can just back track
22      and focus --
23             THE PLAINTIFF:  Okay.
24             THE COURT:  -- just on your Motion For --
25             THE PLAINTIFF:  Yes, ma'am, I get what you want.
```

1              THE COURT:  Okay, thank you.

2              THE PLAINTIFF:  If he's allowed to sell his property

3      that he has in L.A. and the properties that are in his name,

4      being used and held by other people in Michigan then, it will

5      cause me harm because I can be tied directly to those

6      properties through loans and through other areas of investment

7      that I did when I was out there and while in prison, through

8      money that I've sent.  And, if he's allowed to go through with

9      any of the sales, I won't be able to recoup any of my monies

10     or anything from him as a result of any possible judgment in

11     this action if he's allowed to proceed with it.

12             And, an Injunction or Restraining Order would help

13     ensure that he's not manipulating and selling the property to

14     avoid this, his responsibility in these matters here.  That's

15     what a Temporary Restraining Order would do, it would prevent

16     that from happening.

17             'Cause you -- it's a very serious matter.  It

18     involves a lot of money, a lot of money and him selling this

19     is -- would help him avoid his liability for these actions

20     done upon me.  And, I was just hoping that I'd be able to get

21     the Restraining Order to prevent that.  There won't be any

22     harm to him, any of the parties, there won't be any harm to

23     him in any way.  And, if it's deemed that it's not justified

24     then he can go ahead and go through with the sale at the end

25     of the case.  But, one has to be put in place to stop this

7

1      from happening.

2                THE COURT:  Okay.  Okay, so thank you very much.

3                THE PLAINTIFF:  Yes.

4                THE COURT:  Hold on, I'm just looking back through

5      your Complaint.

6                THE PLAINTIFF:  Yes.

7                THE COURT:  All right, I'm going to check one more

8      of your filings.  So, I'm gonna step off the Bench for two

9      seconds and I'll be right back, all right.

10               THE PLAINTIFF:  Yes, Judge Anzalone.

11               THE COURT:  Thank you.

12               (At 2:36 p.m., Court recessed)

13               (At 2:39 p.m., Court reconvened)

14               THE PLAINTIFF:  There -- I was just, first off, just

15     thank you for giving me the hearing and thank you for setting

16     a Pre-Trial on this matter.  Thank you, Your Honor.

17               THE COURT:  You're welcome.

18               THE PLAINTIFF:  There was some other filings --

19     there was some other filings that you should've gotten.  I

20     didn't know if that's one of the filings you could've been

21     referring to.

22               THE COURT:  So, I received your Complaint and all

23     the Attachments to it.  And, then I received this Motion and I

24     just wanted to review, take a moment to review back through

25     the US District Civil --

1          THE PLAINTIFF:  Okay.

2          THE COURT:  -- docket and your Complaint.  So, I did

3    do that, that's all.  And --

4          THE PLAINTIFF:  Yes.

5          THE COURT:  Okay.

6          THE PLAINTIFF:  Okay.

7          THE COURT:  Anything else?

8          THE PLAINTIFF:  All of -- everything that you're

9    looking at, they're all tied in together, every part as crazy

10   as it seems, as outrageous as it seems, it all ties in, every

11   bit of it, every facet.

12         THE COURT:  Okay.  All right, well I have a Proof of

13   Service showing that Mr. Combs was served on July 6th of 2000

14   and, let me see, is that 24, yep?

15         THE PLAINTIFF:  Yes, Your Honor.

16         THE COURT:  Looks like it, 2024, return receipt

17   requested was provided.  So, there is proper service, Mr.

18   Combs has neither appeared nor responded to this request.

19         So, I'm going to grant your Motion for a Preliminary

20   Injunction Temporary Restraining Order and order that the

21   Defendant and their Agents are hereby enjoined, temporarily,

22   for a period of 90 days from the sale, transfer or exchange,

23   trade or transaction of title or deed to the property listed

24   at the address and placed on the market by Defendants for the

25   amount of $70,000,000.00 and this property and estate

1       belonging to or connected to Defendant Sean Combs, shall cease

2       and desist any and all trades, transactions or otherwise stop

3       the process of any further actions on this property being

4       continued and this shall have an immediate effect.  I'm going

5       to date this August 7th of 2024 and I am going to sign this and

6       we are set for a Pre-Trial date on Monday, September 9th of

7       2024 at 2:30 p.m.

8                       Is there anything --

9                       THE PLAINTIFF:  Your Honor?

10                      THE COURT:  Yes, sir.

11                      THE PLAINTIFF:  Yes, thank you so much, Your Honor.

12      First off, thank you, very much, ma'am.  The second thing is,

13      under the Summons rules and the Court Rules of Service, Mr.

14      Combs, the Defendant had 28 days after he was served by mail,

15      21 if it's regular Process Service.  His 28 days was the

16      August 3rd and there was no Answer on the Default and I

17      understand that I have to motion verbally or in writing,

18      whichever one you prefer, at your -- how ever, you prefer to

19      have Default Judgment entered.  And, today is literally, the

20      28th, 9 -- 30, 30 -- 32nd day, I believe.  And, I'd either like

21      to either preserve the issue of Default Judgment or Judgment

22      in my favor based on failure to answer.

23                      THE COURT:  Okay.

24                      THE PLAINTIFF:  Whichever Your Honor would like.

25                      THE COURT:  All right, thank you.  Typically, we

10

```
 1        require that -- Ms. McGrane?  Is Ms. McGrane around?

 2                  THE PLAINTIFF:   How are you spelling her name, Your

 3        Honor?

 4                  THE COURT:  Oh, no -- hold on, I'm talking to my

 5        Judicial Attorney.  Typically, we require the Motion for the

 6        Affidavit and Motion for Default be filed.  So, I just -- Ms.

 7        Adams, is Ms. McGrane in her office?

 8                  MS. ADAMS:  She is not, I'm going to go find her

 9        right now, Judge.

10                  THE COURT:  Okay, hold on.

11                  THE PLAINTIFF:  I know I read that rule.  I read the

12        Rule, Your Honor, MCR 2.603 governs that and it said the Party

13        can do it in front of the Trial Court Judge.

14                  THE COURT:  Yeah.

15                  THE PLAINTIFF:  Or, by mail, whatever you want.

16                  THE COURT:   Hold on one second.

17                  (At 2:42 p.m., The Court confers with Ms. McGrane)

18                  (At 2:44 p.m., Conference concluded)

19                  THE COURT:  So, sir, the Court Rule that you're

20        referring to, it's not a trial date so I'm think I'm right.

21        So, you're gonna have to file the Affidavit and request for a

22        Default, okay.

23                  THE PLAINTIFF:  Okay, yes, Your Honor.

24                  THE COURT:  And, obviously, you'll be able to file

25        that before our Pre-Trial date anyway, okay?
```

11

```
 1                    THE PLAINTIFF:  Yes, ma'am -- Yes, Your Honor.

 2                    THE COURT:  All right, so --

 3                    THE PLAINTIFF:  Okay, so the Order was granted?

 4                    THE COURT:  The Order -- Your Ex Parte Motion was

 5         granted -- or, your Motion for a Temporary Restraining Order

 6         was granted.  I've signed it and so we'll get that processed

 7         and back to you and then, you'll have to obviously, serve that

 8         on the parties.

 9                    THE PLAINTIFF:  Yes, ma'am, thank you.

10                    THE COURT:  All right.

11                    THE PLAINTIFF:  Can your Order say any -- Your

12         Honor, can you add on your Order any Michigan representative

13         of him acting on his behalf for Michigan properties, as well,

14         as part of that Order or does your Order cover everything?

