UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DERRICK LEE CARDELLO-SMITH,#267009,
   Plaintiff,

Case No 2:24-12647

Vs

Hon. Judith Levy

SEAN COMBS,
   Defendant,
_____/

**F I L E D**
DEC 10 2024
CLERK'S OFFICE
DETROIT

### PLAINTIFFS CORRECTED, UPDATED AND TIMELY COPY
### OF THE PLAINTIFFS ANSWERS TO DEFENDANTS
### 4MOTION TO DISMISS WITH BRIEF IN SUPPORT
### 230 PAGES OF SUPPORTING CASES LAW, AND DOCUMENTS
### PROOF OF SERVICE

   i swear and declare that on 11-27, 2024 I mailed one copy o of the enclosed pleadings to the Defendants Attorney of Record, Mr. David Fink-38500 Woodward Avenue, Bloomfield Hills,MI 48304 by First Class Mail and this being done in Muskegon, MI 49444


Thank you./

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MIBHIGAN
SOUTHERN DIVISION


DERRICK LEE CARDELLO-SMITH,
    Plaintiff,

                           Case No 2:24-12647
**Vs**                        HONORABLE JUDITH LEVY
SEAN COMBS
    Defendant,

_____/

PLAINTIFFS CORRECT AND UPDATED COPY
OF THE
PLAINTIFFS ANSWER TO THE DEFENDANT'S MOTION TO DISMISS
[AND BRIEF IN SUPPORT]


    Plaintiff, acting Pro Per hereby files this Answer to the Defendants Motion to Dismiss with Brief in support and Asks this Court to **NOT GRANT DISMISSAL WITH PREJUDICE** because the Plaintiff can FULLY SUPPORT AND OVERCOME THE STATUTE OF LIMITATIONS REQUIREMENT CONTRARY TO THE DEFENDANTS CLAIM and Object to the Dismissal of all claims based on Plaintiff in Fact being able to STATE A CLAIM(s) UPON WHICH RELIEF CAN BE AND MUST GE GRANTED and Most importantly, **BECAUSE THE DEFENDANT SEAN COMBS-P.DIDDY-PUFF DADDY LURED, DRUGGED SEXUALLY ASSAULTED THE PLAINTIFF** and DEFENDANTS ACKNOWLEDGMENT THAT SERVICE HAS BEEN MADE BASED ON THEIR GROUND FOR REMOVAL and ADMISSIONS TO SERVICE ON SEPTEMBER 9, 2024, and most importantly, the Plaintiff states that Federal rules of Civil procedure 12(b)(5) and 12(b)(6) do not apply for dismissal on the grounds of all claims cited by the Defendants Attorneys because the defendant has committed acts that are of a "CONTINUING VIOLATIONS DOCTRINE" and "EMERGING DOCTRINE" and "THREATS TO MURDER PLAINTIFFS FAMILY AND FRIEND IF PLAINTIFF FILED A REPORT OR

1.

LAWSUIT ON HIS RAPING THE PLAINTIFF" AND "PLAINTIFF BELIEVING
THAT IF HE FILED A REPORT OR LAWSUIT OR TOOK FURTHER ACTION,
PLAINTIFF WOULD BE AIDING AND ABBETTING IN THE DEATHS OF HIS
FAMILY AND FRIENDS BY DEFENDANT AND HIS ASSOCIATES"  where the
following has occurred as detailed within the Brief in Support.


Thank you for your time in this.

November 25, 2024

Mr. Derrick Lee Cardello-Smith
#267009
Plaintiff in Pro Per
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

2.

## PLAINTIFFS ANSWERS TO THE DEFENDANTS
### 3 STATEMENTS OF THE ISSUES PRESENTED

1. The Claims Against the Defendants Should Not Be dismissed because the Statute of Limitations has in fact been tolled, and are not time barred.

2. The Claims against Defendant should NOT BE DISMISSED FOR LACK OF PROPER SERVICE BECAUSE Defendants did in fact acknowledge serve of the Summons and the Lawsuit because it is in fact their own statement acknowledging that hey know about the lawsuit from NATIONWIDE MEDIA OUTBREAKS AND RELEASES and they have stated that 'WITHIN 30 DAYS OF SERVICE THEY CAN REMOVE IT TO FEDERAL COURT, and they have acknowledged that they were served on September 9, 2024 and that they moved within 30 days of their being served, See (DEFENDANTS NOTICE OF REMOVAL OF OCTOBER 7, 2024) and their own acknowledgment) So, since this court has already denied this Plaintiffs Motions to Remand and have acknowledged that the Defendants Have filed a Timely notice of Removal within 30 days of Service, the issue of Service cannot be relied upon now by the Defendant, and they cannot have it both ways, as they are trying to do in their motion to dismiss.

3. The Claims against Defendant ARE VERY PLAUSIBLE ON THEIR FACE AND SHOULD NOT BE DISMISSED because they Happened, and are Real and their Client is in fact a Rapist and is in fact a thief who stole money from this Plaintiff who invested the money into his company and then the Defendant Raped Plaintiff and covered it up with his associates, and Plaintiff has PROOF OF IT HAVING TAKEN PLACE and that it should be ALLOWED TO PROCEED AND NOT DISMISSED And as such, the answer to all three of the issues presented is in fact NO.

Defendant Sean Combs Drugged, Attacked and Violently Sexually Assaulted the Plaintiff in June 1997, by Placing his Erect Penis into this Plaintiffs Rectum and Violating this Plaintiff with his penis until he was Sexually Satisfied that he had 'Broken The Plaintiff" and "Broke a Man" and "Owned me". Plaintiff can State a Claim on these claims and Most importantly, will state the claims, B. Plaintiff can survive the Statute of Limitations due to equitable Tolling where the Defendant and his Associates had Threatened to Murder the Plaintiff, Plaintiffs Family, plaintiffs Friends, Co-Investors into Bad Boy Records Label, if the Plaintiff had ever "FILED A REPORT, OR A LAWSUIT AGAINST THE DEFENDANT.", C. Plaintiff can demonstrate EXTRAORDINARY AND EXCEPTIONAL CIRCUMSTANCES TO THE STATUE OF LIMITATIONS BEING TOLLED had the Plaintiff waited any longer to file the Personal injury Claim or take any action whatsoever on the record, as will be demonstrated and proven in the brief in Support and already on the court record, through affidavits, and D. DEFENDANT SEAN COMBS IS A VIOLENT, NARCISSISTIC, ASSAULTIVE, DECEPTIVE, MAILIPULATIVE, EXTORTIONIST, THIEF, BREACH OF CONTRACTOR, SADISTIC, TERRIBLE HUMAN BEING, who takes advantage of his Fame and name to get People, especially Young Black men to invest in his Company and give money to him at rates of minimum deposits of $150,000.00 (One hundred-fifty thousand Dollars) in exchange for interest in his Company, Bad Boy Records) and then rob the Young men, and then Rape them, and work with other to Cover-up the Crimes he committed and then walk away scott free, E. Defendant Sean Combs is a Fake Gangster Hiding behind his Money and His lawyers and most importantly, his Enforcers, who knows that he has committed MULTIPLE ACTS OF FRAUD AND IT HAS BEEN AN ONGOING THING, HIS FRAUD IS ETERNAL AND HIS ENTIRE EMPIRE WAS BUILT ON RAPE, TORTURE, BEING A FAKE GANSTER, RAPIST, BRUTAL POWER HUNGRY, GREEDY, MILLIONAIRE, AND QUITE SIMPLY, HE IS NOT A MAN, A MAN DOES NOT DO THOSE THINGS AND HE IS CERTAINLY NOT A MAN, HE IS WEAK, A COWARD, A PUNK, SOFT, WEAK, NOTHING, HE IS A

DECEPTIVE, TERRIBLE HUMAN BEING AND HE RAPED ME, AND DID SO BECAUSE I WAS "GETTING THE ATTENTION OF THE WOMEN THERE AND I WAS SATISFYING THEM SEXUALLY AND PAYING ATTENTION TO THEM AND JUST BEING A GOOD MAN, WHICH IS NOT WHAT HE HAS EVER BEEN, JUST A MAN TAKING CARE OF THE WOMEN AND HE DID NOT LIKE IT, SO HE RAPED ME AND BROKE ME AS HE SAID." Fraudster, a Liar, and most importantly, he is a SERIAL RAPIST OF MEN, WOMEN AND CHILDREN and DID RAPE ME, THE PLAINTIFF When I trusted him and I was captivated by his fame and notoriety, and being a HUGE FAN, F. Defendant Used threats of Murder to Force the Plaintiff to not Bring the Case to any Court of Law Enforcement, until the Homes of the Defendant were raided by Homeland Security, that the Plaintiff knew it was a safe time to bring the case, and that is now why we are here at this Juncture, and Plaintiff answers in the Following Brief in Support to the Defendants Motion to Dismiss.

Thank you for your time in this Matter.

                                                    11-25-24


_____

Mr. Derrick Lee Cardello-Smith
Pro Se Plaintiff
#267009
E-C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

ARGUMENTS: Plaintiff entirely REJECTS the Defendants Motion to Dismiss and Plaintiff entire denies the claims presented by lawyers who are only out to Make Money and Aid their client in Committing vast rapes and deny Justice to the Plaintiff in a field where So Many Men and Woman have come out and said that they were raped and drugged and assaulted by their client Sean Combs, and to hide behind a 'Statute of Limitations" which is Tolled by their Clients Own Actions, is superbly incredible, unethical, illegal, immoral and just plain wrong and the Law Offices of Fink Bressack and SherTremont . Erica Wolff are terrible for aiding with the rape that has taken place upon this Plaintiff and Other Crimes that the Defendant Sean Combs has committed upon this Plaintiff is incredible and most certainly should be worthy of some kind or review for Disbarment proceedings before the Attorney Discipline Board and Attorney Grievance Commission here in Michigan and in New York, because their actions and claims are deplorable and are ABSOLUTELY ALLOWING THEIR CLIENTS RAPE OF THIS PLAINTIFF TO TAKE PLACE and the Multiple Other Injuries that their client has done to be allowed to continue and it is terrible because they are Hiding Behind their law Licenses to do these deplorable acts and one can only say that for them to Defend a Rapist, Thief, Fraud, Manipulator, Extortionist, Sadist, Fake Ganster such as Sean Combs, and get a paycheck for it and do it with a Straight Face and then sleep at night, well, it make them Just as worse as their client and it is deplorable.....and I REJECT EVERY SINGLE WORD THEY HAVE SAID AND EVERY STATEMENT THEY HAVE MADE IN THEIR MOTION TO DISMISS because they are liars and just wrong and misusing the laws to lie to this court and make help Mr. Sean Combs get away with his Rape that he committed and that is just terrible on their parts equally and in fact, it is something that this court should not allow to happen as that their client raped me and their client took money from me years ago and hid behind his lawyers, crew, employees and money for decades, and most importantly, he had is friends, Employees and 'Soldiers"

6.

Threaten to Kill my family, my friends and other if I so much
as PURSUED ANY LEGAL ACTION AGAINST HIM OR HIS EMPIRE and that
is proven by the many affidavits that are on the record, and
Plaintiff now provides this Court with the arguments as to why
the Court Should Deny the Defendants Motion to Dismiss and
allow this matter to proceed to trial.

Plaintiff will make the arguments numerically and in
categories since the Plaintiff is a prisoner who was a
civilian when the Rape Occurred and Stay Silent through Force
and Intimidation for Decades until Homeland Security Raided
the Defendants Homes in March 2024 making it safe for the
Plaintiff to bring the Personal Injury Lawsuit.

**ARGUMENTS WHY STATUTE OF LIMITATIONS DO NOT APPLY TO THIS
CLAIM:** Plaintiff hereby states that the Following are grounds
as to why the Statute of Limitations Do not apply to this case
and why the Claims are Tolled and Equitably Tolled for this
Claim and Action to Proceed against the Defendant Sean Combs.

1. the Defendants have made an Affirmative Defense, and the
Lapse of a Limitations period is an affirmative defense that a
defendant must plead and prove, and because the defendants
bear the burden of establishing the expiration of the statute
of limitations as such, it must be proven to have run, and the
Plaintiff states that the defendants have failed to prove that
they have run--See **Doe Davis v. Jackson United States District
court for the Southern District of new York, case no 15-cv-
5339 decided 9-30-2016)** page 5 of 12--(attached).

2. Plaintiff states that the Defendant cannot show that it
has run and therefore, this case must be allowed to proceed,
because their affirmative defense hinges upon NOTHING
INTERFERING WITH OR PREVENTING THE PLAINTIFF FROM FILING THE
PERSONAL-INJURY CLAIM" and that is not the case in this matter
before the Court.

<u>PLAINTIFFS EQUITABLE TOLLING ARGUMENT</u>--Plaintiff states that the Equitable Tolling Argument based on the 2 Prongs needed to establish the **2 Prongs of Equitable Tolling are met by this plaintiff as follows:**

A. FEAR OF RETALIATION AND EXTRAORDINARY CIRCUMSTANCES FOR PURPOSES OF EQUITABLE TOLLING WHERE PLAINTIFF CAN ALLEGE SPECIFIC FACTS SHOWING THAT A REASONABLE FEAR OF RETALIATION PREVENTED PLAINTIFF FROM FILING A TIMELY COMPLAINT, and,

B. PLAINTIFF HAS SHOWN THAT HE EXERCISED REASONABLE DILIGENCE DURING THE TIME THAT HE FELT THREATENED BY DEFENDANT AND HIS AGENTS AND OFFICIALS ACTING ON HIS BEHALF.

Plaintiff can and will meet these prongs clearly and with evidence to allow this Matter to proceed to Trial on the claims presented within it.

Plaintiff states that he felt Complete Fear of not only being retaliated against by the Defendant, but also by the Defendants Associates and Other high ranking Officials Proven to have been capable of Murder, Torture, Destruction and Extermination of Anyone if the Plaintiff went through with the Charges of Anything Criminal or Civil and those factors are--

1. Defendant Sean Combs is capable of Murder.

2. Defendant Can have This Plaintiffs Family Killed.

3. Defendant and his associates are very serious about their actions.

4. Defendant had Tupac Shakur Killed (Se Police Report of Officer Patrick Jackman) Attached.

5. Defendant threatened to have the Plaintiffs family killed--See Attached Agreement between Plaintiff and Defendant on the Night of the Rape with witnesses.)

6. Defendant combs had his Employees and his Connections in the MDOC Threaten to kill the Plaintiff if the Plaintiff ever filed any report--See attached Affidavit of Joseph Ambrose)

8.

this verifies what life has been like for this Plaintiff on the inside thanks to the Defendant and his allies...

7. Defendant had a fellow Investor into Bad Boy records in 1997 Threatened to be Killed if 'the Plaintiff filed any kind of report or legal action--See (Affidavits of George Preston) as proof of these actions.

8. Defendant and his Allies, Goons, Bros, soldiers, Fellows and other members of the People named inside of Joseph Ambrose' Affidavit confronted this Plaintiff many many times from 1998 through 2024 threatening this Plaintiff to NOT BRING ANY REPORT, LAWSUIT OR PERSONAL INJURY CLAIM AGAINST SEAN COMBS, OR THE PLAINTIFFS FAMILY, FRIEND AND THEIR FAMILY WOULD BE KILLED--See Attached Affidavits of such.

9. Plaintiff feared States that I believed that my family and friends would be killed by their client and that their client would have his people kill my family and friends if he wanted it to be done and if he wanted them dead so I could not file any charge until he was Safely watched and When Homeland Security Stated that they were in Fact Searching his Homes in March 2024, I knew that it was the safest time table I would ever be given, and I had many different reasons why I could not bring the lawsuit and it was to Protect my family and friends.

10. As a prisoner, I cannot be held to the same Standard of Tolling and Statutes of Limitations because **I AM SITUATED DIFFERENTLY THEN A REGULAR CIVILIAN AND PERSON and since I am different from regular plaintiffs filing lawsuits from prison, I cannot be expected to adhere to the same rules as a More Less Controlled Society**.

11. The Situation of me being a prisoner is already understood and accepted by the Courts because the Free World Situation is different where "Nowhere in our society is more forceful and sustained control over persons exercised then in its prisons....' Craig Haney...See **Walker F. 3d at 564 quoting**

9.

<u>Smaldone, 273 F. 3d at 136</u>--<u>Davis v.Jackson</u>.

12. Michigan Law Prohibits any person with Committing an
Act of Murder, first degree Murder MCL 750.316, second Degree
Murder MCL 750.317, and it prohibits any Aiding or Abetting a
Murder or a Crime 750.450 and MCL 767.39, MCL 767.67, or MCL
750.505 all prohibit any person from committing these types of
crimes, it is very simple--See Attached MCL's which this court
knows from being a Sitting Judge.--If Plaintiff ever acted on
the Lawsuit at any time PRIOR TO HOMELAND SECURITY AND THE
FEDERAL GOVERNMENT RAIDING THE HOMES OF THE DEFENDANT AND
GETTING INVOLVED IN THIS MATTER, THEN THE PLAINTIFF WOULD HAVE
BEEN PARTICIPATING IN, AIDING IN, ALLOWING, CAUSING,
INITIATING, AND RESULTING IN THE DEATH OF HIS FAMILY, FRIENDS,
INVESTORS, THEIR FAMILY AND THE PLAINTIFFS OWN DEATH, and that
is why the Plaintiff feared ever bringing this case before a
Power Force Such as the Federal Government got involved in it
and it was done to PROTECT THE PLAINTIFFS FAMILY, FRIENDS AND
PLAINTIFF HIMSELF, and that itself should toll this matter
completely and it is PROVEN BY THE AFFIDAVITS AND POLICE
REPORTS NOT PROVIDED TO THIS PLAINTIFF UNTIL YEARS LATER...

13. Plaintiff states that on Many different instances,
Inmates that are members of the 'DETROIT DIDDY BOYS", BAD BOY
STREET POSSE" BLUE KNIGHTS (BAD BOYS DETROIT POLICE CONNECTION
MEMBERS) and "DIDDY DEATH DONS" very clearly came to this
Plaintiff between 1998 and 2024 and Threaten the very Life of
the Plaintiff, the Plaintiffs Family and friends over the
years and Stated that 'PUFF DADDY, P. DIDDY SAID THAT YOU HAD
BEET NOT FILE ANYTHING ABOUT THAT RAPE OF THE MONEY I GOT FROM
YOU, IF YOU DO, I WILL KEEP YOUR FAMILY! I WILL KILL YOUR
FRIENDS" Plaintiff states that his Business Partner and
Friend George Present even stated that over the years, many
men came to him and placed guns to his head and threatened to
kill him many many times if 'Derrick Lee Cardello-Smith made
or filed any report of lawsuit about him raping me or the

money we invested in 1997". See the Affidavits of George
Preston.

14. Plaintiff states that the Exceptional circumstance is
met in this case because Plaintiff has Directly sued Sean
Combs and this is a Very Power Man and Plaintiff Sued him from
Prison, which makes it very different and RARE FROM ANY OTHER
LAWSUIT BROUGHT AGAINST DEFENDANT SEAN COMBS, and the
plaintiff states that even if a Plaintiffs claims are
untimely, under the relevant statute of limitations, they may
still be brought if they meet the standards for equitable
tolling, **See Zappone 870 F.3d at 556, see also Doe v. United
States, 76 F.4th 64.71(2nd Cir. 2023)**

Under Federal law...the Accrual of FTCA and Bivens may be
subject to equitable tolling..In General your honor, equitable
tolling is available "When a Litigants failure to meet a
legally mandated deadline unavoidably arose from circumstances
**BEYOND THE LITIGANTS CONTROL."ld** However, equitable tolling is
available only in 'rare and exceptional Circumstances" **Duran
v. Birkett 208 F.3d 213 at 2**(6th Circuit 2000). The Plaintiff
bears the heavy Burden of showing he is entitled to equitable
tolling and plaintiff can show that and and has shown that
these matters are collaterally estopped.

This is proven your honor, by the Plaintiff stating that The
Defendant has been operating freely with his power based,
empire, goons, soldiers, employees in and out of law
enforcement, and in and out of prison since the Time when the
Plaintiff first met him in 1997 and then until March 2024, and
plaintiff had no reason to believe that he would ever stop
operating the way that he has been for so long, and never had
a reason to file it timely and as such, the Plaintiff never
could file it because Plaintiff believed that his filing of
the report would have resulted in the deaths of many people
connected to the plaintiff who was and is more then capable of
it, until March 2024 when the Federal Government got Involved

and that alone makes it a rare and exceptional circumstances, because the Plaintiff is a prisoner and Plaintiff also knows that the laws are against this Plaintiff committing any acts of murder or having someone killed and if Plaintiff had acted on these events prior to March 2024, Plaintiff would have been responsible for the Deaths of Other People, Family and Friends and had no control over this matter until the Homeland Security Department got Involved in it, and that itself waives the Statute of Limitations and gives this Plaintiff the equitable tolling needed as detailed within these arguments.

15. Plaintiff believed his friends and family would be killed as that they had very first hand knowledge of having been threatened and Witness George Preston has Attested to these threats having been made against him over an extensive period of time from 1998 through 2024 and it is proven and clearly detailed in the Notarized Affidavits and it must be taken as true and real and the Requirements of Zappone, Bivens, Werseh v. city of Detroit, David V. Jackson must be taken and held as true because they are true and real and happened, and it must be allowed to told these statutes of limitations brought by the defendants attorney's who would rather have allowed the Lives of the Plaintiffs family and Friends to be taken, then to allow the Timeliness of the Claims to be brought, and that act alone details their lack of ethics and disregard for the law and they should be ashamed of themselves on many levels, but never the less, the Plaintiff has made the Showing of the First Prong with these factors listed and must be allowed to have this Matter proceed and the Equitable Tolling of the Statute of Limitations to be granted in favor of The Plaintiff because Defendant Sean combs is a Murderer, Rapist and Thief and should not be allowed to have this case dismissed when a rare and Exceptional case has been made to Grant equitable Tolling.

16.  under the "EMERGING DOCTRINE" claim, there is a provision which finds that 'When a Prisoner fears retaliation of has a legitimate fear of retaliation for exercising their rights, EQUITABLE TOLLING MUST BE CONSIDERED--Bivens Court, also see Davis V. jackson, no 15-cv-5359 2016--Plaintiff has shown that there is a CLEARLY EMERGING DOCTRINE that can be applied to this matter and equitable tolling must be applied to this case because it fits this case completely..

17.  Plaintiff also states that there have been numerous corrections officers who have threatened the Plaintiff on behalf of the Defendant Sean Combs, and I Adopt by complete reference the Names Detailed in the Affidavit of Joseph Ambrose #185357 as proof (Section d) which lists all the names of the officers that have threatened the Plaintiff WHILE ACTING ON BEHALF OF THE DEFENDANT SEAN COMBS.....and as such, these government officials were paid and influenced by the defendant Sean Combs and the Fear of retaliation was there and has always been there and that is why the Lawsuit was Never filed on the time limit that it should have been filed, BECAUSE OF FEAR OF RETALIATION by the Defendant and Agents acting on the defendant Sean Combs Behalf, and this meets the EXCEPTIONAL CIRCUMSTANCES DOCTRINE.

18.  Plaintiff Further States that there was Not a Complete and Present cause of Action UNTIL THE DEFENDANT WAS RAIDED BY HOMELAND SECURITY and then and only then did the action become complete in march 2024 when the plaintiff could feel safe to file the lawsuit. and the injury committed upon this Plaintiff by the defendant formed the basis of the lawsuit and claim. 659 Fed. Appx 830 (6th Circuit) 2014 Mich App Led 2183---and WERSHE V. CITY OF DETROIT--See Attached Case--

19.  plaintiff states further that Congress has not stated that Michigan Statute States that Limit is Jurisdictional and as such, it is very clearly detailed that in order for the

issue of Jurisdiction to be dealt with by the Statute of
Limitations, it must be enough to exceed a Federal Law if the
facts are Sufficient and at this time, the defendants have not
raised anything worthy of deeming the Fears of Retaliation and
Requiring the Plaintiff to Commit Crimes as being,
Jurisdictional in their Affirmative Defense, and Congress has
never addressed this issue of a "Prisoner and a Me Music Mogul
Sex Assault for Personal injury--<u>See Boechler P.C. v.
Commissioner of Internal Revenue Service 2022 WL 1177496 U.S.
Decided April 21, 2022</u> holding that 'Federal time Limit is
Jurisdictional Only if Congress Says that it is" and as stated
before, congress has not Stated in 'Michigan Statutes" if the
Limit is Jurisdictional or Not to Exceed Federal Law if the
facts are sufficient" and the Defendants have not claims that
either and their failure to do so, has in fact abandoned this
claim in their Affirmative Defense.

20. Plaintiff states that the Court cannot authorize a
dismissal of these claims because to do so, would mean that
the Plaintiff was time barred because THE PLAINTIFF DID NOT
WANT TO TAKE ANY ACTION THAT COULD HAVE RESULTED IN THE DEATH
OR DANGER OF HIS FAMILY, FRIENDS OR THEIR FAMILY BY FILING
THIS REPORT UNTIL AFTER HOMELAND SECURITY GOT INVOLVED and if
this Court does Grant Dismissal of this Claim, then it would
be Instructing the Defendants of Any Sexual Assault Claim
brought by a Plaintiff to Simply Threaten to Kill the Victims
Family members and then they would be able to get away with it
and that is most certainly this Court Condoning and
authorizing Murder, or the commission of any crimes that the
Victims would be subjecting themselves of their families to,
especially by the likes of Sean Combs, and that most certainly
is not what this Court can be allowed to be saying and if this
Court does allow the Defendants Motion to Dismiss to stand,
then, it will be authorizing Victims to Allow their families
to be killed and that cannot be what this court or our justice
system if about, and this Court must allow this Plaintiffs

Fear of Retaliation, Fear of being murdered, fear of Family and Friends family being murdered to happen and it is what would have happened had this Plaintiff filed the action Before the Homeland Security and Federal government Raided Defendants Combs Properties back in March 2024.

