# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

DERRICK LEE CARDELLO-SMITH,

          Plaintiff,

    v.

SEAN COMBS,

          Defendant.

Case No. 2:24-cv-12647

Hon. Judith Levy

## **DEFENDANT'S MOTION FOR SANCTIONS**

Defendant, by and through the undersigned counsel, hereby moves, pursuant to this Court's inherent authority, the All Writs Act, 28 U.S.C. § 1651, and 28 U.S.C. § 1927, for an Order sanctioning Plaintiff, by permanently enjoining him from filing, without prior court permission, imposing monetary sanctions, striking all of Plaintiff's filings from the docket, and requiring Plaintiff to pay Defendant's attorney fees. Pursuant to Local Rule 7.1(a)(2)(C), concurrence in the motion has not been sought because the nonmovant is an incarcerated prisoner proceeding pro se.

This Motion is supported by the accompanying Brief.

WHEREFORE, Movant respectfully asks that the Court permanently enjoin Plaintiff from any future filings without the Court's prior leave, impose monetary sanctions, and strike all Plaintiff's filings from the record under its inherent power.

Defendant further asks that the Court order any future filings by Plaintiff be captioned "Application Pursuant to Court Order Seeking Leave to File"; attach as an exhibit to that motion a declaration under 28 U.S.C. § 1746 or a sworn affidavit that his complaint is not prohibited by the permanent injunction and is not frivolous or made in bad faith; identify and list, as a second exhibit, the full caption of every state and federal case previously filed by or on Plaintiff's behalf, whether dismissed or pending; and provide, as a third exhibit, a copy of the Court's injunctive order. *See Kersh v. Borden Chem., a Div. of Borden, Inc.*, 689 F. Supp. 1442, 1452-53 (E.D. Mich. 1988). Defendant further asks that the Court order that Defendant shall have no obligation to respond to any filing made by Plaintiff against Defendant without Plaintiff first obtaining leave of court for such filing and that Defendant's rights and obligations shall not be affected by any filing made by Plaintiff without Plaintiff first obtaining leave of court for such filing.

Dated:  December 21, 2024

Respectfully submitted,

**FINK BRESSACK**

By:  /s/ David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
David A. Bergh (P83696)
Calder A.L. Burgam (P87203)
*Attorneys for Defendant*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com

nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com

**SHER TREMONTE**
By:   /s/ *Erica A. Wolff*
Erica A. Wolff (application for
admission forthcoming)
*Counsel for Defendant*
90 Broad Street, 23rd Floor
New York, NY 10004
Tel: (212) 202-2600
ewolff@shertremonte.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

DERRICK LEE CARDELLO-SMITH,

    Plaintiff,

  v.

SEAN COMBS,

    Defendant.

Case No. 2:24-cv-12647

Hon. Judith Levy

# DEFENDANT'S BRIEF IN SUPPORT
# OF HIS MOTION FOR SANCTIONS

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

1.  Should the Court sanction Plaintiff, under its inherent power, to stop his decades' long onslaught of vexatious and meritless filings in this case and others, by permanently enjoining him from filing, without prior court permission, imposing monetary sanctions, and striking all filings from the docket?

> Movant's Answer: Yes.

2.  Should the Court sanction Plaintiff under the All Writs Act, 28 U.S.C. § 1651?

> Movant's Answer: Yes.

3.  Should the Court impose monetary sanctions on Plaintiff—including requiring Plaintiff to pay Mr. Combs's attorneys' fees—under 28 U.S.C. § 1927 or, alternatively, the Court's inherent power?

> Movant's Answer: Yes.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

28 U.S.C. § 1651

28 U.S.C. § 1927

*Barnaby v. Mich. State Gov't*, No. 1:22-cv-1146, 2024 WL 3579352, at *2 (W.D. Mich. July 30, 2024)

*Day v. OnStar, LLC*, No. 2:19-cv-10922, 2019 WL 3322437, at *5 (E.D. Mich. July 3, 2019)

*Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998)

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 519 (6th Cir. 2002)

*Gitler v. Ohio*, 632 F. Supp. 2d 722, 724 (N.D. Ohio 2009)

*King v. Whitmer*, 71 F.4th 511, 530 (6th Cir. 2023)

*Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011)

*Sanford v. Standard Fed. Bank*, No. 10-12052, 2011 WL 721314, at *8 (E.D. Mich. Feb. 23, 2011)

*Scott v. Bradford*, No. 13-cv-12781, 2014 WL 6675354, at *3 (E.D. Mich. Nov. 25, 2014)

*Roy v. U.S. Gov't*, No. 09-cv-11905, 2009 WL 1449090, at *1 (E.D. Mich. May 21, 2009)

*Wrenn v. Vanderbilt Univ. Hosp.*, 50 F.3d 11 (6th Cir. 1995)

*Wylie v. City of Detroit*, No. 19-cv-12605, 2019 WL 13199595, at *2–3 (E.D. Mich. Oct. 30, 2019)

*Ziegler v. Two Unknown 50th Dist. Ct. Officers*, No. 18-cv-12424, 2020 WL 32553, at *3 (E.D. Mich. Jan. 2, 2020)

## PRELIMINARY STATEMENT

This case is yet another instance of Plaintiff, a convicted rapist serving a decades-long sentence, attempting to leverage the federal judiciary as a tool for harassment and extortion. Indeed, Plaintiff has filed several, substantially identical lawsuits against Mr. Combs, in each case demanding enormous sums of money based on wholesale fabrications. His frequent filings clearly indicate he has no intention of stopping his meritless attacks. As a result of Plaintiff's harassment, Mr. Combs has incurred significant legal fees and costs. Plaintiff's barrage of meritless, fraudulent filings must come to an end.