15                    THE COURT:  You provided the Order, so I'm going off

16         of the Order you --

17                    THE PLAINTIFF:  Yes, I did.  Yes, I did.

18                    THE COURT:  So, I'm going off the Order you provided

19         to me and I've signed that Order --

20                    THE PLAINTIFF:  Okay, that's --

21                    THE COURT:  Okay.

22                    THE PLAINTIFF:  That's what I needed, thank you.

23                    THE COURT:  All right.

24                    THE PLAINTIFF:  Thank you, Your Honor.

25                    THE COURT:  Thank you Mr. Cardello-Smith and we'll
```

12

1    make sure the Writ's done and we'll see you back in September.

2    Thank you.

3              THE PLAINTIFF:  Thank you, God Bless.

4              THE COURT:  Thank you.

5              (At 2:45 p.m., Proceedings concluded)

6

7

8

9

10

11

12

13

14         I certify that this transcript, consisting of 13 pages,

15   is a complete, true and correct transcript of the proceedings and

16   testimony taken in this case on August 7, 2024 before the Honorable

17   Anna Marie Anzalone, recorded by Mary Swartz and transcribed by

18   JoAnn N. Spade.

19

20   Dated:  September 18, 2024

21              ___*JoAnn N. Spade*_____

22              JoAnn N. Spade, CER 5709

23              425 N. Main Street

24              Adrian, MI 49221
25              (517) 264-4578

13

Exhibit 28

| STATE OF MICHIGAN | NOTICE OF LIMITED SCOPE APPEARANCE | CASE NO. and JUDGE |
|---|---|---|
| 39th **JUDICIAL DISTRICT** **JUDICIAL CIRCUIT** **COUNTY** | | 2024-7362-NO<br>Hon. Anna M. Anzalone |

Court address
429 N. Main St. Adrian, MI 49221

Court telephone no.
(517) (1264-4577

| Plaintiff/Petitioner<br><br>Derrick Lee Cardello Smith | v | Defendant/Respondent<br><br>Sean Combs et al |
|---|---|---|

1. Attorney <u>Paul M Hughes</u>               <u>P36421</u>, and the Party, <u>Derrick Lee Cardello Smith</u>, agree
   Name                                    Bar no.                          Name
   that attorney will provide limited scope representation to the party in this matter according to paragraphs 3 and 4 below
   for the following purpose(s)/activity(ies): <u>See attached</u>
   (Ex. mediation, arbitration, discovery, deposition of party(ies), trial, scheduling conference, motion for summary disposition, etc.)

   ☐ **Amendment:** This notice amends the notice filed on _____.
                                                      Date
      ☐ by adding an appearance for the matter(s) indicated in paragraph 3.
      ☐ other: _____

2. The party is:   ☑ Plaintiff   ☐ Petitioner   ☐ Defendant   ☐ Respondent   ☐ Other _____

3. Attorney appears under MCR 2.117(B)(2)(c). Representation is limited as follows (must select one or more):
   ☑ Date/time period: <u>September 16, 2024  and until terminated by Plaintiff</u>
      (Ex. date certain, until judgment and submission of order, etc.)
   ☑ Representation in the hearing scheduled for <u>September 16, 2024</u>   ☑ and in any continuance of that proceeding.
      (Ex. trial (date), motion for summary deposition (date), etc.)
   ☑ Subject matter(s): <u>See attached</u>
      (Ex. child support, QDRO, property settlement, contractual dispute, etc.)

4. **Consent:** Party consents to this limited scope representation.

5. **Service:** Under MCR 2.107(B)(1)(e), all documents, both court filings and otherwise, must be served on both the party and the limited scope attorney for the duration of this limited appearance, unless otherwise ordered by the court.

6. **Communication:** Limited scope attorney will inform all opposing parties and counsel whether oral and/or written communication should be directed to party, attorney, or both for the duration of this limited appearance, under MRPC 4.2 and 4.3.

7. **Duration:** Upon termination of representation indicated above, the attorney will file a notice of withdrawal from limited appearance pursuant to MCR 2.117(C)(4) in this court, and serve a copy upon the party and opposing counsel/party.

| /s/ Paul M Hughes | 9/13/2024 | /s/ Derrick Lee Cardello Smith (by consent) PMH 9/13/2024 | |
|---|---|---|---|
| Signature of attorney | Date | Signature of party | Date |
| Paul M Hughes | P36421 | Derrick Lee Cardello Smith | |
| Attorney name (type or print) | Bar no. | Party name (type or print) | |
| 13215 Woodward Ave. PO Box 3185 | | C.L Brooks Correctional Faciliy 2055  S.. Sheridan Drive | |
| Address | | Address | |
| Highland Park Michigan | 313-942-7285 | Muskegon Heights MI | 231-773-9200 |
| City, state, zip | Telephone no. | City, state, zip | Telephone no. |

Approved, SCAO
Form MC 516, Rev. 9/23
MCR 2.107(B), MCR 2.117(B)(2)(c), MRPC 1.2(b)
Page 1 of 1

## SCOPE OF REPRESENTATION

1) Appear at Motion Monday, September 16, 2024 and subsequent hearings.

2) Provide supplemental oral argument at Motions and other hearings.

3) Correspond, orally and in writing, with opposing counsel but not to enter into stipulations or make any offers of settlement, without the express permission of the Plaintiff in writing.

/s/Derrick Lee Cardello Smith
by consent (PMH)

/s/ Paul M.  Hughes P36421

Dated: September 14, 2024

Certificate of Service

I swear or affirm that this Notice of Limited Scope of Appearance, consisting of two pages,  was served upon counsel for the Defendant through electronic mail on September 14, 2024.

/s/ Paul M.  Hughes P36421

Dated: September 14, 2024

Exhibit 29

# STATE OF MICHIGAN

# IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

DERRICK LEE CARDELLO-SMITH,

        Plaintiff,

v.

SEAN COMBS,

        Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

_____/

Derrick Lee Cardello-Smith
MDOC # 267009
*Plaintiff, In Pro Per*
Earnest C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444



David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
FINK BRESSACK
*Counsel for Defendant*
38500 Woodward Ave.; Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com

Erica A. Wolff (*pro hac vice* motion pending)
SHER TREMONTE
*Counsel for Defendant*
90 Broad St., 23rd Floor
New York, NY 10004
Tel.: (212) 202-2600
ewolff@shertremonte.com

_____/

**ORDER GRANTING DEFENDANT'S EMERGENCY MOTION TO SET ASIDE
DEFAULT AND DEFAULT JUDGMENT, DEFENDANT'S MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION, AND
DEFENDANT'S EMERGENCY MOTION TO FILE SUPPLEMENTAL BRIEF IN
SUPPORT OF THE EMERGENCY MOTION TO SET ASIDE DEFAULT AND
DEFAULT JUDGMENT AND DEFENDANT'S MOTION TO DISSOLVE TEMPORARY**

**RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION, AND SETTING PRE-TRIAL CONFERENCE AND HEARING DATE**

This matter is before the Court on Defendant Sean Combs' Emergency Motion to Set Aside Default and Default Judgment, Defendant's Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction and Defendant's Emergency Motion to File Supplemental Brief in Support of the Emergency Motion to Set Aside Default and Default Judgment and Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction.

Upon the filing of Defendant's Emergency Motion to Set Aside Default and Default Judgment and Defendant's Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction on September 12, 2024, the filing of Defendant's Emergency Motion to File Supplemental Brief in Support of the Emergency Motion to Set Aside Default and Default Judgment and Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction on September 17, 2024, the filing of Defendant's Notice of Submission of Additional Exhibits in Support of the Emergency Motion to Set Aside Default and Default Judgment and Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction on September 18, 2024, and oral argument having been held on September 16, 2024 and September 18, 2024, and the Court being otherwise fully advised in the premises;

IT IS HEREBY ORDERED AS FOLLOWS:

1.     Defendant's Emergency Motion to File Supplemental Brief in Support of the Emergency Motion to Set Aside Default and Default Judgment and Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction is GRANTED;

2. Defendant's Emergency Motion to Set Aside Default and Default Judgment is GRANTED and both the Default entered on August 23, 2024 (Dkt. No. 11) the Default Judgment entered on September 9, 2024 (Dkt. No. 19) are hereby set aside and vacated;

3. Defendant's Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction is GRANTED and the Order Granting the Preliminary Injunction/Temporary Restraining Order entered on August 7, 2024 (Dkt. No. 7) is hereby dissolved; and

4. A pre-trial conference and a motion hearing on either or both parties' motion(s) for summary disposition (if any) are scheduled for November 4, 2024 at 2:30 p.m.

This is NOT a final order and DOES NOT close this case.

Hon. Anna Marie Anzalone
Judge, Lenawee County Circuit Court

Entered: September 18, 2024

Exhibit 30

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE**

DERRICK LEE CARDELLO-SMITH,

        Plaintiff,

v.

SEAN COMBS,

        Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone

---

Derrick Lee Cardello-Smith
MDOC # 267009
*Plaintiff, In Pro Per*
Earnest C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
FINK BRESSACK
*Counsel for Defendant*
38500 Woodward Ave.; Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com



FILED
39TH CIRCUIT COURT
SEP 1 7 2024
LE... E CO...TY CLERK

---

## PROOF OF SERVICE

STATE OF MICHIGAN  )
               ) SS:
COUNTY OF OAKLAND)

    The undersigned hereby certifies that on September 17, 2024, she caused to be served copies of the following: *Notice of Hearing of Emergency Motion for Leave to File Supplemental Brief and Emergency Motion for Leave to File Supplemental Brief* upon Plaintiff Derrick Lee Cardello-Smith #267009 by emailing said documents to John M. Fager, Warden's Administrative

Assistant, Earnest C. Brooks Correctional Facility, 2500 S. Sheridan Dr., Muskegon Heights, MI 49444, for service upon Plaintiff.

I declare under the penalties of perjury that the statement above is true to the best of my knowledge, information, and belief.

KIMBERLY S. HUNT

Approved, SCAO

Original - Court
1st copy - Prisoner
2nd copy - Department of Corrections
3rd copy - Return to court

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>39th-Lenawee  JUDICIAL CIRCUIT<br>COUNTY PROBATE | PERSONAL SERVICE<br>ON PRISONER AND AFFIDAVIT | CASE NO.<br>2024-7362-NO |
|---|---|---|

Court address | Court telephone no.

425 N. Main St., Judicial Building, 3rd Floor, Adrian, MI 49221 | (517) 264-4597

| Plaintiff(s)<br><br>DERRICK LEE CARDELLO-SMITH #267009 | v | Defendant(s)<br><br>SEAN COMBS (SEAN PUFF DADDY COMBS), a/k/a<br>SEAN P. DIDDY, a/k/a DIDDY, BAD BOY RECORDS<br>LABEL OWNER, FOUNDER, a/k/a PUFFY-P-DADDY,<br>BAD BOY, (DIDDY RUN THE CITY), et al, |
|---|---|---|

☐ Probate   ☐ Juvenile   In the matter of _____

### REQUEST

To the Warden/Administrator of   Earnest C. Brooks Correctional Facility
_____
Name of correctional institution

You are requested to serve   Notice of Hearing for Emergency Motion for Leave to File Supplemental Brief, Emergency Motion for Leave to
_____
Title or description of papers      File Supplemental Brief, and Proof of Service

together with _____
List of attachments

on   Derrick Lee Cardello-Smith #267009   _____ on or before  Tuesday, September 17, 2024
Name of prisoner and prisoner identification number (if known)

Upon service, you must either complete the affidavit of service below or have the prisoner complete the acknowledgment of service
below. If you are unable to complete service for some reason, you must return the original papers and all copies to the court clerk.

09/17/24
_____
Date

Signature

Nathan J. Fink
Name (type or print)

NOTE: This affidavit is prepared only when the
prisoner does not acknowledge service.

### AFFIDAVIT OF SERVICE

I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that I personally served the papers

described above and attachments, if any, on _____
Name of prisoner and prisoner identification number (if known)

on  Tuesday September 17, 2024 @ 1517
_____
Day, date, and time

Signature

John u fee/
Name (type or print)

Subscribed and sworn to before me on   JENNIFER L. UNGER,   _____ County, Michigan.
Notary Public - State of Michigan
My commission expires: _____ County of Muskegon
My Commission Expires  5-1-2010
Notary public, State of Michigan, County of   in the County of  MUSKEGON
Deputy court clerk/Notary public

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received the papers described above on _____
Day, date, time

_____
Prisoner signature

MC 273  (3/13)  PERSONAL SERVICE ON PRISONER AND AFFIDAVIT          MCR 2.103(C), MCR 2.105, MCR 5.103(B)

Exhibit 31

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE**

DERRICK LEE CARDELLO-SMITH,

       Plaintiff,

v.

SEAN COMBS,

       Defendant.

Case No. 2024-7362-NO
Hon. Anna Marie Anzalone



| | |
|---|---|
| Derrick Lee Cardello-Smith | David H. Fink (P28235) |
| MDOC # 267009 | Nathan J. Fink (P75185) |
| *Plaintiff, In Pro Per* | David A. Bergh (P83696) |
| Earnest C. Brooks Correctional Facility | Calder A.L. Burgam (P87203) |
| 2500 S. Sheridan Drive | FINK BRESSACK |
| Muskegon, MI 49444 | *Counsel for Defendant* |
| | 38500 Woodward Ave.; Ste. 350 |
| | Bloomfield Hills, MI 48304 |
| | Tel.: (248) 971-2500 |
| | dfink@finkbressack.com |
| | nfink@finkbressack.com |
| | dbergh@finkbressack.com |
| | cburgam@finkbressack.com |

**<u>PROOF OF SERVICE</u>**

STATE OF MICHIGAN  )
                   ) SS:
COUNTY OF OAKLAND)

    The undersigned hereby certifies that on September 18, 2024, he caused to be served copies

of the following: *Defendant Sean Combs' Notice of Submission of Additional Exhibits in Support*

*of His Emergency Motion to Set Aside Default and Default Judgment and His Motion to Dissolve*

*Temporary Restraining Order and/or Preliminary Injunction* upon Plaintiff Derrick Lee Cardello-

Smith #267009 by emailing said documents to John M. Fager, Warden's Administrative Assistant,

Earnest C. Brooks Correctional Facility, 2500 S. Sheridan Dr., Muskegon Heights, MI 49444, for

service upon Plaintiff.

I declare under the penalties of perjury that the statement above is true to the best of my

knowledge, information, and belief.

_____

NATHAN J. FINK

Approved, SCAO

Original - Court
1st copy - Prisoner
2nd copy - Department of Corrections
3rd copy - Return to court

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>39th-Lenawee  JUDICIAL CIRCUIT<br>COUNTY PROBATE | PERSONAL SERVICE<br>ON PRISONER AND AFFIDAVIT | CASE NO.<br>2024-7362-NO |
|---|---|---|

| Court address | Court telephone no. |
|---|---|
| 425 N. Main St., Judicial Building, 3rd Floor, Adrian, MI 49221 | (517) 264-4597 |

| Plaintiff(s)<br><br>DERRICK LEE CARDELLO-SMITH  #267009 | v | Defendant(s)<br><br>SEAN COMBS (SEAN PUFF DADDY COMBS), a/k/a<br>SEAN P. DIDDY, a/k/a DIDDY, BAD BOY RECORDS<br>LABEL OWNER, FOUNDER, a/k/a PUFFY-P-DADDY,<br>BAD BOY, (DIDDY RUN THE CITY), et al, |
|---|---|---|

☐ Probate   ☐ Juvenile   In the matter of _____

## REQUEST

To the Warden/Administrator of  Earnest C. Brooks Correctional Facility
_____
Name of correctional institution

You are requested to serve   Notice of Additional Exhibits in Support of His Emergency Motion to Set Aside Def. & Def. Judgmt and His
Title or description of papers        Motion to Dissolve TRO and/or Preliminary Injunction, and Proof of Service

together with _____
List of attachments

on  Derrick Lee Cardello-Smith #267009 _____ on or before  Wed., September 18, 2024
Name of prisoner and prisoner identification number (if known)

Upon service, you must either complete the affidavit of service below or have the prisoner complete the acknowledgment of service below. If you are unable to complete service for some reason, you must return the original papers and all copies to the court clerk.

09/18/24
Date

_Nathan J. Fink / by NSN_
Signature

Nathan J. Fink
Name (type or print)

NOTE: This affidavit is prepared only when the prisoner does not acknowledge service.

## AFFIDAVIT OF SERVICE

I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that I personally served the papers described above and attachments, if any, on  Smith 267009
_____
Name of prisoner and prisoner identification number (if known)

on  Wednesday September 18, 2024 @ 0837
Day, date, and time

_John M. Fager_
Signature

John M. Fager
Name (type or print)

Subscribed and sworn to before me on _____ County, Michigan.
Date

My commission expires: _____  _Unger_
Deputy court clerk/Notary public

JENNIFER L. UNGER
Notary Public - State of Michigan
County of Muskegon
My Commission Expires 5-18-2028
Acting in the County of Muskegon

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received the papers described above on _____
Day, date, time

_____
Prisoner signature

MC 273  (3/13)  PERSONAL SERVICE ON PRISONER AND AFFIDAVIT          MCR 2.103(C), MCR 2.105, MCR 5.103(B)

Exhibit 32

STATE OF MICHIGAN


39TH JUDICIAL CIRCUIT COURT, LENAWEE COUNTY


DERRICK LEE CARDELLO-SMITH
                    Plaintiff,


v                                      Circuit Court No. 24-7362 NO



SEAN COMBS, a/k/a SEAN PUFF DADDY COMBS,
a/k/a SEAN P. DIDDY, a/k/a DIDDY, a/k/a
BAD BOY RECORDS LABEL OWNER, a/k/a PUFFY-
P-DADDY, a/k/a BAD BOY, a/k/a DIDDY RUN
THE CITY, a/k/a SHAWN COMBS, a/k/a SHAWN
PUFFY COMBS,
                    Defendant          /

CONTINUATION of
EMERGENCY MOTION TO SET ASIDE DEFAULT JUDGMENT and
MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND/OR
PRELIMINARY INJUNCTION

(Via Zoom Videoconference)

BEFORE THE HONORABLE ANNA MARIE ANZALONE

Adrian, Michigan – September 18, 2024


APPEARANCES:

For the Plaintiff:        MR. PAUL HUGHES (P36421)
                          Attorney At Law
                          13215 Woodward Avenue
                          Post Office Box 3185
                          Highland Park, Michigan  48203

                          MR. DERRICK L. CARDELLO-SMITH #267009
                          Pro Per




1

```
                                    Ernest C. Brooks Correctional Facility
                                    2500 South Sheridan Drive
                                    Muskegon, Michigan  49444

For the Defendant:                  MR. DAVID H. FINK (P28235)
                                    Attorney At Law
                                    38500 Woodward Avenue
                                    Suite 350
                                    Bloomfield Hills, Michigan  48304
                                    (248) 971-2500

                                    MR. NATHAN J. FINK (P75185)
                                    Attorney At Law
                                    38500 Woodward Avenue
                                    Suite 350
                                    Bloomfield Hills, Michigan  48304
                                    (248) 971-2500

                                    MR. DAVID A. BERGH (P83696)
                                    Attorney At Law
                                    38500 Woodward Avenue
                                    Suite 350
                                    Bloomfield Hills, Michigan  48304
                                    (248) 971-2500

                                    MS. ERICA WOLFF
                                    Pro Hac Vice Motion Pending
                                    Sher Tremonte
                                    90 Broad Street, 23rd Floor
                                    New York, New York  10004
                                    (212) 202-2600
```

```
RECORDED BY:                        JoAnn N. Spade, CER-5709
                                    Certified Electronic Recorder
                                    (517) 264-4578
```

TABLE OF CONTENTS

WITNESSES:  PLAINTIFF                                    PAGE

         NONE


WITNESSES:  DEFENDANT                                    PAGE

         NONE



EXHIBITS:                                    MARKED    RECEIVED

         NONE

3

```
 1                    Adrian, Michigan
 2                    Wednesday, September 18, 2024 - 11:00 a.m.
 3                    (Any indiscernible, unintelligible or inaudible
 4                    portions in this transcript are due to the lack of
 5                    party/parties being in close proximity of microphone
 6                    to be heard or due to internet connections.)
 7                    THE PLAINTIFF:  Good morning, Your Honor.
 8                    THE COURT:  Good Morning.  All right, let's see
 9          everybody's -- waiting for people to connect.  All right,
10          looks like everybody's connected.  So, Nate Fink is getting
11          feedback, is he in the same office, Mr. David Fink?
12                    MR. DAVID FINK:  Yes, Your Honor, but I don't --
13          let's try again, I don't think we'll get feedback now.
14                    THE COURT:  Okay.  That's fine, all right.  This is
15          in the matter of Derrick Lee Cardello-Smith versus Sean Combs,
16          File Number 2024-7362 NO.  I have -- check all this, so I have
17          Paul M. Hughes, appearing with a Limited Appearance on behalf
18          of Mr. Cardello-Smith, is that correct, Mr. Hughes?
19                    MR. HUGHES:  It is, good morning, Your Honor.
20                    THE COURT:  Good morning.
21                    THE PLAINTIFF:  Your Honor, that's terminated today,
22          for this hearing.  His limited appearance won't be conducted
23          during this hearing, I'll be representing myself on this one
24          and I ask Mr. Hughes to remove himself.  I'll handle these
25          attorneys, personally, for this hearing.
```

4

```
 1                    MR. HUGHES:  Your Honor, if that's the case, I'd ask
 2          that Mr. Smith formally fire me --
 3                    THE PLAINTIFF:  No object --
 4                    MR. HUGHES:  -- discharge me from any and all
 5          obligations under this case, as he's already obviously, talked
 6          with, obtained other attorneys.
 7                    THE PLAINTIFF:  No, I have no other counsel.
 8                    THE COURT:  So --
 9                    THE PLAINTIFF:  I have no other counsel, it's just
10          for this hearing because there's development.  The way these
11          guys want to do this, the attorneys --
12                    THE COURT:  Okay, so I need everybody to stop for a
13          moment.
14                    THE PLAINTIF:  Okay.
15                    THE COURT:  We have one hour today, so Mr. Cardello-
16          Smith, Mr. Hughes filed a Limited Appearance which would've
17          included today's hearing because it was an adjournment from
18          the last hearing.
19                    THE PLAINTIFF:  Uh-huh.
20                    THE COURT:  Are you formally firing him and
21          relieving him of all duties and responsibilities to you?
22                    THE PLAINTIFF:  From this hearing.
23                    THE COURT:  Well, he only filed --
24                    THE PLAINTIFF:  It's only this hearing.
25                    THE COURT:  -- an appearance for the last hearing
```

5

```
 1        and today, that would be a Limited Appearance, is that
 2        correct, Mr. Hughes?
 3                  MR. HUGHES:  That's correct.
 4                  THE COURT:  There's still --
 5                  THE PLAINTIFF:  (Indiscernible).
 6                  MR. HUGHES:  Let me re-state that, it was for today
 7        and future court -- any future court hearings, that's what the
 8        Limited Appearance says.
 9                  THE COURT:  Okay.  So, Mr. Cardello-Smith, so you no
10        longer want his services?
11                  THE PLAINTIFF:  Yes, ma'am.
12                  THE COURT:  Okay, so he's free to go and he doesn't
13        need to appear anymore at any other hearings?
14                  THE PLAINTIFF:  For this hearing is what it is.
15        I'll talk to Mr. --
16                  THE COURT:  Okay, so Mr. Cardello-Smith --
17                  THE PLAINTIFF:  -- okay, if that's what has to be
18        done, then we'll go with that today.  Yes, ma'am.
19                  THE COURT:  When you retain Counsel, they represent
20        you going forward.
21                  THE PLAINTIFF:  Yes.
22                  THE COURT:  Now, if you were to represent yourself
23        today and not allow him, then you know, effectively, that's
24        not appropriate.  So, --
25                  THE PLAINTIFF:  Yeah.
```

1          THE COURT:  -- are you releasing him from all

2     further --

3          THE PLAINTIFF:  I'm releasing him, yes, yes.  I'm

4     releasing him, yes.

5          THE COURT:  Okay, so you understand he won't appear

6     for you anymore?

7          THE PLAINTIFF:  Yes.

8          THE COURT:  Okay.  Mr. Hughes --

9          MR. HUGHES:  I would --

10         THE COURT:  -- are you satisfied?

11         MR. HUGHES:  I am.  I would -- I'd like to sit in on

12    the hearing, though, so I just could further understand with

13    the Court's consent, opposing Counsel's consent and Mr. Smith

14    consent?

15         THE COURT:  Any objection to him remaining?  I'll

16    mute his device and turn off his video?

17         THE PLAINTIFF:  No (indiscernible), I'll tell you

18    why.  Mr. Hughes --

19         THE COURT:  Well, it's a public hearing, so --

20         THE PLAINTIFF:   Well, I mean, Your Honor, the only

21    reason is because these people have filed a Motion to Set it

22    aside and I have not had any time to view the Motion.  They

23    want to get right into this and just start banging me up.

24    I've had no opportunity to do anything and if he's speaking

25    for me, I can't say the information that came available --

7

```
 1                    THE COURT:  Okay --
 2                    THE PLAINTIFF:  Mr. Hughes --
 3                    THE COURT:  -- that wasn't my question.  Mr.
 4          Cardello-Smith, we've released Mr. Hughes, he is no longer
 5          your attorney.  Do you object to him observing the proceedings
 6          today?
 7                    THE PLAINTIFF:  No, I have no objection, whatsoever,
 8          Your Honor.
 9                    THE COURT:  Okay.  So --
10                    THE PLAINTIFF:  (Indiscernible) I apologize.
11                    THE COURT:  It's okay.  Mr. Hughes, can you mute
12          your device and stop -- or, and your audio and turn off your
13          video?
14                    MR. HUGHES:  Turn off the video, I will.  Thank you.
15                    THE COURT:  Okay, so he is muted and his device
16          video is off.
17                    So, all right -- so, I have David H. Fink P28235
18          appearing on behalf of the Defendant and that is, Ms. Spade,
19          F-i-n-k.  And, then I have Nathan Fink, appearing as well,
20          P75185.  I have David Bergh and that is B-e-r-g-h, P83696
21          appearing on behalf of the Defendant and double-check.  I
22          don't -- okay, and then, I don't have anybody else.  I don't
23          see anybody else.  I don't see Calder Burgam.  I don't see him
24          logged.
25                    MR. DAVID FINK:  Calder Burgam is assisting us but
```

```
 1    he is not going to be on the record today.