21. Plaintiff states that i feared for my Family and Friends Safety and Well-being every single day since 1997 and while in prison and that fear was only reduced when the Defendants was watched by Homeland Security and other Federal Agencies and this was made public.

22. Plaintiff states that the Defendant himself visits this Defendant multiple times and his agents visited this Plaintiff many times as proven by the Visitor List provided to this Court by the Plaintiff and by the defendants themselves and the Videos will show it....

23. Plaintiff states that the defendants will say that the "Visitor Logs" they submitted show that Plaintiff never was visited by the Defendant Sean Combs--Well, their document is clearly a forgery because if the court looks at the "Time in and Time Out" it will see that They never logged in a time at all, Showing that it is clearly a forgery and An expert can attest to that being a forgery because noone is going to come into a prison and then not be logged in or out, it does not happen, showing that it is a clear forgery--And these are the people that have said that my police reports submitted by me from the Detroit Police Department are forgeries when they themselves have forged documents completely and then passed them off as true, Your Honor, Just look at it, and you will see yourself...

24. I feared for my safety and security until Sean Combs Came under Federal Watching and then I knew I could file this matter...

25. Defendant Sean Combs and his Semen and other Bodily Fluids are in a Rape Kit that is in the possession of the Michigan Department of Corrections after it has been provided to this office by the Wayne County Prosecutor Kym Worthy and it was logged into the facility and the Michigan State Police have had it too since it was tested in April 2024 and the identifying of Sean Combs as that person shows that the time line and cover-up by the Other Government officials in Detroit aided into the fear of retaliation by Sean Combs and it must be considered and when it is delivered to this Court it will clearly show the claims of this Plaintiff are true and that is why this Prong has been met.

26. The Defendant, Sean Combs, His Former Counsel, Benjamin Brafmin, Bryan Beadle Jr, who one of Defendants Main agents in Concho, Arizone had himself Spoke to this Plaintiff Visits and directly told this Plaintiff, that the "Plaintiff had better not File Any reports to onSean Combs and His raping this Plaintiff, or the Plaintiff would be killed, and Plaintiff had no choice except to ensure that he followed these instructions of the Defendants agents or the Plaintiff would be killed or Plaintiffs Family would be killed.

27. **THE VERY SPECIFIC THREATS MADE AGAINST PLAINTIFF BY OFFICERS ON BEHALF OF DEFENDANT SEAN COMBS** Plaintiff states that During the TIme Periods of 1998 through 2024, MDOC Officers Nalette, cairnes, Jason Brokc, Sablowski, David Lalonde, Nick Curley, DanielMiller, Smoker, Caruty, Green, Clark Sgt. Leone, Robinson, Goostrey, Plichta, Bridgewater, Brown, Alford, King, Fager, K. Miller, had each at different times throughout my period of being at Facilities with them individually had Warned me that "If I said anything about what Sean Combs had done to me in 1997, that My family would be Killed and my Friends would be hurt and that they had received Information about it and had warned me about it, and that they may or many not be directly involved in anything happening to me, my friends or our families." I have had every single reason to believe that these threats were credible and that if

I ever decided to file the charges, then I would be destroyed and my family would be destroyed.

28. **SPECIFIC THREATS AGAINST PLAINTIFF BY DEFENDANT SEAN COMBS ON AUGUST 28, 2024** --- During a Visit with the Plaintiff and Defendant Sean Combs **On August 28, 2007**, He directly stated to me in the Visiting Room at the Jackon Cooper Street Facility, in Jackson, MI, The Defendant, and his Lawyer Benjamin Brafmin, both present, in front of other witnesses came directly and we discussed my Investment and my status with bad boy Record Label and I was wanting my money and I was still shaking and having flash backs of that night and wanted to hurt Mr. Combs, and I was doing everything to not get up and run, or get up and hurt him, because I knew that I would be taken to the Segregation Department, but I wanted to be able to have him on Camera and Video of him being there with me, because Video Footage Speaks and Shows that Truth, so i stayed, and I knew that it would not end well for me if I did anything to him and it would not end well for my family if I did say anything, so i stayed there and stayed quiet and listened, and it was then that Mr. Combs said the following to me...

"What up Nigga? So, I see you have been getting my messages and your family has too, that is good and they can keep it that way by you staying quiet... I am untouchable Nigga!" I said, "What do you want from me Puffy? He said, I am just 'Checking in on that Ass!" I stayed frozen, at the thought of this....Then he said, How is your Sister Tina?" I see she is working as a Nurse! I said why would you say that? He said that "He just wanted me to know that she Looks good and that he would like to "Break her like he Broke Me!", then I said to him, What is going on with my money? He said, I got that nigga and I will give you your end of the deal, just keep your end of the deal.." I then said that there is no reason for you to be here! He said, "Nigga, I can go anywhere I want, I am

Brother Love! Then he said that Wanted to know how my brother
was doing since his Beating back in 2000" I said he is
recovering and he will be recovering for a long long time,
because 2 guys messed up his Spine and Hurt him real bad, and
he said, yeah nigga, I know because I sent those 2 guys and
told him that If Your brother Derrick files any complaint
against me in court or with the Police or if they act on it at
any level, federal or state, I will kill your Brother Next
Time" He let me know that he did it! I told him that I will
not file anything in Court, just please do not hurt my
famimly" He said, alright Nigga, keep in line, and Stay
Broken!--Then he asked me about how My Mother was doing? I
said she is fine he said, yes, she is and if you want her to
stay that way, Stay Quiet about this and do not go to the
State Police, I got cops on my Payroll nigga, I will know if
you do!---Then he got up and left the Visitor Room... This
took place in a 15 minute time span, and it is on Video and
Can be submitted to this Court for Hearing and Verification
and also, the Records will clearly show his Time in and Time
out and his Attorney too. NOT THE FAKE ONES OFFERED BY THE
DEFENDANTS ATTORNEYS OF RECORD AS EVIDENCE." Those were
Clearly Forged and DO NOT HAVE THE TIMES IN AND OUT ON THEM--
They have presented Forged Documents to this Court and the
Lower Courts and passed them off as real and that itself is a
Shame and a Crime on their part because they lied to the Court
but the MDOC's Video Logs will show it and will prove it, if
this Court deems it necessary because the MDOC Keeps that on
their 'Facility captured Film Footage System for many years
and they have Sean Combs and I on visits together! All the
Court has to do is ask for it..

29. I have been threatened by Inmates from the "Diddy Death
Dons" and 'Puff Daddy Crew' Directly telling me to NOT FILE
ANY REPORTS OR LAWSUITS AGAINST SEAN COMBS FROM 1998 through
2024 or I would be Hurt and my family would be hurt, and I
believed them, and they said that THERE ARE MANY WAYS TO HURT

A PRISONER, and they said that You have been in prison long enough to know and I knew it and I did believe them....I have been pulled aside and had fights about these types of things and I have also been forced to have many different altercations to protect myself from prisoners where as soon as I found out that they were telling me to not do anything regarding Diddy and that he sent them and that if I filed a report with the courts on Diddy, that my Family would be hurt and they would be killed and that if they can "get to me in prison" they can get to them out there on BEHALF OF MR. SEAN COMBS" So I did not file it, and only did it when Homeland Security had him in custody, so Plaintiff knew that he could in fact file reports on this matter in 2024 and did so accordingly because of these inmates that I had fights with and these fights did in fact lead this Plaintiff to become in the position of having to remain in the position of not filing and reports in the Courts because of Sean Combs actions and activities and his allies in prison, Plaintiff Submits Misconduct Reports verifying it as true and real and accurate, and It is what Plaintiff presents to this Court as proof of the Incident.

30. Plaintiff was given an Assault upon Staff Ticket in 2012 against William Alford after William Alford Assault that plaintiff with a Door by slamming it on the Plaintiffs Wrist and This then the Plaintiff William Alford said, I am going to have you moved and then he said that you had better not get Comfortable, because Puff Daddy said that you and y our family will be hurt-I was then place din segregation and William Alford had me charged with an assault on Staff ticket, but that is not what happened--.

31. Plaintiff even had an incident in January 7, 2024 in which Plaintiff and Another Inmate were fighting and the prisoners Both Opted to plead guilty and have the Ticket be written as a Class IiI Lower Level Ticket and it was

19.

discovered that the Man had came to Cardello-Smith and told
him that he is a Diddy Death Don and Cardello-Smith had better
not say anything about Diddy Raping him in 1997. these words
were heard by this Officer Directly to the Plaintiff and it is
proven by the Misconduct Report Attached.---Plaintiff submits
it as evidence of the harassment he has been subjected to over
the years...and why he remained quiet until Sean Combs was
taken into Custody over the years....

32. Plaintiff was forced to not file a Lawsuit in 2000
because of the fact that a Corrections Officer, had threatened
Plaintiff and told him to not file it, and that he had better
be quiet because Bad Boy will kill his family and that he
better not write anymore grievances on this matter.--
Plaintiff filed one against the Officer and it is attached,
his name was and is Officer Mitchell and he was the Unit 5
Block Officer at the Gus Harrison correctional Facility in
Adrian, Michigan.....See attached grievance for verification.

**PLAINTIFFS EFFORTS TO PURSUE MY RIGHTS DILIGENTLY--AS THEUS**
**SUPREME COURT REQUIRES--** I state that I have pursued my
efforts to exercise my rights diligently to bring these
threats of Defendant Comes Murdering my Family and Friends and
I did so properly and in the best way possible all to no avail
as detailed here in---

1. I filed Multiple Grievances Seeking help and assistance
in this matter for many years and I am providing this Court
with verification of those Grievances dating from 1998 through
2024, and never was able to get anything reasonably done in
this matter and I can provide this Court with more proof if it
is needed in this matter to make sure that his Court has
everything it needs, and I Submit that these grievances were
Laughed at and just simply rejected by the Prison officials in

Charge in this matter because they were most certainly Not in my Corner and have hated me for other things I have filed Against Staff over the years, but the lawsuits I filed Against Staff did not really start until 2012-2013 and so I had from 1997 through 2012 where I never filed those lawsuits against Many staff members, because those Staff member NEVER THREATENED TO KILL MY FAMILY FOR LAWSUITS THAT HAD NOTHING TO DO WITH DIDDY! If I had filed a lawsuit against Diddy, then My family and friends could have been murdered and their friends could have been murdered and those threats are real and proven, with the attached documents on record.

2. Plaintiff has had many grievances filed throughout his prison sentence and those were all rejected and even just smirked upon and some were even assigned Grievance Identifier Numbers that show they were processed by the Michigan Department of Corrections and Simply not Even allowed to go through, and when I asked for Step II Appeal forms, I was just laughed at on this Matter and the Court record and documents attached reflect it as such--se attached grievances.

3. I even sent letters to the Michigan State Police About this Rape that happened, and every time I would sent it out, they just came back as being 'Intercepted by staff---and not processed, and that is proven by the attache documents verifying it when I sent it to the Michigan state Police.-- See attached---

4. I have letters from my family members and friends that
have said that if I go through with any lawsuits against
Diddy, that he had his people out here that will hurt and kill
us and that we had better not do anything at all against them
in anyway at all---and That I had better not file any Lawsuit
because they would be hurt and as such, I had no choice except
to comply with what he said and I even let staff know about
this, but they simply did not care, as the grievances show and
support....Please View the enclosed letters from my family and
friends and you see that what I am saying is valid and true--
See attached.

5. Plaintiff states that the Defendants have made himself a
part of this Plaintiffs life for many many years and his
threats against this Plaintiffs family and friends are the
reasons why the Plaintiff never ever timely filed anything.

6. Plaintiff states that he has been prevented from ever
being able to file anything and that the defendant and
officials acting on his behalf stopped it from happening and
the defendant used so many other people to cause this
Plaintiff to not file a complaint timely as that Plaintiff
could not file it timely due to the threats of Death to his
Family and Friends lingering over the head of the Plaintiff
ever reporting the Sexual assault of the Plaintiff by the
actions Defendant.

7. Plaintiff states that through the numerous grievances
where I did decide to let them know I was raped, Mr. Bonn
himself said that he knew I was raped and he said that he owul
dnot process it and would stop anything from going to the Step
II of the grievance process and I did seek grievance Appeal
forms but I was scared and given DIRECT ORDERS TO NOT PRESS
22.

ANY RAPE CHARGES AGAINST DIDDY--See the attached grievances stating so---

8. Plaintiff could not have been more diligent with the efforts to report this and could not have beenmore deterred in this matter by Staff, Defendant, His Soldiers, His Goons, his Lackies, his Crew and so many other people acting on Behalf of the Defendant Sean Combs and as such, this Plaintiff has clearly shown that Due diligence has in fact been met in more ways then can be imagined and I have met these burdens of Due Diligence because I have been THWARTED EVERY STEP OF THE WAY and I COULD NOT HAVE MY FAMILY KILLED FILING A LAWSUIT BACK BEFORE SEAN COMBS AND HIS HOMES WERE RAIDED AND MOST IMPORTANTLY, THOSE DOCUMENTS WOULD HAVE BEEN MAD PUBLIC AND MY FAMILY WOULD HAVE DIED, WHEREAS GRIEVANCES AR NOT PUBLIC,BUT INTERNAL ADMINISTRATIVE MATTERS....But we see what happened with that reach that Sean Combs has...

9. Plaintiff states that the Court must recognize the Plaintiffs Ongoing Situation of being Scared, Threatened, and Forced to Decide upon the (1) Filing of the Complaint Prior to Sean Combs having his Homes raided by the Federal governments Office of Homeland Security for the First time since 1997, (2) Endangering the Plaintiffs Life, Plaintiffs Family, Plaintiffs Friends and their family, and having them killed by Filing a Lawsuit Prior to the raids in March 2024,, (3) not Filing it and Keeping them all safe and secure and maintaining their Personal and Bodily Integrity after having been Threatened and shown that he could kill them and would hurt them from 1997 through the time frame of his Home being raided and eventual Indictment, and (4) Simply avoiding the threat he posed to my Family and Friends and allowing it to result in their deaths... Plaintiff specifically and wisely chose Their safety and plaintiffs own physical safety, and after so many threats were made upon the Plaintiffs family and friends, Plaintiff had no choice except to wait, and did so, and that is even after taking the chances to write grievances and contact the police, and to notify staff about this problem,but it was not done, and most certainly, Plaintiff was placed in segregation

for his my own protection when I was given the Default
judgement against Sean Combs, but he of course was able to get
it foiled by having his attorneys do their dirt and get it set
back and taken to this honorable Court---

10. My diligence has been very deep and I have done everything
necessary to make sure that I am able to get the matter heard
in an appropriate amount of time and taken the steps to commit
due diligence but that I was prevented by the very person I am
maintaining this action against and it is something I am
asking that this court review and allow under said specific
acts and see that I have been duly diligent in my means to
bring my claims to this court properly and I have been dilgent
and as the court can see from the above cited factors, I have
been diligent and that diligence is met by these verified
actions detailed herein and can be shown and Plaintiff has met
the burden of showing diligence as required by **Davis v.
Jackson 751 F. 3d at 719 and that I have made REASONABLE
DILIGENCE NOT MAXIMUM DILIGENCE UNDER HOLLAND 560 US at 649**.

**THE CONTINUOUS VIOLATIONS DOCTRINE, THE EMERGING DOCTRINE,
THE UNITED STATES SUPREME COURTS HOLDING OF THE 2 FACTORS IN
HOLLAND 560 US at 649 and THE SIXTH CIRCUITS 5 FACTOR TEST FOR
EQUITABLE TOLLING AND PLAINTIFFS MEETS ALL REQUIREMENTS IN
THIS CASE BECAUSE OF THE EXCEPTIONAL CIRCUMSTANCES AT PLAY IN
THIS MATTER SINCE 1997--and they are detailed in the previous
2 Pages detailing the answers and Now again.:**

Plaintiff states that the Facts detailed within the first 24
pages detail the facts that this Plaintiff would have been
aiding in the assistance of committing murder if the Plaintiff
had reported these offenses because of the facts detailed
therein and if the Plaintiff had ever taken this matter to the
Court Prior to Sean Combs and his homes being raided then it
would have resulted in the Defendant having his employees and
other people Kill The Plaintiffs Family and friends and their
family and Friends and they have said it themselves that they

Literally "have had their life, and the families lives threatened by Sean Combs and other individuals working WITH and FOR Mr. Sean Combs where Guns were Placed to His head between 1998 and 2023 if Derrick Lee Cardello-Smith pursued or mentioned anything about Sean Combs raping Plaintiff in1997 or the Cash Investment into Bad Boy Records." As such, this man literally threatened to kill my family and they threatened to Kill George Preston as his affidavit clearly says they were going to do and because of that fact alone, I have had to stay away from ever filing a lawsuit and if I had filed the lawsuit, it would have resulted in the death of my friend and co-investor into bad Boy Records and that would have been his death and the death of his family and for that, I could not allow to happen, so I did not file the lawsuit, and that should be more then enough to overcome the barrier put into place by the Defendants Statute of Limitations that they have argued.

This was an ongoing and continuous threat that happened every single day since 1997 and since I was placed into the Custody of the Michigan Department of Corrections and it has in fact resulted in serious emotional distress placed upon me everyday knowing that I was raped by Sean Combs and that i have had to live with this everyday and knowing I could not proceed with any legal action against him due to his threats made towards myself and my friends and as proven by the Affidavits listed and cited and attached herein, and as that this has been an ongoing issue, this court should find that under these Doctrines, TOLLING MUST BE CONSIDERED AS THE BIVENS COURT HAS RULED.

Plaintiff states that there is No Rule of Law, Nor Any Act of Congress,Nor Any Court Case that can be cited to say that WHEN AN INCARCERATED MAN HAS BEEN RAPED BY A CELEBRITY PRIOR TO INCARCERATION, AND THAT RAPE VICTIMS FAMILY THREATENED BY THE CELEBRITY, SUCH A SEAN COMBS WHO IS ALMOST A BILLIONAIRE, AND

HAVING THE HISTORY OF VIOLENCE, RAPE AND MURDER THAT HE HAS, AND THAT PRISONER IS REQUIRED TO PROPERLY AND TIMELY FILE HIS LAWSUIT WITHIN THE STATUTE OF LIMITATIONS, WHEN THE FILING OF THAT LAWSUIT WILL IN FACT RESULT IN THE IMMEDIATE EXECUTION AND DEATH OF THE PLAINTIFFS FAMILY, FRIENDS OR OTHERS AND AS SUCH, SINCE THERE IS NO CASE LAW ON THIS, THE UNITED STATES SUPREME COURT AND THE SIXTH CIRCUIT COURT OF APPEALS CANNOT HOLD THIS PLAINTIFFS TO THE STANDARD AND REQUIREMENT OF THE STATUTE OF LIMITATIONS, BECAUSE IT WOULD HAVE RESULTED IN THE DEATH OR DEATHS OF THIS PLAINTIFFS FRIENDS AND FAMILY AND SINCE THERE IS NO CASE LAW FOR THIS KIND OF SITUATION, THIS MAKES IT AN EXTRAORDINARY AND EXCEPTIONAL CIRCUMSTANCE WHICH THIS COURT MUST TOLL AND ALLOW THIS CASE TO PROCEED UPON ON ITS MERITS.

Plaintiff states that this Defendant is is someone that has been Above the law for decades and is only now in custody and as the Plaintiff having been in custody since 1997 himself, understands that there is nothing else that can be done by the Defendant that can lead to the deaths of the Plaintiffs friends...however, that is what the Plaintiff thought and then the plaintiff was seeing on TV that the Defendant was actually Calling and Reaching out to Witnesses and Threatening them and attempting to pay them off, this is something that is common and shows that Mr. Combs could have simply paid off one of the Soldiers in his Click and his crew and got this Plaintiff eliminated and removed and even had the Plaintiffs family and friends removed and as such, it is with great regret that the Plaintiff was not able to do it sooner, but Plaintiff had no choice and the defendants actions in his own Federal case show that he is in fact able to DO WHATEVER IT TAKES TO GET WHAT HE WANTS AND TO AVOID HIS RESPONSIBILITY---This man is a dangerous Rapist and he did rape me and he should in fact be held to account for his actions and not hide behind his money and statutes that are in fact statutes that will have resulted in this plaintiff causing the death of his loved ones and the

death of other family members...

   George Preston is willing to testify that as recently as
2023, he was threatened by Sean Combs People and told not to
make sure that this Plaintiff did not act on it, and Plaintiff
complied fully because Sean Combs is capable of making his
needs and actions and wants come to fruition and he was going
to do just that and this Plaintiff had no choice except to
protect his family and friends..

Plaintiff states that the Statute of Limitations arguments and
claims have been overcome and equitable tolling is allowed
because this is a RARE AND EXCEPTIONAL CASE REQUIRING IT TO BE
TOLLED BECAUSE SEAN COMBS IS IN CUSTODY AND THERE WAS NO SAFER
TIME TO FILE UNTIL THE FEDERAL AGENTS RAIDED HIS HOMES IN
MARCH AND IT SHOULD BE ALLOWED TO PROCEED TO TRIAL....Thank
you your honors.

Plaintiff further maintains that the five Factor test to
determine whether equitable tolling applies to this claim
under Zappone F. 3d at 556 do not apply because the Zappone
court did not and do not provide for a Scenario where a Man
has been raped, the locked up for rape and threatened to be
killed of have his family killed by a Rapist who is an
International Media Figure that has the money, history and
means to execute the Plaintiffs family, and those factors have
been overcome by the Plaintiff as follows:
11. Plaintiff did not know that there was a 3 year time limit
back in 2000 so that removes that theory.
2. Plaintiff lacked the knowledge for this type of
constructive knowledge for this type of lawsuit on the filing
requirement because of the emotional damage and suffering and
heightened fear the plaintiff dealt with in knowing that if
the plaintiff did pursue litigation it would result in the
death of his family and friends, so this is removed because
the plaintiff had to focus on that protection of his family

27.

and friends for many years and could not go to any other part or requirement.

3. Plaintiff has met the Diligence in pursuing his rights.

4. there is no absence of prejudice to this defendant because he has been a man riding high for many years knowing he has raped this plaintiff and he has a defense team to battle for him as they have been willing to show that they can battle him and have battled him and been successful at every turn for other reasons, not because of a verdict in his favor after hearing evidence, but by them pulling violations of rules and procedures and hiding behind statute of limitations and he has shown that he can defend himself, so there is no prejudice to this defendant, who has endless money to do as he wants.

5. The Plaintiffs reasonableness in remaining ignorant of the particular legal requirement is not applicable because the Statute and Test did not take into consideration this Plaintiffs extraordinary circumstances as that Plaintiff is a prisoner who has been raped by the defendant and has been in prison since the same year it happened and plaintiff states that this court itself cannot allow this test to apply as that it did not consider a Multi millionaire who rapes a man to be taken into question as part of the test when it was decided.

Plaintiff states that HE SATISFIES THE 2 PRONGS OF THE US SUPREME COURT TEST and as such, EQUITABLE TOLLING MUST BE ALLOWED AND THIS CASE MUST BE ALLOWED TO GO FORWARD on the merits of the case itself....

<u>THE ONGOING VIOLATIONS CHALLENGE AND APPLICATION TO THE STATUTE OF LIMITATIONS CLAIMS AND DEFENSE RAISED BY THE DEFENDATS</u>

<u>PLAINTIFF DIRECTLY MAKES A CONSTITUTIONAL CHALLENGE TO THE STATUTE OF LIMITATIONS REQUIRING THE PLAINTIFF TO HAVE HIS LAWSUIT FILED WITHIN A CERTAIN AMOUNT OF TIME AND YEARS AS THAT THERE IS AND HAS BEEN AN ONGOING VIOLATION OF THIS PLAINTIFFS RIGHTS AND THAT TOLLS THE STATUTE OF LIMITATIONS AND ALLOWS THIS CASE TO PROCEED ON ITS MERITS</u>

The Defendants have said that there is a 3 year time limit

28.

for this plaintiff to raise the claim for the Personal Injury Claim (RAPE AND SEXUAL ASSAULT OF THE PLAINTIFF BY THEIR CLIENT, DEFENDANT SEAN COMBS) and that he Plaintiff is "Absolutely outside of the Statute of Limitations." This is their defense for the grounds raised in their motion to dismiss.. The Plaintiff disagrees and states that there is Clear Case law on the Side of this Plaintiff which allows for Ongoing Violations and Plaintiff states the following factors as proof of the ongoing violations.

1. Since 1998, the Plaintiff, Plaintiffs family, Friends and others have been threatened by the Defendant and his allies, friends and employees that if the Plaintiff filed a Rape Charge against the Defendant, that the Defendant would Kill his family." This has been an everyday, and yearly thing that the Plaintiff has had to deal with from 1997 through 2024.

2. defendant committed acts of violence and threats against this Plaintiff many many times and the Plaintiff family members and Friends and their family members, as their affidavits support and claim, and it shows that it has been ongoing.