This is not Plaintiff's first attempt at a shakedown—and unless this Court intervenes, it will not be his last. Plaintiff has a lengthy history of filing frivolous lawsuits in this District and beyond; a PACER search reveals that Plaintiff appears on the caption in *173* lawsuits and appeals in the Sixth Circuit and its district courts. The overwhelming majority, if not all, of Plaintiff's cases have been dismissed as meritless. Still, he has continued filing. Numerous judges have admonished Plaintiff to stop litigating vexatiously. Plaintiff has ignored them. Indeed, three courts—this District, the Western District of Michigan, and the Sixth Circuit—have denied Plaintiff's requests to file *in forma pauperis*, based on his history of vexatious litigation. Yet Plaintiff, as this case shows, is undeterred.

To end Plaintiff's outrageous abuse of the judiciary, then, something more must be done. This Court should permanently enjoin Plaintiff from filing in federal court without prior court approval, impose monetary sanctions, and strike all his filings from this case's docket. Other courts in this District and Circuit, whether under their inherent power, the All Writs Act, or 28 U.S.C. § 1927, have done so in response to far less egregious abuses of the judiciary. And Plaintiff's conduct in this case—and his decades of frivolous cases preceding it—proves no other sanction will stop his onslaught of vexatious litigation.

## FACTUAL AND PROCEDURAL BACKGROUND

As of the filing of this motion, Plaintiff has filed at least three lawsuits against Mr. Combs. All demand hundreds of millions of dollars based on Plaintiff's completely fictitious claim that, twenty-seven years ago, while he was bartending in Detroit, Plaintiff met the music mogul Sean Combs, and that Mr. Combs, in partnership with multiple police departments, prosecutors, and judges, engaged in an outlandish conspiracy to cover up Plaintiff's alleged assault.

On May 31, 2024, Plaintiff filed the first case in Monroe County Circuit Court (the "Monroe action"). *See* ECF No. 1, PageID.339–42. In it, Plaintiff demanded "ONE HUNDRED-MILLION DOLLARS" and claimed the alleged assault occurred at a Holiday Inn in Monroe, Michigan (the "Monroe Action"). ECF No. 1, PageID.341. Plaintiff did not serve Mr. Combs.

2

Two weeks later, on June 10, 2024, Plaintiff filed a second case demanding "ONE HUNDRED-MILLION DOLLARS." ECF No. 1, PageID.12. But this time, Plaintiff alleged the purported assault occurred at a Holiday Inn in Adrian, Michigan, *id.*, and filed in Lenawee County Circuit Court (the "Lenawee Action"). *See* ECF No. 1, PageID.12–14. The Complaint in the Lenawee Action was a photocopy of the Complaint filed in Monroe County, with the word "Monroe" whited out before "Holiday Inn." Plaintiff, again, did not serve Mr. Combs.

On August 1, 2024, in the Lenawee Action, Plaintiff filed a purported proof of service claiming the Complaint was served on Mr. Combs on July 6, 2021— nearly *three years* before Plaintiff initiated the case—and by "Return Receipt Restricted Delivery to Defendant." ECF No. 1, PageID.42–44. On August 2, 2024, also in the Lenawee Action, Plaintiff moved to enjoin Mr. Combs from selling a parcel of real property in Los Angeles, California (the "Injunction Motion"). ECF No. 1, PageID.47. On August 7, 2024, the Lenawee Court held a hearing on Plaintiff's Injunction Motion and granted it, barring Mr. Combs from disposing of a piece of property identified only as having been "placed on the market by defendants for the amount of [sic] $70,000,000,000.00 (Seventy-Million Dollars)[.]" ECF No. 1, PageID.56. Mr. Combs did not appear at the hearing because he was never served with a copy of the Complaint or the Injunction Motion and had no knowledge of the Lenawee Action at that time. ECF No. 1, PageID.199–201. At the August 7 hearing,

3

Plaintiff told the Lenawee Court that Mr. Combs and his agent had each visited Plaintiff in prison and offered Plaintiff $2.3 million to settle his claims. ECF No. 1, PageID.472–73. These statements were blatant lies (the prison visitor logs confirmed no such visits had occurred). *See* ECF No. 1, PageID.346.

On August 23, 2024, Plaintiff requested that a default be entered against Mr. Combs in the Lenawee Action, which was entered the same day. ECF No. 1, PageID.72–73. The default, too, was never served on Mr. Combs; the proof of mailing in the State Court file is unsigned. *Id.* Nevertheless, on August 30, 2024, Plaintiff moved for default judgment. ECF No. 1, PageID.127–28. On September 9, 2024, the Lenawee Court held a hearing and entered a default judgment in Plaintiff's favor in the amount of "$100,000,000,310.40." ECF No. 1, PageID.139.

On September 10, 2024, Mr. Combs retained the undersigned counsel. On September 12, 2024, counsel entered limited appearances on behalf of Mr. Combs, specifically preserving the right to challenge the Lenawee Court's personal jurisdiction over Mr. Combs, along with an Emergency Motion to Set Aside Default and Default Judgment and a Motion to Dissolve Temporary Restraining Order and/or Preliminary Injunction (the "Combs Motions"). ECF No. 1, PageID.140–306. The Lenawee Court held hearings on the Combs Motions on September 16 and 18, 2024. ECF No. 1, PageID.441–67, 497–556. At the September 18 hearing, the Lenawee Court granted the Combs Motions, set aside the default and the default

judgment, and dissolved the temporary restraining order and/or preliminary injunction. Order, ECF No. 1, PageID.486-488. Also at the hearing, Plaintiff was confronted with the fact there was no Holiday Inn located in Adrian, Michigan at the time of the alleged assault, ECF No. 1, PageID.543 (Sept. 18, 2024 Hearing Transcript).