 2              THE COURT:  Okay.

 3              MR. DAVID FINK:  And, Your Honor, I would also note

 4    that Erica Woff is --

 5              THE COURT:  I haven't called her yet.  Yes, I got

 6    her --

 7              MR. DAVID FINK:  I'm sorry, I apologize.

 8              THE COURT:  Thank you.  So, then I have Erica A.

 9    Wolff, that is with two F's.  There is a Pro Hac Vice motion

10    pending and she is not participating today but she is

11    observing, 'cause that Pro Hac Vice motion is still pending.

12              So, it is 11:06, this was scheduled for one hour

13    today.  The last time you were here there was an Emergency

14    Motion.  The attorneys were advised that you had 30 minutes

15    only because it was an Emergency Motion on my Monday morning

16    Motion docket.

17              Today, I have just been on the Bench since 8:00, so

18    we have until 12:00.  So, I'm assuming Mr. Fink you are going

19    to argue.  Is Mr. Nathan Fink or Mr. Bergh going to be placing

20    any argument on the record today?

21              MR. DAVID FINK:  We don't anticipate that, Your

22    Honor.

23              THE COURT:  Okay.  And, then so what I would say is,

24    Mr. Cardello-Smith --

25              THE PLAINTIFF:  Yes.
```

1                THE COURT:  -- is appearing in Pro Per today.  So, I

2       have read everything.  As I said, we don't need to reiterate

3       everything.  Mr. Fink, you've already had an opportunity to

4       sum up part of your Motion, you had 20 minutes the other day.

5       So, Mr. Fink, I'll give you 20 minutes, I'll give Mr.

6       Cardello-Smith 20 minutes, then of course, because it's your

7       Motion, I'll let you follow-up, all right?

8                     THE PLAINTIFF:  Your Honor, I have to object --

9                     MR. DAVID FINK:  Your Honor, please ask Mr.

10      Cardello-Smith --

11               THE COURT:  Okay, hold on a second everybody, we're

12      talking over each other.

13                    Mr. Cardello-Smith, what is your objection?

14               THE PLAINTIFF:  This is my reason.  On -- all I

15      received so far were the Notices of the Motions for Summary --

16      or Motion to Set Aside your Default.  Everything I've been

17      given were just Notices and then, after I made (indiscernible)

18      money about these people presenting forged documents from

19      these people who are (indiscernible), they did exactly as I

20      said they would do.  They filed all these supplemental

21      exhibits, all these Motions, Emergency Motion, a Supplemental

22      Emergency Motion.  I have not had, literally, no time to argue

23      any of this or research -- excuse me, to research any of this,

24      prepare a defense to this.  It was all given to me on Friday

25      --

10

```
 1                    MR. DAVID FINK:  Your Honor, I would (indiscernible)
 2        the Court --
 3                    THE PLAINTIFF:  -- at least 60 pages of stuff.
 4                    THE COURT:  Mr. Fink, Mr. Fink, everybody listen.
 5        This is my coutroom, okay.
 6                    MR. DAVID FINK:  And, I respect that --
 7                    THE COURT:  I'm allowing Mr. Cardello -- don't talk
 8        over me.
 9                    MR. DAVID FINK:  -- Your Honor.
10                    THE COURT:  I'm allowing Mr. Cardello-Smith who is
11        an inmate to make a statement and then I'm going to discuss
12        that with him.  I will afford you an opportunity to respond.
13                    Mr. Cardello-Smith, this is an Emergency Motion.
14        Motion practice allows for those things.  Mr. Fink, I'm
15        presuming that the Motions were expedited to Mr. Cardello-
16        Smith at the Michigan Department of Corrections?
17                    MR. DAVID FINK:  They were, Your Honor.
18                    THE COURT:  Okay, and when were they sent to Mr.
19        Cardello-Smith?
20                    MR. DAVID FINK:  As soon as they were filed and
21        Nathan Fink can provide more detail in terms of the procedure
22        that we followed.  We delivered them to Mr. Fager at the
23        prison and in each instance, we got confirmation from Mr.
24        Fager that they were hand-delivered to the -- to Mr. Smith.
25                    I do want to ask one thing, Your Honor.  Here, and
```

```
 1        previously Mr. Cardello-Smith has spoken to the Court many

 2        times, I have not seen him being sworn.  We've seen the

 3        transcripts and he hasn't been sworn.  We'd ask that he be

 4        sworn before he continues to make representations to the

 5        Court.

 6                  THE COURT:  All right.  Nathan Fink, perhaps you can

 7        give me the date and time that they were provided to Mr. Fager

 8        and served upon Mr. Cardello-Smith.

 9                  MR. NATHAN FINK:  Yes, Your Honor.  Your Honor, can

10        you hear me, 'cause I'm --

11                  THE COURT:  I can hear you.

12                  MR. NATHAN FINK:  Yeah, okay, so this is Nathan

13        Fink, Your Honor.

14                  MS. SPADE:  Judge, we're not getting a good --

15                  THE COURT:  All right, Mr. Nathan Fink, go stand

16        behind David Fink.

17                  MR. DAVID FINK:  Well, okay, I can mute -- if the

18        Court would prefer, I will mute while Nathan Fink speaks --

19                  THE COURT:  Okay.

20                  MR. DAVID FINK:  -- that works.

21                  THE COURT:  All right, unmute your device, Nathan

22        Fink.

23                  MR. NATHAN FINK:  Okay, can you hear me, Your Honor?

24                  THE COURT:  Yes.

25                  MR. DAVID FINK:  Try again.
```

1          MR. NATHAN FINK:  Can you hear me, Your Honor?

2          THE COURT:  Yes.

3          MR. NATHAN FINK:  Thank you.  Okay, I'm just pulling

4     up the various service documents.  Which -- and Your Honor, we

5     did also, provide copies of Proofs of Service to the Court and

6     Mr. Fager, who is the Litigation Coordinator at the Prison has

7     advised us that he has been sending original copies of those

8     to the Court for filing.

9          I'm pulling up the documents right now.  Okay, on

10     Friday, September 13th, 2024 Mr. Fager provided a personal

11     service on Prisoner and Affidavit document to us confirming

12     that he had served the following documents on the Plaintiff,

13     Mr. Cardello-Smith, the Limited Appearances of myself, David

14     Fink, David Bergh, Calder Burgam, Notice of Hearing of the

15     Emergency Motion to Set Aside the Default and Default

16     Judgment, Notice of Hearing of Defendant's Emergency Motion to

17     Dissolve Temporary Restraining Order and/or Preliminary

18     Injunction and Defendant's Emergency Motion to Set Aside

19     Default and Default Judgment and Brief and Support and

20     Defendant's Emergency Motion to Dissolve Temporary Restraining

21     Order and/or Preliminary Injunction with the Brief and

22     Support.  Those were served on Friday, September 13th.

23          Mr. Fager, also served Prisoner Smith with the

24     Notice of Hearing after we received the confirmed date and

25     time from the Court, we filed the Re-Notice of Hearing.  He

1       also served a copy of that on the Plaintiff on Friday,

2       September 13th.

3              Mr. Fager, on Tuesday, served the Notice of Hearing

4       of the Emergency Motion.  We filed another Re-Notice of

5       Hearing and that specifically related it to our Motion for

6       Leave to File a Supplemental Brief, which was filed with the

7       Court yesterday.

8              And, then this morning, Mr. Fager provided us with a

9       Proof of Service or an Affidavit of Service confirming that he

10      provided the document that we filed this morning which is the

11      Notice of Additional Exhibits in Support of the Plain -- the

12      Defendant's Emergency Motion to Set Aside Default and Default

13      Judgment and the Motion to Dissolve TRO and/or Preliminary

14      Injunction.  Mr. Fager confirmed that he provided a copy of

15      that to the Plaintiff this morning, after we filed it.

16             THE COURT:  Mr. Cardello-Smith, want to raise your

17      right hand?  Do you solemnly swear or affirm to tell the

18      truth, the whole truth and nothing but the truth?

19             THE PLAINTIFF:  Yes, as always.

20             THE COURT:  All right.  So, Mr. Cardello-Smith, we

21      do have a Notice of Hearing showing that those documents were

22      served to you by Mr. Fager at Michigan Department of

23      Corrections.

24             THE PLAINTIFF:  The Notice of Hearings were served,

25      the Briefs and Support were not served until well after the

```
 1        Notices.  The video footage will show Mr. Fager and the size
 2        of the amount --
 3                     (At 11:14 a.m., Zoom announced "Recording In
 4                     Progress")
 5                     (At 11:14 a.m., Proceeding continued)
 6                     THE PLAINTIFF:  -- excuse me, I'm sorry.  These
 7        documents that they're speaking about will show Mr. Fager
 8        making at least, four or five -- four or five trips down to
 9        Segregation where I'm housed, delivering different papers,
10        different sizes over different period of time since Tuesday --
11        excuse me, since the day of our last hearing and before that.
12                     THE COURT:  Okay.
13                     THE PLAINTIFF:  And -- I didn't get everything --
14        everything officially, until yesterday when he made several
15        trips down to my cell.  I, literally, have not had time to
16        view any of the main arguments, any of the grounds, any of the
17        case law because I can't access any law library.
18                     So, this Emergency Hearing could very well violate
19        my opportunity to do the right thing and know exactly what
20        they're bringing at me, know exactly what they're trying to
21        get of me.  Under the conditions I'm under, I can't -- I can't
22        work under their conditions or the conditions that I had
23        because of my current situation (indiscernible).
24                     So, I need an adjournment on this at a minimum.  Or
25        -- or -- or, because I know they're lookin' -- they're lookin'
```

```
 1        to get the TRO done so Mr. Combs can sell his mansion, that's
 2        what they're doin'.  But I got rights here and I don't want my
 3        rights violated any further than this guy already has.  So, I
 4        have to ask for an adjournment or at minimum, Your Honor,
 5        reserve -- have reserved on the record, my claim that I have
 6        not viewed everything, all -- any of the cases to make sure
 7        they're in there.
 8                  Also, the person who's giving them all this
 9        paperwork, Mr. Jay Fager, before any of these cases got
10        started and looking at one of their own documents, I filed
11        many documents challenging forged documents by this man.
12                  THE COURT:  All right, so Mr. Cardello-Smith, I'm
13        gonna cut you off here.  All right.
14                  THE PLAINTIFF:  I'm sorry.
15                  THE COURT:  This is an Emergency Motion and it's a
16        fairly typical part of motion practice.
17                  THE PLAINTIFF:  It is.
18                  THE COURT:  Whether or not -- we have documentation
19        we were -- that you were served with these.  We will proceed
20        today --
21                  THE PLAINTIFF:  Okay.
22                  THE COURT:  -- if you have a problem with that you
23        can later file a Motion for Reconsideration.  But, at this
24        point, I'm gonna stop you and we're gonna move --
25                  THE PLAINTIFF:  Okay.
```

16