3. Plaintiff adopts by reference and for the sake of being repetitive the claims raised in Pages 1-15 as to why the Threats have been ongoing and why the Plaintiff could not in fact take action, and this failure on the Plaintiffs part was completely through the actions of the Defendant and that itself is more then enough to toll it because there is an ongoing violation since the Rape of this Plaintiff by the defendant Sean Combs, tolling the Statute.

4. Simply because the Plaintiff did not challenge the claim within the 3 years as mandated by law and simply because the Plaintiff has failed to challenge it within the 3 years since the time of the violation and act committed upon this Plaintiff by the defendant does not Immunize the Legal Challenge of that law and the Legal challenge of the rights

29.

violation--See **Kuhnle Bros. Inc v. City of Geagua, 103 F. 3d 516 (6th Cir. 1997)**

5. Plaintiff further states that since the acts of the Defendant were an everyday act and it affected the Plaintiff since 1997 throughout the date of his home being raided in March 2024, that the Plaintiff knew he was being watched and Plaintiff could act because there were PEOPLE MORE POWERFUL THAN HIM WORKING AND WATCHING HIM and he was less likely to commit any acts againstthis Plaintiff and that would be the main basis for the violations coming to a stop and ALL THE FACTS BEING PRESENTEDAND COMMITTED IN THIS CASE AND BRINGING THE PLAINTIFF TO THE POSITION OF BEING ABLE TO HAVE THE ONGOING VIOLATIONS STOP---**See Does v. Whitmer E.D.OF MICHIGAN case 22-cv-10209 2024**

6. The Sixth Circuit views a Constitutional Challenge to a Statute that is alleged to continue to violate a plaintiffs rights on an ongoing basis as timely so long as the violation continues **Peoples response to Defendants Motion to Dismiss (Docket 44) at 65-66 (Citing Kuhle bros Inc v. City of Geauga, 103 F.3d 516(6th Cir. 1997)**
See also **Does v. Whitmer 2024 U.S. District Lexis 176146 page 48 of 51 Paragraph 2.**

7. **The Continued Enforcement of the Statute of Limitations requiring this Plaintiff to file the personal injury Claims within a Certain amount of time based on that statute has inflicted a continuing and repeated harm upon this Plaintiff and therefore a new statute of limitations period commencing tolling the Statute when the pain ends** claims an ongoing injury that I coul dnot act upon and I could not get help for as that if I had Taken it to the Courts, Family, Friends would have been killed and that would have made me accessory and aiding and abetting murder or other crimes, and that I had to live everyday with knowing I was raped by the Defendant Sean

Combs and could not act on it at any level whatsoever and Plaintiff has had to suffer through many difficult barriers of keeping this quiet and this Plaintiff states that the Continued enforcement of a statute has placed and inflicted a continuing and repeated harm upon this Plaintiff and new claim and a new injury arises out of this new claim as that the Ongoing Violation amounts to and is a new injury which is allowed by a New Statute of Limitations rendering all the old ones moot by the continued violations and continued injuries premise... See <u>leal v. Azaril No 2;20-sv-185-Z 2020 US District Lexis 241947, 2020 WL 7672177, at 7(N.D. tex Dec. 23, 2020)</u> (deeming timely a challenge to a federal agency rule because "these types of suits are seeking <u>prospective</u> relief for <u>ongoing</u> injuries" and Statutes of Limitations are simply inapplicable to such injuries") (emphasis in Original) <u>vacated and remanded on other grounds Leal v. Becerra No 21-10302, 2022 U.S. App lexis 20803 2022 WL 2981427 (5th Circuit.July 27, 2022)</u>.

**8.** Plaintiff states that the Claims raised by the Defendants that Motions to Dismiss based on a Statute of Limitations being governed by Federal Rule of Civil Procedure 129b)(6) is correct, and the case law that they provided in Dykema 2015, and other related cases cited on Pages 9 and 10 are correct, and they are also however, cases that failed to take into consideration the Newer Court Cases cited by the Plaintiff from the United States Court of Appeals for the Sixth Circuit and the US District Courts as detailed in $1-7 in this section of arguments before this number 8, and these cases are in fact BINDING and MUST BE THE CASES TO USE AND APPLY TO THIS RULE that the Defendants have mentioned, specifically where the case of Leal v. Azaril and Leal v. Becerra are newer cases directly related to the Challenging of a rule in an ONGOING VIOLATIONS ACT AND CHALLENGE TO THE RULE and as such, the Plaintiff hereby invokes Timely this challenge to the Federal Rule of Procedure that the Defendants are using as their basis

for the Motion to Dismiss and its Statute of Limitations Provision and they have stated on Page 10 that For this reason alone the court should dismiss the case, but the Defendants have failed to take into Consideration the ONGOING VIOLATIONS AND ENFORCEMENT OF RULE 129b)(6) placing on this Plaintiff and his injuries and how it actually starts the clock on the statute of limitations all over again, rendering the Defendants Motion as Not valid and Without Any merit whatsoever, and their defense and reliance on the cases that they laid out since 1945 and only going up to 2015 does not even take into consideration these clearly detailed cases as has been provided by the Plaintiff in **Does v. Whitmer Case 2024 U.S. district Lexis 176146--Attached** and as such, they fail on their defense and they have abandoned any further ability or action that allows them to be able to be granted this defense and it should be denied as without merit and the Plaintiffs claims and issues raised supersede the defendants case law and claims raised as that this is an Ongoing violation that has been happening and has happened and it must be corrected by the Court and allowed to proceed to a Jury Trial on the merits of the claims presented within this Answer to the defendants motion to dismiss.

Your Honor, the Defendant is a WORLD CLASS RAPIST WHO BUILT HIS EMPIRE OFF OF ILLEGAL PROCEEDS, THEFT, FRAUD, TORTURE, RAPE, SEXUAL DEPRAVITY, KIDNAPPING, MURDER, SOLICITATION OF MURDER, INTIMIDATION, THREATS, SEXUAL SLAVERY, AND MANY OTHER THINGS AND HIS LAWYERS ARE HIDING BEHIND THINGS THAT ARE NOT ROOTED IN TRUTH, WHEREAS, I HAVE PROVIDED PROOF THAT THEY HAVE OFFERED NO EVIDENCE TO DISPUTE IT AND IF THEY DID OFFER IT, THEN WE WOULD HAVE A CONTROVERSY AND A GENUINE DISPUTE WHICH WOULD OUTWEIGH ANY STATUTE OF LIMITATIONS AND ALLOW THIS MATTER TO PROCEED TO A BENCH OR JURY TRIAL, ON THEIR FRAUDULENT RAPIST CLIENTS ACTIONS WHERE HE TOOK EVERYTHING FROM ME, MY MANHOOD AND MY MONEY TOO.

<u>PLAINTIFFS CLAIM SHOULD BE ALLOWED TO PROCEED AS SERVICE HAS
BEEN MADE ON THE DEFENDANT AND DEFENDANTS BUSINESS PARTNER,
INVESTOR AND AGENT HERE IN MICHIGAN MR. GEORGE PRESTON AND
KATHRYN PRESTON AND DEFENDANT SEAN COMBSHAVE ALL ACKNOWLEDGE
SERVICE HAVING BEEN MAD IN THEIR NOTICE OF REMOVAL GIVING THIS
COURT PERSONAL JURISDICTION AND SUBJECT MATTER JURISDICTION
OVER THE DEFENDANT SEAN COMBS AS SERVICE WAS MADE TO DEFENDANT
COMBS AND HIS AGENT(S). AS REQUIRED BY MCR 2.105(A)(2)AND MCR
2.105 (C)(1)(2) and (D)(1)(2)(3)(4) ON THE AGENT, SECRETARY
AND PARTNER OF DEFENDANT SEAN COMBS</u>

Plaintiff states that the Claims should NOT BE DISMISSED
Under FED. R.. Civ. P. 12(b)(5) because the Summons and
Complaint have been served and this court does have
jurisdiction over that of the Defendant and Service of the
Lawsuit was made upon the Defendant by means of the Proper
Michigan Court Rule where service was made upon the AGENT
ACTING ON BEHALF OF THE DEFENDANT AT HIS MICHIGAN ADDRESS
REQUIRING SERVICE IS MADE APPROPRIATELY, and states the
Following Factors why this Court should allow this Claim to
proceed under the merits and states that the trial court
should in fact consider these many factors herein detailed.

1. On April 11, 2024, Plaintiff sent Notice of the Lawsuit
to Sean Combs Restricted Delivery Addresse and His Agent,
Business Partner and Investor George Preston in Avoca,
Michigan. (See Attached Exhibit)

2. On April 15, 2024, The Defendant Sean Combs and his Agent
George Preston, Business Partner and Investor George Preston
both signed for said delivery of the Notice of the Lawsuit,
(See Restricted Return Receipt attached).

3. On October 24, 2 weeks after the Defendants Lawyers David
Fink Had this case moved to Federal Court, Plaintiff Served a
Copy of the Summons and Complaint and the Same from the Court
above upon the Defendant with the Notice of Removal and the

Trial Court Summons and Complaint with all attachments by mailing it to SEAN COMBS And his AGENT, INVESTOR, SECRETARY, ASSISTANT AND BUSINESS PARTNER IN MICHIGAN KATHRYN PRESTON. (See Attached Receipt)

4. On November 2, 2024 Plaintiff Served By Certified Restricted Delivery a Copy of the Summons and Complaint and the Same from the Trial Court and Documents from the Court above upon the Defendant with the Notice of Removal and the Trial Court Summons and Complaint with all attachments by mailing it to SEAN COMBS And his AGENT, INVESTOR, SECRETARY, ASSISTANT AND BUSINESS PARTNER IN MICHIGAN KATHRYN PRESTON and it was signed by Kathryn Preston on November 2, 2024 and it was accepted for Defendant Combs at the address listen Michigan at both his addresses of 7541 Yale Road, Avoca, MI 48006 and 596 St. James, Marysville, MI 48040 and this service was done by Mr. combs Directly Having his agents and their staff accept it as that they are his business partners here in Michigan and They invested in his property and has handled business here in Michigan.

5. Mr. Combs has been served in accordance with the Rules of Court, and, most importantly, this Court will not that the Defendant has accepted service on the Complaint when they were GIVEN NOTICE OF THE LAWSUIT AS THEY CLAIMS IN THEIR NOTICE OF REMOVAL ON SEPTEMBER 9, 2024, see the defendants notice of removal, they admit themselves, Against the Plaintiff insistence that they have in fact been provided with the lawsuit on September 9, 2024 'After learning of it Through News Media Report" therefore, they used that Notice of The Lawsuit that was Based on a Default Judgment entered Against their client as their basis to for what they considered to be a a Timely Notice of Removal when in fact, it was not one, but this court has disagreed with that claim, and has yet to decide on the Plaintiffs Motion for Reconsideration on that issue with similar claims having been raised and made by this Plaintiff.

AS that the Defendants have said that They were Made aware of the Notice, there is nothing that says the Defendants Were not notified and as such, their arguments in their Motion to Dismiss on Pages 13-17, the Court can and should accept that Plaintiffs claims of Service and Notice has been made upon their Client, the Rapist, Sean Combs, and therefore they should be denied their motion to dismiss because Plaintiff has complied fully with Michigan Court Rule 2.105 (C) and (D) and all subrules as that the Defendant had his agents here in Michigan and those investors had contracts with him and he maintained residence in Michigan, As verified by the Affidavits of George and Kathryn Preston as detailed within the combined record.

Plaintiff also states that the Postal Service Documents that the Defendants Attorney are referring to related to the $10.40 cents shows that Plaintiff was locked up and in shackles for that said hearing and was suffering great emotional distress whereas in all other trial court appearances, plaintiff was not shackled and had fair state of mind to articulate the factors and when Plaintiff was in shackles during the motion hearing referred to by the Defendants Lawyer, it was clearly a different state of emotional distress so the Plaintiff made some serious mistakes and errors in those hearings and it should be allowed to proceed on the merits as detailed within this case because the Plaintiff has made service properly and even the defendants have had this document mailed to them before and they have chosen to not answer it and instead have made their own Affirmative defense as to service and it should not be allowed to proceed and this Plaintiff should be allowed to proceed to a Jury Trial on the merits of the claims presented.

**THIS COURT IS WITHIN ITS POWER TOE EXERCISE COMPLETE JURISDICTION OVER THE DEFENDANT BECAUSE SERVICE WAS MADE AND**

IT HAS JURISDICTION OVER SEAN COMBS BECAUSE HIS MICHIGAN
RESIDENTS WERE SERVED AND IT HAS BEEN CONSENTED TO MANY YEARS
AGO BY SEAN COMBS AND THE PERSONS OF GEORGE PRESTON AND
KATHRYN PRESTON WILL VERIFY IT AT ANY HEARING THIS COURT DEEMS
TO HOLD ON THIS MATTER AND THIS CLAIM SHOULD NOT BE DISMISSED.

Plaintiff has argued and shown that service has been made and
the defendants have said that it is not and has not been made
and they cannot dispute the facts on this matter as proven by
the certified mail and restricted delivery receipts prove,
thereby negating any efforts of dismissal.

The defendants have been served and they were served in
Michigan and Michigan Court rules 2.105(C) **Partnerships,
Limited Partnerships.** which provides "Service of Process on a
partnership or a limited partnership may be made by (1)
Serving a summons and copy of the complaint on any general
partner or **AGENT for service of process,** (2) serving a summons
and copy of the complaint on the person in charge of a
partnership office or business establishment and sending a
summons and a copy of the complaint by **REGISTERED MAIL,
Addressed to a general Partner or AGENT FOR SERVICE OF PROCESS
AT HIS OR HER USUAL RESIDENCE OR LAST KNOWN ADDRESS**---

Plaintiff states that he has satisfied this Prong by Serving
it on the respective persons of George Preston and Kathryn
Preston, people assigned to get process service and accept
mail for Mr. Combs in Michigan, as their affidavits have shown
Mr. Combs Conducting Business on the Grounds of the 7541 Yale
Road, Avoca, MI 48006 property and His Agents assigned to sign
for him.

Plaintiff further states that he has fully complied with the
elements of MCR 2.105 (D)(1)(2)(3)(4) by (1) Serving a Summons
and Complaint on an RESIDENT AGENT) of the Defendant and
George Preston is a Resident Agent of the Defendant and he

resides on the Property Co-Owned and Co-Shared by Sean Combs
on his Michigan trips and other related events and (2) Serving
a Summons and Complaint on a director, trustee, **OR PERSON IN
CHARGE OF AN OFFICE OR BUSINESS ESTABLISHMENT OF THE
CORPORATION and sending it by registered Mail** and Plaintiff
has done just that by sending it to the said Parties and
Person in charge at the address of record.

Plaintiff has fully complied with ALL ELEMENTS OF SAID
MICHIGAN COURT RULE on the MICHIGAN CHAPTER OF SEAN COMBS
BUSINESS LOCATED IN AVOCA, MI 38006 AND HIS AGENT IN
MARYSVILLE, MI 48040 and the defendants cannot be allowed to
have their issues granted by getting it dismissed when the
Plaintiffs has provided evidence supporting it, the court can
see for itself and review the affidavits attached--Thank you
for your consideration of not dismissing this claim.


**PLAINTIFF STATES THAT THE COMPLAINT IS NOT SUBJECT TO
DISMISSAL AND ARE NOT IMPLAUSIBLE AND ARE NOT INCONSISTENT AND
ARE IN FACT VERY REAL**

   Plaintiff was Raped by the Defendant Sean Combs, Plaintiffs
Rape was covered up by Detroit Police and Other Officials
working with Sean Combs and Plaintiff has provided this court
with Proof of the Rape that has taken place and the Ongoing
Cover-up that happened with regards to the Rape of this
Plaintiff by the Defendant Sean Combs and it is something that
is true and real and accurate and did happen, and Plaintiff
stands by this Claim that the Defendant Raped this Plaintiff.

**THE DEFENDANTS DENIALS ARE DISPUTED BY THIS PLAINTIFFS
ADMISSION THAT THE DEFENDANTS RAPEDHIM HIM AND CREATE A
CONTROVERSY AND DISPUTED AND THIS IS A GENUINE ISSUE OF
DISPUTE THAT SHOULD BE ALLOWED TO PROCEED TO A JURY TRIAL ON
THE MERITS OF THOSE CLAIMS AND THE DEFENDANTS DENIALS WITHOUT**

<u>ANY WITNESSES OR EVIDENCE TO BACK IT UP ARE NOTHING COMPARED
TO THIS PLAINTIFFS CLAIMS OF BEING RAPED BY THE DEFENDANT AND
THE PROOF AND WITNESSES THAT HAVE BEEN PRESENTED TO THIS COURT
AND IT SHOULD BE ALLOWED TO SURVIVE AY DISMISSAL OF THIS
CLAIM</u>.

The rape took Place in 1997 and it was at a Hotel in Adrian,
Michigan and it was Witnessed by Many People, who have listed
Reports on the Record and Affidavits on the Record, which have
not been disproven in anyway by the defendants or argued by
the defendants, with more then a mere passing statement
expecting this court to overlook all the witnesses and their
statements made on the record.

Plaintiff has shown more then enough to survive the Status
of FDCP 12(b)(6) because the events described herein happened
and are completely real because the Plaintiff has PLEAD MORE
THEN A SHEER POSSIBILITY THAT THESE EVENTS HAPPENED AND THEY
WERE WITNESSED BY PEOPLE WHO ATTENDED THE EVENTS DESCRIBED AND
THEY SAW THE PLAINTIFF GET SEXUALLY ASSAULTED BY THE DEFENDANT
IN A BRUTAL, VIOLENT RAPE, thereby removing the bar for a
Sheer Possibility that the Defendant Acted unlawfully, because
THE DEFENDANT DID ACT UNLAWFULLY and also the Defendant
clearly Had his aids cover it up.

Defendants rely upon the fact that the Plaintiff Accidentally
had the Facility send the Mailroom Send it to the Monroe
County Circuit Court and That is because the Plaintiff, WHILE
STILL LIVING WITH THE RAPE AND THEN FILING A LAWSUIT AGAINST
MY RAPIST AND REMEMBERING WHERE WE MET IN 1997, i accidentally
put Monroe on it, when I was 'Thinking about where He and I
had met in 1997 and that is at the Business I was Employed at
named FISHBONES, which is LOCATED ON MONROE AND BRUSH in
DETROIT, MI... That is what I had placed in it, the Street
Monroe, and then I submitted it for filing and it went to the
Monroe Circuit Court, and I even had the facility list it and
when I discovered the accident, I asked them to cancel it, but
that is not what could happen and so they sent it to that

court, and I never ever moved on it, I only served the One
from Lenawee County because that is where it happened, and the
only thing the defendants can do, is Work on Mistakes made by
me, when THERE CLIENT RAPED ME.... Well, Mistakes Happen and
in support of that, the The Plaintiff provides this Court with
a Document Sent to this Plaintiff by the Michigan Court of
Appeals in Case no 372888 which Shows that The Defendants
Lawyer MR. DAVID FINK HAS IN FACT HIMSELF MAD SOME ERRONEOUS
FILINGS IN THIS CASE BECAUSE HE FILED THE WRONG DOCUMENTS BY
NOT HAVING THEM "BOOKMARKED" and he was ordered to 'REFILE HIS
DOCUMENTS" and as such, he made DEFECTIVE FILINGS, and he was
attempting to get that court to believe that he did something
and it was not true--<u>SEE ATTACHED LETTER DIRECTING MR. FINK TO
CORRECT HIS MASSIVE ERROR THAT HE ACTED ON</u>.. I did not act on
my errors in Monore and for this man to be a seasoned lawyer
making these kinds of mistakes and errors to hold me, a
prisoner accountable, well, it is a thing to Laugh at if it
was not such a serious thing, he is using errors to say that I
have made up a story, and that it is Wholly divorced from
reality, well, his filings was and is detached from reality
and in this case, the Court of Appeals told him so,, but the
difference is that I am a Man Big Enough to Admit my Errors,
and not hide behind it, like he has with his filings in this
court and the court of appeals... he is hiding a brutal rape
and attempting to excuse it by his focusing on typos and
accidental filings in the wrong courts,and that is very
telling because clearly HE HAS NOTHING ELSE TO SHOW THAT HE
CAN DISPROVE MY CLAIMS THAT HIS CLIENT RAPED ME, he has not
presented one witness that says a rape did not occur and I
have presented several that have said it did occur,and that
creates a very disputable fact and a genuine dispute subject
for a Jury Trial.

Simply because the Plaintiff has has causes dismissed for
FAILURE TO STATE A CLAIM DOES NOT MEAN THAT THOSE CLAIMS WERE
NOT TRUE, AND IT DOES NOT MEAN THAT HIS CLIENT DID NOT RAPE

ME, IN FACT, IT VERIFIES THAT HIS CLIENT RAPED ME and he needs to be stopped from these types of actions and be held accountable for his actions.

## MR. COMBS AND HIGH RANKING GOVERNMENT OFFICIALS IN FACT DID BECOME INVOLVED IN NOT ONLY THE ACCEPTANCE OF $150,000.00 IN EXCHANGE FOR ½ HIS EMPIRE.

Plaintiff has provided this Court with proof of said agreements between the Plaintiff and Sean Combs and Plaintiff has even provided this Court with Affidavits from George Preston attesting to the fact that the Plaintiff has provided him with money and the amount being $150,000.00 in 1997 and in exchange for it, he agreed to not get involved in any type of State of Federal Crimes, and not rape anyone, and what has he done? He violated it and thereby, entitling the Plaintiff to the equivalent of 49% of his Entire Empire as agreed upon and done so by the Agreement that has been placed before the Lenawee County Circuit Court and Transferred to the District Court on the record, and transferred and filed by the Defendants Themselves, see entire court record and the documents filed by the Plaintiff as proof, and as such, IT MAKES SENSE TO THE PLAINTIFF AND THE DEFENDANT EVEN IF IT DOES NOT MAKE SENSE TO DAVID FINK, It does not make since, because HE WAS NOT THERE WHEN IT WAS AGREED UPON, that is why it makes no sense to him or his staff....

THIS ALSO CREATES A DISPUTE AND A GENUINE ISSUE OF DISPUTED FACTS AND MATERIAL AND CONTROVERSY AND IT SHOULD BE ALLOWED TO PROCEED TO TRIAL.

PLAINTIFF ENTERED INTO A AGREEMENT WITH KYM WORTHY WHO WAS THEN A RECORDERS COURT JUDGE AND A CIVILIAN AND I ENTERED INTO IT WITH HER, THE CIVILIAN and IT WAS BECAUSE I WAS FORCED TO ENTER INTO IT, AS WELL AS OTHER GOVERNMENT OFFICIALS AND IT WAS SIGNED BY THOSE OFFICIALS AND IT WAS THAT I WOULD BE PROSECUTED ON FALSE RAPE CHARGES AND THEN MY FAMILY WOULD

LIVE.

This is a clear and open agreement signed and proof of said agreements have been provided and proof of what was in the agreement was provided to, and my family has been clearly threatened by the Defendant and Other actors in Detroit, and remember, this is during the time when there were Multiple Detroit Police Officers being arrested and having been arrested by the Federal government for these types of behavior over the Time frame of 1998 through 2005, so it is very feasible that these events happened---Threats of KILLING MY FAMILY IS VERY CLEARLY EXPLAINED, WHEN IT IS WRITTEN DOWN AND WHEN IT IS SUPPORTED BY DOCUMENTARY EVIDENCE FROM THIS PLAINTIFF AND KYM WORTHY WHO HAS NOT SAID THAT THESE THINGS DID NOT HAPPEN, NOT IN THIS COURT SHE HAS NOT!

The Statement of How they would be exterminated is not important, the fact that they WOULD BE EXTERMINATED IS VERY VERY CLEAR.. In fact, PLAINTIFFS MOTHER RHONDA SMITH DIED ON AUGUST 18 2011 AN IT IS LISTED IN THE WAYNE COUNTY CORONERS OFFICE AS MANNER OF DEATH "UNDETERMINED" and it is STILL AN OPEN CASE FOR HOMICIDE and it is something that this Plaintiff PLACES DIRECTLY ON THE DEFENDANT SEAN COMBS AND HIS CONNECTIONS....
MR. COMBS HAD MY MOTHER KILLED AND IT WAS OUT OF REVENGE FOR MY EVEN THINKING ABOUT IT BACK IN THE DAY, AND SHE DIED AS A RESULT OF HIM HAVING HER KILLED.
SEAN COMBS HA MY MOTHER, RHONOA SMITH KILLED, IT IS LISTED IN THE WAYNE COUNTY MEDICAL EXAMINERS OFFICE AND IT IS A REPORT THAT HAS BEEN KEPT AND HELD BY KYM WORTHY'S OFFICE SINCE HER DEATH AND SHE HAS REFUSED TO PROSECUTE SEAN COMBS ON THIS MATTER BECAUSE IT WOULD IMPLICATE NOT JUST HIM, BUT HERSELF AND OTHER PEOPLE, JUST LOOK AT IT AND YOU WILL SEE RHONDA SMITH BORN APRIL 7, 1949 and DIED AUGUST 18, 2011 AND KYM WORTHY, THE WAYNE COUNTY PROSECUTOR HAS DECIDED TO NOT ACT ON IT AND NOT BRING CHARGES AGAINST SEAN COMBS IN THIS CASE AFTER

41.