On September 20, 2024, with the Lenawee action still pending, the Monroe Action was dismissed for Plaintiff's failure to serve. *Cardello-Smith v. Combs*, 2024-0000147784 (38th Circ. Ct., Monroe Cnty.). Undaunted, on September 27, 2024, Plaintiff filed a document in the Lenawee Action alleging, for the first time, that the assault took place at a location with a sign advertising "HOLI-DAYS INN, COMING SOON." ECF No. 1, PageID.562.

On October 7, 2024, Mr. Combs filed his Notice of Removal, ECF No. 1, and a week later, moved to dismiss, ECF No. 2. On October 16, 2024, while this case was still pending, Plaintiff brought a third, substantially identical case against Mr. Combs in the Eastern District of Michigan—this time, demanding $405,000,000 (the "second federal action"). *Cardello-Smith v. Combs*, No. 2:24-cv-12737, ECF No. 1 (E.D. Mich. Oct. 16, 2024). That Complaint has not been served.

Plaintiff continues filing near-daily in this case. The day after initiating the second federal action, on October 17, Plaintiff moved to remand this case to state court, ECF No. 4, demanded a jury trial, ECF No. 5, and filed a letter demanding

"FOUR-HUNDRED MILLION DOLLARS," ECF No. 7. On October 21, 2024, the Court noticed the parties that it would resolve the Motions to Dismiss and to Remand without oral argument. ECF No. 6. The same day, Plaintiff requested oral argument, ECF No. 8, objected to the notice of removal, ECF No. 9, and filed multiple letters, ECF No. 10, 13, a document purporting to be an affidavit, ECF No. 11, and a second motion to remand, ECF No. 12. On October 22, 2024, Plaintiff filed another two letters, ECF No. 14, and again demanded "FOUR HUNDRED MILLION DOLLARS," ECF No. 15, PageID.641. On October 24, 2024, Plaintiff filed multiple "affidavits" from individuals incarcerated with him. ECF Nos. 17–18. On October 25, 2024, Plaintiff filed a document, signed only by him, purporting to accept a settlement offer from Mr. Combs. ECF No. 19. No such offer was ever made.

On October 31, 2024, Mr. Combs responded to Plaintiff's motion to remand. ECF Nos. 20–21. The next day, Plaintiff filed a third remand request and claimed, despite the Lenawee Court having determined otherwise months ago, that he had initially served Mr. Combs properly. ECF No. 22. On November 4, 2024, Mr. Combs responded to Plaintiff's Motions for Oral Argument and "To Secure Results." ECF Nos. 25–28.

On November 5, 2024, Plaintiff filed—for the fourth and fifth times—documents purporting to remand or "remove" this case to the Michigan Court of Appeals. ECF Nos. 29, 31. On November 14, Plaintiff filed, in both this case and the

6

second federal case, identical handwritten "affidavits" from George Preston, who appears to be a relative of an individual formerly incarcerated with Plaintiff, *see infra* 16–17 & n.3. ECF No. 34; *see* No. 2:24-cv-13737, ECF No. 8. On November 15, 2024, the Court denied Plaintiffs' motions to remand. ECF No. 35. On November 18, 2024, Plaintiff filed a sixth document challenging jurisdiction, purporting to "remove" this case to the Michigan Court of Appeals. ECF No. 36.

The same day, in the second federal action—which Plaintiff had just moved to "remove" to the Southern District of New York—Judge McMillion denied leave to file *in forma pauperis* and dismissed Plaintiff's case. *See* No. 2:24-cv-12737, ECF Nos. 6 (removal), 9 (dismissal). In doing so, Judge McMillion determined Plaintiff "has been made aware that he is a three-striker" under 28 U.S.C. § 1915(g), and underscored Plaintiff's "substantial litigation history in the federal courts," including "at least seven civil rights complaints dismissed for being frivolous or malicious or for failing to state a claim." *Id.*, ECF No. 9, PageID.47–49.

Undeterred by Judge McMillion's order, on November 21, 2024, in this case, Plaintiff filed another "affidavit" purportedly from George Preston. ECF No. 37. On November 22, 2024, Plaintiff filed two additional documents purporting to direct the Michigan Department of Corrections and Michigan State Police to transfer certain documents to the "FEDERAL COURTS EVIDENCE TEAM." ECF No. 39, PageID.757; *see also* ECF No. 38. Between November 27 and December 17, 2024,

7

Plaintiff filed 22 more frivolous and fabricated documents. *See* ECF Nos. 40–58, 62. These include false certified mail receipts, purporting to have served Mr. Combs with the Complaint through Plaintiff's affiant George Preston (who Plaintiff described as an "agent for resident & business partner Sean Combs") on April 15, 2024[1], *over a month before Plaintiff even initiated the Lenawee lawsuit*, ECF No. 54, PageID.1035–38; *see infra* pp. 16–17 & nn.3–4; two copies of a falsified confession and "order of dismissal," containing a forgery of Mr. Combs's signature, ECF No. 41, Page ID.766–72; ECF No. 48, Page ID.989–95; multiple motions to appeal the Court's decision as to removal, ECF Nos. 45, 50; duplicate "Notices" claiming international celebrity Jennifer "J-Lo" Lopez is a "Material Witness," ECF Nos. 44, 56; a "Notice of Submission of Material Witness[,]" identifying Justin Bieber, Sharon Stone, Kevin Spacey and Usher, ECF No. 60; and a "Motion for Emergency Hearing" to reinstate the vacated default judgment in which Plaintiff filed a fabricated document that accuses defense counsel and the Lenawee County

---

[1] Plaintiff also filed (1) a certified mail receipt purporting to demonstrate the Complaint was served upon Kathryn Preston as an "agent for Sean Combs[,]" on November 2, 2024; and (2) a purported affidavit from Kathryn Preston, in which she falsely claims that Plaintiff, herself, George Preston and Defendant "are all investors and landowners in the Combs-Preston estate…at the address of 7541 Yale Rd. Avoca, MI[,]" and that she "provided [the Complaint] to Sean Combs attorney David Fink at a meeting on 11-4-2024 [.]" ECF No. 54, PageID.1035-36. Plaintiff made no reference to Defendant's supposed interest in the 7541 Yale Road property when he filed a lawsuit regarding the property against the Prestons in 2023. ECF No. 1, PageID.419-21.