```
1              THE COURT:  -- to Mr. Fink and --
2              THE PLAINTIFF:  Play by ear, okay.
3              THE COURT:  Okay.  And, Mr. Fink --
4              THE PLAINTIFF:  Okay.
5              THE COURT:  -- you have 20 minutes and then I'll go
6       to Mr. Cardello-Smith for 20 minutes --
7              THE PLAINTIFF:  Yes.
8              THE COURT:  What I would say is, that we have a lot
9       of people and Mr. Cardello-Smith we get echoes from where you
10      are, not as bad, because thank you for opening the door.  But,
11      I'm gonna need everybody who's in here to remain quiet while
12      Mr. Fink is speaking and Mr. Fink, your 20 minutes can start
13      now.  I understand you've already argued for 20 minutes, so
14      you're getting that extra time.  So, you may proceed.
15             MR. DAVID FINK:  Your Honor, very briefly, I would
16      ask first that Mr. Smith mute his --
17             THE COURT: I can't mute him because he's with --
18             MR. DAVID FINK:  Okay, okay.
19             THE COURT:  -- MDOC and then --
20             MR. DAVID FINK:  -- no problem.
21             THE COURT:  -- it gets stuck.
22             THE PLAINTIFF:  Give you my word, I'll be quiet,
23      Your Honor.
24             MR. DAVID FINK:  No problem, Your Honor, I'll go
25      forward.
```

17

1          THE COURT:  Okay, thank you.

2          MR. DAVID FINK:  Your Honor, one quick thing I want

3      to note on the record and that is that this objection that

4      we're now hearing from Mr. Cardello-Smith was not made on

5      Monday when we were in court, was not made in -- previously

6      before we came here.  I heard nothing from Mr. Hughes when we

7      spoke about this issue privately and separately and this is a

8      complete surprise to us.  And, of course, it makes no sense

9      because he's been served with everything, over and over and we

10     filed our proofs.

11         Now, Your Honor, thank you for providing us with

12     this time.  I wanna be clear about something, we have filed a

13     lot of pleadings here, a lot of documents here.  And, the

14     reason we've done that is, this is an extraordinary

15     circumstance.  The relief that the Court has awarded to Mr.

16     Smith is not a small thing.  The relief awarded to Mr. Smith

17     of a $100,000,000.00 and most importantly right now, a

18     Temporary Restraining Order is so extraordinary that it

19     requires and we appreciate the Court providing its immediate

20     hearing.

21         Your Honor, previously we explained to the Court and

22     I'm gonna be very brief on what we've talked about before.

23     We've provided an Affidavit for Mr. Combs establishing that he

24     was never served.  That he wasn't at the location and of

25     course, the Court saw the card and there's no question that

18

1        that card, if it has a signature, that's not a signature that

2        says, Sean Combs, nor is the hand-written print saying Sean

3        Combs.

4              And, most importantly we showed the Court, and we

5        won't show the Court again, now the two cards which are both

6        in the court file and which show that the card was clearly

7        doctored to suggest or to convey to the Court, to frankly to

8        lie to the Court as part of this, all of this fraud that he's

9        been trying to perpetrate on this Court.

10             He doctored the card to make it appear that, in

11       fact, it had been sent, Addressee only.  But, it was not, that

12       was not the form because we -- the Court has available to it

13       the clear evidence that the initial card, which is also in the

14       court file, the initial card shows that, Addressee only, is

15       not checked, that Restricted Service is not checked.

16             Now, we also -- I'm trying to skip through some

17       things here, but we've also learned and now we have the

18       transcript of this.  That at the Temporary Restraining Order

19       Hearing on August 7th, as part of this broad fraud that he's

20       perpetrating on the Court, Mr. Combs (sic) lied extensively

21       and very significantly.  What he said on the record was, that

22       he -- first he said, that two weeks before that hearing, the

23       hearing was August 7th -- I'm sorry, Your Honor.

24             THE COURT:  Hold on, I don't know what's going on

25       here, so hold on one second.  I think that we are getting

1    feedback from -- okay, go ahead.  I'm sorry, Mr. Fink, go

2    ahead.

3              MR DAVID FINK:  No, no, I appreciate you

4    interrupting for that, we want you to hear what we're talking

5    about.

6              Okay.  At the August 7th TRO Hearing, Mr. Combs

7    (sic), Mr. Smith, I'm sorry, told the Court that Sean Combs

8    had visited him in prison within the past two weeks.  Now, as

9    we've already proved to the Court that absolutely didn't

10   happen.  We got -- we subpoenaed the Visitor Records.  We

11   showed the Court the Visitor Records and the Visitor Records

12   show that the only visits he's had since January 1st were one

13   visit from his attorney, well, he's not his attorney now, but

14   from Paul Hughes and two visits from Bill -- William Proctor

15   who has provided some media assistance to him.

16             In the July 7 -- August 7th Hearing, at the August

17   7th Hearing, Mr. Combs (sic) in making his misrepresentations

18   to this -- Mr. Smith, in making his misrepresentation to the

19   Court, I apologize for this, said that Mr. Combs, when he

20   visited and this is what he -- these are his words, also said

21   he won't be filing an Answer to the Complaint.  He said, you

22   can find me in Default or whatever, blatant lie.  Nobody

23   would've said that and of course, there was no such meeting.

24   And, this was all part of his process of trying to persuade

25   this Court that a Default was appropriate, that a Default

1    Judgment was appropriate, that a Temporary Restraining Order

2    was appropriate.

3           It's undisputed on this record that Mr. Combs was

4    not served and that should be the end of the inquiry by this

5    Court, but it doesn't have to be.

6           Because, as we look at the two types of Orders that

7    were entered, the Temporary Restraining Order and the Injunc

8    -- and the Default Judgment, none of the necessary pre-

9    requisites occurred regarding the Temporary Restraining Order.

10           Of course, this Court had to first find that there

11    was a likelihood of prevailing on the merits.  I won't bore

12    the Court with going through this much more.  We already

13    showed Statute of Limitations ran on every claim and if the

14    Statute of Limitations has run, there is no likelihood of

15    prevailing on the merits.

16           Also, Mr. Combs has denied every single fact alleged

17    in the Complaint and now we have, and we've provided to the

18    Court another Affidavit, the Affidavit of Wayne County

19    Prosecutor Kym Worthy.  We had that delivered to the Court

20    this morning and delivered to the Prison so that the -- Mr.

21    Smith could see it.  And, Ms. Worthy has indicated that, as

22    the Court knows, in the court file Mr. Smith sugg -- argues

23    that he had an agreement with Kym Worthy to commit a bunch of

24    felonies and that she was going to -- that he was being put in

25    prison for no good reason.

1          Well, she has indicated, she never saw and she's

2     sworn under oath, she never saw the documents, she didn't sign

3     the documents.  The signature's not her signature.  She never

4     met Mr. Smith, she never met Mr. Combs.  She never entered

5     into an Agreement with either one of them.  She's a Third

6     Party who's come and off -- and provided that, and obviously

7     that's significant both for succ -- for prevailing on the

8     merits but also, obviously, for the meritorious defense.

9          Now, Your Honor, this witness has no credibility.

10    Aside from all the inconsistencies we've heard already, the

11    Court can be and can consider the fact that currently, he's

12    serving time for four counts of First Degree Criminal Sexual

13    Conduct, six counts of First Degree Criminal Sexual Contact

14    (sic) during Commission of a Felony, two counts of Kidnapping,

15    two counts of Third Degree Criminal Sexual Conduct, that's

16    rape.

17         He is serving, his earliest release date would be

18    July 8th, 2038.  It is all based on evidence from -- this is

19    all in the record of the Michigan Department of Corrections,

20    very easily found online.

21         Now, let's look at his record as a litigator.  This

22    man's been in court more times than I have, Your Honor.  If

23    you look at his record, you'll see that -- and we're gonna

24    talk about that in another way.

25         He has filed so many frivolous lawsuits that not

22

1    one, but two Federal courts, and we just found the second one,

2    we've provided that in our Supplemental Brief to the Court.

3    Judge Lawson in Eastern District, Judge Maloney in the Western

4    District, both found that because he's a serial litigator

5    who's filed so many frivolous lawsuits, he's not entitled to

6    the special provisions provided to prisoners under 28 USC

7    1915.

8          Now, Your Honor, even if he were credible and he's

9    not.  Even, if you didn't know from this evidence all the ways

10   he's already lied to this Court.  You could just look at the

11   allegations that he's made and see that on their face they are

12   inconsistent and absurd.

13         As far as inconsistencies, of course, we showed the

14   Court previously the Monroe case.  We showed you that he filed

15   the exact same case in Monroe that he filed here.  And, in

16   order to advance his fraud on this Court he whited out the

17   words Monroe in two places in the new Complaint that he filed

18   in this case.  But, two identical Complaints, both filed on

19   June 10th, 2024.

20         THE COURT:  Mr. Fink, we did cover all this the last

21   time.

22         MR. DAVID FINK:  And, I'm --

23         THE COURT:  I just don't want you to waste some --

24         MR. DAVID FINK:  -- from now on --

25         THE COURT:  -- of your 20 minutes on --

23

```
 1              MR. DAVID FINK:  -- yeah, yeah, we did that.

 2              THE COURT:  -- stuff we've already gone over.

 3              MR. DAVID FINK:  I appreciate that.  And, so what

 4      I'm gonna do right now, Your Honor, is I wanna show you the

 5      new Exhibits that we have and I don't have to put 'em up on

 6      the screen, I'll just talk.  I believe the Court has them.

 7              There are three new Complaints that we found that

 8      were filed in Macomb County.  And, what I'd like to do is --

 9      well, I'm just gonna jump to the punch line here, Your Honor.

10      He filed these three Complaints and in each of these three

11      Complaints, he appended, he included what he calls a Mandatory

12      Disclosure Statement.

13              Now in this case he filed a Mandatory Disclosure

14      Statement and we're gonna share the screen now and show you.

15      These are four different Mandatory Disclosure Statements that

16      this Plaintiff has provided.  On the bottom, you see the one

17      in this court.  The Plaintiff, he writes, has filed three

18      state lawsuits, two federal lawsuits, (indiscernible) I assume

19      that's three civil appeals and three criminal appeals.  That's

20      what he wrote here.

21              But, if you look up on May 2nd, 2023 in the Macomb

22      County case of **Cardello-Smith versus DiPiola-Carpenter**.  He

23      wrote, this Plaintiff has filed 124 State and Federal civil

24      case and appeals and over 40 Federal appeals.

25              In the case against **Preston**, he filed on July 3rd,
```

24

1    2023, he wrote then, well, the Plaintiff has filed four State

2    and Federal civil cases and appeals under civil jurisdiction.

3            And, then on September 6th, he filed a case against,

4    among other people, Mr. Fager, who's been serving the

5    pleadings, that was on September 6th and in that one on the

6    Mandatory Disclosure, again, this is right after he filed the

7    case here.

8            He filed the case here in June, saying three State

9    lawsuits, two Federal, three criminal appeals, three civil

10   appeals.  In this case, again, in Macomb County, he said 131

11   civil lawsuits at the State level, 141 criminal appeals at the

12   Federal level, 64 civil appeals at the Federal level, 63

13   appeals of criminal cases at the Federal level.

14           This man will say and do anything to get -- to

15   advance his case, it does not matter if it's true.

16           Now, he also -- we can take that screen down.  He,

17   also has made absolutely ridiculous allegations.  What I'd

18   like to see now is --

19           THE COURT:  Mr. Fink, I just want you to know I'd

20   rather stick to the merits of the case.  I understand that he

21   may be litigious but can we just focus on the merits of why

22   you're requesting what you're requesting in the relief?

23           MR. DAVID FINK:  Yes, Your Honor.

24           THE COURT:  Thank you.

25           MR. DAVID FINK:  Very quickly, I will point out that

1    -- and I won't -- we don't have to show it to the Court.  I'll

2    point out that he makes claim of -- in this Agreement that

3    there was a deal two days after the alleged incident.  That

4    there was a deal and a meeting with Kym Worthy and he provides

5    this hand-written agreement.  That this was supposed to be --

6    you can see on the screen, supposedly her signature but you

7    can see her real signature.

8           But, more to the point, Your Honor, he makes the

9    absurd allegation, a completely indefensible allegation, as

10   part of this case, that a conspiracy involving then-Sheriff

11   Robert Ficano, then-Circuit -- Recorder's Court Judge Worthy,

12   then-Director of Wayne County Department of Community Justice

13   Warren Evans, a couple of police officers, Sean Combs, that he

14   made a deal with all of these people that they were going to

15   lie about what happened.  They were going to put him in jail,

16   they were gonna -- they were not gonna prosecute related to

17   his allegations.  The absurdity of these things is only

18   matched by how ridiculous they look when you observe them.

19          Now, putting that aside, we also have evidence that

20   he's been suborning perjury from prison, or we believe he has.

21   And, we showed these documents to the Court.  We -- I'm sorry,

22   in our Supplemental Brief we've provided the indic -- the

23   evidence of how it is that he has been, along with the Exhibit

24   we filed today.  We've shown the Court how he suborned perjury

25   in trying to have a Motion for Reconsideration filed related

26

1        to the allegations of rape filed by Carli Carpenter, the woman

2        who he was convicted of raping her.  But, she filed a Habeas

3        Petition and a Motion for Reconsideration, which we've got and

4        we provided to the Court.  You can see that that Motion for

5        Reconsideration was -- in virtually dictated from prison by

6        Mr. Smith.  I won't waste the Court's time on all the details

7        of that because its available to the Court, Court can review

8        it.

9               And, instead I wanna get down to the basic rules.

10       The standards for the Temporary Restraining Order and why they

11       weren't met here.

12              Your Honor, there must be a showing of irreparable

13       harm.  But, if the Court is -- but the Rule is very specific,

14       there must be specific facts shown by Affidavit or by a

15       Verified Complaint.  There was no Affidavit here, there was no

16       Verified Complaint, there was no sworn testimony before the

17       Temporary Restraining Order was entered.

18              Second, there had to be -- I'll just quickly say

19       that there was no analysis of the balance of the harms.  And

20       in this case, certainly the harm to the Plaintiff is nothing

21       like the harm of -- from not issuing Injunction, is nothing

22       like the harm to the Defendant who is being restrained in the

23       use of his own property without any due process, without any

24       analysis of the facts or the law and without any evidence

25       supporting the Injunction.

1          Now, regarding the public interest.  You can't

2     possibly be and this -- be the four facts.  It can't possibly

3     be in the public interest.  It can't possibly be in the public

4     interest.  You know, I skipped something and I shouldn't have.

5     When I talked about irreparable harm, I was in such a hurry

6     here.  I told you that there were no proofs, but more

7     importantly, the only harm alleged here is economic damages.

8     And, the law could not be more clear, that irreparable harm

9     does not include economic damages, there has to be proof of

10    irreparability.  If not, if that were not the case then every

11    single personal injury case would justify entry of a Temporary

12    Restraining Order against the Defendant if the Court believes

13    that there's any credibility in that case.  That's not the

14    law.  There has to be a judgment first, there has to be some

15    attempt to satisfy the judgment, there has to be evidence or a

16    reason that the judgment can't be satisfied.  There has to be

17    irreparable harm and there was none here.  And, I apologize

18    for not mentioning that, when we talked about irreparable

19    harm.

20         Regarding, the balance of the harms, obviously,

21    tremendous harm to Mr. Combs, no harm at all to Mr. Smith in

22    the absence of the injunction.

23         Regarding, the public interest, it can't -- it is

24    simply not in the public interest to pursue or to enforce an

25    Ex Parte Pre-Judgment attachment.  The Constitutional law's

1       very clear.  Until, there has been a Judgment, with notice and

2       opportunity to be heard, until that has occurred, there cannot

3       be this type of remedy.  And, if this Court enters this Order,

4       it sets a precedent that's a very, very dangerous precedent.

5       It would -- and furthermore, what we have here is with no

6       proofs, all kinds of inconsistent claims.  You have a prisoner

7       who simply finds a very famous person and makes some

8       atrocious, extraordinary allegations against that famous

9       person.  Well, this would create -- a circumstance where

10      prisoners all over the country will be filing these phony

11      claims against anybody they can hear of, learn about online.

12      Finding somebody's address is easy enough, in this case he got

13      the wrong address but at least he got a location that was

14      owned by the -- by the Defendant.  But, it's simple to do this

15      from prison.

16              And, there's a reason that we have the rules that we

17      do.  A Temporary Restraining Order is an awesome order with

18      awesome power of the Court being imposed and, that's why

19      there's so many rules about it and I wanna talk about those

20      rules.

21              One, under **3.310(B)(3)** the Rule -- the Injunction on

22      a Temporary Restraining Order can't extend more than 14 days.

23      This Order was written as 90 days.  We don't blame the Court,

24      the Court didn't write the Order, the Court entered the Order

25      that was prepared by the Plaintiff and that Order was

1      defective in so many ways it's hard to count.

2           But, even after the Order was entered it wasn't

3      served.  It was served eight days after it was entered.

4      Service of a Temporary Restraining Order is supposed to be

5      immediate.

6           Then, critically important, any Temporary

7      Restraining Order must have findings, mandatory findings.  An

8      Order granting an Injunction or Restraining Order must set

9      forth the reasons for its issuance and must be specific in its

10     terms.  Each of the four elements has to be laid out and the

11     TRO must describe the injury and state why it is irreparable.

12     None of that occurred here.

13          And, the Order itself is not at all clear on its

14     terms.  If the Court looks at the Order, it's frankly

15     unreadable.  The -- You know, I -- I made a reference to the

16     Order not being served until eight days.  I'm not suggesting

17     it ever was properly served.  In the record there's an

18     indication that it was mailed, not by the Plaintiff but,

19     apparently, by the Court.  It was mailed to that same address

20     on eight days after it was entered.  That's not proper

21     service.  And, there's no indication at all that it was ever

22     received by anybody, at any time.

23          But, I wanna go back to the deficiencies in the

24     Order.  It was -- if the Order is supposed to be reasonably --

25     described in reasonable detail, the act's restrained.  But, if

1       we look at the actual Order, the actual Order essentially

2       says, and we don't have a lot of time here and I know the

3       Court has the Order in front of it.  It says that, and the

4       property and estate shall cease and desist any and all trades.

5       The property and estate as the Order and the terms of the

6       Order it's not Mr. Combs who's being restrained, it's the

7       property and estate.  Now, that's how it was written by Mr.

8       Smith, it was written improperly, but it was entered that way.

9       So, the Order is completely incomprehensible.

10              Your Honor, we have a limited amount of time and I

11      need to talk about the Default Judgment because everything --

12              THE COURT:  Have about 10 minutes.  Obviously, I've

13      read everything.  So, you have about five minutes, please.

14              MR. DAVID FINK:  Okay.  Everything about the Default

15      Judgment is incorrect.  First of all, the Court obviously has

16      no jurisdiction because of the lack of service.

17              But, second, a Motion for Default Judgment of

18      course, has to be served.  If you look at the Proof of

19      Service, the Proof of Service says it was served on August 6th,

20      2024.  The Default wasn't even entered until August 23rd, so

21      that can't be proper service.

22              Second, the actual service of the Default entry.

23      The Default entry must be served.  The Court is very clear on

24      that, the Court Rules are clear on that.

25              But, in this case, if you look at the docket, you

1    look at docket entry number 11.  The Default Entry is not

2    served.  The line where it says it's been mailed is not

3    signed.  There is no evidence that the Default entry was

4    served and that's a pre-condition to any Default Judgment.

5         Now the Default Judgment itself, there's no

6    indication that that was properly served, that the Motion for

7    Default Judgment.  And, the Default Judgment is defective on

8    its' face because the Motion from the Plaintiff stated, if you

9    read it carefully, says he seeks entry of an Order in care of

10   the Plaintiff in the amount of, and in numbers he wrote up,

11   $100,000,000,000.340.10.  In words he wrote, one hundred

12   million.  Now, while that was an error by the Plaintiff, that

13   error was repeated by the Court when the Judgment was entered.

14   If the Court looks at the Judgment as its entered, the Court

15   will see that there are two separate numbers on that page and

16   one of them is $100,000,000.00 when its totaling -- when its

17   identifying this -- the components.

18        Let's just -- the Court can just look quickly at the

19   Default Judgment.  You look at the components and the

20   components of the Judgment shows $100,000,000.00, then

21   $310.00.  But, the Judgment is for $100,000,000,000,310.40.

22        Your Honor, there are so many technical errors, but

23   when we look to the transcript and we saw what occurred, there

24   was never a proper Affidavit by the Plaintiff.  The Affidavit

25   didn't say he swears to the damages, he says I will swear to

1  the damages.  He never swore to the damages.  There was no

2  testimony from the Court and as this Court well knows, since

3  **Wood v Daiie**, a default may establish liability but if a

4  Defendant comes forward, the Defendant is allowed to defend

5  and argue against damages.  In this case, that opportunity was

6  not provided.

7          In fact, if the Defendant demands Jury Trial, the

8  Defendant is entitled to a jury trial in a situation such as

9  this.  Here you had no evidence on the record of the damages.

10  The Court was supposed to undertake an inquiry into the

11  damages but instead the Court just accepted the damages from

12  the Plaintiff.  Damages in a Complaint that was not verified

13  without an Affidavit in support of the Complaint.

14          Now, Your Honor, there's so many different levels to

15  this but most importantly, the Court has no jurisdiction

16  because service did not occur.

17          The TRO was improperly granted because there's no

18  indication of proper service but more importantly there's --

19  and equally importantly there's no evidence of irreparable

20  harm.  There's no evidence of likely prevailing on the merits

21  because the Statute of Limitations barred the claims.  There's

22  no indications in the public interest, can't possibly be in

23  the public interest to enter this kind of an award.

24          As far as the Default Judgment and the Default

25  entry, the Default entry was not proper because service hadn't

1       occurred.  The Default Judgment was improper partly because

2       the Default entry itself, even as of today, has never been

3       served, no evidence of any attempt to serve it.  And, you

4       can't have a Default Judgment without a Default entry.

5               And, then of course, there's no evidence to support

6       the damages, whether it's $100,000,000.00 or

7       $100,000,000,000.00, either way there's no evidence to support

8       those damages.

9               Your Honor, I want to be as respectful to the Court

10      as I can and so I'm gonna stop right now and after Mr. Smith

11      argues, I will, of course appreciate the opportunity to

12      provide some rebuttal to the things he said and not return to

13      the other issues.

14              THE COURT:  Okay.  So, Mr. Cardello-Smith, you've

15      got about 20 minutes, so, your Response?  All right, I'm

16      sending you a request to unmute.  I had to mute you because

17      there were noises going on.  So, it should unmute itself here

18      in a minute.  Do they need to do it?  Usually, it's just

19      button.  Hold on.  There you go, you're unmuted now.  Perfect,

20      all right.

21              THE PLAINTIFF:  Did they get it?  Oh, okay, good.

22      (Indiscernible).

23              THE COURT:  You may proceed.

24              THE PLAINTIFF:  Okay, all right.  To the argument

25      that -- hold on, I don't know what this is.  Hold on.

34

1                   The argument that Mr. Fink -- can you hear me?

2                   THE COURT:  Yes.

3                   THE PLAINTIFF:  Your Honor, say something.

4                   THE COURT:  Yep, we can all hear you.

5                   THE PLAINTIFF:  Okay, the argument that Mr. Fink,

6       Mr. David Fink and Mr. Nathan Fink, they are rooted in lies,

7       falsity, blunders and it's absolutely false.

8                   If you look at the Proof of Service, there's a

9       tracking number on that.  That tracking number cannot be

10      faked.  We turn these documents in to the mail room, our

11      stack.  That tracking number shows that I paid $10.40 out of

12      my inmate account for the United States Postal Service to

13      serve it at Mr. Combs' address.

14                  The reason we know this is his address, because I

15      have the entire United States Department of Justice on my side

16      on this.  Because, in March they raided Sean Homb -- Sean

17      Combs home is what they did.  In the home he lives California

18      area, it's 200 South Maple.  That is his house, that's where

19      he's at.  You can have a different -- You can have a different

20      home in Florida, that's still your house.  It's his, he lives

21      there.

22                  The Feds do not just raid a house that's not on a

23      Defendant and then arrest the Defendant the day after or the

24      day after I get my judgment, arrest him and it not be his

25      address.  It doesn't work that way.

35

1          Sean Combs lived at that address, that is his home,

2     period.  And, that tracking number shows it was delivered

3     there, paid for and the green card was signed by him and sent

4     back to me.  I made copies of it and I sent it to this Court.

5          Regarding, the amount of money in the relief, that

6     Summons is very clear.  Notice to the Defendant, in the name

7     of the People of the State of Michigan, you are notified that

8     you are being sued.  Failure to answer could result and the

9     relief may entered against you.  You got 21 days by regular

10    Proof of Service, personal service, 28 days by US mail.  He

11    went past the 28 days, period.

12         That man got that, that man signed for it and now

13    he's gonna lie through his attorneys and say he never got it.

14    His credibility is shot.  He's saying he never -- he said he

15    never beat Cassie.  Cassie sued him and then the Feds released

16    the tape of him beating Cassie.  And, then he comes out and

17    says, I'm sorry.

18         So, their client's credibility is completely thrown.

19    He has no credibility whatsoever.  I'm the prisoner and I have

20    way more credibility than he does.

21         Regarding, this Affidavit from Kym Worthy in Wayne

22    County.  In March of 220 (sic), she ran against a young lady

23    name Bertha Harris, who damn near got her job out there.  But,

24    prior to it, Kym Worthy had to file paperwork with the

25    Elections Board that said, all the documents I'm filing are

36