THE DETROIT POLICE HAD REQUESTED A WARRANT FOR HIS ARREST IN 22011 AND TO THIS DAY, SHE HAS NOT ACTED ON IT, IN FACT, SHE HAS EVEN WENT SO FAR AS TO DESTROY ALL HOMICIDE FILES ALL SO SHE CAN HIDE THESE CRIMES AND FAILURES ON HER OFFICE TO ACT-- SEE THE DETROIT METRO TIMES SEPTEMBER 2024 "KYM WORTHY DESTROYS FILES, all because she wants to protect Sean Combs. This woman is a terrible human being and my proof has been provided and this court has it and can act on it by allowing these matters to proceed to a Jury Trial and plaintiff will in fact prove all these matters as true if allowed to proceed to a Jury trial.

It is interesting to note that at no time, out of all the filings, words, and statements made by the Defendants Attorney, David Fink, there is one thing missing form the entire record NOONE FROM THE DETROIT POLICE DEPARTMENT THEMSELVES HAS EVER DISPUTED ANYTHING THIS PLAINTIFF HAS FILED AND PRESENTED. There is a reason for that, It is simple, Because what the Plaintiff has given in the way of the Detroit Police Reports, it has ALL BEEN TRUE and REAL AND INDISPUTABLE, yet, noone on the defendants side can dispute it and has not disputed it, ESPECIALLY NOT FROM THE DETROIT POLICE DEPARTMENT, BECAUSE THEY CANNOT DISPROVE IT!

The are Clearly detailed claims and the allegations have been provided, supported, sustained, and proven by PROOF, DOCUMENTS, AFFIDAVITS, WITNESS DECLARATIONS AND MANY OTHER THINGS THAT SHOW THAT HIS MAN RAPED ME, AND RAPED ME HE DID AND HE COVERED IT UP AND HAVE IN FACT SERVED HIM HIS SUIT AND THE DEFENDANTS HAVE ACCEPTED IT, AND THEY ARE MORE THEN AWARE OF WHAT THEIR CLIENT DID and as such, my claims are real, true and accurate and I should be allowed to proceed on the merits of this case, because He has been given notice, he is not prejudiced by it going to trial as that it has been defended by him, and he can show his defense to the court or the jury and most importantly, I have been diligent in my pursuit of

42.

justice in every way I can and I have had to wait for decades until he was Watched and his Homes were raided in March 2024, after I have been Threatened and my family threatened, I finally brought the case to the Lower Court and Ignorance had nothing to do with it, it was BEING PREVENTED AND THINKING I WOULD BE RESPONSIBLE FOR MY FAMILIES DEATH IF I DID IN FACT GO THROUGH WITH IT and So, I had to wait until the main head of the threats was under federal Investigation and his Homes raided, and this happened this year and so, I sued him this year and I should be allowed to go to trial, the defendant has even mailed me an Stipulated Order of Dismissal himself an then had me get it notarized, which I did and that is on the court record and should be accepted by this Court and agreed upon by this Court as it is listed in this Courts record.

I thank this Court for its time in considering all my claims and factors argued and I ask this Court to NOT DISMISS THIS CASE and ALLOW IT TO PROCEED TO JURY TRIAL, and I thank you in advance for your time and understanding in this whole matter.

### RELIEF SOUGHT

   Wherefore, Plaintiff prays this court will DENY THE DEFENDANTS MOTION TO DISMISS, GRANT A JURY TRIAL, or a BENCH TRIAL and Grant any further relief it deems necessary and appropriate.


Respectfully Yours,

11-26-24

Mr. Derrick Lee Cardello-Smith
#267009
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

OFFERS OF PROOF

STEP 1 GRIEVANCES FROM 1998 through 2024

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 10/94
CSJ-247A

Date Received at Step I _7-04-98_    Grievance Identifier: N|C|F|-|9|8|0|1|4|2|3|9|8|1|D|4

| **Be brief and concise in describing your grievance issue.** If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library. |

| Name (print first, last) Derrick Smith | Number 267009 | Institution NCF | Lock Number 6-41B | Date of Incident 7-3-98 | Today's Date 7-5-98 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? On 7-4-98 I
If none, explain why. Wrote to Warder Kapture about Threats Made upon my Life By letter to Warder Kapture - no resolution Given so I submit This Response on 7-5-98 To The Grievance Coordinator -

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. My Life and The Life OF my Family Have Been Threatened By 2 Prisoners That are Members oF " PUFFY and Bad Boy Dons" STATing iF I "Tell anyone That SEAN Combs Rape Me" my Family Would Be Killed "You Derrick Would Be Killed" and your Friends and Their Family Would Be Killed " You Had Better Keep Your Mouth shut or We Will Kill You and Make Your Bit Hard Niggah! Bad Boy Dons is Affiliated With Bad Boy Records - I need Help!

_Derrick Lee Cardell Smith_
Grievant's Signature

---

RESPONSE (Grievant Interviewed?  ☐ Yes  ☑ No    If No, give explanation. If resolved, explain resolution.)

_Vague_

_Beck With_    7-05-98    _D. Worth_    7/5/98
Respondent's Signature    Date    Reviewer's Signature    Date
Linda Beck With    ADW    Acting Grldm ——
Respondent's Name (Print)    Working Title    Reviewer's Name (Print)    Working Title

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | | Grievant's Signature | Date |

DISTRIBUTION:    White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

To Smith
5-Block

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 10/94
CSJ-247A

Date Received at Step I _____     Grievance Identifier: | | | | | | | | | | | | |

> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance
> procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Derrick Lee Smith | 267009 | ARF | 5-87 Top | 6-3-00 | 6-4-00 |

What attempt did you make to resolve this issue prior to writing this grievance?  On what date? on 6-3-00 - I Spoke
If none, explain why. With My Unit officer Mitchell about Why He Threatened
Me and it was not resolved So I Submit This grievance -
MAiled to ARF Grievance Coordinator

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted
to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. Today officer Mitchell
Told Me That I had Better Not File My Suit Because I
Was going To Submit it and I was Informed By Him
" I had Family to Protect" So I Had Better Never
File Any More grievance So I Submit This Threat
Because I shouldn't Be Prevented By an officer To
Not Do it - I ask for Help on This - and Action
To Be Taken -

Derrick Lee Smith
Grievant's Signature

---

RESPONSE (Grievant Interviewed?    ☐ Yes  ☐ No     If No, give explanation.  If resolved, explain resolution.)

Rejected

---

Respondent's Signature _____  Date _____   Reviewer's Signature _____  Date _____

Respondent's Name (Print) _____  Working Title _____   Reviewer's Name (Print) _____  Working Title _____

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | Grievant's Signature | Date |
|---|---|---|---|

DISTRIBUTION:  White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247  10/94
CSJ-247A

Date Received at Step I  _12-6-06_          Grievance Identifier: | O | C | F | O | 6 | 3 | 9 | O | 1 | 4 | 2 | 9 | 6 | 2 | 8 | A |

| Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library. |
|---|

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Derrick Smith | 267009 | LRF | OCF | 12-4-06 | 12-8-06 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? _I spoke with_
If none, explain why. Officer Neimi about Threats By Sean Combs and other
people Here at Ojibway and noone cared about the issue so
I submit my step 1 grievance on this —

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted
to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. _I was Told not To_
Speak about Being Raped By Sean Combs in 1997 and
That if I did — my family — friends and most importantly
my Mother and Friend George Preston Would Be Shot
To Death By orders of Sean Combs — so The Z Men
Who came To Me "Dennis Stokes" And "Twitch"
said You Better not Do Anything c/o Bastman Has Been
Paid By Combs To "Keep You Quiet" I Dennis Stokes "am
in Here for stabbing My Mother — so I will Stab You too
So Keep Daddy Diddy Raping You Quiet — I need to
Have Help To File a Report — But noone in Prison cares
Help Me —

_[signature]_ Derrick Smith
Grievant's Signature

---

RESPONSE (Grievant Interviewed? ☐ Yes ☒ No      If No, give explanation. If resolved, explain resolution.)

Vagee and Illegibe- Rejected

| | | | |
|---|---|---|---|
| _Mc guire_ [signature] | 12-10-06 | [signature] a lee | 12/10/06 |
| Respondent's Signature | Date | Reviewer's Signature | Date |
| _Mc guire_ | ACC | | |
| Respondent's Name (Print) | Working Title | Reviewer's Name (Print) | Working Title |

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. |  |
|---|---|---|
| | Grievant's Signature | Date |

DISTRIBUTION:   White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247  10/94
CSJ-247A

Date Received at Step I _____  Grievance Identifier: |2|0|2|4| |1|2|3|3|4|4|2|3|2|

> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130, available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Derrick Cardello-Smith | 267009 | LRF | 663Top | 3-20-24 | 3-22-24 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? On 3-20-24 I
If none, explain why. spoke with Deputy Warden Dale Bonn as to why He said
To Me what He said about P.Diddy - He did not care about
Me Being in Fear of Him or Diddy - So I submit This grievance
Mailed on 3-22-24

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On 3-20-24 while
on The Yard in a seperate area Deputy Warden Dale Bonn
Called me over - I said no - He said "Direct Order!" I came
and He said - "Diddy says you Better not sue me or
Press Any Charges on Me - I'll Have Your Family Killed!
I said why Do you Do what Him and His Friends say?
He said - "Money and Power" I said "I wont Fix Any
Thing at All - He said I've Been Telling You That for
Years Since Michigan Reformatory in 2012. I want This
Behavior To Stop - Please Process This grievance -

_(signature)_ Derrick Cardello-Smith
Grievant's Signature

---

RESPONSE (Grievant Interviewed?  ☐ Yes  ☐ No   If No, give explanation. If resolved, explain resolution.)

Rejected - No Processing - No Action
Does my Superior - Him and Diddy said
not to fix it - rejected
D. Bonn 3-22-24

| Respondent's Signature | Date | Reviewer's Signature | Date |
|---|---|---|---|
| D. Bonn | 3-22-24 | K Miller | 3/22/24 |
| Respondent's Name (Print) | Working Title | Reviewer's Name (Print) | Working Title |

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | Grievant's Signature | Date |
|---|---|---|---|

DISTRIBUTION:  White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

AFFIDAVITS OF GEORGE PRESTON ABOUT
THREATS WITH GUNS TO HIS HEAD
AND HIS LIFE THREATENED BETWEEN 1998 and 2023
IF PLAINTIFF FILE A RAPE CHARGE OF LAWSUIT
AND HIS INVESTMENTS INTO BAD BOY RECORDS LLC

Affadavit of George Preston

I George Preston was present during the following events in June 1997.

(1.) The sexualt assault of Derrick Lee Cardello Smith by musical, recording artist, businessman, and investment seeker Sean Combs aka P. diddy

(2.) This was a brutal sexual assault by Mr. Combs upon a Knocked out Derrick Lee Cardello Smith.

(3.) Mr. Combs used a syringe and injected a Knock-out symptom into the back/neck area of Cardello Smith and pistol whipped him while annally raping him with his penis.

(4.) This took place at a hotel in Adrian Michigan. There was a sign that said either a Holiday Inn or Days Inn Coming soon

con't

to the hotel where this happened.

(4.) I had given Mr. Combs money

(5.) into Bad Boy Records. I have reciepts and contracts signed and notarized by Mr. Combs, Judge Kym Worthy of Detroit, she is now a Prosecutor of Wayne County, and Cordello Smith

(6.) I was scared and shocked because I had never seen a man or anyone raped before, but I knew enough to keep my mouth shut.

(7.) Later on that morning after that event I went to a scheduled meeting with Combs, Worthy, Warren Evans, a police officer named Patrick Jackman, and other local government officials from Detroit that were investors into Bad Boy Records.

(8.) A car came screeching up to us into the Detroit Police Crime Lab and a man came out like a raging animal and had a tire iron in his hand. He smashed the Knees of 2 of Mr. Combs body guards, punched Mr. Combs in the face 4 times, knocked him to the ground and then was going to bring the tire iron into Mr. Combs face but Kym Worthy yelled to him, " You better not mess up my investment!".

(9.) I was moved away 20 minutes later, we all signed a hand written agreement where Cardello Smith's investment of $150,000.00 would stay with Bad Boy Records and Combs would stop any orders to kill Smith's family, Cardello Smith would face rape charges instead of Combs going down for multiple rapes.

(10.) Cardello Smith then went
to the hospital, I went
my way.

Verification

These events happened, I
will testify in court, they
are true, under the penalty
of perjury.

George Preston
7541 Yale Rd
Avoca Mi. 48006
(810) 689-3285

11/8/24

## INDIVIDUAL ACKNOWLEDGMENT

State/Commonwealth of _Michigan_

County of _Saint Clair_ } ss.

On this the _8th_ day of _November_ _2024_, before me,
     Day          Month           Year

_Sarah L. Armstrong_, the undersigned Notary Public,
    _Name of Notary Public_

personally appeared _George Preston_

                    _Name(s) of Signer(s)_

☐ personally known to me – **OR** –

☒ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same for the purposes therein stated.

WITNESS my hand and official seal.

_____
    _Signature of Notary Public_

```
SARAH L ARMSTRONG
Notary Public - State of Michigan
County of St Clair
My Commission Expires Mar 3, 2029
Acting in the County of Saint Clair
```

**Place Notary Seal/Stamp Above**

_EXP 03/03/2029_

_Any Other Required Information_
_(Printed Name of Notary, Expiration Date, etc.)_

────────── **OPTIONAL** ──────────

_This section is required for notarizations performed in Arizona but is optional in other states. Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document._

**Description of Attached Document**

Title or Type of Document: _Character Statement Derrick LeeCardello Smith_

Document Date: _NONE_      Number of Pages: _4_

Signer(s) Other Than Named Above: _NONE_

©2023 National Notary Association

M1304-07 (09/23)
Used for states (AL, AZ, CO, CT, DE, GA, IA, ID, IL, IN, KS, KY, LA, MD, ME, MI, MN, MS, MT, NC, ND, NE, NH, NJ, NM, OK, OR, RI, SC, SD, TN, VA, VT, WV, WI, WY)

United States District Court
Eastern District of Michigan

Derrick Lee Cardello Smith
    plaintiff

            V

Sean Combs
    defendant

Case No. 2:24-CV-
        12647

Hon. Judith Levy

Plaintiff's submission of
Affidavit verifying
threats upon George Preston
and family members by defendant
Sean Combs if plaintiff
persued rape claims by defendant
Sean Combs between Jan. 1998-2023

Plainiff submits the enclosed affidavit
for the court docket.
            Proof of Service
I mailed one copy of this pleading
to the defendants attorney of
record by U.S. Mail on 11-18-24
        Thank you
Derrick Lee Cardello Smith
    (1)      267009-2500 S. Sheridan Drive
                    Muskegon mi 4144

State of Michigan          Affidavit of George
County of St. Clair               Preston

I George Preston have had my life,
my families lives threatened by
Sean Combs and other individuals
working with and for Mr. Sean Combs
where guns were placed at my head
between 1998 - 2023 that if
Derrick Lee Cordella Smith pursued
filed or mentioned anything about
Sean Combs raping Derrick in 1997
or our cash investments into Bad
Boy Records, we would be killed
and Derrick's family members would
be killed. Derrick saved our lives.

_____ 11/18/24

(2)

**VERIFICATION ON OATH OR AFFIRMATION WITH AFFIANT STATEMENT**

State of _Michigan_ } ss.
County of _St. Clair_ }

☑ See Attached Document (Notary to cross out lines 1–7 below)
☐ See Statement Below (Lines 1–7 to be completed only by document signer[s], *not* Notary)

1 _____
2 _____
3 _____
4 _____
5 _____
6 _____
7 _____

_____    _____
*Signature of Document Signer No. 1*    *Signature of Document Signer No. 2 (if any)*

Subscribed and sworn to (or affirmed) before me

this _18th_ day of _November, 2024_, by
    Day      Month      Year

_George T. Preston_
*Name of Signer No. 1*

_____
*Name of Signer No. 2 (if any)*

_Jeanne M Dixon_
*Signature of Notary Public*

```
┌─────────────────────────────────────┐
│        JEANNE M DIXON                │
│  Notary Public - State of Michigan   │
│         County of St Clair           │
│ My Commission Expires Aug 26, 2029   │
│  Acting in the County of St. Clair   │
└─────────────────────────────────────┘
```

*Place Notary Seal/Stamp Above*

_____
*Any Other Required Information
(Residence, Expiration Date, etc.)*

────────────── **OPTIONAL** ──────────────

*Completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _Affidavit Character Reference_

Document Date: _N/A_     Number of Pages: _4_

Signer(s) Other Than Named Above: _N/A_

©2020 National Notary Association

M2010-02 (09/22)
Used for states (DE, GA, IA, IL, KS, MD, MI, MN, MS, MT, NC, ND, NH, NJ, OK, OR, WA,
WV, WI, WY)

AFFIDAVIT OF JOSEPH AMBROSE AS TO THE PLAINTIFF
HAVING BEEN THREATENED SINCE 1998 and 2024
BY OFFICERS AND INMATES ON BEHALF OF
MR. SEAN COMBS

```
STATE OF MICHIGAN)
                 )ss
COUNTY OF MUSKEGON)
```

### AFFIDAVIT OF JOSEPH AMBROSE #185357

I, Joseph Ambrose, do say that during the time of August,1998 through January, 2024, the following acts and following events did occur in my entire time of Knowing Mr. Derrick Lee Cardello-Smith #267009.

1. Different Prisoners in the Prisons we were at and most importantly, at the Muskegon Correctional Facility such as the "Puff Daddy Crew", the "BAD BOY STREET POSSE" the "PUFFY BOYS" the "DIDDY DEATH DONS" the "BLUE KNIGHTS" (Affiliate of the Detroit Police Departments Motorcyle Crew"-The "DETROIT DIDDY BOYS" & that these members of these Organizations did in fact exist and did approach Cardello-Smith in my Presence for many many different years and different times.

2. Michigan Department of Corrections Employees and Staff Members during the time of 1999 through February,1, 2024 had Approached Mr. Cardello-Smith #267009 over the years detailing very specific threats by the Sean Combs, Also known as PUFF DADDY and P. DIDDY and even Civilian Employees and Sub-Contracts of the MDOC, and they did approach Mr. Cardello-Smith relaying different messages and threats against Mr. Cardello-Smith.

3. These threats were heard by me, observed by me and witnessed by me and I say that the following were made against Derrick Lee Cardello-Smith as detailed herein-

a. Derrick, Puff Daddy Said that you had 'better not file a Lawsuit or Report that Rape at that Hotel".

b. Derrick, you had better not talk about the Shit I Injected into your neck."

c. Derrick, Sean Combs said that if you press Any kind of Lawsuit or Action against Me (Sean Combs) then, I will kill you, Your Family, Your Sisters, Your Brothers, your whole damn family and your Friends out there in St. Clair County-George Preston and His Family". You had better not say Shit, and you better keep Quiet."

d. I observed Officers Nalette, Cairnes, Jason Brock, Sablowsky, David Lalonde, Nick Curley, Daniel Miller, Amy Lawrence, Officer Smoker, Officer Sheldon Green, Officer Clark, Officer Sgt. Leon, Officer Caruty, Officer Morrisson, Officer Plichta, Officer Robinson, Officer Goostrey, Officer Neimi, Officer Bridgewater, Officer Brown, Officer Alford, officer King, all came to Mr. Cardello-Smith while in my presence over the years and time

frames of 1997 through 2023 and specifically told him (Cardello-Smith) that if he even so much as thought about making a report or a claim, that he would be killed and his family and friends and their families would be killed....I believed these events to be true and I knew it could happen.

e. These Indivisual members of the Gangs Listed above have in fact and did in fact make these Threats to Cardello-Smith over these many years and there were fights about it with Cardello-Smith was engaged in fighting with these people, these prisoners, these different persons who were and are gang members with alot of power inside and outside and affiliated with Bad boy Records and Sean Combs, and they did in fact make these threats against Cardello-Smith.

f. I also have seen Cardello-Smith make many many efforts to seek protection from the retaliation and they were all foiled & Ignored.
g. Mr. Cardello-Smith has spent his entire sentence detailing me the fears he lived with everyday knowing that if he ever reported the Sexual Assault upon him by Sean Combs, that he would be causing the death of his family and friends and it would be his actions causing their death by Sean Combs and his associates. This man has lived with this Fear everyday I have known him and it has resulted in his entire daily life being destroyed by the fear of knowing that if he reported it or filed on it Sean Combs would kill his family, friends and others and he had the means to do it and he would do it.

h. In March, he saw that Sean Combs' many properties were raided and searched by Homeland Security, and he knew that this meant that Sean Combs would be watched by the Federal Government and that this was his chance to take action and that Sean would not make a move against Derrick now that the Homeland Security was on his Tail, he felt relief and literally cried in my presence and he just shook all over the place at the thought of knowing that he had some way to get this out into the public and to get justice now for having been raped.

i. I have also witnessed firsthand the conversations between many different employees of the MDOC that Derrick and I were at over the years telling him that he "had better stop filing grievances on these issues" or "Puff Daddy" would have him Hurt, or Killed." Derrick even showed me the many different grievances that he filed and the responses and how they were all foiled or how he was pretty much just laughed at....none of them went through actual full process and they were rejected, but there were many attempts made by him to get help for this but he was thwarted every step of the way.

j. I have seen this man deal with this part of his life throughout the entire time we have known each other and it is a tragedy that if he had acted on it, he would have been the reason for his family dying and friends dying, because Sean

Combs has the means in those days to do it, until he was Raided by Homeland Security.

I will testify to these events and experiences as being true and real and happening, because they happened and were experienced and witnessed by me...Just call me to Court and I will testify and also, provide you with the Proof of it, that I have had over the years...

## DECLARATION AND VERIFICATION

I swear and declare under the Penalty of Perjury that these events have happened as described within and that the facts of them are true and real and I experienced these facts, descriptions and events and witnessed them as that they did happen, and I will make swear to it in open court because even though I am a prisoner, I am telling the truth.

11-21-24

Mr. Joseph Ambrose #185357
E.C. Brooks Correctional Facility
2500 S. Sheridan Drive
Muskegon, MI 49444

_____
Signature of Notary Public

ALEX JIMERSON
Notary Public, State of Michigan
County of Muskegon
My Commission Expires___4/29
Acting in the County of _Muskegn_

3.

PROOF OF SERVICE
AND NOTICE OF SERVICE

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ | 1.88 |
| Certified Fee | | 4.40 |
| Return Receipt Fee (Endorsement Required) | | 3.65 |
| Restricted Delivery Fee (Endorsement Required) | | 11.65 |
| Total Postage & Fees | $ | 21.58 |

DEDUCTED
Postmark Here
APR 2024

Sent To Sean Combs and George Preston for Sean Combs
Street, Apt. No.; or PO Box No. 7541 Yale Road
City, State, ZIP+4 Avoca, MI 48006

PS Form 3800, August 2006          See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ | 3.15 |
| Certified Fee | | 4.85 |
| Return Receipt Fee (Endorsement Required) | | 4.10 |
| Restricted Delivery Fee (Endorsement Required) | | 11.65 |
| Total Postage & Fees | $ | 23.75 |

DEDUCTE
Postmark Here
OCT 24 2024

Sent To Kathryn Preston for Sean Combs
Street, Apt. No.; or PO Box No. 596 St. James Street
City, State, ZIP+4 Marysville, MI 48040

PS Form 3800, August 2006          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Sean Combs - George Preston for Sean Combs, Cosign for Sean Combs
7541 Yale Road Avoca, MI 48006
Notice of Lawsuit

9590 9402 7768 2152 1818 08

2. Article Number (Transfer from service label)
7013 0600 0002 2198 4494

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☑ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
George W.   4-15-24

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Kathryn Preston for Sean Combs - Agent for Sean Combs - 596 St. James Marysville, MI 48040

9590 9402 7768 2152 1817 30

2. Article Number (Transfer from service label)
7011 2000 0001 1878 9049

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☑ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Kathy Preston   11-02-24

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

LETTER FROM THE CLERK OF THE COURT OF APPEALS
DIRECTING MR. FINK TO CORRECT DEFECTIVE FILINGS SHOWING
EVEN SEASONS LAWYERS MAKE SERIOUS FILING ERRORS
AND SO THE PRISONER PLAINTIFF DID SO IN THE
ACCIDNTAL FILING IN MONROE COUNTY CIRCUIT COURT



Jerome W. Zimmer Jr.
Chief Clerk

# Michigan Court of Appeals
## Office of the Clerk
### Detroit Office

November 15, 2024

David H. Fink
[dfink@finkbressack.com
dfink@finkandassociateslaw.com]

      Re:  **DERRICK LEE CARDELLO-SMITH V SEAN COMBS**
      Court of Appeals No.  372888
      Lower Court No.  24-007362-NO
      Document Submitted:  Answer to Application

Dear Attorney Fink:

**This office has received your papers in the above captioned matter.  Your submission is defective because your exhibits are not bookmarked.  Please refile your exhibits with bookmarks added for all sub-exhibits as required by MCR 7.212(J)(2).  The bookmarked exhibits only should be filed under the "Defect Correction" tab in MiFile.**

Unless the above is filed within 14 days of this letter, your papers will be returned to you or stricken.