8

Clerk of conspiring in an outlandish fraud, ECF No. 62, PageID.1300. Given Plaintiff's pattern and practice, the undersigned counsel anticipates that by the time the Court reads these papers, the list of his meritless and fabricated filings will be even longer.

## <u>LEGAL STANDARD</u>

Courts have inherent power to sanction parties that abuse the judicial process, including by "impos[ing] pre-filing restraints on litigants with a history of filing repetitive, frivolous, or vexatious pleadings" and "requir[ing] those litigants to obtain court approval before filing further pleadings." *Qiu v. Scott Cnty., KY Bd. of Educ.*, No. 23-5842, 2024 WL 4257198, at *2 (6th Cir. Apr. 8, 2024). To sanction a litigant under its inherent authority, a court must find "[1] that the claims advanced were meritless, [2] that [the filing party] knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011); *see First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 519 (6th Cir. 2002) (requiring a finding of bad faith or conduct "tantamount to bad faith").

The All Writs Act provides a separate and independent basis for courts to enjoin "permanently . . . the filing of repetitive and harassing lawsuits" by represented or *pro se* litigants. *Sanford v. Standard Fed. Bank*, No. 10-12052, 2011 WL 721314, at *8 (E.D. Mich. Feb. 23, 2011). It authorizes Article III courts to

"issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

Courts may also award sanctions against "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Sanctions are appropriate when the litigant "knows or reasonably should know that a claim pursued is frivolous and yet continues to litigate it." *King v. Whitmer*, 71 F.4th 511, 530 (6th Cir. 2023) (quotation marks omitted). Section 1927 imposes an objective standard of conduct and does not require finding subjective bad faith. *See Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 532 (6th Cir. 2006).

## ARGUMENT

## I. THE COURT SHOULD IMPOSE A PREFILING RESTRICTION UNDER ITS INHERENT POWER

The Court should permanently enjoin Plaintiff from making any future filings without prior leave in any federal court or, in the alternative, in this District.[2] Courts have broad discretion to sanction bad faith conduct under their inherent authority, and need not consider whether that conduct could be sanctioned under other potentially applicable rules or statutes before doing so. *See First Bank of Marietta*,

---

[2] Alternatively, the Court should permanently enjoin Plaintiff from filing documents in any federal court, without prior leave, regarding Mr. Combs or any of Mr. Combs's agents, successors, assigns, attorneys, or affiliated entities.

10

307 F.3d at 514 & n.11 (collecting cases). Indeed, "[t]here is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation." *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998). To the contrary, courts "ha[ve] a duty to protect and preserve the sound and orderly administration of justice," and "frivolous, vexatious, and repeated filings by pro se litigants interfere with the orderly administration of justice by diverting scarce judicial resources from cases having merit." *Lea v. U.S. Dep't of Agric.*, No. 3:21-CV-00468, 2024 WL 3639610, at *4 (M.D. Tenn. Aug. 1, 2024). Here, Plaintiff's conduct proves a prefiling restriction is not only appropriate, but necessary, to stem his onslaught of frivolous litigation.  *See In re McDonald*, 489 U.S. 180, 184 (1989) ("Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources," and "[t]he continual processing of petitioner's frivolous requests . . . does not promote" "the interests of justice").

Plaintiff's claims against Mr. Combs are meritless and sanctionable on multiple grounds—not the least of which is that his allegations, and many other statements to the Court, are wholesale fabrications. *See* ECF No. 2; *infra* pp. 15–19. Indeed, he has gone so far as to file forge statements not only purporting to be from Mr. Combs but also from a high-ranking Wayne County government official. ECF Nos. 41, 48; ECF No. 1, PageID.185–195. Plaintiff has filed a barrage of documents

with utterly meritless legal arguments—including, six requests to remove or remand this case, an "interlocutory appeal" regarding the same, and on multiple occasions, verbatim duplicates of prior docket entries. *Compare* ECF No. 12, PageID.633; ECF No. 7, ECF No. 18, PageID.654, *with* ECF No. 9, PageID.620; ECF No. 15, ECF No. 46, PageID.982.

Plaintiff, moreover, knows better because other courts have already warned him. Plaintiff is not a first-time litigant, but a serial filer whose many "lawsuits [] have been dismissed as frivolous or for failure to state a claim upon which relief may be granted." *Smith v. Public Integrity Unit*, No. 23-cv-13209, 2024 WL 4254322, at *1 (E.D. Mich. Sept. 20, 2024) (collecting cases). Indeed, for more than a decade, federal courts have repeatedly dismissed Plaintiff's meritless cases—and thereby given him ample warning against such filings. *See id.*; *Smith v. Unknown Part(y)(ies) #1*, No. 1:24-cv-353, 2024 WL 1854230, at *2 (W.D. Mich. Apr. 29, 2024) (collecting cases dismissing Plaintiff's claims as "frivolous, malicious, and/or [for] fail[ing] to state a claim"); *Smith #267009 v. Maloney et al.*, No. 1:23-cv-421, ECF No. 6 (W.D. Mich. May 16, 2023); *Smith v. Jones et al.*, No. 1:22-cv-1082, ECF No. 10 (W.D. Mich. Feb. 17, 2023), *aff'd* No. 23-1173 (6th Cir. Sept. 12, 2023) (noting Plaintiff's "falsified" and "plainly not credible" filings); *Smith v. Otto et al.*, No. 1:22-cv-1028, ECF No. 9 (W.D. Mich. Feb. 17, 2023), *aff'd* No. 23-1191 (6th Cir. Oct. 6, 2023); *Smith v. Schiebner*, No. 1:21-cv-878, ECF No. 22 (W.D. Mich. Jan.