```
 1        true.  And, then it was pro -- and she did that by Affidavit.

 2        And, then it was also proven --

 3                THE COURT:  Stop everybody, real quick and Mr. Fink,

 4        also, Kym Worthy's signature on any alleged paperwork was

 5        irrelevant to any of these --

 6                THE PLAINTIFF:  Okay.

 7                THE COURT:  -- proceedings, so.

 8                THE PLAINTIF:  All right, okay.

 9                THE COURT:  You know, whether it's her signature or

10        not --

11                THE PLAINTIFF:  Yeah.

12                THE COURT:  -- that part of it had no bearing on

13        anything in this.

14                THE PLAINTIFF:  Okay.

15                THE COURT:  Okay.

16                THE PLAINTIFF:  Okay, no problem.  All right, their

17        reliability on her and then saying, I suborned perjury is

18        attack on my credibility and the Court's credibility.  This

19        Court did everything right.  This Court processed it, this

20        Court heard it.  He saw the hearing on August 7th, he didn't

21        pop up after.  He didn't pop up until September 9th when the

22        Judgment was entered against him.  He knew all about this.

23        He's on Law and Crime network making comments about this.

24        He's over there with Jean Neal making comments about this.

25        Your client knew about this case before the $100,000,000.00
```

1    Judgment was entered.  He could've shown up at any time.  He

2    lied and stayed away, so he got served.  And, that tracking

3    number is all the proof I need as far as my credibility to

4    show it.

5         The Default entry was done properly by Ms. McGrane.

6    I requested it, it was entered and then I mailed it to him.

7    The copy he's talking about that didn't have the signature,

8    that was the copy that I got back.  I signed it, then I mailed

9    it to him.  First, he said he never got served and then he

10   cleaned it up and said, oh, oh, I did get served.  That's a

11   lie right there.  Mr. Fink made that statement so he's lying,

12   too, to this Court by saying he never got served the Default.

13        I served the Motion for Default Judgment using money

14   out of my inmate account to pay for the postage, to send it to

15   Mr. Combs.  So, I know he got it.

16        And, regarding the Temporary Restraining Order and

17   regarding the interest to the public safety -- or the public

18   interest and that, that man signed an Agreement with me and he

19   has not denied Adrian.  In -- Kym Worthy and all these people

20   signed Agreement, entitling me to 49% of his company.  That's

21   $400,000,000.00 I could've went after.  I went after him for

22   $100,000,000.00 for what he did.  So, this Temporary

23   Restraining Order should stay in place because that is in the

24   public interest.

25        Regarding, all of my filings, I fight because I

1      fight -- I don't like my rights being violated nor anyone

2      else's rights being violated.  These people have presented

3      Carli's writ as false.  However, if you look at Mr. Proctor,

4      Mr. Proctor, the gentleman who came up, he's an investigator.

5      He spoke with Mr. Vincent Smothers, a hit man out of Detroit

6      who attended a meeting -- who attended a meeting that had

7      Carli Carpenter there, Patricia Bentley, who's the lead Wayne

8      County investigator in charge of the Public Integrity Unit.

9      That meeting in '07 was to take me out on behalf of Wayne

10     County.  But, he didn't do it and this Affidavit explains just

11     that.  That's why Mr. Proctor was here for that investigation

12     and he has that report.  So, it implicates Kym Worthy's office

13     all day long and her own office used Mr. Vincent Smothers

14     testimony to free another guy, so he's very credible.  He's

15     very credible and I'm very credible.

16           Carli Carpenter was a woman who issued a report on a

17     rape charge in 1997 after she was already a victim of your

18     client, Mr. Combs, one of 14 women.  She didn't wanna process

19     -- she didn't wanna prosecute the case until she was arrest

20     (sic) by Patricia Penman who's at the Public Integrity Unit of

21     the Wayne County Prosecutor's office.  In 2018, that's when

22     she decided to press charges because she was paid to do that.

23     Then, she contacted me at the prison asking me to help her get

24     out of this because she lied.  I told her exactly what to say,

25     which is the truth.  I said, if I get this to you then let it

1    stand.  You know I didn't do this to you.  So, she allowed it

2    to proceed.

3              Also, at my Preliminary Examination on the case, my

4    criminal case, I questioned Ms. Carpenter.  She said only one

5    person assaulted her that night, it was me.  However, she also

6    testified that she was kinda hesitant, she was a little shaky

7    about it because the lead investigator and the Prosecutor was

8    there harassing her.

9              I had a witness who actually testified that Carli

10   Carpenter slept with two people at the same time, not just me.

11   But, she was paid $4,000.00 by Ms. --

12             THE COURT:  So --

13             THE PLAINTIFF:  I'm sorry, I'll get back on track.

14   I'll get back on track.  I'm sorry.

15             THE COURT:  -- get back on track 'cause that's --

16             THE PLAINTIFF:  -- I'm pulling a Fink, I'm sorry.  I

17   apologize.

18             We have an Agreement.  Bottom line is, you served --

19   service was made, you issued a very righteous decision, a fair

20   decision.  The people here, Mr. Fager, who's providing all

21   these documents and all this information that Mr. Fink spoke

22   about on Monday when we had our hearing.  He said, information

23   is coming in every minute as we speak.  That information was

24   coming from Mr. Fager.  Mr. Fager is a gentleman who I sued

25   three times previous to this, even as far as September 6th he

1    said.

2         All these -- All these lawsuits in the Western

3    District, Case Number 121 (indiscernible) 22-00149

4    specifically shows I sued Mr. Fager and -- okay, excuse me,

5    124-CB00308, that shows I sued him.  And, in that case I

6    charged him with filing forged documents, falsifying

7    documents.  This was back in May, it's before we even had any

8    hearings out here, Your Honor.  So, my history of challenging

9    this guy for forging documents, is clearly established.

10         Regarding, this whole thing about Monroe and Adrian,

11   Fishbones Grill and Kitchen where I worked at, is located in

12   downtown Detroit on Monroe and Brush.  So, I had Monroe on my

13   mind because I worked it a lot.  I'm in here using a cheap

14   little typewriter and I admit, we have spell check and it

15   didn't go off when I hit Lenawee.  Because, if you type in

16   Lenawee on a word processor, it should beep as a misspelling

17   until you enter it as a word in your dictionary.  I never did

18   that.  So, I was typing the word Monroe in there, that's why I

19   whited out Monroe, because it's not in Monroe.  And, I already

20   mailed it out, turned it into the mail room to send it, who

21   took $175.00 out of my account to send it to the Monroe court.

22   That's why the case is filed in Monroe, but notice there was

23   never any action, there was nothing done because I was gonna

24   have it transferred to this Court until this Court received

25   the corrected copy that I did white out and did send to this

1    court because I wanted everything preserved.

2              This isn't court shopping.  This is a man who was

3    the victim of a crime and who had a public interest and who

4    had a right not to be sexually assaulted and a right not to

5    have my money taken from me.  That's what this is about.  That

6    Agreement specifically said, that he is not to be caught up in

7    any federal actions.  But he got caught up in that March,

8    that's what broke it.

9              Regarding, the Statute of Limitations, the Statute

10   of Limitations is brand new because on April 4th and April 5th

11   of this year, Kym Worthy's office tested one of 11,341 rape

12   kits.  She got money to test 11,341 rape kits and she did it.

13   The one rape kit is semen from Mr. Combs that she's kept for

14   years.  So --

15              THE COURT:  So, Mr. --

16              THE PLAINTIFF:  -- it was discovered on April 5th --

17              THE COURT:  -- all right, Mr. Cardello-Smith --

18              THE PLAINTIFF:  (Indiscernible).

19              THE COURT:  -- Mr. Cardello-Smith, I apologize, just

20   as I had to advise Mr. Fink that we are -- gotta stay on topic

21   and --

22              THE PLAINTIFF:  Yes, ma'am.

23              THE COURT:  -- and you've got about four more

24   minutes, so.

25              THE PLAINTIFF:  Okay, I'll take it.

42

1              THE COURT:  Wrap it up.

2              THE PLAINTIFF:  All right, yes ma'am.  The Statute

3       of Limitations is upheld because this man was identified as my

4       rape -- as my raper, is what he was identified as, so that

5       takes care of the three-year Statute of Limitations.

6              Your Court has subject matter jurisdiction that they

7       never argue, they stayed away from that.  They're very skilled

8       at this, **2.116** gives you subject matter jurisdiction over this

9       case and the property.

10             Personal matter was obtained as soon as the service

11      was made.  Everything that they're saying that you don't have

12      and you didn't do, is false and it's a complete lie.  You have

13      subject matter jurisdiction and personal matter jurisdiction.

14      But they didn't argue subject matter in any way, shape or

15      form.

16             Your, Judgment should stay entered, because you did

17      everything right.  The TRO should stay entered to ensure that

18      I get the damages for this.  Everything should stay in place

19      because you did everything right, period.  You didn't do

20      anything wrong.  I did everything right.  I made some typos, I

21      made some errors, I'll admit.  I'm not perfect.  I'm working

22      under some crazy conditions, I get it.  But, I'm a Plaintiff

23      and I'm litigious because I'm a fighter.  I'm a fighter, is

24      what I am and I will always be a fighter for my rights and

25      other prisoners' rights.