                  Sincerely,
                  Office of the Clerk

                  By:  _/s/_____

CLK/dg
cc:  Derrick Lee Cardello-Smith
                  D. Gleton

DETROIT OFFICE
CADILLAC PLACE
3020 W. GRAND BLVD. SUITE 14-300
DETROIT, MICHIGAN 48202-6020
(313) 972-5678

TROY OFFICE
COLUMBIA CENTER
201 W. BIG BEAVER RD. SUITE 800
TROY, MICHIGAN 48084-4127
(248) 524-8700

GRAND RAPIDS OFFICE
STATE OF MICHIGAN OFFICE BUILDING
350 OTTAWA, N.W.
GRAND RAPIDS, MICHIGAN 49503-2349
(616) 456-1167

LANSING OFFICE
925 W. OTTAWA ST.
P.O. BOX 30022
LANSING, MICHIGAN 48909-7522
(517) 373-0786

COURT OF APPEALS WEB SITE ~ http://courts.mi.gov/courts/coa/

DETROIT POLICE REPORT HELD FOR 27 YEARS
BY KIM WORTHY AND THEN GIVEN TO PLAINTIFF BY DETROIT
POLICE DEPARTMENT AND IT IS REAL AND NOT FALSE
AS THE DEFENDANTS HAVE SAID WITHOUT
MERIT FROM THE DPD





**police**

06/15/97
03:30am

Writer Responded to Incident at Detroit
Crime Lab where officers were stopping and incident
involving several Persons identified As - Sean Combs - (artist)
Klm Worthy - official A. rogers (17 year old male)
Derrick Smith (24 year old black male) 2 fights
had happend with Smith and Combs - Worthy had
Uttered to Smith "you mess up my investment and I'll put
multiple rapes on you like i did other men - we have
a warehouse filled with kits from rapes"! Smith said you
just want to keep men locked up for things we did
not do - she said sob try me's writer Spoke with
officers from Adrian, Lenawee P.D. & determined further
investigation warranted. will do follow ups

RECEIVED by MCOA 11/18/2024 9:16:38 PM

Patrick Jackman135
Sat. Silent Run
Officer lesponse

089

VISITOR LIST SHOWING PLAINTIFF WAS VISITED
BY DEFENDANT SEAN COMBS

*JCF   Cardello-Smith 267009  ACF*

MICHIGAN DEPARTMENT OF CORRECTIONS                                    CAJ-334
**VISITOR LIST**  *Cr Robert Cotton Correctional Facility*

**Instructions:**  List below the names of people you would like to have considered for approval to visit you. The list may include as many immediate family members i.e. parent, grandparent, step-parent, spouse, mother-in-law, father-in-law, child, stepchild, grandchild, sibling, step-sibling, half-sibling and aunt and uncle (if verification is provided that s/he served as a surrogate parent) as you have that qualify for a visit and up to 10 non-immediate family members.

In the relationship section list the person's relationship to you, i.e., mother, father, sister, etc. All people who do not meet the definition of immediate family member will be listed as friends. Your Visitor List cannot include persons who are less than 18 years of age unless that person is an emancipated minor and can show proof of emancipation or unless the person is your child, grandchild, stepchild, sibling, step-sibling or half-sibling.  *Florence Crane*

**NOTE:**  You are permitted to add or delete names of immediate family members from your Visitor List at any time however; addition or deletion of non-family members is permitted only one time during a six month period. *Prisoner at Florence Crane. Due to Bedspace*

**Submit this list to your RUM once it is completed.**

| Prisoner Number | Prisoner Name (Print) | Date |
|---|---|---|
| 267009 | Derrick Lee Cardello-Smith | 4-10-05 |

| RUM/Designee (Print Name) | Signature | Date |
|---|---|---|
| RUM Howz | Howz | 4-12-05 |

| | Last Name | First Name | Relationship | Add (A) Remove (R) | Comments STAFF USE ONLY |
|---|---|---|---|---|---|
| 1. | Smith | Rhonda | Mother | A | PSI |
| 2. | Smith | Derrick | Son | A | PSI |
| 3. | Beadle | Bryan | Army Chaplain | A | PSI |
| 4. | Combs | Sean | Friend | A | |
| 5. | Brafman | Ben | Financial Agent Friend | A | |
| 6. | Penman | Patricia | Detective | A | |
| 7. | Cobb | David | Detective | A | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| 13. | | | | | |
| 14. | | | | | |
| 15. | | | | | |
| 16. | | | | | |
| 17. | | | | | |
| 18. | | | | | |
| 19. | | | | | |
| 20. | | | | | |

*Approved by Lawrence Amy Prison Counselor IZ unit TA And unit RUO Wurthington*

RECEIVED by MCOA 11/12/2024 9:16:38 PM

**Distribution:** ☑ Institution File   ☑ Counselor File   ☑ Prisoner

086

CLASS II MISCONDUCT FOR ATTEMPTING TO REPORT RAPE
BY DEFENDANT SEAN COMBS UPON PLAINTIFF AND
BEING PUNISHED FOR 5 DAYS TOP LOCK
BY DEPUTY WARDEN DALE BONN

MICHIGAN DEPARTMENT OF CORRECTIONS
**MISCONDUCT REPORT**

CSJ-228
4/24    4835-3228

| Prisoner Number: 267009 | Prisoner Name: Darrick Lee Cardell Sm-L | Facility Code: ICF | Lock: C 63 Top | Violation Date: 3-22-24 |
|---|---|---|---|---|

Time and Place of Violation: *in front of office*

Contraband Removal Record Provided to Prisoner? ☐ Yes  Date _____ ☐ N/A

Misconduct Class: ☐ I ☒ II ☐ III    Charge(s): 420 (s) Disobeying a Direct Order (s)

Describe Violation (If contraband involved, describe in detail; identify any other employee witnesses):
On 3-20-24, I spoke with prisoner Cardell Sm #267009 about a grievance he wrote about Sgt. Pennell and I told him that he is "Not To write any GRIEVANCES on THIS MATTER." I had already been telling him not to grieve these issues as they are not moving on to STEP II, and I have told him about this so 2 to 3 times he just kept disobeying me, so I am forced to issue this misconduct report for Disobeying a Direct Order. see Grievance #202301703942282

| Reporting Staff Member's Name (Print): Dale Bonn | Reporting Staff Member's Signature | Date and Time Written: 3-22-24  14:22 PM |
|---|---|---|

**REVIEW**

Location/Verification/Condition of Evidence:

Elevated to Class I at review: ☐ No ☐ Yes    If "yes", explain reason:

**COMPLETE THIS SECTION ONLY FOR REVIEW OF CLASS I MISCONDUCT**

Status Pending Hearing: ☐ Bond  ☐ Segregation  ☐ Confinement to Cell/Room  ☐ Other
Reason if Non-Bond: ☐ Non-Bond List  ☐ Bond Revoked (must give reason)

Date and Time Given this Status: ____    Who Notified in Housing Unit of Status:

Hearing Investigator Requested? ☐ No ☒ Yes    Witnesses Requested? ☐ No ☐ Yes
If yes, list:

Relevant Documents Requested? ☐ No ☒ Yes
If yes, list:

Additional Comments: Prisoner has been warned before

Prisoner Waives 24 Hour Notice of Hearing? ☒ No ☐ Yes
Hearing Date: 3/26/24

| Reviewing Officer's Name (Print): Sgt. Douglas Miller | Reviewing Officer's Signature | Review Date and Time: 3-23-24  15:33 pm |
|---|---|---|

I have received a copy of this report. My signature does not necessarily mean that I agree with the report.
☐ Prisoner refused to sign. Copy given to prisoner.

Prisoner's Signature: Darrick Lee Cardell Sm

Date: 3/23/24

**WAIVER OF CLASS II OR III HEARING**

I understand I have a right to a hearing. I waive my right to a hearing and plead guilty to all charges. I also waive my right to appeal and accept the sanctions imposed.

Prisoner's Signature _____    Date _____

**SANCTIONS IMPOSED (Hearing Investigator enters begin and end dates for Class II misconducts)**

| 5 days Days Toplock | Begins: 3-28-24 | Ends: 4-2-24 | ☐ Counseling/Reprimand (Class III only) |
|---|---|---|---|
| _____ Days Loss of Privileges | Begins: _____ | Ends: _____ | ☐ $ _____ Restitution (Class II only) |
| _____ Hours Extra Duty | Begins: _____ | Ends: _____ | |

Property Disposition If Applicable: _____

| Employee Accepting Plea and Imposing Sanction (Print): Sgt. Douglas Miller | Employee's Signature | Date: 3-23-15:34 pm |
|---|---|---|

| Hearing Investigator's Name (Print) | Hearing Investigator's Signature | Date |
|---|---|---|

**Barrier to communication:** [ ] None [ ] Blind/Low Vision [ ] D/HH [ ] Other _____  See (circle one) CSJ-572C /Case Notes
for required effective communication documentation.
Distribution: Prisoner; Counselor File; Record Office File (Class I and II); Central Office File (Class I); Hearing Investigator (Class I & Class II) Respective Regional Business Office

LETTER FROM PLAINTIFFS MOTHER
STATING FAMILY HAS BEEN VIOLENTLY ATTACKED
AND THREATENED BY P.DIDDY IF THE
PLAINTIFF FILED A LAWSUIT AGAINST HIM

Rhonda Smith
19246 Hoyt
Derroit, MI 48205

Derrick Cardello-Smyth
#267009
2727 East Beecher Street
Adrian, MI 494221

MAY 6, 2000

Dear Derrick -

Hello Son -- I hope your okay, listen your in there
But I had to tell you what has been happen out
Here with Puff Daddy and his crew -- those damn
Daddy Death Dons -- and those Terrible Boys -- They
came and threatened your sister Tina and they
Threatened me and they said that Sean Combs, that
guy over at Bad boy who you use hang out with
and give that Money to before you came to prison,
They said that 'If you said anything about something
He did to you, that he would kill us or hurt us bad!"
What have you gotten us into? What has you son? Let me know
But whatever it is they are serious and had Gun
up to my head and said you better not file anything
Again Sean from happen between you 2 in June 1997'.

I do not know what it is, but you bit not file anything Because they are Serious...

I will you when I can...

Love, Mom
      1S1Rhona Smith

LETTER FROM PLAINTIFFS SISTER ABOUT NOT FILING GRIEVANCES
AND THREATS MADE AGAINST HER BY DIDDY AND HIS CREW

Derrick-Stop Writing Grievances on Daddy. Because when you do the people at prison let him know.

Derrick - Puff Daddy has threatened me Mostly Because you have Written grievances on what he did to you and the people you talk to are connected to him So you need to stop it. He already beat your Brother up Bad.

U don't write grievances cause them people in the jail will call let him know - don't wrote about the guy Raping you. I'm sorry about that But our lives still go on and I'll was just cut me with a knife. I don't write anymore grievances Big Brother. If you value our lives.

love
Tina 4/24/24

CASE LAW SUPPORTING EQUITABLE TOLLING
OF THE STATUTE OF LIMITATIONS AND THE PLAINTIFS
CLAIMS OF ONGOING VIOLATIONS AND EMERGING
VIOLATIONS DOCTRINE AND TOLLING OF THREATS OF
FEAR OF MURDER AND RETALIATION

 Positive
As of: November 26, 2024 4:52 PM Z

# *Davis v. Jackson*

United States District Court for the Southern District of New York

September 30, 2016, Decided; September 30, 2016, Filed

Case No. 15-CV-5359 (KMK)

**Reporter**
2016 U.S. Dist. LEXIS 136034 *; 2016 WL 5720811

TIQUAN DAVIS, Plaintiff, -v- CORRECTION OFFICER ANGELA JACKSON, CORRECTIONS LIEUTENANT JOHN DOE DONAHUE, CORRECTIONS LIEUTENANT GEORGE JOHN DOE, CORRECTIONAL SGT. GINAH SHIBAH, SGT. JANE DOE O'CANA, and C.O. RAYMOND L. ORTIZ, in their individual and official capacities, Defendants.

**Subsequent History:** Motion granted by, in part, Motion denied by, in part, Without prejudice *Davis v. Jackson, 2018 U.S. Dist. LEXIS 3327 (S.D.N.Y., Jan. 8, 2018)*

Summary judgment granted by *Davis v. Grant, 2019 U.S. Dist. LEXIS 20989 (S.D.N.Y., Feb. 8, 2019)*

## Core Terms

retaliation, equitable tolling, inmate, marks, quotation, exhausting, fear of retaliation, tolling, accrued, administrative remedy, statute of limitations, allegations, correction officer, plaintiff's claim, grievance, pro se, prison, extraordinary circumstances, due process claim, administrative appeal, disciplinary hearing, retaliation claim, proceedings, motion to dismiss, official capacity, disciplinary, alteration, deprived, reasonable diligence, psychological

**Counsel:** [*1] Tiquan Davis, Plaintiff, Pro se, Ossining, NY.

For Correction Officer Angela Jackson, Corrections Lieutenant Donahue, Correctional Sgt. Ginah Shibah, and C.O. Raymond L. Ortiz, Defendants: Yan Fu, Esq., New York State Attorney General, New York, NY.

**Judges:** KENNETH M. KARAS, UNITED STATES DISTRICT JUDGE.

**Opinion by:** KENNETH M. KARAS

## Opinion

OPINION & ORDER

KENNETH M. KARAS, District Judge:

Tiquan Davis ("Plaintiff"), proceeding pro se, brings this Action against Correction Officer Angela Jackson ("Jackson"), Correction Officer Raymond Ortiz ("Ortiz"), Sergeant Ginah Shibah ("Shibah"), Lieutenant "John Doe" Donahue ("Donahue"), Lieutenant "John Doe" George ("George"), and Sergeant "Jane Doe" O'Cana ("O'Cana"), employees of the New York State Department of Correction and Community Supervision ("DOCCS"), pursuant to *42 U.S.C. § 1983*. (Dkt. No. 2.)[1] Before the Court is Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (Dkt. No. 22.) For the reasons explained herein, Defendants' Motion To Dismiss is granted without prejudice.

I. Background

A. Factual Background

The following facts are collected from Plaintiff's Complaint and are, for purposes of this Motion, accepted as true.

1. The September 18, 2011 Incident

---

[1] A review of the docket reveals that Defendants George and O'Cana have not been served, nor are they represented by the New York State Attorney General. (Defs.' Mem. of Law in Supp. of [*2] Defs.' Mot. To Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mem.") 1 n.1 (Dkt. No. 23).) Thus, these Defendants are not considered movants for purpose of the Motion.

2016 U.S. Dist. LEXIS 136034, *2

Plaintiff is an inmate at Sing Sing Correctional Facility ("Sing Sing") and also has been an inmate at Southport Correctional Facility ("Southport"). (See Compl. 1-2 (Dkt. No. 2).)[2] On September 18, 2011, Correction Officer Bonner ("Bonner") gave Plaintiff authorization to make rounds on R&W Company in HBA-block, but, while he was making "I.L.C. rounds" on R company, Jackson told Plaintiff to show his hands and, after he did so, to put his hands on the gate for a pat frisk. (See id. at 9.)[3] At that time, Bonner yelled to Jackson to "leave [Plaintiff] alone," to which she responded by saying, "tell him to get the fuck off my company." (Id.) Plaintiff then turned to leave the company, but Jackson grabbed him by his sweater, and yelled, "[w]hat's all that you just dropped on the floor[?]" (Id.) Plaintiff, "in an attempt to stop this [correction officer] [*3] from grabbing him so roughly," grabbed Jackson's hands and told her to stop playing, at which time Correction Officers Sandiford and Grant grabbed Plaintiff from behind and took him to the ground without resistance. (Id.) While Plaintiff was being handcuffed, Shibah, the area supervisor, came and told Garcia to take Plaintiff to the shower on Q-Company and to take him to the hospital for a use of force examination. (Id.)

While Plaintiff was in the hospital, he met with his I.L.C. staff advisor, Sergeant Williams ("Williams"), who asked Plaintiff, "[h]ow the hell did you let a chick like Jackson catch you with weed[?]" [*4] (Id.) Plaintiff at first thought Williams was kidding, but Williams said he was "dead serious," and said that Jackson claimed that Plaintiff came on the company with a handful of loose marijuana. (Id.) Plaintiff said he never had any marijuana on him, let alone loose in his hand, and posited that Jackson set him up because he had complained to the night block sergeant that Jackson had been preventing him from doing rounds on the company a few nights before. (Id. at 9-10.) Photos were taken of

Plaintiff, and he provided a written statement. (Id. at 10.) Afterwards, he was taken to the disciplinary office to provide a urine sample, which came back negative for drug use. (See id.) Plaintiff was then brought to the HBC-SHU, and while in the special housing unit (the "SHU"), he received a misbehavior report written by Jackson and authorized by Shibah on September 18, 2011 charging him with several rule violations, which he identifies as "106.10 (direct order), 115.10 (frisk), 100.11 (ass[a]ult on staff), [and] 113.25 (drug possession)." (Id.) Thereafter, a tier III superintendent's hearing was conducted by Lieutenant Pinker, at which Plaintiff objected to the fact that he was denied Shibah and Correction Officer C. [*5] Benjamin ("Benjamin") as witnesses, since they were both involved in the misbehavior report. (Id.) Plaintiff was then found guilty of all of the charges except the frisk charge. (Id.) Plaintiff was given a penalty of 24 months in the SHU and 24 months' loss of all other privileges, including recommended loss of good time.

## 2. The October 20, 2011 Incident

On October 20, 2011, while in the SHU, Ortiz came to Plaintiff's cell and asked, "[a]re you ready[?]" (Id.) Plaintiff responded, "no," and Ortiz then said, "you wanna play games[,] so now [I]'m gonna play games." (Id.) Ortiz then told another correction officer to turn off the water in Plaintiff's cell, and Ortiz said, "[I]'m gonna play games this time, let's see you get around this one," and "remember that time when you pissed in the bullpen[?] [R]emember when you wrote my boy [P]erez up[?] [W]e ain[']t forget that." (Id.) Ortiz then ordered Plaintiff to urinate into two separate bottles, one of which Ortiz placed into his top pocket, and the other of which was placed in a cup with a lid on it. (Id.) As Ortiz was leaving, he said, "now [I]'m gonna show you how to play games." (Id.) Several hours later, Plaintiff received a misbehavior report written by Ortiz [*6] in which it was alleged that Plaintiff tested positive for drugs. (Id.)

## 3. Disciplinary Hearing Proceedings

In connection with Plaintiff's discipline hearing, Plaintiff was provided with O'Cana to be his "tier assistance." (Id. at 11.)[4] Plaintiff asked O'Cana to view the SHU

---

[2] Because the Complaint comprises both a filled-out § 1983 complaint form and a statement of facts, each with its own numbering system, the Court's citations refer to the ECFgenerated page numbers in the upper right-hand corner of the document.

[3] The term "I.L.C." likely refers to the Inmate Liaison Committee program. See Dolan v. Connolly, 794 F.3d 290, 292, 294 (2d Cir. 2015) (discussing the inmate liaison committee at another correctional facility and indicating that "the ILC is a group of inmates elected to communicate grievances to officials" (internal quotation marks omitted)); see also New York State DOCCS Directive 4002 (July 21, 2015), http://www.doccs.ny.gov/Directives/4002.pdf .

---

[4] The Court surmises that O'Cana was assigned to Plaintiff as an assistant in his disciplinary proceeding. Cf. N.Y. Comp. Codes R. & Regs. tit. 7, § 251-4.1 (providing that "[a]n inmate

video and audio from the HBC 2 gallery from October 20, 2011, for the hours of 11:45 AM to 1:26 PM, and to report the results back to Plaintiff because Plaintiff wanted the footage as evidence at his hearing so that he could "prove everything . . . Ortiz did and said during the urine collection process." (*Id.*) Despite Plaintiff's request, O'Cana never viewed the footage. (*Id.*)

Subsequently, a tier III hearing was held, and George—who, according to Plaintiff, works in the disciplinary office with Ortiz and who approved Plaintiff's **[*7]** urine test—served as hearing officer. (*Id.*) During the proceedings, Plaintiff requested, but was denied, access to certain witnesses and materials, including the SHU video and audio footage, his urologist, his kidney specialist, the nurse administrator the mental health chief unit (who both provided e-mails prior to the hearing), and the drug-testing manual. (*Id.*) Plaintiff was then found guilty and given as punishment 24 months in the SHU and 24 months' loss of all other privileges, including recommended loss of good time. (*Id.*) In December 2011, Plaintiff was transferred from Sing Sing to Southport, with a total of 48 months in the SHU and 48 months' loss of all other privileges, including recommended loss of good time. (*Id.*)

4. Plaintiff's Appeal and Rehearing

Plaintiff filed an administrative appeal challenging both proceedings and at least partially succeeded on each. (*See id.* at 11-12.) On February 3, 2012, the Director of Special Housing (the "Director") modified the penalty imposed for Ortiz's misbehavior report and the hearing that resulted from it. (*Id.* at 11.) In so doing, he reduced the penalty from 24 months' time in the SHU to 18 months, but kept the remaining penalties in place. (*Id.*) Additionally, **[*8]** on February 7, 2012, the Director reversed the hearing for the September 18, 2011 incident due to the absence of two witnesses and ordered a rehearing, which was conducted by Donahue and concluded on March 7, 2012. (*Id.*) The rehearing was conducted at Southport and concluded on March 7, 2012. (*Id.* at 12.) Plaintiff was then found guilty of all four charges, including the frisk charge, of which he had earlier been found not guilty. (*Id.*) Plaintiff was then given 36 months in the SHU and 36 months' loss of all

other privileges, a 12-month increase on both fronts from his earlier penalty. (*See id.* 10, 12.)

In response to this heightened penalty, Plaintiff filed an administrative appeal to the Director on March 17, 2012, and his SHU time was modified from 36 months back to 24. (*Id.* at 12.) Plaintiff then filed an unsuccessful Article 78 proceeding challenging both tier III hearings. (*Id.*) Plaintiff filed an appeal, but it was dismissed because he could not afford the filing fee. (*Id.* at 12.) In the end, Plaintiff served a total of 30 months in the SHU. (*Id.*; *see also* Pl.'s Mem. of Law in Supp. of Pl's Reply ("Pl.'s Opp'n") 3 (Dkt. No. 33) ("After being in solitary confinement for 910 days[,] [P]laintiff was transferred directly back **[*9]** to Sing Sing . . . .").[5]

B. Procedural Background

On July 7, 2015, Plaintiff filed his Complaint, (*see* Dkt. No. 2), and sought leave to proceed in forma pauperis, (*see* Dkt. No. 1), which was granted on July 15, 2015, (*see* Dkt. No. 4). On November 24, 2015, Defendants sought permission to move to dismiss, (*see* Dkt. No. 19), and, on December 28, 2015, they filed their Motion and accompanying papers, (*see* Dkt. Nos. 22-27). After several extensions, Plaintiff filed his Opposition on June 7, 2016, (*see* Dkt. No. 33), and, on June 29, 2016, Defendants submitted their Reply, (*see* Dkt. No. 37). Plaintiff submitted a surreply on July 22, 2016. (*See* Dkt. No. 41.) Defendants filed their own surreply and accompanying papers on September 13, 2016. (*See* Dkt. Nos. 48-50.)

II. Discussion

A. Standard of Review

In order to determine what standard applies to Defendants' Motion, the Court must first decide whether it will, consistent with Defendants' proposal, (*see generally* Mem. of Law in Supp. of Defs.' Mot. To Dismiss or, in the Alternative, **[*10]** for Summ. J. ("Defs.' Mem.") (Dkt. No. 23) (presenting Motion as one brought under *Rule 12(b)(6)* or *Rule 56*)), convert the Motion to one for summary judgment so that the Court

---

shall have the opportunity to pick an employee from an established list of persons who shall assist the inmate when a misbehavior report has been issued against the inmate if," among other things, "the inmate is charged with drug use as a result of a urinalysis test").

---

[5] Plaintiff's memorandum in support of his reply is included in a single docket entry along with his "reply motion" and declaration in support of his reply. (*See* Dkt. No. 33.)

can consider additional material beyond that presented in Plaintiff's submissions. *Cf. Fed. R. Civ. P. 12(d)* ("If, on a motion under *Rule 12(b)(6)* . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under *Rule 56*. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). "Federal courts have complete discretion in determining whether to exclude material beyond the pleadings or to convert a motion to dismiss into a motion for summary judgment." *Mason Tenders Dist. Council of Greater N.Y. v. W. Sur. Co., No. 15-CV-9600, 2016 U.S. Dist. LEXIS 98759, 2016 WL 4098568, at *3 n.1 (S.D.N.Y. July 28, 2016)* (internal quotation marks omitted). Given that "notice is 'particularly important' for a pro se litigant, who must be 'unequivocal[ly]' informed 'of the meaning and consequences of conversion to summary judgment,'" *Parada v. Banco Indus. De Venez., C.A., 753 F.3d 62, 68 (2d Cir. 2014)* (quoting *Hernández v. Coffey, 582 F.3d 303, 307-08 (2d Cir. 2009)*), and given the factual disputes underlying the allegations in this case, the Court is not persuaded that conversion is appropriate here.