25, 2022), *aff'd* No. 22-1066 (6th Cir. Aug. 10, 2022); *North v. Scanlon et al.*, No. 1:21-cv-518, ECF No. 4 (W.D. Mich. Jul. 13, 2021), *aff'd* No. 21-2870 (6th Cir. Nov. 29, 2021); *Smith v. Brock*, No. 1:22-cv-634, 2023 WL 2134248, at *3 (W.D. Mich. Feb. 21, 2023); *Cardello-Smith v. MDOC*, No. 2:22-cv-10520, ECF No. 6 (E.D. Mich. July 14, 2022), *aff'd* No. 22-1657 (6th Cir. Mar. 14, 2023); *Cardello-Smith v. Google LLC*, No. 21-cv-11595, 2021 WL 4894700, at *1 (E.D. Mich. Oct. 20, 2021) (noting "plaintiff has at least four prior civil rights complaints that were dismissed by federal courts for being frivolous, malicious, or for failing to state a claim upon which relief could be granted"); *Smith v. Washington*, No. 1:20-cv-1211, ECF No. 11 (W.D. Mich. Mar. 2, 2021); *Smith v. Penman*, No. 20-cv-12052, ECF No. 11 (E.D. Mich. Feb. 18, 2021); *Smith v. Unis*, No. 2:19-cv-12219, 2019 WL 3958394, at *2 (E.D. Mich. Aug. 22, 2019); *Smith v. Penman*, No. 18-cv-01212, ECF No. 6 (W.D. Mich. Feb. 13, 2019); *Smith v. Washington*, No. 2:18-cv-10736, ECF No. 21 (E.D. Mich. Oct. 5, 2018); *Smith v. Hall*, No. 18-cv-277, ECF No. 5 (W.D. Mich. Apr. 3, 2018); *Smith v. Wayne Cnty. Prosecutor's Office*, No. 09-12287, ECF No. 2, PageID.4 (E.D. Mich. June 25, 2009) (dismissing, because Plaintiff "has failed to state any factual or legal basis").

In addition to the above cases, Plaintiff has filed a "large number of petitions for *habeas corpus*," all of which were dismissed as meritless and/or duplicative. *Smith v. MDOC*, No. 2:12-cv-12788, ECF No. 10, PageID.43–44 (E.D. Mich. Aug.

28, 2012) (collecting cases). But those dismissals did not deter Plaintiff either. Instead, even after Judge Arthur Tarnow told Plaintiff that his conduct "slow[ed] the action of the federal court system as a whole and delay[ed] relief to persons with non-duplicative petitions and cases," Plaintiff *continued* to file duplicative petitions—including at least two petitions before this Court, which were dismissed. *See Smith v. MDOC*, No. 5:16-cv-13775, ECF No. 2, PageID.9–10 (E.D. Mich. Oct. 31, 2016) (noting Plaintiff "has been informed repeatedly, by this Court and others, that it is improper for him to file a habeas petition to challenge conditions of confinement such as those raised in this case"); *Smith v. Hoffner*, No. 14-cv-14067 (JEL), 2014 WL 6986436, at *2 (E.D. Mich. Dec. 10, 2014) (dismissing petition and denying certificate of appealability "as any appeal would be frivolous").

Even if federal courts had not repeatedly admonished Plaintiff to stop bringing meritless lawsuits, his decades of filings reflect an experienced litigant who understands this case is frivolous. For example, Plaintiff adapts his requested relief to his target. In cases such as this one, where he believes his target has deep pockets, Plaintiff demands enormous sums of money based on wholly unfounded accusations. *See, e.g.*, *Public Integrity Unit*, No. 2:23-cv-13209, ECF No. 1, Page ID.4 (demanding "TWO-HUNDRED MILLION DOLLARS"); *Washington*, No. 1:20-cv-01211, ECF No. 1, PageID.4 (demanding "THREE HUNDRED-MILLION DOLLARS"); *Unis*, No. 2:19-cv-12219, ECF No. 1, PageID.39 (demanding

EIGHTY-MILLION DOLLARS). But when Plaintiff wants judges to reinstate his dismissed lawsuits, he takes a different tack and demands injunctive relief and only $1.00 of "nominal" damages, or moves to remove and disqualify the judge. *See, e.g.*, *Smith #267009 v. Maloney, et al.*, No 1:23-cv-421, ECF No. 1, PageID.6 (W.D. Mich. Apr. 24, 2023) (suing five federal judges to reassign and reinstate dismissed cases); *Smith v. Brock*, No. 1:22-cv-149, 2023 WL 11885731 (W.D. Mich. Feb. 27, 2023) (moving to remove and disqualify judge for dismissing lawsuit).

As for Plaintiff's motive, the record overwhelmingly demonstrates that his true goal is to harass and extort Mr. Combs. That Plaintiff's complaint duplicates his other pending lawsuits against Mr. Combs, on its own, demonstrates his improper purpose. *See Roy v. U.S. Gov't*, No. 09-cv-11905, 2009 WL 1449090, at *1 (E.D. Mich. May 21, 2009) (a complaint is malicious where it duplicates a pending lawsuit). So, too, does the sheer volume and repetitiveness of Plaintiff's filings.

Above all, Plaintiff's repeated lies to this Court and the Lenawee Court demonstrate his bad faith. Plaintiff claims, incredibly, that nearly three decades ago, Mr. Combs—by then already an internationally renowned and financially successful celebrity—purportedly accepted $150,000 in exchange for *forty-nine percent* of all his assets so that high-ranking Wayne County public officials would cover up an alleged assault. That is ridiculous on its face. *See* ECF No. 2. Plaintiff told the Lenawee Court that, on two occasions, Mr. Combs or his representative had visited

him in prison to offer him $2.3 million to settle his claims. That, too, was a lie. *See* Prisoner Visit History, ECF No. 1, PageID.346 (prisoner visit log, showing no visits from Mr. Combs or his representatives). And Plaintiff has lied repeatedly to this Court about settlement offers that were never made, including forging Mr. Combs's signature, ECF Nos. 19, 41, 48, and falsified records to lie that he served Mr. Combs, through Plaintiff's own affiants, on a date before he had even filed this case, ECF No. 54, PageID.1033, 1035–38.