```
 1              But this matter here, you should not set anything
 2       aside because it was done properly, it was done perfectly, it
 3       couldn't of been better.  They just don't want me getting this
 4       money because I'm a prisoner, that's what it is.  The State of
 5       Michigan --
 6              THE COURT:  Okay.
 7              THE PLAINTIFF:  -- doesn't want me gettin' it.
 8              THE COURT:  All right.
 9              THE PLAINTIFF:  You did everything right, Your
10       Honor, period.
11              THE COURT:  So, Mr. Cardello-Smith, I'm gonna stop
12       you there.  I am going to mute you, again, because of
13       feedback.
14              Mr. Fink you have about 10 minutes.
15              MR. DAVID FINK:  Your Honor, I'm going to try to
16       address the issues mostly in the order that they were
17       presented.
18              And, I wanna start with something very -- a
19       surprising and clear admission that Mr. Smith just made.  He
20       advised the Court that he paid $10.00 -- pardon me, $10.40.
21       Your Honor, the postal service for $10.40 will send a return
22       receipt request but will not provide adult signature
23       restricted delivery and that, you have to pay an additional
24       $11.65.  It was not paid in this case just as he just
25       admitted.  And, that's consistent with the two cards that the
```

1    Court has seen.  The fact is, he did not restrict delivery to

2    the Addressee.  And, because he didn't, that card was not --

3    did not have to be signed by the Addressee.

4         Now, to be clear, it isn't because the Court has

5    seen the card, Mr. Combs' name is no place on the signature

6    line.  That's not his signature, doesn't look like anybody's

7    sign -- but more importantly, the printed identification below

8    it, is not his.  And, then critically important, the Court has

9    seen that the card was doctored, whether it was doctored by

10   Mr. Smith or by some confederate of his, it doesn't matter.

11   It's a doctored card.  The first card shows consistent with

12   the post office rules that it was not restricted delivery.

13   And, I appreciate him admitting on the record that he only

14   paid $10.40 because that doesn't buy you restricted delivery,

15   that's what the problem was.

16        Now, spent a lot of time today on service but even

17   if Mr. Combs was served and he wasn't.  But even if he had

18   been served, this is a classic case where Default should be

19   set aside.  He came forward on the day or literally, the day

20   after he learned about the entry.  And, by the way, this

21   nonsense that we're hearing now that Mr. Combs made some

22   public statements before September 9th about this case are --

23   is patently false.  He makes reference to Law and Crime.

24   While we're here, I Googled and there's nothing in Law and

25   Crime from Mr. -- from Mr. Combs before September 9th.  Mr.

45

 1       Combs didn't know about it, he didn't sign for it.

 2             Now, for some reason, we're being told now by this

 3       Witness slash Plaintiff that Mr. Combs didn't deny the

 4       Agreement.  Of course, Mr. Combs denied the Agreement -- Mr.

 5       Combs denied the Agreement, Ms. Worthy denied the Agreement.

 6       Mr. Combs, in his Affidavit denied everything in the Complaint

 7       very clearly, very explicitly.  And, when Mr. Smith says well,

 8       it's just my word, I'm saying these things and you haven't

 9       heard from Mr. Smith (sic), that's not true.  We gave you an

10       Affidavit for Mr. Combs, I mean.  We gave you an Affidavit

11       from Mr. Combs and it's very, very clear.

12             And, this insane explanation that he sued, saying it

13       was at a hotel in Monroe, a Holiday Inn in Monroe because he

14       had been at Monroe and Bush -- Brush, I'm sorry, in Detroit is

15       beyond comprehension.  He filed a lawsuit, that lawsuit hasn't

16       been dismissed.  He filed two lawsuits on the same exact day.

17       And, in one lawsuit he said this happened in Monroe and in the

18       other lawsuit he left it blank and claims it happened in

19       Adrian.  And, he just didn't do his research well enough

20       because Monroe did have a Holiday Inn in 1997, Adrian did not

21       have a Holiday Inn in 1997.  He's making this stuff up as he

22       goes along.

23             Now, Your Honor, he raises what sounds like a more

24       sophisticated argument when he says, well what about subject

25       matter jurisdiction.  Your Honor, until you have personal

1    jurisdiction, subject matter jurisdiction is completely
2    irrelevant.  There's no personal jurisdiction over my client.
3    No personal jurisdiction because he has not been served.  And,
4    if there was any question about whether he had been served and
5    there wasn't from our perspective.  That question disappeared
6    when he just told us that he only paid $10.40.  Because, for
7    $10.40 you can't buy Addressee only delivery, which he had to
8    have.

9          Now, he hasn't responded to the basic issues that
10   we've raised.  It's an Injunction for 90 days, the rules are
11   clear it can only be 14 days.  The reasons are not provided in
12   the Order.  The Court Rules are very clear, reasons have to be
13   provided in the Order.  The Order has to be reasonably clear
14   in describing the matter enjoined and it isn't.  The
15   Injunction was supposed to be served and there's no evidence
16   that the Injunction was ever served, but that's after it was
17   entered.

18         Regarding, the Default Judgment, the Default -- he
19   has no explanation for why it is he did not sign, nobody
20   signed that the Default entry had been mailed or served.  And,
21   if you don't serve a Default entry, you can't get a Default
22   Judgment, it's that simple.  He didn't serve the Default entry
23   and he doesn't even claim to have served the Default entry.
24   He didn't serve the Default -- the Motion for Default Judgment
25   properly as I told the Court.  His so-called Proof of Service,

1    says it was served on August 6th, but there wasn't even a

2    Default as of August 6th, so he didn't serve that Motion.

3            And, notwithstanding all of these things,

4    notwithstanding the fact that we weren't served -- the client

5    wasn't served with the Complaint, we weren't served with the

6    Default Judgment, we weren't served with the Default entry, we

7    weren't served with the Temporary Restraining Order.  Despite

8    all of that, we came to this Court immediately, immediately

9    when we found out about this and we're very grateful to the

10   Court for hearing it, for giving us this time on its busy

11   calendar.  But we came immediately and we challenged every one

12   of these things and we haven't had a single substantive

13   response.  What we've heard is a prisoner who's serving time

14   for multiple felonies and who claims he didn't do that.  He

15   didn't commit these acts and everybody else is lying and he's

16   innocent.  Your Honor, I venture to say that almost every

17   prisoner where he is currently residing will give you the same

18   answer and tell ya, they're innocent, too.  And, maybe some of

19   them are, but the fact is, he doesn't by being in jail, in

20   prison, he doesn't get rights that the rest of us don't have.

21   He has to follow the Court Rules.  He has to follow every step

22   and he didn't follow any of these steps.  He doesn't explain

23   why that the Complaint's not verified and there's no Affidavit

24   in support of it, that by itself throws all of this out.  You

25   can't have a Temporary Restraining Order without that having

1    been sworn to.  He doesn't explain why he didn't serve these

2    things.

3          So, Your Honor, I appreciate so much time from the

4    Court, I really do.  I will simply point out that we hope the

5    Court has seen our Supplemental submissions, but in the end,

6    this is an incredibly simple case.  No service, no

7    jurisdiction and we really would appreciate it if the Court

8    could act quickly on this and dissolve the Temporary

9    Restraining Order and set aside the Default Judgment and the

10   Entry of Default, give us an appropriate amount of time to

11   respond.  We will respond of course, right away.

12         THE COURT:  All right, very good.  Thank you.

13         So, a central complaint of both Defendant's Motions

14   -- of both of Defendant's Motions currently before the Court

15   is the claim that Defendant was never properly served with the

16   Summons and Complaint in this matter, and was therefore

17   unaware of the proceedings.

18         **MCR 2.105(A)(2)** specifies that service of the

19   Summons and Complaint may be served upon a nonresident

20   individual by sending a copy of those documents by registered

21   or certified mail, return receipt requested, delivery

22   restricted to the addressee.  Service is made under this Rule

23   when the defendant acknowledges receipt of the Summons and

24   Complaint, and the return receipt must be attached to the

25   proof of service.  There is no requirement that the Summons

49

1     and Complaint be mailed only to Defendant's primary residence.

2     "A party may not simply announce a position and leave it to

3     this Court to make the party's arguments and search for

4     authority to support the party's position." **Wilson v Taylor**,

5     **457 Mich. 232, 243, 577 N.W.2d 100 (1998).**

6          The Court received a return receipt indicating that

7     the copy of the Summons and Complaint was mailed, certified

8     mail, delivery restricted to the Addressee, to "Sean Combs,

9     200 South Mapleton Drive, Holmby Hills, Los Angeles,

10    California, 90077."  Defendant does not deny that this is a

11    residence Mr. Combs owns.  The Court acknowledges that the

12    date of service on the return receipt was difficult to read

13    and could either have read, "7/6/21" or "7/6/24".

14         However, given that the case number for the instant

15    action filed in 2024 was included on that return receipt, the

16    Court at that time found the date to either be "7/6/24" or be

17    a typographical error.  The Court had no reason to believe the

18    date was fraudulent.  The Court also acknowledges that the

19    signature on the return receipt is utterly illegible, but

20    indicates that it was signed by the Addressee.

21         Defendant's review of the Proof of Service indicates

22    something the Court previously didn't note:  the lack of

23    delivery restriction to the Addressee.  Accordingly, proper

24    service was not made under **MCR 2.105(A)(2)**.

25         However, the Court finds that Defendant (sic) did

1    provide notice by mailing a copy of the Motion for Temporary

2    Restraining Order to the same address.  Accordingly, the

3    Temporary Restraining Order was not issued without notice as

4    Defendant alleges and those procedural requirements do not

5    apply under these circumstances.  As a result of Defendant's

6    failure to contest the TRO, the Temporary Restraining Order

7    was issued.

8          However, the Court is persuaded by the Defendant's

9    arguments that at the very core of this matter is the Statute

10    of Limitations issue, which makes it unlikely that Plaintiff

11    will succeed on the merits.  As a result, as detailed in

12    Defendant's briefing, Plaintiff cannot satisfy the four-prong

13    test to establish entitlement to an injunction and the

14    Temporary Restraining Order will be appropriately set aside.

15    Defendant's Motion to Set Aside the Temporary Restraining

16    Order is therefore granted.

17          Turning next to the Motion to Set Aside the Default

18    and the Default Judgment, as the Court previously addressed,

19    it finds that Defendant was not properly served with the

20    Summons and Complaint.  Moreover, the Court notes, "the policy

21    of this state generally favors the meritorious determination

22    of issues and therefore encourages the setting aside of

23    defaults." **Huggins v Bohman 228 Mich App 84, 86; 578 NW2d 326**

24    **(1998)**, the Court finds that Defendant has established

25    procedural defect sufficient to establish good cause under **MCR**

1        **2.603(D)(1).**

2               The Court further finds, as it previously indicated,

3        that Defendant is likely to have meritorious defense in at

4        least the statute of limitations arguments.  Having fully

5        satisfied the requirements of **MCR 2.603(D)(1),** the Defendant's

6        Motion to Set Aside the Default and Default Judgment is

7        granted.  The Default Judgment previously entered is hereby

8        vacated.

9               The Court, at this time will send out a Pre-Trial

10       notice to the parties based upon the emergency pleadings

11       filed, it appears that Defendant would like a hearing date for

12       a Motion for Summary Disposition and there will be at least 40

13       -- 30 to 45 days out to allow Defendant to file Motion and

14       give Plaintiff 28 days to respond.  So, would you like the

15       date of October 30th at 10:00 a.m. for two hours?  I'm sorry,

16       October 31st at 10:00 a.m.

17              MR. DAVID FINK:  I apologize, Your Honor, what I

18       don't know is, is -- the Court was setting for October 31st --

19       I didn't catch what the Court was setting for October 31st.

20              THE COURT:  Oh, well I was -- my assumption is at

21       some point you'll be filing a Motion for Summary Disposition.

22              MR. DAVID FINK:  Yes.

23              THE COURT:  So, I was going to give you that date

24       now.

25              MR. DAVID FINK:  Oh, oh, that is -- I appreciate

1       that and that's what I thought the Court was saying and I

2       didn't want to interrupt.  But I have a previously scheduled

3       full-day mediation on that date, on October 31st.

4               THE COURT:  Ms. Adams, could I get another day in

5       November for two hours, please.  And, that'll give you plenty

6       of time to serve Mr. Cardello-Smith and that'll give plenty of

7       time for Mr. Cardello-Smith to file a response.

8               MS. ADAMS:  Judge, we do have the afternoon of

9       November 8th.

10              THE COURT:  November 8th at 1:30 p.m.

11              THE PLAINTIFF:  Your Honor?

12              THE COURT:  Is that David --

13              THE PLAINTIFF:  No, I've got a Probable Cause

14      Conference remand hearing for five prisoners that didn't get

15      one in their criminal case on that date.

16              THE COURT:  Okay.

17              THE PLAINTIFF:  It's gonna take up the whole two

18      weeks of that.  Can you put it towards the end of November?

19              THE COURT:  Ms. Adams?

20              MS. ADAMS:  I'm looking.

21              MR. DAVID FINK:  Your Honor, if I may, perhaps an

22      earlier date than October 31st would make sense.  It's a little

23      odd when a prisoner has his own criminal docket that he's

24      handling for other prisoners, but I respect his schedule.

25      But, we do want to get this done sooner.  I didn't count out

 1       all the days, as the Court was gracious --

 2               THE COURT:  Mr. Fink, I'm fine with setting this out

 3       to November, that gives him ample time to respond, because

 4       there are some mail delays with MDOC.

 5               THE PLAINTIFF:  I'm here.  Hey, Your Honor, can I

 6       put my notice of appeal on the record, at this time?  And,

 7       too, my notice to file a Motion for Reconsideration of this

 8       regarding the Statute of Limitations and ask for subpoena

 9       power to help meet the Statute of Limitations based on

10       documents that are currently in the possession of Adrian

11       Police Department, Lenawee County Sheriff's Department and the

12       Wayne County Prosecutor's Office?

13               THE COURT:  So, you have the right to file Motion

14       for Reconsideration and request that relief.

15               THE PLAINTIFF:  Uh-huh.

16               THE COURT:  But I'm not going to grant those reliefs

17       today, no.

18               THE PLAINTIFF:  Okay, no problem.

19               THE COURT:  Okay.  Let me see, all right.  I have a

20       Civil, Criminal and Family Law docket, so I'm on the Bench

21       about eight hours every day, so my docket -- I don't have a

22       one or two hearings a day, so finding a day, because

23       obviously, my Family Law and my Criminal docket will take

24       precedence over any civil.  Out 45 days, I can do Monday,

25       November 4 at 2:30 to 4:30.

```
1                    THE PLAINTIFF:  Perfect.

2                    THE COURT:  Mr. Fink, is that good for you?

3                    MR. DAVID FINK:  That will work, Your Honor.

4                    THE COURT:  And, that gives you the time.  All

5        right, so obviously, I've just given you the date for that and

6        I'll set a Pre-Trial, as well on the same day.

7                    So, Mr. Fink -- so Mr. Cardello-Smith and Mr. Fink

8        --

9                    THE PLAINTIFF:  Yes, Your Honor.

10                   THE COURT:  Mr. Fink will serve you with his Motion

11       for Summary Disposition timely, giving you ample time to

12       respond and then we'll come back on November 4th at 2:30 for

13       two hours -- hold on --

14                   MR. DAVID FINK:  Your Honor --

15                   THE COURT:  -- and Mr. Ink -- Mr. Fink, you will do

16       the Order from today and then put that notice in there, as

17       well.

18                   MR. DAVID FINK:  Okay, the Order will just state for

19       the reasons stated on the record, we'll submit.

20                   THE COURT:  Yes.

21                   MR. DAVID FINK:  Now, do we need to submit it to Mr.

22       Smith for his review or just submit it to the Court?

23                   THE COURT:  So, if you submit it the day of the

24       hearing, I will sign it.

25                   MR. DAVID FINK:  We'll submit it today.
```

 1                    THE COURT:  And, then also, if you can attach part
 2        of it that the Court scheduled a Summary Disposition motion
 3        for that day and that way Mr. Cardello-Smith will have any
 4        paperwork he needs.  And, then when you serve the Motion for
 5        Summary Disposition, you'll do another notice, of course.
 6                    MR. DAVID FINK:  Your Honor, can we -- can we serve
 7        Mr. Smith by email?  We do that with all the other, with
 8        attorneys all the time.
 9                    THE COURT:  Well, Mr. Cardello-Smith, do you have
10        access to JPay or any way to receive that via email?
11                    THE PLAINTIFF:  The -- No, I need paper service
12        through the mail, ma'am.  We had JPay but that's -- that issue
13        will have too much access to it, it often (indiscernible).
14                    THE COURT:  Okay, so --
15                    MR. DAVID FINK:  Your Honor, this --
16                    THE COURT:  (Indiscernible) email.
17                    MR. DAVID FINK:  I'm not trying to force the issue
18        and we've been --
19                    THE COURT:  Okay.
20                    MR. DAVID FINK:  -- I'm fine getting it served by
21        the prison.  Can we provide the Order to the Court by email?
22                    THE COURT:  Yes, you can email that to my Judicial
23        Attorney, I believe you all have her email address.  And, as
24        long as that's submitted before 4:30 today and it accurately
25        reflects what I ordered, I will sign it.

1          MR. DAVID FINK:  Believe it or not, Your Honor,
2     we've not been communicating with email --
3          THE COURT:  Oh.
4          MR. DAVID FINK:  -- I don't have email address.
5          THE COURT:  Okay, I'm gonna -- the email, I'm going
6     to send that to you in a chat.  Mr. Cardello-Smith, you have
7     communicated with her.  So, hold on one second.
8          THE PLAINTIFF:  Yeah.
9          THE COURT:  All right, so Mr. Fink I am going to
10    send you -- it's -- all right, Mr. Fink, I'm sending that to
11    you now via chat, can you write it down, please, or copy and
12    paste it.
13         MR. DAVID FINK:  Okay, I have it here.  Thank you,
14    Your Honor, I've saved it.
15         THE COURT:  Excellent.  All right, so I will --
16         MR. DAVID FINK:  Your Honor, there was one, I
17    apologize.  I wanted to just say one more thing, if I may, on
18    the record with an abundance of caution.  I've not yet
19    obviously, had an opportunity to consult with our client
20    regarding the Court's ruling and so -- and our next steps.
21    So, I -- while I do anticipate that the Court is correct that
22    our next step, we'll be filing a Motion for Summary
23    Disposition, having not consulted the client yet, I don't want
24    to make representation to the Court.  We may or may not file
25    that, we appreciate having the briefing schedule, I think it's

```
 1        most likely next step, but I'm not certain (indiscernible).