Turning to the standard under *Federal Rule of Civil Procedure 12(b)(6)*, "[w]hile a complaint attacked by a *Rule 12(b)(6)* motion to dismiss does not need detailed factual allegations, a plaintiff's obligation **[*11]** to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (alterations and internal quotation marks omitted). Indeed, *Rule 8 of the Federal Rules of Civil Procedure* "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alterations and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id. at 563*, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id. at 570*, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.; see also Iqbal, 556 U.S. at 679*

("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But **[*12]** where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting *Fed. R. Civ. P. 8(a)(2)*)); *id. at 678-79* ("*Rule 8* marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In addition, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)* (per curiam). Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc., 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014)* (citing *Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012)*). "In adjudicating a *Rule 12(b)(6)* motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999)* (internal quotation marks omitted); *see also Hendrix v. City of New York, No. 12-CV-5011, 2013 U.S. Dist. LEXIS 179259, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013)* (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his or her complaint] liberally and interpret[] **[*13]** [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013)* (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A., No. 12-CV-1217, 2013 U.S. Dist. LEXIS 169743, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013)* (same), *aff'd sub nom. Farzan v. Genesis 10, 619 F. App'x 15 (2d Cir. 2015)*. In deciding a motion to dismiss a pro se complaint, it is appropriate to consider certain "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco, No. 12-CV-2907, 2013 U.S. Dist. LEXIS 110398, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)* (internal quotation marks omitted), including "documents that a pro se litigant attaches to

2016 U.S. Dist. LEXIS 136034, *13

his [or her] opposition papers," *Agu v. Rhea, No. 09-CV-4732, 2010 U.S. Dist. LEXIS 132706, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010)* (italics omitted); *see also Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013)* (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)* (internal quotation marks omitted); *see also Caidor v. Onondaga County, 517 F.3d 601, 605 (2d Cir. 2008)* ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B. Analysis

1. Sovereign Immunity

Plaintiff has brought claims against Defendants in both their individual and official capacities. (*See* Compl. 1.) Defendants argue that "the *Eleventh Amendment* bars Plaintiff's [claims against [*14] Defendants in their official capacities] and request for monetary damages." (Defs.' Mem. 7.) The *Eleventh Amendment* prohibits suits against a state or its agency in federal court unless the state consents or there has been a valid abrogation of its sovereign immunity by an act of Congress. *See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-01, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)*. *Section 1983* does not constitute such an abrogation. *See Quern v. Jordan, 440 U.S. 332, 343, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979); Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002)* (affirming dismissal of *§ 1983* claims for damages against state, department, prison, and prison officials in their official capacities on *Eleventh Amendment* grounds); *see also Moreau v. Peterson, No. 14-CV-201, 2015 U.S. Dist. LEXIS 91073, 2015 WL 4272024, at *5 (S.D.N.Y. July 13, 2015)* ("[The] [d]efendants are employees of DOCCS and, as such, officials of the State of New York. [The] [p]laintiff's claims against [the] [d]efendants in their official capacities are therefore considered to be claims against the State, and are barred by the *Eleventh Amendment*."), *appeal filed*, No. 15-2534 (Aug. 11, 2015); *Leer v. Fisher, No. 13-CV-8529, 2015 U.S. Dist. LEXIS 11944, 2015 WL 413253, at *6 (S.D.N.Y. Feb. 2, 2015)* (dismissing *§ 1983* claims against prison officials in their official capacities); *Shannon v. Venettozzi, No.*

*13-CV-4530, 2015 U.S. Dist. LEXIS 2020, 2015 WL 114179, at *3 (S.D.N.Y. Jan. 8, 2015)* (dismissing claims against prison officials in their official capacities), *appeal filed*, No. 15-2484 (Aug. 6, 2015). Accordingly, all claims against Defendants in their official capacities are dismissed on the grounds of *Eleventh Amendment* sovereign immunity.

2. Timeliness

Defendants also argue that Plaintiff's retaliation claims against Jackson and Ortiz and his due process claims against [*15] Jackson and Shibah are time-barred. (*See* Defs.' Mem. 5-7.) Defendants are correct that, on the facts pleaded, Plaintiff's claims are untimely. The claims are therefore dismissed, but without prejudice.

Although "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove," a statute of limitations defense may be "raise[d] . . . in a pre-answer *Rule 12(b)(6)* motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008); see also Zhongwei Zhou v. Wu, No. 14-CV-1775, 2015 U.S. Dist. LEXIS 26411, 2015 WL 925962, at *3 (S.D.N.Y. Mar. 3, 2015)* (same); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014)* ("Because the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run." (alteration and internal quotation marks omitted)).

When a plaintiff brings an action under *§ 1983*, "courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013); see also Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997)* ("In *[§] 1983* actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions.'" (alterations omitted) (quoting *Owens v. Okure, 488 U.S. 235, 249-50, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989)*)). The statute of limitations for personal injury actions in New York is three years. *See Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002); see [*16] also N.Y. C.P.L.R. § 214(5)*. "*Section 1983* actions filed in New York are therefore subject to a three-year statute of limitations." *Hogan, 738 F.3d at 517* (citing, inter alia, *Pearl, 296 F.3d at 79*); *see also Staten v. Village of Monticello, No. 14-CV-4766, 2015 U.S. Dist. LEXIS*

*145401, 2015 WL 6473041, at \*5 (S.D.N.Y. Oct. 26, 2015)* (same). Federal law determines when a *§ 1983* cause of action accrues, and the Second Circuit has ruled that "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl, 296 F.3d at 80* (internal quotation marks omitted); *see also MacFarlane v. Ewald, No. 10-CV-2877, 2016 U.S. Dist. LEXIS 100393, 2016 WL 4076585, at \*3 (E.D.N.Y. Aug. 1, 2016)* (same); *Rankel v. Town of Somers, 999 F. Supp. 2d 527, 539 (S.D.N.Y. 2014)* (same). Accrual does not wait "until the [plaintiff] has received judicial verification that the defendants' acts were wrongful." *Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1994)*. Nevertheless, "claims brought by an inmate under the Prison Litigation Reform Act . . . *42 U.S.C. § 1997e(a)*, are entitled to equitable tolling during the time period the inmate is exhausting his administrative remedies." *Gonzalez v. Hasty, 651 F.3d 318, 319 (2d Cir. 2011)*. However, such tolling is limited to the "time period in which the inmate is *actively exhausting* his administrative remedies." *Id. at 322 n.2* (emphasis in original).

a. Has the Statute of Limitations Lapsed?

In order to determine whether Plaintiff's claims are timely, it is, of course, incumbent upon the Court to determine when they accrued. Here, as Defendants rightly note, (*see* Defs.' Mem. 5-7), Plaintiff alleges two types of claims, specifically (1) *First Amendment* retaliation and (2) **[\*17]** procedural due process.

With respect to the former, the claim accrues once "all of the elements necessary to state the claim are present." *Smith v. Campbell, 782 F.3d 93, 101 (2d Cir. 2015)*; *see also Albritton v. Morris, No. 13-CV-3708, 2016 U.S. Dist. LEXIS 42561, 2016 WL 1267799, at \*10 (S.D.N.Y. Mar. 30, 2016)* (same); *Turner v. Boyle, 116 F. Supp. 3d 58, 83-84 (D. Conn. 2015)* ("Under federal law, a claim for . . . *First Amendment* retaliation[] accrues at the time that the allegedly wrongful conduct took place.").

Plaintiff's retaliation claim against Jackson arose on September 18, 2011, when Jackson wrote the allegedly false misbehavior report, (*see* Compl. 9), and thus needed to be filed by September 18, 2014 in order to be timely. Plaintiff's retaliation claim against Ortiz arose on October 20, 2011, when Ortiz charged Plaintiff with marijuana use, (*see id.* at 10, 14), and thus needed to be filed by October 20, 2014 in order to be timely. Because Plaintiff did not file his Complaint until June 29,

2015, Plaintiff's retaliation claims are untimely, absent any applicable tolling doctrines.

With respect to the due process claims, determining the accrual date is a difficult enterprise. On the one hand, some cases posit that "if the length of a plaintiff's confinement is affected by the result of a disciplinary hearing, the plaintiff's cause of action does not accrue until the guilty determination is reversed." *Mohamed v. Powers, No. 14-CV-1389, 2015 U.S. Dist. LEXIS 165322, 2015 WL 8492472, at \*3 (N.D.N.Y. Dec. 10, 2015)* (internal quotation **[\*18]** marks omitted); *see also McEachin v. Drefus, No. 06-CV-1489, 2008 U.S. Dist. LEXIS 18294, 2008 WL 686812, at \*2 (N.D.N.Y. Mar. 10, 2008)* (noting same (citing *Black v. Coughlin, 76 F.3d 72, 75 (2d Cir. 1996)*)). The logic behind this line of analysis appears traceable to the Second Circuit's decision in *Black v. Coughlin*, which applied the socalled favorable termination rule from *Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)* to conclude that a due process claim accrued upon the date of a state court reversal of disciplinary proceedings. *See 76 F.3d 72, 75 (2d Cir. 1996)*. However, *Black* was decided two years before the Supreme Court again weighed in on the question in *Edwards v. Balisok, 520 U.S. 641, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997)*, in which it applied the *Heck* rule in the context of a complaint where the inmate alleged procedural defects that "would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id. at 646*. However, the import of *Edwards* was arguably obscured by a concurrence that suggested that not all procedural due process violations in cases bearing upon an inmate's good-time credits would imply the invalidity of the deprivation, *see id. at 649-50* (Ginsburg, J., concurring); *see also Bonty v. Stevenson, No. 09-CV-3838, 2011 U.S. Dist. LEXIS 56490, 2011 WL 2112432, at \*1 (N.D. Cal. May 24, 2011)* (distinguishing the plaintiff's case requesting "damages . . . based on the allegation that [the] [d]efendant denied him the opportunity to present witnesses at his disciplinary hearing," and noting that "[the] case [was] not like *Edwards*, in which the prisoner there alleged deceit **[\*19]** and bias"). *But see Burnell v. Coughlin, 975 F. Supp. 473, 478 (W.D.N.Y. 1997)* (declining to conclude on the basis of the *Edwards* concurrence that "the . . . majority intended to limit its application only to those procedural errors which are so egregious as essentially to constitute 'reversible error' regardless of any other factors").

Added to this analysis, there is case law suggesting that the time a due process claim accrues depends on when

Case 5:24-cv-12647-JEL-KGA   ECF No. 58, PageID.1135   Filed 12/10/24   Page 85 of 100

Page 7 of 12
2016 U.S. Dist. LEXIS 136034, *19

the infirm proceedings actually deprived the plaintiff of liberty. Cf. *Victory v. Pataki, 814 F.3d 47, 63 n.14 (2d Cir. 2016)* ("A claim for denial of procedural due process accrues once an inmate is deprived of his constitutional procedural rights and is deprived of liberty as a result."). Other law posits that when an inmate claims to be aware of due process violations during a disciplinary proceeding and has challenged the suit in an Article 78 proceeding, his claim accrues no later than the date of the disciplinary proceeding's disposition. *See Baez v. Pinker, No. 13-CV-9165, 2015 U.S. Dist. LEXIS 70569, 2015 WL 3457277, at \*4 (S.D.N.Y. June 1, 2015)* (citing *Baez v. Bezio, 77 A.D.3d 745, 908 N.Y.S.2d 608 (App. Div. 2010))*, *appeal filed*, No. 15-1932 (June 16, 2015). The complexity of the case law, perhaps, makes a compelling argument in favor of legal agnosticism. *Cf. Tafari v. Rock, No. 11-CV-57, 2012 U.S. Dist. LEXIS 57498, 2012 WL 1424725, at \*2 (W.D.N.Y. Apr. 24, 2012)* (noting that certain "[c]ourts . . . have generally set the accrual date for procedural Due Process claims related to disciplinary hearings either at the date [*20] of the disciplinary hearing or at the date the prisoner's final administrative appeal is decided" and collecting cases (internal quotation marks omitted)); *see also Williams v. Roberts, No. 11-CV-29, 2011 U.S. Dist. LEXIS 153917, 2011 U.S. Dist. LEXIS 153917, 2011 WL 7468636, at \*5 (N.D.N.Y. Dec. 15, 2011)* ("In this case, [the] [p]laintiff's [h]earings were held on October 25 and November 14, 2007, and those are the relevant dates when [the] [p]laintiff was, or should have been, aware of any Due Process violations that ensued."), *adopted by 2012 U.S. Dist. LEXIS 30468, 2012 WL 760777 (N.D.N.Y. Mar. 7, 2012)*. But that, of course, is not an option.

Hard though this question may be, the Court concludes that the best answer for this case is that Plaintiff's claims accrued on the last day of the final disciplinary hearing, as that is when he "ha[d] reason to know of the injury which is the basis of his action," *Pearl, 296 F.3d at 80*, and because, at that point, the "inmate [was] deprived of his constitutional procedural rights and . . . deprived of liberty as a result," *Victory, 814 F.3d at 63 n.14*, in light of the fact that both proceedings resulted in "recommended loss of good time" and over a year in the SHU, (Compl. 11).[6] While *Heck* and *Edwards* certainly

seem instructive for accrual purposes in this context, they have not, in the time since they were decided, established a bright-line approach to when due process claims accrue in prison as one might expect. *Cf. Burnell, 975 F. Supp. at 478*. Shorn of this [*21] reason to conclude that Plaintiff's hearing accrued upon reversal, the Court concludes that Plaintiff's due process claim accrued no later than March 7, 2012, and thus needed to be filed by March 7, 2015, absent any applicable tolling doctrines.[7]

b. Tolling for Exhaustion of Administrative Remedies

As noted, however, Plaintiff's claim will be tolled for the portion of time during which he was actively exhausting his administrative remedies. With respect to the two retaliation claims, those claims were not tolled during the time Plaintiff was pursuing administrative remedies because the Complaint indicates only that Plaintiff's efforts to exhaust [*22] consisted of "filing an administrative appeal" from the underlying disciplinary proceedings, (Compl. 4), and such a course of conduct is an inappropriate means of exhaustion for Plaintiff's retaliation claims, *see, e.g., Toliver v. Fischer, No. 12-CV-77, 2016 U.S. Dist. LEXIS 37881, 2016 WL 3351974, at \*2 (N.D.N.Y. Mar. 22, 2016)* (dismissing, inter alia, *First Amendment* retaliation claim for failure to exhaust, but not dismissing due process claims relating to disciplinary proceedings, because they must "be exhausted by administrative appeals of the sanctions imposed"), *adopted sub nom. Toliver v. Stefinik, 2016 U.S. Dist. LEXIS 77736, 2016 WL 3349316 (N.D.N.Y. June 15, 2016)*; *Bennett v. Fischer, No. 09-CV-1236, 2010 U.S. Dist. LEXIS 139587, 2010 WL 5525368, at \*6 (N.D.N.Y. Aug. 17, 2010)* ("To the extent [the] plaintiff contends that he exhausted his administrative remedies with respect to his *First* and *Eighth Amendment* claims by pursuing his disciplinary appeal, the argument is unavailing."), *adopted by 2011 U.S. Dist. LEXIS 464, 2011 WL 13826 (N.D.N.Y. Jan. 4, 2011)*; *cf. also Giano v. Goord, 380 F.3d 670, 678 (2d Cir. 2004)* (discussing

U.S. Dist. LEXIS 114875, 2009 WL 4803689, at \*8 (W.D.N.Y. Dec. 9, 2009)* (finding protected liberty interest implicated where the punishment was one year in SHU; one year loss of commissary, packages, and phone; and one year loss of good time, but later reduced to nine months).

---

[6] "[I]nmates have a liberty interest in good time credit they have already earned." *Abed v. Armstrong, 209 F.3d 63, 66-67 (2d Cir. 2000)*; *see also Hill v. Laird, No. 06-CV-126, 2016 U.S. Dist. LEXIS 77272, 2016 WL 3248332, at \*10 (E.D.N.Y. June 13, 2016)* (same); *Hidalgo v. Hopin, No. 01-CV-57, 2009*

[7] In their brief, Defendants reach the same conclusions about the accrual date for the *First Amendment* retaliation, but they conclude that the due process claims accrued on March 7, 2012 for the first incident and October 20, 2011 for the second. (*See* Defs.' Mem. 5-6.)

2016 U.S. Dist. LEXIS 136034, *22

the plaintiff's failure to "exhaust available administrative remedies before filing suit," where the plaintiff believed that he had to pursue his retaliation grievance through disciplinary appeals), *abrogated on other grounds by Ross v. Blake, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016).*[8] However, the filing of an administrative appeal from his disciplinary proceedings would likely toll the statute of limitations with respect to Plaintiff's due process claims because such an appeals process is the proper mode of exhaustion. *See Henson v. Gagnon, No. 13-CV-590, 2015 U.S. Dist. LEXIS 166313, 2015 WL 9809874, at *9 (N.D.N.Y. Dec. 10, 2015)* ("[W]here an inmate's federal claims [*23] arise directly out of a disciplinary or administrative segregation hearing, (e.g., a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." (ellipses and internal quotation marks omitted)), *adopted by 2016 U.S. Dist. LEXIS 5224, 2016 WL 204494 (N.D.N.Y. Jan. 15, 2016); see also Khalild v. Reda, No. 00-CV-7691, 2003 U.S. Dist. LEXIS 884, 2003 WL 42145, at *4 (S.D.N.Y. Jan. 23, 2003)* ("When an inmate challenges the procedure at a disciplinary hearing that resulted in punishment, he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." (internal quotation marks omitted)); *Samuels v. Selsky, No. 01-CV-8235, 2002 U.S. Dist. LEXIS 17089, 2002 WL 31040370, at *8 (S.D.N.Y. Sept. 12, 2002)* ("Disputes stemming from a disciplinary hearing are properly appealed directly and not through the Inmate Grievance Program.").

Nevertheless, with respect to Plaintiff's due process challenge relating to the October 20, 2011 incident, even if it accrued after the punishment was [*24] modified on appeal, more than three years elapsed between that date (February 3, 2012) and the filing of the Complaint (June 29, 2015). Likewise, Plaintiff's due process complaint stemming from the September 18, 2011 incident would also be untimely because Plaintiff does not indicate when his appeal ended, and, hence, when the tolling ended. This matters because the burden to establish entitlement to equitable tolling falls on the plaintiff, *see, e.g., Abbas v. Dixon, 480 F.3d 636,*

*642 (2d Cir. 2007)* ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have ceased to be operational." (internal quotation marks omitted)), and, without an indication that the plaintiff was actively exhausting during that time, *see Gonzalez, 651 F.3d at 322 n.2,* his burden will go unmet.[9] Therefore, the Court concludes that tolling during the period of time when Plaintiff was exhausting his administrative remedies cannot make his claim timely.

#### c. Article 78 Proceedings

As noted, Plaintiff also contends that the statute of limitations for his claims was tolled pending the resolution of his Article 78 proceedings. (*See* Pl.'s Opp'n 1-2.) But "a plaintiff's pursuit of a state remedy, such as

---

[8] Because Defendants have not briefed or otherwise argued the issue, the Court expresses no opinion on whether Plaintiff has exhausted his administrative remedies with respect to the retaliation claims.

---

[9] It bears noting that, here, Defendants have submitted an affidavit to show when the appeals decision was handed down. (*See* Decl. of Donald Venettozzi Ex. D (Dkt. No. 24).) Because, however, as noted, "a district [*25] court [adjudicating a *Rule 12(b)(6)* motion] must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken," *Leonard F., 199 F.3d at 107* (internal quotation marks omitted), and the Court has already declined to convert the motion to one for summary judgment, the Court will not consider this evidence. Here, one wrinkle exists because Defendants also incorporated this fact into a Local Rule 56.1 Statement in the event that the Court converted the Motion into one for summary judgment, (*see* Local 56.1 Statement ¶ 8), and Plaintiff "admitt[ed]" to it in his opposition, (*see* Pl.'s Pro Se Reply Mot. ¶ 2 (Dkt. No. 33)). Although "the mandate to liberally construe pro se pleadings makes it appropriate to consider the facts set forth in [a] plaintiff's opposition papers," *Falso v. Gates Chili Cent. Sch. Dist., 680 F. Supp. 2d 465, 466 (W.D.N.Y. 2010)* (italics omitted), aff'd, *408 F. App'x 494 (2d Cir. 2011),* that is not to be done without an eye on the policy underlying that proposition, *see McIntosh v. United States, No. 14-CV-7889, 2016 U.S. Dist. LEXIS 44290, 2016 WL 1274585, at *3 n.5 (S.D.N.Y. Mar. 31, 2016)* ("[T]he policy reasons favoring liberal construction of pro se complaints permit a court to consider allegations of a pro se plaintiff in opposition papers on a motion where consistent with the complaint." (alterations and internal [*26] quotation marks omitted)). Here, the Court does not think that the policy favoring liberal construction of pro se submissions requires the Court to surmise a new fact from Plaintiff's decision to admit to a fact contained in a document that he did not realize was procedurally premature.

2016 U.S. Dist. LEXIS 136034, *26

an Article 78 proceeding, does not toll the statute of limitations for filing a claim pursuant to [§] 1983." Abbas, 480 F.3d at 641; see also Brant v. City of Syracuse, No. 15-CV-1382, 2015 U.S. Dist. LEXIS 164336, 2015 WL 9598888, at *3 n.1 (N.D.N.Y. Dec. 7, 2015) (same), adopted by 2016 U.S. Dist. LEXIS 587, 2016 WL 67718 (N.D.N.Y. Jan. 5, 2016); Williams v. Roberts, No. 11-CV-29, 2011 U.S. Dist. LEXIS 153917, 2011 WL 7468636, at *5 n.12 (N.D.N.Y. Dec. 15, 2011), adopted by 2012 U.S. Dist. LEXIS 30468, 2012 WL 760777 (N.D.N.Y. Mar. 7, 2012) ("[T]he filing of an Article 78 petition does not toll the limitations period."). Thus, the statute of limitations in connection with Plaintiff's claims were unaffected by his Article 78 proceedings.

d. Equitable Tolling

Finally, Plaintiff contends that he was in "fear of retaliation by . . . [D]efendants [which] prevented him from filing his [claims] in a timely fashion," which he argues "is an extraordinary circumstance which warrants equitable tolling." (Pl.'s Opp'n 2.)[10]

Under federal law, equitable tolling of the statute of limitations is applied "only in 'rare and exceptional circumstances,' where . . . 'extraordinary circumstances' prevented a party from timely performing a required act." Deraffele v. City of New Rochelle, No. 15-CV-282, 2016 U.S. Dist. LEXIS 43466, 2016 WL 1274590, at *11 (S.D.N.Y. Mar. 30, 2016) (alteration in original) (quoting Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005)), appeal filed, No. 16-2369 (July 7, 2016); see also Moses v. Westchester Cty. Dep't of Corr., 951 F. Supp. 2d 448, 454 ("[C]ourts in th[e] [Second] Circuit deciding [§] 1983 claims have applied the federal equitable tolling standard, which allows tolling where extraordinary circumstances prevented a party from timely performing a required act." (internal quotation marks omitted)). "Equitable tolling is generally not available where the circumstances that a plaintiff claims prevented him from timely filing were within the plaintiff's control." Myers v.

New York, No. 14-CV-1492, 2016 U.S. Dist. LEXIS 60744, 2016 WL 2636295, at *5 (N.D.N.Y. May 9, 2016) (citing [*28] Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001)); see also Walker, 430 F.3d at 564 (finding that equitable tolling was not available where pro se litigant's delay in filing a § 1983 action appeared to be entirely within his control). Furthermore, "[t]he party asserting that equitable tolling applies must have 'acted with reasonable diligence throughout the period he [sought] to toll.'" Myers, 2016 U.S. Dist. LEXIS 60744, 2016 WL 2636295, at *5 (quoting Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004)). "[A] plaintiff bears the burden of establishing that equitable tolling of [his] claims is appropriate." Id. However, "[t]o secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011); see also Guo v. IBM 401(k) Plus Plan, 95 F. Supp. 3d 512, 527 (S.D.N.Y. Mar. 26, 2015) ("[T]o benefit from equitable tolling, a litigant must allege that extraordinary circumstances prevented him from acting in a timely manner." (internal quotation marks omitted)).