Plaintiff has also offered multiple affidavits or "witness" statements that are facially incredible and obviously fabricated. For example, Plaintiff tells the Court that he happens to be incarcerated with not one, but *two*, individuals who personally witnessed his alleged encounter with Mr. Combs and then-Recorders Judge Kym Worthy twenty-seven years ago. *See* ECF No. 17, PageID.651; ECF No. 18, PageID.653 (attesting nearly three decades ago, Wilson "was picked up . . . for the 5th time by Detroit Police Officers and taken to different hotels in Detroit" to "engag[e] in sex with other women 17 and 18," but "[w]hat was good about it was that I met alot [sic] of people, like Sean Combs, and I was at several meetings with Mr. Combs and [Judge Worthy]," including one where they signed "a Big Agreement on the hood of Derrick's car."). Both "witnesses" are, like Plaintiff,

serving decades' long sentences for rape.[3] One also, conveniently, purports to exonerate Plaintiff for the rapes of which he was convicted. *See* ECF No. 11, PageID.628. These affidavits are total fabrications.

Plaintiff also offers fantastical handwritten statements purportedly from George Preston, who appears to be a relative of James Leslie Preston, with whom Plaintiff was formerly incarcerated.[4] Preston's affidavit, like others Plaintiff has filed, purports to exonerate Plaintiff. *See* ECF No. 34, PageID.729; *see also* ECF No. 37, PageID.748 (claiming Plaintiff "saved our lives" when "guns were placed at

---

[3] *Dephonso Leon Wilson, MDOC Number 267992*, Michigan Department of Corrections (last accessed: Dec. 17, 2024), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=267992; *Aaron Jamal Rogers, MDOC Number 360900*, Michigan Department of Corrections (last accessed: Dec. 17, 2024), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=360900.

[4] James Preston is serving a life sentence without the possibility of parole for first-degree murder at Muskegon Correctional Facility. *Compare James Leslie Preston, MDOC Number 811364*, Michigan Department of Corrections (last accessed: Dec. 17, 2024), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=811364, *with Smith v. Unknown Party #1*, No. 1:21-cv-885, ECF No. 3 (W.D. Mich. Oct. 19, 2021) (Plaintiff). George and James Preston are both from Avoca, Michigan, an unincorporated community in Kenockee Township. *Compare* ECF No. 34, PageID.730 (listing address), *with Overwhelming evidence in Yale murder case led police to local suspects*, Associated Press (June 17, 2021), https://www.voicenews.com/2010/11/23/overwhelming-evidence-in-yale-murder-case-led-police-to-local-suspects/. The entire township, including communities in addition to Avoca, had a population of 2,405 in 2020. *See Kenockee Township, St. Clair County, Michigan*, U.S. Census Bureau (last accessed Dec. 17, 2024), https://data.census.gov/profile/Kenockee_township,_St._Clair_County,_Michigan?g=060XX00US2614742740.

my head between 1998–2023"). And Preston—also like Plaintiff's other "witnesses"—has offered similarly incredible affidavits, or been a co-plaintiff, in a significant number of Plaintiff's prior lawsuits.[5] *See, e.g.*, *Public Integrity*, No. 2:23-cv-13209, ECF No. 1, PageID.26 (W.D. Mich. Dec. 15, 2023); *Unis*, No. 2:19-cv-12219, ECF No. 1-1, PageID.44 (E.D. Mich. July 29, 2019) (Preston attesting that Plaintiff's rape victim, in fact, consented); *Washington*, No. 2:18-cv-10736, ECF No. 1 (E.D. Mich. Mar. 5, 2018) (co-plaintiff); *see Smith v. Weers*, No. 1:15-cv-00042, ECF No. 32, PageID.120 (W.D. Mich. July 20, 2015) (James Leslie Preston, George Preston, Kathy Preston as co-plaintiffs). Plaintiff has also claimed that Preston participated in the one of the rapes for which Plaintiff is incarcerated. *See Unis*, 2:19-cv-12219, ECF No. 1, PageID.19 (E.D. Mich. July 29, 2019) (claiming encounter was consensual).

The fourth affidavit is just as obviously false. It is a handwritten statement, supposedly drafted decades ago by a Detroit Police Officer, confessing that the officer "Execut[ed]" famed rapper Tupac Shakur to cover up the alleged assault of Plaintiff—who, the officer conveniently adds, had in September 1996, "just be[en]

---

[5] Prior to removal, Plaintiff filed an "affidavit" from Kathy Preston, another apparent relative of James Preston, attesting that she "recently ended an ongoing sexual relationship" with a judge, who denied Plaintiff's appeal in retribution. ECF No. 1, PageID.86; *see also* ECF No. 54, PageID.1035–38 (second K. Preston affidavit). Plaintiff calls Kathy Preston his "wife," ECF No. 1, PageID.354, and appears to have sent Preston messages dictating an exonerating statement that would purportedly be from one of his rape victims, ECF No. 1, PageID.356–72.

18

convicted Earlier for rapes He did not do." *See* ECF No. 18, PageID.654. Putting

aside the statement's substance—all of which is false—its dates reveal its lie;

according to the Michigan Department of Corrections, Plaintiff would not commit,

let alone been convicted or sentenced for, his first rape until roughly a year after the

supposed "affidavit" claims.[6] In short, as Judge Steeh put it in dismissing another of

Plaintiff's lawsuits, Plaintiff's allegations against Mr. Combs wholly "lack[] an

arguable basis in fact," and are "clearly baseless in that they describe fantastic or

delusional scenarios." *Penman*, No. 20-cv-12052, ECF No. 11, PageID.47

(quotation marks omitted).