 2                THE COURT:  Either way, put in the notice from --

 3        put in the Order from today that a Pre-Trial will be held that

 4        day as well, so at very least, we'll hold a Pre-Trial that

 5        day.

 6                THE PLAINTIFF:  Your Honor?

 7                THE COURT:  Yes, sir.

 8                THE PLAINTIFF:  I, too, will be filing a Motion for

 9        Summary Judgment in my favor --

10                THE COURT:  Okay.

11                THE PLAINTIFF:  -- according to the Pre-Trial rules,

12        okay?

13                THE COURT:  Yes, yes.

14                THE PLAINTIFF:  This isn't over, Mr. Fink, let Mr.

15        Combs know that.  This is not over.

16                THE COURT:  Okay, very good.  Everybody will file

17        whatever they deem is appropriate.  That concludes this

18        hearing, thank you.

19                THE PLAINTIFF:  Thank you, Your Honor.  Thank you.

20                THE COURT:  Thank you, all.

21                (At 12:16 p.m., Proceedings concluded)

22

23

24

25
```

```
 1              I certify that this transcript, consisting of 59 pages,

 2     is a complete, true and correct transcript of the proceedings and

 3     testimony taken in this case on September 18, 2024 before the

 4     Honorable Anna Marie Anzalone.

 5

 6     Dated:  September 24, 2024

 7                                    JoAnn N. Spade
                                    _____

 8                                    JoAnn N. Spade, CER 5709

 9                                    425 N. Main Street

10                                    Adrian, MI 49221
11                                    (517) 264-4578
```

Exhibit 33

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY

DERRICK LEE CARDELLO-SMITh #267009,
    Plaintiff,

Vs                                          Case No 24-7362-NO

                                    Honorable Anna Marie Anzalone

SEAN COMBS,
    Defendant,
_____/

### PLAINTIFFS EMERGENCY MOTION TO REINSTATE THE DEFAULT JUDGMENT ORDER BASED ON SERVICE BEING MADE AND SATISFIED UNDER MCR 2.105(B)(1)(b) (4)(a)(b)

   Now comes the Plaintiff, Derrick Lee Cardello-Smith in the above cause and hereby files this PLAINTIFFS EMERGENCY MOTION TO REINSTATE THE DEFAULT JUDGMENT ORDER BASED ON SERVICE BEING MADE AND SATISFIED UNDER MCR 2.105(B)(1)(b)(4)(a)(b) and asks this Court to Grant the Reinstatement of the September 9, 2024 Default Judgment Based on the Factors outlined within and as that the Plaintiff has in fact and did in fact satisfy the Michigan Court Rules of Service options available to the Plaintiff and in compliance with Michigan Compiled Law, and for the reasons herein to grant the emergency hearing.

Thank you for your time in this matter.

_____                              9-21-24
Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in Pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

/.


RECEIVED
SEP 27 2024
BY:_____

BRIEF IN SUPPORT
PLAINTIFFS EMERGENCY MOTION TO REINSTATE THE
DEFAULT JUDGMENT ORDER BASED ON SERVICE
BEING MADE AND SATISFIED UNDER
MCR 2.105(B)(1)(b) (4)(a)(b)

On September 9, 2024 this Court enter an order granting Plaintiffs Default Judgment against the Defendant Sean Combs for His Failure to Timely file a response or answer.

The Defendant, By way of Counsel, the filed an Emergency Motion to Set the Default Judgment Aside by claiming that (1) The Defendant was not served under Restricted Delivery according to MCR 2.105(A)(2).

On September 18, 2024, this Court Granted the Defendants Motion to set the Default Entry and Default Judgment Aside based on the restricted Delivery Argument.

The Court did agree and the defendant did agree that the Plaintiff followed the Certified Mail Rules and Return Receipt Rules in its hearing a decision.

Plaintiff Now seeks to have that Decision Vacated and the Original Judgment Reinstated because of the Fact that the Plaintiff has in fact and did in fact Satisfy MCR 2.105(B)(1)(b)(4)(b) and therefore, has satisfied the Service Requirement that is listed and cited herein below in the arguments for Reinstating the Original Judgment that this Court Did enter and now argues as follows below.

<u>ARGUMENT</u>:

1. MCR 2.105(B)(1)(b) and (4)(a)(b) states the following:

**Service of process may be made** (1) on a non-resident individual, by (b) Sending a Summons and copy of the Complaint by REGISTERED MAIL addressed to the defendant at his or her last known address;
(4) on an individual doing business under an assumed name by (a) serving a summons and copy of the complaint on the person in charge of an office or business establishment of the individual, and (b) sending a summons and copy of the complaint by REGISTERED MAIL addressed to the individual at his or her usual residence or last known address."

2. Plaintiff submits to this court that the Certified Mail and the Copy of the Summons and Complaint have fully complied with the Provisions identified above and that since the said Court Rules have both been satisfied as the Defendants Counsel David Fink has in fact said that "Certified Mail was made" See record of Testimony by David Fink from the Courts 9-16, 2024 and 9-18-24 hearings and this courts own ruling confirming said Certified mail having been made.

3. The Court has erroneously set it the Default Entry and default Judgment Aside because it was led to believe that the Only Available Means of Service was MCR 2.105(A)(1)(2).. This is not the only way that the Plaintiff is allowed to serve the defendants and it is in fact, this plaintiffs claim and assertion that the Service of Certified Mail has been Satisfied and Fully Complied with by the Plaintiff to the Court and that the Plaintiff was completely entitled to the Default Entry and Default Judgment and it has been incorrectly taken from this Plaintiff by the Defendants Misleading the Court and omitting the entire court rule process.

2

4. Plaintiff states that MCR 2.105(A)(1)(2) says that 'Process MAY be served on a resident or non-resident individual by (1) delivering a summons and copy of the complaint to the defendant personally, or, (2) sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail. A Copy of the Return Receipt signed by the defendant must be attached to proof of service under Subrule (A)(2)."

5. The Court was under the belief that the Only Method of Service was the one articulated by the Defendants of MCR 2.105(A)(1)(2) and the requirement of Restricted Delivery, and that is only 1 method of the ways of service to be done and the Defendants presented it that way, and in doing so, mislead the Court deliberately omitting the other methods of service available to this Plaintiff for service and that is the certified mail method to his residence that does not require Restricted Delivery and there is clear case law that has been allowed and conducted in the State of Michigan where Certified Mail only on defendant has been and is recognized by the Courts in which cases were allowed to proceed and were settled in the said courts and certified mail only service should be allowed to be what is necessary and sole for the granting of the reinstatement of the judgment by default because Service was made.

6. Plaintiff effected service upon Defendant Combs at a and the person in charge of his office and business establishment of Mr. Combs at his last known address that he has acknowledged in the Courts 9-16-24 and 9-18-24 hearings before this Court. Defendant combs was and continued to do business there at the time under the Assumed name of "Love" and "Diddy" while conducting his business at the location of his home that was served in L.A. and as that it was done by way of Certified Mail, a Certified Mail claim that the Defendant Have Acknowledged completely shows and supports that the methods of Service have in fact been made as were options allowed to be granted to this Plaintiff and Methods of service allowed under the Rest of MCR 2.105.

7. Plaintiff submits to this Court that the Court was cleverly manipulated by the Defendants Attorney David Fink on September 16, 2024 and September 18, 2024 when it Concealed and Omitted the Other Provisions of MCR 2.105 which allows the Plaintiff to use SUBSTITUTED SERVICE as detailed under MCR 2.105 (B)(1)(b)(4) which allowed this service upon the Defendants by certified mail and as the court is clearly aware, the Plaintiff did in fact use certified mail and admitted to it and did not utilize the Restricted Delivery Option Because it is Not a Requirement, and it is only an option and the Plaintiff exercised the Other Options for Substituted Service which was allowed under the Law, however the Defendants have chosen to not allow this method to be used, and in doing so, manipulated this Court and deceived this Court by this Freudulent Action and Intentionally Deliberate Omission and failure to notify this Court of this option and it was done to remove the Judgment that this Plaintiff was entitled to, but removed of when the Defendants Lied to this Court and Kept this information from the Court, resulting in a Serious Violation of this Plaintiffs Constitutional Rights requiring correction of it and reinstatement of the Default Entry and Default Judgment entered by this Court in favor of the Plaintiff.

8. The Defendants, intentionally, deliberately, knowingly, cleverly, maliciously lied to this court when it said that the Only manner of service available to the Plaintiff was restricted and in doing so, they interfered

3

with this courts Lawfully Entered Orders and completely violated this Plaintiffs Constitutional Rights by committing a Deliberate omission of facts and true statements of what the entire Michigan Court Rule is and what it says, thereby prejudicing this Plaintiff who was entitled to the Judgment that this Court entered on September 9, 2024 and was stolen from this Plaintiff by David Fink on September 18, 2024 when the law and court rule was and is on this Plaintiffs side in every facet imaginable rendering this court being duped by the Defendants Counsel of Record....It should not be any Surprise that this kind of action has been taken by the Defendants Attorney David Fink in the past, he has been accused of supporting Attorneys that Lie and Present False Information to courts such as, the Attorneys for Donald Trump when they claims in Court Filings that the 2020 election was stolen and they peddled nonsense on so many areas...Mr. Fink has publicly supported their claims and represented them time to time as well, only to find out that they were in fact lying in Michigan Courts, and that they were in fact disbarred and fined and not allowed to do any more actions, and Mr. Fink was near and at the center of those lies told by the lawyers for Trump in 2020, and it is a matter of record... So it is not surprising that David Fink has left out information regarding this court rule and manner of service allowed under the laws of the State of Michigan to support their own claims and that is a complete deviation from what Lawyers are required to do and they were required to provide this court all facts and all provisions of the Court Rule and they failed to do so and as such, have broken the laws of the State of Michigan and Michigan Rules of Court and the decision should be reversed and the Judgment reinstated back on the record.

9. Plaintiff submitss to this Court that the Defendants have Violated MCL 449.1105(a)(2) and GCR 1963 195 and GCR 1963, 1061 which this Plaintiff has fully complied with as related to the 2011 Amendment of MCR 2.105 and the Amendments of this Court Rule in its entirety.

CLOSING ARGUMENT, as that the Plaintiff has in fact used the Method Of Service Allowed by MCR 2.105 (B)(1)(b) and (4)(a)(b), that the Default Judgment should be reinstated and that the order that was in place on September 9, 2024 and all of its provisions should be reinstated and placed back on the record, because Plaintiff has in fact satisfied the Requirements of the Appropriate Rules of Court regarding the Certified Mail-Registered Mail and Return Receipt Requested to this Court and it should be granted immediately and this emergency motion should be allowed to be heard immediately and without any delay on the date listed within.

The Defendants have employed clear and deliberate omissions from the court in their emergency motions to set aside the default judgment and dissolving the TRO and in it, leaving out critical facts of MCR 2.105.
RELIEF REQUESTED
Wherefore, Plaintiff prays this Court will enter an order to GRANT REINSTATEMENT OF THE DEFAULT JUDGMENT based on MCr 2.105(B)(1)(b)(4)(a)(b) satisfying the Rules of Service Process for Default Judgment against the Defendant and All orders originally imposed are to stand with the Reinstatement of Said Order and Motion being Granted, and grant any further relief this court deems necessary.

9-21-24

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

4.

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY


DERRICK LEE CARDELLO-SMITH #267009,
   Plaintiff,

Vs
                                   Case No 24-7362-NO

                                 Honorable Anna Marie Anzalone

SEAN COMBS,
   Defendant,
_____/


### AFFIDAVIT OF WITNESS AARON ROGERS
### SEEING, HEARING, VIEWING THE EVENTS OF AND AS
### TO SEAN COMBS SEXUAL ASSAULT OF PLAINTIFF IN 1997 AND
### SIGNING OF AGREEMENT BETWEEN WAYNE COUNTY PROSECUTOR KYM WORTHY,
### SEAN COMBS OF BAD BOY RECORDS, DETROIT POLICE OFFICER PATRICK JACKMAN,
### ROBERT FICANO, WARREN EVANS, WAYNE COUNTY OFFICIALS,
### GEORGE PRESTON, DOROTHY DUNN, BUSINESS OWNERS AND NOTARIZED AND VERIFIED
### <u>AFFIDAVIT OF MR. ARRON ROGERS TO MULTIPLE FELONIES AND COVER-UP</u>


   My name is Aaron Rogers and I am making this statement with the events described herein as that they are true, real, accurate, happened and occurred and this Affidavit is made Freely, voluntarily, and is not done with any other purpose accept to have the truth heard and known.

   1. That in June, 1997, while In the company of Sean Combs, also known as Bad Boys Record Owner, and his crew, I attended a Sex Party and Get Together.

   2. Mr. Combs, and Mr. Cardello-Smith and 20 other people had invited me to join them for said party and get together, by starting in the Bus.

   3. This Bus had so many different wonderful things on it, TVS, VCR, GUNS, DRUGS, EVERYTHING A MAN OR WOMAN WOULD NEED.

   4. Derrick was serving drinks to everyone...I had met him and Diddy at the Fishbones Rythym kitchen and Cafe Place in Detroit on Monroe....

   5. We parked at a Hotel in Adrian, Michigan where there was a sign that said, "HOLI-DAYS INN, COMING SOON." "NEW OWNERSHIP", We all went into room 21 as that Mr. Combs had rented and taken over 6 rooms for the whole crew. Derrick has started performing oral sex on a woman and she wanted her pussy eaten and he was eating it, I was still young so I did not know what it was, but I know she liked it and she said that "he knew what he was doing! She started Cumming and He Seemed to care about her getting pleasure because he was happy to be there...Mr. Combs was wondering why all the women were starting to go over to Derrick....They had an argument, and Derrick Hit Mr. Combs in his throat and Combs fell down....Derrick was then restrained by his Guards....Sean said, it's okay, let him go...

   6. I observed Mr. Combs Offer Mr. Smith a Drink, it was Jim Beam I believe, and then Smith Passed out.



7.  I then saw Mr. Combs-Slide Mr. smiths Pants off, after taking his Boots off, and I thought that that was kind of strange......Then, i saw Mr. Combs, slide Oil out of a bag that he had onto Mr. smiths Butt Cheeks and all the while, he was stroking his own Dick and then he took his dick and Placed it at the Top of Mr. Smiths Cheeks.   At which time, Mr. Smith started to awaken and then Mr. Combs grabbed a Needle and Injected Something directly into Mr. Smiths arm and and punch Mr. Smith and knocking him out even further....He then took a Gun, it was a 38 silver and hit Mr. Smith in the head with it, and then, Mr. Combs took His Seriously Erect Dick out and He then Plunged it deep into Mr. Smiths Butt.....I could hear Mr. Smith Moan horribly and Combs Put the Gun to his neck and then was holding it telling Derrick... "If you move, or scream, I will pull the trigger".... I was frozen in fear and shock at what I was seeing... The Clock said 8:40 and it went on for 2 hours... I had never seen anything like this... Derrick then came too and was bleeding from his Anus and I was going to call the Police, but there was already an officer present with 2 women....It said Adrian in it!

8.  Derrick then got up scared and looking around and Combs the4n said, "I got that anyway and take that take that! Derrick was just shocked and got up and ran, he fell because he could not even walk, there was so much Blood coming out of his Ass, and then, he grabbed his Boots and Pants and Ran out of the Room.

9.  Then, Derrick was out of my sight for a little while...Mr. combs then stayed there and asked the women if they wanted him to eat them out and they said, no, and they were just as shocked by Mr. Combs, because he had Just Raped a Man and it was nothing to him, but, he had apparently done it before to them and other men as well, so What was the difference?

10.  We left and then we went to a Place in Detroit because Mr. Combs said that he has to "Meet with some Law Enforcement and Government Folks in Detroit, at the Police Crime Lab....I stayed with them because I was still thinking about him just having raped a man and it was something I had never seen in my 17 years on earth...ever, it was pretty bad...