Plaintiff alleges that his "'fear of retaliation' is an extraordinary circumstance which warrants equitable tolling . . . [which] prevented him from filing his 1983 in a timely fashion." (Pl's Opp'n 2.) As a preliminary matter, although the Second Circuit has not weighed in on the issue, the balance of the case law suggests that fear of retaliation [*29] is not a valid ground for equitable tolling. See Pietri v. N.Y.S. Office of Court Admin., 936 F. Supp. 2d 120, 136 n.14 (E.D.N.Y. 2013) (concluding, in a Title VII employment case, that "[f]ear of retaliation is not a basis for equitable tolling" and collecting cases); see also Beckel v. Wal-Mart Assocs., Inc., 301 F.3d 621, 624 (7th Cir. 2002) ("Even if there were admissible evidence that [the defendant] had threatened the plaintiff with firing her if she sued, this would not make out a defense of equitable estoppel [to the defendant's statute of limitations argument]."); Carter v. W. Publ'g Co., 225 F.3d 1258, 1266 (11th Cir. 2000) ("[The] [p]laintiffs' purported fear of retaliation, however, is not a ground for equitable tolling [in an employment discrimination case]. Otherwise, the doctrine . . . would effectively vitiate the statutory time requirement because an employee could defer filing indefinitely so long as she had an apprehension about possible retaliation." (citation omitted)); Krooks v. Haverford Coll., No. 14-CV-4205, 2015 U.S. Dist. LEXIS 4773, 2015 WL 221082, at *5 (E.D. Pa. Jan. 14, 2015) (noting that "[i]n the employment context, 'purported fear of employer

---

[10] To be sure, the tolling provision discussed in connection with [*27] Plaintiff's pursuit of administrative remedies is a form of equitable tolling. See Gonzalez, 651 F.3d at 319 ("[C]laims brought by an inmate under the Prison Litigation Reform Act . . . are entitled to equitable tolling during the time period the inmate is exhausting his administrative remedies . . . ."). However, because the analysis, as a practical matter, unfolds differently in that specialized context than with Plaintiff's other equitable tolling arguments, the Court breaks them out separately.

retaliation is not a ground for equitable tolling'"); *Pratt v. Stop & Shop Supermarket Co., LLC, No. 09-CV-5417, 2011 U.S. Dist. LEXIS 12654, 2011 WL 579152, at *4 (E.D.N.Y. Feb. 9, 2011)* (concluding, in a Title VII employment case, that "fear of retaliation is not grounds for equitable tolling"). These cases, however, all involve equitable tolling in the Title VII employment or the ADA context. *See Beckel, 301 F.3d 621 (Title VII); Carter, 225 F.3d 1258 (Title VII); Krooks, 2015 U.S. Dist. LEXIS 4773, 2015 WL 221082 (ADA); Pietri, 936 F. Supp. 2d 120 (Title VII); Pratt, 2011 U.S. Dist. LEXIS 12654, 2011 WL 579152 (Title VII).* And in analyzing the viability of a threat of retaliation excuse, these courts [*30] noted the unique statutory structure of Title VII. *See, e.g., Beckel, 301 F.3d at 624* (reasoning that a threat of retaliation "would be a form of anticipatory retaliation, actionable as retaliation under Title VII," and concluding that "[r]ather than deterring a reasonable person from suing, it would increase her incentive to sue by giving her a second claim, in this case a claim for retaliation on top of her original claim of sexual harassment"); *Carter, 225 F.3d at 1266* ("Title VII specifically protects employees against retaliation for filing a discrimination complaint."); *see also Krooks, 2015 U.S. Dist. LEXIS 4773, 2015 WL 221082, at *5* ("The various courts held that it would defeat the purpose of Congress's intent to add a statute of limitation if a [p]laintiff could defer filing so long as he feared retaliation, particularly where Congress had already instituted the failsafe mechanism of a retaliation cause of action."). By contrast, there is no *First Amendment* cause of action for anticipatory retaliation, *see Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009)* (noting that one element of a *First Amendment* retaliation claim is that "the defendant took adverse action against the plaintiff"); *cf.* James E. Robertson, *"One of the Dirty Secrets of American Corrections": Retaliation, Surplus Power, and Whistleblowing Inmates, 42 U. Mich. J.L. Reform 611, 614 (2009)* ("[W]hen inmates abstain from filing grievances for fear of [*31] retaliation, they cannot bring the underlying complaint to federal court . . . ."), and Plaintiff's claim for past retaliation is one of the very claims that is under scrutiny for timeliness. The case law thus does not answer whether fear of retaliation is a valid basis for invoking equitable tolling in the context of an inmate's *§ 1983* suit.

Additionally, in the prison context, it is already settled that fear of retaliation can excuse an inmate's failure to exhaust administrative remedies. *See Ross, 136 S. Ct. at 1860* (holding that administrative exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation"); *see also Williams v. Priatno, 829 F.3d 118, 123-24 (2d Cir. 2016)* (same). But this exception is not derived from principles of equitable tolling; it is instead based on the Prison Litigation Reform Act, *42 U.S.C. § 1997 et seq.,* which requires only exhaustion of "such administrative remedies as are available," *id. § 1997e(a); see also Ross, 136 S. Ct. at 1856-57.* Because the Prison Litigation Reform Act does not control the question of whether threat of retaliation is a valid ground for equitable tolling, the case law discussing the exhaustion of administrative remedies is of little help.

Instead, the Court turns [*32] to the underlying principles of equitable tolling and the realities that inmates like Plaintiff face in seeking to assert their rights. The chief impediment for invoking equitable tolling in this situation is that extraordinary circumstances will exist only where "the 'exceptional circumstances' giving rise to equitable tolling [were] 'beyond [the] control' of the party who seeks to benefit from it." *Walker, 430 F.3d at 564* (first alteration in original) (quoting *Smaldone, 273 F.3d at 138*). The failure to file a timely complaint out of fear of retaliation is, at least as a theoretical matter, an impediment that is within a plaintiff's control. It makes some sense, then, in the employment context, to exclude fear of retaliation as a basis for equitable tolling.

But plaintiffs arguing for equitable tolling in the employment context are situated much differently from plaintiffs filing lawsuits from prison. "Nowhere in our society is more forceful and sustained control over persons exercised than in its prisons . . . ." Craig Haney, *Psychology and the Limits to Prison Pain Confronting the Coming Crisis in Eighth Amendment Law, 3 Psychol. Pub. Pol'y & L. 499, 499 (1997).* Such sustained control tends to result in "adverse psychological effects" that invariably have "behavioral consequences." Jason [*33] J. Ben, America's Need to Explore Alternatives to Incarceration: Can America Purport to Be the "Land of the Free" When It Currently Is the World's Leading Incarcerator?, 30 S.U. L. Rev. 349, 356 (2003).* When these "negative psychological effects of imprisonment" become "chronic and deeply internalized," inmates experience:

> dependence on the external constraints of institutional structure and contingencies; hypervigilance, interpersonal distrust and suspicion of threat or personal risk; emotional over-control, alienation and psychological distancing as a defense against exploitation and awareness of the riskiness and unpredictability of emotional

investments in relationships; social withdrawal and isolation; incorporation of exploitative informal rules and norms of prison culture; diminished sense of self-worth and personal value; and posttraumatic stress reactions to the pains of imprisonment.

Zieva Dauber Konvisser, *Psychological Consequences of Wrongful Conviction in Women and the Possibility of Positive Change*, 5 DePaul J. for Soc. Just. 221, 241 (2012) (internal quotation marks omitted).

Retaliation and fear of retaliation are natural consequences of this unique psychological environment. And that fear of retaliation [*34] is not merely speculative or conjectural, as "it is clear that the level of actual retaliation, as well as the perception of likely retaliation among . . . inmates . . . constitutes the single most important and difficult obstacle to inmates' use of the [grievance] system." Vincent M. Nathan, *Evaluation of the Inmate Grievance System Ohio*, Ohio Dep't of Rehab. & Corr. 28 (Feb. 13, 2001), *https://www.law.umich.edu/facultyhome/margoschlanger /Documents/Resources/Prison_and_Jail_Grievance_Pol icies/Ohio_Nathan_Evaluation_Grievance_System.pdf* . Unlike employees in the Title VII or ADA context, who have meaningful access to remedies for retaliation and anticipated retaliation, "[p]risons invest in correctional officers rule enforcement powers that readily mask retaliatory intent," Robertson, *supra*, at 615-16 (noting that "the frequent vagueness of disciplinary rules provides correctional officers ample leeway in deciding when and where to enforce these rules" (footnote omitted)), thereby subverting the mechanisms designed to protect plaintiffs from retaliatory conduct.

Given this unique context and the substantial control that correction officers exert over inmates, *see* M. Jackson Jones, *Power, Control, Cigarettes, and Gum: Whether an Inmate's Consent to Engage in a Relationship with a Correctional Officer Can Be a Defense to the Inmate's Allegation of a Civil Rights Violation [*35] Under the Eighth Amendment*, 19 Suffolk J. Trial & App. Advoc. 275, 306 (2014) ("Basically, a correctional officer controls an inmate's life inside of prison."), the specter of retaliation, a real and ever-present force in an inmate's life, can reasonably be said to be outside of an inmate-plaintiff's control. Thus, the Court concludes that in the prison context, reasonable fear of retaliation may be sufficient to constitute extraordinary circumstances warranting equitable tolling, particularly if the person threatening retaliation is a defendant or another official who could be or was influenced by a defendant.

But that is not to say that every inmate is entitled to equitable tolling merely because he resides in an environment that intrinsically works to his disadvantage. After all, "most inmates perceive that they will expose themselves to retaliation if they use the grievance system," Nathan, *supra*, at 25, but certainly not all inmates are entitled to equitable tolling. Generalized allegations of fear of retaliation, therefore, are not sufficient to establish "extraordinary circumstances" warranting application of equitable tolling. *See Nicoloudakis v. Bocchini, No. 13-CV-2009, 2016 U.S. Dist. LEXIS 85764, 2016 WL 3617959, at *3 (D.N.J. July 1, 2016)* ("Generalized fear of reprisal is not enough to warrant equitable tolling . . . ."), *appeal filed*, No. 16-3372 (Aug. 15, 2016); [*36] *Rosenblum v. Yates, No. 09-CV-3302, 2011 U.S. Dist. LEXIS 14086, 2011 WL 590750, at *3 (E.D. Cal. Feb. 10, 2011)* (finding that the plaintiff's "generalized allegation . . . [of] fear of retaliation" was "insufficient to meet his high burden"). Here, however, Plaintiff has not offered merely generalized assertions of fear of retaliation. Rather, Plaintiff has alleged specific facts that gave rise to his fear upon his return to Sing Sing from Southport, including: (1) that one Defendant told Plaintiff not to "get comfortable" upon his return to Sing Sing; (2) that a false misbehavior report was filed against Plaintiff (and subsequently dismissed) upon his return to Sing Sing; (3) that one correction officer frisked Plaintiff and told him, "I hope your [sic] not gonna write me up for this because I know about you"; and (4) that following a search of Plaintiff's cell, another correction officer told Plaintiff not to "be writing a bunch of shit up around here," and told Plaintiff that "you know weapons can be found in your cell." (Pl.'s Decl. in Supp. of Pl.'s Reply 1-2 (Dkt. No. 33).) And Plaintiff explains that the reason he ultimately felt safe in filing the Complaint was that the superintendent of the facility and the captain of security assured him he would not be retaliated against. (*See id.* at 2-3.) [*37]

Accordingly, because the Court concludes that inmates may show extraordinary circumstances for purposes of equitable tolling where they allege specific facts showing that a reasonable fear of retaliation prevented them from filing a timely complaint, and because Plaintiff has alleged such facts, the Court is satisfied that Plaintiff has met the first prong of the equitable tolling inquiry.

Less clear, however, is whether Plaintiff has alleged facts showing that he exercised reasonable diligence during the time he felt threatened by officers at Sing Sing. Plaintiff does not explain, for example, when he

contacted the superintendent seeking protection from retaliation. (*See id.*) The timing of that request is relevant because the Court would be hard pressed to conclude that Plaintiff exercised reasonable diligence in pursuing his rights if, for the entire time Plaintiff alleges he faced a threat of retaliation, he did nothing to seek protection from that threat of retaliation. And, assuming Plaintiff promptly sought the support of the superintendent, the Court needs to know when that support was given so that the Court can determine when the tolling of Plaintiff's claims started and stopped. **[*38]** The timing is especially sensitive here, as Plaintiff's claims, if untimely, are untimely by less than a year. (*See* Defs.' Mem. 5-7.) There are, accordingly, insufficient facts for the Court to conclude that Plaintiff acted with reasonable diligence during the time he was facing a threat of retaliation. At this juncture, the Court cannot say that equitable tolling is warranted in Plaintiff's case.

However, given Plaintiff's pro se status and the Court's obligation to liberally construe pro se pleadings, the Court is hesitant to dismiss Plaintiff's claims at this point without providing Plaintiff an opportunity to amend his complaint at least once. *See Owens v. N.Y.C. Dep't of Sanitation, No. 11-CV-8297, 2013 U.S. Dist. LEXIS 7294, 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013)* (noting that, in general, "a court should grant leave to amend [to a pro se litigant] at least once before dismissing [a complaint] with prejudice" (internal quotation marks omitted)); *Horace v. Gibbs, No. 14-CV-655S, 2015 U.S. Dist. LEXIS 28445, 2015 WL 1033089, at *2 (W.D.N.Y. Mar. 9, 2015)* ("Generally, the Court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." (italics and internal quotation marks omitted) (quoting *Abbas, 480 F.3d at 639*); *Ogunbayo v. Montego Med. Consulting, Nos. 11-CV-4047, [*39] 12-CV-428, 2012 U.S. Dist. LEXIS 179625, 2012 WL 6625921, at *7 (E.D.N.Y. Dec. 19, 2012)* (adopting magistrate judge's recommendation that the "[p]laintiff, proceeding pro se, should be afforded an opportunity to amend the [dismissed] [c]omplaint"). Therefore, Plaintiff is granted leave to amend his Complaint in order to allege sufficient facts to show that he pursued his claims with reasonable diligence during the time he faced the threat of retaliation. Specifically, Plaintiff must allege what steps he took to secure the superintendent's assurance that he would not be retaliated against, when he took those steps, when the superintendent offered his support, and any other facts showing that Plaintiff

exercised reasonable diligence in pursuing his claims. Plaintiff must also amend his Complaint to include the allegations of retaliation raised in his motion papers—the facts supporting Plaintiff's assertion that correction officers threatened to retaliate against him if he filed his lawsuit must be included in the amended complaint. Plaintiff must file his amended complaint within 30 days of the date of this Opinion.

III. Conclusion

Plaintiff is granted leave to file an amended complaint within 30 days of the date of this Opinion. The Clerk of Court is respectfully directed to terminate **[*40]** the pending Motion. (*See* Dkt. No. 22.)

SO ORDERED.

Dated: September 30, 2016

White Plains, New York

/s/ Kenneth M. Karas

KENNETH M. KARAS

UNITED STATES DISTRICT JUDGE

_____

**End of Document**

 Positive

As of: November 26, 2024 4:50 PM Z

# *Jackson v. United States*

United States Court of Appeals for the Sixth Circuit

December 3, 2013, Argued; May 12, 2014, Decided; May 12, 2014, Filed

File Name: 14a0097p.06

No. 13-1243

## Reporter

751 F.3d 712 *; 2014 U.S. App. LEXIS 8814 **; 2014 FED App. 0097P (6th Cir.) ***; 2014 WL 1876240

BOBBY G. JACKSON, Plaintiff-Appellant, v. UNITED STATES OF AMERICA, Defendant-Appellee.

**Subsequent History:** Rehearing denied by *Jackson v. United States, 2014 U.S. App. LEXIS 13779 (6th Cir., July 2, 2014)*

**Prior History:** [**1] Appeal from the United States District Court for the Eastern District of Michigan at Detroit. No. 2:12-cv-10124—Lawrence P. Zatkoff, District Judge.

*Jackson v. United States, 2013 U.S. Dist. LEXIS 12149 ( E.D. Mich., Jan. 30, 2013)*

## Core Terms

equitable tolling, district court, mail, claimant, denial letter, tolling, six-month, limitations period, notice, file suit, sovereign immunity, court's decision, triggered, deadline, filing requirements, equitably, argues, tort claim, forwarding, lack of subject matter jurisdiction, constructive knowledge, diligence, factors, suits, statute of limitations, limitation provision, abuse of discretion, motion to dismiss, rebuttable, two-year

## Case Summary

### Overview

HOLDINGS: [1]-Pursuant to the FTCA, plaintiff's lawsuit stemming from a car accident was untimely. Under *28 U.S.C.S. § 2401(b)*, ICE's mailing of the denial letter triggered the six-month limitation period. Furthermore, a Department of Justice regulation, *28 C.F.R. § 14.9(a)*, clarified that the agency was required only to send the denial letter to either plaintiff or her attorney, not both.

The government's motion to dismiss for lack of subject matter jurisdiction was properly granted; [2]-Even assuming that equitable tolling was available, the district court did not abuse its discretion in not equitably tolling plaintiff's claim; [3]-Because the government certified that the other driver was acting within the scope of his federal employment when the accident occurred, plaintiff's state-law tort claim against the other driver was properly dismissed.

### Outcome
Judgment affirmed.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Standards of Review > De Novo Review

Civil Procedure > ... > Jurisdiction > Subject Matter Jurisdiction > General Overview

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

### HN1[↓] Standards of Review, De Novo Review

The United States Court of Appeals for the Sixth Circuit reviews de novo a district court's judgment dismissing a complaint for the lack of subject matter jurisdiction.

Governments > Federal Government > Claims By & Against

### HN2[↓] Federal Government, Claims By & Against

Case 5:24-cv-12647-JEL-KGA  ECF No. 58, PageID.1142  Filed 12/10/24  Page 92 of 100

Page 2 of 10
751 F.3d 712, *712; 2014 U.S. App. LEXIS 8814, **1; 2014 FED App. 0097P (6th Cir.), ***Cir.)

The doctrine of sovereign immunity shields the United States from lawsuits. Suits brought against the United States are therefore dismissed unless a claimant can point to an express waiver of sovereign immunity. When Congress enacts a statute that waives federal sovereign immunity a court may not enlarge the waiver beyond what the language requires.

Torts > ... > Liability > Federal Tort Claims Act > General Overview

Torts > ... > Liability > Federal Tort Claims Act > Procedural Matters

**HN3[🔻]  Liability, Federal Tort Claims Act**

The Federal Tort Claims Act allows a claimant to bring a cause of action against the United States, for money damages for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. *28 U.S.C.S. § 1346(b)(1)*. This waiver of sovereign immunity requires a claimant to abide by the terms of *28 U.S.C.S. § 2401(b)*: A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of the notice of final denial of the claim by the agency to which it was presented.

Torts > ... > Liability > Federal Tort Claims Act > Procedural Matters

**HN4[🔻]  Federal Tort Claims Act, Procedural Matters**

With respect to situations in which a federal agency's delay precludes the claimant from bringing a claim—for example, when an agency has not yet issued a notice of denial—a claimant may sue the United States according to the terms of *28 U.S.C.S. § 2675(a)*: An action shall not be instituted upon a claim against the United States unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant

any time thereafter, be deemed a final denial of the claim for purposes of this section. Therefore, a claimant may sue the United States pursuant to the Federal Tort Claims Act six months after presenting a claim to an agency. *28 U.S.C.S. § 2675(a)*. A claimant may no longer sue the United States six months after the time that an agency mails a denial letter. *28 U.S.C.S. § 2401(b)*.

Torts > ... > Liability > Federal Tort Claims Act > Procedural Matters

**HN5[🔻]  Federal Tort Claims Act, Procedural Matters**

The Federal Tort Claims Act (FTCA) unambiguously states that the six-month limitation window for bringing suit runs from the date of an agency's mailing of a denial letter. *28 U.S.C.S. § 2401(b)*. The FTCA does not require that the claimant receive the denial letter in order to commence the six-month limitation period. The FTCA requires only that the agency mail the denial by certified mail.

Torts > ... > Liability > Federal Tort Claims Act > Procedural Matters

**HN6[🔻]  Federal Tort Claims Act, Procedural Matters**

See *28 C.F.R. § 14.9(a)*.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Governments > Federal Government > Claims By & Against

Governments > Legislation > Statute of Limitations > Tolling

**HN7[🔻]  Standards of Review, Abuse of Discretion**

The abuse of discretion standard applies to a district court's refusal to apply the doctrine of equitable tolling when facts are in dispute. Equitable tolling allows a federal court to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that

Case 5:24-cv-12647-JEL-KGA  ECF No. 58, PageID.1143  Filed 12/10/24  Page 93 of 100

Page 3 of 10
751 F.3d 712, *712; 2014 U.S. App. LEXIS 8814, **1; 2014 FED App. 0097P (6th Cir.), ***Cir.)

litigant's control. While equitable tolling may be applied in suits against the government, courts will only do so sparingly, and not when there has only been a garden variety claim of excusable neglect.

Governments > Legislation > Statute of Limitations > Tolling

*HN8*[🔽] **Statute of Limitations, Tolling**

To determine whether equitable tolling is available to a plaintiff, a court considers five factors: (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) the absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

Torts > ... > Liability > Federal Tort Claims Act > Employees

Torts > ... > Liability > Federal Tort Claims Act > Scope of Employment

*HN9*[🔽] **Federal Tort Claims Act, Employees**

When a tort claim is brought against a federal employee, the Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, applies. Pub. L. No. 100-694, §§ 5-6, 102 Stat. 4563 (1988). The Westfall Act empowers the Attorney General to certify that the employee was acting within the scope of his office or employment at the time of the incident giving rise to the claim. Upon certification, the United States is substituted for the employee as a defendant, and the claim is litigated under the Federal Tort Claims Act (FTCA) and is subject to dismissal on any basis applicable to FTCA claims. *28 U.S.C.S. § 2679(d)(4)*. Any suit against the employee arising out of or related to the same subject matter is precluded. *28 U.S.C.S. § 2679(b)(1)*.

**Counsel:** ARGUED: Phillip S. Serafini, SERAFINI, MICHALOWSKI, DERKACZ & ASSOCIATES, P.C., Sterling Heights, Michigan, for Appellant.

Andrew J. Lievense, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

ON BRIEF: Phillip S. Serafini, SERAFINI,

MICHALOWSKI, DERKACZ & ASSOCIATES, P.C., Sterling Heights, Michigan, for Appellant.

Andrew J. Lievense, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

**Judges:** BEFORE: SILER, McKEAGUE, and WHITE, Circuit Judges. McKEAGUE, J., delivered the opinion of the court, in which SILER, J., concurred. WHITE, J., delivered a separate dissenting opinion.

**Opinion by:** McKEAGUE

# Opinion

[*714] [***2]  McKEAGUE, Circuit Judge. This case involves the Federal Tort Claims Act, namely, whether plaintiff Bobby Jackson timely brought her suit against the United States. The district court found that she did not, and granted the United States' motion to dismiss. The district court further declined to apply equitable tolling to Jackson's claim. We affirm.

I.

On January 13, 2009, Bobby Jackson was involved in a car accident with Michele Battistelli, [**2] an Assistant Special Agent in Charge who worked at the Detroit Field Office of the U.S. Immigration and Customs Enforcement Agency, a component of the U.S. Department of Homeland Security. According to Jackson, Battistelli's negligent driving resulted in a head-on collision while Jackson was stopped at an intersection. Jackson suffered multiple injuries, including damage to her head and spinal cord.

After the accident, Jackson retained the services of Michael Shaffer, an attorney with the law firm Gursten, Koltonow, Gursten, Christensen and Raitt, P.C., known also as Michigan Autolaw. On March 5, 2009, Shaffer submitted Jackson's administrative claim for Damage, Injury, or Death. Shaffer, however, erroneously mailed Jackson's claim to the Department of Homeland Security, which then forwarded Jackson's claim to the Immigration and Customs Enforcement Agency. On June 17, 2009, the Immigration and Customs Enforcement Agency received Jackson's claim. The cover letter included with Jackson's claim listed Shaffer's mailing address as being located on Evergreen Road in Southfield, Michigan. The claim form itself included Jackson's name and mailing address.

On July 7, 2009, the Immigration and [**3] Customs

Enforcement Agency confirmed receipt of Jackson's claim in correspondence to Shaffer. This receipt letter was sent to the Evergreen Road address provided by Shaffer on the cover letter. Shaffer received the receipt letter. The receipt letter stated that the agency would process Jackson's claim pursuant to the Federal Tort Claims Act ("FTCA"), which allows an agency "up to six months to adjudicate a damage claim, **[\*\*\*3]** beginning from the date the agency receives the claim." The letter advised, "[o]nce we complete our adjudication, we will send you a letter informing you of our findings. If the agency fails to adjudicate your claim within six months of the date of receipt, or if it denies the claim, you can file a lawsuit in the appropriate United States District Court."

On March 8, 2011, the Immigration and Customs Agency via certified mail sent a "final determination" denying Jackson's administrative claim. This denial letter noted that if Jackson was dissatisfied with the agency's decision, she could file suit in the appropriate district court "no later than six months after the date of mailing of this notice of final denial." The agency sent the denial letter to the Evergreen Road **[\*\*4]** address Shaffer provided on the cover letter, the same address to which it sent the receipt letter. On March 23, 2011, the U.S. Postal Service returned the denial letter to the Immigration and Customs Agency, marking the denial letter as "Not Deliverable as Addressed. Unable to Forward." **[\*715]** Apparently, Shaffer's firm had changed locations in May of 2010.

The parties disagree whether a forwarding order was in place. Jackson contends that Michigan Autolaw put in place a one-year forwarding order for its mail when it moved, and that for eight months after the forwarding order expired it regularly sent a runner to collect the mail. In response, the government notes that a one-year forwarding order would have been in effect when the denial letter was mailed, yet that certified letter was marked unable to be forwarded, and tracking information for the letter stated that Michigan Autolaw had moved and left no forwarding address.[1] The parties also disagree whether the information about changing locations was conveyed to the Immigration and Customs Agency. According to the government, Shaffer never informed the Immigration and Customs Agency of the new address. Regardless, the denial letter never

**[\*\*5]** reached Jackson or Jackson's attorney. Despite receiving the undelivered mail, the agency took no further action.

Further complicating the situation is the fact that Jackson may have switched attorneys, or at least relied on the services of multiple counsel. Jackson contends that at some point Shaffer transferred her case to Phillip Serafini, an attorney at the law firm Serafini, Michalowski, **[\*\*\*4]** Derkacz & Associates. She argues that the agency was aware of this change due to an alleged February 2, 2011 phone conversation between Serafini and Toya Azian, a paralegal specialist with the Immigrations and Customs Enforcement Agency. According to Jackson, Azian called Serafini and asked him to submit a demand letter. In support, Jackson submits an affidavit from Serafini as well as Serafini's handwritten notes regarding the phone call. The Government counters that the "agency's claim file contains no record of that phone call or that any such information regarding a new lawyer was provided **[\*\*6]** to the agency in writing or otherwise, and [Azian] no longer works for the agency." Def. Br. at 18. The parties do not dispute that Serafini did not send formal notice to the agency that he was counsel of record in the case or submit the requested demand letter.