　　Plaintiff's conduct, in short, proves that no sanction short of a prefiling

restriction will suffice. *See Lea*, 2024 WL 3639610, at *5 (imposing prefiling

restriction where *pro se* plaintiff's conduct "has made it abundantly clear that,

undeterred, he will continue" filing vexatious cases). Plaintiff makes new, spurious

demands in this case on a near-daily basis—sometimes, filing multiple documents a

day. *See, e.g.*, ECF Nos. 47–56 (all filed December 9, 2024).

　　And Plaintiff has been entirely undeterred by prior attempts to stem his

frivolous filings—including dozens of dismissals, explicit warnings from federal

judges, and the fact that courts in the Eastern and Western Districts of Michigan, as

---

[6] *Derrick Lee Smith*, Michigan Department of Corrections (last accessed: Dec. 17, 2024),
https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=267009.

well as the Sixth Circuit, have repeatedly refused his attempts to file *in forma pauperis*. *See, e.g.*, *Smith v. Unis*, No. 19-1985, ECF No. 9-2 (6th Cir. Mar. 18, 2020) (noting that, in addition to having "at least three strikes under § 1915(g)," Plaintiff's "appeal appears to lack an arguable basis in law and is thus frivolous"); *Public Integrity Unit*, 2024 WL 4254322, at \*1–2 (barring Plaintiff from filing *in forma pauperis* absent a showing of imminent danger, and dismissing for failure to state a claim); *Brock*, 2023 WL 2134248, at \*3 (same, in the Western District of Michigan, because Plaintiff had filed at least three frivolous or malicious lawsuits).

Indeed, as of the filing of this motion, a PACER search for "Derrick Lee Smith" reveals 173 lawsuits associated with Plaintiff in the Eastern and Western Districts of Michigan, and the Sixth Circuit. Searches using Plaintiff's other aliases—such as "Derrick Cardello-Smith"—reveal additional results. *See, e.g.*, *Day v. OnStar, LLC*, No. 2:19-cv-10922, 2019 WL 3322437, at \*5 (E.D. Mich. July 3, 2019) (enjoining filing without prior leave where *pro se* plaintiff was a "prolific [filer] for at least 35 years" and "[a] Westlaw search reveals over 130 opinions" about his lawsuits in state and federal courts), *report and recommendation adopted*, No. 2:19-cv-10922-TGB, 2019 WL 3315278 (E.D. Mich. July 24, 2019), *aff'd*, No. 19-1845, 2019 WL 7811329 (6th Cir. Dec. 18, 2019); *Roy*, 2009 WL 1449090, at \*1 (enjoining filing where *pro se* plaintiff had filed more than 90 cases according to PACER search). Without a permanent prefiling restriction, Plaintiff will continue to

impose enormous burdens on both the judiciary—which is forced to devote resources to addressing his ever-multiplying grievances—and on his victims—who are subjected to the stress and enormous cost of responding to his barrages. *See Feathers*, 141 F.3d at 269 (affirming prefiling restriction "to sta[u]nch the ongoing flow of meritless and repetitive" cases). That is why "[t]he proper method for handling the complaints of prolific litigators is to require them to seek leave of the court before filing further complaints." *Scott v. Bradford*, No. 13-cv-12781, 2014 WL 6675354, at *3 (E.D. Mich. Nov. 25, 2014) (quotation marks omitted).

Accordingly, courts have routinely invoked their inherent power to bar *pro se* litigants from filing, without prior leave of the Court, for far lesser abuses of the judiciary. *See, e.g.*, *Barnaby v. Mich. State Gov't*, No. 1:22-cv-1146, 2024 WL 3579352, at *2 (W.D. Mich. July 30, 2024) (same, as to certain topics, where *pro se* plaintiff's federal cases "span[ned] a decade and include[d] three separate federal lawsuits"); *Wylie v. City of Detroit*, No. 19-cv-12605, 2019 WL 13199595, at *2–3 (E.D. Mich. Oct. 30, 2019) (same, where *pro se* plaintiff had filed 13 actions, most of which were summarily dismissed); *Scott*, 2014 WL 6675354, at *2, *8 (same, where plaintiff had filed "nearly fifty" lawsuits in the Eastern and Western Districts of Michigan); *Hester v. Comm'r of Soc. Sec.*, No. 08-cv-14575, 2009 WL 2885103, at *4 (E.D. Mich. Sept. 2, 2009) (same, where plaintiff had filed four lawsuits on similar subject).

21

Such prefiling restrictions have been imposed on a nationwide basis in particularly egregious cases, like this one. *See, e.g.*, *Woodhouse v. Meta Platforms Inc.*, 704 F. Supp. 3d 502, 514–15 & nns. 8–14 (S.D.N.Y. 2023) (collecting cases, and imposing nationwide filing injunction *sua sponte*, on *pro se* attorney), *aff'd* No. 23-7973, 2024 WL 4297471 (2d Cir. Sept. 26, 2024); *see also Hermes of Paris, Inc. v. Swain*, No. 20-cv-3451, 2021 WL 5170726, at *3 (2d Cir. Nov. 8, 2021) (affirming decision enjoining represented plaintiff from refiling a motion to reinstate his complaint in New Jersey state court, or from filing "future lawsuits" arising out of former employment). The Court should do the same here and strike all Plaintiff's filings in this case from the record. *See Reddy v. JPMorgan Chase Bank, N.A.*, No. 2:09-cv-1152, 2013 WL 12371196, at *2 (S.D. Ohio Mar. 27, 2013) (striking filings under inherent power to control docket).