11.  Then, there was a Terrible Woman who showed up when we got there and it was someone I remember from just a few years earlier on TV that had Charged 2 Police Officers with Killing Malice Green with their flashlights and I knew it was Kym Worthy, she was the Wayne County Prosecutor, everyone Knows Ms. Worthy, she is a dangerous tough woman.... She was talking to Mr. Combs and There was some other people their named Evans, Ficano and Jackson too, a whole lot of people....

12.  Then, out of nowhere, comes a Z-28 Speeding and it damn near hit me and It stopped...a Man got out and it was Derrick, he was scared and yelling and bleeding all down his legs and he has some metal in his hands and he hit 2 of the crew body guards in their knees and then grabbed Mr. Combs, and threw the pipe down and hit him so fast in his Throat that Combs fell too the ground and Then The woman Worthy came up to Derrick and she said something like..."He you, whoever you are, you had better not mess up my investment and if you do, I will take one of these rape kits and put you in prison for rape!" Derrick then looked at her and said, this Mother

Fucker Raped me! "She said, So what, he does it all the time, where do you think I get the Women from? He then said, you just want to lock men up for things they do not do, and she said, I sentence them now too, Just Try me...! Derrick then said, Your Horrible, she said, So! Then Some Officers from Adrian and Lenawee and Detroit all calmed things down and Derrick, Her, Mr. Combs and some other guys that look famous all went to the Hood of his car and he was writing up something, and they all signed it... Then, him and Kym signed a separate document! It was all pretty bad... Then Derrick was taken to the Hospital in an Ambulance... I went with him because I felt I should....

13. I did not see anything about Derrick anymore until he was in prison with me and we both got charged with Rape cases by that same woman, Kym Worthy in 2019... It was pretty bad because she had lied about her knowledge of the Rape Kits because she knew about them in 1997 and lied and said she discovered them in 2009 or 2010.. But she is a horrible person and Derrick was raped, repeatedly by Sean Combs...

I am coming forth now to tell the truth because what happened was horrible and just plain wrong.

14. I also remember Kym and Sean Saying that they would 'Kill derricks Family if he said anything and Derrick Wanted his family safe and also, Sean told him that he would be able to get 49% of his entire empire for the money he gave him now..

15. Kym Worthy had specifically told Police Officer Patrick Jackman to "Go to the Hospital and get the Rape Kit on Mr. Smith because it will in fact, have Sean combs Semen in it and hold it and make sure that you seal it up and give it to me... I will Hold it... Mr. Jackman then said, are you sure, because we can just keep it in the warehouse and that will be okay, just put it with the rest! Kym said, no, this one is special to me and I have a feeling about it, beside, they will not search my Chambers, and I will have the power to handle any plea deals with Smith... So go and get it and then bring his nut juice back to me, okay... Patrick Jackman told Jerry Redlin from Adrian PD that he will take it from here and Redlin said, Okay...I am cool with that...

16. Sean Combs had told him that he was facing bankruptcy because of Death Row Records damn near wiping him out with their success so he was looking in every City for Money and the word spread through the Undergrounds, and Derrick was paying him for his investment and properties and things like that!

I am telling the truth and have nothing to gain from lying, that Man was raped by Sean Combs and He had a Signed Agreement between SEAN COMBS, KYM WORTHY, AND OTHER PEOPLE, and I saw all these events take place and transpire in this matter and I promise you it happened.

I can verify it and I will testify to it in open court.... Judge Anzalone, You have a Man in front of you that was raped by Sean Combs and it was covered up by the Wayne County Prosecutor and it must get cleared up because it was wrong and it is something that I knew about for years, but I

could not do anything until I saw that they arrested Mr. Combs and I will testify to it Completely in your court if you want too!

I can tell you this much, I am not a Liar and Derrick Lee Cardello-Smith was Framed for Multiple Rapes by Kym Worthy, the Wayne County Prosecutor and He was Raped, and Assaulted by Sean Combs, and I will testify to it because it happened, it is true and it is real and that is a fact, no matter what the other people say, I was 17 and I saw this happen, and I have nothing to gain by coming out and saying these things, I truly do not and it is because they are true that I am saying it.

### VERIFICATION AND DECLARATION OF AFFIDAVIT AND CONTENTS

I swear and declare to this Court that the Details of this Affidavit are in fact True, Real and Factual and that they happened and they are completely True and real and that I know it because I witnessed it, I saw it, I observed it and I know that it happened and that I have personal knowledge, experience with these events because I was there and they happened and are real and true and I will speak to these events as that they happened and are real and true and I swear to it before a Notary Public in the State of Michigan in the County of Muskegon, and will do it in any court or area or press as that it is real, just call upon me and I will attest to them, and I ask for no deal and have been offered nothing, I was only scared because of Sean Combs and his reach...he is locked up now, so I am not scared anymore..

September 23, 2024

Mr. Aaron Rogers
#360900
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

I am a Notary Public in Muskegon, Michigan and Mr. Aaron Roger appeared before me voluntarily and swears to the events described within this document that they are his own words and his own statements and that they are true and i notarize his presence and Signature to these events described herein on this 23rd Day of September, 2024.

B JONES
Notary Public, State of Michigan
County of Muskegon
My Commission Expires 2-14-2026
Acting in the County of Muskegon

Exhibit 34

STATE OF MICHIGAN
IN THE 39TH CIRCUIT COURT FOR LENAWEE COUNTY


DERRICK LEE CARDELLO-SMITh #267009,
　　Plaintiff,

Vs                                          Case No 24-7362-NO

                                   Honorable Anna Marie Anzalone

SEAN COMBS,
　　Defendant,
_____/


### PLAINTIFFS MOTION TO GRANT RECONSIDERATION OF THE COURTS ORDER TO SET ASIDE DEFAULT JUDGMENT BASED ON SERVICE BEING MADE AND SATISFIED UNDER MCR 2.105(B)(1)(b) (4)(a)(b)

   New comes the Plaintiff, Derrick Lee Cardelle-Smith in the above cause and hereby files this PLAINTIFFS EMERGENCY MOTION TO R ETChOEN SDIEDFEAULT JUDGMENT ORDER BASED ON SERVICE BEING MADE AND SATISFIED UNDER MCR 2.105(B)(1)(b)(4)(a)(b) and asks this Court to Grant the Reinstatement of the September 9, 2024 Default Judgment Based on the Factors outlined within and as that the Plaintiff has in fact and did in fact satisfy the Michigan Court Rules of Service options available to the Plaintiff and in compliance with Michigan Compiled Law, and for the reasons herein to grant the emergency hearing.


Thank you for your time in this matter.


_Derrick LeeC Smith_                                    9-21-24
Mr. Derrick Lee Cardelle-Smith
#267009
Plaintiff in Pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444


RECEIVED
OCT - 2 2024
BY:

1.

BRIEF IN SUPPORT
PLAINTIFFS MOTION FOR RECONSIDERATION OF THE COURTS
ORDER TO SET ASIDE DEFAULT JUDGMENT BASED ON SERVICE
BEING MADE AND SATISFIED UNDER
MCR 2.105(B)(1)(b) (4)(a)(b)

On September 9, 2024 this Court enter an order granting Plaintiffs Default Judgment against the Defendant Sean Combs for His Failure to Timely file a response or answer.

The Defendant, By way of Counsel, the filed an Emergency Motion to Set the Default Judgment Aside by claiming that (1) The Defendant was not served under Restricted Delivery according to MCR 2.105(A)(2).

On September 18, 2024, this Court Granted the Defendants Motion to set the Default Entry and Default Judgment Aside based on the restricted Delivery Argument.

The Court did agree and the defendant did agree that the Plaintiff followed the Certified Mail Rules and Return Receipt Rules in its hearing a decision.

Plaintiff Now seeks to have that Decision Vacated and the Original Judgment Reinstated because of the Fact that the Plaintiff has in fact and did in fact Satisfy MCR 2.105(B)(1)(b)(4)(b) and therefore, has satisfied the Service Requirement that is listed and cited herein below in the arguments for Reinstating the Original Judgment that this Court Did enter and now argues as follows below.

ARGUMENT:

1. MCR 2.105(B)(1)(b) and (4)(a)(b) states the following:
   **Service of process may be made** (1) on a non-resident individual, by (b) Sending a Summons and copy of the Complaint by REGISTERED MAIL addressed to the defendant at his or her last known address;
   (4) on an individual doing business under an assumed name by (a) serving a summons and copy of the complaint on the person in charge of an office or business establishment of the individual, and (b) sending a summons and copy of the complaint by REGISTERED MAIL addressed to the individual at his or her usual residence or last known address."

2. Plaintiff submitts this court that the Certified Mail and the Copy of the Summons and Complaint have fully complied with the Provisions identified above and that since the said Court Rules have both been satisfied as the Defendants Counsel David Fink has in fact said that "Certified Mail was made" See record of Testimony by David Fink from the Courts 9-16, 2024 and 9-18-24 hearings and this courts own ruling confirming said Certified mail having been made.

3. The Court has erroneously set it the Default Entry and default Judgment Aside because it was led to believe that the Only Available Means of Service was MCR 2.105(A)(1)(2).. This is not the only way that the Plaintiff was allowed to serve the defendants and it is in fact, this plaintiffs claim and assertion that the Service of Certified Mail has been Satisfied and Fully Complied with by the Plaintiff to the Court and that the Plaintiff was completely entitled to the Default Entry and Default Judgment and it has been incorrectly taken from this Plaintiff by the Defendants Misleading the Court and omitting the entire court rule process.

2.

4. Plaintiff states that MCR 2.105(A)(1)(2) says that 'Process MAY be served on a resident or non-resident individual by (1) delivering a summons and copy of the complaint to the defendant personally, or, (2) sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail. A Copy of the Return Receipt signed by the defendant must be attached to proof of service under Subrule (A)(2)."

5. The Court was under the belief that the Only Method of Service was the one articulated by the Defendants of MCR 2.105(A)(1)(2) and the requirement of Restricted Delivery, and that is only 1 method of the ways of service to be done and the Defendants presented it that way, and in doing so, mislead the Court deliberately omitting the other methods of service available to this Plaintiff for service and that is the certified mail method to his residence that does not require Restricted Delivery and there is clear case law that has been allowed and conducted in the State of Michigan where Certified Mail only on defendant has been and is recognized by the Courts in which cases were allowed to proceed and were settled in the said courts and certified mail only service should be allowed to be what is necessary and sole for the granting of the reinstatement of the judgment by default because Service was made.

6. Plaintiff effected service upon Defendant Combs at a and the person in charge of his office and business establishment of Mr. Combs at his last known address that he has acknowledged in the Courts 9-16-24 and 9-18-24 hearings before this Court. Defendant combs was and continued to do business there at the time under the Assumed name of "Love" and "Diddy" while conducting his business at the location of his home that was served in L.A. and as that it was done by way of Certified Mail, a Certified Mail claim that the Defendant Have Acknowledged completely shows and supports that the methods of Service have in fact been made as were options allowed to be granted to this Plaintiff and Methods of service allowed under the Rest of MCR 2.105.

7. Plaintiff submits to this Court that the Court was cleverly manipulated by the Defendants Attorney David Fink on September 16, 2024 and September 18, 2024 when it Concealed and Omitted the Other Provisions of MCR 2.105 which allows the Plaintiff to use SUBSTITUTED SERVICE as detailed under MCR 2.105 (B)(1)(b)(4) which allowed this service upon the Defendants by certified mail and as the court is clearly aware, the Plaintiff did in fact use certified mail and admitted to it and did not utilize the Restricted Delivery Option Because it is Not a Requirement, and it is only an option and the Plaintiff exercised the Other Options for Substituted Service which was allowed under the Law, however the Defendants have chosen to not allow this method to be used, and in doing so, manipulated this Court and deceived this Court by this Fraudulent Action and Intentionally Deliberate Omission and failure to notify this Court of this option and it was done to remove the Judgment that this Plaintiff was entitled to, but removed of when the Defendants Lied to this Court and Kept this information from the Court, resulting in a Serious Violation of this Plaintiffs Constitutional Rights requiring correction of it and reinstatement of the Default Entry and Default Judgment entered by this Court in favor of the Plaintiff.

8. The Defendants, intentionally, deliberately, knowingly, cleverly, maliciously lied to this court when it said that the Only manner of service available to the Plaintiff was restricted and in doing so, they interfered

3-

with this courts Lawfully Entered Orders and completely violated this Plaintiffs Constitutional Rights by committing a Deliberate omission of facts and true statements of what the entire Michigan Court Rule is and what it says, thereby prejudicing this Plaintiff who was entitled to the Judgment that this Court entered on September 9, 2024 and was stolen from this Plaintiff by David Fink on September 18, 2024 when the law and court rule was and is on this Plaintiffs side in every facet imaginable rendering this court being duped by the Defendants Counsel of Record....It should not be any Surprise that this kind of action has been taken by the Defendants Attorney David Fink in the past, he has been accused of supporting Attorneys that Lie and Present False Information to courts such as, the Attorneys for Donald Trump when they claims in Court Filings that the 2020 election was stolen and they peddled nonsense on so many areas...Mr. Fink has publicly supported their claims and represented them time to time as well, only to find out that they were in fact lying in Michigan Courts, and that they were in fact disbarred and fined and not allowed to do any more actions, and Mr. Fink was near and at the center of these lies told by the lawyers for Trump in 2020, and it is a matter of record... So it is not surprising that David Fink has left out information regarding this court rule and manner of service allowed under the laws of the State of Michigan to support their own claims and that is a complete deviation from what Lawyers are required to do and they were required to provide this court all facts and all provisions of the Court Rule and they failed to do so and as such, have broken the laws of the State of Michigan and Michigan Rules of Court and the decision should be reversed and the Judgment reinstated back on the record.

9. Plaintiff submits to this Court that the Defendants have Violated MCL 449.1105(a)(2) and GCR 1963 195 and GCR 1963, 1061 which this Plaintiff has fully complied with as related to the 2011 Amendment of MCR 2.105 and the Amendments of this Court Rule in its entirety.

CLOSING ARGUMENT, as that the Plaintiff has in fact used the Method Of Service Allowed by MCR 2.105 (B)(1)(b) and (4)(a)(b), that the Default Judgment should be reinstated and that the order that was in place on September 9, 2024 and all of its provisions should be reinstated and placed back on the record, because Plaintiff has in fact satisfied the Requirements of the Appropriate Rules of Court regarding the Certified Mail-Registered Mail and Return Receipt Requested to this Court and it should be granted immediately and this emergency motion should be allowed to be heard immediately and without any delay on the date listed within.

The Defendants have employed clear and deliberate omissions from the court in their emergency motions to set aside the default judgment and dissolving the TRO and in it, leaving out critical facts of MCR 2.105.
RELIEF REQUESTED
    Wherefore, Plaintiff prays this Court will enter an order to GRANT REINSTATEMENT OF THE DEFAULT JUDGMENT based on MCr 2.105(B)(1)(b)(4)(a)(b) satisfying the Rules of Service Process for Default Judgment against the Defendant and All orders originally imposed are to stand with the Reinstatement of Said Order and Motion being Granted, and grant any further relief this court deems necessary.

                                                                    9-21-24

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

4