On January 11, 2012, Jackson filed suit in the U.S. District Court for the Eastern District of Michigan under the FTCA. Jackson also filed a tort case against Battistelli in state court that Battistelli removed to federal court, which was then consolidated with Jackson's federal court claim after Battistelli was dismissed as a party to the case. The government moved to dismiss Jackson's suit for lack of subject matter jurisdiction on the grounds that her filing was untimely. The government argued that the agency's mailing of the March 8, 2011 denial letter triggered a six-month window in which Jackson had to file her suit, meaning her last opportunity to file suit was on September 8, 2011. As a result, according to the government, Jackson's filing of her claim on January 11, 2012—four months after the six-month limitation period—was barred by the FTCA. Jackson argued that the six-month limitation period was not triggered because **[\*\*7]** neither she nor her attorney received the denial letter. In the alternative, Jackson argued that the limitation period should be equitably tolled to allow her to file her suit.

On January 30, 2013, the district court granted the United States' motion to dismiss for lack of subject matter jurisdiction. **[\*716]** The district court ruled that the plain language of the FTCA indicated that the

---

[1] Jackson herself admits that computer tracking information provided by the U.S. Postal Service indicated that the denial letter could not be delivered because Michigan Autolaw had "Moved, left no address."

mailing of the denial letter triggered the six-month limitation period, thus rendering Jackson's filing of her suit on January 11, 2013 untimely and barred by the FTCA. The district court further did not equitably toll the limitation period on the grounds that Jackson was not diligent or reasonable in not filing suit, reasoning that the July 7, 2009 receipt letter received by Shaffer communicated that Jackson "could have filed suit as early as December 2009 [***5] [and] yet [she] did not do so." R. 16, Dist. Ct. Opn. at 9, PageID # 111 ("As such, [Jackson] had nearly two years to file suit."). The district court also noted that Jackson could not "claim a lack of notice or constructive knowledge of the filing requirement" given her knowledge of the FTCA's requirements and her having filed her claim within the two-year [**8] accrual period. Finally, the district court observed that applying equitable tolling to Jackson's claim would prejudice the United States. This appeal followed.

II.

The first issue concerns the district court's dismissal of Jackson's complaint for lack of subject matter jurisdiction. The district court did so on the grounds that Jackson filed her claim against the United States outside of the time period permitted by the FTCA. *HN1*[⬆] "We review de novo a district court's judgment dismissing a complaint for the lack of subject matter jurisdiction." *Davis v. United States, 499 F.3d 590, 593 (6th Cir. 2007)* (citing *Sutton v. St. Jude Med. S.C., Inc., 419 F.3d 568, 570 (6th Cir. 2005))*.

*HN2*[⬆] The doctrine of sovereign immunity shields the United States from lawsuits. See *Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 260, 119 S. Ct. 687, 142 L. Ed. 2d 718 (1999)*. Suits brought against the United States are therefore dismissed unless a claimant can point to an express waiver of sovereign immunity. See *id.* (citing *FDIC v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994))*; see also *Lane v. Pena, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996)* ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." [**9] (internal citations omitted)). As noted by the district court, "when Congress enacts a statute that waives federal sovereign immunity . . . a court may not enlarge the waiver beyond what the language requires." R. 16, Dist. Ct. Opn. at 4, PageID # 106 (internal quotation marks and citations omitted).

The waiver at issue in this case is the one provided

under the FTCA. *HN3*[⬆] The FTCA allows a claimant to bring a cause of action "against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" *28 U.S.C.A. § 1346(b)(1)*. This waiver of sovereign immunity requires a claimant to abide by the terms of *§ 2401(b)*:

> [***6] A tort claim against the United States shall be *forever barred* unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or *unless action is begun within six months after the date of mailing, by certified or registered mail, of the notice of final denial of the claim by the agency to which it was presented.*

*28 U.S.C. § 2401(b)* (emphasis added). *HN4*[⬆] With [**10] respect to situations in which the agency's delay precludes the claimant from bringing a claim—for example, when an agency has not yet issued a notice of denial—a [*717] claimant may sue the United States according to the terms of *§ 2675(a)*:

> An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. *The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.*

*28 U.S.C. § 2675(a)* (emphasis added). Therefore, a claimant may sue the United States pursuant to the FTCA six months after presenting a claim to an agency. See *id.* A claimant may no longer sue the United States six months after the time that an agency mails a denial letter. *28 U.S.C. § 2401(b)*.

Applying that standard here, on January 13, 2009 (the date of the car accident), Jackson's claim accrued. On June 17, 2009, her claim was presented to the agency. On [**11] December 17, 2009, Jackson could have brought suit against the United States. Nearly one and a half years passed, during which time Jackson did not bring suit. On March 8, 2011, the agency sent its denial letter by certified mail (which Jackson did not receive). On September 8, 2011, the sixmonth limitation period

during which Jackson was required to bring suit closed. On January 11, 2012—four months after the window closed—Jackson filed her suit. The plain language of the FTCA foreclosed Jackson's ability to file suit at that time, meaning that her filing was untimely and must be dismissed. *See 28 U.S.C. § 2401(b)*.

Jackson argues that an "undelivered notice of denial" does not trigger the six-month limitation window outlined in the FTCA. Pl. Br. at 12. This is incorrect. *HN5*[⚓] The FTCA unambiguously states that the six-month limitation window runs "from the date of mailing." *28 U.S.C. § 2401(b)*. As our sister circuits have noted, the FTCA does not require that the claimant receive the denial letter in order to commence the six-month limitation period. *See [***7] Berti v. V.A. Hosp., 860 F.2d 338, 340 (9th Cir. 1988)* (declining to read a receipt requirement into the FTCA); *Carr v. Veterans Admin., 522 F.2d 1355, 1357 (5th Cir. 1975)* [**12] (same). The FTCA requires only that the agency mail the denial by certified mail. That the agency did. An added receipt requirement would constitute a burden on the agency to guarantee delivery, and would in fact be construing the FTCA in favor of plaintiffs suing the United States, when the Supreme Court has instructed courts to do the opposite. *See Lane, 518 U.S. at 192* ("Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." (internal citations omitted)).

Another factor leading to the same conclusion is *28 C.F.R. § 14.9(a)*, the Department of Justice regulation construing the FTCA's six-month limitation provision. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984); see also 28 U.S.C. § 2672* (granting the Attorney General authority to promulgate regulations). *Section 14.9(a)* states:

> *HN6*[⚓] Final denial of an administrative claim shall be in writing and *sent to the claimant, his attorney, or legal representative by certified or registered mail*. The notification of final denial may include a statement of the reasons for the denial and shall include a statement that, if the [**13] claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 [*718] months after the date of mailing of the notification.

*28 C.F.R. § 14.9(a)* (emphasis added). Jackson argues that, in light of the returned denial letter, the agency was required to mail the denial letter to both her *and* her

counsel even though the regulation clearly states that an agency's sending the denial to the claimant *or* her legal representative is sufficient to trigger the six-month limitation window.[2] *See id.* While the agency's mailing the returned denial letter to Jackson herself may have been the preferred course of action, it was not the required course of action. Again, reading an additional requirement into this regulation—that the agency must send the denial to multiple parties—runs counter to a [***8] court's duty to construe waivers of sovereign immunity in favor of the government.[3] *See Lane, 518 U.S. at 192*.

In sum, the plain language of the FTCA indicates that the Immigration and Customs Enforcement Agency's mailing the denial letter triggered the six-month limitation period. Furthermore, the Department of Justice Regulation clarifies that the agency was required only to send the denial letter to either Jackson *or* her attorney, not Jackson *and* her attorney. Because Jackson filed her suit after the six-month limitation period ran, her claim was [**15] untimely. Therefore, we agree with the district court that the government's motion to dismiss for lack of subject matter jurisdiction should be granted.

III.

The next issue concerns the district court's decision not to equitably toll Jackson's claim, which, given that the parties dispute certain facts, is reviewed under an abuse of discretion standard. *See Dunlap v. United States, 250 F.3d 1001, 1007 n.2 (6th Cir. 2001)* (noting that *HN7*[⚓] the abuse of discretion standard applies to a district

---

[2] To support her argument, Jackson points only to *Matos v. United States, 380 F. Supp. 2d 36, 40 (D.P.R. 2005)*, a case in which a district court determined that the six-month limitations window was not triggered because the agency had "available the necessary [**14] information to ensure that delivery by certified mail be achieved" in light of the fact that the agency had two addresses for the claimant's counsel. This reasoning runs contrary to that relied on by other courts. *See generally Berti, 860 F.2d at 340* ("[T]he running of the statutory period [begins] from the date of mailing of a certified or registered letter."); *Carr, 522 F.2d at 1357* ("[T]he plain words of the statute . . . specify that an action be begun within six months after the 'date of mailing.'") Furthermore, this case is not controlling authority in this circuit.

[3] Moreover, as the government notes, the agency might have been reprimanded for directly communicating with an individual who was represented by counsel. *See* Def. Br. at 22 n.1.

court's refusal to apply the doctrine of equitable tolling when facts are in dispute); *Truitt v. Cnty. of Wayne, 148 F.3d 644, 648 (6th Cir. 1998)* ("We review a district court's decision regarding equitable tolling for an abuse of discretion."). Equitable tolling allows a federal court "to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond its litigant's control." *Robertson v. Simpson, 624 F.3d 781, 783 (6th Cir. 2010)* (internal quotation marks and citation omitted). While "equitable tolling may be applied in suits against the government, courts will only do so sparingly, and not when there has only been a garden variety [**16] claim of excusable neglect." *Chomic v. United States, 377 F.3d 607, 615 (6th Cir. 2004)* (internal quotation marks and citation omitted). Jackson carries the burden of establishing her entitlement to [*719] equitable tolling. *See Robertson, 624 F.3d at 784.*

The issue of equitable tolling raises two questions. First is the question of whether equitable tolling applies to the FTCA's limitations period, which depends on whether the time [***9] limitations in the FTCA are jurisdictional in nature. This question has prompted some variance within this circuit. *See, e.g., Bazzo v. United States, 494 F. App'x 545, 546 (6th Cir. 2012)* ("The question whether *§ 2401(b)*'s exhaustion provisions constitute jurisdictional requirements divides circuit courts and even prompts inconsistent rulings within this circuit.").[4] Moreover, the government argues that equitable tolling is not available in light of recent Supreme Court precedent. *See generally John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 128 S. Ct. 750, 169 L. Ed. 2d 591 (2008)* (ruling that *28 U.S.C. § 2501* was jurisdictional and thus not subject to equitable tolling). If equitable tolling does not apply, Jackson cannot recover. If equitable tolling does apply, this raises the second [**17] question as to whether the district court abused its discretion in not equitably tolling Jackson's

claim. The district court did not address the first question, finding that "even if equitable tolling applies, [Jackson] has not shown her entitlement to such relief." R. 16, Dist. Ct. Opn. at 9, PageID # 111.

We agree with the district court that we need not decide the issue of whether the time [**18] limitations in the FTCA are jurisdictional in nature because, even assuming that equitable tolling is available, we find that the district court did not abuse its discretion in not equitably tolling Jackson's claim. *See generally Bazzo, 494 F. App'x at 547* ("We need not resolve this circuit split today. Assuming the availability of equitable tolling, Bazzo has not shown that the district court abused its discretion in denying relief."). HN8[⬆] To determine whether equitable tolling is available to a plaintiff, a court considers five factors: (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Truitt, 148 F.3d at 648.* We find that the district court's weighing of these factors and denial of equitable tolling to be well within its discretion.

[***10] As to the first and second factors, notice and constructive knowledge, the district court noted that Jackson could not claim a lack of notice or constructive knowledge of [**19] the filing requirement given her knowledge of the FTCA's filing requirements and her having filed her claim within the two-year accrual period. The district court could reasonably ascertain from this information that Jackson and her counsel were aware of the relevant provisions in the FTCA governing when a claim could be filed. While it is true that the district court did not focus on the six-month deadline triggered by the agency's denial letter, [*720] the district court was not required to emphasize the six-month limitation period over the two-year accrual period in evaluating the notice and constructive knowledge factors.

The district court's analysis of the final three factors also did not amount to an abuse of discretion. As to the third factor, diligence, and the fifth factor, reasonableness, the district court's observation that the July 7, 2009 receipt letter received by Shaffer communicated that Jackson "could have filed suit as early as December 2009" as well as its reliance on the fact that Jackson did not file her suit despite having had nearly two years to do so was sound and did not amount to an abuse of discretion. R. 16, Dist. Ct. Opn. at 9, PageID # 111. Moreover, the district [**20] court's attention to the fact

---

[4] *Compare Glarner v. U.S. Dep't of Veterans Admin., 30 F.3d 697, 701 (6th Cir. 1994)* ("[T]he VA first argues that the doctrine of equitable tolling cannot apply to *§ 2401(b)* because the latter is a jurisdictional statute of limitations that cannot be equitably tolled. This assertion is incorrect."), *with Rogers v. United States, 675 F.2d 123, 124 (6th Cir. 1982)* ("There is no equitable exception to the jurisdictional prerequisites of the Federal Tort Claims Act in this Circuit and we decline to create one."), *and Humphrey v. U.S. Att'y Gen.'s Office, 279 F. App'x 328, 332 (6th Cir. 2008)* ("The requirement that a claim pursuant to the FTCA be commenced within six months of an administrative denial is a jurisdictional prerequisite to suit and a failure to comply warrants dismissal on the merits.").

that a full four months—rather than mere days or a week—had passed between the six-month statutory deadline and the filing of Jackson's claim was similarly reasonable and not an abuse of discretion. Finally, the district court did not abuse its discretion in considering the fourth factor, prejudice, as it noted the difficulty the government would have in litigating a matter that was filed four months beyond the limitations period.

Although Jackson argues that a situation in which a denial letter was never delivered mandates application of equitable tolling, she cites to no authority supporting her claim. We note that the denial letter presumably would have been properly delivered had either Shaffer or Serafini updated the agency with the correct mailing address. However we also take note of cases in which courts ruled that equitable tolling did not apply despite the fact that actions taken by the claimant's counsel played a role in the untimely filing. In *Bazzo*, a claimant sought to file a negligence suit against the physician who delivered her daughter, a physician who, the claimant later learned—after the two-year accrual limitation period expired—was **[**21]** an employee at a federally-funded medical facility. *494 F. App'x at 546-47*. The district court labeled her **[***11]** counsel's work as a "below-the-radar investigation" but still did not equitably toll the limitations period. *Id. at 547*. This court affirmed the district court's decision, despite the fact that the claimant's counsel offered "no explanation for these oversights." *Id.*; *see also Ramos v. U.S. Dep't of Health & Human Servs., 429 F. App'x 947, 951 (11th Cir. 2011)* (declining to apply equitable tolling where claimant's "counsel conceded that there was a government website listing federally funded clinics, that [the alleged tortfeasor] was listed on the site, and that he had been unaware of and had not checked the website"). A similar analysis applies to Jackson's claim. Contrary to Jackson's assertion, it was within the district court's discretion not to apply equitable tolling to the limitations period. We thus find no abuse of discretion in the district court's decision.

IV.

The final issue concerns Jackson's state-law tort claim against Battistelli. Jackson argues that her state-law tort claim against Battistelli should have survived dismissal of her FTCA claim. This is incorrect.

*HN9*[⚓] When **[**22]** a tort claim is brought against a federal employee, the Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, applies. *See Pub. L. No.*

*100-694, §§ 5-6, 102 Stat. 4563 (1988)*. The Westfall Act "empowers the Attorney General to certify that the employee was acting within the scope of his office or employment at the time of the incident . . ." giving rise to the claim. *Gutierrez de Martinez [*721] v. Lamagno, 515 U.S. 417, 420, 115 S. Ct. 2227, 132 L. Ed. 2d 375 (1995)* (quoting *28 U.S.C. § 2679(d)(1)*). Upon certification, the United States is substituted for the employee as a defendant, and the claim is litigated under the FTCA and is subject to dismissal on any basis applicable to FTCA claims. *See 28 U.S.C. § 2679(d)(4)* (providing that the claims "shall be subject to the limitations and exceptions applicable to those [FTCA] actions"); *Dolan v. United States, 514 F.3d 587, 593 (6th Cir. 2008)* ("[I]f **[***23]** the defendant federal employee was acting in the scope of his or her employment, substitution of the United States as defendant is appropriate and the district court must assess the plaintiff's claims pursuant to the [FTCA] . . . the case must be dismissed for lack of jurisdiction."); *see also United States v. Smith, 499 U.S. 160, 166, 111 S. Ct. 1180, 113 L. Ed. 2d 134 (1991)* ("[T]he FTCA [is] the exclusive mode of recovery for the tort of a Government employee even when the FTCA itself precludes Government liability."). Any **[***12]** suit against the employee "arising out of or related to the same subject matter" is precluded. *28 U.S.C. § 2679(b)(1)*. Because the government certified that Battistelli was acting within the scope of his employment when the accident occurred, Jackson's claim against Battistelli must be dismissed.

V.

For the reasons discussed above, the district court's grant of the government's motion to dismiss for lack of subject matter jurisdiction, its decision not to equitably toll Jackson's claim, and the dismissal of Jackson's state-law tort claim against Battistelli are AFFIRMED.

**Dissent by:** HELENE N. WHITE

# Dissent

**[***13] DISSENT**

HELENE N. WHITE, Circuit Judge, dissenting. The majority affirms the district court's decision not to apply **[**24]** equitable tolling to the limitations period of Jackson's FTCA suit. I find tolling warranted and therefore dissent.

I.

As the majority notes, the issue of equitable tolling raises two questions: (1) whether the FTCA's limitations provision, _28 U.S.C. § 2401(b)_, is jurisdictional and not subject to tolling, and (2) whether equitable tolling is available to Jackson on the merits.

A.

Our decision in _Glarner v. United States Department of Veterans Administration, 30 F.3d 697 (1994)_, resolves the first question. In _Glarner_, we looked to the Supreme Court's decision in _Irwin v. Veterans Affairs, 498 U.S. 89, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)_, which created a rebuttable presumption that equitable tolling applies to suits against the United States. _Irwin, 498 U.S. at 95-96_ ("We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. Congress, of course, may provide otherwise if it wishes to do so."). Observing that nothing indicated that Congress had "provided otherwise" with respect to _§ 2401(b)_, we concluded that _Irwin_'s rebuttable presumption was fully applicable and, therefore, _§ 2401(b)_ was a non-jurisdictional [**25] statute of limitations that was subject to tolling. _See Glarner, 30 F.3d at 701_ ("[T]he VA first argues that the doctrine of equitable tolling cannot apply to _§ 2401(b)_ because the latter is a jurisdictional statute of limitations that cannot be equitably tolled. This assertion is incorrect.").

**[*722]** Somewhat confusingly, we have never cited Glarner for this proposition, and since _Glarner_, the court has referred to _§ 2401(b)_ as jurisdictional without reference to _Glarner. See, e.g., Humphrey v. United States Attorney Gen.'s Office, 279 F. App'x 328, 332 (6th Cir. 2008)_ ("The requirement that a claim pursuant to the FTCA be commenced within six months of an administrative denial is a jurisdictional prerequisite to suit and a failure to comply warrants **[***14]** dismissal"); _Sullivan ex rel. Lampkins v. Am. Cmty. Mut. Ins. Co., 208 F.3d 215 (6th Cir. 2000)_ (table) (describing the two-year deadline for filing administrative claims as jurisdictional); _see also Bazzo v. United States, 494 F. App'x 545, 546 (6th Cir. 2012)_ (comparing _Glarner_ with _Humphrey_ and _Sullivan_ and observing, "[t]he question whether _§ 2401(b)_'s exhaustion provisions constitute jurisdictional requirements divides circuit courts and **[**26]** even prompts inconsistent rulings within this circuit."). Nonetheless, as Judge Stranch recognized in her dissent in _Bazzo, Glarner_ has not been overruled

and is the law of the circuit. _Bazzo, 494 F. App'x at 548_ (Stranch, J. dissenting) ("Until the Supreme Court or our Court sitting _en banc_ holds that the exhaustion provisions of _28 U.S.C. § 2401(b)_ are jurisdictional requirements, I would affirm the district court's decision that the statute is not jurisdictional and that equitable tolling may be applied based on our prior decision in _Glarner_.").

The government contends that the Supreme Court's decision in _John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 128 S. Ct. 750, 169 L. Ed. 2d 591 (2008)_, implicitly overruled _Glarner_, but it did not. In _John R._, the Court held that the statute of limitations for filing actions in the United States Court of Federal Claims, _28 U.S.C. § 2501_, is a jurisdictional limitations period not subject to waiver. The government points to language in the decision distinguishing statutes of limitations that "seek primarily to protect defendants against stale or unduly delayed claims" which may be treated as an affirmative defense, from those that seek "to achieve a broader system-related **[**27]** goal, such as . . . limiting the scope of a governmental waiver of sovereign immunity" which are "more absolute" and "the Court has sometimes referred to . . . as 'jurisdictional.'" _John R., 552 U.S. at 133-34_. The government argues that _§ 2401(b)_ falls in the latter category and accordingly, under _John R._ is jurisdictional and cannot be tolled. But _John R._ did not employ that distinction to categorize _§ 2501_ and then find tolling inapplicable. Rather, consistent with _Irwin_, the Court held that congressional silence in the face of the Court's _long-held precedent_ finding _§ 2501_ jurisdictional was sufficient to rebut _Irwin_'s presumption that equitable tolling applied. _Id. at 137-38_ ("Specific statutory language . . . could rebut [_Irwin_'s] presumption by demonstrating Congress' intent to the contrary. And if so, a definitive earlier interpretation of the statute, finding a similar congressional intent, should offer a similarly sufficient rebuttal."). Because no such Supreme Court precedent exists with respect to _§ 2401(b)_, Congressional silence does not rebut _Irwin_'s presumption that equitable tolling is available. Accordingly, _John_ **[***15]** _R._ does not undermine this court's decision in **[**28]** _Glarner. See Arteaga v. United States, 711 F.3d 828, 833 (7th Cir. 2013)_ (Posner, J.) (finding the FTCA limitations provision non-jurisdictional and subject to tolling, and noting "[t]he opinion in _John R. Sand & Gravel_ actually reaffirms the presumption that equitable tolling applies to statutes of limitations in suits against the government, while emphasizing that the presumption is rebuttable") (citation omitted); _see also Santos ex rel. Beato v._ **[*723]** _United States, 559 F.3d 189, 197 (3d Cir. 2009)_

(stating, when concluding that *John R.* did not invalidate its prior determination that the FTCA limitations provision is non-jurisdictional and subject to tolling, "the Court in *John R.* applied but did not overrule *Irwin*"). Because *Glarner* remains good law, the FTCA's limitations provision is subject to equitable tolling.

B.

As to the whether the filing deadline should have been tolled in this case, I would answer in the affirmative. As noted, to determine whether equitable tolling applies in a given case, the court considers five factors: (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's **[**29]** diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Truitt v. Wayne Cnty., 148 F.3d 644, 648 (6th Cir. 1998)*. We review a district court's decision to deny equitable tolling for an abuse of discretion, i.e., we reverse if the district court relies on clearly erroneous findings of fact, or improperly applies the law or uses an erroneous legal standard. *Romstadt v. Allstate Ins. Co., 59 F.3d 608, 615 (6th Cir. 1995)*.

Here, the district's court's factual determination that Jackson had actual notice of the filing deadline was clearly erroneous. Jackson's attorneys were surely aware of the FTCA's general filing requirements, but it is undisputed that neither Jackson nor her attorneys were aware that the agency had mailed the denial letter, triggering the six-month deadline. In other words, Jackson had no notice of the actual deadline for filing suit: September 8, 2011. Further, the district court erred as a matter of law when it stated, as a basis for its prejudice finding, that Congress did not intend to waive sovereign immunity for late-filed claims. *See* R. 16, Dist. Ct. Opn. at 10 **[**30]** (finding that tolling would prejudice the government because it "would be required to **[***16]** litigate a matter that unquestionably was filed beyond the limitations period and over which Congress did not intend to waive sovereign immunity"). The statement was akin to finding that Congress did not intend for equitable tolling to apply to FTCA claims, which—pursuant to *Irwin* and *Glarner*—is plainly incorrect. In addition, the district court's determination that Jackson was not diligent because she *could have* filed suit as early as December 2009—six months after the agency received her claim—is, at least, questionable. The FTCA permits, but does not require, claimants to deem a claim denied and file suit at any

time after the agency fails to adjudicate the claim within six months of receiving it. *See* 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, *at the option of the claimant any time thereafter*, be deemed a final denial of the claim for purposes of this section.") (emphasis added); *Conn v. United States, 867 F.2d 916, 920 (6th Cir. 1989)* (rejecting a requirement that the claimant exercise the option within a "reasonable" **[**31]** time, observing, "the language of the statute places the option in the claimant's hands"). Jackson cannot be fairly deemed to have lacked diligence because she exercised the discretion squarely granted her under the statute.

Further, the equities weigh in Jackson's favor where the agency *knew* that the six-month filing deadline was triggered by its denial of Jackson's claim, and also *knew*—because its letter was returned undelivered—that Jackson was not aware that her claim had been denied. It did not even follow up using information readily available **[*724]** in Jackson's file by re-mailing the denial to Jackson at her personal address provided on her claim form. There was also evidence that the agency was aware that Serafini had replaced Shaffer as Jackson's attorney, and had his phone number. I would find that the district court abused its discretion in denying equitable tolling, and would allow Jackson's suit to proceed.

---

**End of Document**