## II. ALTERNATIVELY, THE COURT SHOULD IMPOSE A PREFILING RESTRICTION UNDER THE ALL WRITS ACT

For similar reasons, the Court should permanently enjoin Plaintiff from filing future lawsuits, in addition or in the alternative, under the All Writs Act. *See* 28 U.S.C. § 1651. Where, as here, a litigant's history of frivolous filings has "diverted the federal court[s'] attention and resources from those that are brought in good faith and constitutes an abuse of the legal system," the "court has the authority to enjoin harassing litigation" going forward under the Act. *Wrenn v. Vanderbilt Univ. Hosp.*, 50 F.3d 11, at *3 (6th Cir. 1995) (unpublished).

On this basis, too, courts routinely bar vexatious *pro se* litigants from future filings, without the court's prior leave. *See, e.g.*, *Daniels v. Maclaren*, No. 11-cv-12199, 2024 WL 1307865, at *3 (E.D. Mich. Mar. 27, 2024) (enjoining *pro se* prisoner plaintiff "[g]iven the high volume and repetitive and frivolous nature of [p]etitioner's filings"); *Sifuentes v. Midland Cty. 42nd Cir. Ct.*, No. 20-cv-11745, 2021 WL 960440, at *2 (E.D. Mich. Mar. 15, 2021) (same, as to *pro se* plaintiff: "Judicial resources will be unnecessarily expended if Plaintiff continues to engage in repetitive filings raising the same claims and arguments"); *Sanford*, 2011 WL 721314, at *8 (permanently enjoining *pro se* plaintiffs from filing where they had filed six bankruptcy petitions, two federal lawsuits, and three state lawsuits); *Kersh v. Borden Chem., a Div. of Borden, Inc.*, 689 F. Supp. 1442, 1451 (E.D. Mich. 1988) ("The Court must control [*pro se* plaintiff's] litigation propensity because he cannot control it himself."). And here, too, the Court should follow suit.

## III.   THE COURT SHOULD IMPOSE MONETARY SANCTIONS

In addition to enjoining Plaintiff from further filing without prior court permission, the Court should impose monetary sanctions—including requiring Plaintiff to pay Mr. Combs's attorneys' fees—under 28 U.S.C. § 1927 or, alternatively, the Court's inherent power. "An award of attorney's fees, whether granted under 28 U.S.C. § 1927, . . . or under the court's 'inherent powers,' rests in

the sound discretion of the trial court." *Jones v. Continental Corp.*, 789 F.2d 1225, 1229 (6th Cir. 1986).

Here, for the same reasons outlined in Section I, Plaintiff knew or "reasonably should [have] know[n] that a claim pursued is frivolous and yet continue[d] to litigate it." *King*, 71 F.4th at 530. By doing so, Plaintiff forced Mr. Combs to incur significant costs, including attorneys' fees, unnecessarily. Accordingly, under either Section 1927 or the Court's inherent power, Plaintiff should be compelled to repay Mr. Combs. *See, e.g.*, *Ziegler v. Two Unknown 50th Dist. Ct. Officers*, No. 18-cv-12424, 2020 WL 32553, at *3 (E.D. Mich. Jan. 2, 2020) (sanctioning *pro se* litigant under Section 1927 and/or its inherent power); *Gitler v. Ohio*, 632 F. Supp. 2d 722, 724 (N.D. Ohio 2009) (sanctioning *pro se* litigant under Section 1927)[7]; *see also Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008) ("Our inherent power is not limited to sanctioning attorneys only; we can sanction a party as well.").

---

[7] Although some courts in this District have declined to apply Section 1927 to *pro se* litigants, the Sixth Circuit has not decided the issue. *See Li v. Recellular, Inc.*, No. 09-cv-11363, 2010 WL 1526379, at *8–9 (E.D. Mich. Apr. 16, 2010) (observing Section 1927 applies to an "attorney or other person admitted to conduct cases in any [U.S.] court," but determining that "[e]ven if section 1927 could apply to [*pro se* plaintiff], . . . her conduct does not rise to a sanctionable level"). In any event, the Court may impose sanctions under its inherent power. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

## CONCLUSION

For the foregoing reasons, the Court should permanently enjoin Plaintiff from any future filings without the Court's prior leave, impose monetary sanctions, and strike all Plaintiff's filings from the record under its inherent power. Mr. Combs further asks that the Court order any future filings by Plaintiff be captioned "Application Pursuant to Court Order Seeking Leave to File"; attach as an exhibit to that motion a declaration under 28 U.S.C. § 1746 or a sworn affidavit that his complaint is not prohibited by the permanent injunction and is not frivolous or made in bad faith; identify and list, as a second exhibit, the full caption of every state and federal case previously filed by or on Plaintiff's behalf, whether dismissed or pending; and provide, as a third exhibit, a copy of the Court's injunctive order. *See Kersh*, 689 F. Supp. at 1452–53. Defendant further asks that the Court order that Defendant shall have no obligation to respond to any filing made by Plaintiff against Defendant without Plaintiff first obtaining leave of court for such filing and that Defendant's rights and obligations shall not be affected by any filing made by Plaintiff without Plaintiff first obtaining leave of court for such filing.

 Dated:  December 21, 2024                              Respectfully submitted,

                                                        **FINK BRESSACK**

                                                        By:    /s/ David H. Fink
                                                        David H. Fink (P28235)
                                                        Nathan J. Fink (P75185)
                                                        David A. Bergh (P83696)

Calder A.L. Burgam (P87203)
*Attorneys for Defendant*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com
cburgam@finkbressack.com

**SHER TREMONTE**

By:    /s/ *Erica A. Wolff*
Erica A. Wolff (application for
admission forthcoming)
*Counsel for Defendant*
90 Broad Street, 23rd Floor
New York, NY 10004
Tel: (212) 202-2600
ewolff@shertremonte.com

26